## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CHIEFTAIN ROYALTY COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.  5:18-cv-01225-D** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **SM ENERGY COMPANY (including** | ) | |
| **predecessors, successors and affiliates),** | ) | |
| | ) | |
| **Defendant.** | ) | |

## FOURTH AMENDED COMPLAINT

COMES NOW Plaintiff, Chieftain Royalty Company ("Chieftain" or "Plaintiff"), for itself and all others similarly situated (hereinafter, Chieftain and the putative Class members are collectively referred to as the "Class"), and for their cause of action against Defendant, SM Energy Company, including predecessors, successors and affiliates ("SM Energy" or "Defendant"), allege and state as follows:

### VENUE AND JURISDICTION ALLEGATIONS

1.      Plaintiff is an Oklahoma corporation with its principal place of business in the State of Oklahoma.

2.      SM Energy is a foreign corporation with its principal place of business in Colorado.

3.      Plaintiff and the other Class members are residents of various states, including the State of Oklahoma.  Their claims arose in Beaver County, Oklahoma and various other counties in Oklahoma.

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a).[1]   The amount in controversy exceeds the sum of $75,000.00, and this is an action between citizens of different states.

5.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2).   The amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and this is a class action in which at least one member of the class is a citizen of a state different from any defendant.

6.      This Court has both specific and general jurisdiction over Defendant. Defendant engages in continuous and systematic activities within the State of Oklahoma. These activities include operating wells in Oklahoma from which the Class' claims arise.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391.   Specifically, as provided by 28 U.S.C. §1391(c), Defendant is a corporation deemed to reside in this District.   Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## CLASS ACTION ALLEGATIONS

The allegations set forth above are incorporated herein by reference.

8.      Plaintiff brings this action as the representative of the Class pursuant to Federal Rule of Civil Procedure 23.   The "Class" is comprised of:

> All non-excluded persons or entities who are or were royalty owners in Oklahoma wells where SM ENERGY (including its

---

[1] Defendant, SM Energy, removed this action from the District Court of Beaver County to this Court on February 22, 2011 pursuant to the Class Action Fairness Act.  *See* Notice of Removal (Docket No. 1).

predecessors or affiliates) is or was the operator (or, as a non-operator, SM ENERGY separately marketed gas). The Class Claims relate only to payment for gas and its constituents (helium, residue gas, natural gas liquids, nitrogen and condensate) produced from the wells. The Class does not include overriding royalty owners or other owners who derive their interest through the oil and gas lessee.

The persons or entities excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America and the State of Oklahoma; (2) publicly traded oil and gas exploration companies and their affiliates; and (3) persons or entities that Plaintiff's counsel is, or may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional conduct.

9. The Class numbers more than a thousand members; the members reside in several different states; and the Class is so numerous and spread out across the United States that joinder of all members is impracticable.

10. Defendant is or was the owner of extensive oil and gas leasehold interests within the State of Oklahoma. Defendant, as well operator (and as non-operator) has marketed gas from many wells in the State of Oklahoma (the "Oklahoma Wells").

11. The averments of fact and questions of law herein are common to the Class.

12. Plaintiff is a mineral interest owner in Oklahoma Wells where Defendant is or was the operator or where Defendant, as non-operator, separately marketed production from wells. Plaintiff's claims are typical of the Class' claims.

13. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with the interests of the Class. Plaintiff is represented by counsel both skilled and experienced in oil and gas accounting and complex civil

litigation matters, including oil and gas class actions. Plaintiff's counsel is accustomed to handling substantial litigation matters.

14.    The averments of fact and questions of law herein, which are common to the members of the Class, predominate over any questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

(a)    The questions of law and fact are so uniform across the Class that there is no reason why individual Class members would want to control the prosecution of their own actions, at their own expense;

(b)    To Plaintiff's knowledge, there is no pending litigation against Defendant that incorporates the statewide claims of improper deductions from mineral interest proceeds related to the Oklahoma Wells;

(c)    The interests of all parties and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions are great;

(d)    The difficulties in managing this class action will be slight in relation to the potential benefits to be achieved on behalf of each and every Class member, and not just those who can afford to bring their own actions; and

(e)    Defendant has fraudulently concealed its actions, which give rise to the Class members' cause of action. Many of the Class members may never discover the wrongful acts of Defendant. Thus, in the absence of a class action, Defendant, through its concealment, may successfully be unjustly enriched to the detriment of the unknowing Class members.

## BACKGROUND FACTS AND CLAIMS

15.    Based on information and belief, Defendant used its position as operator and as oil and gas working interest owner to secretly underpay royalty due Plaintiff and Class members on production of gas and its constituents from the Oklahoma Wells. Defendant accomplished this by various improper deductions and reductions from royalty payments including, but not limited to, the following:  (1) deducting direct and indirect fees for marketing, gathering, compression, dehydration, processing, treatment, and other similar services; (2) not paying royalty on wellhead gas that was used off the lease premises or in the manufacture of products; and (3) not paying royalty on condensate that dropped out of the gas stream (hereinafter referred to as "Fees").  These Fees were incurred to transform raw wellhead gas into marketable condition for sale.

16.    The relationship between Plaintiff and Defendant is contractual in nature by virtue of lease agreements between them in the Wilt 1-10, Hicklin 1-28, McDaniel 1-8,[2] Duncan Shores 1-1, Duncan Shores 2-1, Avanzini 3-1H, and Simmons 3-32 wells.[3] All of the wells are completed as producers in established Oklahoma Corporation Commission ("OCC") drilling and spacing units.  The details of the relationship between Plaintiff and Defendant in the referenced wells and others are as follows:

1.    **Wilt 1-10 –** N/2 S/2 SE/4 NE/4 **-** completed 1/8/2009

       **Plaintiff/Defendant Relationship: Successor Lessor-Lessee**

---

[2] The leases that apply to the Wilt 1-10, Hicklin 1-28 and McDaniel 1-8 wells were attached to the First Amended Complaint ("FAC") as Exhibits 1-3.
[3] The lease that applies to the Duncan Shores 1-1, Duncan Shores 2-1, and Avanzini 3-1H wells was attached to the Third Amended Complaint ("TAC") as Exhibit 1 and the lease that applies to the Simmons 3-32 well was attached to the TAC as Exhibit 2.

- UNIT: Sec. 10-6N-11W – Caddo Co., OK

- OPERATOR: EnerVest Operating Company

- OCC DRILLING & SPACING ORDER: 196268 – 640 – Gas

- GAS MARKETING:  EnerVest currently (and SM Energy formerly) markets gas for itself and others as the well operator and pays the royalty pool, which includes Chieftain

- OGL RECORDED: Book 2670, Page 33 – Exhibit "1" to FAC (Docket No. 66-1)

- DESCRIPTION:  W/2 NE/4 Sec. 10-6N-11W, Caddo Co., OK

- ORIGINAL LESSOR:  Johnnie L. Beeler

  CURRENT  LESSOR:    Chieftain  has  succeeded  to  part  or  all  of  the  original lessor's interest

- ORIGINAL LESSEE:  St. Mary Land & Exploration Company, which is now SM Energy Company

- CURRENT LESSEE:  EnerVest, by assignment from SM Energy

  OGL ROYALTY CLAUSE:  To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, 3/16ths of the gross proceeds received for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than 3/16ths of the actual amount received by the lessee, said payments to be made monthly.

2.    **Hicklin 1-28** – W/2 E/2 W/2 NW/4 – completed – 3/26/1998 – recompletion 11/19/04

   **Plaintiff/Defendant Relationship:  Successor Lessor-Lessee**

- UNIT:  Sec. 28-10N-18W – Washita Co., OK

- OPERATOR:  Kaiser-Francis Oil Company

- OCC DRILLING & SPACING ORDER:  81309 – 640 – Gas

- GAS MARKETING:  EnerVest currently (and SM Energy formerly) markets gas for itself and pays associated royalty to the operator for distribution to the royalty pool

- OGL DATE:  8/30/1995

- OGL RECORDED:  Book 826, Page 869 – Exhibit "2" to FAC (Docket No. 66-2)

- DESCRIPTION:  NE/4, less and except all land lying West of the Kansas City, Mexico and Orient Railway Company Railroad (now known as the Atchison, Topeka and Santa Fe Railway Company)

- ORIGINAL LESSOR:  E. Bill Knight, Sole Trustee, or his Successors in Trust, under the E. Bill and Pauline F. Knight Living Trust dated May 26, 1994

- CURRENT LESSOR:  Chieftain has succeeded to part or all of the original lessor's interest

- ORIGINAL LESSEE:  Anderman/Smith & Co.

- CURRENT LESSEE:  EnerVest, by assignment from SM Energy

- OGL ROYALTY CLAUSE:  2nd.  To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, 1/8th of the gross proceeds received for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than 1/8th of the actual amount received by the lessee, said payments to be made monthly.

3.    **McDaniel 1-8 –** C S/2 NW/4 **-** completed 10/10/88

**Plaintiff/Defendant Relationship:  Successor lessor-lessee**

- UNIT:  Sec. 8-11N-24W – Roger Mills Co., OK

- OPERATOR:  Linn Operating Inc.

- OCC DRILLING & SPACING ORDER:  163192 – 640 – Gas

- GAS MARKETING:  EnerVest currently (and SM Energy formerly) markets gas for itself and pays associated royalty to the operator for distribution to the royalty pool

- OGL DATE: 5/11/1973

- OGL RECORDED:  Book 158, Page 124 – Exhibit "3" to FAC (Docket No. 66-3)

- DESCRIPTION: E/2 NE/4 Sec. 7 & W/2 & SE/4 Sec. 8 & W/2 NW/4 Sec.17

- ORIGINAL LESSOR:  Joe C. Kernke & Blanche Kernke, h/w

- CURRENT LESSOR:  Chieftain has succeeded to part or all of the original lessor's interest

- CURRENT LESSEE:  EnerVest, by assignment from SM Energy

OGL ROYALTY CLAUSE:  2nd.  To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, 1/8 of the gross proceeds received for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than 1/8 of the actual amount received by the lessee, said payments to be made monthly.

4.    **Duncan Shores 1-1** – N/2 SW/4 SE/4 SW/4 – completed 7/11/07

**Plaintiff/Defendant Relationship:  Successor lessor-lessee**

- UNIT: Sec. 1-1N-10E – Coal Co., OK

- OPERATOR:  Bravo Arkoma, LLC.

- OCC DRILLING & SPACING ORDER:  517464 – 640 - Gas

- GAS MARKETING:  Bravo currently (and SM Energy formerly) markets gas for itself and pays associated royalty to the operator for distribution to the royalty pool

- OGL DATE:  9/16/05

- OGL RECORDED:  Book 661 at Page 838

- DESCRIPTION:  S/2 SE/4 less a tract of land described as beginning at a point 150,000 feet North of the SE/corner of the SE/4; thence West 267.00 feet; thence North 330.00 feet; thence East 267.00 feet; thence South 330.00 feet to the point of beginning, Section 1-1N-10E

- ORIGINAL LESSOR:  Evert L. Spears and Shirley R. Spears, Trustees of the Spears Family Revocable Trust dated 12/16/97

- CURRENT LESSOR:  Chieftain has succeeded to part or all of the original lessor's interest

- CURRENT LESSEE:  Bravo, by assignment from SM Energy

OGL ROYALTY CLAUSE:  2nd.To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, ¼ of the gross proceeds received for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than ¼ of the actual amount received by the lessee, said payments to be made monthly.
3rd. To pay lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing-head gasoline or dry commercial gas, ¼ of the gross proceeds, at the mouth of the well, received by lessee for the gas during the time such gas shall be used, said payments to be made monthly.

**5.**     **Duncan Shores 2-1** – NW/4 SW/4 SE/4 SE/4 –completed 4/23/08

**Plaintiff/Defendant Relationship:  Successor lessor-lessee**

- UNIT:  Sec. 1-1N-10E, Coal Co., OK.

- OPERATOR:  Bravo Arkoma, LLC.

- OCC DRILLING & SPACING ORDER:  517464, 533241 – 640 - Gas

- GAS MARKETING:  Bravo currently (and SM Energy formerly) markets gas for itself and pays associated royalty to the operator for distribution to the royalty pool

- OGL DATE:  9/16/05

- OGL RECORDED:  Book 661 at Page 838

- DESCRIPTION:  S/2 SE/4 less a tract of land described as beginning at a point 150,000 feet North of the SE/corner of the SE/4; thence West 267.00 feet; thence North 330.00 feet; thence East 267.00 feet; thence South 330.00 feet to the point of beginning, Section 1-1N-10E

- ORIGINAL LESSOR:  Evert L. Spears and Shirley R. Spears, Trustees of the Spears Family Revocable Trust dated 12/16/97

- CURRENT LESSOR:  Chieftain has succeeded to part or all of the original lessor's interest

- CURRENT LESSEE:  Bravo, by assignment from SM Energy

  OGL ROYALTY CLAUSE:  2nd.To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, ¼ of the gross proceeds received for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than ¼ of the actual amount received by the lessee, said payments to be made monthly.
  3rd. To pay lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing-head gasoline or dry commercial gas, ¼ of the gross proceeds, at the mouth of the well, received by lessee for the gas during the time such gas shall be used, said payments to be made monthly.

6.    **Avanzini 3-1H** – SW/4 SE/4 SE/4 SE/4 – completed 1/15/11

      **Plaintiff/Defendant Relationship:  Successor lessor-lessee**

10

- UNIT:  Sec. 1-1N-10E, Coal Co., Ok.

- OPERATOR:  Bravo Arkoma, LLC.

- OCC DRILLING & SPACING ORDER:  517464 – 640 - Gas

- GAS MARKETING:  Bravo currently (and SM Energy formerly) markets gas for itself and pays associated royalty to the operator for distribution to the royalty pool

- OGL DATE:  9/16/05

- OGL RECORDED:  Book 661 at Page 838

- DESCRIPTION:  S/2 SE/4 less a tract of land described as beginning at a point 150,000 feet North of the SE/corner of the SE/4; thence West 267.00 feet; thence North 330.00 feet; thence East 267.00 feet; thence South 330.00 feet to the point of beginning, Section 1-1N-10E

- ORIGINAL LESSOR:  Evert L. Spears and Shirley R. Spears, Trustees of the Spears Family Revocable Trust dated 12/16/97

- CURRENT LESSOR:   Chieftain has succeeded to part or all of the original lessor's interest

- CURRENT LESSEE:  Bravo, by assignment from SM Energy

  OGL ROYALTY CLAUSE:  2nd.To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, ¼ of the gross proceeds received for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than ¼ of the actual amount received by the lessee, said payments to be made monthly.
  3rd. To pay lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing-head gasoline or dry commercial gas, ¼ of the gross proceeds, at the mouth of the well, received by lessee for the gas during the time such gas shall be used, said payments to be made monthly.

7.    **Simmons 3-32**  - SW/4 NE/4 SW/4 NW/4 – completed 11/24/96

11

**Plaintiff/Defendant Relationship:  Successor lessor-lessee**

- UNIT:  Sec. 32-12N-22W, Beckham Co., OK

- OPERATOR:  SM Energy

- OCC DRILLING & SPACING ORDER:  138431 – 640 - Gas

- GAS MARKETING:  SM Energy markets gas for itself and pays associated royalty to the operator for distribution to the royalty pool

- OGL DATE:  11/21/70

- OGL RECORDED:  Book 253 at Page 546

- DESCRIPTION:  N/2 & W/2 SW/4 & NE/4 SE/4 Sec. 32 & NW/4 NW/4  33-12N-22W, Beckham County, OK

- ORIGINAL LESSOR:  Mamie Simmons, a single person

- CURRENT LESSOR:   Chieftain has succeeded to part or all of the original lessor's interest

- CURRENT LESSEE:  SM Energy

  OGL ROYALTY CLAUSE:  2nd.  To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premise or used in the manufacture of products therefrom, one-eighth (1/8) at the market price at the well for the gas sold, used off the premises, or in the manufacture of products therefrom, said payments to be made monthly.
  3rd. To pay lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing-head gasoline or dry commercial gas, one-eighth (1/8) of the proceeds, at the mouth of the well, at the prevailing market rate for the gas during which time such gas shall be used, said payments to be made monthly.

17.    Pursuant to OKLA. STAT. tit. 52, § 87.1(e) and § 570.4, all royalties in a

drilling and spacing unit are effectively pooled or "communitized" so that all royalty

owners receive a proportionate share of all royalty revenue from all gas sold from the well. Each royalty payment goes into a common royalty pool comprised of all proceeds from all of the gas sales from the well. Once pooled, the revenue in the royalty pool is then distributed **proportionately** among **all** royalty owners in the drilling and spacing unit—not just the royalty owners who have a direct lessor-lessee relationship with the working interest owner selling the gas.

18.    The result of § 87.1(e) and § 570.4 is that, ultimately, royalty owners do not receive royalty based solely on the terms of their individual leases, but rather their proportionate share of all royalties from the common royalty pool. Stated differently, if Defendant is selling gas only for its own account from Defendant's well that is producing from a drilling and spacing unit, then Defendant's royalty obligations are determined by the terms of its oil and gas lease. The royalty share must then be distributed proportionately between all royalty owners in the well (not just the royalty owners who have a lease directly with Defendant).

19.    All Oklahoma Wells from which Defendant is marketing gas for itself and others are subject to drilling and spacing orders of the Oklahoma Corporation Commission. Defendant admits it pays royalties pursuant to Section 570.4 using the methodology described above. Plaintiff and other Class Members that have a lease directly with Defendant in relation to a particular Oklahoma Well have a breach of contract claim against Defendant when royalty is not paid correctly in regard to that lease and well. Plaintiff and those Class Members have a right to their proportionate share of the royalty proceeds from Defendant's gas sales. Plaintiff and those Class Members who

do not have a lease directly with Defendant in regard to a particular well also have a right to their proportionate share of the royalty proceeds from Defendant's sales.  Plaintiff and those Class Members have an unjust enrichment claim in law and equity in addition to a third-party beneficiary claim.

20.    The relationship between Defendant and Plaintiff and the Class is such that the Class members have reasonably placed trust and confidence in Defendant to properly pay royalty.

21.    Defendant has superior access to the information relating to the claims herein.

22.    Defendant has a fiduciary or quasi-fiduciary relationship with Plaintiff and the Class when Defendant acts as operator(s) of a drilling and spacing unit created by orders of the Oklahoma Corporation Commission.

23.    As a fiduciary or quasi-fiduciary, Defendant is:  (1) held accountable to Plaintiff and the Class, (2) held to a high degree of good faith in its dealings, and (3) not permitted to make or use its position(s) to realize unauthorized benefits for its own personal interests at the expense of Plaintiff and the Class.  Defendant has never repudiated its fiduciary or quasi-fiduciary duty and Plaintiff and the Class have never had any reason to know that Defendant was not abiding by its duty.

24.    Defendant has used its position as operator and as oil and gas working interest owner to wrongfully deduct Fees from royalty payments due Plaintiff and the Class on the Oklahoma Wells.

25.    The Fees were for services incurred to place the raw wellhead gas produced from the Oklahoma Wells into marketable condition; and/or the Fees did not enhance the value of an already marketable product; and/or the Fees were not reasonable and did not increase the royalties due Plaintiff and the Class in proportion to the Fees.

26.    Based on information and belief, the Fees were deducted from the gross value of the gas and its constituents prior to production proceeds being paid to Plaintiff and the Class.    Based on information and belief, the Fees and other royalty underpayments were fraudulently concealed from Plaintiff and the Class by falsely reporting the gross value and price of the gas sold on the royalty check counter-foils and by using said counter-foils to deceive Plaintiff and the Class into believing that all royalties had been properly paid and that Defendant was properly accounting to Plaintiff and the Class for royalty owed.

27.    Based on information and belief, in violation of the implied covenant to market contained in the oil and gas leases, and in violation of its duties, Defendant has failed to make diligent efforts to secure the best term(s) available for the sale of gas and its constituents from the Oklahoma Wells, and Plaintiff and the Class have received reduced production proceeds from the Oklahoma Wells as a result thereof.

28.    Defendant has maintained an open account with Plaintiff and Class members by making prior period adjustments to royalty payments, which further led Plaintiff and Class members to believe that Defendant had, or would, make proper payment of royalty in compliance with its obligations.

29.    Based on information and belief, Defendant and other working interest owners (on behalf of whom Defendant marketed gas and paid royalty) conspired to deprive Plaintiff and the Class of production proceeds by underpaying royalty and deceptively concealing such royalty underpayment by falsely reporting information on check counter-foils.  Specifically, Defendant, as operator, markets gas for other working interest owners and pays royalty for them with no input from the non-operators and without disclosure to Plaintiff and the Class.  These sales are known as Joint Operating Agreement ("JOA") sales.  When Defendant pays royalty on JOA sales, Defendant applies its own in-house rules to determine what royalty is due without looking at the language of any specific leases.  Defendant then distributes the money from the royalty pot proportionately to all royalty owners without regard to the terms of their individual leases.  Defendant does not disclose to Plaintiff and the Class that they have marketed gas and then calculated and paid royalty on JOA sales.  As such, Defendant is liable on JOA sales as an undisclosed agent for, and co-conspirator with, the other working interest owners.

30.    Defendant is fully aware of the duties and obligations incumbent upon it. Defendant is fully aware that it is in breach of these duties and obligations. Nevertheless, Defendant has taken no action to cure these violations of the law.

31.    The acts of Defendant go far beyond simple breach of contract and amount to independent torts resulting in damages to Plaintiff and the Class and unjust enrichment to Defendant.

32.    The tortious breach of contract, fraud, deceit and other torts described herein served to financially benefit Defendant through the reduction of royalty paid to Plaintiff and the Class on production marketed by Defendant from the Oklahoma Wells.

33.    Based on information and belief, Defendant has been unjustly enriched as a result of its improper actions.  Defendant should not be allowed to retain any portion of its ill-gotten gains, or profits on those ill-gotten gains.  Defendant should be required to disgorge, and pay as additional damages, all such gains, and profits on such gains, to Plaintiff and the Class.

34.    The tortious acts of Defendant were done intentionally, maliciously and with utter disregard for the rights of Plaintiff and the Class.  Defendant should be required to pay punitive damages as punishment for its wrongdoing and as an example to deter others who might act in a similar manner.

35.    To the extent that Defendant relies on any statute of limitation as a defense, the Class claims that under the facts at issue here, the doctrine of equitable estoppel or tolling, open account, discovery rule and other defenses apply to toll the running of any statute of limitations.

36.    Until December 29, 2015, Four Winds Marketing LLC ("Four Winds") was a wholly owned subsidiary of SM Energy.  On December 29, 2015, Four Winds merged with SM Energy.  Prior to the merger, SM Energy and Four Winds had common directors and officers.  The officers of Four Winds followed the directions of SM Energy officers.  Four Winds had no employees of its own.  Rather, employees of SM Energy did all of the work associated with Four Winds.  SM Energy owned the office space, computers, and

all other items used to conduct the business of Four Winds.  SM Energy paid the salaries of its employees who, in turn, do the work of Four Winds.

37.    Although Four Winds kept its own financials, the profits or losses of Four Winds "flowed through" to SM Energy, and Four Winds' financials were consolidated with those of SM Energy.  In other words, Four Winds did not make any profits of its own; it was strictly a "flow through."  Overall, 98% of Four Winds' business was with SM Energy.  Four Winds only operated in the state of Oklahoma.  Within Oklahoma, Four Winds' operations were limited to the Coal County system, the Enogex wells, and the Elk City wells.

38.    Four Winds did not have any gas gathering agreements, gas processing agreements, or gas sales agreements of its own.  The only involvement Four Winds had in such contracts was a single contract with Enogex, under which SM made Four Winds its agent for ministerial functions.  The same officer signed this contract on behalf of both SM Energy and Four Winds.

39.    Based on the foregoing facts, it is apparent that even before Four Winds was absorbed by SM Energy, Four Winds was organized, controlled and its affairs so conducted, that it was merely an instrumentality, agent, adjunct, or "alter ego" of SM Energy.  Moreover, it is also apparent that the separate corporate existence of Four Winds was a design or scheme by SM Energy to perpetuate fraud.  By "selling" gas at the well to Four Winds, SM Energy used its control of Four Winds as a method of underpaying and defrauding royalty owners of royalty that would otherwise be due.  SM Energy has

18

admitted that, but for its inclusion of Four Winds in the marketing of gas, royalty owners would have received higher royalty under SM Energy's existing policy.

40.     Because Four Winds was the dummy or sham of SM Energy and has now been absorbed by SM Energy, SM Energy should be held liable for the acts of Four Winds.

## BREACH OF CONTRACT

The allegations set forth above are incorporated herein by reference.  This claim is made both cumulatively and in the alternative to each of the other claims made.

41.     As discussed above, in certain Oklahoma wells, Plaintiff and other Class Members have a direct contractual relationship with Defendant by virtue of their direct lessor-lessee relationship.  Likewise, because of communitization of royalty in the royalty pool, all other royalty owners are third party beneficiaries to these leases.

42.     Defendant has breached the implied covenant to market and express provisions contained in each oil and gas lease and has otherwise breached its duties to properly pay royalty.

43.     Plaintiff and the Class have been damaged.

44.     Additionally, Plaintiff's and the Class' claims are based on an open account beginning with the initial royalty payments and still continuing on each Oklahoma Well.

45.     Defendant has been unjustly enriched as a result of its improper underpayment of royalty.

## TORTIOUS BREACH OF CONTRACT

The allegations set forth above are incorporated herein by reference. This claim is made both cumulatively and in the alternative to each of the other claims made.

46.     As discussed above, in certain Oklahoma Wells, Plaintiff and other Class Members have a direct contractual relationship with Defendant by virtue of their direct lessor-lessee relationship and as third party beneficiaries because of royalty communitization. The relationship of oil and gas lessor-lessee is a special relationship under Oklahoma law.

47.     Defendant's actions amount to much more than a simple breach of contract.

48.     Defendant is guilty of tortious breach of the implied covenant to market contained in the oil and gas leases by failing to properly and honestly pay royalty due resulting in damages to Plaintiff and the Class.

49.     Defendant should pay, in addition to actual damages, punitive damages as a method of punishing Defendant and setting an example for others.

## UNJUST ENRICHMENT

The allegations set forth above are incorporated herein by reference. Plaintiff and the Class assert a claim for unjust enrichment in the alternative and as a supplement to each of their other claims.

50.     Plaintiff and the Class have been damaged and Defendant has been unjustly enriched as a result of its improper underpayment of royalty.

51.     In certain Oklahoma Wells, Plaintiff and other Class Members do not have a direct contractual relationship with Defendant.

20

52.     For Plaintiff and those Class Members in such wells, there is no adequate remedy at law available to recover damages for Defendant's improper underpayment of royalty.

53.     Plaintiff and the Class claim that Defendant has been unjustly enriched to the extent Defendant benefitted from the use of money that rightfully should have been paid as royalty to Plaintiff and the Class.

### BREACH OF FIDUCIARY OR QUASI-FIDUCIARY DUTY

The allegations set forth above are incorporated herein by reference.  This claim is made both cumulatively and in the alternative to each of the other claims made.

54.     Defendant, as the operator of Oklahoma Wells subject to orders of the Oklahoma Corporation Commission which pool royalty, owed a fiduciary or quasi-fiduciary duty to the Class to properly pay royalty.

55.     Defendant has never repudiated its fiduciary or quasi-fiduciary duty to the Class.  In fact, Defendant's actions have reinforced the existence of such a duty since it totally controlled royalty payments and Plaintiff and the Class were forced to put faith and trust in Defendant.  Defendant knew very well that Plaintiff and the Class had no option but to trust Defendant to account for and pay royalty properly.

56.     Plaintiff and the Class have been damaged and Defendant has been unjustly enriched.

57.     Defendant should pay, in addition to actual damages, punitive damages as a method of punishing Defendant and setting an example for others.

21

## FRAUD (ACTUAL AND CONSTRUCTIVE) AND DECEIT

The allegations set forth above are incorporated herein by reference. This claim is made both cumulatively and in the alternative to each of the other claims made.

58.    Defendant secretly and knowingly underpaid royalties on Oklahoma Wells without the knowledge of Plaintiff and the Class.

59.    Defendant sent out false and misleading statements monthly to Plaintiff and the Class on check counter-foils with the intent to have Plaintiff and Class members rely on those false statements. Defendant knew that Plaintiff and the Class had no choice but to rely on the false statements of Defendant. Under such circumstances, reliance of the Class is presumed in law and in fact.

60.    Plaintiff and the Class have been damaged and Defendant has been unjustly enriched.

61.    Defendant should pay, in addition to actual damages, punitive damages as a method of punishing Defendant and setting an example for others.

## CONVERSION

The allegations set forth above are incorporated herein by reference. This claim is made both cumulatively and in the alternative to each of the other claims made.

62.    Under Oklahoma law "all proceeds from the sale of production shall be regarded as separate and distinct from all other funds of any person receiving or holding the same until such time as such proceeds are paid to the owners legally entitled thereto. Any person holding revenue or proceeds from the sale of production shall hold such

revenue or proceeds for the benefit of the owners legally entitled thereto." OKLA. STAT. tit. 52, § 570.10(a).

63.    Defendant held proceeds from the sale of production from Oklahoma Wells that belonged to Plaintiff and the Class. Instead of paying over those proceeds to Plaintiff and the Class as required by law, Defendant secretly deducted the Fees from proceeds and converted that money to its own use and benefit.

64.    Plaintiff and the Class have been damaged and Defendant has been unjustly enriched.

65.    Defendant should pay, in addition to actual damages, punitive damages as a method of punishing Defendant and setting an example for others.

## CONSPIRACY

The allegations set forth above are incorporated herein by reference. This claim is made both cumulatively and in the alternative to each of the other claims made.

66.    Other persons have joined with and aided Defendant in underpaying royalty due Plaintiff and the Class. These persons are the working interest owners in wells operated by Defendant on behalf of whom Defendant marketed gas and paid royalty (sometimes called "JOA sales"), as described above.

67.    In wells operated by Defendant, Defendant acts as an undisclosed agent for other working interest owners (non-operators) in the Oklahoma Wells when marketing gas produced from the wells and paying royalty. Defendant has not disclosed these facts to Plaintiff and the Class.

68.    Plaintiff and the Class have been damaged.    Defendant and its co-conspirators have been unjustly enriched.  Under Oklahoma law, Plaintiff and the Class may recover all of their damages from one or more of the co-conspirators.

69.    Defendant (and its co-conspirators) should pay, in addition to actual damages, punitive damages as a method of punishing it and setting an example for others.

## ACCOUNTING

The allegations set forth above are incorporated herein by reference.

70.    Defendant has a duty to timely disclose to Plaintiff and the Class the full and true value of the production from the Oklahoma Wells.  Defendant has breached that duty.

71.    Defendant has:  (1) failed to account to Plaintiff and the Class for their proper royalty share of production from the Oklahoma Wells; (2) failed to fully account for the full value of the production from the Oklahoma Wells; and (3) failed to fully account for all deductions and reductions from the value of the production.  Plaintiff requests an order of this Court requiring Defendant to provide a full and complete accounting for all production proceeds and deductions or reductions from the date Defendant acquired their working interest until the date of trial in the matter on each Oklahoma Well.

## INJUNCTION

The allegations set forth above are incorporated herein by reference.

72.    Class members are by and large unsophisticated and without the resources of Defendant.

24

73.     Defendant must be restrained from contacting any putative Class member concerning any issue herein, unless the Court is specifically advised of the proposed communication and approves the content and form of such communication.  This judicial scrutiny is necessary to prevent the potential for inadequate, misleading, incomplete, or erroneous representation and communication and to prevent any intimidation, annoyance, harassment, or undue influence.

74.     This Court has discretion to so restrain Defendant pursuant to OKLA. STAT. tit. 12, § 2023(d)(2), which generally provides the Court with authority to enter appropriate orders for the protection of putative members of the Class and for the fair conduct of the action.

75.     Defendant maintains files containing the names and addresses of the putative Class members.  If Defendant is allowed to contact the putative Class members in an attempt to settle the above claims for inadequate consideration, the damage to the putative Class members would be irreparable and monetary damages would be insufficient or simply unavailable to compensate them.  The Class members do not have another plain, adequate and speedy remedy at law to protect their interests.

76.     In view of the fact that Defendant has concealed its actions from Plaintiff and the Class, no detriment will result to Defendant from such an order.  Plaintiff and the putative Class would receive the protection of OKLA. STAT. tit. 12, § 2023(e), which requires that no compromise of any claims be made without approval of the Court upon appropriate notice to all Class members.

**WHEREFORE,** Plaintiff seeks:  (1) an order of this Court allowing this case to proceed as a class action; and (2) judgment for damages as alleged herein against Defendant comprised of:  (a) an accounting; (b) damages based on all of the claims made herein; (c) punitive damages; (d) interest; (e) attorney's fees; (f) expert and litigation costs; (g) court costs; (h) an order temporarily restraining Defendant, its agents, servants, employees and attorneys, or persons acting for or on Defendant's behalf from contacting any putative Class member concerning the issues in this action until entry of an order refusing to certify the Class; and (i) such other relief as Plaintiff and the putative Class may be entitled to by law or in equity.

**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**

/s/ Bradley E. Beckworth
Bradley E. Beckworth, OBA No. 19982
*bbeckworth@nixlaw.com*
Jeffrey Angelovich, OBA No. 19981
*jangelovich@nixlaw.com*
Lisa Baldwin, OBA No. 32947
*lbaldwin@nixlaw.com*
Trey Duck, OBA No. 33347
*tduck@nixlaw.com*
NIX PATTERSON LLP
3600 North Capital of Texas Highway
Suite 350, Building B
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335

Susan Whatley, OBA No. 30960
NIX PATTERSON LLP
205 Linda Drive
Daingerfield, TX 75638

Telephone: (903) 645-7333
Facsimile: (903) 645-4415

Robert N. Barnes, OBA No. 537
*rbarnes@barneslewis.com*
Patranell Lewis, OBA No. 12279
*plewis@barneslewis.com*
Emily Nash Kitch, OBA No. 22244
*ekitch@barneslewis.com*
Barnes & Lewis, LLP
208 NW 60th Street
Oklahoma City, OK 73118
Telephone: (405) 843-0363
Facsimile: (405) 843-0790

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of December, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Attorneys for Defendant:

J. Kevin Hayes
Pamela S. Anderson

/s/ Bradley E. Beckworth
Bradley E. Beckworth

27