# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHIEFTAIN ROYALTY COMPANY, Plaintiff, | ) | |
| v. | ) | Case No. CIV-011-177-D |
| SM ENERGY COMPANY (including predecessors, successors and affiliates), ENERVEST ENERGY INSTITUTIONAL FUND XIII-A, L.P., ENERVEST ENERGY INSTITUTIONAL FUND XIII-WIB, L.P., ENERVEST ENERGY INSTITUTIONAL FUND XIII-WIC, L.P., ENERVEST OPERATING, L.L.C., and FOURPOINT ENERGY, LLC, Defendants. | ) | |

**DECLARATION OF JOSEPH M. WATT IN SUPPORT OF**
**CLASS COUNSEL'S RENEWED APPLICATION FOR ATTORNEYS' FEES**

I, JOSEPH M. WATT, state and declare as follows:

## DISCLOSURES

1. I have been engaged by Class Counsel to offer a report on the application of Oklahoma law regarding the award of reasonable class-action attorney fees to the facts of the above-captioned matter. The scope of my engagement is limited to an analysis of the law governing said fee awards and the Oklahoma law cited by the Tenth Circuit in its prior

opinion in this case,[1] as well as of the propriety of Class Counsel's fee request when viewed in the context of Oklahoma Supreme Court precedent.

2. My report is based upon my initial review and investigation of the record documents provided to me, including the motions and briefing concerning the original fee award and settlement, the district court's orders granting final approval of the settlement, attorney's fees, expenses and incentive award, the appellate briefing to the Tenth Circuit concerning the award of attorney's fees and incentive award, the Panel Opinion, the briefing in support of rehearing, and the Declaration of former Oklahoma Senate President Pro Tempore, Glenn Coffee. I also performed a review of the Oklahoma cases and statutes governing the award of attorney fees.

3. As for my background, I most recently served as a Justice of the Oklahoma Supreme Court. I served in that capacity from 1992, when I was appointed by then-Governor David Walters, until I retired effective January 1, 2018, during which time I was retained by vote of the People of Oklahoma five times (1994, 1996, 2002, 2008, and 2014). During my tenure on the Court, I also served an unprecedented two consecutive terms as Chief Justice, spanning from 2003 to 2007. I previously served as the President of the Oklahoma Judicial Conference in 1996, a member of the Appellate Division of the Oklahoma Court on the Judiciary from 1997 to 2002, Supreme Court Liaison to the

[1] *Chieftain Royalty Co. v. EnerVest Energy Inst. Fund XIII-A, L.P.*, 888 F.3d 455 (10th Cir. 2017) (as amended by Order *Nunc Pro Tunc* on April 11, 2018) [hereinafter "Panel Opinion"].

Oklahoma Bar Association from 1997-2002, and Supreme Court Liaison to the Oklahoma Board of Bar Examiners from 2012-2017.

4. Before my appointment to the Supreme Court, I served as General Counsel to Governor Walters. And, prior to that, I served as Associate District Judge for Jackson County, Oklahoma, from 1986 until 1991, and as Special District Judge for Jackson County, and I was in private practice in Altus, Oklahoma, from 1973 to 1985. During this time, I was also City Prosecutor for Altus, and I was City Attorney for Altus from 1980 to 1985. I am a member of both the Oklahoma and Texas Bar Associations.

5. Particularly relevant to this report, during my time in the Oklahoma judiciary, I have presided over attorney fee disputes and have been involved in the formation of Oklahoma's fee-award jurisprudence, including authoring the opinion of the Supreme Court in *Hess v. Volkswagen of America, Inc*, 2014 OK 111, 341 P.3d 662. As the author of that opinion, I am well aware of what it, and thus what Oklahoma law, requires in terms of analyzing class counsel fee awards in common fund contingent class action cases.

6. My hourly billing rate and retainer base is $750.00 per hour.

**THE RESULT OBTAINED**

7. As I explain below, the result obtained in a given case is of paramount concern in Oklahoma fee award jurisprudence. As such, it is important to place my report within the proper context of the result obtained here.

8. Class Counsel settled this case for $52,000,000 in cash. That amount alone represents 100% of the class's principal damages alleged as a result of the Settling Parties' oil and gas royalty underpayment. No Class Member had to file a claim to obtain this

money. Instead, if a Class Member is entitled to a recovery, he or she gets that money with no further action—no burdensome claim filing process or any effort whatsoever. Counsel also negotiated binding changes to the Settling Parties' payment methodology going forward. This kind of relief is exceedingly rare in similar actions and represents nearly $3 million in additional benefit to the class. Moreover, although the negotiated changes are binding on the Settling Defendants, Class Counsel ensured that they would not be binding on the Class members; Class members remain free to demand an even stricter royalty-payment methodology from the Settling Parties should they so desire. When viewed as a whole, this result is truly outstanding.

9. The same is true when viewed in terms of individual Class members. This is not a case where each individual Class member gets a few dollars. It is true that some claims are small, but that is due to issues like royalty percentage, date of payment and production. Many Class members are entitled to recoveries over $10,000 and some over $100,000. Some of the wells at issue in this case will receive well over $400,000.[2] That is money that will go directly into the pockets of those well's mineral owners—money that simply would not have existed but for the efforts of Class Counsel.

10. Accordingly, it is no surprise that this Settlement received resounding support from those both in and outside the class. Specifically, declarations and affidavits in support of the Settlement were submitted from former federal judges Layn Phillips and Michael Burrage; leading Oklahoma oil and gas attorney Dan Little; leading class action

[2] *See* Dkt. No. 122-3 at 23, 29.

scholars Geoffrey Miller and Steven Gensler; the Class Representative, through its President, Robert Abernathy, an attorney and sophisticated royalty owner; and absent class members, including the Kelsie Wagner Trust, Pagosa Resources, Omega Royalty Company, Michael P. Starcevich, CSW 2003 Exploration, and the Asa R. Maley Revocable Living Trust.[3] Moreover, only 16 class members chose to be excluded from the settlement, a group representing less than 0.2% of the settlement fund. Only two absent class members chose to file objections to the settlement, a group representing only .0005% of the fund—and comprised of two "professional" objectors notorious for casting the same unsuccessful objections across Oklahoma, objections flatly rejected in every state court in Oklahoma in which they have been raised.[4]

11. In short, the result of this case was nothing shy of remarkable.

## SUMMARY OF OPINIONS

12. The law governing class action fee awards in Oklahoma is 12 O.S. § 2023(G)(4)(e), and while that law codified much of the Oklahoma Supreme Court's precedent in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, it did not codify the lodestar methodology adopted in that opinion. Rather, as the Declaration of Glen Coffee makes clear, the Legislature did not mandate that trial courts only use a lodestar. Thus, courts applying § 2023 are free to phrase their fee awards in terms of a

[3] *See* Dkt. Nos. 116 to 120, 122-6 to 122-11.

[4] *See, e.g.*, *Adkisson v. Koch*, No. 116,452 (Okla. Ct. Civ. App. Aug. 7, 2009) (unpublished) cert. denied Feb. 4, 2010; *Fitzgerald Farms, LLC v. Chesapeake Operating L.L.C.*, No. CJ-2010-38, 2015 WL 5794008 (Okla. Dist. Ct. Beaver Cty. July 2, 2015).

percentage of the fund, a lodestar-plus-enhancement calculus, or some combination thereof—so long as the court considers the award according to each of the 13 factors in § 2023 and justifies it in light of the evidence present in the case.

13. If, however, this court is bound to apply a lodestar under the Panel Order, § 2023 still requires the trial court to determine if the lodestar should be decreased or enhanced by: (1) calculating the lodestar by multiplying the attorneys' hours in the case by the hourly rate; then (2) determining the appropriate enhancement of the lodestar fee by considering the "*Burk* factors," paying special attention to the relationship between the amount sought in the litigation, the amount received as a result of the litigation, and the amount requested in attorney fees. As Senator Coffee's Declaration states, § 2023 did not eliminate enhancement multipliers in cases where a lodestar is used, nor did it put a cap or ceiling on any such multipliers. The Hess opinion makes this clear: "[W]e are aware that the trial court is cognizant that *multipliers may adjust a lodestar upwards or may diminish the award*."[5] Further, under Oklahoma law, attorneys are allowed to use reconstructed records in support of their fee requests as long as they are detailed enough for the trial court to rely upon in assessing the appropriate fee.[6] The lodestar calculation also may include

---

[5] 2014 OK 111, ¶ 36, 341 P.3d at 670 (emphasis added).

[6] *Spencer v. Okla. Gas & Elec. Co.*, 2007 OK 76 ¶14, n.20, 171 P.3d 890, 895; *Conti v. Republic Underwriters Ins. Co.*, 1989 OK 128, ¶¶ 22-23, 782 P.2d 1357, 1362; *Usrey v. Wilson*, 2003 OK CIV APP 25, ¶6, 66 P.3d 1000, 1002; *see also JLEE Co., L.L.C. v. Reneau Seed Co.*, 2014 OK CIV APP 65, ¶¶6-9 332 P.3d 297 (finding *Burk* was satisfied with an affidavit from the attorney and a billing summary in the fee motion); *City of Purcell v. Wilbanks*, 1998 OK CIV APP 170, ¶10, 968 P.2d 352 (same but with expert testimony and a letter from the attorney containing a narrative summary); *Circle F Ranch Co. v.*

the hours the attorneys expend in pursuit or defense of their fee application and on any appeals.[7]

14. The most important factor in any fee analysis under Oklahoma law is the result obtained in the case.[8] As such, in light of the outstanding recovery in this case, it is my opinion that the $17,333,333.33 fee award requested and previously awarded, representing $33^{1}/_{3}$% of the cash amount recovered for the Class, is well within the acceptable bounds articulated by the Oklahoma Supreme Court based upon the facts of this case.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

15. On September 1, 2015, the Court entered an Order Granting Preliminary Approval of Class Action Settlement, Certifying the Class for Settlement Purposes, Approving Form and Manner of Notice, and Setting Date for Final Fairness Hearing.[9] On

---

*Strehlau*, 1989 OK CIV APP 39, ¶10, 776 P.2d 855 (same with a brief and a detailed affidavit).

[7] *Burk*, 1979 OK 115, ¶ 17, 598 P.2d at 662.

[8] *See Hess v. Volkswagen of Am., Inc.*, 2014 OK 111, ¶ 35, 341 P.3d 662, 670 ("This Court has long recognized the importance of the relationship between the amount sued for in a case seeking only money damages and the results obtained." (citing *Tibbetts v. Sight 'N Sound Appliance Ctrs.*, 2003 OK 72, ¶ 11, 77 P.3d 1042; *Sw. Bell Tel. Co. v. Parker Pest Control*, 1987 OK 16, ¶ 13, 737 P.2d 1186); *Spencer*, 2007 OK 76, ¶ 13, 171 P.3d at 895 ("In all cases, the attorney fees must bear some reasonable relationship to the amount in controversy."); *Finnell v. Jebco Seismic*, 2003 OK 35, ¶ 17, 67 P.3d 339, 346 ("The final determination of an appropriate fee is further subject to the rule that it must bear some reasonable relationship to the amount in controversy."); *see also Hess*, 2014 OK 111, ¶ 3, 341 P.3d at 672 (Taylor, J., concurring) ("[T]he relationship of the attorney fees to the recovery is 'the most critical factor' in determining reasonable attorney fees." (quoting *Tibbetts*, 2003 OK 72, ¶ 13, 77 P.3d 1042, 1049)).

[9] Dkt. No. 115.

October 26, 2015, Class Counsel and Class Representative filed a Motion for Approval of Attorneys' Fees, Reimbursement of Litigation Expenses and Case Contribution Award and Memorandum of Law in Support.[10] That motion requested (1) attorneys' fees constituting 40% of the Settlement Cash Amount, (2) a Case Contribution Award of 1% of the Settlement Cash Amount for Class Representative, and (3) reimbursement of Litigation Expenses up to $900,000.[11] Class Counsel and Class Representative sent notice of these requests to Class Members.

16. On November 8 and 9, 2015, the court docketed two objections, both of which primarily concerned the requested attorneys' fees and incentive award.[12] Neither objection challenged the substantive terms of the Settlement itself.

17. On November 30, 2015, the Court conducted its Final Fairness Hearing. Then, on December 23, 2015, the Court issued the following orders: (1) Order and Judgment Granting Final Approval of Class Action Settlement;[13] (2) Plan of Allocation Order;[14] and (3) Order Awarding Attorneys' Fees, Reimbursement of Litigation Expenses and Case Contribution Award.[15] In its Order Awarding Attorneys' Fees, Reimbursement of Litigation Expenses and Case Contribution Award, the Court found that Class Counsel

---

[10] Dkt. Nos. 123-124.

[11] *Id.*

[12] Dkt. Nos. 130, 133.

[13] Dkt. No. 154.

[14] Dkt. No. 155.

[15] Dkt. No. 156.

were entitled to a fee award of 33 1/3% of the Settlement Cash Amount and that Class Representative was entitled to an incentive award of 0.5% of the same.[16] The court found these amounts to be both fair and reasonable, and did so "independent of" the objections.[17]

18. The two objectors then appealed.[18] On July 3, 2017, a two-judge panel of the Tenth Circuit reversed the attorneys' fee and incentive awards and remanded to this Court for further proceedings consistent therewith. The Panel first held that Oklahoma state law should govern the computation of attorney fees in this case.[19] The Panel then held that the "controlling precedent" for determining class action fee awards in Oklahoma is the Oklahoma Supreme Court's decision in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659 as later codified in § 2023.[20] In the Panel's opinion, however, Class Counsel did not provide the information necessary to apply the lodestar calculation called for in *Burk*,[21] and thus the panel found it necessary to remand for further factual development.[22] The Panel Opinion took no issue with this Court's ultimate finding that the proposed fee was fair and reasonable, nor did it upset this Court's approval of the Settlement. In fact, it ultimately expressly affirmed the Settlement.

---

[16] Dkt. No. 156, ¶¶ 9, 11(d).

[17] *Id.* ¶¶ 9-11(f).

[18] *See* Dkt. Nos. 159, 163 (Notices of Appeal).

[19] Panel Op., 888 F.3d at 461-63.

[20] *Id.* at 463-64.

[21] *Id.* at 464.

[22] *Id.* at 464, 470.

19. On August 16, 2017, Chieftain filed a Petition for Rehearing and Rehearing *En Banc*. On April 11, 2018, the Tenth Circuit denied Chieftain's Petition, but *sua sponte* vacated its original opinion and directed the clerk of the court to file a revised opinion expressly affirming this Court's settlement approval order.[23]

20. Chieftain is now before this Court on remand and has requested a hearing regarding Class Counsel's request for fees and costs and Class Representative's request for an incentive award.

**ANALYSIS AND REPORT**

**The Appropriate Analysis under Oklahoma Law**

21. When litigants and courts convene to determine attorney fees in Oklahoma class actions, they can be sure of three things: (1) the award must reflect the facts and circumstances unique to each case as considered according to the factors delineated in 12 O.S. § 2023(G)(4)(e); (2) the most important factor in any fee award is the relationship it bears to the result obtained in the case;[24] and (3) the ultimate determination of the fee award is a decision committed to the discretion of the trial court.[25] Noticeably absent from this

---

[23] *Chieftain Royalty Co. v. EnerVest Energy Inst. Fund XIII-A, L.P.*, No. 16-6022, 2018 U.S. App. Lexis 16997 (10th Cir. Apr. 11, 2018).

[24] *See Hess v. Volkswagen of Am., Inc.*, 2014 OK 111, ¶ 35, 341 P.3d 662, 670 ("This Court has long recognized the importance of the relationship between the amount sued for in a case seeking only money damages and the results obtained." (citing *Tibbetts v. Sight 'N Sound Appliance Ctrs.*, 2003 OK 72, ¶ 11, 77 P.3d 1042; *Sw. Bell Tel. Co. v. Parker Pest Control*, 1987 OK 16, ¶ 13, 737 P.2d 1186); *see also Hess*, 2014 OK 111, ¶ 3, 341 P.3d at 672 (Taylor, J., concurring) ("[T]he relationship of the attorney fees to the recovery is 'the most critical factor' in determining reasonable attorney fees." (quoting *Tibbetts*, 2003 OK 72, ¶ 13, 77 P.3d 1042, 1049)).

[25] *Hess*, 2014 OK 111, ¶ 9, 341 P.3d at 666-67.

list is the other objective criteria around which courts can structure their fee analysis—whether it be a customary percentage of the recovery or an hourly rate. This is so for two reasons.

22. The first is because 12 O.S. § 2023(G)(4)(e) does not explicitly endorse one method or the other. This is not for lack of trying or a lack of expertise, however. Indeed, certain members of the Legislature have tried, unsuccessfully, on multiple occasions, to bind courts to the lodestar methodology.[26] Moreover, in the statute the Legislature actually enacted into Oklahoma law—§ 2023—the Legislature specifically included such a requirement for the calculation of fees payable to referees and appointed counsel in fee disputes; no such language exists for fees for class counsel.[27] The fact that this language does not appear in § 2023(G)(4)(e) is dispositive proof, in my opinion, that Oklahoma law does not mandate a lodestar approach in class action fee awards.[28]

---

[26] *See* Declaration of Glenn Coffee at ¶¶10-26 (explaining the legislative history behind 12 O.S. § 2023(G)).

[27] 12 O.S. § 2023(G)(4)(d) ("if the court appoints an attorney to represent the class for the fee hearing pursuant to subparagraph c of this paragraph or refers the matter to a referee, . . . said independent attorney or referee shall be awarded reasonable fees by the court *on an hourly basis out of the proceeds awarded to the class*." (emphasis added)).

[28] *See State ex rel. Bd. Of Tax Roll Corr. v. Mack Truck Sales of Tulsa, Inc.*, 1980 OK 178, ¶ 11, 620 P.2d 388, 391 ("The Legislature must be presumed to know both the language employed in the former acts and the judicial construction placed upon them, and if in a subsequent statute on the same subject it uses different language in the same connection, the courts must presume that a change of the law was intended, and after a consideration of the spirit and letter of the statute will give effect to its terms according to their proper significance. So the omission of a word in the amendment or re-enactment of a statute will be assumed to have been intentional. . . . The statute in such a case should be effectuated as the language actually contained in the latest enactment warrants.") (quoting *Plummer v. Davis*, 1934 OK 499, ¶13, 36 P.2d 938, 941).

23. The second reason why no one method governs every class action fee award under Oklahoma law is because not every case has the same objective criteria available to it. This is where it becomes important to distinguish those cases in which one party is seeking fees from the other side of the "v."—*i.e.*, fee shifting—from those cases in which counsel simply seeks to obtain a reasonable fee from the persons they represent—*i.e.*, from the common fund obtained on behalf of the class under the common-fund doctrine. In fee-shifting cases, where we depart from the "American rule" and require one party in the underlying dispute to bear the costs and fees incurred by the other, there often is no agreement in place in which the party being ordered to pay the fees has agreed to pay the fees based on a percentage of the recovery. Put another way: there often is no contingency fee agreement—much less one between plaintiffs' counsel and defendants. This is precisely why the Court has said that cases like *State ex rel. Burk v. City of Okla. City*[29]—where the Court endeavored to "set[] criteria for a reasonable attorney's fee *in the absence of a contract or statute fixing the amount*"—are "not particularly helpful" in determining what is reasonable when such a contract *is* present.[30] What would be available in such cases—and, in fact, were available in *Burk*—are the attorneys' time records and the rate at which they typically bill; so, naturally, the Court set its standards around that data.

24. To be sure, *Burk* was not a class action, was not initiated under a contingency fee agreement, nor did it come with the benefit of the Legislative directive in 12 O.S. §

[29] 1979 OK 115, 598 P.2d 659.

[30] *State ex rel. Okla. Bar. Ass'n v. Flaniken*, 2004 OK 6, ¶ 11, 85 P.3d 824, 827 (emphasis added).

2023. Therefore, to the extent *Burk* ever had a role to play in class action fee awards, it is my opinion that any such role was supplanted by the enactment of 12 O.S. § 2023(G)(4)(e).[31] And *Hess* (while it was a class action, did come after the enactment of § 2023, and was initiated on a contingency basis) was a fee-shifting case in which the trial court ignored the evidence of reasonableness established by the contract in favor of a lodestar analysis—which the Supreme Court ultimately rejected. In fact, much of what the Court—and I—found to be error in the trial court's fee analysis in *Hess* was the fact that it used *Burk* to reach a fee award that was more than 150 times greater than the amount recovered for the class and, thus, more than 300 times greater than anything the attorneys could have received under a contingency fee agreement, and it used hours from another case that was not successful.[32] I am certain that, had the court in *Hess* tied its fee analysis more closely to the percentage authorized in the original fee contract, the likelihood of reversal would have gone dramatically down.[33] Of course, the attorneys could not have

---

[31] Indeed, when the Court addressed § 2023(G)(4)(e) in the *Hess* opinion, it only cited *Burk* a total of 4 times: twice in the body to explain what the trial court cited in determining its fee award (¶¶ 1 and 25); once in footnote 12 as support for the appellate standard of review; and once in footnote 14 as historical context for the § 2023 factors.

[32] *See* 5 O.S. § 7 (capping contingency fees at no more than 50% of the recovery).

[33] *See Hess*, 2014 OK 111, ¶ 10, 341 P.3d at 673 (Taylor, J., with whom Winchester, J., joined, concurring) ("On remand the trial court must . . . sever the unreasonable attorney fees and bring them in line with the recovery . . . ."); *see also Hess v. Volkswagen Grp. of Am., Inc.*, 2017 OK CIV APP 35, 398 P.3d 27 (affirming, after remand, the trial court's new fee award in which the court applied the lodestar method but reduced the rate-times-hours result by 70%), *cert. denied*, No. 114,131 (June 19, 2017); Order Den. Cert., *Hess v. Volkswagen Grp. of Am., Inc.*, No. 114,131 (Winchester, J., concurring in part, dissenting in part) ("I concur in an award for attorney's fees but I would review the amount as it relates to the amount recovered.") *available at* http://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=DF-114131&cmid=117203.

requested such a fee in that case because the amount actually recovered was less than $50,000.00 and, as such, they would have had to ask for a fee of $25,000.00 or less.

25. In fact, to my knowledge and based on my many years on the Court, the Oklahoma Supreme Court has never held that the use of a percentage approach in a common fund class action fee award constituted an abuse of discretion. Moreover, there is ample reason why the Court would not have done so, namely because of the natural relationship that such an award bears to the amount in controversy—the most important factor in determining fee awards under Oklahoma law.[34] The percentage approach squarely aligns the interests of both client and counsel, encouraging attorneys to secure the best result possible as efficiently as possible, and thereby eliminates the ills of fee churning and unnecessarily protracted litigation that so often mar the perception of class actions. The percentage approach also promotes judicial efficiency, allowing courts—at every level—to do the work of judges rather than of billing auditors.[35] Thus, in my opinion, so long as the court examines the facts of each case according to the factors provided in 12 O.S. § 2023(G)(4)(e), it is free to phrase its ultimate conclusion in terms of a percentage of the recovery—particularly where such a percentage has objective support in the form of a prior contingency-fee contract that represents the market rate for the legal services provided—

[34] *See* ¶ 14, n.8 *supra*.

[35] It is also my view that it is not necessary for a court to review detailed time records under this approach when evaluating the time-and-labor factor under § 2023(G)(4)(e). Attorney affidavits like those submitted in this case certainly suffice.

and especially in a common-fund case, where such an award has been customary for over a century.[36]

26. Indeed, because Oklahoma's 12 O.S. § 2023 is modeled after Federal Rule of Civil Procedure 23, it is even preferable for courts to phrase their common-fund fee awards in terms of a percentage of the recovery—as that is the method endorsed by virtually every federal court in the country.[37] And for good reason.

---

[36] *See Boeing Co. v. Gemert*, 444 U.S. 442, 478 ("Since the decisions in *Trustees* v. *Greenough*, 105 U.S. 527 (1882), and *Central Railroad & Banking Co*. v. *Pettus*, 113 U.S. 116 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Okla. Tax Comm'n v. Ricks*, 1994 OK 115, ¶ 6, 885 P.2d 1336, 1339 (describing the common-fund doctrine as: "When an individual's efforts succeed in creating or preserving a fund which benefits similarly situated non-litigants, equity powers may be invoked to charge that fund with attorney's fees for legal services rendered in its creation or preservation"; and noting that "Oklahoma case law has long recognized the doctrine").

[37] *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (describing the fee calculus under the common fund doctrine as "where a reasonable fee is based on a percentage of the fund bestowed on the class"); 5 NEWBERG ON CLASS ACTIONS § 15:66 (5th ed.) (collecting cases showing the federal circuits to have either permitted or required use of the percentage approach in common-fund cases, including: *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props. , Inc.*, 9 F.3d 513, 517 (6th Cir. 1993); *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*, 735 F.3d 993, 1002 (8th Cir. 2013); *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010); *Brown v. Phillips Petrol. Co.*, 838 F.2d 451, 545 (10th Cir. 1988); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991)); *Americana Art China Co. v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014); *In re Celebrex Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091 at *4 (E.D. Va. Apr. 18, 2018); *see also Roth v. Mercy Health Ctr., Inc.*, 2011 OK 2, ¶ 13 n.3, 246 P.3d 1079, 1084 n.3 ("Because the Oklahoma Pleading code is based on Federal Rules of Civil Procedure, . . . we may look to federal authority for guidance in applying its provisions. Additionally, we may rely upon

27. As the Supreme Court stated in *Boeing*: "The [common fund] doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."[38] The way to correct that inequity, the Court continued, is by "assessing attorney's fees against the entire fund, thus spreading the fees proportionately among those benefited by the suit."[39] And the surest way to spread those fees proportionately is by simply charging a flat percentage to the fund as a whole. Indeed, when compared to the lodestar method, the percentage method for a common-fund award (1) promotes efficiency by removing any incentive for fee churning; (2) removes the danger that fee churning will go unnoticed; (3) "reflects the economics of litigation" by couching the value of an attorney's services in terms of the value actually realized by the class—i.e. the amount of money they actually receive; (4) demands less of scarce judicial resources, and thus (5) allows for quicker distribution of the fund to the intended beneficiaries; and (6) promotes the uniform administration by providing a more objective basis for fee awards.[40] It should come as no surprise then that, since the time of *Burk*, courts around the country have been moving away from the lodestar method in favor of awards based on a percentage of the fund in contingent fee common fund cases.[41]

---

federal authorities insofar as they relate to the . . . correspond[ing] [sections] of our statute." (modification in opinion) (internal quotation marks and citations omitted)).

[38] 444 U.S. at 478.

[39] *Id.*

[40] *Swedish Hosp. Corp.*, 1 F.3d at 1268-70.

[41] *See* n.37 *supra*.

28. This trend has not skipped Oklahoma; the enactment of 12 O.S. §2023(G)—without the imposition of a lodestar calculus—is proof. Nor has this trend gone unnoticed in Oklahoma courts; courts across the state are applying the percentage approach in common fund class actions just like this one on a regular basis.[42] Thus, to look back to 1979 and say that *Burk* controls the fee award in this common fund class action—a situation *Burk* never addressed—is simply incorrect.

**<u>The Appropriate Analysis under *Burk*</u>**

29. The proper analysis notwithstanding, if this Court has been bound to apply the *Burk* factors as codified in § 2023, then it should be fully informed as to how to do so. The following is how the Supreme Court of Oklahoma has interpreted and applied the *Burk* and § 2023 analysis.

30. The first step in a *Burk* analysis is to peruse the attorneys' time records to determine the lodestar, which is arrived at by multiplying the attorneys' hourly rate by the number of hours expended in the case—including time spent in defense of the fee request and on appeal.[43] And while *Burk* requests "detailed" time records, those records need be neither contemporaneously recorded nor provided in any particular format. Rather, the

---

[42] *See Sholer v. State ex rel. Dept. of Public Safety*, 1999 OK CIV APP 100, ¶ 14, 900 P.2d 294; *Adkisson v. Koch*, No. 116,452 (Okla. Ct. Civ. App. Aug. 7, 2009) (unpublished) cert. denied Feb. 4, 2010; Minute Order, *Strack v. Continental Resources, Inc.*, No. CJ-10-75 (Okla. Dist. Ct. Blaine Cty. June 20, 2018) (Hladik, J.); Final Order Granting Class Counsel Attorneys' Fees, Litigation Costs, and Class Representative Incentive Award, *Bank of America, N.A. v. El Paso Natural Gas Co., et al.*, Case No. CJ-2004-45 (Okla. Dist. Ct. Washita Cty. Aug. 30, 2017) (Kelly, J.); *Fitzgerald Farms, LLC v. Chesapeake Operating L.L.C.*, No. CJ-2010-38, 2015 WL 5794008 (Okla. Dist. Ct. Beaver Cty. July 2, 2015).

[43] *Burk*, 1979 OK 115, ¶¶ 10, 16, 598 P.2d at 661, 662.

Court has held that "[a] fee award may be based on reconstructed records,"[44] and may take the form of a "recapitulation."[45] I have been made aware of Mr. Nutley's recent assertion that "Oklahoma decisions reject wholesale 'reconstructions' of time" records by attorneys.[46] This contention, however, is both legally incorrect and factually inaccurate. Legally, a long and unbroken line of Oklahoma Supreme Court precedents demonstrate that reconstructed time records, or even testimony by affidavit, satisfy *Burk*'s call for detailed time records.[47] Factually, the record here is clear that many of Class Counsel's attorneys kept detailed time records as the time was incurred, while those who did not have used their contemporaneous records, which include case files, email correspondence and calendar entries, as well as their considerable experience in high profile contingent fee commercial litigation across the country, to reliably and conservatively reconstruct or

---

[44] *Spencer v. Okla. Gas & Elec. Co.*, 2007 OK 76 ¶14, n.20, 171 P.3d 890, 895; *see also Conti v. Republic Underwriters Ins. Co.*, 1989 OK 128, ¶ 22, 782 P.2d 1357, 1362 (rejecting the argument that *Burk*'s aspirational record-keeping language was mandatory and reminding that "[t]he precise language from *Burk* is that: 'Attorneys in this state *should* be required to present . . . . detailed time records'"); *Usrey v. Wilson*, 2003 OK CIV APP 25, ¶6, 66 P.3d 1000, 1002 ([N]othing in *Burk* or *Oliver's* prevents an attorney fee award based on a reconstruction of the time spent on a case based upon other records which verify the activity in the case, such as the court file or the attorney's copies of letters, pleadings, or file memoranda.").

[45] *Conti*, 1989 OK 128, ¶ 23, 782 P.2d at 1362; *see, e.g., JLEE Co., L.L.C. v. Reneau Seed Co.*, 2014 OK CIV APP 65, ¶¶6-9 332 P.3d 297 (finding *Burk* was satisfied with an affidavit from the attorney and a billing summary in the fee motion); *City of Purcell v. Wilbanks*, 1998 OK CIV APP 170, ¶10, 968 P.2d 352 (same but with expert testimony and a letter from the attorney containing a narrative summary); *Circle F Ranch Co. v. Strehlau*, 1989 OK CIV APP 39, ¶10, 776 P.2d 855 (same with a brief and a detailed affidavit).

[46] Charles David Nutley's Response to Class Representative's Motion for Hearing on Remand (Dkt. No. 274) at 11.

[47] *See* nn.44-45 *supra.*

account for their time in this case. Such is perfectly allowable under Oklahoma law. And, in any event, the type of evidence an attorney submits to support their time in a case—and the manner in which the attorney documents or attests to that time—are matters bearing on the evidentiary weight that a trial judge, in his or her discretion, determines should be afforded to such evidence. The rigid standards Mr. Nutley urges are simply foreign to the flexible, discretion-laden body of law that forms Oklahoma's fee jurisprudence. In short, the *Burk* analysis gives wide latitude to courts and counsel in terms of what may be considered in accounting for an attorney's time in the case.[48]

31. Next, the court must determine whether to enhance the lodestar by considering the "*Burk* factors" (which also appear in 12 O.S. § 2023).[49] Those factors include (1) time and labor required, (2) the novelty and difficulty of the questions presented by the litigation, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the

[48] *See Burk*, 1979 OK 115, ¶ 22, 598 P2d at 663 ("[A]buse of discretion by the trial judge is the standard of review. Therefore, the trial court should set forth with specificity the facts, and computation to support his award. . . . [T]he compensatory fee is not all that difficult a problem on review if the trial court has made findings into the record regarding hours spent and reasonable hourly rates . . . .").

[49] *Burk*, 1979 OK 115, ¶¶ 8, 10, 598 P.2d at 661. To be clear, however, only the first twelve factors in § 2023 exist in *Burk*. The last, "the risk of recovery in the litigation," is unique to the statute. *Burk* also suggests that lawyers "should offer evidence relating to one or more" of the factors, 1979 OK 115, ¶ 21 598 P.2d at 663, whereas § 2023 mandates that the court "shall consider" all factors. This is further evidence that 12 O.S. § 2023—not *Burk*—governs the fee-award analysis in class actions like this one. Nevertheless, because the Panel Opinion was not clear whether to apply a straight *Burk* test or a hybrid accounting for § 2023, I would—out of an abundance of caution—recommend that this Court consider all of the factors in § 2023. That is, after all, what Oklahoma law requires, and I shall therefore continue my analysis accordingly.

customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount in controversy and the results obtained, (9) the experience, reputation and ability of the attorney, (10) whether or not the case is an undesirable case, (11) the nature and length of the professional relationship with the client, (12) awards in similar causes, and (13) the risk of recovery in the litigation.[50] Consideration of these factors acknowledges that "[f]ees cannot fairly be awarded on the basis of time alone," as time alone "is of dubious value" given its ability to be manipulated to the detriment of "expeditious disposition of litigation."[51]

32. The most critical of these factors is number (8), the amount in controversy and the results obtained.[52] The Oklahoma Supreme Court has consistently placed great

---

[50] 12 O.S. § 2023(G)(4)(e); *see also Burk*, 1979 OK 115, ¶ 8, 598 P.2d at 661. It is rare for the Supreme Court to review the trial court's reasoning on each factor in a given case, *see, e.g.*, *Robert L. Wheeler, Inc. v. Scott*, 1989 OK 106, 777 P.2d 394, mostly because the reasonableness of a fee award in Oklahoma is a question of fact for the trial court and is accordingly reviewed for abuse of discretion. *Hess*, 2014 OK 111, ¶ 9, 341 P.3d at 667. Thus, in my opinion, based on my time as both a trial and appellate court judge, the most helpful sources for understanding how Oklahoma courts apply these factors are the trial court Orders. One that I find particularly sound, and thus instructive, is Judge Parsley's Order Granting Class Counsel Fees, Litigation Costs, and Incentive Award in *Fitzgerald Farms, LLC v. Chesapeake Operating, L.L.C.*, No. CJ-2010-38, 2015 WL 5794008 (Okla. Dist. Ct. Beaver Cty. July 2, 2015). *See also, e.g.*, Minute Order, *Strack v. Continental Resources, Inc.*, No. CJ-10-75 (Okla. Dist. Ct. Blaine Cty. June 20, 2018) (Hladik, J.); Final Order Granting Class Counsel Attorneys' Fees, Litigation Costs, and Class Representative Incentive Award, *Bank of America, N.A. v. El Paso Natural Gas Co., et al.*, Case No. CJ-2004-45 (Okla. Dist. Ct. Washita Cty. Aug. 30, 2017) (Kelly, J.).

[51] *Oliver's Sports Ctr., Inc. v. Nat'l Std. Ins. Co.*, 1980 OK 120, ¶ 6, 615 P.2d 291, 294.

[52] *Tibbetts*, 2003 OK 72, ¶4, 77 P.3d at 1046 (describing the results obtained in the case as "the overriding and critical factor"); *see also Hess*, 2014 OK 111, ¶¶ 10, 35, 341 P.3d at 667, 670 ("In all cases, the attorney fees must bear some reasonable relationship to the amount in controversy. . . . This Court has long recognized the importance of the

weight on the relationship between the amount in controversy in a case, the amount recovered, and the amount requested in attorneys' fees.[53] Yet, to my knowledge, the Court has never identified an optimal result-to-fee ratio; nor has it ever set a floor or ceiling.[54] Indeed, although statute caps the percentage that an attorney may request in a contingency fee contract at 50% of the net recovery in a case,[55] the Court has affirmed fee awards that far exceeded that amount pursuant to the *Burk* analysis—including fee awards that even eclipsed the amount recovered in the case (once by as much as 55x the recovery).[56] In *Hess*, for example, class counsel eventually obtained a fee award that—even after having its lodestar reduced—still represented an amount 21.5 times greater than the class recovery.[57]

---

relationship between the amount sued for in a case seeking only money damages and the results obtained.").

[53] *See Hess*, 2014 OK 111, ¶¶ 35-36, 341 P.3d at 670; *Tibbetts*, 2003 OK 72, ¶ 11, 77 P.3d 1042, 1049; *Finnell v. Jebco Seismic*, 2003 OK 35, ¶ 19, 67 P.3d 339, 347; *Sw. Bell Tel. Co. v. Parker Pest Control*, 1987 OK 16, ¶ 17, 737 P.2d 1186, 1189.

[54] *See Finnell*, 2003 OK 35, ¶ 19, 67 P.3d at 347 ("While we are committed to the rule that a fee for legal services must bear some reasonable relationship to the judgment, we have never identified a percentage above which a fee's relationship to the damage award must be deemed unreasonable *per se*.").

[55] 5 O.S. § 7.

[56] *E.g.*, *Finnell*, 2003 OK 35, ¶ 19, 67 P.3d at 347 (affirming a fee award that represented 65% of the amount recovered in the case); *see also id.* (collecting cases, including *Arkoma Gas Co. v. Otis Eng'g Corp.*, 1993 OK 27 (fee that represented 5500% of (55 times) the recovery); *Parker Pest Control*, 1987 OK 16, (fee that represented 200% of the recovery); and *Catlin Aviation Co. v. Equilease Corp.*, 1981 OK 13, 626 P.2d 857 (fee that represented 51% of the recovery)).

[57] *Hess*, 2017 OK CIV APP 35, ¶¶ 2, 32, 398 P.3d 27, 30, 38 (affirming the $983,161.75 fee award, which represented only 30% of counsel's lodestar but was still 21.5 times the class's $45,780 recovery), *cert. denied*, No. 114,131 (June 19, 2017).

Results like these are an unfortunate, yet natural, consequence of *Burk*'s lodestar methodology.

33. Accordingly, it is my opinion that the fee requested in this case, and the fee previously awarded by this Court, which represents only 33 1/3% of the cash amount recovered for the Class ($17,333,333.33 out of a $52,000,000.00 recovery), is well within the range routinely accepted by the Supreme Court of Oklahoma.[58]

34. Indeed, the reasonableness of Class Counsel's fee request in this case is made even more evident when considering that the cash amount recovered for the class ($52,000,000) represents 100% of the unpaid royalty principal sought in this litigation. As stated above, the importance of the result's relation to the amount in controversy is of paramount concern.[59] And, when contrasted with other Oklahoma fee cases—cases like *Hess, Tibbetts, Parker Pest Control, Arkoma Gas,* and *Catlin Aviation,* where the amount recovered represented only a fraction of the amount sought[60]—the results obtained in this

---

[58] *See Finnell*, 2003 OK 35, ¶ 19, 67 P.3d at 347 ("The [65%] allowance awarded in the instant case is clearly within the range of fees in relation to damages previously approved by the court.").

[59] *See Hess*, 2014 OK 111, ¶¶ 35-36, 341 P.3d at 670; *Tibbetts*, 2003 OK 72, ¶ 11, 77 P.3d 1042, 1049; *Finnell v. Jebco Seismic*, 2003 OK 35, ¶ 19, 67 P.3d 339, 347; *Sw. Bell Tel. Co. v. Parker Pest Control*, 1987 OK 16, ¶ 17, 737 P.2d 1186, 1189.

[60] *Hess*, 2014 OK 111, ¶ 34, 341 P.3d at 670 (noting the class had only been paid $45,780 (0.015%) of the potential $295,000,000 in benefits sought); *Tibbetts*, 2003 OK 72, ¶ 11, 77 P.3d 1042, 1049 (client received ***no monetary relief*** in suit seeking "approximately" $1,000,000 in damages); *Parker Pest Control*, 1987 OK 16, ¶ 21, 737 P.2d at 1190 (client received $1,500 (39%) of the $3,867 sought); *Arkoma Gas Co.*, 1993 OK 27, ¶¶ 2-4, 849 P.2d at 393 (client received $100 (~0.14%) in suit seeking "in excess of" $70,000); *Catlin Aviation*, 1981 OK 13, ¶ 4, 626 P.2d at 858 (client received $1,167 (~7%) in suit seeking "nearly" $17,000).

case are truly outstanding. Couple the cash amount in this settlement with the equitable relief obtained (a mandatory change in the Settling Parties' royalty-payment methodology, presently valued at almost $3,000,000), and the reasonableness of Class Counsel's fee request is beyond reproach.

35. The final piece of *Burk* this court should note, is the process for appellate review. The Oklahoma Supreme Court recognizes that "the reasonableness of attorney fees depends on the facts and circumstances of each individual case" and that, in this regard, the trial court sits as a trier of fact.[61] Accordingly, Oklahoma appellate courts review the reasonableness of any fee award under the deferential abuse-of-discretion standard, reversing only where the lower court's decision is "without rational basis in the evidence or where it is based upon erroneous legal conclusions."[62] Trial courts, therefore, "should set forth with specificity the facts, and computation to support [their] award."[63] In the end however, the Oklahoma Supreme Court firmly stands by the notion that the trial court, with its boots in the trenches, "is in a far better position to judge the demands of the case than are we."[64]

---

[61] *Hess*, 2014 OK 111, ¶ 9, 341 P.3d at 666; *see Burk*, 1979 OK 115, ¶ 22, 598 P.2d at 663 ("[T]he value placed on additional factors will be different in each case.").

[62] *Hess*, 2014 OK 111, ¶ 9, 341 P.3d at 666; *see Burk*, 1979 OK 115, ¶ 22, 598 P.2d at 663.

[63] *Burk*, 1979 OK 115, ¶ 22, 598 P.2d at 663.

[64] *Finnell*, 2003 OK 35, ¶ 21, 67 P.3d at 347.

**CONCLUSION**

36. The law governing class action fee awards in Oklahoma is 12 O.S. § 2023(G), and it requires that courts consider fee awards according to each of 13 factors—nothing more; nothing less. So long as the court analyzes the facts and evidence bearing on each of those factors, it is within its discretion to phrase its ultimate decision in terms of either a percentage of the fund, a lodestar-plus-enhancement calculation, or some combination thereof. *Burk*, on the other hand, requires that courts begin with a lodestar calculation, and then proceed into the same multi-factor analysis in determining whether and how to appropriately enhance that lodestar. Regardless of the approach utilized, however, "the overriding and critical factor" under Oklahoma law is the result obtained in the case. Accordingly, in light of the outstanding recovery in this case, it is my opinion that the $17,333,333.33 fee award requested, representing 33 1/3% of the cash amount recovered for the Class, is well within the range accepted by the Oklahoma Supreme Court.

Respectfully Submitted,



Joseph M. Watt
July 31, 2018

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHIEFTAIN ROYALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SM ENERGY COMPANY (including predecessors, successors and affiliates), ENERVEST ENERGY INSTITUTIONAL FUND XIII-A, L.P., ENERVEST ENERGY INSTITUTIONAL FUND XIII-WIB, L.P., ENERVEST ENERGY INSTITUTIONAL FUND XIII-WIC, L.P., ENERVEST OPERATING, L.L.C., and FOURPOINT ENERGY, LLC,<br><br>Defendants. | ) | Case No. CIV-011-177-D |

**DECLARATION OF GLENN COFFEE**

I, GLENN COFFEE, state and declare as follows:

1. I have been asked by Class Counsel to provide a declaration regarding Oklahoma law governing the award of attorneys' fees in common fund class actions and, specifically, the legislative history and intent surrounding the Oklahoma Legislature's enactment of the statue that governs such awards under Oklahoma law: 12 OKLA. STAT. § 2023(G). I am the individual who negotiated the specific language and requirements ultimately adopted in this statute. My Declaration is made on the basis of my own personal knowledge and, if called as a witness, I could and would competently testify to the matters stated herein. I am not being compensated for this Declaration.

**Biographical Background and Experience**

2. I graduated from the University of Oklahoma College of Law in 1992 and have been a practicing Oklahoma lawyer for 26 years. I am the founding partner of Glenn Coffee & Associates—an Oklahoma City law firm. Prior to founding Glenn Coffee & Associates, I spent more than a decade as an elected State Senator. I was also selected by Governor Marry Fallin to run her transition office, and appointed as Oklahoma Secretary of State by Governor Fallin in January 2011, serving in that capacity until January 2013.

3. I was first elected to the Oklahoma Senate in 1998. I served in a variety of leadership positions in the Oklahoma Senate, including Minority Floor Leader from 2004 through 2006 and Senate Co-President *Pro Tempore* from 2007 through 2008. I became the first Republican in Oklahoma history to serve as President *Pro Tempore*, the top leadership position in the Oklahoma State Senate. I was elected to serve in that capacity for a two-year term from 2009 through 2010.

4. My curricula vitae and biographical information is attached to this Declaration as Exhibit 1.

5. I personally negotiated the language that was both included in and excluded from the Bill that was enacted into law in 2009—the language that is now codified as 12 OKLA. STAT. §2023(G)—the law in Oklahoma setting forth the requirements for any award of attorneys` fees to class counsel in an Oklahoma class action.

6. I have read the decision of the two-judge panel for the United States Court of Appeals for the Tenth Circuit in *Chieftain Royalty Company v. EnerVest Energy Inst. Fund XIII-A, L.P., et al.*, No. 16-6022 (10th Cir. April 11, 2018). I realize that the Panel

Order requires the Court to follow Oklahoma law in assessing the reasonable attorney fee here. I also understand that the Panel Order instructed the Court that the rule for assessing attorneys' fees in Oklahoma class actions was codified in Rule 2023. Because of my direct involvement in the enactment of Rule 2023, Class Counsel has requested me to provide my unique insight into what Oklahoma law—as enacted by the Oklahoma Legislature—does and does not require Oklahoma courts to do when analyzing a fee request from class counsel.

7. As a threshold matter, the Panel Order is incorrect in stating that Rule 2023 does not allow an Oklahoma trial court to use a percentage of the fund method when assessing attorneys` fee awards in common fund class actions. Rule 2023 simply set forth a 13 factor analysis that Oklahoma courts must follow in assessing fees and the time and labor (or lodestar) factor is only one of those factors.

8. Nevertheless, I understand the Panel Order requires the Court to apply a lodestar analysis in this case in the first instance even if that is not what Oklahoma law, as set forth in Rule 2023, actually requires.

9. While the Panel Order may require the Court to apply a lodestar analysis, it also requires the Court to follow Rule 2023. Rule 2023 does ***not*** require a straight lodestar for class counsel fees. Rule 2023 does ***not*** disallow an enhancement multiplier. And Rule 2023 does ***not*** cap the multiple that is used when a court does use an enhancement multiplier.

**Summary of Opinions**

10. Rule 2023(G) was drafted and intended to govern any award of attorneys'

fees to class counsel in an Oklahoma class action. 12 OKLA. STAT. §2023(G). Rule 2023(G) does not require Oklahoma courts to utilize a "lodestar" or rates-times-hours methodology for determining reasonable attorneys' fees to award class counsel in a common fund class action. Oklahoma courts can use the percentage of the fund approach in common fund cases as long as they apply the 13 mandatory factors required by Rule 2023. 12 OKLA. STAT. §2023(G)(4)(e). As shown in the legislative history discussed below, certain legislators proposed bills that would impose a straight lodestar requirement for all class action fees but the Legislature repeatedly rejected such bills. Moreover, Oklahoma law does not place any sort of cap or ceiling on the "multiplier" a court may find appropriate in the event a trial court elects to use the "lodestar" methodology. Again, as the legislative history discussed below shows, certain legislators proposed bills that would require such caps but the Legislature repeatedly considered and rejected any such requirement.

**The Legislative History of 12 OKLA. STAT. §2023(G)**

11. In 2004, during the 2nd Session of the 49th Legislature, Representative Newport introduced House Bill 2575 ("2004 HB2575"). *See* Exhibit. 2. 2004 HB2575 proposed the following with respect to attorneys' fee awards in class actions:

> A. In class actions, if an award of attorney fees is available, the trial court ***shall use the Lodestar Rule*** to calculate the amount of fees to be awarded to class counsel. The Court may increase or decrease the fee award calculated by using the Lodestar method ***by no more than four times*** based on specified factors established by rule of the Supreme Court.
>
> . . .

Exhibit 2 at SECTION 1 (emphasis added). The proposed bill then set forth 12 factors that should be considered in assessing the enhancement award.

12. 2004 HB2575 never received a vote in the House and did not become law.

13. Instead, a separate Bill—House Bill 2661 ("2004 HB2661") (attached hereto as Exhibit 3), introduced by Representatives Adair, Pettigrew, Adkins and McClain and Senator Hobson—was ultimately enrolled and signed into law by the Governor on May 28, 2004. In contrast to 2004 HB2575, this statute included the following with regard to attorneys' fees in class actions:

> In class actions, in making an award of attorney fees, the court shall conduct an evidentiary hearing to determine a fair and reasonable fee for class counsel. In making such a determination, the court shall act in a fiduciary capacity on behalf of the class.

Exhibit 3 at SECTION 1. Notably absent from the new law was any requirement that trial courts use a lodestar in assessing class counsel fees in a common fund class action.

14. During the 2nd Session of the 50th Legislature in 2006, a senator proposed a bill that would impose a "lodestar" requirement in Oklahoma class actions. Senate Bill 2040 ("2006 SB2040") (attached hereto as Exhibit 5), introduced by Senator Williamson, proposed to add a threshold lodestar requirement that would then be enhanced by the 12 enhancement factors:

> A. In class actions, if an award of attorney fees is available, the trial court ***<u>shall use the Lodestar Rule to calculate the amount of fees to be awarded to class counsel</u>***. The court may increase or decrease the fee award calculated by using the Lodestar method ***<u>by no more than four times</u>*** based on specified factors established by rule of the Supreme Court.
>
> . . .
>
> C. As used in this section, "Lodestar Rule" means the number of hours reasonably expended multiplied by the prevailing hourly rate in the community and then adjusted for other factors. In arriving at just compensation, the court shall consider the following factors:

Exhibit 5 at SECTION 1 (emphasis added)(also listing 12 proposed factors).

15. 2006 SB2040 never received a vote. Thus, the proposed "lodestar" requirement and multiplier cap did not become Oklahoma law.

16. During the 1st Session of the 51st Legislature in 2007, a lodestar requirement was again proposed with House Bill 1886 ("2007 HB1886") (attached hereto as Exhibit 6). This Bill again proposed a "lodestar" and multiplier-cap requirement for attorney fee awards in Oklahoma class actions, this time with a cap of a 3 times multiplier:

> A. In class actions, if an award of attorney fees is available, ***the trial court shall use the Lodestar Rule to calculate the amount of fees to be awarded to class counsel***. The court may increase or decrease the fee award calculated by using the Lodestar method ***by no more than three times*** based on specified factors in subsection C of this section.
>
> . . .
>
> C. As used in this section, "Lodestar Rule" means the number of hours reasonably expended multiplied by the prevailing hourly rate in the community and then adjusted for other factors. In arriving at just compensation, the court shall consider the following factors:

Exhibit 6 at SECTION 1 (emphasis added)(listing 12 factors).

17. HB 1886 never received a vote in the House. Thus, the proposed "lodestar" requirement and multiplier cap did not become Oklahoma law.

18. Finally, during the 1st Session of the 52nd Legislature in 2009, Representative Sullivan introduced House Bill 1603 ("2009 HB1603"). In pertinent part, the engrossed version of 2009 HB1603 proposed the following:

> F. ATTORNEY FEES.
>
> 1. In class actions, if an award of attorney fees is available, the trial court ***shall use the Lodestar Rule to calculate the amount***

> ***of fees to be awarded to class counsel.*** The court may increase or decrease the fee award calculated by using the Lodestar method by ***no more than three times*** based on specified factors established by rule of the Supreme Court.
>
> . . .
>
> 3. As used in this section, "Lodestar Rule" means the number of hours reasonably expended multiplied by the prevailing hourly rate in the community and then adjusted for other factors. In arriving at just compensation, the court shall consider the following factors:

Engrossed House Bill No. 1603 (attached hereto as Exhibit 7) at SECTION 23(F) (emphasis added)(listing factors).

19. That version was ***not*** the version ultimately adopted and enrolled for the Governor's signature.

20. The Bill that was enacted ***excluded*** any amendments requiring either a "Lodestar Rule" or a cap on the allowable multipliers. *See* Enrolled House Bill No. 1603 (attached hereto as Exhibit 8) at SECTION 16(G).

21. The final version of 2009 HB1603, which became Oklahoma law, provided:

G. ATTORNEY FEES AND NONTAXABLE COSTS.

> 1. In a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by law or by the parties' agreement.
>
> . . .
>
> e. in arriving at a fair and reasonable fee for class counsel, the court shall consider the following factors:
>
> (1) time and labor required,
>
> (2) the novelty and difficulty of the questions presented by the litigation,
>
> (3) the skill required to perform the legal service properly,

(4) the preclusion of other employment by the attorney due to acceptance of the case,

(5) the customary fee,

(6) whether the fee is fixed or contingent,

(7) time limitations imposed by the client or the circumstances,

(8) the amount in controversy and the results obtained,

(9) the experience, reputation and ability of the attorney,

(10) whether or not the case is an undesirable case,

(11) the nature and length of the professional relationship with the client,

(12) awards in similar causes, and

(13) the risk of recovery in the litigation . . .

*Id.*

22. On May 21, 2009, the Governor signed this version—the final enrolled version—of 2009 HB1603 into law. And, these requirements remain the law of Oklahoma for the award of attorneys' fees in class actions today under 12 OKLA. STAT. §2023(G).[1] There is no lodestar requirement. There is no multiplier cap. 12 OKLA. STAT. §2023(G)(4)(e)(1)-(13).

**Oklahoma Law Does Not Require a "Lodestar" Analysis in Class Actions**

23. As the legislative history set forth above shows, the Oklahoma Legislature repeatedly has considered and rejected attempts to require Oklahoma judges to perform a

[1] The Oklahoma Supreme Court eventually struck down 2009 HB1603 as unconstitutional under the State constitution's single-subject requirement. *Douglas v. Cox Ret. Props.*, 2013 OK 37, 302 P.3d 789. But, the Legislature then re-enacted the provisions of HB1603 as separate provisions, including what is now 12 OKLA. STAT. §2023(G), as part of 2013 House Bill 1013.

"lodestar" analysis in awarding reasonable attorneys' fees to class counsel in Oklahoma class actions. The Legislature specifically has rejected such attempts on at least four separate occasions: in 2004, 2006, 2007 and 2009. I know this because I was in office during this time and, I personally negotiated the precise language that was enacted into law in 2009 HB1603, codified today in 12 OKLA. STAT. §2023(G)(4)(e)(1)-(13).

24. This conclusion is further buttressed by the Legislature's distinct treatment of fee awards to class counsel, as opposed to fee awards to a special referee appointed by the court in class actions. On the one hand, in awarding attorneys' fees to class counsel—who most often work on a contingency basis and thus incur substantial risk of no payment at all—a court must consider the thirteen (13) factors to determine a reasonable fee. *See* Exhibit 8 at SECTION 16(G); 12 OKLA. STAT. §2023(G)(4)(e)(1)-(13).

25. On the other hand, for an award of attorneys' fees to a court-appointed referee—who does not prosecute the class' claims or incur any litigation risk—the Legislature determined that an "hourly basis" does serve as a proper means for calculating reasonable compensation. Specifically, the law we enacted instructed Oklahoma courts as follows:

> [I]f the court appoints an attorney to represent the class for the fee hearing pursuant to subparagraph c of this paragraph or refers the matter to a referee, . . . said independent attorney or referee shall be awarded reasonable fees by the court on an hourly basis out of the proceeds awarded to the class, . . .

Exhibit 8 at SECTION 16(G). This distinct "hourly" requirement remains the law in Oklahoma class actions today. 12 OKLA. STAT. §2023(G)(4)(d). And no enhancement or multiplier is allowed.

26. In short, the plain language and legislative history of OKLA. STAT. §2023(G) demonstrate that the Oklahoma Legislature fully considered and rejected both the "lodestar" method for calculating attorneys' fees and a cap on any multiplier.

**<u>Oklahoma Law Does Not Place a Cap on Multipliers in the event a Court Employs a Lodestar Method</u>**

27. The Oklahoma Legislature was also aware that courts may apply a lodestar basis in fee shifting cases where the losing party is required to pay fees by law or by an agreement. And the Legislature was aware that when courts apply a "lodestar" method they will often enhance or decrease the results of the basic rate-times-hours calculus to arrive at a fee that is more commensurate with the result and class counsel's efforts in the case. This process acknowledges, among other things, that: contingency fee lawyers are not compensated based on their time, but on the result they obtain for their client(s); not all hours spent in litigation are equal; and litigation risk, including the risk of no compensation at all despite paying all of the clients' litigation expenses—is of paramount importance in determining a "reasonable" fee award. And, even when a lodestar is required because fee shifting is required by law or by agreement of the parties, Rule 2023 recognizes that the result achieved is the most important factor—thus allowing a trial court to enhance or decrease the lodestar even in a fee shifting case. The Legislature's consideration of this reality is demonstrated by the fact that with 2004 HB2575, 2006 SB2040, and 2007 HB 1886, caps on such "multipliers" were specifically considered, debated and ultimately rejected.

## CONCLUSION

28. The Legislature *did not* endorse one method over the other in 12 OKLA. STAT. §2023. The Legislature did not prohibit Oklahoma courts from utilizing the "percentage of the fund" method that Oklahoma courts historically have employed in common-fund class actions. If the Court believes it is required to apply a lodestar approach due to the Panel Order, even though such is not actually required under Oklahoma law, it is important that Rule 2023 be followed as written. The Legislature did not draft or intend for Rule 2023 to impose a straight lodestar requirement or any multiplier cap on class counsel's fees in common fund cases or fee shifting cases. It was the Legislature's intent (1) to leave discretion with the courts when it came to choosing the objective marker on which to base its fee award—whether customary percentage or hourly rate—but (2) to make sure that, whichever objective marker the court used, it also accounted for the facts and circumstances unique to each case. Accordingly, the Legislature adopted a law that was silent as to the first issue, but provided mandatory guidance—an analysis of thirteen (13) factors—as to the second. *See* Exhibit 8 at SECTION 16(G); 12 OKLA. STAT. §2023(G)(4)(e).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

July 16, 2018 Respectfully Submitted,

Glenn Coffee

# Exhibit 1



Glenn Coffee

Glenn Coffee is a businessman, attorney and family man who was the first Republican in Oklahoma history to serve as President Pro Tempore, the top leadership position in the Oklahoma State Senate. Coffee was also the longest-serving Republican leader in the Senate. Coffee was selected by Governor Mary Fallin to run her transition office and appointed as Oklahoma Secretary of State by Governor Mary Fallin in January, 2011 and served until January 2013.

In 2008 Republicans made history by winning their first-ever majority in the Oklahoma Legislature's upper chamber. As the leader of the new majority, Coffee was elected to a two-year term as President Pro Tempore (2009-2010).

First elected to the State Senate in 1998, Coffee quickly gained a reputation as a leader and a reformer. He has served in a variety of leadership posts in the State Senate, including Minority Floor Leader (2004-2006), and as Senate Co-President Pro Tempore (2007-08) after Republicans won a historic tie in the Oklahoma State Senate in the 2006 elections, sharing the responsibility of running the State Senate with his Democrat counterpart.

Coffee earned an undergraduate degree in Political Science from Northeastern State University in 1989 and was named Outstanding Senior. He received a law degree from the University Of Oklahoma College Of Law in 1992.

Throughout his 12 years in the Legislature, Coffee was honored by numerous organizations for his dedication to education, as well as for his efforts to improve public safety and for his legislation aimed at better protecting Oklahoma's children. The Higher Education Alumni Association honored Coffee with its Lifetime Achievement Award for his support of higher education, and Northeastern State University awarded Coffee 2003 Citation of Merit, Young Alumnus Award. The Institute for Child Advocacy named

Coffee to its Child Advocates Hall of Fame. Coffee received appreciation awards from the District Attorneys Council, the Oklahoma Sheriffs Association, and the State Troopers Association for his support of law enforcement and public safety issues.

Coffee was selected as the 2009 Legislator of the Year by the Oklahoma Rifle Association and the Oklahoma Independent Petroleum Association. In 2010, Coffee received the State Chamber of Oklahoma's Spirit of Leadership Award for creating the first Republican majority in Oklahoma's Senate history as well as becoming first Republican President Pro Tempore. Coffee received the American Legislative Exchange Council's 2010 National Legislator of the Year Award.

In 2013, Coffee Started Glenn Coffee & Associates, a law firm focusing on government ethics, campaign finance and government boards and commission work. Coffee serves as general counsel for TVC Marketing Association, a family business providing road and motor club services and other services to small businesses. Coffee lives in Oklahoma City with his wife Lisa and their four children, sons Collin and Blaine and daughters Anna and Kate.

# Exhibit 2

STATE OF OKLAHOMA

2nd Session of the 49th Legislature (2004)

HOUSE BILL HB2575: Newport

AS INTRODUCED

An Act relating to tort reform; providing method of calculating attorney fees for class action cases; providing for judicial discretion to modify the fee award; requiring attorney fees to include noncash benefits in certain circumstances; defining term; amending 12 O.S. 2001, Section 95, as amended by Section 1, Chapter 402, O.S.L. 2002 (12 O.S. Supp. 2003, Section 95), which relates to limitations on civil actions; excluding product liability actions from the statute of limitations; providing a statute of repose for product liability actions; authorizing the court to decline to exercise jurisdiction under the doctrine of forum non conveniens; providing factors that the court may consider; requiring each plaintiff to establish venue in cases in which there are multiple plaintiffs; providing for interlocutory appeal; amending 12 O.S. 2001, Section 727, which relates to interest on judgments; providing that prejudgment interest shall not be allowed for awards for future damages; modifying method of computing postjudgment interest; amending 12 O.S. 2001, Section 990.4, which relates to stay of enforcement of judgments and appeal bonds; placing limit on the maximum amount of appeal bond; providing for the lowering of the appeal bond under certain circumstances; authorizing the court to enjoin a judgment debtor from dissipating or transferring assets in certain circumstances; amending 12 O.S. 2001, Section 993, which relates to interlocutory appeals from certain orders; modifying grounds for interlocutory appeals; providing standard for making certain determination; requiring the Supreme Court to make certain determination within certain time; amending 12 O.S. 2001, Section 1101.1, as amended by Section 7, Chapter 468, O.S.L. 2002 (12 O.S. Supp. 2003, Section 1101.1), which relates to offers of judgment; modifying conditions under which a plaintiff or defendant may recover litigation costs; removing the monetary limitation on application of offer of judgment law; limiting the amount of litigation costs that may be awarded; providing that a plaintiff or defendant is not entitled to recover fees and costs in certain circumstances; excluding certain fees and costs from calculation of litigation costs; amending 12 O.S. 2001, Section 2023, which relates to class actions; requiring the court to hear and rule on certain motions before making a determination on certifying a class; providing effect of interlocutory appeal in certain circumstances; creating the Judicial Panel on Multidistrict Litigation; providing for composition and appointment of panel; providing duties and authority of the panel; providing for authority of judge to whom a

case is transferred; providing for remand of case for trial on the merits; providing for promulgation of rules; amending 23 O.S. 2001, Section 9.1, as amended by Section 1, Chapter 462, O.S.L. 2002 (23 O.S. Supp. 2003, Section 9.1), which relates to punitive damages; providing that jury award of punitive damages must be unanimous for cases filed after a certain date; creating the Proportionate Responsibility Act; amending 23 O.S. 2001, Sections 13 and 14, which relate to comparative negligence; providing for determination of responsibility; prohibiting submission of certain questions to the jury without supportive evidence; defining term; providing for joint and several liability in certain circumstances; prohibiting the disclosure to a jury of certain information; providing for reduction of damages if the plaintiff has settled with one or more persons; providing for designation of responsible third parties; providing that the Proportionate Responsibility Act shall not be construed to affect any right of indemnity granted by contract or otherwise provided by law; amending 23 O.S. 2001, Section 61, which relates to the measure of damages for the breach of obligations not arising from contract; providing that compensation from collateral sources may be admitted into evidence; providing exception; providing proof of certain losses must be in the form of a net loss after reduction for income tax payments or unpaid tax liability; amending 47 O.S. 2001, Section 11-1112, as amended by Section 1, Chapter 55, O.S.L. 2002 (47 O.S. Supp. 2003, Section 11-1112), which relates to child passenger restraint systems; eliminating prohibitions against admissibility of violations of law and failure to properly restrain a child in civil actions; amending Sections 1, 5 and 6, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2003, Sections 1-1708.1A, 1-1708.1E and 1-1708.1F), which relate to the Affordable Access to Health Care Act; requiring certain persons to give written notice to health care provider prior to filing of medical liability action; modifying scope of limitation on noneconomic damages; removing termination date; limiting theory of recovery for certain medical liability actions; defining terms; creating certain rebuttable presumptions; providing required standard of proof in medical liability actions involving emergency care; providing for expert witnesses in medical liability actions; providing for payment of future losses in medical liability actions; creating the Education Quality and Protection Act; providing short title; stating legislative findings; stating purpose of the act; providing definitions; limiting the liability of educational entities and education employees for certain actions; stating standard of proof; limiting the liability of educational entities and education employees for certain reporting; prohibiting punitive or exemplary damages against an educational entity or education employee; making it unlawful to make a false criminal report against an education employee; providing punishment; limiting application for statements against certain persons; providing for effect on other laws; providing for the award of

costs and attorney fees; authorizing expert witness fees; limiting amount of contingency fees by an attorney; providing penalty for violation of limit; providing for waiver of a defense when liability insurance is available; providing for the applicability of other laws; amending 76 O.S. 2001, Section 31, which relates to civil immunity for volunteers, charitable organizations, and not-for-profit corporations; modifying definition; creating the Product Liability Act; providing short title; defining terms; providing duty of manufacturer to indemnify; providing that a manufacturer or seller shall not be liable for inherently unsafe products; providing procedures and requirements in actions alleging design defect; providing elements a claimant must prove in certain actions against manufacturers or sellers of firearms or ammunition; limiting liability of nonmanufacturing sellers; providing rebuttable presumption in actions relating to pharmaceutical products; providing rebuttable presumption concerning compliance with government standards; defining term; requiring plaintiff to file certain affidavit in actions against design professionals; providing exception for contemporaneous filing requirement; providing for time of filing answer; providing for construction of section; defining terms; limiting liability of certain corporations for successor asbestos-related liabilities; repealing 47 O.S. 2001, Section 12-420, which relates to inadmissibility of evidence in civil actions of failure to use seatbelt; providing for codification; and providing an effective date.

BE IT ENACTED BY THE PEOPLE OF THE STATE OF OKLAHOMA:

SECTION 1. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 7.1 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. In class actions, if an award of attorney fees is available, the trial court shall use the Lodestar Rule to calculate the amount of fees to be awarded to class counsel. The court may increase or decrease the fee award calculated by using the Lodestar method by no more than four times based on specified factors established by rule of the Supreme Court.

B. If any portion of the benefits recovered for the class are in the form of coupons or other noncash common benefits, the attorney fees awarded in the class action shall be in cash and

noncash amounts in the same proportion as the recovery for the class.

C. As used in this section, "Lodestar rule" means the number of hours reasonably expended multiplied by the prevailing hourly rate in the community and then adjusted for other factors. In arriving at just compensation, the court shall consider the following factors:

1. Time and labor required;

2. The novelty and difficulty of the case;

3. The skill required to perform the legal service properly;

4. The preclusion of other employment by the attorney due to acceptance of the case;

5. The customary fee;

6. Whether the fee is fixed or contingent;

7. Time limitations imposed by the client or the circumstances;

8. The amount in controversy and the results obtained;

9. The experience, reputation and ability of the attorney;

10. Whether or not the case is an undesirable case;

11. The nature and length of the professional relationship with the client; and

12. Awards in similar cases.

SECTION 2. AMENDATORY 12 O.S. 2001, Section 95, as amended by Section 1, Chapter 402, O.S.L. 2002 (12 O.S. Supp. 2003, Section 95), is amended to read as follows:

Section 95. Civil actions, other than actions for the recovery of real property or product liability actions provided for in Section 3 of this act, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

1. Within five (5) years: An action upon any contract, agreement, or promise in writing;

2. Within three (3) years: An action upon a contract express or implied not in writing; an action upon a liability created by statute other than a forfeiture or penalty; and an action on a foreign judgment;

3. Within two (2) years: An action for trespass upon real property; an action for taking, detaining, or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud - the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud;

4. Within one (1) year: An action for libel, slander, assault, battery, malicious prosecution, or false imprisonment; an action upon a statute for penalty or forfeiture, except where the statute imposing it prescribes a different limitation;

5. An action upon the official bond or undertaking of an executor, administrator, guardian, sheriff, or any other officer, or upon the bond or undertaking given in attachment, injunction, arrest, or in any case whatever required by the statute, can only be brought within five (5) years after the cause of action shall have accrued;

6. An action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse incidents or exploitation as defined by Section 7102 of Title 10 of the Oklahoma Statutes or incest can only be brought within the latter of the following periods:

a. within two (2) years of the act alleged to have caused the injury or condition, or

b. within two (2) years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act or that the act caused the injury for which the claim is brought.

Provided, however, that the time limit for commencement of an action pursuant to this paragraph is tolled for a child until the child reaches the age of eighteen (18) years. No action may be brought against the alleged perpetrator or the estate of the alleged perpetrator after the death of such alleged perpetrator. An action pursuant to this paragraph must be based upon objective verifiable evidence in order for the victim to recover damages for injuries suffered by reason of such sexual abuse, exploitation, or incest. The evidence should include both proof that the victim had psychologically repressed the memory of the facts upon which the claim was predicated and that there was corroborating evidence that the sexual abuse, exploitation, or incest actually occurred. The victim need not establish which act in a series of continuing sexual abuse incidents, exploitation incidents, or incest caused the injury complained of, but may compute the date of discovery from the date of discovery of the last act by the same perpetrator which is part of a common scheme or plan of sexual abuse, exploitation, or incest. Provided further, any action based on intentional conduct specified in paragraph 6 of this section must be commenced within twenty (20) years of the victim reaching the age of eighteen (18);

7. An action to establish paternity and to enforce support obligations can be brought any time before the child reaches the age of eighteen (18);

8. An action to establish paternity can be brought by a child if commenced within one (1) year after the child reaches the age of eighteen (18);

9. Court-ordered child support is owed until it is paid in full and it is not subject to a statute of limitations;

10. An action filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of one of the following:

a. the State of Oklahoma,

b. a contractor of the State of Oklahoma, or

c. a political subdivision of the State of Oklahoma,

to include the revocation of earned credits, shall be commenced within one (1) year after the cause of action shall have accrued; and

11. An action for relief, not hereinbefore provided for, can only be brought within five (5) years after the cause of action shall have accrued.

SECTION 3. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 95.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. As used in this section, "product liability action" means any action against a manufacturer or seller for recovery of damages or other relief for harm allegedly caused by a defective product, whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories, and whether the relief sought is recovery of damages or any other legal or equitable relief, including, but not limited to, an action for:

1. Injury or damage to or loss of real or personal property;

2. Personal injury;

3. Wrongful death;

4. Economic loss; or

5. Declaratory, injunctive, or other equitable relief.

B. Except as provided by subsections C, D and E of this section, a plaintiff must commence a product liability action against a manufacturer or seller of a product before the end of fifteen (15) years after the date of the sale of the product by the defendant.

C. If a manufacturer or seller expressly warrants in writing that the product has a useful safe life of longer than fifteen (15)

years, a plaintiff must commence a product liability action against that manufacturer or seller of the product before the end of the number of years warranted after the date of the sale of the product by that seller.

D. This section shall not apply to a product liability action seeking damages for personal injury or wrongful death in which the claimant alleges:

1. The plaintiff was exposed to the product that is the subject of the action before the end of fifteen (15) years after the date the product was first sold;

2. Exposure to the product caused a disease that is the basis of the action; and

3. The symptoms of the disease did not, before the end of fifteen (15) years after the date of the first sale of the product by the defendant, manifest themselves to a degree and for a duration that would put a reasonable person on notice that the person suffered some injury.

E. This section shall not reduce a limitations period for a cause of action described by subsection D of this section that accrues before the end of the limitations period under this section.

F. This section shall not extend the limitations period within which a products liability action involving the product may be commenced under any other law.

G. This section applies only to the sale and not to the lease of a product.

H. This section shall not apply to any claim to which the General Aviation Revitalization Act of 1994 (Pub. L. No. 103-298, 108 Stat. 1552 (1994), reprinted in note, 49 U.S.C., Section 40101 or its exceptions are applicable.

SECTION 4. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 140.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. If the court, upon motion by a party, finds that in the interest of justice and for the convenience of the parties a claim or action would be more properly heard in another forum, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action.

B. In determining whether to grant a motion to stay or dismiss an action pursuant to this section, the court may consider:

1. Whether an alternate forum exists in which the claim or action may be tried;

2. Whether the alternate forum provides an adequate remedy;

3. Whether maintenance of the claim in the court in which the case is filed would work a substantial injustice to the moving party;

4. Whether the alternate forum can exercise jurisdiction over all the defendants properly joined in the claim of the plaintiff;

5. Whether the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum; and

6. Whether the stay or dismissal would prevent unreasonable duplication or proliferation of litigation.

SECTION 5. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 144 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. In a suit in which there is more than one plaintiff, whether the plaintiffs are included by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise, each plaintiff shall, independently of every other plaintiff, establish proper venue. If a plaintiff cannot independently establish proper venue, that plaintiff’s part of the suit, including all of that plaintiff’s claims and causes of action, shall be transferred to a county of proper venue or dismissed, as is appropriate, unless that plaintiff, independently of every other plaintiff, establishes that:

1. Joinder of that plaintiff or intervention in the suit by that plaintiff is proper under Oklahoma law and applicable court rules;

2. Maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit;

3. There is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and

4. The county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought.

B. An interlocutory appeal may be taken of a trial court's determination under subsection A of this section that:

1. A plaintiff did or did not independently establish proper venue; or

2. A plaintiff that did not independently establish proper venue did or did not establish the items prescribed by paragraphs 1 through 4 of subsection A of this section.

C. The court of appeals shall:

1. Determine whether the trial court's order is proper based on an independent determination from the record and not under either an abuse of discretion or substantial evidence standard; and

2. Render judgment not later than one hundred twenty (120) days after the date the appeal is perfected.

SECTION 6. AMENDATORY 12 O.S. 2001, Section 727, is amended to read as follows:

Section 727.

POSTJUDGMENT INTEREST

A. 1. Except as otherwise provided by ~~this section~~ law, all judgments of courts of record, including costs and attorney fees authorized by statute or otherwise and allowed by the court, shall bear interest at a rate prescribed pursuant to this section.

2. Costs and attorney fees allowed by the court shall bear interest from the earlier of the date the judgment or order is pronounced, if expressly stated in the written judgment or order awarding the costs and attorney fees, or the date the judgment or order is filed with the court clerk.

B. Judgments, including costs and attorney fees authorized by statute or otherwise and allowed by the court, against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, shall bear interest during the term of judgment at a rate prescribed pursuant to this section, but not to exceed ten percent (10%), from the date of rendition. No judgment against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, inclusive of postjudgment interest, shall exceed the total amount of liability of the governmental entity pursuant to The Governmental Tort Claims Act.

C. The postjudgment interest authorized by subsection A or subsection B of this section shall accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk, and shall initially accrue at the rate in effect for the calendar year during which the judgment is rendered until the end of the calendar year in which the judgment was rendered, or until the judgment is paid, whichever first occurs. Beginning on the first day of January of the next succeeding calendar year until the end of that calendar year, or until the judgment is paid, whichever first occurs, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section.

For each succeeding calendar year, or part of a calendar year, during which a judgment remains unpaid, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. A separate computation using the interest rate in effect for judgments as provided by subsection I of this section shall be made for each calendar year, or part of a calendar year, during which the judgment remains unpaid in order to determine the total amount of interest for which the judgment debtor is liable. The postjudgment interest rate for each calendar year or part of a calendar year a judgment remains unpaid shall be multiplied by the original amount of the judgment, including any prejudgment interest, together with postjudgment interest previously accrued. Interest shall accrue on a judgment in the manner prescribed by this subsection until the judgment is satisfied or released.

D. If a rate of interest is specified in a contract, the rate specified shall apply and be stated in the journal entry of judgment. The rate of interest shall not exceed the lawful rate for that obligation. Postjudgment interest shall be calculated and accrued in the same manner as prescribed in subsection C of this section.

PREJUDGMENT INTEREST

E. Except as provided by subsection F of this section, if a verdict for damages by reason of personal injuries or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another is accepted by the trial court, the court in rendering judgment shall add interest on the verdict at a rate prescribed pursuant to subsection I of this section from the date the suit

resulting in the judgment was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk. Prejudgment interest shall not be assessed or recovered on an award of future damages. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year in which the suit resulting in the judgment is commenced. This rate shall be in effect until the end of the calendar year in which the suit resulting in judgment was filed or until the date judgment is filed, whichever first occurs. Beginning on the first day of January of the next succeeding calendar year until the end of that calendar year, or until the date the judgment is filed, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of all prejudgment interest has been completed, the total amount of prejudgment interest shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection A of this section.

F. If a verdict of the type described by subsection E of this section is rendered against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, the judgment shall bear interest at the rate prescribed pursuant to subsection I of this section, but not to exceed ten percent (10%) from the date the suit was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment or the date the judgment is filed

with the court clerk. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year in which the suit resulting in the judgment is commenced. This rate shall be in effect until the end of the calendar year in which the suit resulting in judgment was filed or until the date the judgment is rendered as expressly stated in the judgment, whichever first occurs. Beginning on the first day of January of the next succeeding calendar year until the end of that calendar year, or until the date judgment is rendered, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of prejudgment interest has been completed, the amount shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection B of this section. No award of prejudgment interest against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, including the amount of the judgment awarded pursuant to trial of the action, shall exceed the total amount of liability of the governmental entity pursuant to The Governmental Tort Claims Act.

G. If exemplary or punitive damages are awarded in an action for personal injury or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another, the interest on that award shall begin to accrue from the earlier of the date the

judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk.

H. If a judgment is rendered establishing the existence of a lien against property and no rate of interest exists, the court shall allow prejudgment interest at a rate prescribed pursuant to subsection I of this section from the date the lien is filed to the date of verdict.

I. For purposes of computing either postjudgment interest or prejudgment interest as authorized by this section interest shall be determined using a rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year, plus four percentage points.

J. For purposes of computing postjudgment interest, the provisions of this section, including the amendments prescribed by ~~this act~~ Section 2, Chapter 320, O.S.L. 1997, shall be applicable to all judgments of the district courts rendered on or after January 1, 2000. Effective January 1, 2000, the method for computing postjudgment interest prescribed by this section shall be applicable to all judgments remaining unpaid rendered prior to January 1, 2000.

K. For purposes of computing prejudgment interest, the provisions of this section, including the amendments prescribed by ~~this act~~ Section 2, Chapter 320, O.S.L. 1997, shall be applicable to all actions which are filed in the district courts on or after January 1, 2000, for which an award of prejudgment interest is authorized by the provisions of this section.

L. Beginning November 1, 2004, the postjudgment interest rate shall be based on the prime rate published by the Federal Reserve Bank on the date of computation. The provisions of this subsection shall apply to all judgments rendered on or after November 1, 2004,

and to all judgments remaining unpaid on or after November 1, 2004. The interest rate shall be:

1. Five percent (5%) per year if the prime rate is less than five percent (5%);

2. The prime rate if the prime rate is five percent (5%) or more but less than fifteen percent (15%); or

3. Fifteen percent (15%) if the prime rate is more than fifteen percent (15%).

SECTION 7. AMENDATORY 12 O.S. 2001, Section 990.4, is amended to read as follows:

Section 990.4 A. Except as provided in subsection C of this section, a party may obtain a stay of the enforcement of a judgment, decree or final order:

1. While a post-trial motion is pending;

2. During the time in which an appeal may be commenced; or

3. While an appeal is pending.

Such stay may be obtained by filing with the court clerk a written undertaking and the posting of a supersedeas bond or other security as provided in this section. In the undertaking the appellant shall agree to satisfy the judgment, decree or final order, and pay the costs and interest on appeal, if it is affirmed. The undertaking and supersedeas bond or security may be given at any time. The stay is effective when the bond and the sufficiency of the sureties are approved by the trial court or the security is deposited with the court clerk. The enforcement of the judgment, decree or order shall no longer be stayed, and the judgment, decree or order may be enforced against any surety on the bond or other security:

1. If neither a post-trial motion nor a petition in error is filed, and the time for appeal has expired;

2. If a post-trial motion is no longer pending, no petition in error has been filed, and the time for appeal has expired; or

3. If an appeal is no longer pending.

B. The amount of the bond or other security shall be as follows:

1. When the judgment, decree or final order is for payment of money:

a. ~~The~~ the bond shall be double the amount of the judgment, decree or final order, unless the bond is executed or guaranteed by a surety as hereinafter provided. The bond shall be for the amount of the judgment, decree or order including costs and interest on appeal where it is executed or guaranteed by an entity with suretyship powers as provided by the laws of Oklahoma. In no event shall the bond exceed the lesser of fifty percent (50%) of the net worth of the judgment debtor or Twenty-five Million Dollars ($25,000,000.00). In addition, on a showing by the judgment debtor that the judgment debtor is likely to suffer substantial economic harm if required to post bond in the amount required by this paragraph, the court shall lower the amount of the bond to an amount that will not cause the judgment debtor to suffer substantial economic harm. Nothing in this paragraph shall prevent a court from enjoining a judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment, but the court shall not make any order that interferes with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business, and

b. ~~Instead~~ instead of filing a supersedeas bond, the appellant may obtain a stay by depositing cash with the court clerk in the amount of the judgment or order plus an amount that the court determines will cover costs and interest on appeal. The court shall have

discretion to accept United States Treasury notes or general obligation bonds of the State of Oklahoma in lieu of cash. If the court accepts such notes or bonds, it shall make appropriate orders for their safekeeping and maintenance during the stay;

2. When the judgment, decree or final order directs execution of a conveyance or other instrument, the amount of the bond shall be determined by the court. Instead of posting a supersedeas bond or other security, the appellant may execute the conveyance or other instrument and deliver it to the clerk of the court for deposit with a public or private entity for safekeeping, as directed by the court in writing;

3. When the judgment, decree or final order directs the delivery of possession of real or personal property, the bond shall be in an amount, to be determined by the court, that will protect the interests of the parties. The court may consider the value of the use of the property, any waste that may be committed on or to the property during the pendency of the stay, the value of the property, and all costs. When the judgment, decree or final order is for the sale of mortgaged premises and the payment of a deficiency arising from the sale, the bond must also provide for the payment of the deficiency;

4. When the judgment or final order directs the assignment or delivery of documents, they may be placed in the custody of the clerk of the court in which the judgment or order was rendered, for deposit with a public or private entity for safekeeping during the pendency of the stay, as directed by the court in writing, or the bond shall be in such sum as may be prescribed by the court; or

5. In order to protect any monies payable to the Tobacco Settlement Fund as set forth in Section 50 of Title 62 of the Oklahoma Statutes, the bond in any action or litigation involving a tobacco product manufacturer that is a party to the Master

Settlement Agreement dated November 23, 1998, or a party to the Smokeless Tobacco Master Settlement Agreement, also dated November 23, 1998, shall be in an amount not to exceed one hundred percent (100%) of the judgment, exclusive of interest and costs, or Twenty-five Million Dollars ($25,000,000.00), whichever is less. However, if it is proved by a preponderance of the evidence that the appellant for whom the bond has been limited pursuant to this paragraph is intentionally dissipating or diverting assets outside of the ordinary course of its business for the purpose of avoiding payment of the judgment, the court shall enter such orders as are necessary to prevent dissipation or diversion, including, but not limited to, requiring that a bond be posted equal to the full amount of security required pursuant to this section. For purposes of this paragraph, "Master Settlement Agreement" and "tobacco product manufacturer" shall have the same meanings as those terms are defined in paragraphs 5 and 9 of Section 600.22 of Title 37 of the Oklahoma Statutes, and "Smokeless Tobacco Master Settlement Agreement" means the settlement agreement and related documents entered into on November 23, 1998, by this state and leading United States smokeless tobacco product manufacturers.

C. Subsections A and B of this section shall not apply in actions involving temporary or permanent injunctions, actions for divorce, separate maintenance, annulment, paternity, custody, adoption, or termination of parental rights, or in juvenile matters, post-decree matrimonial proceedings or habeas corpus proceedings. The trial or appellate court, in its discretion, may stay the enforcement of any provision in a judgment, decree or final order in any of the types of actions or proceedings listed in this subsection during the pendency of the appeal or while any post-trial motion is pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties. If a temporary or permanent injunction is denied or dissolved, the trial

or appellate court, in its discretion, may restore or grant an injunction during the pendency of the appeal and while any post-trial motions are pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties.

D. In any action not provided for in subsections A, B or C, the court may stay the enforcement of any judgment, decree or final order during the pendency of the appeal or while any post-trial motion is pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties.

E. The trial court shall have continuing jurisdiction during the pendency of any post-trial motion and appeal to modify any order it has entered regarding security or other conditions in connection with a stay.

F. The execution of a supersedeas bond shall not be a condition for the granting of a stay of judgment, decree or final order of any judicial tribunal against any county, municipality, or other political subdivision of the State of Oklahoma.

G. Executors, administrators and guardians who have given bond in this state, with sureties, according to law, are not required to provide a supersedeas bond if they are granted a stay of enforcement of a judgment, decree or final order.

H. After an appeal has been decided, but before the mandate has issued, a party whose trial court judgment has been affirmed, may move the appellate court to order judgment on the bond or other security in the amount of the judgment plus interest, appeals costs and allowable appeal-related attorney's fees. After mandate has issued, a party who has posted a bond or other security may move for exoneration of the bond or other security only in the trial court; and all motions concerning the bond or other security must be addressed to the trial court.

SECTION 8. AMENDATORY 12 O.S. 2001, Section 993, is amended to read as follows:

Section 993. A. When an order:

1. Discharges, vacates, or modifies or refuses to discharge, vacate, or modify an attachment;

2. Denies a temporary or permanent injunction, grants a temporary or permanent injunction except where granted at an ex parte hearing, or discharges, vacates, or modifies or refuses to discharge, vacate, or modify a temporary or permanent injunction;

3. Discharges, vacates, or modifies or refuses to discharge, vacate, or modify a provisional remedy which affects the substantial rights of a party;

4. Appoints a receiver except where the receiver was appointed at an ex parte hearing, refuses to appoint a receiver, or vacates or refuses to vacate the appointment of a receiver;

5. Directs the payment of money pendente lite except where granted at an ex parte hearing, refuses to direct the payment of money pendente lite, or vacates or refuses to vacate an order directing the payment of money pendente lite;

6. Certifies or refuses to certify an action to be maintained as a class action; ~~or~~

7. Denies a motion in a class action asserting lack of jurisdiction because an agency of this state has exclusive or primary jurisdiction of the action or a part of the action, or asserting that a party has failed to exhaust administrative remedies;

8. Determines whether or not a plaintiff has established proper venue pursuant to Section 5 of this act; or

9. Grants a new trial or opens or vacates a judgment or order, the party aggrieved thereby may appeal the order to the Supreme Court without awaiting the final determination in said cause, by filing the petition in error and the record on appeal with the Supreme Court within thirty (30) days after the order prepared in conformance with Section 696.3 of this title, is filed with the

court clerk. If the appellant did not prepare the order, and Section 696.2 of this title required a copy of the order to be mailed to the appellant, and the court records do not reflect the mailing of a copy of the order to the appellant within three (3) days, exclusive of weekends and holidays, after the filing of the order, the petition in error may be filed within thirty (30) days after the earliest date on which the court records show that a copy of the order was mailed to the appellant. The Supreme Court may extend the time for filing the record upon good cause shown.

B. If the order discharges or modifies an attachment or temporary injunction and it becomes operative, the undertaking given upon the allowance of an attachment or temporary injunction shall stay the enforcement of said order and remain in full force until final order of discharge shall take effect.

C. ~~Where~~ If a receiver shall be or has been appointed, upon the appellant filing an appeal bond, with sufficient sureties, in such sum as may have been required of the receiver by the court or a judge thereof, conditioned for the due prosecution of the appeal and the payment of all costs or damages that may accrue to the state or any officer or person by reason thereof, the authority of the receiver shall be suspended until the final determination of the appeal, and if the receiver has taken possession of any property, real or personal, it shall be returned and surrendered to the appellant upon the filing and approval of the bonds.

D. If the order determines whether or not a plaintiff has established proper venue pursuant to Section 5 of this act, the Supreme Court shall determine whether the order of the trial court is proper based on an independent determination of the record and not under either an abuse of discretion or substantial evidence standard and shall render judgment within one hundred twenty (120) days after the date the appeal is perfected.

E. During the pendency of an appeal pursuant to paragraph 6, 7, or 8 of subsection A of this section, the action in the trial court shall be stayed in all respects.

SECTION 9. AMENDATORY 12 O.S. 2001, Section 1101.1, as amended by Section 7, Chapter 468, O.S.L. 2002 (12 O.S. Supp. 2003, Section 1101.1), is amended to read as follows:

Section 1101.1 A. Actions for personal injury, wrongful death, and certain specified actions.

1. ~~Subject to the provisions of paragraph 5 of this subsection, after~~ After a civil action is brought for the recovery of money as the result of a claim for personal injury, wrongful death, or pursuant to Chapter 21 of Title 25 or Section 5 of Title 85 of the Oklahoma Statutes, any defendant may file with the court, at any time more than ten (10) days prior to trial, an offer of judgment for a sum certain to any plaintiff with respect to the action or any claim or claims asserted in the action. An offer of judgment shall be deemed to include any costs or attorney fees otherwise recoverable unless it expressly provides otherwise. If an offer of judgment is filed, each plaintiff to whom an offer of judgment is made shall, within ten (10) days, file:

a. a written acceptance or rejection of such offer, or

b. a counteroffer of judgment, as described in paragraph 2 of this subsection.

If the plaintiff fails to file a timely response, the offer of judgment shall be deemed rejected. The fact an offer of judgment is made but not accepted or is deemed rejected does not preclude subsequent timely offers of judgment.

2. In the event a defendant files an offer of judgment, the plaintiff may, within ten (10) days, file with the court a counteroffer of judgment directed to each defendant who has filed an offer of judgment. If a counteroffer of judgment is filed, each defendant to whom the counteroffer of judgment is made shall, within

ten (10) days, file a written acceptance or rejection of the counteroffer of judgment. If a defendant fails to file a timely response, the counteroffer of judgment shall be deemed rejected. The fact a counteroffer of judgment is made but not accepted or deemed rejected does not preclude subsequent counteroffers of judgment if subsequent offers of judgment are made.

3. In the event the plaintiff rejects the offer(s) of judgment and the judgment awarded the plaintiff is less than <u>eighty percent (80%) of</u> the final offer of judgment, then the defendant filing the offer of judgment shall be entitled to recover reasonable litigation costs and reasonable attorney fees incurred by that defendant from the date of filing of the final offer of judgment until the date of the verdict. Such costs and fees may be offset from the judgment entered against the offering defendant; provided, however, that prior to any such offset, the plaintiff's attorney may:

a. exercise any attorneys lien claimed in an amount not to exceed twenty-five percent (25%) of the judgment, and

b. recover the plaintiff's reasonable litigation costs, not to exceed an additional fifteen percent (15%) of the judgment or Five Thousand Dollars ($5,000.00), whichever is greater.

4. In the event a defendant rejects the counteroffer(s) of judgment and the judgment awarded to the plaintiff is greater than <u>one hundred twenty percent (120%) of</u> the final counteroffer of judgment, the plaintiff shall be entitled to recover reasonable litigation costs and reasonable attorney fees incurred by the plaintiff from the date of filing of the final counteroffer of judgment until the date of the verdict. Such costs and fees may be added to the judgment entered in favor of the plaintiff.

~~5. The provisions of this subsection shall apply only where the plaintiff demands in a pleading or in trial proceedings more than~~

~~One Hundred Thousand Dollars ($100,000.00), or where the defendant makes an offer of judgment more than One Hundred Thousand Dollars ($100,000.00). Any offer of judgment may precede the demand.~~

B. Other actions.

1. After a civil action is brought for the recovery of money or property in an action other than for personal injury, wrongful death or pursuant to Chapter 21 of Title 25 or Section 5 of Title 85 of the Oklahoma Statutes, any defendant may file with the court, at any time more than ten (10) days prior to trial, an offer of judgment for a sum certain to any plaintiff with respect to the action or any claim or claims asserted in the action. An offer of judgment shall be deemed to include any costs and attorney fees otherwise recoverable unless it expressly provides otherwise. If an offer of judgment is filed, the plaintiff or plaintiffs to whom the offer of judgment is made shall, within ten (10) days, file:

a. a written acceptance or rejection of the offer, or

b. a counteroffer of judgment, as described in paragraph 2 of this subsection.

If a plaintiff fails to file a timely response, the offer of judgment shall be deemed rejected. The fact an offer of judgment is made but not accepted or is deemed rejected does not preclude subsequent timely offers of judgment.

2. In the event a defendant files an offer of judgment, the plaintiff may, within ten (10) days, file with the court a counteroffer of judgment to each defendant who has filed an offer of judgment and the claim or claims which are the subject thereof. If a counteroffer of judgment is filed, each defendant to whom a counteroffer of judgment is made shall, within ten (10) days, file a written acceptance or rejection of the counteroffer of judgment. If a defendant fails to file a timely response, the counteroffer of judgment shall be deemed rejected. The fact a counteroffer of judgment is made but not accepted or is deemed rejected does not

preclude subsequent counteroffers of judgment if subsequent offers of judgment are made.

3. If no offer of judgment or counteroffer of judgment is accepted and the judgment awarded the plaintiff is less than eighty percent (80%) of one or more offers of judgment, the defendant shall be entitled to reasonable litigation costs and reasonable attorney fees incurred by the defendant with respect to the action or the claim or claims included in the offer of judgment from and after the date of the first offer of judgment which is greater than the judgment until the date of the judgment. Such costs and fees may be offset from the judgment entered against the offering defendant.

4. If no offer of judgment or counteroffer of judgment is accepted and the judgment awarded the plaintiff is greater than one hundred twenty percent (120%) of one or more counteroffers of judgment, the plaintiff shall be entitled to recover the reasonable litigation costs and reasonable attorney fees incurred by the plaintiff with respect to the action or the claim or claims included in the counteroffer of judgment from and after the date of the first counteroffer of judgment which is less than the judgment until the date of the judgment. Such costs and fees may be added to the judgment entered in favor of the plaintiff.

5. An award of reasonable litigation costs and reasonable attorneys fees under paragraph 3 of this subsection shall not preclude an award under paragraph 4 of this subsection, and an award under paragraph 4 of this subsection shall not preclude an award under paragraph 3 of this subsection.

6. This subsection shall not apply to actions brought pursuant to Chapter 21 of Title 25 or Section 5 of Title 85 of the Oklahoma Statutes.

C. For purposes of comparing the amount of a judgment with the amount of an offer under paragraph 3 or 4 of subsection A of this section or paragraph 3 or 4 of subsection B of this section,

attorney fees and costs otherwise recoverable shall be included in the amount of the compared judgment only if the offer was inclusive of attorney fees and costs. Fees or costs recoverable for work performed after the date of the offer shall not be included in the amount of the judgment for purposes of comparison.

D. Evidence of an offer of judgment or a counteroffer of judgment shall not be admissible in any action or proceeding for any purpose except in proceedings to enforce a settlement arising out of an offer of judgment or counteroffer of judgment or to determine reasonable attorneys fees and reasonable litigation costs under this section.

E. This section shall apply whether or not litigation costs or attorneys fees are otherwise recoverable.

F. The litigation costs that may be awarded pursuant to this section shall not be greater than an amount computed by:

1. Determining the sum of:

a. fifty percent (50%) of the economic damages to be awarded to the plaintiff in the judgment,

b. one hundred percent (100%) of the noneconomic damages to be awarded to the plaintiff in the judgment, and

c. one hundred percent (100%) of the punitive or additional damages to be awarded to the plaintiff in the judgment; and

2. Subtracting from the amount determined pursuant to paragraph 1 of this subsection, the amount of any statutory or contractual liens in connection with the occurrences or incidents giving rise to the claim.

G. If a plaintiff or a defendant is entitled to recover fees and costs pursuant to another law, the plaintiff or defendant shall not recover litigation costs in addition to the fees and costs recoverable under the other law.

Page 29 of 75

H. If a plaintiff or defendant is entitled to recover fees and costs pursuant to another law, the court shall not include fees and costs incurred by the plaintiff or defendant after the date of rejection of the judgment offer when calculating the amount of the litigation costs pursuant to subsection F of this section.

I. The provisions of this section are severable, and if any part or provision thereof shall be held void, the decision of the court shall not affect or impair any of the remaining parts or provisions thereof.

~~G. This~~ J. The amendments to this section enacted pursuant to this act shall apply to all civil actions filed on or after ~~the effective date of this act~~ November 1, 2004.

SECTION 10. AMENDATORY 12 O.S. 2001, Section 2023, is amended to read as follows:

Section 2023.

CLASS ACTIONS

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

1. The prosecution of separate actions by or against individual members of the class would create a risk of:

a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,

b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,

c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and

d. the difficulties likely to be encountered in the management of a class action.

C. CLASS ACTIONS INVOLVING JURISDICTION OF STATE AGENCY; STATE AGENCY WITH EXCLUSIVE OR PRIMARY JURISDICTION.

6:16-cv-00151-KEW Document 29-12 Filed 08/11/16 Page 31 of 293

Before hearing or deciding a motion to certify a class action, the court shall hear and rule on all pending motions asserting lack of jurisdiction because an agency of this state has exclusive or primary jurisdiction of the action or a part of the action, or asserting that a party has failed to exhaust administrative remedies. The ruling of the court shall be reflected in a written order. If a motion provided for in this subsection is denied and a class is subsequently certified, a person may obtain appellate review of the order denying the motion as part of an appeal of the order certifying the class action.

D. DETERMINATION BY ORDER WHETHER CLASS ACTION TO BE MAINTAINED; NOTICE; JUDGMENT; ACTIONS CONDUCTED PARTIALLY AS CLASS ACTIONS.

1. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subsection may be conditional, and may be altered or amended before the decision on the merits.

2. In any class action maintained under paragraph 3 of subsection B of this section, the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that:

a. the court will exclude him from the class if he so requests by a specified date,

b. the judgment, whether favorable or not, will include all members who do not request exclusion, and

c. any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

Where the class contains more than five hundred (500) members who can be identified through reasonable effort, it shall not be

necessary to direct individual notice to more than five hundred (500) members, but the members to whom individual notice is not directed shall be given notice in such manner as the court shall direct, which may include publishing notice in newspapers, magazines, trade journals or other publications, posting it in appropriate places, and taking other steps that are reasonably calculated to bring the notice to the attention of such members, provided that the cost of giving such notice shall be reasonable in view of the amounts that may be recovered by the class members who are being notified. Members to whom individual notice was not directed may request exclusion from the class at any time before the issue of liability is determined, and commencing an individual action before the issue of liability is determined shall be the equivalent of requesting exclusion from the class.

3. The judgment in an action maintained as a class action under paragraphs 1 or 2 of subsection B of this section, whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under paragraph 3 of subsection B of this section, whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in paragraph 2 of subsection ~~C~~ D of this section was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

4. When appropriate:

a. an action may be brought or maintained as a class action with respect to particular issues, or

b. a class may be divided into subclasses and each subclass treated as a class.

The provisions of this section shall then be construed and applied accordingly.

~~D.~~ E. ORDERS IN CONDUCT OF ACTIONS. In the conduct of actions to which this section applies, the court may make appropriate orders:

1. Determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument;

2. Requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;

3. Imposing conditions on the representative parties or on intervenors;

4. Requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; and

5. Dealing with similar procedural matters.

The orders may be combined with an order under Section ~~16~~ 2016 of this ~~act~~ title and may be altered or amended as may be desirable from time to time.

~~E.~~ F. DISMISSAL OR COMPROMISE. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

SECTION 11. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 81 of Title 20, unless there is created a duplication in numbering, reads as follows:

A. There is hereby created the Judicial Panel on Multidistrict Litigation. The panel shall consist of five (5) active judges selected by the Chief Justice of the Supreme Court. The judges may

be either judges of the district court or appellate judges. The members of the panel shall serve at the pleasure of the Chief Justice.

B. The Judicial Panel on Multidistrict Litigation may transfer civil actions involving one or more common questions of fact pending in the same or different district courts to any district court for consolidated or coordinated pretrial proceedings, including summary judgment or other dispositive motions, but not for trial on the merits.

C. A transfer may be made by the Judicial Panel on Multidistrict Litigation if the panel determines that the transfer shall:

1. Be for the convenience of the parties and witnesses; and

2. Promote the just and efficient conduct of actions.

D. A judge who is qualified and authorized by law to preside in the court to which an action is transferred pursuant to this section may preside over the transferred action as if the transferred action were originally filed in that court.

E. Any action transferred pursuant to this section shall be remanded to the court in which the action was originally filed for trial on the merits.

F. The Supreme Court shall promulgate rules for the implementation of this section.

SECTION 12. AMENDATORY 23 O.S. 2001, Section 9.1, as amended by Section 1, Chapter 462, O.S.L. 2002 (23 O.S. Supp. 2003, Section 9.1), is amended to read as follows:

Section 9.1 A. In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, award punitive damages for the sake of example and by way of punishing the defendant based upon the following factors:

1. The seriousness of the hazard to the public arising from the defendant's misconduct;

2. The profitability of the misconduct to the defendant;

3. The duration of the misconduct and any concealment of it;

4. The degree of the defendant's awareness of the hazard and of its excessiveness;

5. The attitude and conduct of the defendant upon discovery of the misconduct or hazard;

6. In the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and

7. The financial condition of the defendant.

B. Category I. Where the jury finds by clear and convincing evidence that:

1. The defendant has been guilty of reckless disregard for the rights of others; or

2. An insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured; the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greater of:

a. One Hundred Thousand Dollars ($100,000.00), or

b. the amount of the actual damages awarded.

Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

C. Category II. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or

2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured;

the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greatest of:

a. Five Hundred Thousand Dollars ($500,000.00),

b. twice the amount of actual damages awarded, or

c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.

The trial court shall reduce any award for punitive damages awarded pursuant to the provisions of subparagraph c of this paragraph by the amount it finds the defendant or insurer has previously paid as a result of all punitive damage verdicts entered in any court of this state for the same conduct by the defendant or insurer. Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

D. Category III. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or

2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured; and the court finds, on the record and out of the presence of the jury, that there is evidence beyond a reasonable doubt that the defendant or insurer acted intentionally and with malice and engaged in conduct life-threatening to humans,

the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in any amount the jury deems appropriate, without regard to the limitations set forth in subsections B and C of this section. Any award of punitive damages under this subsection awarded in any

manner other than as required in this subsection shall be void and reversible error.

E. In determining the amount, if any, of punitive damages to be awarded under either subsection B, C or D of this section, the jury shall make the award based upon the factors set forth in subsection A of this section.

F. Punitive damages shall be awarded only if the jury is unanimous in regard to finding liability for punitive damages and is unanimous in regard to the amount of punitive damages to be awarded.

G. The provisions of this section are severable, and if any part or provision thereof shall be held void, the decision of the court shall not affect or impair any of the remaining parts or provisions thereof.

~~G. This~~ H. The provisions of this section, except subsection F of this section, shall apply to all civil actions filed after ~~the effective date of this act~~ August 25, 1995.

I. The provisions of subsection F of this section shall apply to all civil actions filed on or after November 1, 2004.

SECTION 13. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 11.1 of Title 23, unless there is created a duplication in numbering, reads as follows:

Sections 12 through 14 of Title 23 of the Oklahoma Statutes and Sections 16 through 19 of this act shall be known and may be cited as the "Proportionate Responsibility Act".

SECTION 14. AMENDATORY 23 O.S. 2001, Section 13, is amended to read as follows:

Section 13. In all actions hereafter brought, whether arising before or after the effective date of this act, for negligence resulting in personal injuries or wrongful death, or injury to property, contributory negligence shall not bar a recovery, unless ~~any~~; or

1. Any negligence of the person so injured, damaged or killed, is of greater degree than any negligence of the person, firm or corporation causing such damage~~, or unless any~~; or

2. Any negligence of the person so injured, damaged or killed, is of greater degree than the combined negligence of any persons, firms or corporations causing such damage.

SECTION 15. AMENDATORY 23 O.S. 2001, Section 14, is amended to read as follows:

Section 14. ~~Where such~~ A. If contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such person's contributory negligence. Except as otherwise provided in the Proportionate Responsibility Act, a liable defendant is liable to a plaintiff only for the percentage of damages found by the trier of fact equal to the defendant's percentage of responsibility with respect to the harm for which the damages are allowed.

B. The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of such factors:

1. Each claimant;

2. Each defendant;

3. Each settling person; and

4. Each responsible third party.

C. The provisions of this section shall not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.

D. As used in this section, "responsible third party" means any person to whom all of the following apply:

1. The court in which the action was filed could exercise jurisdiction over the person;

2. The person could have been, but was not, sued by the claimant; and

3. The person is or may be liable to the plaintiff for all or a part of the damages claimed against the named defendant or defendants.

The term "responsible third party" does not include the employer of the plaintiff, if the employer maintained workers' compensation insurance coverage at the time of the act, event, or occurrence made the basis of the claimant's suit or a person or entity that is a debtor in bankruptcy proceedings or a person or entity against whom the plaintiff's claim has been discharged in bankruptcy, except to the extent that liability insurance or other source of third party funding may be available to pay claims asserted against the debtor.

SECTION 16. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 15 of Title 23, unless there is created a duplication in numbering, reads as follows:

A. Each liable defendant, in addition to liability pursuant to Section 13 of Title 23 of the Oklahoma Statutes, shall be jointly and severally liable for the damages recoverable by the plaintiff with respect to a cause of action if:

1. The percentage of responsibility attributed to the defendant with respect to the cause of action is greater than fifty percent (50%) of the total responsibility of all the defendants; or

2. The defendant, with the specific intent to do harm to others, acted in concert with another person to engage in committing any of the following crimes and, in doing so, proximately caused the damages legally recoverable by the plaintiff:

a. any degree of murder,

b. kidnapping,

c. aggravated assault and battery,

d. sexual assault,

e. child abuse or abuse of an elderly or incapacitated person,

f. forgery,

g. bribery,

h. misapplication of fiduciary property or property of a financial institution,

i. securing execution of a document by deception,

j. fraudulent destruction, removal, or concealment of a writing, or

k. any larceny which is a felony.

B. Paragraph 2 of subsection A of this section applies only if the defendant was convicted of the crime and the plaintiff proves that the defendant acted, or failed to act, with specific intent to do harm. A defendant acts with specific intent to do harm with respect to the nature and result of the act if it is the defendant's conscious effort or desire to engage in the conduct for the purpose of doing substantial harm to one or more other persons.

C. The jury shall not be made aware through voir dire, introduction into evidence, jury instruction, or any other means that the conduct provided for in paragraph 2 of subsection A of this section is a crime.

SECTION 17. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 16 of Title 23, unless there is created a duplication in numbering, reads as follows:

A. If the plaintiff has settled with one or more persons, the court shall reduce the amount of damages to be recovered by the plaintiff with respect to a cause of action by a percentage equal to the percentage of responsibility of each settling person.

B. If the plaintiff in a health care liability claim has settled with one or more persons, the court shall reduce the amount of damages to be recovered by the plaintiff with respect to a cause of action by an amount equal to one of the following, as elected by the defendant:

1. The sum of the dollar amounts of all settlements; or

2. A percentage equal to each settling person's percentage of responsibility as found by the trier of fact.

C. An election made under subsection B of this section shall be made by any defendant filing a written election before the issues of the action are submitted to the trier of fact and when made, shall be binding on all defendants. If no defendant makes this election or if conflicting elections are made, all defendants are considered to have elected the option provided for in paragraph 1 of subsection B of this section.

SECTION 18. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 17 of Title 23, unless there is created a duplication in numbering, reads as follows:

A. A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party. The motion shall be filed on or before the sixtieth day before the trial date unless the court finds good cause to allow the motion to be filed at a later date.

B. Nothing in this section affects the third-party practice provided for in Section 2014 of Title 12 of the Oklahoma Statutes with regard to the assertion by a defendant of rights to contribution or indemnity. Nothing in this section affects the filing of cross-claims or counterclaims.

C. If a person is designated under this section as a responsible third party, a claimant is not barred by limitations from seeking to join that person, even though such joinder would otherwise be barred by limitations, if the claimant seeks to join

that person not later than sixty (60) days after that person is designated as a responsible third party.

D. A court shall grant leave to designate the named person as a responsible third party unless another party files an objection to the motion for leave on or before the fifteenth day after the date the motion is served.

E. If an objection to the motion for leave is timely filed, the court shall grant leave to designate the person as a responsible third party unless the objecting party establishes:

1. The defendant did not plead sufficient facts concerning the alleged responsibility of the person to pleading requirements; and

2. After having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility of the person to satisfy pleading requirements.

F. By granting a motion for leave to designate a person as a responsible third party, the person named in the motion is designated as a responsible third party for purposes of this section without further action by the court or any party. The filing or granting of a motion for leave to designate a person as a responsible third party or a finding of fault against the person:

1. Does not by itself impose liability on the person; and

2. Shall not be used in any other proceeding, on the basis of res judicata, collateral estoppel, or any other legal theory, to impose liability on the person.

G. Notwithstanding any other provision of this section, if, not later than sixty (60) days after the filing of the defendant's original answer, the defendant alleges in an answer filed with the court that an unknown person committed a criminal act that was a cause of the loss or injury that is the subject of the lawsuit, the court shall grant a motion for leave to designate the unknown person as a responsible third party if:

1. The court determines that the defendant has pleaded facts sufficient for the court to determine that there is a reasonable probability that the act of the unknown person was criminal;

2. The defendant has stated in the answer all identifying characteristics of the unknown person, known at the time of the answer; and

3. The allegation satisfies the pleading requirements provided by law.

H. An unknown person designated as a responsible third party pursuant to subsection G of this section is denominated as "Jane Doe" or "John Doe" until the person's identity is known.

I. After adequate time for discovery, a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage. The court shall grant the motion to strike unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage.

SECTION 19. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 18 of Title 23, unless there is created a duplication in numbering, reads as follows:

Nothing in the Proportionate Responsibility Act shall be construed to affect any right of indemnity granted by contract or otherwise provided by law.

SECTION 20. AMENDATORY 23 O.S. 2001, Section 61, is amended to read as follows:

Section 61. A. For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by ~~this chapter~~ law, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.

B. Except as provided in subsection C of this section, for the breach of an obligation not arising from contract, if the plaintiff receives compensation for the injuries or harm that gave rise to the cause of action from a source wholly independent of the defendant, such fact may be admitted into evidence and the amount may be deducted from the amount of damages that the plaintiff recovers from the defendant.

C. The provisions of subsection B of this section shall not apply if the defendant, with specific intent to do harm to others, committed any of the crimes provided for in subsection A of Section 16 of this act and, in doing so, proximately caused the damages legally recoverable by the plaintiff.

SECTION 21. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 61.2 of Title 23, unless there is created a duplication in numbering, reads as follows:

If any plaintiff seeks recovery for loss of earnings, loss of earning capacity, loss of contributions of a pecuniary value, or loss of inheritance, evidence to prove the loss must be presented in the form of a net loss after reduction for income tax payments or unpaid tax liability pursuant to any state or federal income tax law. The court shall instruct the jury as to whether any recovery sought by the plaintiff is subject to federal or state income taxes.

SECTION 22. AMENDATORY 47 O.S. 2001, Section 11-1112, as amended by Section 1, Chapter 55, O.S.L. 2002 (47 O.S. Supp. 2003, Section 11-1112), is amended to read as follows:

Section 11-1112. A. Every driver, when transporting a child under four (4) years of age weighing sixty (60) pounds or less in a motor vehicle operated on the roadways, streets, or highways of this state, shall provide for the protection of said child by properly using a child passenger restraint system. For purposes of this section and Section 11-1113 of this title, "child passenger restraint system" means an infant or child passenger restraint

system which meets the federal standards as set by 49 C.F.R. §571.213.

B. Children at least four (4) years of age but younger than thirteen (13) years of age shall be protected by use of a child passenger restraint system or a seat belt.

C. The provisions of this section shall not apply to:

1. The driver of a school bus, taxicab, moped, motorcycle, or other motor vehicle not required to be equipped with safety belts pursuant to state or federal laws;

2. The driver of an ambulance or emergency vehicle;

3. The driver of a vehicle in which all of the seat belts are in use; or

4. The transportation of children who for medical reasons are unable to be placed in such devices.

D. A law enforcement officer is hereby authorized to stop a vehicle if it appears that the driver of the vehicle has violated the provisions of this section and to give an oral warning to said driver. The warning shall advise the driver of the possible danger to children resulting from the failure to install or use a child passenger restraint system or seat belts in the motor vehicle.

E. ~~A violation of the provisions of this section shall not be admissible as evidence in any civil action or proceeding for damages.~~

~~F. In any action brought by or on behalf of an infant for personal injuries or wrongful death sustained in a motor vehicle collision, the failure of any person to have the infant properly restrained in accordance with the provisions of this section shall not be used in aggravation or mitigation of damages.~~

~~G.~~ Any person convicted of violating subsection A or B of this section shall be punished by a fine of Ten Dollars ($10.00) and shall pay a maximum of Fifteen Dollars ($15.00) court costs thereof. This fine shall be suspended in the case of the first offense upon

proof of purchase or acquisition by loan of a child passenger restraint system. Provided, the Department of Public Safety shall not assess points to the driving record of any person convicted of a violation of this section.

SECTION 23. AMENDATORY Section 1, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2003, Section 1-1708.1A), is amended to read as follows:

Section 1-1708.1A Sections ~~1~~ 1-1708.1A through ~~7~~ 1-1708.1G of this ~~act~~ title and Sections 26, 27 and 28 of this act shall be known and may be cited as the "Affordable Access to Health Care Act".

SECTION 24. AMENDATORY Section 5, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2003, Section 1-1708.1E), is amended to read as follows:

Section 1-1708.1E A. In any medical liability action, a person asserting a health care liability claim or an authorized agent of the person shall give written notice of the claim by certified mail, return receipt requested, to each health care provider against whom such claim is being made at least sixty (60) days before the filing of the medical liability action.

B. 1. In any medical liability action, except as provided in subsection ~~B~~ C of this section, the plaintiff shall attach to the petition an affidavit attesting that:

a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,

b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the expert's determination that, based upon a review of the available medical records, facts or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the health care provider

against whom the action is brought constituted professional negligence, and

c. on the basis of the qualified expert's review and consultation, the plaintiff has concluded that the claim is meritorious and based on good cause.

2. If a medical liability action is filed:

a. without an affidavit being attached to the petition, as required in paragraph 1 of this subsection, and

b. no extension of time is subsequently granted by the court, pursuant to subsection ~~B~~ <u>C</u> of this section,

the court shall, upon motion of the defendant, dismiss the action without prejudice to its refiling.

3. The written opinion from the qualified expert shall state the acts or omissions of the defendant(s) that the expert then believes constituted professional negligence and shall include reasons explaining why the acts or omissions constituted professional negligence. The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.

~~B.~~ <u>C.</u> 1. The court may, upon application of the plaintiff for good cause shown, grant the plaintiff an extension of time, not exceeding ninety (90) days after the date the petition is filed, except for good cause shown, to file in the action an affidavit attesting that the plaintiff has obtained a written opinion from a qualified expert as described in paragraph 1 of subsection ~~A~~ <u>B</u> of this section.

2. If on the expiration of an extension period described in paragraph 1 of this subsection, the plaintiff has failed to file in the action an affidavit as described above, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.

~~C.~~ <u>D.</u> 1. Upon written request of any defendant in a medical liability action, the plaintiff shall, within ten (10) business days after receipt of such request, provide the defendant with:

a. a copy of the written opinion of a qualified expert mentioned in an affidavit filed pursuant to subsection ~~A~~ <u>B</u> or ~~B~~ <u>C</u> of this section, and

b. an authorization from the plaintiff in a form that complies with applicable state and federal laws, including the Health Insurance Portability and Accountability Act of 1996, for the release of any and all medical records related to the plaintiff for a period commencing five (5) years prior to the incident that is at issue in the medical liability action.

2. If the plaintiff fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.

SECTION 25. AMENDATORY Section 6, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2003, Section 1-1708.1F), is amended to read as follows:

Section 1-1708.1F A. Except as provided in subsection B of this section, in any medical liability action ~~in which the health care services at issue were provided for:~~

~~1. Pregnancy or labor and delivery, including the immediate post-partum period; or~~

~~2. Emergency care in the emergency room of a hospital or as follow-up to the emergency care services provided in the emergency room;~~

the amount of noneconomic damages awarded shall not exceed ~~Three Hundred Thousand Dollars ($300,000.00)~~ <u>Two Hundred Fifty Thousand Dollars ($250,000.00)</u>, regardless of the number of parties against

whom the action is brought or the number of actions brought with respect to the personal injury.

B. ~~Where~~ <u>If</u> the judge finds by clear and convincing evidence that the defendant committed negligence in one of the types of cases enumerated in subsection A of this section, the court shall articulate its findings into the record out of the presence of the jury and shall lift the noneconomic damage cap.

C. Nothing in this section shall apply to any nursing facility or nursing home licensed pursuant to Section 1-1903 of Title 63 of the Oklahoma Statutes or the owners, operators, officers, agents or employees of such entities.

D. Nothing in this section shall apply to a medical liability action brought for wrongful death.

E. ~~This section of law shall terminate on July 1, 2008.~~ <u>The provisions of this section, as amended by this act, shall apply to all actions filed on or after November 1, 2004.</u>

SECTION 26. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1H of Title 63, unless there is created a duplication in numbering, reads as follows:

A. In a medical liability action that is based on a claim that the health care provider failed to disclose or failed to adequately disclose the risks and hazards involved in the medical care or surgical procedure rendered by the health care provider, the only theory upon which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

B. Written notice to a patient or a person authorized to consent for a patient of the specific risks and hazards that are involved in the medical care or surgical procedure and written authorization for the medical care or surgical procedure, signed by

the patient or a person authorized to consent for the patient, shall create a rebuttable presumption that adequate disclosure was given.

C. Failure to give written notice to a patient or a person authorized to consent for a patient of the specific risks and hazards that are involved in the medical care or surgical procedure and obtain written authorization for the medical care or surgical procedure, signed by the patient or a person authorized to consent for the patient, shall create a rebuttable presumption that adequate disclosure was not given.

D. The provisions of this section shall apply to all actions filed on or after November 1, 2004.

SECTION 27. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1I of Title 63, unless there is created a duplication in numbering, reads as follows:

A. In any medical liability action involving a claim against a health care provider for injury to a patient arising out of the provision of emergency medical care in a hospital emergency department, obstetrical unit, or surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department, the plaintiff bringing the action may show that the treatment or lack of treatment departed from accepted standards of medical care only if the plaintiff proves by a preponderance of the evidence that the health care provider, with willful and wanton negligence, deviated from the degree of care and skill that is reasonably expected of an ordinarily prudent health care provider in the same or similar circumstances.

B. The provisions of this section shall apply to all actions filed on or after November 1, 2004.

SECTION 28. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1J of Title 63, unless there is created a duplication in numbering, reads as follows:

A. The court shall apply the criteria specified in subsection B of this section in determining whether an expert is qualified to offer expert testimony on the issue of whether the defendant health care provider departed from accepted standards of health care but may depart from those criteria if, under the circumstances, the court determines that there is good reason to admit the expert's testimony. The court shall state on the record the reason for admitting the testimony if the court departs from the criteria.

B. In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

1. Is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

2. Is actively practicing health care in rendering health care services relevant to the claim.

C. This section shall not prevent a health care provider who is a defendant, or an employee of the defendant health care provider, from qualifying as an expert.

D. A pretrial objection to the qualifications of a witness under this section must be made not later than the later of the twenty-first day after the date the objecting party receives a copy of the witness's curriculum vitae or the twenty-first day after the date of the witness's deposition. If circumstances arise after the date on which the objection must be made that could not have been reasonably anticipated by a party before that date and that the party believes in good faith provide a basis for an objection to a witness's qualifications, and if an objection was not made previously, this subsection does not prevent the party from making an objection as soon as practicable under the circumstances. The

court shall conduct a hearing to determine whether the witness is qualified as soon as practicable after the filing of an objection and, if possible, before trial. If the objecting party is unable to object in time for the hearing to be conducted before the trial, the hearing shall be conducted outside the presence of the jury. This subsection does not prevent a party from examining or cross-examining a witness at trial about the witness's qualifications.

SECTION 29. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1K of Title 63, unless there is created a duplication in numbering, reads as follows:

A. As used in this section:

1. "Future damages" means damages that are incurred after the date of judgment for:

a. medical, health care, or custodial care services,

b. physical pain and mental anguish, disfigurement, or physical impairment,

c. loss of consortium, companionship, or society, or

d. loss of earnings;

2. "Future loss of earnings" means the following losses incurred after the date of the judgment:

a. loss of income, wages, or earning capacity and other pecuniary losses, and

b. loss of inheritance; and

3. "Periodic payments" means the payment of money or its equivalent to the recipient of future damages at defined intervals.

B. This section applies only to a medical liability action against a health care provider in which the present value of the award of future damages, as determined by the court, equals or exceeds One Hundred Thousand Dollars ($100,000.00).

C. At the request of a defendant health care provider or a plaintiff, the court shall order that medical, health care, or custodial services awarded in a medical liability action be paid in

whole or in part in periodic payments rather than by a lump-sum payment.

D. At the request of a defendant health care provider or a plaintiff, the court may order that future damages other than medical, health care, or custodial services awarded in a health care liability claim be paid in whole or in part in periodic payments rather than by a lump-sum payment.

E. The court shall make a specific finding of the dollar amount of periodic payments that will compensate the plaintiff for the future damages.

F. The court shall specify in its judgment ordering the payment of future damages by periodic payments the:

1. Recipient of the payments;

2. Dollar amount of the payments;

3. Interval between payments; and

4. Number of payments or the period of time over which payments must be made.

G. The entry of an order for the payment of future damages by periodic payments constitutes a release of the health care liability claim filed by the plaintiff.

H. As a condition to authorizing periodic payments of future damages, the court shall require a defendant who is not adequately insured to provide evidence of financial responsibility in an amount adequate to assure full payment of damages awarded by the judgment.

I. The judgment must provide for payments to be funded by:

1. An annuity contract issued by a company licensed to do business as an insurance company, including an assignment within the meaning of Section 130, Internal Revenue Code of 1986, as amended;

2. An obligation of the United States;

3. Applicable and collectible liability insurance from one or more qualified insurers; or

4. Any other satisfactory form of funding approved by the court.

J. On termination of periodic payments of future damages, the court shall order the return of the security, or as much as remains, to the defendant.

K. On the death of the recipient, money damages awarded for loss of future earnings continue to be paid to the estate of the recipient of the award without reduction. Periodic payments, other than future loss of earnings, terminate on the death of the recipient. If the recipient of periodic payments dies before all payments required by the judgment are paid, the court may modify the judgment to award and apportion the unpaid damages for future loss of earnings in an appropriate manner. Following the satisfaction or termination of any obligations specified in the judgment for periodic payments, any obligation of the defendant health care provider to make further payments ends and any security given reverts to the defendant.

L. For purposes of computing the award of attorney fees when the plaintiff is awarded a recovery that will be paid in periodic payments, the court shall place a total value on the payments based on the plaintiff’s projected life expectancy and reduce the amount to present value.

SECTION 30. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 24-201 of Title 70, unless there is created a duplication in numbering, reads as follows:

Sections 30 through 39 of this act shall be known and may be cited as the “Education Quality and Protection Act”.

SECTION 31. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 24-202 of Title 70, unless there is created a duplication in numbering, reads as follows:

The Legislature finds that ensuring the quality of education is a compelling state interest. The educational environment of

students is often not conducive to learning. Violence is sometimes a threat, while at other times educators may lack the authority to maintain safety and discipline in the public schools. The filing of meritless lawsuits against school districts, teachers, administrators, and other school employees interferes with attempts to ensure the quality of public education, particularly when such lawsuits arise out of the good faith efforts of educators to maintain classroom discipline or address threats to student safety. Meritless litigation also diverts financial and personnel resources to litigation defense activities and reduces the availability of such resources for education opportunities for students. The Legislature further finds that legislation to deter meritless lawsuits and sanction deliberately false reports against educators is a rational and appropriate method to address this compelling public interest.

SECTION 32. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 24-203 of Title 70, unless there is created a duplication in numbering, reads as follows:

As used in the Education Quality and Protection Act:

1. "Educational entity" means the State Board of Education or the board of education of a public school district; and

2. "Education employee" means any individual elected or appointed to an educational entity or any individual who is an employee of an educational entity.

SECTION 33. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 24-204 of Title 70, unless there is created a duplication in numbering, reads as follows:

A. An educational entity or education employee shall not be subject to liability for any of the following:

1. Taking any action regarding the control, grading, suspension, expulsion, or discipline of students while such students

are on the property of the educational entity or under the supervision of the educational entity or education employee; and

2. Using corporal punishment, to the extent allowed by law, when and to the extent reasonably necessary and appropriate to maintain discipline or to promote student welfare.

B. The immunity provided for in subsection A of this section shall not apply if the action of the educational entity or the education employee violates an express law, rule, regulation, or clearly articulated policy of the state or educational entity. The burden of proof of such violation shall rest with the plaintiff and shall be established by clear and convincing evidence to the court as part of a summary proceeding.

C. An educational entity or education employee shall not be subject to liability for making a report consistent with federal law to the appropriate law enforcement authority or school official if the individual making the report has reasonable grounds to suspect a student is:

1. Under the influence of alcoholic beverages or a controlled substance not lawfully prescribed to that student;

2. In possession of a firearm, alcoholic beverages, or a controlled substance not lawfully prescribed to that student; or

3. Involved in the illegal sale or distribution of firearms, alcoholic beverages, or a controlled substance.

SECTION 34. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 24-205 of Title 70, unless there is created a duplication in numbering, reads as follows:

A. An educational entity shall not be liable for punitive or exemplary damages. An education employee shall not be liable for punitive or exemplary damages for acts or omissions within the course and scope of employment.

B. For purposes of this section, an education employee shall not be considered as acting within the course and scope of employment if the employee acted with specific intent to cause harm.

SECTION 35. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 24-206 of Title 70, unless there is created a duplication in numbering, reads as follows:

A. Except as otherwise provided in this section, any person eighteen (18) years of age or older who acts with specific intent in making a false accusation of criminal activity against an education employee to law enforcement authorities or school district officials, or both, shall be guilty of a misdemeanor and upon conviction punishable by a fine of not more than Two Thousand Dollars ($2,000.00).

B. Except as otherwise provided in this section, any student between the ages of seven (7) and seventeen (17) who acts with specific intent in making a false accusation of criminal activity against an education employee to law enforcement authorities or school district officials, or both, shall upon conviction, at the discretion of the court, be subject to any of the following:

1. Suspended out-of-school for a period of time to be determined by the court, subject to the provisions of Section 24-101.3 of Title 70 of the Oklahoma Statutes;

2. Community service of a type and for a period of time to be determined by the court; or

3. Any other sanction as the court in its discretion may deem appropriate.

C. The provisions of this section shall not apply to statements regarding individuals elected or appointed to an educational entity.

D. This section is in addition to and does not limit the civil or criminal liability of a person who makes false statements alleging criminal activity by another.

SECTION 36. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 24-207 of Title 70, unless there is created a duplication in numbering, reads as follows:

A. In any civil action or proceeding against an educational entity or an education employee in which the educational entity or education employee prevails, the court shall award costs and reasonable attorney's fees to the prevailing defendant or defendants. The court in its discretion may determine whether such fees and costs are to be borne by the plaintiff's attorney, the plaintiff, or both.

B. Expert witness fees may be included as part of the costs awarded under this section.

SECTION 37. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 24-208 of Title 70, unless there is created a duplication in numbering, reads as follows:

A. No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of twenty-five percent (25%) of any civil judgment rendered against an educational entity or education employee, or of any settlement made pursuant to the laws of this state.

B. Any interested person may file a civil action or petition with the appropriate court to rescind any provision of the attorney fee contract inconsistent with this section and to compel the disgorgement of any fees paid in excess of the amounts allowed under this section. In addition, a court with jurisdiction over the matter shall upon conviction impose a fine against the attorney that is equal to or less than the amount of money sought by the attorney in excess of the amount permitted by this section or Two Thousand Dollars ($2,000.00), whichever amount is more.

SECTION 38. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 24-209 of Title 70, unless there is created a duplication in numbering, reads as follows:

Unless otherwise provided by law, the existence of any policy of insurance indemnifying an educational entity or an education employee against liability for damages is not a waiver of any defense otherwise available to the educational entity or its employees in the defense of the claim.

SECTION 39. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 24-210 of Title 70, unless there is created a duplication in numbering, reads as follows:

The Education Quality and Protection Act shall be in addition to and shall not limit or amend The Governmental Tort Claims Act or any other applicable law.

SECTION 40. AMENDATORY 76 O.S. 2001, Section 31, is amended to read as follows:

Section 31. A. Any volunteer shall be immune from liability in a civil action on the basis of any act or omission of the volunteer resulting in damage or injury if:

1. The volunteer was acting in good faith and within the scope of the volunteer's official functions and duties for a charitable organization or not-for-profit corporation; and

2. The damage or injury was not caused by gross negligence or willful and wanton misconduct by the volunteer.

B. In any civil action against a charitable organization or not-for-profit corporation for damages based upon the conduct of a volunteer, the doctrine of respondeat superior shall apply, notwithstanding the immunity granted to the volunteer in subsection A of this section.

C. Any person who, in good faith and without compensation, or expectation of compensation, donates or loans emergency service equipment to a volunteer shall not be liable for damages resulting from the use of such equipment by the volunteer, except when the donor of the equipment knew or should have known that the equipment

was dangerous or faulty in a way which could result in bodily injury, death or damage to property.

D. Definitions.

1. For the purposes of this section, the term "volunteer" means a person who enters into a service or undertaking of the person's free will without compensation or expectation of compensation in money or other thing of value in order to provide a service, care, assistance, advice, or other benefit ~~where the person does not offer that type of service, care, assistance, advice or other benefit for sale to the public~~<u>; provided, being legally entitled to receive compensation shall not preclude a person from being considered a volunteer</u>.

2. For the purposes of this section, the term "charitable organization" means any benevolent, philanthropic, patriotic, eleemosynary, educational, social, civic, recreational, religious group or association or any other person performing or purporting to perform acts beneficial to the public.

3. For the purposes of this section, the term "not-for-profit corporation" means a corporation formed for a purpose not involving pecuniary gain to its shareholders or members, paying no dividends or other pecuniary remuneration, directly or indirectly, to its shareholders or members as such, and having no capital stock.

E. The provisions of this section shall not affect the liability that any person may have which arises from the operation of a motor vehicle, watercraft, or aircraft in rendering the service, care, assistance, advice or other benefit as a volunteer.

F. The immunity from civil liability provided for by this section shall extend only to the actions taken by a person rendering the service, care, assistance, advice, or other benefit as a volunteer, and does not confer any immunity to any person for actions taken by the volunteer prior to or after the rendering of

the service, care, assistance, advice, or other benefit as a volunteer.

G. This section shall apply to all civil actions filed after the effective date of this act.

SECTION 41. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 101 of Title 76, unless there is created a duplication in numbering, reads as follows:

Sections 41 through 49 of this act shall be known and may be cited as the "Product Liability Act".

SECTION 42. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 102 of Title 76, unless there is created a duplication in numbering, reads as follows:

In the Product Liability Act:

1. "Claimant" means a party seeking relief, including a plaintiff, counterclaimant, or cross-claimant;

2. "Product liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories;

3. "Seller" means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof; and

4. "Manufacturer" means a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce.

SECTION 43. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 103 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. A manufacturer shall indemnify and hold harmless a seller against loss arising out of a product liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

B. For purposes of this section, "loss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.

C. Damages awarded by the trier of fact shall, on final judgment, be deemed reasonable for purposes of this section.

D. For purposes of this section, a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller.

E. The duty to indemnify under this section:

1. Applies without regard to the manner in which the action is concluded; and

2. Is in addition to any duty to indemnify established by law, contract, or otherwise.

F. A seller eligible for indemnification under this section shall give reasonable notice to the manufacturer of a product claimed in a petition or complaint to be defective, unless the manufacturer has been served as a party or otherwise has actual notice of the action.

G. A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller's right to indemnification under this section.

SECTION 44. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 104 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action, a manufacturer or seller shall not be liable if:

1. The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and

2. The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, tobacco, and butter, as identified in comment i to Section 402A of the Restatement (Second) of Torts.

B. For purposes of this section, the term “product liability action” does not include an action based on manufacturing defect or breach of an express warranty.

SECTION 45. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 105 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action in which a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that:

1. There was a safer alternative design; and

2. The defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.

B. In this section, “safer alternative design” means a product design other than the one actually used that in reasonable probability:

1. Would have prevented or significantly reduced the risk of the claimant’s personal injury, property damage, or death without substantially impairing the product’s utility; and

2. Was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the

application of existing or reasonably achievable scientific knowledge.

C. This section does not supersede or modify any statute, regulation, or other law of this state or of the United States that relates to liability for, or to relief in the form of, abatement of nuisance, civil penalties, cleanup costs, cost recovery, an injunction, or restitution that arises from contamination or pollution of the environment.

D. This section does not apply to:

1. A cause of action based on a toxic or environmental tort; or

2. A drug or device, as those terms are defined in the federal Food, Drug, and Cosmetic Act (21 U.S.C. Section 321).

E. This section is not declarative, by implication or otherwise, of the common law with respect to any product and shall not be construed to restrict the courts of this state in developing the common law with respect to any product which is not subject to this section.

SECTION 46. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 106 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action brought against a manufacturer or seller of a firearm or ammunition that alleges a design defect in the firearm or ammunition, the burden is on the claimant to prove, in addition to any other elements that the claimant must prove, that:

1. The actual design of the firearm or ammunition was defective, causing the firearm or ammunition not to function in a manner reasonably expected by an ordinary consumer of firearms or ammunition; and

2. The defective design was a proximate cause of the personal injury, property damage, or death.

B. The claimant may not prove the existence of the defective design by a comparison or weighing of the benefits of the firearm or ammunition against the risk of personal injury, property damage, or death posed by its potential to cause such injury, damage, or death when discharged.

SECTION 47. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 107 of Title 76, unless there is created a duplication in numbering, reads as follows:

A seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves:

1. That the seller participated in the design of the product;

2. That the seller altered or modified the product and the claimant’s harm resulted from that alteration or modification;

3. That the seller installed the product, or had the product installed, on another product and the claimant’s harm resulted from the product’s installation onto the assembled product;

4. That:

   a. the seller exercised substantial control over the content of a warning or instruction that accompanied the product,

   b. the warning or instruction was inadequate, and

   c. the claimant’s harm resulted from the inadequacy of the warning or instruction;

5. That:

   a. the seller made an express factual representation about an aspect of the product,

   b. the representation was incorrect,

   c. the claimant relied on the representation in obtaining or using the product, and

d. if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;

6. That:

a. the seller actually knew of a defect to the product at the time the seller supplied the product, and

b. the claimant's harm resulted from the defect; or

7. That the manufacturer of the product is:

a. insolvent, or

b. not subject to the jurisdiction of the court.

SECTION 48. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 108 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action alleging that an injury was caused by a failure to provide adequate warnings or information with regard to a pharmaceutical product, there is a rebuttable presumption that the defendant or defendants, including a health care provider, manufacturer, distributor, and prescriber, are not liable with respect to the allegations involving failure to provide adequate warnings or information if:

1. The warnings or information that accompanied the product in its distribution were those approved by the United States Food and Drug Administration for a product approved under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Section 301 et seq.), as amended, or Section 351, Public Health Service Act (43 U.S.C. Section 262), as amended; or

2. The warnings provided were those stated in monographs developed by the United States Food and Drug Administration for pharmaceutical products that may be distributed without an approved new drug application.

B. The claimant may rebut the presumption provided for in subsection A of this section as to each defendant by establishing that:

1. The defendant, before or after premarket approval or licensing of the product, withheld from or misrepresented to the United States Food and Drug Administration required information that was material and relevant to the performance of the product and was casually related to the claimant's injury;

2. The pharmaceutical product as sold or prescribed in the United States by the defendant after the effective date of an order of the United States Food and Drug Administration to remove the product from the market or to withdraw its approval of the product;

3. a. The defendant recommended, promoted, or advertised the pharmaceutical product for an indication not approved by the United States Food and Drug Administration,

b. The product was used as recommended, promoted, or advertised, and

c. The claimant's injury was causally related to the recommended, promoted, or advertised use of the product;

4. a. The defendant prescribed the pharmaceutical product for an indication not approved by the United States Food and Drug Administration,

b. The product was used as prescribed, and

c. The claimant's injury was casually related to the prescribed use of the product; or

5. The defendant, before or after premarket approval or licensing of the product, engaged in conduct that would constitute a violation of 18 U.S.C. Section 201 and that conduct caused the warnings or instructions approved for the product by the United States Food and Drug Administration to be inadequate.

SECTION 49. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 109 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the formula, labeling, or design for the product complied with mandatory safety standards or regulations adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm.

B. The claimant may rebut the presumption in subsection A of this section by establishing that:

1. The mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage; or

2. The manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government’s or agency’s determination of adequacy of the safety standards or regulations at issue in the action.

C. In a product liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant allegedly caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the product was subject to premarket licensing or approval by the federal government, or an agency of the federal government, that the manufacturer complied with all of the government’s or agency’s procedures and requirements with respect to

premarket licensing or approval, and that after full consideration of the product's risks and benefits the product was approved or licensed for sale by the government or agency. The claimant may rebut this presumption by establishing that:

1. The standards or procedures used in the particular premarket approval or licensing process were inadequate to protect the public from unreasonable risks of injury or damage; or

2. The manufacturer, before or after premarket approval or licensing of the product, withheld from or misrepresented to the government or agency information that was material and relevant to the performance of the product and was causally related to the claimant's injury.

D. This section does not extend to manufacturing flaws or defects even though the product manufacturer has complied with all quality control and manufacturing practices mandated by the federal government or an agency of the federal government.

E. This section does not extend to products covered by Section 48 of this act.

SECTION 50. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 61 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. As used in this section, "design professional" means a registered architect or licensed professional engineer.

B. In any action for damages alleging professional negligence by a design professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party registered architect or licensed professional engineer competent to testify and practicing in the same area of practice as the defendant, which affidavit shall set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim. The third-party professional engineer or registered

architect shall be licensed in this state and actively engaged in the practice of architecture or engineering.

C. The contemporaneous filing requirement of subsection B of this section shall not apply to any case in which the period of limitation will expire within ten (10) days of the date of filing and, because of such time constraints, the plaintiff has alleged that an affidavit of a third-party registered architect or professional engineer could not be prepared. In such cases, the plaintiff shall have thirty (30) days after the filing of the complaint to supplement the pleadings with the affidavit. The trial court may, on motion, after hearing and for good cause, extend such time as it shall determine justice requires.

D. The defendant shall not be required to file an answer to the complaint and affidavit until thirty (30) days after the filing of such affidavit.

E. The plaintiff's failure to file the affidavit in accordance with subsection B or C of this section may result in dismissal with prejudice of the complaint against the defendant.

F. This statute shall not be construed to extend any applicable period of limitation.

SECTION 51. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 71 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. As used in this section:

1. "Asbestos claim" means any claim, wherever or whenever made, for damages, losses, indemnification, contribution, or other relief arising out of, based on, or in any way related to asbestos, including:

a. property damage caused by the installation, presence, or removal of asbestos,

b. the health effects of exposure to asbestos, including any claim for:

(1) personal injury or death,

(2) mental or emotional injury,

(3) risk of disease or other injury, or

(4) the costs of medical monitoring or surveillance, and

c. any claim made by or on behalf of any person exposed to asbestos, or a representative, spouse, parent, child, or other relative of the person;

2. "Corporation" means a corporation for profit, including:

a. a domestic corporation organized under the laws of this state, or

b. a foreign corporation organized under laws other than the laws of this state;

3. "Successor asbestos-related liabilities" means any liabilities, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due, that are related in any way to asbestos claims that were assumed or incurred by a corporation as a result of or in connection with a merger or consolidation, or the plan of merger or consolidation related to the merger or consolidation, with or into another corporation or that are related in any way to asbestos claims based on the exercise of control or the ownership of stock of the corporation before the merger or consolidation. The term includes liabilities that, after the time of the merger or consolidation for which the fair market value of total gross assets is determined under subsection D of this section, were or are paid or otherwise discharged, or committed to be paid or otherwise discharged, by or on behalf of the corporation, or by a successor of the corporation, or by or on behalf of a transferor, in connection with settlements, judgments, or other discharges in this state or another jurisdiction;

4. "Successor" means a corporation that assumes or incurs, or has assumed or incurred, successor asbestos-related liabilities; and

5. "Transferor" means a corporation from which successor asbestos-related liabilities are or were assumed or incurred.

B. 1. The limitations in subsection C of this section shall apply to a domestic corporation or a foreign corporation that has had a certificate of authority to transact business in this state or has done business in this state and that is a successor which became a successor prior to May 13, 1968, or which is any of that successor corporation's successors, but in the latter case only to the extent of the limitation of liability applied under paragraph 2 of subsection C of this section and subject to the limitations found in this section.

2. The limitations in subsection C of this section shall not apply to:

a. workers' compensation benefits,

b. any claim against a corporation that does not constitute a successor asbestos-related liability,

c. an insurance company,

d. any obligations under the National Labor Relations Act (29 U.S.C., Section 151 et seq.), as amended, or under any collective bargaining agreement,

e. a successor that, after a merger or consolidation, continued in the business of mining asbestos or in the business of selling or distributing asbestos fibers or in the business of manufacturing, distributing, removing, or installing asbestos-containing products which were the same or substantially the same as those products previously manufactured, distributed, removed, or installed by the transferor,

f. a contractual obligation existing as of November 1, 2004, that was entered into with claimants or

potential claimants or their counsel and which resolves asbestos claims or potential asbestos claims,

g. any claim made against the estate of a debtor in a bankruptcy proceeding commenced prior to April 1, 2003, under the United States Bankruptcy Code (11 U.S.C., Section 101 et seq.) by or against such debtor, or against a bankruptcy trust established under 11 U.S.C., Section 524(g) or similar provisions of the United States Code in such a bankruptcy proceeding commenced prior to such date, or

h. a cause of action for premises liability, but only if the successor owned or controlled the premise or premises at issue after the merger or consolidation.

C. 1. Except as further limited in paragraph 2 of this subsection, the cumulative successor asbestos-related liabilities of a corporation are limited to the fair market value of the total gross assets of the transferor determined as of the time of the merger or consolidation. The corporation does not have any responsibility for successor asbestos-related liabilities in excess of this limitation.

2. If the transferor had assumed or incurred successor asbestos-related liabilities in connection with a prior merger or consolidation with a prior transferor, then the fair market value of the total assets of the prior transferor, determined as of the time of such earlier merger or consolidation, shall be substituted for the limitation set forth in paragraph 1 of this subsection for purposes of determining the limitation of liability of a corporation.

D. 1. A corporation may establish the fair market value of total gross assets for the purpose of the limitations under subsection C of this section through any method reasonable under the circumstances, including:

a. by reference to the going concern value of the assets or to the purchase price attributable to or paid for the assets in an arm's-length transaction, or

b. in the absence of other readily available information from which fair market value can be determined, by reference to the value of the assets recorded on a balance sheet.

2. Total gross assets include intangible assets.

3. Total gross assets include the aggregate coverage under any applicable liability insurance that was issued to the transferor whose assets are being valued for purposes of this section and which insurance has been collected or is collectable to cover successor asbestos-related liabilities, except compensation for liabilities arising from workers' exposure to asbestos solely during the course of their employment by the transferor. A settlement of a dispute concerning such insurance coverage entered into by a transferor or successor with the insurers of the transferor ten (10) years or more before the enactment of this section shall be determinative of the aggregate coverage of such liability insurance to be included in the calculation of the transferor's total gross assets.

4. The fair market value of total gross assets shall reflect no deduction for any liabilities arising from any asbestos claim.

E. 1. Except as otherwise provided in this section, the fair market value of total gross assets at the time of a merger or consolidation increases annually at a rate equal to the sum of:

a. the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year since the merger or consolidation, and

b. one percent (1%).

2. The rate provided for in paragraph 1 of this subsection shall not be compounded.

3. The adjustment of fair market value of total gross assets continues as provided under paragraph 1 of this subsection until the date the adjusted value is exceeded by the cumulative amounts of successor asbestos-related liabilities paid or committed to be paid by or on behalf of the corporation or a predecessor, or by or on behalf of a transferor, after the time of the merger or consolidation for which the fair market value of total gross assets is determined.

4. No adjustment of the fair market value of total gross assets shall be applied to any liability insurance otherwise included in the definition of total gross assets.

SECTION 52. REPEALER 47 O.S. 2001, Section 12-420, is hereby repealed.

SECTION 53. This act shall become effective November 1, 2004.

49-2-8151 SD 01/21/04

# Exhibit 3

ENROLLED HOUSE
BILL NO. 2661

By: Adair, Pettigrew, Adkins and McClain of the House

and

Hobson of the Senate

An Act relating to civil procedure; providing for determination of attorney fees in class actions; establishing venue for certain civil actions; amending 12 O.S. 2001, Sections 683 and 684, which relate to dismissal of actions; providing exception to certain dismissal of action provisions; providing for dismissal of medical liability actions; amending 12 O.S. 2001, Section 727, which relates to interest on judgment; limiting application of statute to certain dates; providing for postjudgment and prejudgment interest beginning on a certain date; establishing rate of interest; providing that procedure and rate apply on and after a certain date; providing for indemnification of sellers in product liability actions; defining term; providing who is considered a seller; providing scope of duty to indemnify; providing for notice; providing for recovery of certain costs, expenses, fees and damages; limiting scope of application; amending 12 O.S. 2001, Section 990.4, which relates to stay of enforcement of judgment and appeal bonds; authorizing the court to lower the amount of appeal bond in certain circumstances; defining term; prohibiting lowering of appeal bond to the extent an insurance policy or third party is liable to satisfy part or all of judgment; requiring the court to enjoin the judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment; prohibiting the court from issuing order that interferes with use of assets in the normal course of business; amending 12 O.S. 2001, Section 2011, which relates to pleadings; requiring monetary sanctions for certain violations; authorizing other sanctions; amending 12 O.S. 2001, Sections 2020 and 2021, which relate to joinder of parties; requiring the court to consider fair and convenient forum in determining whether to allow joinder and nonjoinder of parties; amending 12 O.S. 2001, Section 3226, as amended by Section 73, Chapter 468, O.S.L. 2002 (12 O.S. Supp. 2003, Section 3226), which relates to discovery; modifying reasons for protective orders; providing for protective orders for abusive discovery; providing for award of certain expenses relating to motions for abusive discovery; authorizing the creation of a Judicial Panel on Multidistrict Litigation; authorizing composition; providing for appointment; providing duties and powers of the

Panel; providing for effect of rulings; authorizing transfer or stays in certain circumstances; providing for duration of transfers and stays; providing for authority of judge to whom an action is transferred; providing for promulgation of rules; amending 20 O.S. 2001, Section 91.2, which relates to dockets; providing for a business court docket; stating legislative findings; authorizing the Supreme Court to establish a business court division within certain district courts; providing for promulgation of rules; making joint tortfeasors severally liable; providing circumstances in which the liability of a defendant is joint and several; providing exclusions of applications; providing for application to civil actions filed on or after a certain date; amending 51 O.S. 2001, Section 152, as last amended by Section 1 of Enrolled House Bill No. 2263 of the 2nd Session of the 49th Oklahoma Legislature; modifying definition; amending Sections 1 and 6, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2003, Sections 1-1708.1A and 1-1708.1F), which relate to the Affordable Access to Health Care Act; modifying short title; extending date of applicability of limits on certain noneconomic damages; establishing limits on certain noneconomic damages under certain circumstances; providing for adjustment for inflation; defining term; providing circumstances under which limitation on damages does not apply; providing for an additional form of verdict and procedure for use; providing that limitation does not apply to actions for wrongful death; providing termination date for certain section of law; providing for application to civil actions filed on or after a certain date; providing that certain statements, affirmations, gestures or conduct are inadmissible in medical liability actions; defining terms; requiring the court to apply certain criteria in determining if an expert witness is qualified to offer expert testimony in medical liability actions; allowing defendant health care provider or employee to qualify as expert witness; amending 2 O.S. 2001, Section 16-71, which relates to property owners and liability for recreational activity; modifying and adding definitions; updating language; providing for applicability of section; amending 76 O.S. 2001, Sections 10, 11, 12, 13, 14, 15 and 15.1, which relate to liability of property owners related to recreational activity; creating the Oklahoma Limitation of Liability for Farming and Ranching Land Act; providing short title; providing purpose; providing for applicability of Oklahoma Limitation of Liability for Farming and Ranching Land Act; modifying and adding definitions; updating and clarifying contents; specifying when liability attaches; providing limits of liability; modifying when liability exists; prohibiting certain persons who have executed a written release of liability or a waiver to sue from maintaining an action or recovering damages; removing certain liability for charges for uses; providing that owners, lessees and

occupants of real property or any structures or improvements thereto do not owe duty of care or duty to give certain warning; providing for immunity from civil liability; limiting scope of immunity; creating the Volunteer Medical Professional Services Immunity Act; providing short title; providing immunity for volunteer medical professionals from civil liability in certain circumstances; limiting scope of immunity; defining term; providing immunity from civil liability for persons participating in a Medical Reserve Corps in certain circumstances; providing for application to civil actions filed on or after a certain date; creating the Registration of Out-of-State Attorneys Act; providing short title; providing for application of the Registration of Out-of-State Attorneys Act; providing for written application to appear as counsel if certain conditions are met; providing conditions for an out-of-state attorney to appear in an action or proceeding; providing registration procedure; requiring payment of an application fee; providing for application forms; requiring certain information; providing for action by the Oklahoma Bar Association; requiring registration with the Oklahoma Tax Commission; requiring annual disclosure of certain income; requiring withholding from certain income and remittance to the Oklahoma Tax Commission; requiring the Oklahoma Tax Commission to provide verification of registration; requiring the Oklahoma lawyer associated with the applicant to file motion to associate; requiring the motion to include certain exhibits and proposed order; requiring copies of the order granting or denying the motion to be served on the Oklahoma Bar Association and the Oklahoma Tax Commission; requiring Oklahoma attorney to appear as attorney of record and consent in writing to the association; prohibiting an applicant from appearing in a proceeding until an order granting the motion to associate is entered; making granting or denial of a motion to associate discretionary; authorizing revocation of authority to appear as counsel pursuant to the Registration of Out-of-State Attorneys Act; making repeated appearances under the Registration of Out-of-State Attorneys Act grounds for denial of the motion to associate; providing for certain presumptions; providing burden of proof; providing for extension of right to associate; providing for transfer of authority to associate if venue is transferred or if the action is appealed; authorizing court having jurisdiction over transferred case or appeal to revoke the authority of the out-of-state attorney to appear; providing for appearances in appellate courts; requiring annual certification and renewal fee; providing for suspension of out-of-state attorney for failure to file required affidavit and renewal fee; providing for notification; providing for withdrawal of association with Oklahoma counsel; authorizing reinstatement, subject to payment of a reinstatement fee; authorizing the Oklahoma Bar Association to waive fees if the applicant is

providing pro bono services; requiring filing of an application for waiver; requiring the Oklahoma Bar Association to file an annual report; providing contents of report; requiring the report to be kept on file at the Bar Association and made available to the public during normal business hours; requiring that a copy be provided to the Chief Justice of the Oklahoma Supreme Court; providing that out-of-state counsel is subject to the jurisdiction of the courts and disciplinary boards of this state; providing requirements for the Oklahoma attorney of record; amending 36 O.S. 2001, Section 312.1, as amended by Section 1, Chapter 315, O.S.L. 2003 (36 O.S. Supp. 2003, Section 312.1), which relates to report, disbursement and appropriation of taxes; directing disbursement and appropriation of certain taxes and fines; expressing legislative intent; amending 36 O.S. 2001, Sections 1509 and 1530, which relate to increase of inadequate reserves and exemptions from Risk-Based Capital for Insurers Act; providing for moratorium on application of certain requirements; requiring certain policy notice; creating the Oklahoma Medical Professionals Liability Trusts Act; providing short title; providing definitions; providing conditions, requirements, duties and limitations of authority to create certain trusts; providing for exemption from certain statutory requirements; requiring filing of certain items by certain trusts; requiring payment of certain taxes and fees; providing penalties; setting forth requirements for certain trust instruments; defining adequate reserves and surplus; prohibiting participation by trust in certain entities; providing for annual review of certain trust documents and activities; providing for report of annual review; allowing promulgation of emergency rules; providing for codification; providing for recodification; providing effective dates; and declaring an emergency.

BE IT ENACTED BY THE PEOPLE OF THE STATE OF OKLAHOMA:

SECTION 1. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 7.1 of Title 5, unless there is created a duplication in numbering, reads as follows:

In class actions, in making an award of attorney fees, the court shall conduct an evidentiary hearing to determine a fair and reasonable fee for class counsel. In making such determination, the court shall act in a fiduciary capacity on behalf of the class.

SECTION 2. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 130 of Title 12, unless there is created a duplication in numbering, reads as follows:

The venue of civil actions for damages brought pursuant to the Affordable Access to Health Care Act, Section 1-1708.1A et seq. of

Title 63 of the Oklahoma Statutes, shall be in a county where the cause of action or any portion thereof arose, or in any county in which any of the defendants reside, or in the case of a corporation, in a county in which it is situated, or has its principal office or place of business, or in any county where a codefendant of such corporation may be sued. Upon a finding of lack of venue, the court shall transfer or dismiss the action; provided, however, that if the court finds lack of venue and that a dismissal would operate as a dismissal with prejudice, the court shall transfer the action.

SECTION 3. AMENDATORY 12 O.S. 2001, Section 683, is amended to read as follows:

Section 683. ~~An~~ Except as provided in Section 5 of this act, an action may be dismissed, without prejudice to a future action:

~~First,~~ 1. By the plaintiff, before the final submission of the case to the jury, or to the court, where the trial is by the court~~.~~;

~~Second,~~ 2. By the court, where the plaintiff fails to appear on the trial~~.~~;

~~Third,~~ 3. By the court, for the want of necessary parties~~.~~;

~~Fourth,~~ 4. By the court, on the application of some of the defendants, where there are others whom the plaintiff fails to prosecute with diligence~~.~~;

~~Fifth,~~ 5. By the court, for disobedience by the plaintiff of an order concerning the proceedings in the action~~.~~; and

~~Sixth,~~ 6. In all other cases, upon the trial of the action, the decision must be upon the merits.

SECTION 4. AMENDATORY 12 O.S. 2001, Section 684, is amended to read as follows:

Section 684. ~~A plaintiff may,~~ A. Except as provided in Section 5 of this act, an action may be dismissed on the payment of costs and without an order of court~~, dismiss any civil action brought by him~~ by the plaintiff at any time before a petition of intervention or answer praying for affirmative relief against ~~him~~ the plaintiff is filed in the action. A plaintiff may, at any time before the trial is commenced, on payment of the costs and without any order of court, dismiss ~~his~~ the action after the filing of a petition of intervention or answer praying for affirmative relief, but such dismissal shall not prejudice the right of the intervenor or defendant to proceed with the action. Any defendant or intervenor may, in like manner, dismiss ~~his~~ an action against the plaintiff, without an order of court, at any time before the trial is begun, on payment of the costs made on the claim filed by ~~him~~ the defendant or intervenor. All parties to a civil action may at any time before trial, without an order of court, and on payment of costs, by agreement, dismiss the action.

B. Such dismissal shall be in writing and signed by the party or ~~his~~ the attorney for the party, and shall be filed with the clerk of the district court~~, the judge or clerk of the county court, or the justice,~~ where the action is pending, who shall note the fact on the proper record: Provided, such dismissal shall be held to be

without prejudice, unless the words "with prejudice" be expressed therein.

C. When an action is dismissed after a jury in the action is empanelled and the case is subsequently refiled, the court, at the conclusion of the subsequent action, may assess costs and attorney fees incurred in the previous action by the defendants subsequent to the jury being empanelled.

SECTION 5. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. A medical liability action brought pursuant to the Affordable Access to Health Care Act shall only be dismissed, on the payment of costs and without an order of court:

1. By the plaintiff, before the later of the completion of discovery or the court's ruling on a motion for summary judgment;

2. By the plaintiff at any time before a petition for intervention or answer praying for affirmative relief against the plaintiff is filed in the action. The plaintiff may, at any time before the trial is commenced, on payment of the costs and without any order of the court, dismiss the action after the filing of a petition for intervention or answer praying for affirmative relief, but such dismissal shall not prejudice the right of the intervenor or defendant to proceed with the action. Any defendant or intervenor may, in like manner, dismiss an action against the plaintiff, without an order of the court, at any time before the trial has begun, on payment of costs made on the claim filed by the defendant or intervenor; or

3. By agreement of all parties to a civil action at any time before trial.

B. Such dismissal shall be in writing and signed by the party or the attorney for the party, and shall be filed with the clerk of the district court where the action is pending, who shall note the fact on the proper record. Provided, such dismissal shall be held to be without prejudice, unless the words "with prejudice" be expressed therein.

C. If the court finds that a party has acted in bad faith, vexatiously, wantonly or in an oppressive manner in dismissing an action under this section, the court, pursuant to subsection A of this section, may award reasonable costs against the party and condition the refiling of the case upon payment of the costs.

SECTION 6. AMENDATORY 12 O.S. 2001, Section 727, is amended to read as follows:

Section 727.

POSTJUDGMENT INTEREST

A. 1. Except as otherwise provided by this section, all judgments of courts of record, including costs and attorney fees authorized by statute or otherwise and allowed by the court, shall bear interest at a rate prescribed pursuant to this section.

2. Costs and attorney fees allowed by the court shall bear interest from the earlier of the date the judgment or order is pronounced, if expressly stated in the written judgment or order awarding the costs and attorney fees, or the date the judgment or order is filed with the court clerk.

B. Judgments, including costs and attorney fees authorized by statute or otherwise and allowed by the court, against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, shall bear interest during the term of judgment at a rate prescribed pursuant to this section, but not to exceed ten percent (10%), from the date of rendition. No judgment against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, inclusive of postjudgment interest, shall exceed the total amount of liability of the governmental entity pursuant to the Governmental Tort Claims Act.

C. The postjudgment interest authorized by subsection A or subsection B of this section shall accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk, and shall initially accrue at the rate in effect for the calendar year during which the judgment is rendered until the end of the calendar year in which the judgment was rendered, or until the judgment is paid, whichever first occurs. Beginning on the first day of January of the next succeeding calendar year until the end of that calendar year, or until the judgment is paid, whichever first occurs, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. For each succeeding calendar year, or part of a calendar year, during which a judgment remains unpaid, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. A separate computation using the interest rate in effect for judgments as provided by subsection I of this section shall be made for each calendar year, or part of a calendar year, during which the judgment remains unpaid in order to determine the total amount of interest for which the judgment debtor is liable. The postjudgment interest rate for each calendar year or part of a calendar year a judgment remains unpaid shall be multiplied by the original amount of the judgment, including any prejudgment interest, together with postjudgment interest previously accrued. Interest shall accrue on a judgment in the manner prescribed by this subsection until the judgment is satisfied or released.

D. If a rate of interest is specified in a contract, the rate specified shall apply and be stated in the journal entry of judgment. The rate of interest shall not exceed the lawful rate for that obligation. Postjudgment interest shall be calculated and accrued in the same manner as prescribed in subsection C of this section.

PREJUDGMENT INTEREST

E. Except as provided by subsection F of this section, if a verdict for damages by reason of personal injuries or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another is accepted by the trial court, the court in rendering judgment shall add interest on the verdict at a rate prescribed pursuant to subsection I of this section from the date the suit resulting in the judgment was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year in which the suit resulting in the judgment is commenced. This rate shall be in effect until the end of the calendar year in which the suit resulting in judgment was filed or until the date judgment is filed, whichever first occurs. Beginning on the first day of January of the next succeeding calendar year until the end of that calendar year, or until the date the judgment is filed, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of all prejudgment interest has been completed, the total amount of prejudgment interest shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection A of this section.

F. If a verdict of the type described by subsection E of this section is rendered against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, the judgment shall bear interest at the rate prescribed pursuant to subsection I of this section, but not to exceed ten percent (10%) from the date the suit was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment or the date the judgment is filed with the court clerk. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year in which the suit resulting in the judgment is commenced. This rate shall be in effect until the end of the calendar year in which the suit resulting in judgment was filed or until the date the judgment is rendered as expressly stated in the judgment, whichever first occurs. Beginning on the first day of January of the next succeeding calendar year until the end of that calendar year, or until the date judgment is rendered, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of prejudgment interest has been completed, the amount shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is

computed pursuant to subsection B of this section. No award of prejudgment interest against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, including the amount of the judgment awarded pursuant to trial of the action, shall exceed the total amount of liability of the governmental entity pursuant to the Governmental Tort Claims Act.

G. If exemplary or punitive damages are awarded in an action for personal injury or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another, the interest on that award shall begin to accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk.

H. If a judgment is rendered establishing the existence of a lien against property and no rate of interest exists, the court shall allow prejudgment interest at a rate prescribed pursuant to subsection I of this section from the date the lien is filed to the date of verdict.

I. For purposes of computing either postjudgment interest or prejudgment interest as authorized by this section, interest shall be determined using a rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year, plus four percentage points.

J. For purposes of computing postjudgment interest, the provisions of this section, including the amendments prescribed by ~~this act~~ Chapter 320, O.S.L. 1997, shall be applicable to all judgments of the district courts rendered on or after January 1, 2000 but before January 1, 2005. ~~Effective January 1, 2000~~ Until January 1, 2005, the method for computing postjudgment interest prescribed by this section shall be applicable to all judgments remaining unpaid rendered prior to January 1, 2000.

K. For purposes of computing prejudgment interest, the provisions of this section, including the amendments prescribed by ~~this act~~ Chapter 320, O.S.L. 1997, shall be applicable to all actions which are filed in the district courts on or after January 1, 2000, but before January 1, 2005, for which an award of prejudgment interest is authorized by the provisions of this section.

SECTION 7. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 727.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

POSTJUDGMENT INTEREST

A. 1. Except as otherwise provided by this section, all judgments of courts of record, including costs and attorney fees authorized by statute or otherwise and allowed by the court, shall bear interest at a rate prescribed pursuant to this section.

2. Costs and attorney fees allowed by the court shall bear interest from the earlier of the date the judgment or order is pronounced, if expressly stated in the written judgment or order awarding the costs and attorney fees, or the date the judgment or order is filed with the court clerk.

B. Judgments, including costs and attorney fees authorized by statute or otherwise and allowed by the court, against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, shall bear interest during the term of judgment at a rate prescribed pursuant to this section from the date of rendition. No judgment against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, inclusive of postjudgment interest, shall exceed the total amount of liability of the governmental entity pursuant to the Governmental Tort Claims Act.

C. The postjudgment interest authorized by subsection A or subsection B of this section shall accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk, and shall initially accrue at the rate in effect for the calendar year during which the judgment is rendered until the end of the calendar year in which the judgment was rendered, or until the judgment is paid, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the judgment is paid, whichever first occurs, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. For each succeeding calendar year, or part of a calendar year, during which a judgment remains unpaid, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. A separate computation using the interest rate in effect for judgments as provided by subsection I of this section shall be made for each calendar year, or part of a calendar year, during which the judgment remains unpaid in order to determine the total amount of interest for which the judgment debtor is liable. The postjudgment interest rate for each calendar year or part of a calendar year a judgment remains unpaid shall be multiplied by the original amount of the judgment, including any prejudgment interest, together with postjudgment interest previously accrued. Interest shall accrue on a judgment in the manner prescribed by this subsection until the judgment is satisfied or released.

D. If a rate of interest is specified in a contract, the rate specified shall apply and be stated in the journal entry of judgment. The rate of interest shall not exceed the lawful rate for that obligation. Postjudgment interest shall be calculated and accrued in the same manner as prescribed in subsection C of this section.

PREJUDGMENT INTEREST

E. Except as provided by subsection F of this section or Section 1-1708.1G of Title 63 of the Oklahoma Statutes, if a verdict for damages by reason of personal injuries or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another is accepted by the trial court, the court in rendering judgment shall add interest on the verdict at a rate prescribed pursuant to subsection I of this section from the date the suit resulting in the judgment was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year in which the suit resulting in the judgment is commenced. This rate shall be in effect until the end of the calendar year in which the suit resulting in judgment was filed or until the date judgment is filed, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the date the judgment is filed, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of all prejudgment interest has been completed, the total amount of prejudgment interest shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection A of this section.

F. If a verdict of the type described by subsection E of this section is rendered against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, the judgment shall bear interest at the rate prescribed pursuant to subsection I of this section from the date the suit was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment or the date the judgment is filed with the court clerk. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year in which the suit resulting in the judgment is commenced. This rate shall be in effect until the end of the calendar year in which the suit resulting in judgment was filed or until the date the judgment is rendered as expressly stated in the judgment, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the date judgment is rendered, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of prejudgment interest has been completed, the amount shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection B of this section. No award of prejudgment interest against this state or its political subdivisions, including counties, municipalities, school

districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, including the amount of the judgment awarded pursuant to trial of the action, shall exceed the total amount of liability of the governmental entity pursuant to the Governmental Tort Claims Act.

G. If exemplary or punitive damages are awarded in an action for personal injury or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another, the interest on that award shall begin to accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk.

H. If a judgment is rendered establishing the existence of a lien against property and no rate of interest exists, the court shall allow prejudgment interest at a rate prescribed pursuant to subsection I of this section from the date the lien is filed to the date of verdict.

I. For purposes of computing either postjudgment interest or prejudgment interest as authorized by this section, interest shall be the prime rate, as listed in the first edition of the Wall Street Journal published for each calendar year and as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day following publication in January of each year, plus two percent (2%).

J. For purposes of computing postjudgment interest, the provisions of this section shall be applicable to all judgments of the district courts rendered on or after January 1, 2005. Effective January 1, 2005, the method for computing postjudgment interest prescribed by this section shall be applicable to all judgments remaining unpaid rendered prior to January 1, 2005.

K. For purposes of computing prejudgment interest, the provisions of this section shall be applicable to all actions which are filed in the district courts on or after January 1, 2005, for which an award of prejudgment interest is authorized by the provisions of this section.

SECTION 8. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 832.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. A manufacturer shall indemnify and hold harmless a seller against loss arising out of a product liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

B. For purposes of this section, "loss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.

C. Damages awarded by the trier of fact shall, on final judgment, be deemed reasonable for purposes of this section.

D. For purposes of this section, a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer’s instructions shall be considered a seller.

E. The duty to indemnify under this section:

1. Applies without regard to the manner in which the action is concluded; and

2. Is in addition to any duty to indemnify established by law, contract, or otherwise.

F. A seller eligible for indemnification under this section shall give reasonable notice to the manufacturer of a product claimed in a petition or complaint to be defective, unless the manufacturer has been served as a party or otherwise has actual notice of the action.

G. A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller’s right to indemnification under this section.

H. Nothing contained in this section shall operate to permit or require dismissal of a party with a right of indemnification arising under this section and nothing in this section shall be used as a basis for dismissal of a plaintiff’s claim against the seller.

SECTION 9. AMENDATORY 12 O.S. 2001, Section 990.4, is amended to read as follows:

Section 990.4 A. Except as provided in subsection C of this section, a party may obtain a stay of the enforcement of a judgment, decree or final order:

1. While a post-trial motion is pending;

2. During the time in which an appeal may be commenced; or

3. While an appeal is pending.

Such stay may be obtained by filing with the court clerk a written undertaking and the posting of a supersedeas bond or other security as provided in this section. In the undertaking the appellant shall agree to satisfy the judgment, decree or final order, and pay the costs and interest on appeal, if it is affirmed. The undertaking and supersedeas bond or security may be given at any time. The stay is effective when the bond and the sufficiency of the sureties are approved by the trial court or the security is deposited with the court clerk. The enforcement of the judgment, decree or order shall no longer be stayed, and the judgment, decree or order may be enforced against any surety on the bond or other security:

1. If neither a post-trial motion nor a petition in error is filed, and the time for appeal has expired;

2. If a post-trial motion is no longer pending, no petition in error has been filed, and the time for appeal has expired; or

3. If an appeal is no longer pending.

B. The amount of the bond or other security shall be as follows:

1. When the judgment, decree or final order is for payment of money:

a. ~~The~~ the bond shall be double the amount of the judgment, decree or final order, unless the bond is executed or guaranteed by a surety as hereinafter provided. The bond shall be for the amount of the judgment, decree or order including costs and interest on appeal where it is executed or guaranteed by an entity with suretyship powers as provided by the laws of Oklahoma. On a showing by the judgment debtor that the judgment debtor is likely to suffer substantial economic harm if required to post bond in the amount required by this paragraph, the court shall balance the likely substantial economic harm to the judgment debtor with the ability of the judgment creditor to collect the judgment in the event the judgment is affirmed on appeal and may lower the bond accordingly. "Substantial economic harm" means insolvency or creating a significant risk of insolvency. The court shall not lower a bond as provided in this paragraph to the extent there is in effect an insurance policy, or agreement under which a third party is liable to satisfy part or all of the judgment entered and such party is required to post all or part of the bond. Upon lowering the bond as provided in this paragraph, the court shall enter an order enjoining a judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment, but the court shall not make any order that interferes with the judgment debtor's use of assets in the normal course of business, and

b. ~~Instead~~ instead of filing a supersedeas bond, the appellant may obtain a stay by depositing cash with the court clerk in the amount of the judgment or order plus an amount that the court determines will cover costs and interest on appeal. The court shall have discretion to accept United States Treasury notes or general obligation bonds of the State of Oklahoma in lieu of cash. If the court accepts such notes or bonds, it shall make appropriate orders for their safekeeping and maintenance during the stay;

2. When the judgment, decree or final order directs execution of a conveyance or other instrument, the amount of the bond shall be determined by the court. Instead of posting a supersedeas bond or other security, the appellant may execute the conveyance or other instrument and deliver it to the clerk of the court for deposit with a public or private entity for safekeeping, as directed by the court in writing;

3. When the judgment, decree or final order directs the delivery of possession of real or personal property, the bond shall be in an amount, to be determined by the court, that will protect

the interests of the parties. The court may consider the value of the use of the property, any waste that may be committed on or to the property during the pendency of the stay, the value of the property, and all costs. When the judgment, decree or final order is for the sale of mortgaged premises and the payment of a deficiency arising from the sale, the bond must also provide for the payment of the deficiency;

4. When the judgment or final order directs the assignment or delivery of documents, they may be placed in the custody of the clerk of the court in which the judgment or order was rendered, for deposit with a public or private entity for safekeeping during the pendency of the stay, as directed by the court in writing, or the bond shall be in such sum as may be prescribed by the court; or

5. In order to protect any monies payable to the Tobacco Settlement Fund as set forth in Section 50 of Title 62 of the Oklahoma Statutes, the bond in any action or litigation involving a tobacco product manufacturer that is a party to the Master Settlement Agreement dated November 23, 1998, or a party to the Smokeless Tobacco Master Settlement Agreement, also dated November 23, 1998, shall be in an amount not to exceed one hundred percent (100%) of the judgment, exclusive of interest and costs, or Twenty-five Million Dollars ($25,000,000.00), whichever is less. However, if it is proved by a preponderance of the evidence that the appellant for whom the bond has been limited pursuant to this paragraph is intentionally dissipating or diverting assets outside of the ordinary course of its business for the purpose of avoiding payment of the judgment, the court shall enter such orders as are necessary to prevent dissipation or diversion, including, but not limited to, requiring that a bond be posted equal to the full amount of security required pursuant to this section. For purposes of this paragraph, "Master Settlement Agreement" and "tobacco product manufacturer" shall have the same meanings as those terms are defined in paragraphs 5 and 9 of Section 600.22 of Title 37 of the Oklahoma Statutes, and "Smokeless Tobacco Master Settlement Agreement" means the settlement agreement and related documents entered into on November 23, 1998, by this state and leading United States smokeless tobacco product manufacturers.

C. Subsections A and B of this section shall not apply in actions involving temporary or permanent injunctions, actions for divorce, separate maintenance, annulment, paternity, custody, adoption, or termination of parental rights, or in juvenile matters, post-decree matrimonial proceedings or habeas corpus proceedings. The trial or appellate court, in its discretion, may stay the enforcement of any provision in a judgment, decree or final order in any of the types of actions or proceedings listed in this subsection during the pendency of the appeal or while any post-trial motion is pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties. If a temporary or permanent injunction is denied or dissolved, the trial or appellate court, in its discretion, may restore or grant an injunction during the pendency of the appeal and while any post-trial motions are pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties.

D. In any action not provided for in subsections A, B or C, the court may stay the enforcement of any judgment, decree or final order during the pendency of the appeal or while any post-trial

motion is pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties.

E. The trial court shall have continuing jurisdiction during the pendency of any post-trial motion and appeal to modify any order it has entered regarding security or other conditions in connection with a stay.

F. The execution of a supersedeas bond shall not be a condition for the granting of a stay of judgment, decree or final order of any judicial tribunal against any county, municipality, or other political subdivision of the State of Oklahoma.

G. Executors, administrators and guardians who have given bond in this state, with sureties, according to law, are not required to provide a supersedeas bond if they are granted a stay of enforcement of a judgment, decree or final order.

H. After an appeal has been decided, but before the mandate has issued, a party whose trial court judgment has been affirmed, may move the appellate court to order judgment on the bond or other security in the amount of the judgment plus interest, appeals costs and allowable appeal-related ~~attorney's~~ attorney fees. After mandate has issued, a party who has posted a bond or other security may move for exoneration of the bond or other security only in the trial court; and all motions concerning the bond or other security must be addressed to the trial court.

SECTION 10. AMENDATORY 12 O.S. 2001, Section 2011, is amended to read as follows:

Section 2011.

SIGNING OF PLEADINGS

A. SIGNATURE. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in his individual name, whose Oklahoma Bar Association identification number shall be stated, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the address of the signer and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless the omission of the signature is corrected promptly after being called to the attention of the attorney or party.

B. REPRESENTATIONS TO COURT. By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1. It is not being presented for any improper or frivolous purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2. The claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the

extension, modification, or reversal of existing law or the establishment of new law;

3. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

C. SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subsection B of this section has been violated, the court shall, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subsection B of this section or are responsible for the violation.

1. HOW INITIATED.

a. By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection B of this section. It shall be served as provided in Section 2005 of this title, but shall not be filed with or presented to the court unless, within twenty-one (21) days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorneys fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

b. On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subsection B of this section and directing an attorney, law firm, or party to show cause why it has not violated subsection B of this section with respect thereto.

2. NATURE OF SANCTIONS; LIMITATIONS. A sanction imposed for violation of this ~~rule~~ <u>section</u> shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs a ~~and~~<u>,</u> b <u>and c</u> of this paragraph, the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys fees and other expenses incurred as a direct result of the violation.

a. Monetary sanctions shall not be awarded against a represented party for a violation of paragraph 2 of subsection B of this section.

b. Monetary sanctions shall not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

c. Monetary sanctions shall be awarded for any violations of paragraph 1 of subsection B of this section. The sanctions shall consist of an order directing payment of reasonable costs, including attorney fees, incurred by the movant with respect to the conduct for which the sanctions are imposed. In addition, the court may impose any other sanctions authorized by this paragraph.

3. ORDER. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed.

D. INAPPLICABILITY TO DISCOVERY. This section does not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Sections 3226 through 3237 of this title.

E. DEFINITION. As used in this section, "frivolous" means the action or pleading was knowingly asserted in bad faith, was unsupported by any credible evidence, was not grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law.

SECTION 11. AMENDATORY 12 O.S. 2001, Section 2020, is amended to read as follows:

Section 2020.

PERMISSIVE JOINDER OF PARTIES

A. PERMISSIVE JOINDER.

1. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative:

a. in respect of or arising out of the same transaction or occurrence, or

b. if the claims arise out of a series of transactions or occurrences and any question of law or fact common to all these persons will arise in the action, or

c. if the claims are connected with the subject matter of the action.

2. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative:

a. any right to relief in respect of or arising out of the same transaction or occurrence, or

b. if the claims arise out of a series of transactions or occurrences and any question of law or fact common to all defendants will arise in the action, or

c. if the claims are connected with the subject matter of the action.

3. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

B. ACTIONS INVOLVING PROPERTY. In actions to quiet title or actions to enforce mortgages or other liens, persons who assert an interest in the property that is the subject of the action may be joined although their interest does not arise from the same transaction or occurrence. The court may order separate trials to prevent delay or prejudice.

C. SEPARATE TRIALS. The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials or make other orders to prevent delay or prejudice. <u>In determining whether to allow joinder under this section or to order separate trials, the court shall consider if in the interest of justice such action provides a fair and convenient forum for all parties.</u>

SECTION 12. AMENDATORY 12 O.S. 2001, Section 2021, is amended to read as follows:

Section 2021.

MISJOINDER AND NONJOINDER OF PARTIES

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately. <u>In determining whether to add or drop parties under this section, the court shall consider if in the interest of justice such action provides a fair and convenient forum for all parties.</u>

SECTION 13. AMENDATORY 12 O.S. 2001, Section 3226, as amended by Section 73, Chapter 468, O.S.L. 2002 (12 O.S. Supp. 2003, Section 3226), is amended to read as follows:

Section 3226. A. DISCOVERY METHODS. Parties may obtain discovery by one or more of the following methods: Depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission. Unless the court orders otherwise under this section, the frequency of use of these methods is not limited.

B. DISCOVERY SCOPE AND LIMITS. Unless otherwise limited by order of the court in accordance with the Oklahoma Discovery Code, the scope of discovery is as follows:

1. IN GENERAL. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

2. TRIAL PREPARATION: MATERIALS. Subject to the provisions of paragraph 3 of this subsection, discovery may be obtained of documents and tangible things otherwise discoverable under paragraph 1 of this subsection and prepared in anticipation of litigation or for trial by or for another party or by or for the representative of that other party, including his attorney, consultant, surety, indemnitor, only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

A party may obtain, without the required showing provided for in this paragraph, a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provisions of paragraph 4 of subsection A of Section 3237 of this title apply to the award of expenses incurred in relation to the motion. For purposes of this paragraph, a statement previously made is:

a. A written statement signed or otherwise adopted or approved by the person making it, or

b. A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which substantially recites an oral statement by the person making it and contemporaneously recorded.

3. TRIAL PREPARATION: EXPERTS.

a. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of paragraph 1 of this subsection and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(1) A party may, through interrogatories, require any other party to identify each person whom that other party expects to call as an expert witness at trial and give the address at which that expert witness may be located.

(2) After disclosure of the names and addresses of the expert witnesses, the other party expects to call as witnesses, the party, who has requested disclosure, may depose any such expert witnesses subject to scope of this section. Prior to taking the deposition the party must give notice as required in subsections A and C of Section 3230 of this title. If any documents are provided to such disclosed expert witnesses, the documents shall not be protected from disclosure by privilege or work product protection and they may be obtained through discovery.

(3) In addition to taking the depositions of expert witnesses the party may, through interrogatories, require the party who expects to call the expert witnesses to state the subject matter on which each expert witness is expected to testify; the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion; the qualifications of each expert witness, including a list of all publications authored by the expert witness within the preceding ten (10) years; the compensation to be paid to the expert witness for the testimony and preparation for the testimony; and a listing of any other cases in which the expert witness has testified as an expert at trial or by deposition within the preceding four (4) years. An interrogatory seeking the information specified above shall be treated as a single interrogatory for purposes of the limitation on the number of interrogatories in Section 3233 of this title.

b. A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only upon motion, when the court may order discovery as provided in Section 3235 of this title or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by any other means.

c. Unless manifest injustice would result:

(1) The court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under division (2) of subparagraph a of this paragraph and subparagraph b of this paragraph.

(2) The court shall require that the party seeking discovery with respect to discovery obtained under subparagraph b of this paragraph, pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

4. CLAIMS OF PRIVILEGE OR PROTECTION OF TRIAL PREPARATION MATERIALS. When a party withholds information otherwise discoverable under the Oklahoma Discovery Code by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

C. PROTECTIVE ORDERS.

1. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer, either in person or by telephone, with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or on matters relating to a deposition, the district court in the county where the deposition is to be taken may enter any order which justice requires to protect a party or person from annoyance, harassment, embarrassment, oppression or undue delay, burden or expense, including one or more of the following:

a. that the discovery not be had,

b. that the discovery may be had only on specified terms and conditions, including a designation of the time or place,

c. that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery,

d. that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters,

e. that discovery be conducted with no one present except persons designated by the court,

f. that a deposition after being sealed be opened only by order of the court,

g. that a trade secret or other confidential research, development or commercial information not be disclosed or be disclosed only in a designated way, and

h. that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court;

2. If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of paragraph 4 of subsection A of Section 3237 of this title apply to the award of expenses incurred in relation to the motion. Any protective order of the court which has the effect of removing any material obtained by discovery from the public record shall contain the following:

a. a statement that the court has determined it is necessary in the interests of justice to remove the material from the public record,

b. specific identification of the material which is to be removed or withdrawn from the public record, or which is to be filed but not placed in the public record, and

c. a requirement that any party obtaining a protective order place the protected material in a sealed manila envelope clearly marked with the caption and case number and is clearly marked with the word "CONFIDENTIAL", and stating the date the order was entered and the name of the judge entering the order;

3. No protective order entered after the filing and microfilming of documents of any kind shall be construed to require the microfilm record of such filing to be amended in any fashion;

4. The party or counsel which has received the protective order shall be responsible for promptly presenting the order to appropriate court clerk personnel for appropriate action;

5. All documents produced or testimony given under a protective order shall be retained in the office of counsel until required by the court to be filed in the case;

6. Counsel for the respective parties shall be responsible for informing witnesses, as necessary, of the contents of the protective order; and

7. When a case is filed in which a party intends to seek a protective order removing material from the public record, the plaintiff(s) and defendant(s) shall be initially designated on the petition under pseudonym such as "John or Jane Doe", or "Roe", and the petition shall clearly indicate that the party designations are fictitious. The party seeking confidentiality or other order removing the case, in whole or in part, from the public record, shall immediately present application to the court, seeking instructions for the conduct of the case, including confidentiality of the records.

D. SEQUENCE AND TIMING OF DISCOVERY. Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence. The fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay discovery by any other party.

E. SUPPLEMENTATION OF RESPONSES. A party who has responded to a request for discovery with a response that was complete when it was made is under no duty to supplement the response to include information thereafter acquired, except as follows:

1. A party is under a duty seasonably to supplement the response with respect to any question directly addressed to:

a. the identity and location of persons having knowledge of discoverable matters, and

b. the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the testimony of the person.

2. A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party obtains information upon the basis of which:

a. (i) the party knows that the response was incorrect in some material respect when made, or

(ii) the party knows that the response, which was correct when made, is no longer true in some material respect; and

b. the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

3. A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

F. DISCOVERY CONFERENCE. At any time after commencement of an action, the court may direct the attorneys for the parties to appear for a conference on the subject of discovery. The court shall do so upon motion by the attorney for any party if the motion includes:

1. A statement of the issues as they then appear;

2. A proposed plan and schedule of discovery;

3. Any limitations proposed to be placed on discovery;

4. Any other proposed orders with respect to discovery; and

5. A statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in the motion.

Each party and his attorney are under a duty to participate in good faith in the framing of a discovery plan if a plan is proposed by the attorney for any party. Notice of the motion shall be served on all parties. Objections or additions to matters set forth in the motion shall be served not later than ten (10) days after service of the motion.

Following the discovery conference, the court shall enter an order tentatively identifying the issues for discovery purposes, establishing a plan and schedule for discovery, setting limitations on discovery, if any; and determining such other matters, including the allocation of expenses, as are necessary for the proper management of discovery in the action. In preparing the plan for discovery the court shall protect the parties from excessive or abusive use of discovery. An order shall be altered or amended whenever justice so requires.

Subject to the right of a party who properly moves for a discovery conference to prompt convening of the conference, the court may combine the discovery conference with a pretrial conference.

G. SIGNING OF DISCOVERY REQUESTS, RESPONSES AND OBJECTIONS. Every request for discovery, response or objection thereto made by a party represented by an attorney shall be signed by at least one of his attorneys of record in his individual name whose address shall be stated. A party who is not represented by an attorney shall sign the request, response or objection and state his address. The signature of the attorney or party constitutes a certification that he has read the request, response or objection, and that it is:

1. To the best of his knowledge, information and belief formed after a reasonable inquiry consistent with the Oklahoma Discovery Code and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law;

2. Interposed in good faith and not primarily to cause delay or for any other improper purpose; and

3. Not unreasonable or unduly burdensome or expensive, given the nature and complexity of the case, the discovery already had in the case, the amount in controversy, and other values at stake in the litigation. If a request, response or objection is not signed, it shall be deemed ineffective.

If a certification is made in violation of the provisions of this subsection, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response or objection is made, or both, an appropriate sanction, which may include an order to pay to the amount of the reasonable expenses occasioned thereby, including a reasonable attorney fee.

SECTION 14. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 3226.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. ABUSIVE DISCOVERY. In addition to the protective orders that a court may issue pursuant to paragraph 1 of subsection C of Section 3226 of Title 12 of the Oklahoma Statutes, a protective order may be issued by the court authorizing or denying discovery in the court in which the action is pending. A protective order may also be authorized on matters relating to a deposition. The order may be issued upon a motion by a party or the person from whom discovery is sought. The motion shall be accompanied by a certification that the movant has in good faith conferred or attempted to confer, either in person or by telephone, with other

affected parties in an effort to resolve the dispute without court action. Upon receipt by the court of the motion and certification, the court may enter the protective order authorizing or denying the discovery upon a finding that justice requires a party or person be protected from annoyance, harassment, embarrassment, oppression or undue delay, burden, or expense.

B. AWARD OF EXPENSES OF MOTION. If the motion is granted, the court may, after opportunity for hearing, require the party or person whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is denied, the court may, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

SECTION 15. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 81 of Title 20, unless there is created a duplication in numbering, reads as follows:

A. At the discretion of the Supreme Court, the Court may create a Judicial Panel on Multidistrict Litigation. The panel may consist of five (5) active judges selected by the Chief Justice of the Supreme Court. The judges may be either judges of the district court or appellate judges. The members of the panel shall serve at the pleasure of the Chief Justice.

B. If there exist a sufficient number of cases to justify consolidation and if the cases are at a comparable stage in the litigation, the Judicial Panel on Multidistrict Litigation may transfer civil actions involving one or more common questions of fact pending in the same or different district courts to any district court for consolidated or coordinated proceedings, giving due weight, consideration and preference to the district court wherein the first civil action was filed.

C. If the Judicial Panel on Multidistrict Litigation finds that the civil actions are not at comparable stages in the litigation, the Panel may stay one or more of the actions pending resolution of the common questions of fact in one of the other actions, giving due weight, consideration and preference to the first civil action filed and the action which has reached the furthest stage of litigation.

D. Nothing in this section shall expand the existing law as to the binding effect of a court’s rulings in one of the actions to the other actions prior to the date of consolidation or as to any case that is stayed by the Panel.

E. A transfer or stay may be made by the Judicial Panel on Multidistrict Litigation if the panel determines that the transfer or stay shall:

1. Be for the convenience of the parties and witnesses; and

2. Promote the just and efficient conduct of actions giving due weight and consideration to binding or nonbinding effects of prior and future court rulings on the parties to the cases to be consolidated or stayed.

F. A transfer or stay may be for the remainder of an action or for any particular stage of an action.

G. A judge who is qualified and authorized by law to preside in the court to which an action is transferred pursuant to this section may preside over the transferred action as if the transferred action were originally filed in that court.

H. The Supreme Court shall promulgate rules for the implementation of this section.

SECTION 16. AMENDATORY 20 O.S. 2001, Section 91.2, is amended to read as follows:

Section 91.2 A. To facilitate the trial and disposition of cases, actions filed in the district court shall be assigned to various dockets by the clerk of the court pursuant to the direction and supervision of the presiding judge of the district. Until changed by order of the Supreme Court, only the following dockets are established: a civil docket, a criminal docket, a traffic docket, a probate docket, a juvenile and family relations docket, ~~and~~ a small claims docket, and a business docket for business court divisions of the court created pursuant to Section 17 of this act.

B. Whenever a district court establishes a drug court program pursuant to the provisions of Sections ~~1~~ 471 through ~~12~~ 471.11 of ~~this act~~ Title 22 of the Oklahoma Statutes, the judge having authority over the program shall cause to be established a drug court docket. In those cases assigned to the drug court docket, the judge shall determine what information or pleadings are to be maintained in a confidential case file which shall be closed to public inspection. The originating criminal case file shall remain open to public inspection. Nothing in this section shall prohibit the district attorney, defense attorney, or the victim-witness coordinator from advising any victim or other person regarding the assignment or disposition of a drug court case.

SECTION 17. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 91.7 of Title 20, unless there is created a duplication in numbering, reads as follows:

A. The Oklahoma Legislature finds that, due to the complex nature of litigation involving highly technical commercial issues, there is a need for a court in Oklahoma's most populated counties with specific jurisdiction over actions involving such commercial issues.

B. The Supreme Court is authorized to create a business court division within the district court of any judicial district

containing a municipality with a population in excess of three hundred thousand (300,000), according to the latest Federal Decennial Census.

C. The Supreme Court shall promulgate rules for the establishment and jurisdiction of the business court divisions.

SECTION 18. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 15 of Title 23, unless there is created a duplication in numbering, reads as follows:

A. Except as provided in subsections B and C of this section, in any civil action based on fault and not arising out of contract, the liability for damages caused by two or more persons shall be several only and a joint tortfeasor shall be liable only for the amount of damages allocated to that tortfeasor.

B. A defendant shall be jointly and severally liable for the damages recoverable by the plaintiff if the percentage of responsibility attributed to the defendant with respect to a cause of action is greater than fifty percent (50%).

C. If at the time the incident which gave rise to the cause of action occurred, any joint tortfeasors acted with willful and wanton conduct or with reckless disregard of the consequences of the conduct and such conduct proximately caused the damages legally recoverable by the plaintiff, the liability for damages shall be joint and several.

D. This section shall not apply to actions brought by the state or a political subdivision of the state or any action in which no comparative negligence is found to be attributable to the plaintiff.

E. The provisions of this section shall apply to all civil actions based on fault and not arising out of contract that accrue on or after November 1, 2004.

SECTION 19. AMENDATORY 51 O.S. 2001, Section 152, as last amended by Section 1 of Enrolled House Bill No. 2263 of the 2nd Session of the 49th Oklahoma Legislature, is amended to read as follows:

Section 152. As used in The Governmental Tort Claims Act:

1. "Action" means a proceeding in a court of competent jurisdiction by which one party brings a suit against another;

2. "Agency" means any board, commission, committee, department or other instrumentality or entity designated to act in behalf of the state or a political subdivision;

3. "Claim" means any written demand presented by a claimant or the claimant's authorized representative in accordance with this act to recover money from the state or political subdivision as compensation for an act or omission of a political subdivision or the state or an employee;

4. "Claimant" means the person or the person's authorized representative who files notice of a claim in accordance with The

Governmental Tort Claims Act. Only the following persons and no others may be claimants:

a. any person holding an interest in real or personal property which suffers a loss, provided that the claim of the person shall be aggregated with claims of all other persons holding an interest in the property and the claims of all other persons which are derivative of the loss, and that multiple claimants shall be considered a single claimant,

b. the individual actually involved in the accident or occurrence who suffers a loss, provided that the individual shall aggregate in the claim the losses of all other persons which are derivative of the loss, or

c. in the case of death, an administrator, special administrator or a personal representative who shall aggregate in the claim all losses of all persons which are derivative of the death;

5. "Employee" means any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis.

a. Employee also includes:

(1) all elected or appointed officers, members of governing bodies and other persons designated to act for an agency or political subdivision, but the term does not mean a person or other legal entity while acting in the capacity of an independent contractor or an employee of an independent contractor, ~~and~~

(2) from September 1, 1991, through June 30, 1996, licensed physicians, licensed osteopathic physicians and certified nurse-midwives providing prenatal, delivery or infant care services to State Department of Health clients pursuant to a contract entered into with the State Department of Health in accordance with paragraph 3 of subsection B of Section 1-106 of Title 63 of the Oklahoma Statutes but only insofar as services authorized by and in conformity with the terms of the contract and the requirements of Section 1-233 of Title 63 of the Oklahoma Statutes, and

(3) any volunteer, full-time or part-time firefighter when performing duties for a fire department provided for in subparagraph j of paragraph 8 of this section.

b. For the purpose of The Governmental Tort Claims Act, the following are employees of this state, regardless of the place in this state where duties as employees are performed:

(1) physicians acting in an administrative capacity,

(2) resident physicians and resident interns participating in a graduate medical education program of the University of Oklahoma Health Sciences Center or the College of Osteopathic Medicine of Oklahoma State University,

(3) faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University, while engaged in teaching duties,

(4) physicians who practice medicine or act in an administrative capacity as an employee of an agency of the State of Oklahoma, and

(5) physicians who provide medical care to inmates pursuant to a contract with the Department of Corrections.

Physician faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University not acting in an administrative capacity or engaged in teaching duties are not employees or agents of the state.

c. Except as provided in subparagraph (b) of paragraph 5 of this section, in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients;

6. "Loss" means death or injury to the body or rights of a person or damage to real or personal property or rights therein;

7. "Municipality" means any incorporated city or town, and all institutions, agencies or instrumentalities of a municipality;

8. "Political subdivision" means:

a. a municipality,

b. a school district,

c. a county,

d. a public trust where the sole beneficiary or beneficiaries are a city, town, school district or county. For purposes of The Governmental Tort Claims Act, a public trust shall include a municipal hospital created pursuant to Section 30-101 et seq. of Title 11 of the Oklahoma Statutes, a county hospital created pursuant to Section 781 et seq. of Title 19 of the Oklahoma Statutes, or is created pursuant to a joint agreement between such governing authorities, that is operated for the public benefit by a public trust created pursuant to Section 176 et seq. of Title 60 of the Oklahoma Statutes and managed by a governing board appointed or elected by the municipality, county, or

both, who exercises control of the hospital, subject to the approval of the governing body of the municipality, county, or both,

e. for the purposes of The Governmental Tort Claims Act only, a housing authority created pursuant to the provisions of the Oklahoma Housing Authority Act,

f. for the purposes of The Governmental Tort Claims Act only, corporations organized not for profit pursuant to the provisions of the Oklahoma General Corporation Act for the primary purpose of developing and providing rural water supply and sewage disposal facilities to serve rural residents,

g. for the purposes of The Governmental Tort Claims Act only, districts formed pursuant to the Rural Water, Sewer, Gas and Solid Waste Management Districts Act,

h. for the purposes of The Governmental Tort Claims Act only, master conservancy districts formed pursuant to the Conservancy Act of Oklahoma,

i. for the purposes of The Governmental Tort Claims Act only, a fire protection district created pursuant to the provisions of Section 901.1 et seq. of Title 19 of the Oklahoma Statutes,

j. for the purposes of The Governmental Tort Claims Act only, a benevolent or charitable corporate volunteer or full-time fire department for an unincorporated area created pursuant to the provisions of Section 592 et seq. of Title 18 of the Oklahoma Statutes,

k. for purposes of The Governmental Tort Claims Act only, an Emergency Services Provider rendering services within the boundaries of a Supplemental Emergency Services District pursuant to an existing contract between the Emergency Services Provider and the Oklahoma State Department of Health. Provided, however, that the acquisition of commercial liability insurance covering the activities of such Emergency Services Provider performed within the State of Oklahoma shall not operate as a waiver of any of the limitations, immunities or defenses provided for political subdivisions pursuant to the terms of The Governmental Tort Claims Act,

l. for purposes of The Governmental Tort Claims Act only, a conservation district created pursuant to the provisions of the Conservation District Act,

m. for purposes of The Governmental Tort Claims Act, districts formed pursuant to the Oklahoma Irrigation District Act,

n. for purposes of The Governmental Tort Claims Act only, any community action agency established pursuant to Sections 5035 through 5040 of Title 74 of the Oklahoma Statutes, and

o. for purposes of The Governmental Tort Claims Act only, any organization that is designated as a youth services agency, pursuant to Section 7302-3.6a of Title 10 of the Oklahoma Statutes,

and all their institutions, instrumentalities or agencies;

9. "Scope of employment" means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud;

10. "State" means the State of Oklahoma or any office, department, agency, authority, commission, board, institution, hospital, college, university, public trust created pursuant to Title 60 of the Oklahoma Statutes of which the State of Oklahoma is the beneficiary, or other instrumentality thereof; and

11. "Tort" means a legal wrong, independent of contract, involving violation of a duty imposed by general law or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment.

SECTION 20. AMENDATORY Section 1, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2003, Section 1-1708.1A), is amended to read as follows:

Section 1-1708.1A Sections ~~1~~ 1-1708.1A through ~~7~~ 1-1708.1G of this title and Sections 22, 23 and 24 of this act shall be known and may be cited as the "Affordable Access to Health Care Act".

SECTION 21. AMENDATORY Section 6, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2003, Section 1-1708.1F), is amended to read as follows:

Section 1-1708.1F A. Except as provided in subsection B of this section, in any medical liability action in which the health care services at issue were provided for:

1. Pregnancy or labor and delivery, including the immediate post-partum period; or

2. Emergency care in the emergency room of a hospital or as follow-up to the emergency care services provided in the emergency room;

the amount of noneconomic damages awarded shall not exceed Three Hundred Thousand Dollars ($300,000.00), regardless of the number of parties against whom the action is brought or the number of actions brought with respect to the personal injury.

B. Where the judge finds by clear and convincing evidence that the defendant committed negligence in one of the types of cases enumerated in subsection A of this section, the court shall articulate its findings into the record out of the presence of the jury and shall lift the noneconomic damage cap.

C. Nothing in this section shall apply to any nursing facility or nursing home licensed pursuant to Section 1-1903 of ~~Title 63 of the Oklahoma Statutes~~ this title or the owners, operators, officers, agents or employees of such entities.

D. Nothing in this section shall apply to a medical liability action brought for wrongful death.

E. This section of law shall terminate on ~~July 1, 2008~~ November 1, 2010.

SECTION 22. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1F-1 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. Except as provided in subsection B or D of this section, in any medical liability action not provided for in Section 1-1708.1F of Title 63 of the Oklahoma Statutes, the amount of noneconomic damages awarded shall not exceed the hard cap amount of Three Hundred Thousand Dollars ($300,000.00), regardless of the number of actions brought with respect to the personal injury, provided:

1. The defendant has made an offer of judgment pursuant to Section 1101.1 of Title 12 of the Oklahoma Statutes; and

2. The amount of the verdict awarded to the plaintiff is less than one and one-half (1 1/2) times the amount of the final offer of judgment.

B. The dollar amount prescribed by subsection A of this section shall be adjusted annually based upon any positive increase in the Consumer Price Index that measures the average changes in prices of goods and services purchased by urban wage earners and clerical workers' families and single workers living alone (CPI-W) for the preceding calendar year. The adjustment required by this subsection shall be made on April 1 of each year or not later than thirty (30) days after the date upon which the Bureau of Labor Statistics releases the CPI-W inflationary data for the preceding calendar year, whichever date first occurs. No adjustment to the dollar amount prescribed by this section shall be made for any year in which there is a decline in the Consumer Price Index.

C. As used in this section, "noneconomic damages" means only mental pain and suffering, inconvenience, mental anguish, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation; provided, however, noneconomic damages do not include exemplary damages, as provided for in Section 9.1 of Title 23 of the Oklahoma Statutes.

D. If nine or more members of the jury find by clear and convincing evidence that the defendant committed negligence or if nine or more members of the jury find by a preponderance of the evidence that the conduct of the defendant was willful or wanton, the limits on noneconomic damages provided for in subsection A of this section shall not apply; provided, however, the judge must, before submitting such determination to the jury, make a threshold determination that there is evidence from which the jury could reasonably make the findings set forth in the case.

E. If the jury returns a verdict that is greater than Three Hundred Thousand Dollars ($300,000.00) and is less than one and one-half (1 1/2) times the amount of the final offer of judgment, the court shall submit to the jury an additional form of verdict. The additional form of verdict shall be substantially as follows:

"1. Do you find by a preponderance of the evidence that the conduct of the defendant was willful or wanton? If nine or more of you answer in the affirmative, then return this verdict form in open court. If less than nine of you answer in the affirmative, then answer the following question.

2. Do you find by clear and convincing evidence that the defendant was negligent? If this question is answered affirmatively, then return this verdict form in open court. If less than nine of you find negligence by clear and convincing evidence, then answer the following question.

3. Of the amount returned in the verdict, what amount of your verdict is for economic damages and what amount is for noneconomic damages?"

F. Nothing in this section shall apply to an action brought for wrongful death.

G. The provisions of this section shall apply only to actions that accrue on or after November 1, 2004.

H. This section of law shall terminate on November 1, 2010.

SECTION 23. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1H of Title 63, unless there is created a duplication in numbering, reads as follows:

A. In any medical liability action, any and all statements, affirmations, gestures, or conduct expressing apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence which are made by a health care provider or an employee of a health care provider to the plaintiff, a relative of the plaintiff, or a representative of the plaintiff and which relate solely to discomfort, pain, suffering, injury, or death as the result of the unanticipated outcome of the medical care shall be inadmissible as evidence of an admission of liability or as evidence of an admission against interest.

B. For purposes of this section, unless context otherwise requires, "relative" means a spouse, parent, grandparent, stepfather, child, grandchild, brother, sister, half-brother, half-sister or spouse's parents. The term includes said relationships that are created as a result of adoption. "Representative" means a legal guardian, attorney, person designated to make decisions on behalf of a patient under a durable power of attorney or health care proxy, or any person recognized in law or custom as an agent for the plaintiff.

SECTION 24. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1I of Title 63, unless there is created a duplication in numbering, reads as follows:

A. The court shall apply the criteria specified in subsection B of this section in determining whether an expert is qualified to offer expert testimony on the issue of whether the defendant health care provider departed from accepted standards of health care but may depart from those criteria if, under the circumstances, the court determines that there is good reason to admit the expert's testimony. The court shall state on the record the reason for admitting the testimony if the court departs from the criteria.

B. In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

1. Is licensed to practice medicine or has other substantial training or experience, in any area of health care relevant to the claim; and

2. Is actively practicing or retired from practicing health care in any area of health care services relevant to the claim.

C. This section shall not prevent a health care provider who is a defendant, or an employee of the defendant health care provider, from qualifying as an expert.

SECTION 25. AMENDATORY 2 O.S. 2001, Section 16-71, is amended to read as follows:

Section 16-71. A. 1. The purpose of this section is to encourage landowners ~~and lessees~~ to make ~~available~~ land~~, water areas, park areas and lake reservations~~ available to the public for outdoor recreational purposes by limiting their liability to persons ~~going~~ entering upon and using such land and to third persons who may be damaged by the acts or omissions of persons going upon these lands.

2. As used in this section~~, the term "area" includes any water area and any park area. As used in this section, the term "land" includes but is not limited to lake reservations~~:

a. "land" means real property, roads, water, watercourses, private ways, buildings, structures, and machinery or equipment when attached to realty. The term "land" shall not include any land that is used primarily for farming or ranching activities or to any roads, water, watercourses, private ways, buildings, structures, and machinery or equipment when attached to realty which is used primarily for farming or ranching activities,

b. "outdoor recreational purposes" includes any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, jogging, cycling, other sporting events and activities, nature study, water skiing, jet skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites,

c. "owner" means the possessor of a fee interest, a tenant, lessee, occupant, or person in control of the land, and

d. "charge" means the admission price or fee asked in return for invitation or permission to enter or go upon the land. The term "charge" shall not include a license or permit fee imposed by a governmental entity for the purpose of regulating the use of land, a water or park area, or lake reservation and shall not include hunting, fishing, boating, and other license and permit fees.

B. ~~1.~~ An owner ~~or lessee~~ who provides the public with land~~, a water or park area, or lake reservation~~ for outdoor recreational purposes owes no duty of care to keep the land ~~or area~~ safe for entry or use by others, or to give warning to persons entering or ~~going on~~ using the land ~~or area~~ of any hazardous conditions, structures, or activities. ~~An~~

C. 1. Except as otherwise provided by this section, an owner ~~or lessee~~ who provides the public with land ~~or area~~ for outdoor recreational purposes shall not:

a. be presumed to extend any assurance that the land ~~or area~~ is safe for any purpose,

b. incur any duty of care toward a person who ~~goes on~~ enters or uses the land ~~or area~~, or

c. ~~become liable~~ assume any liability or ~~responsible~~ responsibility for any injury to persons or property caused by the act or omission of a person who ~~goes on~~ enters or uses the land ~~or area~~.

2. This subsection applies whether the person ~~going on~~ entering or using the land ~~or area~~ is an invitee, licensee, trespasser, or otherwise~~, notwithstanding any other section of law~~.

~~C.~~ D. This section shall not apply if ~~there is any~~:

1. Any charge is made or is usually made for entering or using any part of the land ~~or area,~~; or ~~if any~~

2. Any commercial or other activity for profit directly related to the use is conducted on any part of the land ~~or area. As used in this subsection, the term "charge" shall mean the admission price or fee asked in return for invitation or permission to enter or go upon the land or area. As used in this subsection, the term "charge" shall not include a license or permit fee imposed by a governmental entity for the purpose of regulating the use of land, a water or park area, or lake reservation and shall not include hunting, fishing, boating, and other license and permit fees~~.

~~D.~~ E. 1. An owner of land~~, a water or park area, or lake reservation~~ leased to the state or to other public entity for outdoor recreational purposes owes no duty of care to keep the land ~~or area~~ safe for entry or use by others, or to give warning to persons entering or ~~going on~~ using the land ~~or area~~ of any hazardous conditions, structures, or activities. Any owner ~~or lessee~~ who

leases or subleases land~~, a water or park area, or lake reservation~~ to the state or other public entity for outdoor recreational purposes shall not:

a. be presumed to extend any assurance that the land ~~or area~~ is safe for any purpose,

b. incur any duty of care toward a person who ~~goes on~~ enters or uses the leased land ~~or area~~, or

c. become liable or responsible for any injury to persons or property caused by the act or omission of a person who ~~goes on~~ enters or uses the leased land ~~or area~~.

2. This subsection applies whether the person ~~going on~~ entering or using the leased land ~~or area~~ is an invitee, licensee, trespasser, or otherwise, notwithstanding any other section of law.

~~E.~~ F. 1. Except as provided in this section, no person is relieved of liability which would exist for want of ordinary care or for deliberate, willful, or malicious injury to persons or property. The provisions shall not create or increase the liability of any person.

2. This section shall not relieve any owner ~~or lessee~~ of any liability for the operation and maintenance of structures affixed to real property by the owner ~~or lessee~~ for use by the general public.

~~F. The term "outdoor recreational purposes" as used in this section includes, but is not limited to, hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, jogging, cycling, other sporting events and activities, nature study, water skiing, jet skiing, and visiting historical, archaeological, scenic, or scientific sites.~~

G. By entering or using land, ~~a water or park area, or lake reservation~~ no person shall be deemed to be acting as an employee or agent of the owner ~~or lessee~~ whether the entry or use is with or without the knowledge or consent of the owner ~~or lessee~~.

H. The provisions of this section shall not apply to any land that is used primarily for farming or ranching activities or to roads, water, watercourses, private ways, buildings, structures, and machinery or equipment when attached to realty which is used primarily for farming or ranching activities.

Sections 26 through 32 of this act shall govern such land.

SECTION 26. AMENDATORY 76 O.S. 2001, Section 10, is amended to read as follows:

Section 10. A. Sections 26 through 32 of this act shall be known and may be cited as the "Oklahoma Limitation of Liability for Farming and Ranching Land Act".

B. 1. The purpose of the Oklahoma Limitation of Liability for Farming and Ranching Land Act is to encourage owners of farming and ranching lands to make such land available for recreational purposes by limiting their liability to persons entering or using the farm

and ranch land and to third persons who may be damaged by the acts or omissions of persons entering upon or using these lands.

2. The Oklahoma Limitation of Liability for Farming and Ranching Land Act applies only to an owner of land who does not charge more than Ten Dollars ($10.00) per acre per year for that land used for recreational purposes.

C. As used in ~~this act~~ the Oklahoma Limitation of Liability for Farming and Ranching Land Act:

~~(a)~~ 1. "Land" means land which is used ~~primarily~~ for farming ~~or~~, ranching activities and recreational purposes, as defined in this section, including, but not limited to, roads, water, watercourses, private ways, ~~and~~ buildings, structures, and machinery or equipment when attached to realty which is used primarily for farming or ranching activities~~.~~;

~~(b)~~ 2. "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises~~.~~ but shall not include a tenant, lessee, occupant or person in control of the premises who is engaging in any recreational purpose described in paragraph 3 of this subsection;

~~(c)~~ 3. "Recreational purpose" includes~~, but is not limited to,~~ any of the following, or any combination thereof: hunting, fishing, wildlife and ecological viewing or photography, recreational farming and ranching activities, swimming, boating, camping, picnicking, hiking, pleasure driving, jogging, cycling, other similar events and activities, nature study, water skiing, winter sports, jet skiing, and viewing or enjoying historical, archaeological, scenic, or scientific sites~~.~~; and

~~(d)~~ 4. "Charge" means the admission price or fee asked in return for invitation or permission to enter or ~~go upon~~ use the land.

D. The Oklahoma Limitation of Liability for Farming and Ranching Land Act shall not apply to any land that is used for purposes other than farming and ranching. Such land shall be governed by Section 25 of this act.

SECTION 27. AMENDATORY 76 O.S. 2001, Section 11, is amended to read as follows:

Section 11. Except as specifically recognized by or provided in Section ~~5~~ 30 of this act, an owner ~~of~~ who provides the public with land for recreational purposes which is used primarily for farming or ranching activities owes no duty of care to keep the ~~premises~~ land safe for entry or use by others for recreational purposes, or to give any warning of a dangerous or hazardous condition, use, structure, or activity on such ~~premises~~ land to persons entering or using the land for such purposes.

SECTION 28. AMENDATORY 76 O.S. 2001, Section 12, is amended to read as follows:

Section 12. A. Except as specifically recognized by or provided in Section ~~5~~ 30 of this act, an owner of land which is used primarily for farming or ranching activities, who either directly or

indirectly invites or permits ~~without charge~~, under the circumstance described in subsection B of Section 26 of this act, any person to enter or use such ~~property~~ land for recreational purposes, does not ~~thereby~~:

~~(a)~~ 1. Extend any assurance that the premises are safe for any purpose~~.~~;

~~(b) Confer upon such person the legal status of an invitee or licensee.~~ 2. Incur any duty of care toward a person who enters or uses the land; or

~~(c)~~ 3. Assume responsibility ~~for~~ or incur liability for any injury to person or property caused by an act or omission of such persons.

B. This section applies whether the person entering, or using the land is an invitee, licensee, or otherwise.

C. This section does not affect the liability of an insurer or insurance plan in an action under the Insurance Code, or an action for bad faith conduct, breach of fiduciary duty, or negligent failure to settle a claim.

D. This section shall not apply to the state or other governmental unit.

SECTION 29. AMENDATORY 76 O.S. 2001, Section 13, is amended to read as follows:

Section 13. Unless otherwise agreed in writing, the provisions of Sections ~~11~~ 27 and ~~12~~ 28 of this ~~title~~ act shall be deemed applicable to the duties and liability of an owner of land which is used ~~by the owner~~ primarily for farming or ranching activities, is on or adjoins land entered upon the National Register of Historic Places and for which an easement has been granted to the Oklahoma Historical Society, or is leased to the state or any subdivision thereof for recreational purposes.

SECTION 30. AMENDATORY 76 O.S. 2001, Section 14, is amended to read as follows:

Section 14. A. Nothing in ~~this act~~ the Oklahoma Limitation of Liability for Farming and Ranching Land Act limits in any way any liability which otherwise exists~~:~~

~~(a) For~~ for want of ordinary care or for deliberate, willful, or malicious injury or failure to guard or warn against a dangerous or hazardous condition, use, structure, or activity.

~~(b) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in~~ B. In the case of land leased to the state or subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

SECTION 31. AMENDATORY 76 O.S. 2001, Section 15, is amended to read as follows:

Section 15. A. Nothing in ~~this act~~ the Oklahoma Limitation of Liability for Farming and Ranching Land Act shall be construed to:

~~(a)~~ 1. Create a duty of care or ground of liability for injury to persons or property~~.~~; or

~~(b)~~ 2. Relieve any person entering or using the land of another for recreational purposes from any obligation which ~~he~~ such person may have in the absence of ~~this act~~ the Oklahoma Limitation of Liability for Farming and Ranching Land Act to exercise care in ~~his~~ the use of such land and in ~~his~~ the activities thereon, or from the legal consequences of failure to employ such care.

B. 1. No person who has executed a written release of liability or a waiver to sue may maintain an action against or recover damages from a land owner in contravention of the release or waiver for any personal injury or injury to property. The terms of the executed release or waiver shall be binding upon the person signing the document. The provisions of this subsection shall apply regardless of the amount charged per acre for a recreational activity.

2. A release or waiver executed pursuant to this subsection shall not limit the liability of a land owner for willful or wanton acts of negligence or gross negligence.

SECTION 32. AMENDATORY 76 O.S. 2001, Section 15.1, is amended to read as follows:

Section 15.1 A. An owner, lessee, or other occupant of agricultural land:

1. Does not owe a duty of care to a trespasser on the land; and

2. Is not liable for any injury to a trespasser, except for willful or wanton acts of negligence or gross negligence by the owner, lessee, or other occupant of the land.

B. Agricultural land is defined as any real property that is used in production of plants, fruits, wood, or farm or ranch animals to be sold off the premises.

SECTION 33. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 16.1 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. An owner, lessee or occupant of real property or any structures or improvements thereto owes no duty of care to keep the premises safe for entry or use by others or to give any warning of a dangerous condition, use, structure or activity if the entry or use by another person is unauthorized or is for the purpose of committing a criminal act.

B. The provisions of subsection A of this section provide immunity from civil liability for simple negligence but do not provide immunity for willful, wanton or malicious acts of negligence or for gross negligence.

SECTION 34. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 32 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. This section shall be known and may be cited as the "Volunteer Medical Professional Services Immunity Act".

B. Any volunteer medical professional shall be immune from liability in a civil action on the basis of any act or omission of the volunteer medical professional resulting in damage or injury if:

1. The volunteer medical professional services were provided at a free clinic where neither the professional nor the clinic receives any kind of compensation for any treatment provided at the clinic;

2. The volunteer medical professional was acting in good faith and, if licensed, the services provided were within the scope of the license of the volunteer medical professional;

3. The volunteer medical professional commits the act or omission in the course of providing professional services;

4. The damage or injury was not caused by gross negligence or willful and wanton misconduct by the volunteer medical professional; and

5. Before the volunteer medical professional provides professional medical services, the volunteer medical professional and the person receiving the services or, if that person is a minor or otherwise legally incapacitated, the person's parent, conservator, legal guardian, or other person with legal responsibility for the care of the person signs a written statement that acknowledges:

a. that the volunteer medical professional providing professional medical services has no expectation of and will receive no compensation of any kind for providing the professional medical services, and

b. an understanding of the limitations on the recovery of damages from the volunteer medical professional in exchange for receiving free professional medical services.

C. In the event the volunteer medical professional refers the patient covered by this section to another volunteer medical professional for additional treatment, the referred volunteer medical professional shall be subject to the provisions of this section if:

1. The referred volunteer medical professional provides services without receiving any compensation for the treatment;

2. The referred volunteer medical professional was acting in good faith and, if licensed, the services provided were within the scope of the license of the referred volunteer medical professional;

3. The referred volunteer medical professional commits the act or omission in the course of providing professional services;

4. The damage or injury was not caused by gross negligence or willful and wanton misconduct by the referred volunteer medical professional; and

5. Before the referred volunteer medical professional provides professional services, the referred volunteer medical professional and the person receiving the services or, if that person is a minor or otherwise legally incapacitated, the person's parent, conservator, legal guardian, or other person with legal responsibility for the care of the person signs a written statement that acknowledges:

a. that the referred volunteer medical professional providing professional medical services has no expectation of and will receive no compensation of any kind for providing the professional medical services, and

b. an understanding of the limitations on the recovery of damages from the volunteer medical professional in exchange for receiving free professional medical services.

D. The provisions of this section shall not affect the liability that any person may have which arises from the operation of a motor vehicle, watercraft, or aircraft in rendering the service, care, assistance, advice or other benefit as a volunteer medical professional.

E. The immunity from civil liability provided by this section shall extend only to the actions taken by a person rendering the service, care, assistance, advice or other benefit as a volunteer medical professional, and does not confer any immunity to any person for actions taken by the volunteer medical professional prior to or after the rendering of the service, care, assistance, advice or other benefit as a volunteer medical professional.

F. For the purpose of this section, the term "volunteer medical professional" and "referred volunteer medical professional" means a person who voluntarily provides professional medical services without compensation or expectation of compensation of any kind. A volunteer medical professional or a referred volunteer medical professional shall include the following licensed professionals:

1. Physician;

2. Physician's assistant;

3. Registered nurse;

4. Advanced nurse practitioner or vocational nurse;

5. Pharmacist;

6. Podiatrist;

7. Dentist or dental hygienist; or

8. Optometrist.

A volunteer medical professional shall be engaged in the active practice of a medical professional or retired from a medical profession, if still eligible to provide medical professional services within this state.

G. Any person participating in a Medical Reserve Corps and assisting with emergency management, emergency operations, or hazard mitigation in response to any emergency, man-made disaster, or natural disaster, or participating in public health initiatives endorsed by a city, county or state health department in the State of Oklahoma, shall not be liable for civil damages on the basis of any act or omission, if:

1. The person was acting in good faith and within the scope of the official duties and functions of the Medical Reserve Corps; and

2. The acts or omissions were not caused from gross, willful, or wanton acts of negligence.

H. This section shall apply to all civil actions filed on or after November 1, 2004.

SECTION 35. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.1 of Title 5, unless there is created a duplication in numbering, reads as follows:

Sections 35 through 53 of this act shall be known and may be cited as the "Registration of Out-of-State Attorneys Act".

SECTION 36. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.2 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. The Registration of Out-of-State Attorneys Act applies to:

1. All actions or proceedings pending before a court in this state;

2. All actions or proceedings pending before an administrative agency or governmental body in this state, unless that agency or governmental body provides otherwise;

3. All arbitration, mediation, or alternative dispute resolution procedures in this state that are court annexed or court ordered, or that are mandated by statute or administrative rule; and

4. All services incident to any of these proceedings including, but not limited to, discovery and settlement negotiations.

B. The Registration of Out-of-State Attorneys Act does not apply to arbitration, mediation, or alternative dispute resolution procedures in which the parties engage voluntarily or by private agreement.

C. The requirements and restrictions contained in the Registration of Out-of-State Attorneys Act are in addition to, and supplement, the requirements and restrictions set forth in Chapter 1, Appendix 1, Article II, Section 5 of Title 5 of the Oklahoma Statutes.

D. The Registration of Out-of-State Attorneys Act applies to all actions described in subsection A of this section existing as of the November 1, 2004, and all such action filed after November 1, 2004. As for attorneys previously admitted in existing actions as of November 1, 2004, pursuant to Chapter 1, Appendix II, Section 5 of Title 5 of the Oklahoma Statutes, if the attorney desires to continue appearance in the action, the attorney shall comply with the Registration of Out-of-State Attorneys Act within sixty (60) days after November 1, 2004. The court, arbitrator or mediator shall revoke the privileges to practice of any attorney who was admitted pursuant to Chapter 1, Appendix II, Section 5 of Title 5 of the Oklahoma Statutes who does not comply with the Registration of Out-of-State Attorneys Act within sixty (60) days after November 1, 2004.

SECTION 37. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.3 of Title 5, unless there is created a duplication in numbering, reads as follows:

A lawyer who has been retained to represent a client in this state in an action or proceeding set forth in subsection A of Section 36 of this act may file a written application to appear as counsel in that action or proceeding if the following conditions are met:

1. The lawyer is not a member of the Oklahoma Bar Association;

2. The lawyer is not a resident of the State of Oklahoma;

3. The lawyer is not regularly employed in the State of Oklahoma;

4. The lawyer is not engaged in substantial business, professional, or other activities in the State of Oklahoma;

5. The lawyer is a member in good standing and eligible to practice before the bar of any jurisdiction of the United States; and

6. The lawyer associates with an active member in good standing of the Oklahoma Bar Association as counsel of record in the action or proceeding.

A lawyer who meets the criteria set forth in this section shall be referred to in the Registration of Out-of-State Attorneys Act as an "out-of-state attorney" or "out-of-state counsel".

SECTION 38. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.4 of Title 5, unless there is created a duplication in numbering, reads as follows:

An out-of-state attorney may appear in an action or proceeding subject to the Registration of Out-of-State Attorneys Act only upon:

1. Registering with the Oklahoma Bar Association as set forth in Section 39 of this act;

2. Registering with the Oklahoma Tax Commission as set forth in Section 40 of this act; and

6:16-cv-00151-KEW Document 291-3 Filed 08/17/18 Page 46 of 293

3. The approval of the court, arbitrator, mediator, or administrative or governmental hearing officer where the action or proceeding is pending.

SECTION 39. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.5 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. The procedure provided for in this section shall be used by an out-of-state attorney to register with the Oklahoma Bar Association.

B. The lawyer shall file with the Oklahoma Bar Association:

1. An original and two copies of a verified application as provided in subsection C of this section;

2. A certificate from the state bar or from the clerk of the Supreme Court or highest admitting court of each state, territory, or insular possession of the United States in which the applicant has been admitted to practice law certifying the applicant's membership therein; and

3. A nonrefundable application fee of Three Hundred Fifty Dollars ($350.00), payable to the Oklahoma Bar Association, or an application for waiver of fees as provided in Section 50 of this act.

C. The verified application required by this section shall be on a form approved by the Oklahoma Bar Association. The approved application forms shall be available at the court clerk's office of the court, arbitrator, mediator, or administrative or governmental agency where the action is pending.

D. The application shall state:

1. The applicant's residence and office address;

2. The court or courts to which the applicant has been admitted to practice and the date of such admission;

3. That the applicant is a member in good standing of such court or courts;

4. That the applicant is not currently suspended or disbarred in any court;

5. Whether the applicant is currently subject to any disciplinary proceedings by any organization with authority to discipline attorneys at law;

6. Whether the applicant has ever received public discipline including, but not limited to, suspension or disbarment, by any organization with authority to discipline attorneys at law;

7. The title of the court and cause, including arbitrations, mediations, or matters before an administrative agency or governmental body, in which the applicant or any member of the firm of attorneys with which the applicant is associated has filed an application to appear as counsel under the Registration of Out-of-

State Attorneys Act in the preceding three (3) years, the date of each application, and whether it was granted;

8. The name, address, and telephone number of the active member of the Oklahoma association who is the attorney of record;

9. The name of each party and the name and address of counsel of record who appeared for that party;

10. That the applicant certifies that the applicant shall be subject to the jurisdiction of the courts and disciplinary boards of this state with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the Oklahoma Bar Association;

11. That the applicant understands and shall comply with the standards of professional conduct required of members of the Oklahoma Bar Association; and

12. That the applicant has disclosed in writing to the client that the applicant is not admitted to practice in this jurisdiction and that the client has consented to such representation.

E. Upon receipt of the verified application, certificate or certificates of good standing, and fee or application for waiver of fees, the Oklahoma Bar Association shall:

1. Serve upon the applicant and Oklahoma counsel associated with the applicant, a statement which provides:

a. a statement as to whether the applicant or other attorney members of the firm with which the applicant is associated has previously made any application or motion under the Registration of Out-of-State Attorneys Act within the preceding three (3) years,

b. the date of any such application or motion,

c. whether the application was granted or denied, and

d. exhibits attached to the statement as follows:

(1) a copy of the verified application,

(2) a copy of the certificate or certificates of good standing,

(3) a form for the applicant to register with the Oklahoma Tax Commission,

(4) a form motion to associate counsel, and

(5) a form order granting or denying such motion; and

2. Retain the original verified application and certificate or certificates of good standing for three (3) years.

SECTION 40. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.6 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. Upon the application being granted by the Oklahoma Bar Association, all out-of-state attorneys shall register with the Oklahoma Tax Commission, upon such form as the Oklahoma Tax Commission may establish, and provide the Oklahoma Tax Commission with a copy of the Oklahoma Bar Association statement received pursuant to subsection E of Section 39 of this act, as an out-of-state provider of legal services in Oklahoma.

B. Out-of-state attorneys shall report annually all income derived from legal services performed in connection with any proceedings under subsection A of Section 36 of this act to the Oklahoma Tax Commission on such forms and in accordance with such regulations as the Oklahoma Tax Commission may establish.

C. The client, common fund or any other person or entity paying for the services of the out-of-state attorney, shall withhold five percent (5%) of all income derived from legal services performed in connection with any proceedings under subsection A of Section 36 of this act and remit the withheld amount to the Oklahoma Tax Commission pursuant to procedures established by the Oklahoma Tax Commission. The out-of-state attorney shall be required to notify the client, common fund or any other person or entity paying for the services of this requirement and provide any other information as may be required by the Oklahoma Tax Commission.

D. Upon registration of the out-of-state attorney, the Oklahoma Tax Commission shall provide the out-of-state attorney, and the Oklahoma lawyer associated with the out-of-state attorney, with a statement verifying the registration.

SECTION 41. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.7 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. The Oklahoma lawyer associated with the applicant shall file the motion to associate with the court, arbitrator, mediator, or administrative or governmental hearing officer where the proceeding is pending. The motion shall include proof of service of a copy of the motion on all parties in accordance with the Code of Civil Procedure of the State of Oklahoma.

B. The motion to associate shall include the following exhibits:

1. The original verified application;

2. The original certificate or certificates of good standing;

3. The statement from the Oklahoma Bar Association reflecting registration issued pursuant to subsection E of Section 39 of this act; and

4. The statement from the Oklahoma Tax Commission reflecting registration issued pursuant to subsection D of Section 40 of this act.

C. The motion to associate shall be accompanied by a proposed order granting or denying the motion to associate.

D. Oklahoma counsel of record associated with the applicant shall serve a copy of any order granting or denying a motion to associate on the Oklahoma Bar Association and the Oklahoma Tax Commission.

E. Before a motion to associate counsel is granted, the active member of the Oklahoma Bar Association who will be associated with the applicant shall appear as attorney of record in the particular cause and consent in writing to the association.

SECTION 42. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.8 of Title 5, unless there is created a duplication in numbering, reads as follows:

An applicant shall not appear in a proceeding subject to the Registration of Out-of-State Attorneys Act until the court, arbitrator, mediator, or administrative or governmental agency where the action is pending enters an order granting the motion to associate.

SECTION 43. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.9 of Title 5, unless there is created a duplication in numbering, reads as follows:

The granting or denial of a motion to associate counsel under the Registration of Out-of-State Attorneys Act is discretionary. The court, arbitrator, mediator, or administrative or governmental hearing officer may revoke the authority of the person permitted to appear as counsel under the Registration of Out-of-State Attorneys Act to make continued appearances under the Registration of Out-of-State Attorneys Act. Absent special circumstances, repeated appearances by any person or firm of attorneys under the Registration of Out-of-State Attorneys Act shall be cause for denial of the motion to associate such person.

SECTION 44. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.10 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. It shall be presumed, absent special circumstances, and only upon a showing of good cause, that any attorney or firm of attorneys, is engaged in substantial business, professional, or other activities in the State of Oklahoma, if the attorney or firm of attorneys seeks permission to associate pursuant to the Registration of Out-of-State Attorneys Act in more than five actions or matters in any consecutive three-year period.

B. It shall be presumed, absent special circumstances, and only upon a showing of good cause, that any attorney or firm of attorneys is engaged in substantial business, professional, or other activities in the State of Oklahoma, if the attorney or firm of attorneys is allowed to associate in one or more actions or matters pursuant to the Registration of Out-of-State Attorneys Act for a period of five (5) consecutive years or five (5) out of the last seven (7) years.

C. The applicant shall have the burden to establish special circumstances and good cause for a determination that the attorney or firm of attorneys is not engaged in substantial business, professional, or other activities in the State of Oklahoma pursuant

to subsection A or B of this section. The applicant shall set forth the special circumstances and good cause in an affidavit attached to the original verified application.

D. If the Oklahoma Bar Association finds that an attorney or firm of attorneys is engaged in substantial business, professional, or other activities in this state pursuant to subsection A or B of this section, the attorney or firm may be granted a six-month extension of the right to associate while the attorney or firm of attorneys becomes licensed to practice law in this state.

SECTION 45. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.11 of Title 5, unless there is created a duplication in numbering, reads as follows:

Once a motion to associate under the Registration of Out-of-State Attorneys Act has been granted, the attorney shall be deemed admitted in the event venue in the action is transferred to another district court or in the event such action is appealed; provided, however, that the court having jurisdiction over such transferred or appealed cause may revoke the attorney’s authority to appear.

SECTION 46. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.12 of Title 5, unless there is created a duplication in numbering, reads as follows:

No new application to associate is required to appear before the appellate courts of this state if the motion to associate was approved by the court in the underlying action or matter. Appearance before the appellate courts of this state in the first instance shall be by motion as provided in Section 38 of this act. An appellate court may consider the matter based upon the filings before it without a hearing.

SECTION 47. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.13 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. On or before the anniversary date of the filing of the verified application with the Oklahoma Bar Association, the Oklahoma counsel of record shall certify to the Oklahoma Bar Association that:

1. The out-of-state counsel continues to act as counsel in the cause; or

2. The cause has been finally adjudicated.

B. In the event that out-of-state counsel continues to act as counsel in the cause, out-of-state counsel shall provide to the Oklahoma Bar Association a sworn affidavit that the attorney or firm of attorneys has filed all necessary filings with the Oklahoma Tax Commission, including appropriate income tax returns for the preceding calendar year and shall remit to the Oklahoma Bar Association an annual renewal fee of Three Hundred Fifty Dollars ($350.00). The affidavit and payment shall be provided to the Oklahoma Bar Association no later than thirty (30) days after the original application anniversary date.

SECTION 48. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.14 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. Any out-of-state counsel who continues to act as counsel in a proceeding subject to the Registration of Out-of-State Attorneys Act and fails to file the required affidavit and pay the renewal fee set forth in Section 47 of this act shall be suspended from appearing in any proceeding subject to the Registration of Out-of-State Attorneys Act upon expiration of a period of thirty (30) days after the original application anniversary date.

B. The Oklahoma Bar Association shall notify the out-of-state counsel and the Oklahoma counsel of record of the suspension and shall file a certified copy of the notice with the court, arbitrator, mediator, or administrative agency or governmental body where the proceeding is filed. The court, arbitrator, mediator or administrative agency or other governmental body shall immediately withdraw the out-of-state counsel's association with the Oklahoma counsel.

SECTION 49. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.15 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. The out-of-state counsel may be reinstated upon compliance with Section 47 of this act and the payment of a reinstatement fee of One Hundred Dollars ($100.00).

B. Upon payment of all accrued fees and the reinstatement fee, the Oklahoma Bar Association may reinstate the out-of-state counsel, and shall thereupon certify such reinstatement to the court, arbitrator, mediator, or administrative agency or governmental body where the proceeding is filed.

SECTION 50. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.16 of Title 5, unless there is created a duplication in numbering, reads as follows:

Upon a showing that the applicant is providing pro bono services in a death penalty habeas corpus case or in other similar circumstances providing for pro bono representation, the Oklahoma Bar Association may waive the original fee required by Section 39 of this act and the annual renewal fee required by Section 47 of this act. An applicant may obtain an application for waiver of these fees from the Oklahoma Bar Association and shall file the completed waiver application with the original verified application seeking admission under the Registration of Out-of-State Attorneys Act. If the waiver is granted by the Oklahoma Bar Association, the applicant shall not be required to register with the Oklahoma Tax Commission pursuant to Section 40 of this act.

SECTION 51. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.17 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. The Oklahoma Bar Association shall prepare an annual report listing:

1. All applications filed under the Registration of Out-of-State Attorneys Act during the preceding twelve (12) months;

2. The names of all applicants; and

3. Whether the motions to associate were granted or denied.

B. The annual report shall be kept on file at the Oklahoma Bar Association and shall be available for review by the public during normal business hours at the offices of the Oklahoma Bar Association. A copy of the report shall be provided to the Chief Justice of the Oklahoma Supreme Court.

SECTION 52. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.18 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. Out-of-state counsel appearing under the Registration of Out-of-State Attorneys Act shall be subject to the jurisdiction of the courts and disciplinary boards of this state with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the Oklahoma Bar Association. Out-of-state counsel shall become familiar and comply with the standards of professional conduct required of members of the Oklahoma Bar Association and shall be subject to the disciplinary jurisdiction of the Oklahoma Bar Association.

B. The rules of the Oklahoma Supreme Court shall govern in any investigation or proceeding conducted by the Oklahoma Bar Association under the Registration of Out-of-State Attorneys Act.

SECTION 53. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1.19 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. The Oklahoma attorney of record shall be responsible for and actively participate in the representation of a client in any proceeding that is subject to the Registration of Out-of-State Attorneys Act.

B. The Oklahoma attorney of record shall be present at all hearing, trials, or any other matters in open court unless otherwise ordered by the court.

C. The Oklahoma attorney of record shall be responsible to the court, arbitrator, mediator, or administrative agency or governmental body for the administration of any proceeding that is subject to the Registration of Out-of-State Attorneys Act and for compliance with all state and local rules of practice. It is the responsibility of Oklahoma counsel to ensure that the proceeding is tried and managed in accordance with all applicable Oklahoma procedural and ethical rules.

SECTION 54. AMENDATORY 36 O.S. 2001, Section 312.1, as amended by Section 1, Chapter 315, O.S.L. 2003 (36 O.S. Supp. 2003, Section 312.1), is amended to read as follows:

Section 312.1 A. For the fiscal year ending June 30, 2004, the Insurance Commissioner shall report and disburse one hundred percent (100%) of the fees and taxes collected under Section 624 of this

title to the State Treasurer to be deposited to the credit of the Education Reform Revolving Fund created pursuant to Section 41.29b of Title 62 of the Oklahoma Statutes. The Insurance Commissioner shall keep an accurate record of all such funds and make an itemized statement and furnish same to the State Auditor and Inspector, as to all other departments of this state. The report shall be accompanied by an affidavit of the Insurance Commissioner or the Chief Clerk of such office certifying to the correctness thereof.

B. For the fiscal years beginning July 1, 2004, and ending June 30, 2009, the Insurance Commissioner shall report and disburse all of the fees and taxes collected under Section 624 of this title <u>and Section 61 of this act</u>, and the same are hereby apportioned as follows:

1. Forty-one and seven-tenths percent (41.7%) of the taxes collected on premiums shall be allocated and disbursed for the Oklahoma Firefighters Pension and Retirement Fund, in the manner provided for in Sections 49-119, 49-120 and 49-123 of Title 11 of the Oklahoma Statutes;

2. Seventeen percent (17%) of the taxes collected on premiums shall be allocated and disbursed to the Oklahoma Police Pension and Retirement System pursuant to the provisions of Sections 50-101 through 50-136 of Title 11 of the Oklahoma Statutes;

3. Six and one-tenth percent (6.1%) of the taxes collected on premiums shall be allocated and disbursed to the Law Enforcement Retirement Fund; and

4. All the balance and remainder of the taxes and fees provided in Section 624 of this title shall be paid to the State Treasurer to the credit of the General Revenue Fund of the state to provide revenue for general functions of state government. The Insurance Commissioner shall keep an accurate record of all such funds and make an itemized statement and furnish same to the State Auditor and Inspector, as to all other departments of this state. The report shall be accompanied by an affidavit of the Insurance Commissioner or the Chief Clerk of such office certifying to the correctness thereof.

C. For the fiscal year ending June 30, 2010, and for each fiscal year thereafter the Insurance Commissioner shall report and disburse all of the fees and taxes collected under Section 624 of this title <u>and Section 61 of this act</u>, and the same are hereby apportioned as follows:

1. Thirty-four percent (34%) of the taxes collected on premiums shall be allocated and disbursed for the Oklahoma Firefighters Pension and Retirement Fund, in the manner provided for in Sections 49-119, 49-120 and 49-123 of Title 11 of the Oklahoma Statutes;

2. Fourteen percent (14%) of the taxes collected on premiums shall be allocated and disbursed to the Oklahoma Police Pension and Retirement System pursuant to the provisions of Sections 50-101 through 50-136 of Title 11 of the Oklahoma Statutes;

3. Five percent (5%) of the taxes collected on premiums shall be allocated and disbursed to the Law Enforcement Retirement Fund; and

4. All the balance and remainder of the taxes and fees provided in Section 624 of this title shall be paid to the State Treasurer to the credit of the General Revenue Fund of the state to provide revenue for general functions of state government. The Insurance Commissioner shall keep an accurate record of all such funds and make an itemized statement and furnish same to the State Auditor and Inspector, as to all other departments of this state. The report shall be accompanied by an affidavit of the Insurance Commissioner or the Chief Clerk of such office certifying to the correctness thereof.

D. The disbursements provided for in subsections A, B and C of this section shall be made monthly. The Insurance Commissioner shall report annually to the Governor, the Speaker of the House of Representatives, the President Pro Tempore of the Senate and the State Auditor and Inspector, the amounts collected and disbursed pursuant to this section.

SECTION 55. NEW LAW A new section of law not to be codified in the Oklahoma Statutes reads as follows:

The Legislature finds that the availability of medical professional liability insurance for physicians, allied health care professionals and health care facilities is an essential component of the delivery of health care in Oklahoma. There now exists a threatened loss of insurers currently issuing policies of medical malpractice insurance. It is in the public interest to avoid a disruption in the delivery of health care in this state which would arise if medical professional liability insurance is not available. Continued availability of medical malpractice insurance will be fostered by establishing a moratorium on the application of adequate reserve and surplus requirements which apply to domestic insurers engaged in providing medical professional liability insurance for physicians, allied health care professionals and health care facilities.

SECTION 56. AMENDATORY 36 O.S. 2001, Section 1509, is amended to read as follows:

Section 1509. A. If the Insurance Commissioner determines in writing that an insurer's unearned premium reserve, however computed, is inadequate, ~~he~~ the Commissioner may require the insurer to compute ~~such~~ the reserve or any part thereof according to ~~such~~ any other method or methods as are prescribed in this article.

B. If the loss experience of an insurer shows that its loss reserves, however estimated, are inadequate, the ~~Insurance~~ Commissioner, in writing, shall require the insurer to maintain loss reserves in ~~such~~ an increased amount as is needed to make them adequate.

C. 1. Insurers shall not use present value discounting for computing reserves for property and casualty insurance, except for workers' compensation carriers and physicians' and hospitals' professional liability insurance written on an occurrence basis. Workers' compensation carriers may use present value discounting at a rate of four percent (4%) for disability and death claims. Property and casualty insurers which elect to use present value discounting for computing reserves on physicians' and hospitals'

professional liability insurance shall file initially, and thereafter annually, an actuarial opinion certifying to the adequacy of such reserves which shall include an analysis of the propriety of loss payout patterns, interest rate assumptions used in developing the discount and the adequacy of the insurer's rates. Additionally, ~~such~~ the actuary shall consider the quality and liquidity of the insurer's assets and the nature and extent of the insurer's reinsurance program. In no event shall the interest rate used to compute the discounted reserves exceed the insurer's average yield on invested assets for the year, less one percent (1%).

2. Annual actuarial opinions required pursuant to this subsection shall be filed by the insurer on or before the first day of April. All actuarial opinions shall be from an independent actuary with membership in the American Academy of Actuaries or The Casualty Actuarial Society.

3. Except for workers' compensation insurance carriers, insurers discounting reserves pursuant to this subsection shall invest and maintain their funds only in cash; securities described in the following sections of this Code:

a. Section 1607 (securities of or guaranteed by the United States),

b. Section 1608 (state and Canadian public obligations),

c. Section 1609 (county, municipal and district obligations),

d. Section 1610 (public improvement bonds),

e. Section 1611 (obligations payable from public utility revenues) limited to issues which, at time of purchase, are rated A or better by Standard and Poor's Bond Guide or Moody's Bond Record,

f. Section 1614 (corporate obligations) limited to issues which, at time of purchase, are rated A or better by Standard and Poor's Bond Guide or Moody's Bond Record, and

g. Section 1620 (deposits, banks, savings and loans);

and any other investment specifically approved by the Commissioner.

4. This subsection applies to reserves established in connection with incidents of loss occurring on or after January 1, 1989. The investment limitations prescribed by this subsection shall be applicable on or after January 1, 1989.

D. During any period of reserve strengthening mandated by the ~~Insurance~~ Commissioner pursuant to the provisions of this section, no insurer shall pay dividends or other benefits which would not be normal payments under the terms of a policy to any stockholder or policyholder of such insurer and such insurer shall be subject to any additional reasonable restrictions as the Commissioner shall deem prudent.

E. Insurers shall report, on a form prescribed by the ~~Insurance~~ Commissioner and filed with their annual statement, all funds collected through policy fees or assessments which were collected in response to a written request to increase inadequate reserves from the Commissioner made pursuant to the provisions of this section.

F. 1. Insurers domiciled in this state that are issuing policies of medical professional liability insurance to physicians, allied health care professionals and health care institutions, as defined by Section 59 of this act, on July 1, 2004, are granted a moratorium on the applicability of any provisions of the laws of this state that require the maintenance of adequate reserves. The moratorium shall be in effect until January 1, 2006.

2. Any insurer eligible to utilize the moratorium provided by this section that elects to utilize the moratorium shall notify the Commissioner in writing of the election prior to the application of the moratorium to the insurer.

3. Any policy issued by an insurer utilizing the moratorium provided by this section shall, during the moratorium period, contain the following notice in ten-point type on the front page and the declaration page:

NOTICE

The insurer is not subject to the insurance laws and regulations related to maintenance of reserves and surplus.

SECTION 57. AMENDATORY 36 O.S. 2001, Section 1530, is amended to read as follows:

Section 1530. A. The provisions of this act are supplemental to any other provisions of the laws of this state, and shall not preclude or limit any other powers or duties of the Insurance Commissioner under such laws, including, but not limited to, Article 18 or 19 of the Insurance Code.

B. The Commissioner may promulgate reasonable rules necessary for the implementation of this act.

C. The Commissioner may exempt from the application of this act in any year any domestic insurer which:

1. Writes direct business only in this state; and

2. Assumes no reinsurance in excess of five percent (5%) of direct premium written.

D. Insurers domiciled in this state that are issuing policies of medical professional liability insurance to physicians, allied health care professionals and health care institutions as defined by Section 59 of this act on July 1, 2004, which notify the Commissioner in writing of the insurer's election to utilize the moratorium provided in Section 1509 of this title shall be exempt from the provisions of this title which require an insurer to maintain an adequate surplus as regards policyholders as a condition to obtaining or renewal of a license to act as an insurer, until January 1, 2006. The Commissioner shall not enforce any recapitalization plan against any insurer domiciled in this state

that is issuing policies of physicians', allied health care professionals' and health care institutions' professional liability insurance until January 1, 2006.

SECTION 58. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2201 of Title 36, unless there is created a duplication in numbering, reads as follows:

Sections 58 through 66 of this act shall be known and may be cited as the "Oklahoma Medical Professional Liability Trusts Act".

SECTION 59. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2202 of Title 36, unless there is created a duplication in numbering, reads as follows:

As used in the Oklahoma Medical Professional Liability Trusts Act:

1. "Allied health care professional" shall mean a physician's assistant, a certified registered nurse anesthetist or a nurse practitioner who is duly licensed by the appropriate licensing entity of the state and is supervised or employed by a physician and/or health care institution;

2. "Association" shall mean a nonprofit corporation that has been in continuous existence for a period of at least ten (10) years, the purpose of which is to federate into one organization all duly licensed physicians, allied health care professionals and/or health care institutions in this state;

3. "Commissioner" shall mean the Insurance Commissioner;

4. "Department" shall mean the Insurance Department;

5. "Health care institutions" shall mean hospitals, outpatient treatment facilities and facilities licensed pursuant to the Nursing Home Care Act;

6. "Medical professional liability claim" shall mean a claim or cause of action against a physician and/or a health care institution for treatment, lack of treatment, or other claimed departure from accepted standards of health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract;

7. "Physician" shall mean a doctor of medicine or osteopathy legally authorized to practice medicine and surgery in this state;

8. "Insureds" shall mean the physician, allied health care professional and health care institution members of an association that have medical professional liability coverage through the trust. "Insureds" shall also include entities and individuals specified in subsection C of Section 60 of this act if authorized by the trust; and

9. "Trust" shall mean a medical professional liability trust created pursuant to the Oklahoma Medical Professional Liability Trusts Act.

SECTION 60. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2203 of Title 36, unless there is created a duplication in numbering, reads as follows:

A. An association may create a trust to self-insure physicians, allied health care professionals or health care institutions against medical professional liability claims and related risks upon complying with the following conditions:

1. Establishment of a trust to provide coverage against medical professional liability claims and related risks;

2. Employment of appropriate professional staff and consultants for program management and purchase of such administrative services as may be required;

3. The trust investment powers and limitations shall be the same as those of any Oklahoma domestic casualty insurance company; and

4. Performance of all acts necessary or desirable to the conduct of the business of a medical professional liability insurer.

B. A trust may purchase, on behalf of the members of the organizing association, specific excess insurance, aggregate excess insurance, and reinsurance, as in the opinion of the trustee are necessary. A trust is further authorized to purchase risk management services as may be required and pay claims that arise under any deductible provisions.

C. If the terms of the trust so authorize, the trust may insure the following entities against medical professional liability claims and related risks:

1. Organizations or associations in which physicians, allied health care professionals or health care institutions are qualified members;

2. Entities that own or operate otherwise qualified health care institutions under the Oklahoma Medical Professional Liability Trusts Act;

3. Physicians' professional practice entities; and

4. Any person for whose acts or omissions an insured may be held legally responsible.

D. Laws of this state and the provisions of any chapters, articles or sections of Title 36 of the Oklahoma Statutes related to required amounts of reserves and surplus are declared inapplicable to a trust organized and operated under the Oklahoma Medical Professional Liability Trusts Act, except as provided in the Oklahoma Medical Professional Liability Trusts Act.

E. A licensed domestic stock insurer that prior to the effective date of this act writes physicians', allied health care professionals' or health care institutions' medical professional liability insurance and is owned wholly by an association shall be entitled to convert to a trust by:

1. Filing a plan, statement of conversion and trust instrument with the Commissioner. The plan, statement of conversion and trust instrument shall list all conditions to be fulfilled by a designated date, upon which such conversion will be effective, and all base rates to be charged by the trust;

2. Approval by vote or written consent of three-fourths (3/4) of the board of directors or trustees of the insurer's parent association;

3. Creation of a trust by the insurer's parent association;

4. Transfer of the assets and liabilities of the insurer to the trust;

5. Upon ninety (90) days' prior written notice to affected policyholders, replacement of the insurer's outstanding policies by the trust; and

6. Surrender or divesture for reasonable consideration of the insurer's license.

SECTION 61. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2204 of Title 36, unless there is created a duplication in numbering, reads as follows:

A. A medical professional liability trust shall file the following items with the Commissioner:

1. Within forty-five (45) days after the end of each of the first three quarterly periods of each fiscal year, a statement of the assets and liabilities of the trust as of the end of the quarterly period, a statement of the revenue and expenditures of the trust, and a statement of the changes in corpus of the trust for the period, in each case accompanied by a certificate to the effect that the statements were prepared from the official books and records of the trust;

2. Within ninety (90) days after the end of each fiscal year, a statement of the assets and liabilities of the trust as of the end of that year, a statement of the revenue and expenditures of the trust, and a statement of the changes in corpus of the trust for that year, in each case accompanied by a certificate signed by a firm of independent certified public accountants indicating that the firm has conducted an audit of those statements in accordance with generally accepted auditing standards and indicating the results of the audit;

3. The independently audited annual financial statement of the trust by June 1 of each year;

4. The closed claim reports as are required pursuant to Sections 6810 through 6816 of Title 36 of the Oklahoma Statutes;

5. Rates and forms within thirty (30) days after issuance of the first policy and within thirty (30) days after any changes to the previously filed rates and forms; and

6. Any amendment to the trust instrument within thirty (30) days of making the amendment.

B. A trust shall, annually, on or before the first day of March, report under oath to the Commissioner, the total amount of direct written consideration received from the membership during the preceding calendar year, or since the last return of such considerations was made by such trust.

1. A trust shall pay to the Department, on or before March 1, an annual tax on all direct written considerations, after all returned considerations are deducted for the privileges of having written, continued and/or serviced contracts of indemnity except considerations paid by any governmental agency or instrumentality. The rate of taxation shall be two and twenty-five one-hundredths percent (2.25%). If any trust fails to remit such taxes in a timely manner, it shall remain liable therefor together with interest thereon at an annual rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified by the State Treasurer on the first regular business day in January of each year, plus four (4) percentage points.

2. For any trust taxed pursuant to this section, the annual tax shall be in lieu of all other state taxes or fees, except the taxes and fees of any subdivision or municipality of the state and except ad valorem taxes. Any trust failing to make such returns and payments promptly and correctly shall forfeit and pay to the Commissioner, in addition to the amount of said taxes and fees and interest, the sum of Five Hundred Dollars ($500.00) or an amount equal to one percent (1%) of the unpaid amount, whichever is greater; and the trust so failing or neglecting for sixty (60) days shall thereafter be debarred from transacting any business in this state until said taxes, fees and penalties are fully paid.

3. All taxes, fees and penalties collected under this section shall be reported and disbursed by the Commissioner and appropriated pursuant to the provisions of Section 312.1 of Title 36 of the Oklahoma Statutes.

SECTION 62. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2205 of Title 36, unless there is created a duplication in numbering, reads as follows:

In addition to the requirements of Section 60 of this act, the trust instrument shall provide:

1. That there shall be a minimum period during which any insured must participate in the trust;

2. That all insureds shall execute a participation agreement;

3. That the trustee shall be an individual or an institution such as a bank, insurance company or other appropriate entity;

4. A preliminary assessment of all insureds for initial expenses necessary to commence operation;

5. For establishment of necessary facilities;

6. Details of the management of the trust;

7. Procedures for assessment of all insureds to defray losses and expenses;

8. Description of commission arrangements;

9. Description of reasonable and objective underwriting standards;

10. Procedures for and description of acceptance and cession of reinsurance;

11. Procedures for and descriptions of appointment of servicing carriers or other servicing arrangements; and

12. Procedures for determining amounts of insurance to be provided by the trust.

SECTION 63. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2206 of Title 36, unless there is created a duplication in numbering, reads as follows:

The total of the reserves and surplus of a trust organized under the Oklahoma Medical Professional Liability Trusts Act, in excess of the amount necessary to support the trust's retention, must equal or exceed forty percent (40%) of a range of values that makes reasonable provision for losses and loss expenses.

SECTION 64. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2207 of Title 36, unless there is created a duplication in numbering, reads as follows:

No trust created pursuant to the Oklahoma Medical Professional Liability Trusts Act shall be permitted to join or contribute financially to any insurance insolvency guaranty fund or similar entity, nor shall any trust or its insureds receive any benefit from any insurance guaranty fund or similar entity for claims made against the trust or its insureds.

SECTION 65. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2208 of Title 36, unless there is created a duplication in numbering, reads as follows:

A. The Commissioner shall annually review negotiations between the trust and any entity to provide administrative, claim, underwriting or claim management services or excess insurance, aggregate excess insurance and reinsurance to the trust.

B. The Commissioner shall, at least twice yearly, review and evaluate each category of operations of the trust or association as follows:

1. Underwriting policies and activities, including all new applications for coverage, as well as all decisions regarding denial of new policies and surcharges on or nonrenewal of existing insureds;

2. Summaries of all claims activities, including number of claims filed, lawsuits filed, resolution of closed claims and lawsuits, amounts paid in settlements, jury verdicts, defense attorney fees, expert witness costs and other defense costs;

3. Consumer satisfaction with quality of service by the trust or its agents;

4. Investment activities;

5. All filed base rates and proposed rate increases; and

6. All risk-management activities, including continuing education and counseling of insureds.

C. The Commissioner shall further study and analyze the cost of administration of the trust to determine how its administrative costs compare to the administrative costs of other medical professional liability trusts and insurers providing medical liability coverage. The Commissioner shall submit a report of the Commissioner's study to the Governor, the President Pro Tempore of the Senate and the Speaker of the House of Representatives no later than February 1 of each year.

D. The trust shall provide the Commissioner with policy changes, rate changes, rules proposed by the trust and changes to the trust instrument prior to implementation of policy changes, rate changes, proposed rules and changes to the trust instrument within thirty (30) days of implementation of such changes.

SECTION 66. NEW LAW A new section of law not to be codified in the Oklahoma Statutes reads as follows:

The Commissioner may promulgate emergency rules in accordance with the provisions of the Administrative Procedures Act in order to effectuate the purposes of the Oklahoma Medical Professional Liability Trusts Act.

SECTION 67. RECODIFICATION 76 O.S. 2001, Sections 10, as amended by Section 26 of this act, 11, as amended by Section 27 of this act, 12, as amended by Section 28 of this act, 13, as amended by Section 29 of this act, 14, as amended by Section 30 of this act, 15, as amended by Section 31 of this act, and 15.1, as amended by Section 32 of this act, shall be recodified as Sections 16-71.1 through 16-71.7 of Title 2 of the Oklahoma Statutes, unless there is created a duplication in numbering.

SECTION 68. RECODIFICATION 2 O.S. 2001, Section 16-71, as amended by Section 25 of this act, shall be recodified as Section 10.1 of Title 76 of the Oklahoma Statutes, unless there is created a duplication in numbering.

SECTION 69. Sections 54 through 66 of this act shall become effective July 1, 2004.

SECTION 70. Sections 1 through 53 and Sections 67 and 68 of this act shall become effective November 1, 2004.

SECTION 71. It being immediately necessary for the preservation of the public peace, health and safety, an emergency is hereby declared to exist, by reason whereof this act shall take effect and be in full force from and after its passage and approval.

Passed the House of Representatives the 27th day of May, 2004.

____________________________________

Presiding Officer of the House of Representatives

Passed the Senate the ____ day of __________, 2004.

____________________________________

Presiding Officer of the Senate

# Exhibit 4

STATE OF OKLAHOMA

1st Session of the 50th Legislature (2005)

SENATE BILL 576 By: Lerblance

AS INTRODUCED

An Act relating to oil and gas; amending 52 O.S. 2001, Section 570.1, which relates to the Production Revenue Standards Act; updating statutory references; modifying name of act; stating public policy; amending 52 O.S. 2001, Section 570.2, which relates to definitions; modifying definitions; defining terms; amending 52 O.S. 2001, Section 570.4, which relates to proceeds of royalty interests; requiring interest due on certain proceeds; requiring operators to act in fiduciary capacity; amending 52 O.S. 2001, Section 570.7, which relates to out of balance wells; requiring accounting within certain time period upon depletion of well; amending 52 O.S. 2001, Section 570.10, which relates to proceeds from sales of production; creating certain express trust; stating procedures for unmarketable titles; requiring operators to be liable to royalty owners for payment of certain proceeds; requiring interest to be paid by certain time; providing rebuttable presumption; providing penalty interest on certain late payments; stating penalty for violation of act; providing claim against certain party causing delay in royalty payments; amending 52 O.S. 2001, Section 570.11, which relates to division orders; requiring compliance with certain act; amending 52 O.S. 2001, Section 570.12, which relates to information for interest owners of certain oil and gas sales; modifying required information; requiring action within certain time period; defining term; providing penalty for violation; authorizing removal of operator upon certain willful breach of obligations; stating findings of certain court or jury; requiring relinquishment of rights by certain persons; stating findings by certain court or jury relating to underpayment of royalty proceeds; stating liability; amending 52 O.S. 2001, Section 570.14, which relates to district court jurisdiction; modifying entitlements for certain well owners; stating construction of act; providing for reasonable attorney fees; stating definition; stating factors for consideration of just compensation; authorizing trial judges to take certain actions in class action cases; amending 52 O.S. 2001, Section 570.15, which relates to effective dates of certain acts; modifying statutory references; amending 68 O.S. 2001, Section 1024, which relates to release of information by the Tax Commission; deleting requirement for certain affidavit; providing for certain information to be provided without costs; providing for codification; and declaring an emergency.

BE IT ENACTED BY THE PEOPLE OF THE STATE OF OKLAHOMA:

SECTION 1. AMENDATORY 52 O.S. 2001, Section 570.1, is amended to read as follows:

Section 570.1. A. ~~Sections 1 through 15 of this~~ This act shall be known and may be cited as the "Production Revenue Standards and Royalty Owner Protection Act".

B. It is the public policy of this state that royalty owners receive prompt and proper payment from the sales of oil and gas. The Production Revenue Standards and Royalty Owner Protection Act is intended to aid in implementation of that public policy, reduce disputes and litigation in the area of royalty payments, encourage trust and respect between royalty owners, lessees and operators through transparency and proper reporting and payment of oil and gas proceeds, and provide more certainty to oil and gas lessees and payees related to determining whether gathering and marketing services are deductible in determining royalty payments.

SECTION 2. AMENDATORY 52 O.S. 2001, Section 570.2, is amended to read as follows:

Section 570.2 As used in the Production Revenue Standards and Royalty Owner Protection Act:

1. "Owner" means a person or governmental entity with a legal interest in the mineral acreage under a well which entitles that person or entity to oil or gas production or the proceeds or revenues therefrom;

2. "Produce", "producing" and "production" mean the physical act of severance of oil and gas from a well by an owner and includes but is not limited to the sale or other disposition thereof;

3. "Producing owner" means an owner entitled to produce who during a given month produces oil or gas for its own account or the account of subsequently created interests as they burden its interest;

4. "Proportionate production interest" means that interest in production which a working interest owner is entitled to produce in order to adjust for shifting of royalty burdens among working interest owners under the royalty payment provisions of this act, and is equal to the quotient of:

a. the sum of that working interest owner's net revenue interests plus the net revenue interests of any subsequently created interests as they burden such owner's working interest,

b. divided by the remainder of one (1) less the royalty share;

5. "Proportionate royalty share" means the percentage of the royalty share owned by a royalty interest owner calculated by dividing such owner's royalty interest in a well by the royalty share;

6. "Royalty interest" means the entirety of the percentage interest in production or proceeds therefrom:

a. reserved or granted by a mineral interest owner exclusive of any interest defined as a working interest or a subsequently created interest, or

b. otherwise provided or ascribed to a mineral interest owner by statute, rule, order or operation of law.

The interest of a participating mineral interest owner shall be designated in part as a royalty interest and in part as a working interest as set forth in Section 87.1 of Title 52 of the Oklahoma Statutes;

7. "Royalty interest in a well" means an owner's royalty interest multiplied by the quotient of:

a. the gross mineral acres under the well attributable to such interest, divided by

b. the total mineral acres under the well;

8. "Royalty proceeds" means the share of proceeds or other revenue derived from or attributable to any production of oil and gas attributable to the royalty share, <u>without deduction or reduction for costs of production or marketing unless expressly allowed by contract,</u> but shall not include payments of bonus, delay rentals, shut-in royalties or any additional royalty payable to the Commissioners of the Land Office or other governmental entity, pursuant to and valued according to the terms of its oil and gas lease, which is calculated separately from the royalty portion of actual proceeds from the sale of oil or gas;

9. "Royalty share" means the percentage of the well equal to the sum of all royalty interests in a well;

10. "Subsequently created interest" means any interest carved from a working interest other than a royalty interest. In addition to the royalty interest contained in a lease, a nonparticipatory interest created by a working interest owner for the benefit of a mineral interest owner in excess of a one-eighth (1/8) royalty interest may, by separate agreement other than the oil and gas lease, be a subsequently created interest and thereby not be communitized under the terms of the Production Revenue Standards <u>and Royalty Owner Protection</u> Act only if there is clear and unambiguous language expressing that intent in the creating document. The additional royalty payable to the Commissioners of the Land Office or other governmental entity, pursuant to and valued according to the terms of its oil and gas lease, which is calculated separately from the royalty portion of actual proceeds from the sale of oil or gas shall also be a subsequently created interest and thereby shall not be communitized under the Production Revenue Standards <u>and Royalty Owner Protection</u> Act;

11. "Well" means an oil or gas well, and shall include:

a. a well having uniform ownership as to all producing zones,

b. a drilling and spacing unit having uniform ownership wherein multiple wells producing gas are commonly metered, and

c. each separately metered producing zone within a single wellbore wherein ownership varies by zone; ~~and~~

12. "Working interest" means the interest in a well entitling the owner thereof to drill for and produce oil and gas, including but not limited to the interest of a participating mineral owner to the extent set forth in Section 87.1 of Title 52 of the Oklahoma Statutes;

13. "Proceeds from the sale of oil or gas production" means the proceeds received by working interest owners from the sale of oil or gas production which includes the royalty proceeds and proceeds attributable to the subsequently created interests and the working interests;

14. "Costs of production or marketing" means all costs incurred for exploration, development, production, primary or enhanced recovery, operation, gathering, marketing, and abandonment operations including, but not limited to, lease acquisition, drilling and completion, pumping or lifting, water disposal, separating, recycling, treating, extraction of impurities or diluents, storing or moving the oil to the storage tanks, gathering of natural gas or gas liquids or marketing of oil and gas. Cost of production or marketing does not include the reasonable, necessary, actual and direct costs associated with, and not exceeding the value added by:

a. transporting the oil from the storage tanks to market,

b. the transmission of gas after the point of entry into the market pipeline, or

c. processing of gas in a processing plant to extract a product which is actually sold separately from residue oil or residue natural gas.

Other than the costs associated with marketing, all costs identified herein as costs of production and marketing are deemed to be costs necessary for production and deemed to occur in the vicinity of well;

15. "Market pipeline" means a pipeline connected to the nationwide or statewide natural gas pipeline grid in which natural gas is contained at a pressure and of a quality such that it is fit for market as the commodity natural gas without change of its physical or chemical condition, and has become an interchangeable part of the aggregate gas stream contained in the nationwide or statewide pipeline grid;

16. "Gathering" means the transportation of natural gas through a pipeline for hire, compensation or otherwise, or transporting natural gas through a pipeline, in whole or in part, for such person's own account, whether in connection with the purchase and resale of natural gas, or in connection with the processing of natural gas or otherwise. Gathering includes those activities or processes performed between the delivery points and all redelivery points occurring prior to the gas being delivered into the market pipeline, which shall include, but not be limited to, transportation, measurement, conditioning, compressing, pressure regulation, recompressing, cleaning and treating of such gas and the fuel or gas loss associated with such foregoing activities. The terms "conditioning", "cleaning" and "treating" as used herein shall include those processes of separation, dehydration, removal of all contaminants and inerts and filtering. Gathering specifically shall not include processing or the extraction of natural gas liquids and products;

17. "Gatherer" means any person who performs the activities or processes defined as gathering;

18. "Shipper" means any person who owns or controls natural gas and seeks or receives gathering service from a gatherer;

19. "Delivery point" means the point where the possession or control of the gas stream transfers from a shipper to a gatherer; and

20. "Redelivery point" means the point at which the gatherer relinquishes possession or control of the gas stream.

SECTION 3. AMENDATORY 52 O.S. 2001, Section 570.4, is amended to read as follows:

Section 570.4 A. In each month, each royalty interest owner shall share in all proceeds derived from the sale of gas production from a well to the extent of such owner's royalty interest in that well without regard to the identity of the producing owners during that period.

B. Each producing owner shall pay or cause to be paid to the operator the royalty share of its gas sales proceeds, valued according to such producing owner's lease terms or Corporation Commission forced pooling order, from all gas produced from the well by such owner during any month. The operator shall thereupon pay or cause to be paid such royalty proceeds to each royalty interest owner in the well in accordance with the proportionate royalty share owned by each royalty interest owner. The payment of such proceeds by the operator shall be accompanied by any interest due on the royalty proceeds pursuant to Section 570.10 of this title and by the information set out in Section ~~12~~ 570.12 of this ~~act~~ title.

C. The operator shall act ~~solely in a ministerial~~ in a fiduciary capacity when performing functions ~~on behalf of others pursuant to~~ required by this act. The operator shall have discharged its fiduciary duties to pay royalty proceeds and interest under this act when it remits to the royalty interest owner such royalty proceeds ~~that the operator has received from an owner pursuant to this act~~ due on all production, together with all interest due pursuant to this act, and provides the royalty owner with all information required pursuant to Section 570.12 of this

title. In the absence of a division order signed by a royalty interest owner, an operator in distributing or causing to be distributed the royalty proceeds on gas production to that royalty interest owner shall be entitled to rely on royalty ownership and remittance information provided by the working interest owner burdened by such royalty interest. Working interest owners shall be ~~solely~~ liable for mispayments caused by their errors in or omissions of royalty ownership and remittance information on the royalty interests burdening them. When collecting and disbursing royalty funds and reporting pursuant to Section ~~12~~ 570.12 of this ~~act~~ title, the operator shall be entitled to rely on information provided to it by or on behalf of another producing owner.

D. As an alternative to the royalty disbursement procedure set forth in subsection B of this section, a producing owner shall have the right to pay or cause to be paid the royalty share of its gas sales from gas produced by such owner during any month directly to all royalty interest owners according to their proportionate royalty shares in such well, contingent upon the following:

1. Such producing owner shall be solely liable for all errors in and omissions of payment that it makes of royalty proceeds;

2. Such producing owner shall make written report to the operator within thirty (30) days of the date of such payment of all information relating to such payments, including the information specified by Section ~~12~~ 570.12 of this ~~act~~ title;

3. Such producing owner shall give to the operator not less than sixty (60) days' written notice prior to initiating or terminating this alternate royalty disbursement procedure; provided, however, any owner terminating this alternate royalty disbursement procedure may not reinitiate such procedure for twelve (12) months from the effective date of such termination;

4. Such producing owner shall solely bear all additional costs incurred by the operator or itself because of its initiation,

utilization or termination of this alternative royalty payment procedure; ~~and~~

5. Such producing owner shall provide or cause to be provided to the royalty interest owners for each month such producing owner's proportionate production interest, accompanied by any interest due on the royalty proceeds pursuant to Section 570.10 of this title, and the information required under Section ~~12~~ 570.12 of this ~~act~~ title; and

6. Such producing owner shall act in a fiduciary capacity when performing functions required by this act.

SECTION 4. AMENDATORY 52 O.S. 2001, Section 570.7, is amended to read as follows:

Section 570.7 A. For purposes of the Production Revenue Standards and Royalty Owner Protection Act a well is out of balance when cumulative gas sales on a volumetric basis for the account of all owners in a well have not been made in proportion to the respective net revenue interest of each owner.

B. In a well wherein the cumulative gas production accounts of royalty interest owners are out of balance, producing owners in that well may agree to have the distribution of gas royalty proceeds among the royalty interest owners made in a manner other than according to their proportionate royalty shares, provided that:

1. Such variance shall only be permitted to the extent required to balance the cumulative gas production accounts of the royalty interest owners; and

2. Prior notice thereof is given to the royalty interest owners affected thereby, and to the operator along with any ongoing information necessary for the operator to discharge its duties.

C. Upon the depletion of a well, or producing formation within a well, the operator shall within sixty (60) days provide all owners an accounting, covering both volumes and values, for production imbalances in the well, including any imbalances that may exist

related to the royalty interests. The operator shall facilitate payment and distribution of any required cash balancing within ninety (90) days of depletion of the well or producing formation within the well, whichever occurs first.

D. Nothing in this section shall be construed to impair any rights to balancing which may exist by contract or law.

SECTION 5. AMENDATORY 52 O.S. 2001, Section 570.10, is amended to read as follows:

Section 570.10 A. All proceeds from the sale of production shall be regarded as separate and distinct from all other funds of any person receiving or holding the same until such time as such proceeds are paid to the owners legally entitled thereto. Any person holding revenue or proceeds from the sale of production shall hold such revenue or proceeds for the benefit of the owners legally entitled thereto. ~~Nothing in this subsection~~ This act shall create an express trust between the persons holding the proceeds and those owners who are legally entitled thereto.

B. Except as otherwise provided in this section:

1. Proceeds from the sale of oil or gas production from an oil or gas well shall be paid to persons legally entitled thereto:

a. commencing not later than six (6) months after the date of first sale, and

b. thereafter not later than the last day of the second succeeding month after the end of the month within which such production is sold.

2. Notwithstanding paragraph 1 above, royalty proceeds from the sale of gas production from an oil or gas well remitted to the operator pursuant to subsection B of Section 570.4 of this title shall be paid to persons legally entitled thereto:

a. commencing not later than six (6) months after the date of first sale, and

b. thereafter not later than the last day of the third succeeding month after the end of the month within which such production is sold; provided, however, when proceeds are received by the operator in its capacity as a producing owner, the operator may pay the royalty share of such proceeds to the royalty interest owners legally entitled thereto at the same time that it pays the royalty proceeds received from other producing owners for the same production month, but not later than the last day of the third succeeding month after the end of the month within which such production was sold.

3. a. Proceeds from production may be remitted to the persons entitled to such proceeds annually for the twelve (12) months accumulation of proceeds totaling at least Ten Dollars ($10.00) but less than One Hundred Dollars ($100.00). Amounts less than Ten Dollars ($10.00) may be held but shall be remitted when production ceases or by the payor upon relinquishment of payment responsibility.

b. Proceeds totaling less than One Hundred Dollars ($100.00) but more than Twenty-five Dollars ($25.00) shall be remitted monthly if requested by the person entitled to the proceeds. Amounts less than Ten Dollars ($10.00) shall be remitted annually if requested by the person entitled to the proceeds.

c. Before proceeds greater than Twenty-five Dollars ($25.00) may be accumulated, payor shall provide notice to the person owning interest as defined in Section 570.2 of this title, entitled to such proceeds that there is an option to be paid monthly for proceeds greater than Twenty-five Dollars ($25.00).

Such notice to the person shall also provide directions for requesting monthly payment, and constitutes notice to all heirs, successors, representatives, and assigns of the person.

4. Any delay in determining the persons legally entitled to proceeds from production caused by unmarketable title shall not affect payments to persons whose title is marketable. If an owner has both marketable and unmarketable title, any delay in determining the person legally entitled to the proceeds from production caused by that portion of the title that is unmarketable shall not affect payments to that person for the portion of title that is marketable.

C. 1. A first purchaser that pays or causes to be paid proceeds from production to the producing owner of such production or, at the direction of the producing owner, pays or causes to be paid royalty proceeds from production to:

a. the royalty interest owners legally entitled thereto, or

b. the operator of the well,

shall not thereafter be liable for such proceeds so paid and shall have thereby discharged its duty to pay those proceeds on such production.

2. A working interest owner that pays or causes to be paid royalty proceeds from production to:

a. the royalty interest owners legally entitled thereto, or

b. the operator of the well,

shall not thereafter be liable for such proceeds so paid and shall have thereby discharged its duty to pay those proceeds on such production.

3. An operator that pays or causes to be paid royalty proceeds from production, received by it as operator, to the royalty interest owners legally entitled thereto shall not thereafter be liable for

such proceeds so paid and shall have thereby discharged its duty to pay those proceeds on such production.

4. The operator shall be liable to the royalty owners for the proper payment of royalty proceeds. Where royalty proceeds are paid incorrectly as a result of an error or omission, the party whose error or omission caused the incorrect royalty payments shall also be liable to the royalty owners and the operator for the additional royalty proceeds on such production and all resulting costs or damages incurred by the party making the incorrect payment.

D. 1. Except as otherwise provided in paragraph 2 of this subsection, where proceeds from the sale of oil or gas production or some portion of such proceeds are not paid prior to the end of the applicable time periods provided in this section, that portion not timely paid shall earn interest at the rate of twelve percent (12%) per annum, to be compounded annually, calculated from the end of the month in which such production is sold until the day paid. Interest due pursuant to this section shall be paid to the owner by the operator, or other royalty distributor, at the time the production proceeds are paid. There shall be a rebuttable presumption that any payment of production proceeds not made within ninety (90) days after the date such payment was due pursuant to this section, or any interest payment due pursuant to this section that was not made at the time that a late production proceeds payment was made, was unreasonably withheld. Any payment of production proceeds, or interest payment due pursuant to this section, that is unreasonably withheld shall earn interest at the rate of eighteen percent (18%) per annum, to be compounded annually, calculated, in the case of payment of production proceeds, from the end of the month in which the production is sold until the date paid, and in the case of interest payments, from the date the production payment was made until the date the interest is paid. The applicable interest rate

determined in this subsection shall also apply to any judgment for damages for violation of this act.

2. a. Where such proceeds are not paid because the title thereto is not marketable, such proceeds shall earn interest at the rate of six percent (6%) per annum, to be compounded annually, calculated from the end of the month in which such production was sold until such time as the title to such interest becomes marketable. Marketability of title shall be determined in accordance with the then current title examination standards of the Oklahoma Bar Association.

b. Where marketability has remained uncured for a period of one hundred twenty (120) days from the date payment is due under this section, any person claiming to own the right to receive proceeds which have not been paid because of unmarketable title may require the holder of such proceeds to interplead the proceeds and all accrued interest into court for a determination of the persons legally entitled thereto. Upon payment into court the holder of such proceeds shall be relieved of any further liability for the proper payment of such proceeds and interest thereon.

E. 1. The operator shall be liable to the persons legally entitled to proceeds from production for the payment of interest due pursuant to the provisions of this section.

2. Except as provided in paragraph ~~2~~ 3 of this subsection, a first purchaser or holder of proceeds who fails to remit proceeds from the sale of oil or gas production to owners legally entitled thereto within the time limitations set forth in paragraph 1 of subsection B of this section shall be liable to such owners and the operator for interest as provided in subsection D of this section on that portion of the proceeds not timely paid. When two or more

persons fail to remit within such time limitations, liability to the owners and operator for such interest shall be shared by those persons holding said proceeds in proportion to the time each person held such proceeds.

~~2.~~ 3. When royalty proceeds on gas production are remitted pursuant to subsection B of Section 570.4 of this title:

a. A first purchaser that causes such proceeds to be received by the operator or by a producing owner in the well for distribution to the royalty interest owner legally entitled thereto within the first month following the month in which such production was sold shall not be liable for interest on such proceeds.

b. A producing owner receiving royalty proceeds that causes such proceeds to be received by the royalty interest owner legally entitled thereto or by the operator for distribution to the royalty interest owner legally entitled thereto not later than the end of the first month following the month in which proceeds for such production was received by the producing owner from the purchaser shall not be liable for interest on such proceeds.

c. An operator receiving royalty proceeds that causes such proceeds to be received by the royalty interest owner legally entitled thereto, not later than the end of the first month following the month in which proceeds for such production was received by the operator from the purchaser or producing owner shall ~~not be liable for interest on such proceeds~~ have a claim against any party causing the delay in royalty payments for the full amount of interest paid by the operator pursuant to paragraph 1 of this subsection.

d. Liability to the operator for interest provided in subsection D of this section shall be borne solely by the person, or persons, failing to remit royalty proceeds within the time limitations set forth in subsection B of this section. When two or more persons fail to remit within such time limitations, liability for such interest shall be shared by such persons in proportion to the time each person held such proceeds.

F. Nothing in this section shall be construed to impair or amend existing or future contractual rights provided for in gas balancing agreements or other written agreements which expressly provide for the taking, sharing, marketing or balancing of gas or the proceeds therefrom. Any proceeds to be paid pursuant to any such agreement shall not commence to earn interest until the sooner of the time provided in such agreement for the payment of such proceeds or ninety (90) days from the date of the depletion of the well. Nothing herein shall be deemed to alter or limit the payment of royalty proceeds as provided in the Production Revenue Standards and Royalty Owner Protection Act.

SECTION 6. AMENDATORY 52 O.S. 2001, Section 570.11, is amended to read as follows:

Section 570.11 A division order is an instrument for the purpose of directing the distribution of proceeds from the sale of oil, gas, casinghead gas or other related hydrocarbons which warrants in writing the division of interest and the name, address and tax identification number of each interest owner with a provision requiring notice of change of ownership. A division order is executed to enable the first purchaser of the production or holder of proceeds to make remittance of proceeds directly to the owners legally entitled thereto and does not relieve the lessee of any liabilities or obligations under the oil and gas lease or the provisions of this act. Terms of a division order which conflict

with the terms of any oil and gas lease or the provisions of this act are invalid, unless previously agreed to by the affected parties. This subsection shall only apply to division orders executed on or after July 1, 1989.

SECTION 7. AMENDATORY 52 O.S. 2001, Section 570.12, is amended to read as follows:

Section 570.12 A. The following information for each property and month of sale shall be included with each payment made to an interest owner from the sale of oil or gas:

1. Lease or well identification;

2. Month and year of sales included in the payment;

3. Total barrels or MCF produced which are attributed to such payment before any reduction for fuel, shrinkage or any other type of reduction;

4. Price per barrel or MCF, including British Thermal Unit adjustment of gas sold, from the first arms-length sale to a non-affiliated purchaser, such price to be prior to any reductions for costs of any kind;

5. Total gross value received from the first arms-length sale to a non-affiliated purchaser, such gross price to be prior to any reductions in the value for costs of any kind;

6. A specific listing of the amount and purpose of each deduction from the total gross value received from the first arms-length sale to a non-affiliated purchaser for costs of any kind;

~~5.~~ 7. Total amount attributed to such payment of severance and other production taxes~~, with the exception of windfall profit tax~~;

~~6.~~ 8. Net value of total sales attributed to such payment ~~after taxes are deducted~~;

~~7.~~ 9. Owner's interest, expressed as a decimal, in production from the property;

~~8. Owner's share of the total value of sales attributed to such payment prior to any deductions;~~

~~9. Owner's share of the sales value attributed to such payment less owner's share of the production and severance taxes; and~~

10. ~~A specific listing of the amount and purpose of any other deductions from the proceeds attributed to such payment due to the owner upon request by the owner~~ <u>A specific listing of the owner's share of each item set forth in paragraphs 3 through 9 of this subsection</u>.

B. For purposes of the Production Revenue Standards <u>and Royalty Owner Protection</u> Act:

1. All revenue decimals shall be calculated to not less than the nearest sixth decimal place, which is the nearest part in one million; and

2. Gas volumes reported to any owner shall be measured as required by Section 474 of ~~Title 52 of the Oklahoma Statutes~~ <u>this title</u>.

<u>C. Within sixty (60) days of receiving a written request from any royalty owner, or owner of a subsequently created interest, a producing owner shall provide a copy of all gas purchase contracts, gas gathering contracts, gas processing contracts or any other contract which may impact the timely or proper disclosure and payment of production proceeds to said royalty owner or owner of a subsequently created interest. Any confidentiality provision, or any other provision which hinders the free flow of information to the royalty owner or owner of a subsequent interest, contained in any agreement described herein, shall be against the public policy of this state and thus unenforceable.</u>

<u>D. If a court or jury finds that the operator or royalty distributor intentionally violated this section, it may assess against the operator or royalty distributor penalties in an amount not to exceed One Hundred Dollars ($100.00) per violation of this section.</u>

SECTION 8. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 570.12.1 of Title 52, unless there is created a duplication in numbering, reads as follows:

A. Any willful breach by the operator, designated royalty distributor, producing owner or working interest owner, of the obligations set forth in the Production Revenue Standards and Royalty Owner Protection Act shall authorize, among all other available relief and remedies, removal of the operator or designated royalty distributor and cancellation of the lease or Corporation Commission pooling order where determined, by a court or jury, that the willful breach warrants removal or cancellation.

B. If a court or jury finds that any operator, producing owner or working interest owner contracted for the sale of gas or oil to any pipeline company or other purchaser with the intent and result that:

1. The operator, producing owner or working interest owner received a greater amount or value than the owners of the royalty interest, in proportion to their respective interests therein; or

2. The operator, producing owner or working interest owner received a bonus or fee from the pipeline company or purchaser upon which royalties were not paid; or

3. The operator, producing owner or working interest owner received cost of production or marketing related services from the pipeline company or purchaser in exchange for reducing the price paid for production, and the lower price resulted in the operator, producing owner or working interest owner inappropriately shifting a portion of the cost of production and marketing services to the royalty owner; or

4. The operator, producing owner or working interest owner, by any other means, conspires with the pipeline company or purchaser to receive from the sale of the oil and gas more than his just

proportionate share of value therefrom, as compared to the owners of the royalty interest;

then in that event, the operator, producing owner or working interest owner shall relinquish his rights as the operator of the unit and his rights in and to the leasehold premises and unit.

C. If the court or jury finds that any pipeline company or other purchaser contracts to purchase or gather gas, oil or other hydrocarbons, with any operator, producing owner or working interest owner, as set out in subsection B of this section, with the intent to aid the operator, producing owner or working interest owner to underpay the royalty share of production, the pipeline company or purchaser shall be liable to the royalty owners for treble value of the amount of oil or gas production proceeds thus wrongfully deprived from the royalty owners.

SECTION 9. AMENDATORY 52 O.S. 2001, Section 570.14, is amended to read as follows:

Section 570.14 A. The district courts within this state shall have the sole and exclusive jurisdiction to determine the entitlement of any owner in a well to:

1. Its share of proceeds from production; ~~or~~

2. Damages ~~interest, court~~<u>, including interest set forth in this act;</u>

<u>3. Removal of the operator or designated royalty distributor;</u>

<u>4. Cancellation or forfeiture of the lease, pooling order or interest in the unit, pursuant to Section 570.14 of this title; and</u>

<u>5. Court</u> costs, attorneys' fees or allowable litigation expenses incurred as a result of the violation of this act.

B. Any rulemaking power granted to the Corporation Commission by the Production Revenue Standards <u>and Royalty Owners Protection</u> Act shall neither preclude nor impair the right of any owner to obtain through the district courts remedies available under existing law or additional remedies herein granted to any owner injured in

business or property by reason of any action in violation of the provisions of the Production Revenue Standards and Royalty Owners Protection Act.

C. Any owner injured in business or property by reason of any action in violation of the provisions of the Production Revenue Standards and Royalty Owners Protection Act shall have the right to:

1. Recover actual damages so sustained; ~~and~~

2. Obtain removal of the operator or designated royalty distributor and seek cancellation or a determination of forfeiture of the lease, pooling order or interest in the well, pursuant to Section 570.14 of this title; and

3. Obtain specific performance where equitable. Nothing in this act shall be construed as limiting or precluding any claims or remedies provided by contract or existing law.

D. The prevailing party in any court proceeding brought pursuant to the Production Revenue Standards and Royalty Owner Protection Act shall be entitled to recover the costs of the suit, including but not limited to reasonable attorney and expert witness fees. A reasonable attorney fee pursuant to this subsection may be determined, in the district court's discretion, based upon either the lodestar method or the percentage of fund method. Lodestar method means the number of hours reasonably expended, multiplied by the prevailing hourly rate in the community and then adjusted for other factors as set forth in subsection E of this section. The percentage of fund method means a percentage of the total recovery for the prevailing party.

E. In arriving at just compensation, the court shall consider the risk of litigation and the following factors:

1. Time and labor required;

2. The novelty and difficulty of the case;

3. The skill required to perform the legal service properly;

4. The preclusion of other employment by the attorney due to acceptance of the case;

5. The customary fee;

6. Whether the fee is fixed or contingent;

7. Time limitations imposed by the client or the circumstances;

8. The amount in controversy and the results obtained;

9. The experience, reputation and ability of the attorney;

10. Whether or not the case is an undesirable case;

11. The nature and length of the professional relationship with the client; and

12. Awards in similar cases.

F. In any class action brought pursuant to Section 2023 of Title 12 of the Oklahoma Statutes to enforce the terms of the Production Revenue Standards and Royalty Owner Protection Act, the trial judge:

1. Shall conduct an evidentiary hearing to determine a fair and reasonable fee for class counsel;

2. Shall act as an adversary for, and in a fiduciary capacity on behalf of, the class when determining a fair and reasonable attorney fee for class counsel;

3. Shall award class counsel a base attorney fee in the range of thirty to forty percent (30% to 40%) of the total common fund; and

4. May adjust the base attorneys fee, either higher or lower, based upon an analysis of the factors set forth in subsection E of this section.

~~D.~~ G. For purposes of the Production Revenue Standards and Royalty Owner Protection Act, the statute of limitations on actions brought pursuant to the provisions of the Production Revenue Standards and Royalty Owner Protection Act shall be five (5) years from the date ~~the cause of action shall have accrued,~~ a well depletes and the operator complies with Section 570.7 of this title;

provided however, nothing shall create, limit or expand any statute of limitations applicable to production occurring prior to September 1, 1992.

SECTION 10. AMENDATORY 52 O.S. 2001, Section 570.15, is amended to read as follows:

Section 570.15 Notwithstanding the effective dates of various provisions of the Production Revenue Standards and Royalty Owner Protection Act, performance under the terms of the Production Revenue Standards and Royalty Owner Protection Act which causes proper payment of proceeds to owners legally entitled thereto for sales of gas production subsequent to the date of enactment but prior to the effective date of the Production Revenue Standards and Royalty Owner Protection Act will satisfy duties or obligations pertaining to such sales under Sections 87.1 and 540 of Title 52 of the Oklahoma Statutes in effect on or before the effective date of the Production Revenue Standards and Royalty Owner Protection Act.

SECTION 11. AMENDATORY 68 O.S. 2001, Section 1024, is amended to read as follows:

Section 1024. A. The Tax Commission may upon written request, release to any person the volume of production, during any specified available period of time, of any substance taxable pursuant to the provisions of this article from any lease lawfully plugged, pursuant to the laws of this state after certification of said plugging by the Oklahoma Corporation Commission.

B. The Tax Commission may, upon oral or written request, release the lease name, legal description, Oklahoma Tax Commission assigned production unit number for any lease or unit in this state and the Oklahoma Tax Commission assigned purchaser or producer reporting number and purchaser or producer name to any person.

C. The Tax Commission may, upon written request, release the volume of production, producing formation and well classification, active or inactive, on a lease by lease basis to any person.

D. The Tax Commission shall, upon written request, release information provided in the Reclaimer's and Transporters Monthly Tax Report of Lease Production Stored and Sold, OTC Form 323A-7-81, or any form succeeding this form, to any person.

E. The Tax Commission shall, upon written request, release the following information to any person executing an affidavit, under penalty of perjury, declaring that they are an interest owner in the well, lease or unit for which the information is requested:

1. The gross, exempt and net volumes and values of production, tax reimbursements, additional values and taxes remitted thereon, during any available period of time of any substance taxable pursuant to the provisions of this article or the Petroleum Excise Tax of this state.

2. The lease name, legal description, industry or company well or lease unique number, Oklahoma Tax Commission assigned production unit number for any lease or unit in this state and the Oklahoma Tax Commission assigned purchaser or producer reporting number and purchaser or producer name.

3. The producing formation and well classification, active or inactive, on a lease by lease basis and if available, on a well by well basis, and British Thermal Unit content, NGPA classification, gas code, gravity, tier, category and oil class.

F. It is specifically provided that:

1. The Tax Commission shall establish a schedule of costs for the furnishing of the information in accordance with the provisions of subsections A, ~~and~~ B, and E of this section and shall collect said costs; provided however, that a person requesting information pursuant to subsection E who executed an affidavit, under penalty of perjury, declaring that the person is an interest owner in the well, lease or unit for which the information is requested, shall be provided the information without cost;

2. No civil or criminal liability shall attach to any member of the Tax Commission, or to any agents, servants, or employees of the Tax Commission for any error or omission in the preparation and publication of the requested information;

3. No costs shall be charged to the ~~Oklahoma~~ Corporation Commission Oil and Gas Conservation Division or Energy Conservation Services Division or to the Oklahoma Geological Survey for examination of the files and records of the Tax Commission; and

4. All funds collected pursuant to the provisions of this section shall be paid to the State Treasury and deposited to the credit of the Tax Commission Revolving Fund.

G. A duly authorized agent of the ~~Oklahoma~~ Corporation Commission Oil and Gas Conservation Division or Energy Conservation Services Division or of the Oklahoma Geological Survey may examine necessary records and files of the Tax Commission relating to the gross production tax for the purpose of estimating or forecasting reserves or production of oil or gas. Such examination shall be limited to information of volume of production, producing formation and well classification, active or inactive, on a lease by lease basis.

H. A duly authorized agent of the Commissioners of the Land Office may examine necessary records and files of the Tax Commission relating to the gross production tax for the purpose of determining the amount of erroneous payment of gross production tax made to the ~~Oklahoma~~ Tax Commission after January 1, 1978.

I. The provisions of this section shall be exceptions to the provisions of Sections 205 and 205.1 of this title and said sections shall be strictly construed against the disclosure of any other information contained in the records and files of the Tax Commission except as otherwise provided by law.

J. Any violation of the provisions of this section shall constitute a misdemeanor and shall be punishable as provided for in Section 205 of this title.

SECTION 12. It being immediately necessary for the preservation of the public peace, health and safety, an emergency is hereby declared to exist, by reason whereof this act shall take effect and be in full force from and after its passage and approval.

50-1-85 MJM 6/13/2015 8:49:42 AM

# Exhibit 5

STATE OF OKLAHOMA

2nd Session of the 50th Legislature (2006)

SENATE BILL 2040 By: Williamson

AS INTRODUCED

An Act relating to civil procedure; providing for calculation of attorney fees in class actions; defining terms; providing statute of limitations for product liability action; stating exceptions; allowing court to dismiss certain actions under specified circumstances; amending 12 O.S. 2001, Sections 993, 1101, 1102, 2023 and 2702, which relate to appeals, offers, class actions and expert testimony; adding grounds and establishing procedure to appeal certain order; clarifying language; updating statutory reference; requiring court to rule on certain motions in specified class actions; stating procedures for admissibility of certain testimony; amending 23 O.S. 2001, Sections 9.1, as amended by Section 1, Chapter 462, O.S.L. 2002, 61 and 103 (23 O.S. Supp. 2005, Section 9.1), which relate to punitive damages; requiring unanimous jury for punitive damages; allowing admissibility of certain evidence; directing payment of certain awards; authorizing periodic payments of certain awards; providing for reimbursement of certain costs under certain circumstances; allowing imposition of certain sanctions; establishing procedures for acceptance or denial of certain claims; amending Sections 4 and 5, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2005, Sections 1-1708.1D and 1-1708.1E), which relate to the Affordable Access to Health Care Act; stating form of certain claim; establishing procedure for certain claim; establishing procedures for use of expert reports; establishing procedures for answer of certain interrogatories; creating the Health Care Discovery Panel; placing cap on certain damages in specified actions; requiring reduction of damages under certain circumstances; requiring certain jury instructions under certain circumstances; establishing procedure for qualification of certain witness; defining terms; establishing guidelines for payment of certain damage awards; creating the Oklahoma Medical Disclosure Panel; establishing rights and duties of Panel; requiring estimates of certain medical care; creating the School Protection Act; providing short title; defining terms; limiting liability for certain employees under specified circumstances; establishing procedures for filing certain claim; prohibiting filing of specified suit unless certain remedies are exhausted; allowing referral of certain case to alternative dispute resolution; allowing recovery of attorney fees in certain cases; stating applicability of act; amending 76 O.S. 2001, Section 18, as amended by Section 4, Chapter 462, O.S.L. 2002 (76 O.S. Supp. 2005, Section

18), which relates to torts; providing statute of limitations for certain claims; defining terms; stating applicability of certain provisions; clarifying asbestos-related liabilities for certain corporations; creating the Product Liability Act; providing short title; defining terms; requiring certain manufacturer to indemnify specified sellers; establishing indemnification procedures; stating certain rebuttable presumptions under specified circumstances; providing for codification; and providing an effective date.

BE IT ENACTED BY THE PEOPLE OF THE STATE OF OKLAHOMA:

SECTION 1. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 7.2 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. If any portion of the benefits recovered for the class in a class action are in the form of coupons or other noncash common benefits, the attorney fees awarded in the class action shall be in cash and noncash amounts in the same proportion as the recovery for the class.

B. In class actions, if an award of attorney fees is available under applicable substantive law, the trial court shall use the Lodestar Rule to calculate the amount of fees to be awarded to class counsel. The court may increase or decrease the fee award calculated by using the Lodestar Rule by no more than five times based on factors specified in subsection C of this section.

C. As used in this section, "Lodestar Rule" means the number of hours reasonably expended multiplied by the prevailing hourly rate in the community and then adjusted for other factors. In arriving at just compensation, the court shall consider the following factors:

1. Time and labor required;

2. The novelty and difficulty of the case;

3. The skill required to perform the legal service properly;

4. The preclusion of other employment by the attorney due to acceptance of the case;

5. The customary fee;

6. Whether the fee is fixed or contingent;

7. Time limitations imposed by the client or the circumstances;

8. The amount in controversy and the results obtained;

9. The experience, reputation and ability of the attorney;

10. Whether or not the case is an undesirable case;

11. The nature and length of the professional relationship with the client; and

12. Awards in similar cases.

SECTION 2. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 95.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. As used in this section, "product liability action" means any action against a manufacturer or seller for recovery of damages or other relief for harm allegedly caused by a defective product, whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories, and whether the relief sought is recovery of damages or any other legal or equitable relief, including, but not limited to, an action for:

1. Injury or damage to or loss of real or personal property;

2. Personal injury;

3. Wrongful death;

4. Economic loss; or

5. Declaratory, injunctive, or other equitable relief.

B. Except as provided by subsections C, D and E of this section, a plaintiff must commence a product liability action against a manufacturer or seller of a product before the end of ten

(10) years after the date of the sale of the product by the defendant.

C. If a manufacturer or seller expressly warrants in writing that the product has a useful safe life of longer than ten (10) years, a plaintiff must commence a product liability action against that manufacturer or seller of the product before the end of the number of years warranted after the date of the sale of the product by that seller.

D. This section shall not apply to a product liability action in which damages are sought for personal injury or wrongful death if the plaintiff alleges:

1. The plaintiff was exposed to the product that is the subject of the action before the end of ten (10) years after the date the product was first sold to the plaintiff;

2. Exposure to the product caused a disease or injury that is the basis of the action; and

3. The symptoms of the disease or the cause of the injury were not, before the end of ten (10) years after the date of the first sale of the product by the defendant, manifest to a degree and for a duration that would put a reasonable person on notice that the person suffered some injury or that the product was subject to some defect.

E. This section shall not reduce a limitations period for a cause of action described by subsection D of this section that accrues before the end of the limitations period under this section.

F. This section shall not extend the limitations period within which a products liability action involving the product may be commenced under any other law.

G. This section applies only to the sale and not to the lease of a product.

H. This section shall not apply to any claim to which the General Aviation Revitalization Act of 1994 (Pub. L. No. 103-298),

108 Stat. 1552 (1994), 49 U.S.C., Section 40101 or its exceptions are applicable.

SECTION 3. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 144 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. If the court, upon motion by a party, finds that in the interest of justice and for the convenience of the parties a claim or action would be more properly heard in another forum, the court may decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action.

B. In determining whether to grant a motion to stay or dismiss an action pursuant to this section, the court may consider:

1. Whether an alternate forum exists in which the claim or action may be tried;

2. Whether the alternate forum provides an adequate remedy;

3. Whether maintenance of the claim in the court in which the case is filed would work a substantial injustice to the moving party;

4. Whether the alternate forum can exercise jurisdiction over all the defendants properly joined in the claim of the plaintiff;

5. Whether the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum; and

6. Whether the stay or dismissal would prevent unreasonable duplication or proliferation of litigation.

SECTION 4. AMENDATORY 12 O.S. 2001, Section 993, is amended to read as follows:

Section 993. A. When an order:

1. Discharges, vacates, or modifies or refuses to discharge, vacate, or modify an attachment;

2. Denies a temporary or permanent injunction, grants a temporary or permanent injunction except where granted at an ex

parte hearing, or discharges, vacates, or modifies or refuses to discharge, vacate, or modify a temporary or permanent injunction;

3. Discharges, vacates, or modifies or refuses to discharge, vacate, or modify a provisional remedy which affects the substantial rights of a party;

4. Appoints a receiver except where the receiver was appointed at an ex parte hearing, refuses to appoint a receiver, or vacates or refuses to vacate the appointment of a receiver;

5. Directs the payment of money pendente lite except where granted at an ex parte hearing, refuses to direct the payment of money pendente lite, or vacates or refuses to vacate an order directing the payment of money pendente lite;

6. Certifies or refuses to certify an action to be maintained as a class action; ~~or~~

7. Denies a motion asserting lack of jurisdiction because an agency of this state has exclusive or primary jurisdiction of the action or a part of the action, or asserting that a party has failed to exhaust administrative remedies; or

8. Grants a new trial or opens or vacates a judgment or order, the party aggrieved thereby may appeal the order to the Supreme Court without awaiting the final determination in said cause, by filing the petition in error and the record on appeal with the Supreme Court within thirty (30) days after the order prepared in conformance with Section 696.3 of this title, is filed with the court clerk. If the appellant did not prepare the order, and Section 696.2 of this title required a copy of the order to be mailed to the appellant, and the court records do not reflect the mailing of a copy of the order to the appellant within three (3) days, exclusive of weekends and holidays, after the filing of the order, the petition in error may be filed within thirty (30) days after the earliest date on which the court records show that a copy

of the order was mailed to the appellant. The Supreme Court may extend the time for filing the record upon good cause shown.

B. If the order discharges or modifies an attachment or temporary injunction and it becomes operative, the undertaking given upon the allowance of an attachment or temporary injunction shall stay the enforcement of said order and remain in full force until final order of discharge shall take effect.

C. Where a receiver shall be or has been appointed, upon the appellant filing an appeal bond, with sufficient sureties, in such sum as may have been required of the receiver by the court or a judge thereof, conditioned for the due prosecution of the appeal and the payment of all costs or damages that may accrue to the state or any officer or person by reason thereof, the authority of the receiver shall be suspended until the final determination of the appeal, and if the receiver has taken possession of any property, real or personal, it shall be returned and surrendered to the appellant upon the filing and approval of the bonds.

D. During the pendency of an appeal pursuant to paragraph 6 or 7 of subsection A of this section, the action in the trial court shall be stayed in all respects. Following adjudication on appeal pursuant to paragraph 6 of subsection A of this section, if the class is not certified, the stay in the trial court shall automatically dissolve and the trial court may proceed to adjudicate any remaining individual claims or defenses. If after such appeal, the class is to be certified, the stay shall dissolve and the trial court shall proceed with adjudication on the merits; provided, the trial court shall at all times prior to entry of a final order retain jurisdiction to revisit the certification issues, upon motion of a party, and to order decertification of the class if during the litigation of the case it becomes evident to the court that the action is no longer reasonably maintainable as a class action.

SECTION 5. AMENDATORY 12 O.S. 2001, Section 1101, is amended to read as follows:

Section 1101. The defendant, in an action for the recovery of money only, may, at any time before the trial, serve upon the plaintiff or ~~his~~ <u>the</u> attorney <u>for the plaintiff</u> an offer, in writing, to allow judgment to be taken against ~~him~~ <u>the defendant</u> for the sum specified therein. If the plaintiff accept the offer and give notice thereof to the defendant or ~~his~~ <u>the</u> attorney <u>for the defendant</u>, within five <u>(5)</u> days after the offer was served, the offer, and an affidavit that the notice of acceptance was delivered within the time limited, may be filed by the plaintiff, or the defendant may file the acceptance, with a copy of the offer, verified by affidavit; and in either case, the offer and acceptance shall be noted in the journal, and judgment shall be rendered accordingly. If the notice of acceptance be not given in the period limited, the offer shall be deemed withdrawn, and shall not be given in evidence or mentioned on the trial. If the plaintiff fails to obtain judgment for more than was offered by the defendant, ~~he~~ <u>the plaintiff</u> shall pay the defendant's costs from the time of the offer.

SECTION 6. AMENDATORY 12 O.S. 2001, Section 1102, is amended to read as follows:

Section 1102. The making of an offer, pursuant to the provisions contained in ~~the foregoing section~~ <u>Sections 1101 and 1101.1 of this title</u>, shall not be a cause for a continuance of an action or a postponement of the trial.

SECTION 7. AMENDATORY 12 O.S. 2001, Section 2023, is amended to read as follows:

Section 2023.

CLASS ACTIONS

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

1. The prosecution of separate actions by or against individual members of the class would create a risk of:

   a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

   b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to

other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,

b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,

c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and

d. the difficulties likely to be encountered in the management of a class action.

C. CLASS ACTIONS INVOLVING JURISDICTION OF STATE AGENCY; STATE AGENCY WITH EXCLUSIVE OR PRIMARY JURISDICTION. Before hearing or deciding a motion to certify a class action, the court shall hear and rule on all pending motions asserting lack of jurisdiction because an agency of this state has exclusive or primary jurisdiction of the action or a part of the action, or asserting that a party has failed to exhaust administrative remedies. The ruling of the court shall be reflected in a written order. If a motion provided for in this subsection is denied and a class is subsequently certified, a person may obtain appellate review of the order denying the motion as part of an appeal of the order certifying the class action.

D. DETERMINATION BY ORDER WHETHER CLASS ACTION TO BE MAINTAINED; NOTICE; JUDGMENT; ACTIONS CONDUCTED PARTIALLY AS CLASS ACTIONS.

1. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subsection

may be conditional, and may be altered or amended before the decision on the merits.

2. In any class action maintained under paragraph 3 of subsection B of this section, the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that:

a. the court will exclude him from the class if he so requests by a specified date,

b. the judgment, whether favorable or not, will include all members who do not request exclusion, and

c. any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

Where the class contains more than five hundred (500) members who can be identified through reasonable effort, it shall not be necessary to direct individual notice to more than five hundred (500) members, but the members to whom individual notice is not directed shall be given notice in such manner as the court shall direct, which may include publishing notice in newspapers, magazines, trade journals or other publications, posting it in appropriate places, and taking other steps that are reasonably calculated to bring the notice to the attention of such members, provided that the cost of giving such notice shall be reasonable in view of the amounts that may be recovered by the class members who are being notified. Members to whom individual notice was not directed may request exclusion from the class at any time before the issue of liability is determined, and commencing an individual action before the issue of liability is determined shall be the equivalent of requesting exclusion from the class.

3. The judgment in an action maintained as a class action under ~~paragraphs~~ paragraph 1 or 2 of subsection B of this section, whether

or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under paragraph 3 of subsection B of this section, whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in paragraph 2 of <u>this</u> subsection ~~C of this section~~ was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

4. When appropriate:

a. an action may be brought or maintained as a class action with respect to particular issues, or

b. a class may be divided into subclasses and each subclass treated as a class.

The provisions of this section shall then be construed and applied accordingly.

~~D.~~ <u>E.</u> ORDERS IN CONDUCT OF ACTIONS. In the conduct of actions to which this section applies, the court may make appropriate orders:

1. Determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument;

2. Requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;

3. Imposing conditions on the representative parties or on intervenors;

4. Requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; and

5. Dealing with similar procedural matters.

The orders may be combined with an order under Section ~~16~~ 2016 of this ~~act~~ title and may be altered or amended as may be desirable from time to time.

~~E.~~ F. DISMISSAL OR COMPROMISE. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

SECTION 8. AMENDATORY 12 O.S. 2001, Section 2702, is amended to read as follows:

Section 2702. A. If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise, if:

1. The testimony is based upon sufficient facts or data;

2. The testimony is the product of reliable principles and methods; and

3. The witness has applied the principles and methods reliably to the facts of the case.

B. Preliminary questions concerning the admissibility of expert testimony pursuant to subsection A of this section shall be determined by the court prior to the introduction of such evidence. The court shall act as "gatekeeper" to determine the admissibility of expert testimony and shall exclude from evidence testimony that does not satisfy the requirements of subsection A of this section.

C. This section shall be interpreted in a manner consistent with Federal Rule of Evidence 702 and the case law applicable thereto.

SECTION 9. AMENDATORY 23 O.S. 2001, Section 9.1, as amended by Section 1, Chapter 462, O.S.L. 2002 (23 O.S. Supp. 2005, Section 9.1), is amended to read as follows:

Section 9.1 A. In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, award punitive damages for the sake of example and by way of punishing the defendant based upon the following factors:

1. The seriousness of the hazard to the public arising from the defendant's misconduct;

2. The profitability of the misconduct to the defendant;

3. The duration of the misconduct and any concealment of it;

4. The degree of the defendant's awareness of the hazard and of its excessiveness;

5. The attitude and conduct of the defendant upon discovery of the misconduct or hazard;

6. In the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and

7. The financial condition of the defendant.

B. Category I. Where the jury finds by clear and convincing evidence that:

1. The defendant has been guilty of reckless disregard for the rights of others; or

2. An insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured; the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greater of:

a. One Hundred Thousand Dollars ($100,000.00), or

b. the amount of the actual damages awarded.

Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

C. Category II. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or

2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured;

the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greatest of:

a. Five Hundred Thousand Dollars ($500,000.00),

b. twice the amount of actual damages awarded, or

c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.

The trial court shall reduce any award for punitive damages awarded pursuant to the provisions of subparagraph c of this paragraph by the amount it finds the defendant or insurer has previously paid as a result of all punitive damage verdicts entered in any court of this state for the same conduct by the defendant or insurer. Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

D. Category III. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or

2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured; and the

court finds, on the record and out of the presence of the jury, that there is evidence beyond a reasonable doubt that the defendant or insurer acted intentionally and with malice and engaged in conduct life-threatening to humans, the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in any amount the jury deems appropriate, without regard to the limitations set forth in subsections B and C of this section. Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

E. In determining the amount, if any, of punitive damages to be awarded under either subsection B, C or D of this section, the jury shall make the award based upon the factors set forth in subsection A of this section.

F. Punitive damages shall be awarded only if the jury is unanimous in regard to finding liability for punitive damages.

G. The provisions of this section are severable, and if any part or provision thereof shall be held void, the decision of the court shall not affect or impair any of the remaining parts or provisions thereof.

~~G. This~~ H. The provisions of this section, except subsection F of this section, shall apply to all civil actions filed after ~~the effective date of this act~~ August 25, 1995.

I. The provisions of subsection F of this section shall apply to all civil actions filed on or after November 1, 2006.

SECTION 10. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 9.2 of Title 23, unless there is created a duplication in numbering, reads as follows:

A. As used in this section:

1. "Future damages" means damages that are incurred after the date of judgment for:

a. medical, health care, or custodial care services,

b. physical pain and mental anguish, disfigurement, or physical impairment,

c. loss of consortium, companionship, or society, or

d. loss of earnings;

2. "Future loss of earnings" means the following losses incurred after the date of the judgment:

a. loss of income, wages, or earning capacity and other pecuniary losses, and

b. loss of inheritance; and

3. "Periodic payments" means the payment of money or its equivalent to the recipient of future damages at defined intervals.

B. This section applies only to an action in which the present value of the award of future damages, as determined by the court, equals or exceeds One Hundred Thousand Dollars ($100,000.00).

C. At the request of a defendant or a plaintiff, the court shall order that medical, health care, or custodial services awarded in an action be paid in whole or in part in periodic payments rather than by a lump-sum payment.

D. At the request of a defendant or a plaintiff, the court may order that future damages other than medical, health care, or custodial services awarded in a health care liability claim be paid in whole or in part in periodic payments rather than by a lump-sum payment.

E. The court shall make a specific finding of the dollar amount of periodic payments that will compensate the plaintiff for the future damages.

F. The court shall specify in its judgment ordering the payment of future damages by periodic payments the:

1. Recipient of the payments;

2. Dollar amount of the payments;

3. Interval between payments; and

4. Number of payments or the period of time over which payments must be made.

G. The entry of an order for the payment of future damages by periodic payments constitutes a release of the health care liability claim filed by the plaintiff.

H. As a condition to authorizing periodic payments of future damages, the court shall require a defendant who is not adequately insured to provide evidence of financial responsibility in an amount adequate to assure full payment of damages awarded by the judgment.

I. The judgment must provide for payments to be funded by:

1. An annuity contract issued by a company licensed to do business as an insurance company, including an assignment within the meaning of Section 130, Internal Revenue Code of 1986, as amended;

2. An obligation of the United States;

3. Applicable and collectible liability insurance from one or more qualified insurers; or

4. Any other satisfactory form of funding approved by the court.

J. On termination of periodic payments of future damages, the court shall order the return of the security, or as much as remains, to the defendant.

K. On the death of the recipient, money damages awarded for loss of future earnings continue to be paid to the estate of the recipient of the award without reduction. Following the satisfaction or termination of any obligations specified in the judgment for periodic payments, any obligation of the defendant health care provider to make further payments ends and any security given reverts to the defendant.

L. For purposes of computing the award of attorney fees when the plaintiff is awarded a recovery that will be paid in periodic payments, the court shall place a total value on the payments based

on the plaintiff's projected life expectancy and reduce the amount to present value.

SECTION 11. AMENDATORY 23 O.S. 2001, Section 61, is amended to read as follows:

Section 61. A. For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by ~~this chapter~~ law, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.

B. Except as provided in subsection C of this section, for the breach of an obligation not arising from contract, if the plaintiff receives compensation for the injuries or harm that gave rise to the cause of action from a source wholly independent of the defendant, such fact may be admitted into evidence and the amount may be deducted from the amount of damages that the plaintiff recovers from the defendant.

C. The provisions of subsection B of this section shall not apply if the defendant, with specific intent to do harm to others, committed a crime and, in doing so, proximately caused the damages legally recoverable by the plaintiff.

SECTION 12. AMENDATORY 23 O.S. 2001, Section 103, is amended to read as follows:

Section 103. In any action ~~for damages for personal injury except injury resulting in death, or in any action for damages to personal rights~~ not arising out of contract, the court shall, upon granting a motion to dismiss an action or a motion for summary judgment or subsequent to adjudication on the merits ~~and upon motion of the prevailing party~~, determine whether a claim or defense asserted in the action by a nonprevailing party was frivolous. As used in this section "frivolous" means the action was asserted in bad faith, was without merit, was not well grounded in fact, or was unwarranted by existing law or a good faith argument for the

extension, modification, or reversal of existing law. Upon so finding, the court shall enter a judgment ordering such nonprevailing party to reimburse the prevailing party ~~an amount not to exceed Ten Thousand Dollars ($10,000.00)~~ for reasonable costs, including attorneys fees, incurred with respect to such claim or defense. <u>In addition, the court may impose any sanction authorized by Section 2011 of Title 12 of the Oklahoma Statutes.</u>

SECTION 13. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6822 of Title 36, unless there is created a duplication in numbering, reads as follows:

A. Within sixty (60) days after receipt by a medical professional liability insurer of properly executed proof of liability, the claimant shall be advised of the acceptance or denial of the claim by the insurer, or if further investigation is necessary. No medical professional liability insurer shall deny a claim because of a specific policy provision, condition, or exclusion unless reference to such provision, condition, or exclusion is included in the denial. A denial shall be given to any claimant in writing, and the claim file of the medical professional liability insurer shall contain a copy of the denial. If there is a reasonable basis supported by specific information available for review by the Insurance Commissioner that the claimant has fraudulently caused or contributed to the loss, a medical professional liability insurer shall be relieved from the requirements of this subsection. In the event of a weather-related catastrophe or a major natural disaster, as declared by the Governor, the Insurance Commissioner may extend the deadline imposed under this subsection an additional twenty (20) days.

B. If a claim is denied for reasons other than those described in subsection A of this section, and is made by any other means than writing, an appropriate notation shall be made in the claim file of

the medical professional liability insurer until such time as a written confirmation can be made.

C. Every medical professional liability insurer shall complete investigation of a claim within sixty (60) days after notification of proof of loss unless such investigation cannot reasonably be completed within such time. If such investigation cannot be completed, or if a medical professional liability insurer needs more time to determine whether a claim should be accepted or denied, it shall so notify the claimant within sixty (60) days after receipt of the proof of loss, giving reasons why more time is needed. If the investigation remains incomplete, a medical professional liability insurer shall, within sixty (60) days from the date of the initial notification, send to such claimant a letter setting forth the reasons additional time is needed for investigation. Except for an investigation of possible fraud or arson which is supported by specific information giving a reasonable basis for the investigation, the time for investigation shall not exceed one hundred twenty (120) days after receipt of proof of loss. Provided, in the event of a weather-related catastrophe or a major natural disaster, as declared by the Governor, the Insurance Commissioner may extend this deadline for investigation an additional twenty (20) days.

D. Insurers shall not fail to settle claims on the basis that responsibility for payment should be assumed by others except as may otherwise be provided by policy provisions.

E. Insurers shall not continue or delay negotiations for settlement of a claim directly with a claimant who is neither an attorney nor represented by an attorney, for a length of time which causes the rights of the claimant to be affected by a statute of limitations, or a policy or contract time limit, without giving the claimant written notice that the time limit is expiring and may affect the claimant's rights. Such notice shall be given to first-

party claimants thirty (30) days, and to third-party claimants sixty (60) days, before the date on which such time limit may expire.

F. No insurer shall make statements which indicate that the rights of a third-party claimant may be impaired if a form or release is not completed within a given period of time unless the statement is given for the purpose of notifying a third-party claimant of the provision of a statute of limitations.

G. If a lawsuit on the claim is initiated, the time limits provided for in this section shall not apply.

SECTION 14. AMENDATORY Section 4, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2005, Section 1-1708.1D), is amended to read as follows:

Section 1-1708.1D A. In every medical liability action, the court shall admit evidence of payments of medical bills made to the injured party, unless the court makes the finding described in paragraph B of this section.

B. In any medical liability action, upon application of a party, the court shall make a determination whether amounts claimed by a health care provider to be a payment of medical bills from a collateral source is subject to <u>a formal, asserted claim of</u> subrogation or other right of recovery. If the court makes a determination that any such payment is subject to <u>a formal, asserted claim of</u> subrogation or other right of recovery, evidence of the payment from the collateral source and subject to subrogation or other right of recovery shall not be admitted.

<u>C. Any person or entity that would otherwise be entitled to make a subrogation or other type of recovery claim, but fails to do so in a written, formal asserted claim by the final pretrial conference in any medical liability action, shall be deemed to have waived the claim and shall be barred from recovery on the claim.</u>

SECTION 15. AMENDATORY Section 5, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2005, Section 1-1708.1E), is amended to read as follows:

Section 1-1708.1E A. 1. In any medical liability action, a person asserting a health care liability claim or an authorized agent of the person shall give written notice of the claim by certified mail, return receipt requested, to each health care provider against whom such claim is being made at least sixty (60) days before the filing of the medical liability action.

2. If the plaintiff fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.

3. The notice shall require the health care provider to preserve all evidence related to the events set forth in the notice, including pathology and radiology, or other medical evidence, whether or not contained in the medical chart of the patient, electronic evidence, including e-mails, paper-tracking data, and medical information, whether or not contained in the medical record.

4. The sixty-day notice period set forth in paragraph 1 of this subsection shall cause a tolling of the statute of limitations for an equal period of sixty (60) days.

B. 1. In any medical liability action, except as provided in subsection ~~B~~ C of this section, the plaintiff shall attach to the petition an affidavit attesting that:

a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,

b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the expert's determination that, based upon a review of the available medical records, facts or other relevant material, a reasonable

interpretation of the facts supports a finding that the acts or omissions of the health care provider against whom the action is brought constituted professional negligence, and

c. on the basis of the qualified expert's review and consultation, the plaintiff has concluded that the claim is meritorious and based on good cause.

2. In any medical liability action, except as provided in subsection C of this section, the defendant shall attach to the answer, if denying the claim by the plaintiff or if pleading affirmative defenses, an affidavit attesting that:

a. the defendant has consulted and reviewed the facts of the claim with a qualified expert,

b. the defendant has obtained a written opinion from a qualified expert that clearly identifies the claimant and includes a determination by the expert that, based upon a review of the medical records, facts, or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the health care provider against whom the claim is brought did not constitute professional negligence, and

c. on the basis of the review and consultation by the qualified expert, the denial of the claims and the assertion of affirmative defenses are supported by the evidence and based on good cause.

~~2.~~ 3. If a medical liability action is filed:

a. without an affidavit being attached to the petition, as required in paragraph 1 of this subsection, and

b. no extension of time is subsequently granted by the court, pursuant to subsection ~~B~~ C of this section,

the court shall, upon motion of the defendant, dismiss the action without prejudice to its refiling.

4. In a medical liability action if an answer is filed without an affidavit being attached and no extension of time is subsequently granted as provided in subsection C of this section, the court may, if it is in the interest of justice, upon motion of the plaintiff, strike all affirmative defenses raised in the answer.

~~3.~~ 5. The written opinion from the qualified expert for the claimant shall state the acts or omissions of the defendant(s) that the expert then believes constituted professional negligence and shall include reasons explaining why the acts or omissions constituted professional negligence. The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.

6. The written opinion from the qualified expert for the defendant shall state the acts and omissions that the expert believes did not constitute professional negligence and shall include reasons why the claim is denied and explaining the basis for each affirmative defense including why the adverse outcome is not caused by the acts or omissions of the health care provider. The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.

~~B.~~ C. 1. The court may, upon application of ~~the plaintiff~~ either party for good cause shown, grant the plaintiff an extension of time, not exceeding ninety (90) days after the date the petition is filed, except for good cause shown, to file in the action an affidavit attesting that the ~~plaintiff~~ party has obtained a written opinion from a qualified expert as described in paragraph 1 of subsection ~~A~~ B of this section.

2. If on the expiration of an extension period described in paragraph 1 of this subsection, ~~the plaintiff~~ either party has failed to file in the action an affidavit as described above, the court shall, upon motion of the ~~defendant~~ other party, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.

~~C.~~ D. 1. Upon written request of ~~any defendant~~ either party in a medical liability action, the ~~plaintiff~~ other party shall, within ten (10) business days after receipt of such request, provide the ~~defendant~~ other party with:

a. a copy of the written opinion of a qualified expert mentioned in an affidavit filed pursuant to subsection ~~A~~ B or ~~B~~ C of this section, and

b. in the case of a request by the defendant, an authorization from the plaintiff in a form that complies with applicable state and federal laws, including the Health Insurance Portability and Accountability Act of 1996, for the release of any and all medical records, excluding psychiatric records, related to the plaintiff for a period commencing five (5) years prior to the incident that is at issue in the medical liability action.

2. If the plaintiff fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.

SECTION 16. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1E-1 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. In a medical liability action, a plaintiff shall, not later than one hundred twenty (120) days after the date the action was filed, serve on each party or the party's attorney one or more

expert reports, with a curriculum vitae of each expert listed in the report for each health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each party whose conduct is implicated in a report shall file and serve any objection to the sufficiency of the report not later than twenty-one (21) days after the date a report was served, or all objections are waived.

B. If, as to any defendant, an expert report has not been served within the period specified by subsection A of this section, the court, on the motion of the defendant, may, subject to subsection C of this section, enter an order that:

1. Awards to the affected health care provider reasonable attorney fees and costs of court incurred by the defendant; and

2. Dismisses the claim with respect to the defendant, without prejudice to the refiling of the claim.

C. If an expert report has not been served within the period specified by subsection A of this section or is found to be deficient, the court may grant one thirty-day extension to the plaintiff in order to serve the expert report or cure the deficiency.

D. A plaintiff may satisfy any requirement of this section for serving an expert report by serving reports of separate experts regarding different health care providers or regarding different issues arising from the conduct of a health care provider, such as issues of liability and causation. Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all health care providers or with respect to both liability and causation issues for a health care provider.

E. Nothing in this section shall be construed to require the serving of an expert report regarding any issue other than an issue relating to liability or causation.

F. Subject to subsection J of this section, an expert report served under this section:

1. Is not admissible in evidence by any party;

2. Shall not be used in a deposition, trial, or other proceeding; and

3. Shall not be referred to by any party during the course of the action for any purpose.

G. A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report provided in subsection H of this section.

H. "Expert report" means a written report by an expert that provides a fair summary of the opinions of the expert as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

I. Until a plaintiff has served the expert report and curriculum vitae as required by subsection A of this section, all discovery in a health care liability claim is stayed except for the acquisition by the plaintiff of information, including medical or hospital records or other documents or tangible things, related to the patient's health care and the standard sets of interrogatories and requests for production as provided for in Section 17 of this act.

J. If an expert report is used by the plaintiff in the course of the action for any purpose other than to meet the service requirement of subsection A of this section, the restrictions imposed by subsection F of this section on use of the expert report by any party are waived.

SECTION 17. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1E-2 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. In every medical liability action, the plaintiff shall within forty-five (45) days after the date of filing of the original petition serve on the defendant's attorney or, if no attorney has appeared for the defendant, on the defendant, full and complete answers to the appropriate standard set of interrogatories and full and complete responses to the appropriate standard set of requests for production of documents and things promulgated by the Health Care Discovery Panel, established by subsection I of this section.

B. Every health care provider who is a defendant in a health care liability claim shall within forty-five (45) days after the date on which an answer to the petition was due serve on the plaintiff's attorney or, if the plaintiff is not represented by an attorney, on the plaintiff, full and complete answers to the appropriate standard set of interrogatories and complete responses to the standard set of requests for production of documents and things promulgated by the Health Care Discovery Panel.

C. Except on motion and for good cause shown, no objection may be asserted regarding any standard interrogatory or request for production of documents and other items, but no response shall be required if a particular interrogatory or request is clearly inapplicable under the circumstances of the case.

D. Failure to file full and complete answers and responses to standard interrogatories and requests for production of documents and other items in accordance with subsections A and B of this section or the making of a groundless objection under subsection C of this section shall be grounds for sanctions by the court in accordance with Section 3237 of Title 12 of the Oklahoma Statutes.

E. The time limits imposed under subsections A and B of this section may be extended by the court on the motion of a responding

party for good cause shown and shall be extended if agreed in writing between the responding party and all opposing parties. In no event shall an extension be for a period of more than an additional thirty (30) days.

F. If a party is added by an amended pleading, intervention, or otherwise, the new party shall file full and complete answers to the appropriate standard set of interrogatories and full and complete responses to the standard set of requests for production of documents and things no later than forty-five (45) days after the date of filing of the pleading by which the party first appeared in the action.

G. If information or documents required to provide full and complete answers and responses as required by this section are not in the possession of the responding party or attorney when the answers or responses are filed, the party shall supplement the answers and responses.

H. Nothing in this section shall preclude any party from taking additional nonduplicative discovery of any other party. The standard sets of interrogatory and requests for production provided for by this section shall not limit the number of interrogatories and requests for production allowed by the Oklahoma Discovery Code.

I. There is hereby created the Health Care Discovery Panel. The Panel shall develop standard sets of interrogatories and requests for documents and other items appropriate for each of the categories of plaintiffs and defendants usually involved in medical liability actions.

J. The Panel shall be composed of nine (9) members, to be appointed as follows:

1. Three attorneys licensed to practice law in this state, one physician licensed to practice medicine in this state, and one consumer advocate, to be appointed by the Governor;

2. One attorney licensed to practice law in this state and one physician licensed to practice medicine in this state, to be appointed by the Speaker of the House of Representatives; and

3. One attorney licensed to practice law in this state and one physician licensed to practice medicine in this state, to be appointed by the President Pro Tempore of the Senate.

K. Members of the Panel shall serve at the pleasure of the appointing authority. Any vacancy on the Panel shall be filled by the original appointing authority. A majority of the members present at a meeting shall constitute a quorum for the transaction of business. The Panel may elect a chair and a vice-chair. Employees of the Office of the Administrative Director of the Courts shall serve as staff for the Panel.

L. Members of the Panel shall serve without compensation but shall be entitled to reimbursement for necessary expenses pursuant to the State Travel Reimbursement Act.

M. The Panel shall submit the standard sets of interrogatories and requests for documents developed pursuant to subsection I of this section to the Supreme Court by February 1, 2007.

SECTION 18. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1F-2 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. Except as provided in subsection B of this section, in any civil action brought against a hospital or hospital system, or its employees, officers, directors, or volunteers, for damages based on an act or omission by the hospital or hospital system, or its employees, officers, directors, or volunteers, the liability of the hospital or hospital system is limited to money damages in a maximum amount of Five Hundred Thousand Dollars ($500,000.00) for any act or omission resulting in damage or injury to a patient if the patient or, if the patient is a minor or is otherwise legally incompetent,

the person responsible for the patient, signs a written statement that acknowledges:

1. That the hospital is providing care that is not administered for or in expectation of compensation; and

2. The limitations on the recovery of damages from the hospital in exchange for receiving the health care services.

B. This section shall not apply to wrongful death actions or to an act or omission that is the result of gross negligence or willful or wanton misconduct.

SECTION 19. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1J of Title 63, unless there is created a duplication in numbering, reads as follows:

A. If the plaintiff in a medical liability action has settled with one or more persons, the court shall reduce the amount of damages to be recovered by the plaintiff with respect to a cause of action by an amount equal to one of the following, as elected by the defendant:

1. The sum of the dollar amounts of all settlements; or

2. A percentage equal to each settling person's percentage of responsibility as found by the trier of fact.

B. An election made under subsection A of this section shall be made by any defendant filing a written election before the issues of the action are submitted to the trier of fact and, when made, shall be binding on all defendants. If no defendant makes this election or if conflicting elections are made, all defendants are considered to have elected the option provided for in paragraph 1 of subsection A of this section.

SECTION 20. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1K of Title 63, unless there is created a duplication in numbering, reads as follows:

A. In an action for damages that involves a claim of negligence arising from the provision of emergency medical care in a hospital

emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department, the court shall instruct the jury to consider, together with all other relevant matters:

1. Whether the person providing care did or did not have the patient's medical history or was able or unable to obtain a full medical history, including the knowledge of preexisting medical conditions, allergies, and medications;

2. The presence or lack of a preexisting physician-patient relationship or health care provider-patient relationship;

3. The circumstances constituting the emergency; and

4. The circumstances surrounding the delivery of the emergency medical care.

B. The provisions of subsection A of this section shall not apply to medical care or treatment:

1. That occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient;

2. That is unrelated to the original medical emergency; or

3. That is related to an emergency caused in whole or in part by the negligence of the defendant.

C. The provisions of this section shall apply to all actions filed on or after November 1, 2006.

SECTION 21. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1L of Title 63, unless there is created a duplication in numbering, reads as follows:

A. The court shall apply the criteria specified in subsection B of this section in determining whether an expert is qualified to offer expert testimony on the issue of whether the defendant health care provider departed from accepted standards of health care but may depart from those criteria if, under the circumstances, the court determines that there is good reason to admit the expert's

testimony. The court shall state on the record the reason for admitting the testimony if the court departs from the criteria.

B. In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

1. Is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

2. Is actively practicing or retired from practicing health care in an area of health care services relevant to the claim.

C. This section shall not prevent a health care provider who is a defendant, or an employee of the defendant health care provider, from qualifying as an expert.

D. A pretrial objection to the qualifications of a witness under this section shall be made not later than the later of the twenty-first day after the date the objecting party receives a copy of the witness's curriculum vitae or the twenty-first day after the date of the witness's deposition. If circumstances arise after the date on which the objection must be made that could not have been reasonably anticipated by a party before that date and that the party believes in good faith provide a basis for an objection to a witness's qualifications, and if an objection was not made previously, this subsection does not prevent the party from making an objection as soon as practicable under the circumstances. The court shall conduct a hearing to determine whether the witness is qualified as soon as practicable after the filing of an objection and, if possible, before trial. If the objecting party is unable to object in time for the hearing to be conducted before the trial, the hearing shall be conducted outside the presence of the jury. This

subsection does not prevent a party from examining or cross-examining a witness at trial about the witness's qualifications.

SECTION 22. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1M of Title 63, unless there is created a duplication in numbering, reads as follows:

A. The Oklahoma Medical Disclosure Panel is created to determine which risks and hazards related to medical care and surgical procedures must be disclosed by health care providers or physicians to their patients or persons authorized to consent for their patients and to establish the general form and substance of such disclosure.

B. The Panel shall be composed of nine (9) members to be appointed as follows:

1. Three physicians licensed to practice medicine in this state, one attorney licensed to practice law in this state and one consumer advocate to be appointed by the Governor;

2. One attorney licensed to practice law in this state and one physician licensed to practice medicine in this state to be appointed by the Speaker of the House of Representatives; and

3. One attorney licensed to practice law in this state and one physician licensed to practice medicine in this state to be appointed by the President Pro Tempore of the Senate.

C. Members of the Panel shall serve at the pleasure of the respective appointing authority. Any vacancy on the Panel shall be filled by the original appointing authority. A majority of the members present at a meeting shall constitute a quorum for the transaction of business. The Panel may elect a chair and vice-chair. Employees of the State Department of Health shall serve as staff for the Panel.

D. Members of the Panel are not entitled to compensation for their services, but shall be entitled to reimbursement of any

necessary expense incurred in the performance of duties pursuant to the State Travel Reimbursement Act.

E. 1. To the extent feasible, the Panel shall identify and make a thorough examination of all medical treatments and surgical procedures in which physicians and health care providers may be involved in order to determine which of those treatments and procedures do and do not require disclosure of the risks and hazards to the patient or person authorized to consent for the patient.

2. The Panel shall prepare separate lists of those medical treatments and surgical procedures that do and do not require disclosure and, for those treatments and procedures that do require disclosure, shall establish the degree of disclosure required and the form in which the disclosure will be made.

3. Lists prepared under this section together with written explanations of the degree and form of disclosure shall be published in the "Oklahoma Register".

F. At least annually, or at such other period as the Panel may determine from time to time, the Panel will identify and examine any new medical treatments and surgical procedures that have been developed since its last determination, shall assign them to the proper list, and shall establish the degree of disclosure required and the form in which the disclosure will be made. The Panel will also examine such treatments and procedures for the purpose of revising lists previously published. These determinations shall be published in the "Oklahoma Register".

SECTION 23. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1N of Title 63, unless there is created a duplication in numbering, reads as follows:

A. Before a patient or a person authorized to consent for a patient gives consent to any medical care or surgical procedure, the health care provider shall give written estimate of the cost of the

medical care or surgical procedure to the patient or person authorized to give consent for the patient.

B. Every health care provider shall publish and make available to the public costs for medical services and procedures that are performed by the health care provider.

SECTION 24. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-140 of Title 70, unless there is created a duplication in numbering, reads as follows:

Sections 24 through 31 of this act shall be known and may be cited as the "School Protection Act".

SECTION 25. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-141 of Title 70, unless there is created a duplication in numbering, reads as follows:

As used in the School Protection Act:

1. "Education employee" means a member of the board of education of a school district or any individual who is employed by a school as a:

a. teacher, superintendent, principal, student teacher, school nurse, or support employee as defined in Section 1-116 of Title 70 of the Oklahoma Statutes,

b. resident teacher as defined in Section 6-182 of Title 70 of the Oklahoma Statutes, or

c. substitute teacher or teacher assistant; and

2. "School" means a public school district, including charter schools, the Oklahoma School of Science and Mathematics, or a governmental entity that employs teachers as defined in Section 1-116 of Title 70 of the Oklahoma Statutes.

SECTION 26. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-142 of Title 70, unless there is created a duplication in numbering, reads as follows:

A. An education employee of a school district is not personally liable for any act that is within the scope of the duties of

employment of the employee and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which an education employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

B. This section shall not apply to the operation, use, or maintenance of any motor vehicle.

C. In addition to the immunity provided under this section and under other provisions of state law, an individual is entitled to any immunity and any other protections afforded under the Paul D. Coverdell Teacher Protection Act of 2001, 20 U.S.C., Section 6731 et seq. Nothing in this section shall be construed to limit or abridge any immunity or protection afforded an individual under state law.

D. For purposes of this section, "individual" shall include a person who provides services to private schools, to the extent provided by federal law.

SECTION 27. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-143 of Title 70, unless there is created a duplication in numbering, reads as follows:

A. Within ninety (90) days before the date a person files a suit against an education employee of a school, the person shall give written notice to the employee of the claim, reasonably describing the incident from which the claim arose.

B. An education employee of a school against whom a suit is pending who does not receive written notice, as required by subsection A of this section, may file a motion to dismiss the action within thirty (30) days after the date the person files an original answer in the court in which the suit is pending.

C. The court shall dismiss the action without prejudice if the court, after a hearing, finds that the education employee was not provided notice as required by this section.

SECTION 28. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-144 of Title 70, unless there is created a duplication in numbering, reads as follows:

A person may not file suit against an education employee of a school unless the person has exhausted the remedies provided by the school district for resolving the complaint.

SECTION 29. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-145 of Title 70, unless there is created a duplication in numbering, reads as follows:

A court in which a judicial proceeding is being brought against an education employee of a school may refer the case to an alternative dispute resolution procedure as provided by law.

SECTION 30. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-146 of Title 70, unless there is created a duplication in numbering, reads as follows:

In an action against an education employee of a school involving an act that is within the scope of duty of the employee's employment and brought against the employee in the individual capacity of the employee, the employee shall be entitled to recover attorney fees and court costs from the plaintiff if the employee is found immune from liability under the School Protection Act.

SECTION 31. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-147 of Title 70, unless there is created a duplication in numbering, reads as follows:

The School Protection Act shall be in addition to and shall not limit or amend The Governmental Tort Claims Act or any other applicable law.

SECTION 32. AMENDATORY 76 O.S. 2001, Section 18, as amended by Section 4, Chapter 462, O.S.L. 2002 (76 O.S. Supp. 2005, Section 18), is amended to read as follows:

Section 18. ~~An~~ A. Except as provided in subsection B of this section, an action for damages for injury or death against any

physician, health care provider or hospital licensed under the laws of this state, whether based in tort, breach of contract or otherwise, arising out of patient care, shall be brought within two (2) years of the date the plaintiff knew or should have known, through the exercise of reasonable diligence, of the existence of the death, injury or condition complained of; provided, however, the minority or incompetency when the cause of action arises will extend said period of limitation.

B. Any action for damages for injury or death against any physician, health care provider, or hospital licensed under the laws of this state, based in tort and arising out of patient care, shall be brought within ten (10) years after the date of the act or omission that gives rise to the claim. This subsection is intended as a statute of repose, and all actions which are not brought within ten (10) years after the act or omission giving rise to the claim are time barred.

SECTION 33. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 71 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. As used in this section:

1. "Asbestos claim" means any claim, wherever or whenever made, for damages, losses, indemnification, contribution, or other relief arising out of, based on, or in any way related to asbestos, including:

a. property damage caused by the installation, presence, or removal of asbestos,

b. the health effects of exposure to asbestos, including any claim for:

(1) personal injury or death,

(2) mental or emotional injury,

(3) risk of disease or other injury, or

(4) the costs of medical monitoring or surveillance, and

c. any claim made by or on behalf of any person exposed to asbestos, or a representative, spouse, parent, child, or other relative of the person;

2. "Corporation" means a corporation for profit, including:

a. a domestic corporation organized under the laws of this state, or

b. a foreign corporation organized under laws other than the laws of this state;

3. "Successor asbestos-related liabilities" means any liabilities, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due, that are related in any way to asbestos claims that were assumed or incurred by a corporation as a result of or in connection with a merger or consolidation, or the plan of merger or consolidation related to the merger or consolidation, with or into another corporation or that are related in any way to asbestos claims based on the exercise of control or the ownership of stock of the corporation before the merger or consolidation. The term includes liabilities that, after the time of the merger or consolidation for which the fair market value of total gross assets is determined under subsection D of this section, were or are paid or otherwise discharged, or committed to be paid or otherwise discharged, by or on behalf of the corporation, or by a successor of the corporation, or by or on behalf of a transferor, in connection with settlements, judgments, or other discharges in this state or another jurisdiction;

4. "Successor" means a corporation that assumes or incurs, or has assumed or incurred, successor asbestos-related liabilities; and

5. "Transferor" means a corporation from which successor asbestos-related liabilities are or were assumed or incurred.

B. 1. The limitations in subsection C of this section shall apply to a domestic corporation or a foreign corporation that has had a certificate of authority to transact business in this state or has done business in this state and that is a successor or which is a successor of a successor corporation, but in the latter case only to the extent of the limitation of liability applied under paragraph 2 of subsection C of this section and subject to the limitations found in this section.

2. The limitations in subsection C of this section shall not apply to:

a. workers' compensation benefits,

b. any claim against a corporation that does not constitute a successor asbestos-related liability,

c. an insurance company,

d. any obligations under the National Labor Relations Act, 29 U.S.C., Section 151 et seq., as amended, or under any collective bargaining agreement,

e. a successor that, after a merger or consolidation, continued in the business of mining asbestos or in the business of selling or distributing asbestos fibers or in the business of manufacturing, distributing, removing, or installing asbestos-containing products which were the same or substantially the same as those products previously manufactured, distributed, removed, or installed by the transferor,

f. a contractual obligation existing as of November 1, 2004, that was entered into with claimants or potential claimants or their counsel and which resolves asbestos claims or potential asbestos claims,

g. any claim made against the estate of a debtor in a bankruptcy proceeding commenced prior to November 1, 2004, under the United States Bankruptcy Code, 11

U.S.C., Section 101 et seq. by or against such debtor, or against a bankruptcy trust established under 11 U.S.C., Section 524(g) or similar provisions of the United States Code in such a bankruptcy proceeding commenced prior to such date, or

h. a cause of action for premises liability, but only if the successor owned or controlled the premises at issue after the merger or consolidation.

C. 1. Except as further limited in paragraph 2 of this subsection, the cumulative successor asbestos-related liabilities of a corporation are limited to the fair market value of the total gross assets of the transferor determined as of the time of the merger or consolidation. The corporation shall not have any responsibility for successor asbestos-related liabilities in excess of this limitation.

2. If the transferor had assumed or incurred successor asbestos-related liabilities in connection with a prior merger or consolidation with a prior transferor, the fair market value of the total assets of the prior transferor, determined as of the time of such earlier merger or consolidation, shall be substituted for the limitation set forth in paragraph 1 of this subsection for purposes of determining the limitation of liability of a corporation.

D. 1. A corporation may establish the fair market value of total gross assets for the purpose of the limitations under subsection C of this section through any method reasonable under the circumstances, including:

a. by reference to the going-concern value of the assets or to the purchase price attributable to or paid for the assets in an arm's-length transaction, or

b. in the absence of other readily available information from which fair market value can be determined, by

reference to the value of the assets recorded on a balance sheet.

2. Total gross assets include intangible assets.

3. Total gross assets include the aggregate coverage under any applicable liability insurance that was issued to the transferor whose assets are being valued for purposes of this section and which insurance has been collected or is collectable to cover successor asbestos-related liabilities, except compensation for liabilities arising from workers' exposure to asbestos solely during the course of their employment by the transferor. A settlement of a dispute concerning such insurance coverage entered into by a transferor or successor with the insurers of the transferor ten (10) years or more before the enactment of this section shall be determinative of the aggregate coverage of such liability insurance to be included in the calculation of the transferor's total gross assets.

4. The fair market value of total gross assets shall reflect no deduction for any liabilities arising from any asbestos claim.

E. 1. Except as otherwise provided in this section, the fair market value of total gross assets at the time of a merger or consolidation increases annually at a rate equal to the sum of:

a. the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year since the merger or consolidation, and

b. one percent (1%).

2. The rate provided for in paragraph 1 of this subsection shall not be compounded.

3. The adjustment of fair market value of total gross assets continues as provided under paragraph 1 of this subsection until the date the adjusted value is exceeded by the cumulative amounts of successor asbestos-related liabilities paid or committed to be paid by or on behalf of the corporation or a predecessor, or by or on behalf of a transferor, after the time of the merger or

consolidation for which the fair market value of total gross assets is determined.

4. No adjustment of the fair market value of total gross assets shall be applied to any liability insurance otherwise included in the definition of total gross assets.

SECTION 34. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 101 of Title 76, unless there is created a duplication in numbering, reads as follows:

Sections 34 through 38 of this act shall be known and may be cited as the "Product Liability Act".

SECTION 35. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 102 of Title 76, unless there is created a duplication in numbering, reads as follows:

In the Product Liability Act:

1. "Claimant" means a party seeking relief, including a plaintiff, counterclaimant, or cross-claimant;

2. "Product liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories;

3. "Seller" means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof; and

4. "Manufacturer" means a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce.

SECTION 36. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 103 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. A manufacturer shall indemnify and hold harmless a seller against loss arising out of a product liability action, except for any loss caused by the seller’s negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

B. For purposes of this section, “loss” includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.

C. Damages awarded by the trier of fact shall, on final judgment, be deemed reasonable for purposes of this section.

D. For purposes of this section, a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer’s instructions shall be considered a seller.

E. The duty to indemnify under this section:

1. Applies without regard to the manner in which the action is concluded; and

2. Is in addition to any duty to indemnify established by law, contract, or otherwise.

F. A seller eligible for indemnification under this section shall give reasonable notice to the manufacturer of a product claimed in a petition or complaint to be defective, unless the manufacturer has been served as a party or otherwise has actual notice of the action.

G. A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller’s right to indemnification under this section.

SECTION 37. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 104 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action alleging that an injury was caused by a failure to provide adequate warnings or information with regard to a pharmaceutical product, there is a rebuttable presumption that the defendant or defendants, including a health care provider, manufacturer, distributor, and prescriber, are not liable with respect to the allegations involving failure to provide adequate warnings or information if:

1. The warnings or information that accompanied the product in its distribution were those approved by the United States Food and Drug Administration for a product approved under the federal Food, Drug, and Cosmetic Act, 21 U.S.C., Section 301 et seq., as amended, or Section 351, Public Health Service Act, 43 U.S.C., Section 262, as amended; or

2. The warnings provided were those stated in monographs developed by the United States Food and Drug Administration for pharmaceutical products that may be distributed without an approved new drug application.

B. The claimant may rebut the presumption provided for in subsection A of this section as to each defendant by establishing that:

1. The defendant, before or after premarket approval or licensing of the product, withheld from or misrepresented to the United States Food and Drug Administration required information that was material and relevant to the performance of the product and was causally related to the claimant’s injury;

2. The pharmaceutical product was sold or prescribed in the United States by the defendant after the effective date of an order of the United States Food and Drug Administration to remove the product from the market or to withdraw its approval of the product;

3. a. The defendant recommended, promoted, or advertised the pharmaceutical product for an indication not approved by the United States Food and Drug Administration,

   b. The product was used as recommended, promoted, or advertised, and

   c. The claimant's injury was causally related to the recommended, promoted, or advertised use of the product;

4. a. The defendant prescribed the pharmaceutical product for an indication not approved by the United States Food and Drug Administration,

   b. The product was used as prescribed, and

   c. The claimant's injury was causally related to the prescribed use of the product; or

5. The defendant, before or after premarket approval or licensing of the product, engaged in conduct that would constitute a violation of 18 U.S.C., Section 201, and that conduct caused the warnings or instructions approved for the product by the United States Food and Drug Administration to be inadequate.

SECTION 38. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 105 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the formula, labeling, or design for the product complied with mandatory safety standards or regulations adopted and promulgated by the appropriate regulatory agency of the federal government that were applicable to the product at the time of

manufacture and that specifically related to the formula, labeling or design that directly caused harm.

B. The claimant may rebut the presumption in subsection A of this section by establishing that:

1. The mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from harm; or

2. The manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action.

C. This section does not extend to manufacturing flaws or defects even though the product manufacturer has complied with all quality control and manufacturing practices mandated by the appropriate regulatory agency of the federal government.

SECTION 39. This act shall become effective November 1, 2006.

50-2-2829 TEK 6/13/2015 8:41:04 AM

# Exhibit 6

CS for HB 1886

**THE HOUSE OF REPRESENTATIVES**
**Thursday, March 8, 2007**

## Committee Substitute for

# House Bill No. 1886

COMMITTEE SUBSTITUTE FOR HOUSE BILL NO. 1886 - By: SULLIVAN, DERBY, COOKSEY, SHANNON AND MCCULLOUGH of the House and WILLIAMSON of the Senate.

An Act relating to tort reform; providing for determination of attorney fees in class actions; requiring plaintiffs to sign representation agreements; providing method of calculating attorney fees for class action cases; providing for judicial discretion to modify the fee award; requiring attorney fees to include noncash benefits in certain circumstances; defining terms; establishing a statute of repose for product liability actions; amending Section 2, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2006, Section 130) and 12 O.S. 2001, Sections 134 and 137, which relate to venue; modifying venue for certain actions; authorizing the court to decline to exercise jurisdiction under the doctrine of forum non conveniens; providing factors that the court shall consider; providing that improper venue does not toll statute of limitations; requiring each plaintiff to establish venue in cases in which there are multiple plaintiffs; providing for interlocutory appeal; requiring certain affidavits in civil actions for professional negligence; providing consequence for noncompliance; providing for contents of written opinion of qualified expert; providing for extensions of time to file affidavits; requiring plaintiff to provide certain information to defendant; providing for dismissal of action for failure to comply; amending 12 O.S. 2001, Sections 683 and 684, as amended by Sections 3 and 4, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2005, Sections 683 and 684), which relate to dismissal; modifying procedure for and effect of dismissal without court order; amending Section 7, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2005, Section 727.1), which relates to interest on judgments; limiting applicability of prejudgment interest to actions filed prior to a certain date; amending 12 O.S. 2001, Section 832, which relates to contribution; providing for contractual or statutory right of indemnity; amending 12 O.S. 2001, Section 990.4, as last amended by Section 6, Chapter 1, O.S.L. 2005 (12 O.S. Supp. 2005, Section

990.4), which relates to stay of enforcement of judgments, decrees and final orders; providing maximum amount for bond; modifying court authority to lower amount of bond; requiring the court to enter certain orders to prevent dissipation or diversion; defining term; amending 12 O.S. 2001, Section 993, which relates to interlocutory appeals from certain orders; modifying grounds for interlocutory appeals; providing standard for making certain determination; requiring the Supreme Court to make certain determination within certain time; providing that action in the trial court is stayed in certain circumstances; amending 12 O.S. 2001, Section 1101, which relates to offer of judgment; clarifying language; amending 12 O.S. 2001, Sections 2004, as amended by Section 7, Chapter 402, O.S.L. 2002, 2008, 2009 and 2011, as amended by Section 10, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2005, Sections 2004 and 2011), which relate to the Oklahoma Pleading Code; modifying time limit for service; modifying monetary threshold for which amount of damages is not specified; limiting the amount of damages that may be recovered under certain circumstances; modifying procedure for petition for special damages; modifying definition; amending Section 1, Chapter 370, O.S.L. 2004 (12 O.S. Supp. 2005, Section 2011.1), which relates to frivolous claims or defenses; modifying definition; providing for pretrial conferences; providing monetary requirement; limiting amount of damages that may be recovered; providing for certain remittance; amending 12 O.S. 2001, Section 2023, which relates to class actions; requiring the court to hear and rule on certain motions before making a determination on certifying a class; providing effect of interlocutory appeal in certain circumstances; requiring potential class members to request inclusion in the class; providing procedure for summary judgment; providing that evidence of remarriage or social position of a surviving spouse is admissible in wrongful death actions; amending 12 O.S. 2001, Section 2702, which relates to testimony by experts; providing requirements for lay and expert testimony; providing role of the court; providing for interpretation; providing severability; providing cases to which provisions apply; amending 12 O.S. 2001, Section 3226, as last amended by Section 3, Chapter 519, O.S.L. 2004 (12 O.S. Supp. 2005, Section 3226), which relates to discovery; eliminating requirement that a party produce certain agreement; requiring certain disclosures prior to discovery request; providing legislative intent in construing the Consumer Protection Act; amending 15 O.S. 2001, Sections 754 and 761.1, which relate to liability under the Consumer Protection Act; modifying exclusions from the Consumer Protection Act; requiring actual damages incurred by person bringing private action;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

amending 23 O.S. 2001, Section 9.1, as amended by Section 1, Chapter 462, O.S.L. 2002 (23 O.S. Supp. 2005, Section 9.1), which relates to punitive damages; modifying factors to be considered in awarding punitive damages; requiring presentation of prima facie evidence for punitive damages claims prior to certain discovery; prohibiting punitive damages in product liability actions under certain conditions; providing restrictions and procedures for punitive damages in medical liability actions; amending Section 18, Chapter 368, O.S.L. 2004 (23 O.S. Supp. 2005, Section 15), which relates to joint and several liability; modifying exceptions to severability; providing exception; providing for reduction of damages if the plaintiff has settled with one or more persons; requiring certain written notice in medical liability actions; amending 23 O.S. 2001, Section 61, which relates to the measure of damages for the breach of obligations not arising from contract; providing that compensation from collateral sources shall be admitted into evidence and may be deducted from damages awarded; providing proof of certain losses must be in the form of a net loss after reduction for income tax payments or unpaid tax liability; providing limits of liability for noneconomic damages for certain actions; defining term; amending 47 O.S. 2001, Section 11-1112, as last amended by Section 1, Chapter 361, O.S.L. 2005 (47 O.S. Supp. 2006, Section 11-1112), which relates to child passenger restraint systems; eliminating prohibitions against admissibility of certain evidence in civil actions; amending 47 O.S. 2001, Section 12-420, which relates to use of seat belts; making evidence of use or nonuse of seat belts admissible evidence; amending 47 O.S. 2001, Section 230.30, which relates to liability and cargo insurance or bond; providing when certain actions may be maintained; prohibiting certain actions; amending Sections 4 and 7, Chapter 390, O.S.L. 2003 and Section 24, Chapter 368, O.S.L. 2004 (63 O.S. Supp. 2005, Sections 1-1708.1D, 1-1708.1G and 1-1708.1I), which relate to the Affordable Access to Health Care Act; requiring receipt of compensation for injury be admitted into evidence for certain purposes; limiting recovery for payment of medical bills; removing courts right to make certain determination; providing limits of liability in certain civil actions against hospitals, hospital systems and certain persons, with exceptions; requiring written acknowledgment; limiting applicability of prejudgment interest to medical liability actions filed prior to a certain date; mandating certain qualifications for expert witnesses; modifying criteria for determining if an expert is qualified to offer expert testimony; defining terms; providing for payment of future losses in medical liability actions; amending 63 O.S. 2001, Section 1-1709.1, as last amended by Section 2, Chapter 558,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

O.S.L. 2004 (63 O.S. Supp. 2005, Section 1-1709.1), which relates to peer review information; providing that certain information, recommendations and actions are not subject to discovery; amending 76 O.S. 2001, Section 18, as amended by Section 4, Chapter 462, O.S.L. 2002 (76 O.S. Supp. 2006, Section 18), which relates to a statute of limitations for certain actions; establishing a statute of repose for certain actions; amending 76 O.S. 2001, Section 25, which relates to professional review bodies; providing that certain information is not subject to discovery; prohibiting testimony by certain persons; amending 76 O.S. 2001, Section 31 and Section 34, Chapter 368, O.S.L. 2004 (76 O.S. Supp. 2005, Section 32), which relate to civil immunity for volunteers, charitable organizations, not-for-profit corporations and volunteer medical professionals; modifying definition; expanding immunity for volunteer medical professionals; creating the Common Sense Consumption Act; providing short title; stating legislative intent; defining terms; providing immunity from civil liability for certain claims; providing exception; providing pleading requirements; providing for stay of discovery and other proceedings in certain circumstances; providing scope of claims covered; creating the Product Liability Act; providing short title; defining terms; providing that a manufacturer or seller shall not be liable for inherently unsafe products; providing procedures and requirements in actions alleging design defect; providing elements a claimant must prove in certain actions against manufacturers or sellers of firearms or ammunition; limiting liability of nonmanufacturing sellers; providing rebuttable presumption in actions relating to pharmaceutical products; providing rebuttable presumption concerning compliance with government standards; defining term; making evidence regarding measures taken after injury inadmissible; requiring filing of certain affidavit and procedures therefor; creating the Asbestos and Silica Claims Priorities Act; providing legislative findings; stating purposes; defining terms; providing elements of proof and proceedings for asbestos or silica claims; providing that certain evidence does not create a presumption; providing that certain evidence is inadmissible; providing for discovery; providing for consolidation of claims; authorizing the court to decline to exercise jurisdiction in certain circumstances; providing for venue; providing a statute of limitations; establishing two-disease rule; providing scope of applicability of the Asbestos and Silica Claims Priorities Act; providing procedure and certain requirement for civil actions for professional negligence; repealing Section 9, Chapter 150, O.S.L. 2004 (12 O.S. Supp. 2006, Section 150), which relates to summons in medical liability actions; repealing Section 8, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2005,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

Section 832.1), which relates to indemnification product liability actions; repealing 23 O.S. 2001, Section 103, which relates to personal injury actions asserted in bad faith; repealing Section 6, Chapter 390, O.S.L. 2003, as amended by Section 21, Chapter 368, O.S.L. 2004, and Section 22, Chapter 368, O.S.L. 2004 (63 O.S. Supp. 2005, Sections 1-1708.1F and 1-1708.1F-1), which relate to limits on noneconomic damages in medical liability actions; providing for codification; and providing an effective date.

BE IT ENACTED BY THE PEOPLE OF THE STATE OF OKLAHOMA:

SECTION 1. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 7.2 of Title 5, unless there is created a duplication in numbering, reads as follows:

A. In class actions, if an award of attorney fees is available, the trial court shall use the Lodestar Rule to calculate the amount of fees to be awarded to class counsel. The court may increase or decrease the fee award calculated by using the Lodestar method by no more than three times based on specified factors in subsection C of this section.

B. If any portion of the benefits recovered for the class are in the form of coupons or other noncash common benefits, the attorney fees awarded in the class action shall be in cash and noncash amounts in the same proportion as the recovery for the class.

C. As used in this section, “Lodestar Rule” means the number of hours reasonably expended multiplied by the prevailing hourly rate in the community and then adjusted for other factors. In arriving at just compensation, the court shall consider the following factors:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

1. Time and labor required;

2. The novelty and difficulty of the case;

3. The skill required to perform the legal service properly;

4. The preclusion of other employment by the attorney due to acceptance of the case;

5. The customary fee;

6. Time limitations imposed by the client or the circumstances;

7. The amount in controversy and the results obtained;

8. The experience, reputation and ability of the attorney;

9. Whether or not the case is an undesirable case;

10. The nature and length of the professional relationship with the client; and

11. Awards in similar cases, excluding settlements or agreed upon judgments.

SECTION 2. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 95.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. As used in this section, “product liability action” means any action against a manufacturer or seller for recovery of damages or other relief for harm allegedly caused by a defective product, whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories, and whether the relief sought is recovery of damages or any other legal or equitable relief, including, but not limited to, an action for:

1. Injury or damage to or loss of real or personal property;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

2. Personal injury;

3. Wrongful death;

4. Economic loss; or

5. Declaratory, injunctive, or other equitable relief.

B. Except as provided by subsections C, D and E of this section, a plaintiff must commence a product liability action against a manufacturer or seller of a product before the end of ten (10) years after the date of the sale of the product by the defendant.

C. If a manufacturer or seller expressly warrants in writing that the product has a useful safe life of longer than ten (10) years, a plaintiff must commence a product liability action against that manufacturer or seller of the product before the end of the number of years warranted after the date of the sale of the product by that seller.

D. This section shall not apply to a product liability action seeking damages for personal injury or wrongful death in which the claimant alleges:

1. The plaintiff was exposed to the product that is the subject of the action before the end of ten (10) years after the date the product was first sold;

2. Exposure to the product caused a disease that is the basis of the action; and

3. The symptoms of the disease did not, before the end of ten (10) years after the date of the first sale of the product by the defendant, manifest themselves to a degree and for a duration that would put a reasonable person on notice that the person suffered some injury.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

E. This section shall not reduce a limitations period for a cause of action described by subsection D of this section that accrues before the end of the limitations period under this section.

F. This section shall not extend the limitations period within which a products liability action involving the product may be commenced under any other law.

G. This section applies only to the sale and not to the lease of a product.

H. This section shall not apply to any claim to which the General Aviation Revitalization Act of 1994 (Pub. L. No. 103-298, 108 Stat. 1552) (1994), 49 U.S.C., Section 40101 or its exceptions are applicable.

SECTION 3. AMENDATORY Section 2, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2006, Section 130), is amended to read as follows:

Section 130. The venue of civil actions for damages brought pursuant to the Affordable Access to Health Care Act, Section 1-1708.1A et seq. of Title 63 of the Oklahoma Statutes, shall be in a county where the cause of action or any portion thereof arose, or in any county in which any of the defendants reside, or in the case of a corporation, in a county in which it is situated, or has its principal office or place of business~~, or in any county where a codefendant of such corporation may be sued~~. Upon a finding of lack of venue, the court shall transfer or dismiss the action; provided, however, that if the court finds lack of venue and that a dismissal would operate as a dismissal with prejudice, the court shall transfer the action.

SECTION 4. AMENDATORY 12 O.S. 2001, Section 134, is amended to read as follows:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

Section 134. An action, other than one of those mentioned in ~~first three sections of this article~~ <u>Section 131, 132 or 133 of this title</u>, against a corporation created by the laws of this state, may be brought in the county in which it is situated, or has its principal office or place of business, or in which any of the principal officers thereof may reside, ~~or be summoned,~~ or in the county where the cause of action or some part thereof arose~~, or in any county where a codefendant of such corporation created by the laws of this state may properly be sued~~.

SECTION 5. AMENDATORY 12 O.S. 2001, Section 137, is amended to read as follows:

Section 137. <u>A.</u> In addition to the other counties in which an action may be brought against a nonresident of this state, ~~or~~ <u>other than</u> a foreign corporation, such action may be brought in any county in which there may be property of or debts owing to such defendant, or where such defendant may be found~~, or in any county where a codefendant may properly be sued; if~~<u>.</u>

<u>B. An action may be brought against a foreign corporation in the county in which the corporation has its principal office or place of business or in which any of the principal officers thereof reside, or where such company has a service agent.</u>

<u>C. If</u> such defendant ~~be~~ <u>is</u> a foreign insurance company the action may be brought in any county ~~where such cause of action, or any part thereof, arose, or where the plaintiff resides or~~ where such company has ~~an~~ <u>its principal office or place of business or in which any of the principal officers thereof reside, or where such company has a service</u> agent.



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

SECTION 6. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 140.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. If the court, upon motion by a party or on the court's own motion, finds that, in the interest of justice and for the convenience of the parties, a claim or action would be more properly heard in another forum either in this state or outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action.

B. In determining whether to grant a motion to stay or dismiss an action pursuant to this section, the court shall consider:

1. Whether an alternate forum exists in which the claim or action may be tried;

2. Whether the alternate forum provides an adequate remedy;

3. Whether maintenance of the claim in the court in which the case is filed would work a substantial injustice to the moving party;

4. Whether the alternate forum can exercise jurisdiction over all the defendants properly joined in the claim of the plaintiff;

5. Whether the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum; and

6. Whether the stay or dismissal would prevent unreasonable duplication or proliferation of litigation.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

SECTION 7. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 140.2 of Title 12, unless there is created a duplication in numbering, reads as follows:

An action brought in a county in which venue does not lie does not toll the statute of limitations.

SECTION 8. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 144 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. In a suit in which there is more than one plaintiff, whether the plaintiffs are included by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise, each plaintiff shall, independently of every other plaintiff, establish proper venue. If a plaintiff cannot independently establish proper venue, that plaintiff's part of the suit, including all of that plaintiff's claims and causes of action, shall be transferred to a county of proper venue or dismissed, as is appropriate, unless that plaintiff, independently of every other plaintiff, establishes that:

1. Joinder of that plaintiff or intervention in the suit by that plaintiff is proper under Oklahoma law and applicable court rules;

2. Maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit;

3. There is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

4. The county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought.

B. An interlocutory appeal may be taken of a trial court's determination under subsection A of this section that:

1. A plaintiff did or did not independently establish proper venue; or

2. A plaintiff that did not independently establish proper venue did or did not establish the items prescribed by paragraphs 1 through 4 of subsection A of this section.

C. The court of appeals shall:

1. Determine whether the trial court's order is proper, based on an independent determination from the record and not under either an abuse of discretion or substantial evidence standard; and

2. Render judgment not later than one hundred twenty (120) days after the date the appeal is perfected.

SECTION 9. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 191 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. 1. In any civil action for professional negligence, except as provided in subsection B of this section, the plaintiff shall attach to the petition an affidavit attesting that:

a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the expert's determination that, based upon a review of the pertinent records, facts or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the defendant against whom the action is brought constituted professional negligence, and

c. on the basis of the qualified expert's review and consultation, the plaintiff has concluded that the claim is meritorious and based on good cause.

2. If the civil action for professional negligence is filed:

a. without an affidavit being attached to the petition, as required in paragraph 1 of this subsection, and

b. no extension of time is subsequently granted by the court, pursuant to subsection B of this section, the court shall, upon motion of the defendant, dismiss the action without prejudice to its refiling.

3. The written opinion from the qualified expert shall state the acts or omissions of the defendant or defendants that the expert then believes constituted professional negligence and shall include reasons explaining why the acts or omissions constituted professional negligence. The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

B. 1. The court may, upon application of the plaintiff for good cause shown, grant the plaintiff an extension of time, not exceeding ninety (90) days after the date the petition is filed, except for good cause shown, to file in the action an affidavit attesting that the plaintiff has obtained a written opinion from a qualified expert as described in paragraph 1 of subsection A of this section.

2. If on the expiration of an extension period described in paragraph 1 of this subsection, the plaintiff has failed to file in the action an affidavit as described above, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.

C. 1. Upon written request of any defendant in a civil action for professional negligence, the plaintiff shall, within ten (10) business days after receipt of such request, provide the defendant with:

a. a copy of the written opinion of a qualified expert mentioned in an affidavit filed pursuant to subsection A or B of this section, and

b. an authorization from the plaintiff in a form that complies with applicable state and federal laws, including the Health Insurance Portability and Accountability Act of 1996, for the release of any and all medical records related to the plaintiff for a period commencing five (5) years prior to the incident that is at issue in the civil action for professional negligence.



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

2. If the plaintiff fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.

SECTION 10. AMENDATORY 12 O.S. 2001, Section 683, as amended by Section 3, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2006, Section 683), is amended to read as follows:

Section 683. Except as provided in Section ~~5~~ <u>684</u> of this ~~act~~ <u>title</u>, an action may be dismissed, without prejudice to a future action:

1. By the plaintiff, before the final submission of the case to the jury, or to the court, where the trial is by the court;

2. By the court, where the plaintiff fails to appear on the trial;

3. By the court, for the want of necessary parties;

4. By the court, on the application of some of the defendants, where there are others whom the plaintiff fails to prosecute with diligence;

5. By the court, for disobedience by the plaintiff of an order concerning the proceedings in the action; and

6. In all other cases, upon the trial of the action, the decision must be upon the merits.

SECTION 11. AMENDATORY 12 O.S. 2001, Section 684, as amended by Section 4, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2006, Section 684), is amended to read as follows:



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

Section 684. A. ~~Except as provided in Section 5 of this act, an~~ An action may be dismissed ~~on the payment of costs and~~ by the plaintiff without an order of court by ~~the plaintiff~~ filing a notice of dismissal at any time before ~~a petition of intervention or answer praying for affirmative relief against the plaintiff is filed in the action. A plaintiff may, at any time before the trial is commenced, on payment of the costs and without any order of court, dismiss the action after the filing of a petition of intervention or answer praying for affirmative relief, but such dismissal shall not prejudice the right of the intervenor or defendant to proceed with the action. Any defendant or intervenor may, in like manner, dismiss an action against the plaintiff, without an order of court, at any time before the trial is begun, on payment of the costs made on the claim filed by the defendant or intervenor. All parties to a civil action may at any time before trial, without an order of court, and on payment of costs, by agreement, dismiss the action.~~

~~B. Such dismissal shall be in writing and signed by the party or the attorney for the party, and shall be filed with the clerk of the district court where the action is pending, who shall note the fact on the proper record: Provided, such dismissal shall be held to be without prejudice, unless the words "with prejudice" be expressed therein.~~

~~C. When an action is dismissed after a jury in the action is empanelled and the case is subsequently refiled, the court, at the conclusion of the subsequent action, may assess costs and attorney fees incurred in the previous action by the defendants subsequent to the jury being empanelled~~ service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or by filing a stipulation for dismissal signed by all parties who have appeared in the action; provided, if a plaintiff files a notice of



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

dismissal after discovery has commenced, any such action shall not be dismissed without prejudice without the consent of the defendant. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

B. Except as provided in subsection A of this section, an action shall not be dismissed at the plaintiff's instance except upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaims can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

C. For failure of the plaintiff to prosecute or to comply with the provisions of this section or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subsection and any dismissal not provided for in this section, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party, operates as an adjudication upon the merits.

D. The provisions of this section apply to the dismissal of any counterclaim, cross-claim, or third-party claim. A voluntary dismissal by the claimant alone pursuant to



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

<u>subsection A of this section shall be made before a responsive pleading is served or, if there is none, before the introduction of evidence at the trial or hearing.</u>

<u>If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order. If an action is refiled and the plaintiff does not comply with the time limits for service required by subsection I of Section 2004 of this title, the action shall be dismissed with prejudice</u>.

SECTION 12. AMENDATORY Section 7, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2006, Section 727.1), is amended to read as follows:

Section 727.1

POSTJUDGMENT INTEREST

A. 1. Except as otherwise provided by this section, all judgments of courts of record, including costs and attorney fees authorized by statute or otherwise and allowed by the court, shall bear interest at a rate prescribed pursuant to this section.

2. Costs and attorney fees allowed by the court shall bear interest from the earlier of the date the judgment or order is pronounced, if expressly stated in the written judgment or order awarding the costs and attorney fees, or the date the judgment or order is filed with the court clerk.

B. Judgments, including costs and attorney fees authorized by statute or otherwise and allowed by the court, against this state or its political subdivisions, including



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, shall bear interest during the term of judgment at a rate prescribed pursuant to this section from the date of rendition. No judgment against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, inclusive of postjudgment interest, shall exceed the total amount of liability of the governmental entity pursuant to The Governmental Tort Claims Act.

C. The postjudgment interest authorized by subsection A or subsection B of this section shall accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk, and shall initially accrue at the rate in effect for the calendar year during which the judgment is rendered until the end of the calendar year in which the judgment was rendered, or until the judgment is paid, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the judgment is paid, whichever first occurs, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. For each succeeding calendar year, or part of a calendar year, during which a judgment remains unpaid, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

Director of the Courts pursuant to subsection I of this section. A separate computation using the interest rate in effect for judgments as provided by subsection I of this section shall be made for each calendar year, or part of a calendar year, during which the judgment remains unpaid in order to determine the total amount of interest for which the judgment debtor is liable. The postjudgment interest rate for each calendar year or part of a calendar year a judgment remains unpaid shall be multiplied by the original amount of the judgment, including any prejudgment interest, together with postjudgment interest previously accrued. Interest shall accrue on a judgment in the manner prescribed by this subsection until the judgment is satisfied or released.

D. If a rate of interest is specified in a contract, the rate specified shall apply and be stated in the journal entry of judgment. The rate of interest shall not exceed the lawful rate for that obligation. Postjudgment interest shall be calculated and accrued in the same manner as prescribed in subsection C of this section.

PREJUDGMENT INTEREST

E. Except as provided by subsection F of this section or Section 1-1708.1G of Title 63 of the Oklahoma Statutes, in actions filed before November 1, 2007, if a verdict for damages by reason of personal injuries or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another is accepted by the trial court, the court in rendering judgment shall add interest on the verdict at a rate prescribed pursuant to subsection I of this section from the date the suit resulting in the judgment was commenced to the earlier of the date the verdict is



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the ~~calendar year in which the suit resulting in the judgment is commenced. This rate shall be in effect until the end of the calendar year in which the suit resulting in judgment was filed or until the date judgment is filed, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the date the judgment is filed, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each~~ <u>2007</u> calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of all prejudgment interest has been completed, the total amount of prejudgment interest shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection A of this section.

F. If<u>, for an action filed prior to November 1, 2007,</u> a verdict of the type described by subsection E of this section is rendered against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, the judgment shall bear interest at the rate prescribed pursuant to subsection I of this section from the date the suit was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment or the date the judgment is filed with the court clerk.



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

The interest rate for computation of prejudgment interest shall ~~begin with~~ <u>be</u> the rate prescribed by subsection I of this section which is in effect for the <u>2007</u> calendar year ~~in which the suit resulting in the judgment is commenced. This rate shall be in effect until the end of the calendar year in which the suit resulting in judgment was filed or until the date the judgment is rendered as expressly stated in the judgment, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the date judgment is rendered, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year~~ as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of prejudgment interest has been completed, the amount shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection B of this section. No award of prejudgment interest against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, including the amount of the judgment awarded pursuant to trial of the action, shall exceed the total amount of liability of the governmental entity pursuant to The Governmental Tort Claims Act.

G. If exemplary or punitive damages are awarded in an action for personal injury or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

detriment due to an act or omission of another, the interest on that award shall begin to accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk.

H. If, for an action filed prior to November 1, 2007, a judgment is rendered establishing the existence of a lien against property and no rate of interest exists, the court shall allow prejudgment interest at a rate prescribed pursuant to subsection I of this section from the date the lien is filed to the date of verdict.

I. For purposes of computing either postjudgment interest or prejudgment interest as authorized by this section, interest shall be the prime rate, as listed in the first edition of the Wall Street Journal published for each calendar year and as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day following publication in January of each year, plus two percent (2%).

J. For purposes of computing postjudgment interest, the provisions of this section shall be applicable to all judgments of the district courts rendered on or after January 1, 2005. Effective January 1, 2005, the method for computing postjudgment interest prescribed by this section shall be applicable to all judgments remaining unpaid rendered prior to January 1, 2005.

K. For purposes of computing prejudgment interest, the provisions of this section shall be applicable to all actions which are filed in the district courts on or after January 1, 2005, and prior to November 1, 2007, for which an award of prejudgment interest is authorized by the provisions of this section. Prejudgment interest shall not be applicable to any action filed on or after November 1, 2007.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

SECTION 13. AMENDATORY 12 O.S. 2001, Section 832, is amended to read as follows:

Section 832. A. When two or more persons become jointly ~~or severally~~ liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them except as provided in this section.

B. The right of contribution exists only in favor of a tortfeasor who has paid more than ~~their~~ the tortfeasor's pro rata share of the common liability, and the total recovery is limited to the amount paid by the tortfeasor in excess of their pro rata share. No tortfeasor is compelled to make contribution beyond ~~their~~ the tortfeasor's pro rata share of the entire liability.

C. There is no right of contribution in favor of any tortfeasor who has intentionally caused or contributed to the injury or wrongful death.

D. A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

E. A liability insurer which by payment has discharged, in full or in part, the liability of a tortfeasor and has thereby discharged in full its obligation as insurer, is subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's pro rata share of the common liability. This provision does not limit or impair any right of subrogation arising from any other relationship.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

F. This ~~act~~ section does not impair any contractual or statutory right of indemnity under existing law. When one tortfeasor is entitled to contractual or statutory indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of the indemnity obligation.

G. This act shall not apply to breaches of trust or of other fiduciary obligation.

H. When a release, covenant not to sue, or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

1. It does not discharge any other tortfeasor from liability for the injury or wrongful death unless the other tortfeasor is specifically named; but it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater; and

2. It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

SECTION 14. AMENDATORY 12 O.S. 2001, Section 990.4, as last amended by Section 6, Chapter 1, O.S.L. 2005 (12 O.S. Supp. 2006, Section 990.4), is amended to read as follows:

Section 990.4 A. Except as provided in subsection C of this section, a party may obtain a stay of the enforcement of a judgment, decree or final order:

1. While a post-trial motion is pending;

2. During the time in which an appeal may be commenced; or



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

3. While an appeal is pending.

Such stay may be obtained by filing with the court clerk a written undertaking and the posting of a supersedeas bond or other security as provided in this section. In the undertaking the appellant shall agree to satisfy the judgment, decree or final order, and pay the costs and interest on appeal, if it is affirmed. The undertaking and supersedeas bond or security may be given at any time. The stay is effective when the bond and the sufficiency of the sureties are approved by the trial court or the security is deposited with the court clerk. The enforcement of the judgment, decree or order shall no longer be stayed, and the judgment, decree or order may be enforced against any surety on the bond or other security:

1. If neither a post-trial motion nor a petition in error is filed, and the time for appeal has expired;

2. If a post-trial motion is no longer pending, no petition in error has been filed, and the time for appeal has expired; or

3. If an appeal is no longer pending.

B. The amount of the bond or other security shall be as follows:

1. When the judgment, decree or final order is for payment of money:

a. subject to the limitations hereinafter provided, the bond shall be double the amount of the judgment, decree or final order, unless the bond is executed or guaranteed by a surety as hereinafter provided. ~~The~~ Subject to the limitations hereinafter provided, the bond shall be for the amount of the judgment, decree or order including costs and



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

interest on appeal where it is executed or guaranteed by an entity with suretyship powers as provided by the laws of Oklahoma. In no case shall the bond exceed Twenty-five Million Dollars ($25,000,000.00). If the party posting the supersedeas bond is a small business within the terms of Oklahoma law, the supersedeas bond shall not exceed One Million Dollars ($1,000,000.00) regardless of the value of the judgment. On a showing by the judgment debtor that the judgment debtor is likely to suffer substantial economic harm if required to post bond in the amount required by this paragraph, the court shall balance the likely substantial economic harm to the judgment debtor with the ability of the judgment creditor to collect the judgment in the event the judgment is affirmed on appeal and may lower the bond accordingly. "Substantial economic harm" means insolvency or creating a significant risk of insolvency. ~~The court shall not lower a bond as provided in this paragraph to the extent there is in effect an insurance policy, or agreement under which a third party is liable to satisfy part or all of the judgment entered and such party is required to post all or part of the bond. Upon lowering the bond as provided in this paragraph, the court shall enter an order enjoining a judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment, but the court shall not make any order that interferes with the judgment debtor's use of assets in the normal course of business~~ If



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

it is proved by a preponderance of the evidence to a court that the appellant for whom the bond has been limited pursuant to this subparagraph is intentionally dissipating or diverting assets outside of the ordinary course of its business for the purpose of avoiding payment of the judgment, the court shall enter such orders as are necessary to prevent dissipation or diversion, including, but not limited to, requiring that a bond be posted equal to the full amount of security required pursuant to this section. For the purposes of this paragraph, dissipation of assets shall not include expenditures, including payments to the owners of a business, of the kind that the appellant made in the regular course of business prior to the entry of the judgment being appealed, and

b. instead of filing a supersedeas bond, the appellant may obtain a stay by depositing cash with the court clerk in the amount of the judgment or order plus an amount that the court determines will cover costs and interest on appeal. The court shall have discretion to accept United States Treasury notes or general obligation bonds of the State of Oklahoma in lieu of cash. If the court accepts such notes or bonds, it shall make appropriate orders for their safekeeping and maintenance during the stay;

2. When the judgment, decree or final order directs execution of a conveyance or other instrument, the amount of the bond shall be determined by the court, but in no



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

case shall the bond exceed Twenty-five Million Dollars ($25,000,000.00). Instead of posting a supersedeas bond or other security, the appellant may execute the conveyance or other instrument and deliver it to the clerk of the court for deposit with a public or private entity for safekeeping, as directed by the court in writing;

3. When the judgment, decree or final order directs the delivery of possession of real or personal property, the bond shall be in an amount, to be determined by the court, that will protect the interests of the parties, but in no case shall the bond exceed Twenty-five Million Dollars ($25,000,000.00). The court may consider the value of the use of the property, any waste that may be committed on or to the property during the pendency of the stay, the value of the property, and all costs. When the judgment, decree or final order is for the sale of mortgaged premises and the payment of a deficiency arising from the sale, the bond must also provide for the payment of the deficiency;

4. When the judgment or final order directs the assignment or delivery of documents, they may be placed in the custody of the clerk of the court in which the judgment or order was rendered, for deposit with a public or private entity for safekeeping during the pendency of the stay, as directed by the court in writing, or the bond shall be in such sum as may be prescribed by the court; or

5. In order to protect any monies payable to the Tobacco Settlement Fund as set forth in Section 50 of Title 62 of the Oklahoma Statutes, the bond in any action or litigation brought under any legal theory involving a signatory, successor of a signatory or an affiliate of a signatory to the Master Settlement Agreement dated November 23, 1998, or a signatory, successor of a signatory or an affiliate of a signatory to the



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

Smokeless Tobacco Master Settlement Agreement, also dated November 23, 1998, shall be in an amount not to exceed one hundred percent (100%) of the judgment, exclusive of interest and costs, or Twenty-five Million Dollars ($25,000,000.00), whichever is less. However, if it is proved by a preponderance of the evidence that the appellant for whom the bond has been limited pursuant to this paragraph is intentionally dissipating or diverting assets outside of the ordinary course of its business for the purpose of avoiding payment of the judgment, the court shall enter such orders as are necessary to prevent dissipation or diversion, including, but not limited to, requiring that a bond be posted equal to the full amount of security required pursuant to this section. For purposes of this paragraph, "Master Settlement Agreement" shall have the same meaning as that term is defined in paragraph 5 of Section 600.22 of Title 37 of the Oklahoma Statutes, and "Smokeless Tobacco Master Settlement Agreement" means the settlement agreement and related documents entered into on November 23, 1998, by this state and leading United States smokeless tobacco product manufacturers.

C. Subsections A and B of this section shall not apply in actions involving temporary or permanent injunctions, actions for divorce, separate maintenance, annulment, paternity, custody, adoption, or termination of parental rights, or in juvenile matters, post-decree matrimonial proceedings or habeas corpus proceedings. The trial or appellate court, in its discretion, may stay the enforcement of any provision in a judgment, decree or final order in any of the types of actions or proceedings listed in this subsection during the pendency of the appeal or while any post-trial motion is pending upon such terms as to bond or otherwise as it considers proper for the security of the



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

rights of the parties. If a temporary or permanent injunction is denied or dissolved, the trial or appellate court, in its discretion, may restore or grant an injunction during the pendency of the appeal and while any post-trial motions are pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties.

D. In any action not provided for in subsections A, B or C, the court may stay the enforcement of any judgment, decree or final order during the pendency of the appeal or while any post-trial motion is pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties.

E. The trial court shall have continuing jurisdiction during the pendency of any post-trial motion and appeal to modify any order it has entered regarding security or other conditions in connection with a stay.

F. The execution of a supersedeas bond shall not be a condition for the granting of a stay of judgment, decree or final order of any judicial tribunal against any county, municipality, or other political subdivision of the State of Oklahoma.

G. Executors, administrators and guardians who have given bond in this state, with sureties, according to law, are not required to provide a supersedeas bond if they are granted a stay of enforcement of a judgment, decree or final order.

H. After an appeal has been decided, but before the mandate has issued, a party whose trial court judgment has been affirmed, may move the appellate court to order judgment on the bond or other security in the amount of the judgment plus interest, appeals costs and allowable appeal-related attorney fees. After mandate has issued, a party who has posted a bond or other security may move for exoneration of the bond or



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

other security only in the trial court; and all motions concerning the bond or other security must be addressed to the trial court.

<u>I. As used in this section, "legal equitable or any other form of relief" means all forms of relief including without limitation compensatory, special punitive, exemplary, or other damages, injunctive relief, and any other form of relief.</u>

SECTION 15. AMENDATORY 12 O.S. 2001, Section 993, is amended to read as follows:

Section 993. A. When an order:

1. Discharges, vacates, or modifies or refuses to discharge, vacate, or modify an attachment;

2. Denies a temporary or permanent injunction, grants a temporary or permanent injunction except where granted at an ex parte hearing, or discharges, vacates, or modifies or refuses to discharge, vacate, or modify a temporary or permanent injunction;

3. Discharges, vacates, or modifies or refuses to discharge, vacate, or modify a provisional remedy which affects the substantial rights of a party;

4. Appoints a receiver except where the receiver was appointed at an ex parte hearing, refuses to appoint a receiver, or vacates or refuses to vacate the appointment of a receiver;

5. Directs the payment of money pendente lite except where granted at an ex parte hearing, refuses to direct the payment of money pendente lite, or vacates or refuses to vacate an order directing the payment of money pendente lite;

6. Certifies or refuses to certify an action to be maintained as a class action; ~~or~~

7. Denies a motion in a class action asserting lack of jurisdiction because an agency of this state has exclusive or primary jurisdiction of the action or a part of the action, or asserting that a party has failed to exhaust administrative remedies;

8. Determines whether or not a plaintiff has established proper venue pursuant to Section 8 of this act; or

9. Grants a new trial or opens or vacates a judgment or order,

the party aggrieved thereby may appeal the order to the Supreme Court without awaiting the final determination in said cause, by filing the petition in error and the record on appeal with the Supreme Court within thirty (30) days after the order prepared in conformance with Section 696.3 of this title, is filed with the court clerk. If the appellant did not prepare the order, and Section 696.2 of this title required a copy of the order to be mailed to the appellant, and the court records do not reflect the mailing of a copy of the order to the appellant within three (3) days, exclusive of weekends and holidays, after the filing of the order, the petition in error may be filed within thirty (30) days after the earliest date on which the court records show that a copy of the order was mailed to the appellant. The Supreme Court may extend the time for filing the record upon good cause shown.

B. If the order discharges or modifies an attachment or temporary injunction and it becomes operative, the undertaking given upon the allowance of an attachment or temporary injunction shall stay the enforcement of said order and remain in full force until final order of discharge shall take effect.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

C. ~~Where~~ If a receiver shall be or has been appointed, upon the appellant filing an appeal bond, with sufficient sureties, in such sum as may have been required of the receiver by the court or a judge thereof, conditioned for the due prosecution of the appeal and the payment of all costs or damages that may accrue to the state or any officer or person by reason thereof, the authority of the receiver shall be suspended until the final determination of the appeal, and if the receiver has taken possession of any property, real or personal, it shall be returned and surrendered to the appellant upon the filing and approval of the bonds.

D. If the order determines whether or not a plaintiff has established proper venue pursuant to Section 8 of this act, the Supreme Court shall determine whether the order of the trial court is proper based on an independent determination of the record and not under either an abuse of discretion or substantial evidence standard and shall render judgment within one hundred twenty (120) days after the date the appeal is perfected.

E. During the pendency of an appeal pursuant to paragraph 6, 7, or 8 of subsection A of this section, the action in the trial court shall be stayed in all respects.

SECTION 16. AMENDATORY 12 O.S. 2001, Section 1101, is amended to read as follows:

Section 1101. The defendant, in an action for the recovery of money only, may, at any time before the trial, serve upon the plaintiff or ~~his~~ the attorney for the plaintiff an offer, in writing, to allow judgment to be taken against ~~him~~ the defendant for the sum specified therein. If the plaintiff ~~accept~~ accepts the offer and ~~give~~ gives notice thereof to the defendant or ~~his~~ the attorney for the defendant, within five (5) days after the offer



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

was served, the offer, and an affidavit that the notice of acceptance was delivered within the time limited, may be filed by the plaintiff, or the defendant may file the acceptance, with a copy of the offer, verified by affidavit; and in either case, the offer and acceptance shall be noted in the journal, and judgment shall be rendered accordingly. If the notice of acceptance be not given in the period limited, the offer shall be deemed withdrawn, and shall not be given in evidence or mentioned on the trial. If the plaintiff fails to obtain judgment for more than was offered by the defendant, ~~he~~ <u>the plaintiff</u> shall pay the defendant's costs from the time of the offer.

SECTION 17. AMENDATORY 12 O.S. 2001, Section 2004, as amended by Section 7, Chapter 402, O.S.L. 2002 (12 O.S. Supp. 2006, Section 2004), is amended to read as follows:

Section 2004.

PROCESS

A. SUMMONS: ISSUANCE. Upon filing of the petition, the clerk shall forthwith issue a summons. Upon request of the plaintiff separate or additional summons shall issue against any defendants.

B. SUMMONS: FORM.

1. The summons shall be signed by the clerk, be under the seal of the court, contain the name of the court and the names of the parties, be directed to the defendant, state the name and address of the plaintiff's attorney, if any, otherwise, the plaintiff's address, and the time within which these rules require the defendant to appear and defend, and



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

shall notify the defendant that in case of failure to appear, judgment by default will be rendered against the defendant for the relief demanded in the petition.

2. A judgment by default shall not be different in kind from or exceed in amount that prayed for in either the demand for judgment or in cases not sounding in contract in a notice which has been given the party against whom default judgment is sought. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his or her pleadings.

C. BY WHOM SERVED: PERSON TO BE SERVED.

1. SERVICE BY PERSONAL DELIVERY.

a. At the election of the plaintiff, process, other than a subpoena, shall be served by a sheriff or deputy sheriff, a person licensed to make service of process in civil cases, or a person specially appointed for that purpose. The court shall freely make special appointments to serve all process, other than a subpoena, under this paragraph.

b. A summons to be served by the sheriff or deputy sheriff shall be delivered to the sheriff by the court clerk or an attorney of record for the plaintiff. When a summons, subpoena, or other process is to be served by the sheriff or deputy sheriff of another county, the court clerk shall mail it, together with his voucher for the fees collected for the service, to the sheriff of that county. The sheriff shall deposit the voucher in the Sheriff's Service Fee Account created pursuant to



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

Section 514.1 of Title 19 of the Oklahoma Statutes. The sheriff or deputy sheriff shall serve the process in the manner that other process issued out of the court of the sheriff's own county is served. A summons to be served by a person licensed to make service of process in civil cases or by a person specially appointed for that purpose shall be delivered by an attorney of record for the plaintiff to such person.

c. Service shall be made as follows:

(1) Upon an individual other than an infant who is less than fifteen (15) years of age or an incompetent person, by delivering a copy of the summons and of the petition personally or by leaving copies thereof at the person's dwelling house or usual place of abode with some person then residing therein who is fifteen (15) years of age or older or by delivering a copy of the summons and of the petition to an agent authorized by appointment or by law to receive service of process;

(2) Upon an infant who is less than fifteen (15) years of age, by serving the summons and petition personally and upon either of the infant's parents or guardian, or if they cannot be found, then upon the person having the care or control of the infant or with whom the infant lives; and upon an incompetent person by serving the summons and petition personally and upon the incompetent person's guardian;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the petition to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant;

(4) Upon the United States or an officer or agency thereof in the manner specified by Federal Rule of Civil Procedure 4;

(5) Upon a state, county, school district, public trust or municipal corporation or other governmental organization thereof subject to suit, by delivering a copy of the summons and of the petition to the officer or individual designated by specific statute; however, if there is no statute, then upon the chief executive officer or a clerk, secretary, or other official whose duty it is to maintain the official records of the organization; and

(6) Upon an inmate incarcerated in an institution under the jurisdiction and control of the Department of Corrections, by delivering a copy of the summons and of the petition to the warden or superintendent or the designee of the warden or superintendent of the institution where the inmate is housed. It

shall be the duty of the receiving warden or superintendent or a designee to promptly deliver the summons and petition to the inmate named therein. The warden or superintendent or his or her designee shall reject service of process for any inmate who is not actually present in said institution.

2. SERVICE BY MAIL.

a. At the election of the plaintiff, a summons and petition may be served by mail by the plaintiff's attorney, any person authorized to serve process pursuant to subparagraph a of paragraph 1 of this subsection, or by the court clerk upon a defendant of any class referred to in division (1), (3), or (5) of subparagraph c of paragraph 1 of this subsection. Service by mail shall be effective on the date of receipt or if refused, on the date of refusal of the summons and petition by the defendant.

b. Service by mail shall be accomplished by mailing a copy of the summons and petition by certified mail, return receipt requested and delivery restricted to the addressee. When there is more than one defendant, the summons and a copy of the petition or order shall be mailed in a separate envelope to each defendant. If the summons is to be served by mail by the court clerk, the court clerk shall enclose the summons and a copy of the petition or order of the court to be served in an envelope, prepared by the plaintiff, addressed to the defendant, or



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

to the resident service agent if one has been appointed. The court clerk shall prepay the postage and mail the envelope to the defendant, or service agent, by certified mail, return receipt requested and delivery restricted to the addressee. The return receipt shall be prepared by the plaintiff. Service by mail to a garnishee shall be accomplished by mailing a copy of the summons and notice by certified mail, return receipt requested, and at the election of the judgment creditor by restricted delivery, to the addressee.

c. Service by mail shall not be the basis for the entry of a default or a judgment by default unless the record contains a return receipt showing acceptance by the defendant or a returned envelope showing refusal of the process by the defendant. Acceptance or refusal of service by mail by a person who is fifteen (15) years of age or older who resides at the defendant's dwelling house or usual place of abode shall constitute acceptance or refusal by the party addressed. In the case of an entity described in division (3) of subparagraph c of paragraph 1 of this subsection, acceptance or refusal by any officer or by any employee of the registered office or principal place of business who is authorized to or who regularly receives certified mail shall constitute acceptance or refusal by the party addressed. A return receipt signed at such registered office or principal place of business shall be presumed to have been signed by an employee authorized to receive certified mail.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

In the case of a state municipal corporation, or other governmental organization thereof subject to suit, acceptance or refusal by an employee of the office of the officials specified in division (5) of subparagraph c of paragraph 1 of this subsection who is authorized to or who regularly receives certified mail shall constitute acceptance or refusal by the party addressed. If delivery of the process is refused, upon the receipt of notice of such refusal and at least ten (10) days before applying for entry of default, the person elected by plaintiff pursuant to subparagraph a of this paragraph to serve the process shall mail to the defendant by first-class mail a copy of the summons and petition and a notice prepared by the plaintiff that despite such refusal the case will proceed and that judgment by default will be rendered against him unless he appears to defend the suit. Any default or judgment by default shall be set aside upon motion of the defendant in the manner prescribed in Section 1031.1 of this title, or upon petition of the defendant in the manner prescribed in Section 1033 of this title if the defendant demonstrates to the court that the return receipt was signed or delivery was refused by an unauthorized person. A petition shall be filed within one (1) year after the defendant has notice of the default or judgment by default but in no event more than two (2) years after the filing of the judgment.

3. SERVICE BY PUBLICATION.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

a. Service of summons upon a named defendant may be made by publication when it is stated in the petition, verified by the plaintiff or the plaintiff's attorney, or in a separate affidavit by the plaintiff or the plaintiff's attorney filed with the court, that with due diligence service cannot be made upon the defendant by any other method.

b. Service of summons upon the unknown successors of a named defendant, a named decedent, or a dissolved partnership, corporation, or other association may be made by publication when it is stated in a petition, verified by the plaintiff or the plaintiff's attorney, or in a separate affidavit by the plaintiff or the plaintiff's attorney filed with the court, that the person who verified the petition or the affidavit does not know and with due diligence cannot ascertain the following:

(1) whether a person named as defendant is living or dead, and, if dead, the names or whereabouts of the person's successors, if any,

(2) the names or whereabouts of the unknown successors, if any, of a named decedent,

(3) whether a partnership, corporation, or other association named as a defendant continues to have legal existence or not; or the names or whereabouts of its officers or successors,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

(4) whether any person designated in a record as a trustee continues to be the trustee; or the names or whereabouts of the successors of the trustee, or

(5) the names or whereabouts of the owners or holders of special assessment or improvement bonds, or any other bonds, sewer warrants or tax bills.

c. Service pursuant to this paragraph shall be made by publication of a notice, signed by the court clerk, one (1) day a week for three (3) consecutive weeks in a newspaper authorized by law to publish legal notices which is published in the county where the petition is filed. If no newspaper authorized by law to publish legal notices is published in such county, the notice shall be published in some such newspaper of general circulation which is published in an adjoining county. All named parties and their unknown successors who may be served by publication may be included in one notice. The notice shall state the court in which the petition is filed and the names of the plaintiff and the parties served by publication, and shall designate the parties whose unknown successors are being served. The notice shall also state that the named defendants and their unknown successors have been sued and must answer the petition on or before a time to be stated (which shall not be less than forty-one (41) days from the date of the first publication), or judgment, the nature of which shall be stated,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

will be rendered accordingly. If jurisdiction of the court is based on property, any real property subject to the jurisdiction of the court and any property or debts to be attached or garnished must be described in the notice.

(1) When the recovery of money is sought, it is not necessary for the publication notice to state the separate items involved, but the total amount that is claimed must be stated. When interest is claimed, it is not necessary to state the rate of interest, the date from which interest is claimed, or that interest is claimed until the obligation is paid.

(2) It is not necessary for the publication notice to state that the judgment will include recovery of costs in order for a judgment following the publication notice to include costs of suit.

(3) In an action to quiet title to real property, it is not necessary for the publication notice to state the nature of the claim or interest of either party, and in describing the nature of the judgment that will be rendered should the defendant fail to answer, it is sufficient to state that a decree quieting plaintiff's title to the described property will be entered. It is not necessary to state that a decree forever barring the defendant from asserting any interest in or to the property is sought or will be entered if the defendant does not answer.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

(4) In an action to foreclose a mortgage, it is sufficient that the publication notice state that if the defendant does not answer, the defendant's interest in the property will be foreclosed. It is not necessary to state that a judgment forever barring the defendant from all right, title, interest, estate, property and equity of redemption in or to said property or any part thereof is requested or will be entered if the defendant does not answer.

d. Service by publication is complete when made in the manner and for the time prescribed in subparagraph c of this paragraph. Service by publication shall be proved by the affidavit of any person having knowledge of the publication. No default judgment may be entered on such service until proof of service by publication is filed with and approved by the court.

e. Before entry of a default judgment or order against a party who has been served solely by publication under this paragraph, the court shall conduct an inquiry to determine whether the plaintiff, or someone acting in his behalf, made a distinct and meaningful search of all reasonably available sources to ascertain the whereabouts of any named parties who have been served solely by publication under this paragraph. Before entry of a default judgment or order against the unknown successors of a named defendant, a named decedent, or a dissolved partnership, corporation or association, the court shall



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

conduct an inquiry to ascertain whether the requirements described in subparagraph b of this paragraph have been satisfied.

f. A party against whom a default judgment or order has been rendered, without other service than by publication in a newspaper, may, at any time within three (3) years after the filing of the judgment or order, have the judgment or order set aside in the manner prescribed in Sections 1031.1 and 1033 of this title. Before the judgment or order is set aside, the applicant shall notify the adverse party of the intention to make an application and shall file a full answer to the petition, pay all costs if the court requires them to be paid, and satisfy the court by affidavit or other evidence that during the pendency of the action the applicant had no actual notice thereof in time to appear in court and make a defense. The title to any property which is the subject of and which passes to a purchaser in good faith by or in consequence of the judgment or order to be opened shall not be affected by any proceedings under this subparagraph. Nor shall proceedings under this subparagraph affect the title of any property sold before judgment under an attachment. The adverse party, on the hearing of an application to open a judgment or order as provided by this subparagraph, shall be allowed to present evidence to show that during the pendency of the action the applicant had notice thereof in time to appear in court and make a defense.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

g. The term "successors" includes all heirs, executors, administrators, devisees, trustees, and assigns, immediate and remote, of a named individual, partnership, corporation, or association.

h. Service outside of the state does not give the court in personal jurisdiction over a defendant who is not subject to the jurisdiction of the courts of this state or who has not, either in person or through an agent, submitted to the jurisdiction of the courts of this state.

4. SERVICE ON THE SECRETARY OF STATE.

a. Service of process on a domestic or foreign corporation may be made by serving the Secretary of State as the corporation's agent, if:

(1) there is no registered agent for the corporation listed in the records of the Secretary of State; or

(2) neither the registered agent nor an officer of the corporation could be found at the registered office of the corporation, when service of process was attempted.

b. Before resorting to service on the Secretary of State the plaintiff must have attempted service either in person or by mail on the corporation at:

(1) the corporation's last-known address shown on the records of the Franchise Tax Division of the Oklahoma Tax Commission, if any is listed there; and

(2) the corporation's last-known address shown on the records of the Secretary of State, if any is listed there; and

(3) the corporation's last address known to the plaintiff.

If any of these addresses are the same, the plaintiff is not required to attempt service more than once at any address. The plaintiff shall furnish the Secretary of State with a certified copy of the return or returns showing the attempted service.

c. Service on the Secretary of State shall be made by filing two (2) copies of the summons and petition with the Secretary of State, notifying the Secretary of State that service is being made pursuant to the provisions of this paragraph, and paying the Secretary of State the fee prescribed in paragraph 7 of Section 1142 of Title 18 of the Oklahoma Statutes, which fee shall be taxed as part of the costs of the action, suit or proceeding if the plaintiff shall prevail therein. If a registered agent for the corporation is listed in the records of the Secretary of State, the plaintiff must also furnish a certified copy of the return showing that service on the registered agent has been attempted either in person or by mail, and that neither the registered agent nor an officer of the corporation could be found at the registered office of the corporation.

d. Within three (3) working days after receiving the summons and petition, the Secretary of State shall send notice by letter, certified mail, return receipt requested, directed to the corporation at its

registered office or the last-known address found in the office of the Secretary of State, or if no address is found there, to the corporation's last-known address provided by the plaintiff. The notice shall enclose a copy of the summons and petition and any other papers served upon the Secretary of State. The corporation shall not be required to serve its answer until forty (40) days after service of the summons and petition on the Secretary of State.

e. Before entry of a default judgment or order against a corporation that has been served by serving the Secretary of State as its agent under this paragraph, the court shall determine whether the requirements of this paragraph have been satisfied. A default judgment or order against a corporation that has been served only by service on the Secretary of State may be set aside upon motion of the corporation in the manner prescribed in Section 1031.1 of this title, or upon petition of the corporation in the manner prescribed in Section 1033 of this title, if the corporation demonstrates to the court that it had no actual notice of the action in time to appear and make its defense. A petition shall be filed within one (1) year after the corporation has notice of the default judgment or order but in no event more than two (2) years after the filing of the default judgment or order.

f. The Secretary of State shall maintain an alphabetical record of service setting forth the name of the plaintiff and defendant, the title, docket



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

number, and nature of the proceeding in which the process has been served upon the defendant, the fact that service has been effected pursuant to the provisions of this paragraph, the return date thereof, and the date when the service was made. The Secretary of State shall not be required to retain this information for a period longer than five (5) years from receipt of the service of process.

g. The provisions of this paragraph shall not apply to a foreign insurance company doing business in this state.

5. SERVICE BY ACKNOWLEDGMENT. An acknowledgment on the back of the summons or the voluntary appearance of a defendant is equivalent to service.

6. SERVICE BY OTHER METHODS. If service cannot be made by personal delivery or by mail, a defendant of any class referred to in division (1) or (3) of subparagraph c of paragraph 1 of this subsection may be served as provided by court order in any manner which is reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard.

7. NO SERVICE BY PRISONER. No prisoner in any jail, Department of Corrections facility, private prison, or parolee or probationer under supervision of the Department of Corrections shall be appointed by any court to serve process on any defendant, party or witness.

D. SUMMONS AND PETITION. The summons and petition shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. The failure to serve a copy of the petition with the summons is not a ground

for dismissal for insufficiency of service of process, but on motion of the party served, the court may extend the time to answer or otherwise plead. If a summons and petition are served by personal delivery, the person serving the summons shall state on the copy that is left with the person served the date that service is made. This provision is not jurisdictional, but if the failure to comply with it prejudices the party served, the court, on motion of the party served, may extend the time to answer or otherwise plead.

E. SUMMONS: TERRITORIAL LIMITS OF EFFECTIVE SERVICE.

1. Service of the summons and petition may be made anywhere within this state in the manner provided by subsection C of this section.

2. When the exercise of jurisdiction is authorized by subsection F of this section, service of the summons and petition may be made outside this state:

a. by personal delivery in the manner prescribed for service within this state,

b. in the manner prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction,

c. in the manner prescribed by paragraph 2 of subsection C of this section,

d. as directed by the foreign authority in response to a letter rogatory,

e. in the manner prescribed by paragraph 3 of subsection C of this section only when permitted by subparagraphs a and b of paragraph 3 of subsection C of this section, or



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

f. as directed by the court.

3. Proof of service outside this state may be made in the manner prescribed by subsection G of this section, the order pursuant to which the service is made, or the law of the place in which the service is made for proof of service in an action in any of its courts of general jurisdiction.

4. Service outside this state may be made by an individual permitted to make service of process under the law of this state or under the law of the place in which the service is made or who is designated to make service by a court of this state.

5. When subsection C of this section requires that in order to effect service one or more designated individuals be served, service outside this state under this section must be made upon the designated individual or individuals.

6. a. A court of this state may order service upon any person who is domiciled or can be found within this state of any document issued in connection with a proceeding in a tribunal outside this state. The order may be made upon application of any interested person or in response to a letter rogatory issued by a tribunal outside this state and shall direct the manner of service.

b. Service in connection with a proceeding in a tribunal outside this state may be made within this state without an order of court.

c. Service under this paragraph does not, of itself, require the recognition or enforcement of an order, judgment, or decree rendered outside this state.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

F. ASSERTION OF JURISDICTION. A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.

G. RETURN.

1. The person serving the process shall make proof of service thereof to the court promptly and in any event within the time during which the person served must respond to the process, but the failure to make proof of service does not affect the validity of the service.

2. When process has been served by a sheriff or deputy sheriff and return thereof is filed in the office of the court clerk, a copy of the return shall be sent by the court clerk to the plaintiff's attorney within three (3) days after the return is filed. If service is made by a person other than a sheriff, deputy sheriff, or licensed process server, that person shall make affidavit thereof. The return shall set forth the name of the person served and the date, place, and method of service.

3. If service was by mail, the person mailing the summons and petition shall endorse on the copy of the summons or order of the court that is filed in the action the date and place of mailing and the date when service was receipted or service was rejected, and shall attach to the copy of the summons or order a copy of the return receipt or returned envelope, if and when received, showing whether the mailing was accepted, refused, or otherwise returned. If the mailing was refused, the return shall also show the date and place of any subsequent mailing pursuant to paragraph 2 of subsection C of this section. When the summons and petition are mailed by the court



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

clerk, the court clerk shall notify the plaintiff's attorney within three (3) days after receipt of the returned card or envelope showing that the card or envelope has been received.

H. AMENDMENT. At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

I. SUMMONS: TIME LIMIT FOR SERVICE. If service of process is not made upon a defendant within ~~one hundred eighty (180)~~ one hundred twenty (120) days after the filing of the petition and the plaintiff cannot show good cause why such service was not made within that period, the action ~~may~~ shall be dismissed as to that defendant without prejudice ~~upon the court's own initiative with notice to the plaintiff or upon motion~~. The action shall not be dismissed ~~where~~ if a summons was served on the defendant within ~~one hundred eighty (180)~~ one hundred twenty (120) days after the filing of the petition and a court later holds that the summons or its service was invalid. After a court quashes a summons or its service, a new summons may be served on the defendant within a time specified by the judge. If the new summons is not served within the specified time, the action shall be deemed to have been dismissed without prejudice as to that defendant. This subsection shall not apply with respect to a defendant who has been outside of this state for ~~one hundred eighty (180)~~ one hundred twenty (120) days following the filing of the petition.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

SECTION 18. AMENDATORY 12 O.S. 2001, Section 2008, is amended to read as follows:

Section 2008.

GENERAL RULES OF PLEADING

A. CLAIMS FOR RELIEF. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain:

1. A short and plain statement of the claim showing that the pleader is entitled to relief; and

2. A demand for judgment for the relief to which he deems himself entitled. Every pleading demanding relief for damages in money in excess of ~~Ten Thousand Dollars ($10,000.00)~~ the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code shall, without demanding any specific amount of money, set forth only that the amount sought as damages is in excess of ~~Ten Thousand Dollars ($10,000.00)~~ the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, except in actions sounding in contract. Every pleading demanding relief for damages in money in an amount ~~of Ten Thousand Dollars ($10,000.00)~~ that is required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code or less shall specify the amount of such damages sought to be recovered. If the amount of damages sought to be recovered is the same as the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code or less, the amount of damages that may be recovered shall not exceed the amount set forth in the pleadings.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

Relief in the alternative or of several different types may be demanded.

B. DEFENSES; FORM OF DENIALS. A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If he is without knowledge or information sufficient to form a belief as to the truth of an averment, he shall so state and this statement has the effect of a denial. Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, he shall specify so much of it as is true and material and shall deny only the remainder. Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, he may make his denials as specific denials of designated averments or paragraphs or he may generally deny all the averments except such designated averments or paragraphs as he expressly admits; but, when he does so intend to controvert all its averments, he may do so by general denial subject to the obligations set forth in Section 2011 of this title.

C. AFFIRMATIVE DEFENSES. In pleading to a preceding pleading, a party shall set forth affirmatively:

1. Accord and satisfaction;

2. Arbitration and award;

3. Assumption of risk;

4. Contributory negligence;

5. Discharge in bankruptcy;

6. Duress;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

7. Estoppel;

8. Failure of consideration;

9. Fraud;

10. Illegality;

11. Injury by fellow servant;

12. Laches;

13. License;

14. Payment;

15. Release;

16. Res judicata;

17. Statute of frauds;

18. Statute of limitations;

19. Waiver; and

20. Any other matter constituting an avoidance or affirmative defense.

When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

D. EFFECT OF FAILURE TO DENY. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

E. PLEADING TO BE CONCISE AND DIRECT; CONSISTENCY.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

1. Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required.

2. A party may set forth, and at trial rely on, two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds. All statements shall be made subject to the obligations set forth in Section 2011 of this title.

F. CONSTRUCTION OF PLEADINGS. All pleadings shall be so construed as to do substantial justice.

SECTION 19. AMENDATORY 12 O.S. 2001, Section 2009, is amended to read as follows:

Section 2009.

PLEADING SPECIAL MATTERS

A. CAPACITY. It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by negative averment, which shall include such supporting



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

particulars as are peculiarly within the pleader's knowledge, and he shall have the burden of proof on that issue.

B. FRAUD, MISTAKE, CONDITION OF THE MIND. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

C. CONDITIONS PRECEDENT. In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity.

D. OFFICIAL DOCUMENT OR ACT. In pleading an official document or official act it is sufficient to aver that the document was issued or the act done in compliance with law.

E. JUDGMENT. In pleading a judgment or decision of a domestic or foreign court, judicial or quasi-judicial tribunal, or of a board or officer, it is sufficient to aver the judgment or decision without setting forth matter showing jurisdiction to render it.

F. TIME AND PLACE. For the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter.

G. SPECIAL DAMAGE. When items of special damage are claimed, their nature shall be specifically stated. In actions where exemplary or punitive damages are sought, the petition shall ~~not~~ state a specific dollar amount for damages sought to be recovered



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

~~but shall state whether the amount of damages sought to be recovered is in excess of or not in excess of Ten Thousand Dollars ($10,000.00)~~. If the amount of damages sought to be recovered is in excess of Ten Thousand Dollars ($10,000.00) but less than the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, the amount of damages that may be recovered shall not exceed the amount set forth in the pleadings. Unless a good faith based change in circumstances arises, the party may seek, by application to the court prior to the pretrial order, an amendment to change the amount plead for good cause. If the amount sought exceeds the amount required to satisfy diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, the specific amount must be included in the petition.

SECTION 20. AMENDATORY 12 O.S. 2001, Section 2011, as amended by Section 10, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2006, Section 2011), is amended to read as follows:

Section 2011.

SIGNING OF PLEADINGS

A. SIGNATURE. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in his individual name, whose Oklahoma Bar Association identification number shall be stated, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the address of the signer and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

shall be stricken unless the omission of the signature is corrected promptly after being called to the attention of the attorney or party.

B. REPRESENTATIONS TO COURT. By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1. It is not being presented for any improper or frivolous purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2. The claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

3. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

C. SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subsection B of this section has been violated, the court shall, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subsection B of this section or are responsible for the violation.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

1. HOW INITIATED.

a. By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection B of this section. It shall be served as provided in Section 2005 of this title, but shall not be filed with or presented to the court unless, within twenty-one (21) days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorneys fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

b. On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subsection B of this section and directing an attorney, law firm, or party to show cause why it has not violated subsection B of this section with respect thereto.

2. NATURE OF SANCTIONS; LIMITATIONS. A sanction imposed for violation of this section shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

subparagraphs a, b and c of this paragraph, the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys fees and other expenses incurred as a direct result of the violation.

a. Monetary sanctions shall not be awarded against a represented party for a violation of paragraph 2 of subsection B of this section.

b. Monetary sanctions shall not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

c. Monetary sanctions shall be awarded for any violations of paragraph 1 of subsection B of this section. The sanctions shall consist of an order directing payment of reasonable costs, including attorney fees, incurred by the movant with respect to the conduct for which the sanctions are imposed. In addition, the court may impose any other sanctions authorized by this paragraph.

3. ORDER. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed.



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

D. INAPPLICABILITY TO DISCOVERY. This section does not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Sections 3226 through 3237 of this title.

E. DEFINITION. As used in this section, "frivolous" means the action or pleading was knowingly asserted in bad faith~~, was unsupported by any credible evidence, was not grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law~~ <u>or without any rational argument based in law or fact to support the position of the litigant</u>.

SECTION 21. AMENDATORY Section 1, Chapter 370, O.S.L. 2004 (12 O.S. Supp. 2005, Section 2011.1), is amended to read as follows:

Section 2011.1 In any action not arising out of contract, the court shall, upon granting a motion to dismiss an action or a motion for summary judgment or subsequent to adjudication on the merits, determine whether a claim or defense asserted in the action by a nonprevailing party was frivolous. As used in this section, "frivolous" means the action was knowingly asserted in bad faith~~, was unsupported by any credible evidence, was not grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law~~ <u>or without any rational argument based in law or fact to support the position of the litigant</u>. Upon so finding, the court shall enter a judgment ordering such nonprevailing party to reimburse the prevailing party for reasonable costs, including attorney fees, incurred with respect to such claim or defense. In addition, the court may



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

impose any sanction authorized by Section 2011 of ~~Title 12 of the Oklahoma Statutes~~ this title.

SECTION 22. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2016.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

PRETRIAL CONFERENCE

A. PRETRIAL ORDER. After any pretrial conference, a pretrial order shall be entered reciting the action taken. This order shall control the subsequent course of action unless modified by subsequent order. The order following a pretrial conference shall be modified only to prevent manifest injustice.

B. COMPULSORY REQUIREMENTS. The pretrial order shall include, among other things, a specific itemization of damages for each party claiming monetary damages. The amount of damages that may be recovered shall not exceed the amount set forth in the order. The trial court shall, by written order, remit any amounts that exceed the itemized amounts contained in the pretrial order.

SECTION 23. AMENDATORY 12 O.S. 2001, Section 2023, is amended to read as follows:

Section 2023.

CLASS ACTIONS

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

1. The class is so numerous that joinder of all members is impracticable;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

1. The prosecution of separate actions by or against individual members of the class would create a risk of:

a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,

b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,

c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and

d. the difficulties likely to be encountered in the management of a class action.

C. CLASS ACTIONS INVOLVING JURISDICTION OF STATE AGENCY; STATE AGENCY WITH EXCLUSIVE OR PRIMARY JURISDICTION.

Before hearing or deciding a motion to certify a class action, the court shall hear and rule on all pending motions asserting lack of jurisdiction because an agency of this state has exclusive or primary jurisdiction of the action or a part of the action, or asserting that a party has failed to exhaust administrative remedies. The ruling of the court shall be reflected in a written order. If a motion provided for in this subsection is denied and a class is subsequently certified, a person may obtain appellate review of the order denying the motion as part of an appeal of the order certifying the class action.

D. DETERMINATION BY ORDER WHETHER CLASS ACTION TO BE MAINTAINED; NOTICE; JUDGMENT; ACTIONS CONDUCTED PARTIALLY AS CLASS ACTIONS.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

1. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subsection may be conditional, and may be altered or amended before the decision on the merits.

2. In any class action maintained under paragraph 3 of subsection B of this section, the court shall direct to the potential members of the class the best notice practicable under the circumstances, including individual notice to all potential members who can be identified through reasonable effort. The notice shall advise each potential member that:

a. the court will ~~exclude him from~~ include the potential member in the class only if ~~he~~ the potential member so requests by a specified date,

b. the judgment, whether favorable or not, will include ~~all~~ only members who ~~do not request exclusion~~ have advised the court by the specified date, that they desire to be included in the class, and

c. any member who ~~does not request exclusion~~ requests inclusion may~~, if he desires,~~ enter an appearance through ~~his~~ counsel.

~~Where~~ If the class contains more than five hundred (500) potential members who can be identified through reasonable effort, it shall not be necessary to direct individual notice to more than five hundred (500) potential members, but the potential members to whom individual notice is not directed shall be given notice in such manner as the court shall direct, which may include publishing notice in newspapers, magazines, trade journals or other publications, posting it in appropriate places, and taking other steps that are reasonably calculated to bring the notice to the attention of such members,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

provided that the cost of giving such notice shall be reasonable in view of the amounts that may be recovered by the class ~~members who are being notified~~. ~~Members~~ <u>Potential members</u> to whom individual notice was not directed may request ~~exclusion from~~ <u>inclusion in</u> the class at any time before the issue of liability is determined~~, and~~<u>; provided,</u> commencing an individual action before the issue of liability is determined <u>in the class action</u> shall ~~be the equivalent of requesting~~ <u>result in</u> exclusion from the class.

3. The judgment in an action maintained as a class action under paragraphs 1 or 2 of subsection B of this section, whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under paragraph 3 of subsection B of this section, whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in paragraph 2 of <u>this</u> subsection ~~C of this section~~ was directed, and who have ~~not~~ requested ~~exclusion~~ <u>inclusion</u>, and whom the court finds to be members of the class.

4. When appropriate:

a. an action may be brought or maintained as a class action with respect to particular issues, or

b. a class may be divided into subclasses and each subclass treated as a class.

The provisions of this section shall then be construed and applied accordingly.

~~D.~~ <u>E.</u> ORDERS IN CONDUCT OF ACTIONS. In the conduct of actions to which this section applies, the court may make appropriate orders:



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

1. Determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument;

2. Requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;

3. Imposing conditions on the representative parties or on intervenors;

4. Requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; and

5. Dealing with similar procedural matters.

The orders may be combined with an order under Section ~~16~~ 2016 of this ~~act~~ title and may be altered or amended as may be desirable from time to time.

~~E.~~ F. DISMISSAL OR COMPROMISE. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

SECTION 24. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2056 of Title 12, unless there is created a duplication in numbering, reads as follows:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

A. FOR CLAIMANT. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may move, at any time after the expiration of twenty (20) days from the commencement of the action or after service of a motion for summary judgment by the adverse party, with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

B. FOR DEFENDING PARTY. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may move, at any time, with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

C. MOTIONS AND PROCEEDINGS THEREON. The motion shall be served at least ten (10) days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

D. NOT FULLY ADJUDICATED ON MOTION. If, on motion under this section, judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall ascertain, if practicable, what material facts exist without substantial controversy and what material facts are actually



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

and in good faith controverted. It shall make thereupon an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action, the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

E. FORM OF AFFIDAVITS; FURTHER TESTIMONY; DEFENSE REQUIRED. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this section, a party may not rest upon the mere allegations or denials of the party's pleading, but the party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial or no genuine issue for trial, as appropriate. The adverse party has the burden of producing evidence on any issue raised in the motion on which the adverse party would have the burden of persuasion at trial. If the adverse party does not so respond, summary judgment, if otherwise appropriate hereunder, shall be entered against the adverse party.

F. WHEN AFFIDAVITS ARE UNAVAILABLE. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. Upon request of a party opposing a motion for summary judgment, the court shall allow a reasonable amount of time to conclude discovery sufficient to allow the party to adequately respond to the motion for summary judgment.

G. AFFIDAVITS MADE IN BAD FAITH. Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this section are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney fees, and any offending party or attorney may be adjudged guilty of contempt.

H. STANDARD OF PROOF. Summary judgment shall be granted in favor of a party only if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. If a standard of proof beyond a preponderance of the evidence applies at trial, the heightened standard shall not be taken into account by the court in ruling on a motion for summary judgment.

I. APPEALS. An order denying summary judgment, summary disposition of issues, or partial summary adjudication will be appealable as part of any appeal from an appealable order or judgment which is later rendered in the case.



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

J. SUPERSESSION. The provisions of this section supersede any court rules otherwise applicable to the subject matter of this section.

SECTION 25. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2413 of Title 12, unless there is created a duplication in numbering, reads as follows:

In an action to recover damages for injuries resulting in death, evidence of the remarriage or social situation of the surviving spouse of the decedent is admissible.

SECTION 26. AMENDATORY 12 O.S. 2001, Section 2702, is amended to read as follows:

Section 2702. A. OPINION TESTIMONY BY LAY WITNESSES. If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions of inferences which are:

1. Rationally based on the perception of the witness;

2. Helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and

3. Not based on scientific, technical, or other specialized knowledge within the scope of subsection B of this section.

B. TESTIMONY BY EXPERTS. If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise, if:

1. The testimony is based upon sufficient facts or data;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

2. The testimony is the product of reliable principles and methods; and

3. The witness has applied the principles and methods reliably to the facts of the case.

C. BASES OF EXPERT OPINION TESTIMONY. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

D. BARS TO EXPERT TESTIMONY.

1. A witness qualified as an expert by knowledge, skill, experience, training, or education may only offer expert testimony with respect to a particular field in which the expert is qualified.

2. An expert witness may receive a reasonable and customary fee for the rendering of professional services, provided that the testimony of an expert witness shall not be admitted if any such compensation is contingent on the outcome of any claim or case with respect to which the testimony is being offered.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

E. MANDATORY PRETRIAL HEARING. If the witness is testifying as an expert, then upon motion of a party, the court shall hold a pretrial hearing to determine whether the witness qualifies as an expert and whether the expert's testimony satisfies the requirements of subsections B, C and D of this section. The court shall allow sufficient time for a hearing and shall rule on the qualifications of the witness to testify as an expert and whether or not the testimony satisfies the requirements of subsections B, C and D of this section. Such hearing and ruling shall be completed no later than the final pretrial hearing. The trial court's ruling shall set forth the findings of fact and conclusions of law upon which the order to admit or exclude expert evidence is based.

F. MANDATORY PRETRIAL DISCLOSURE OF EXPERT TESTIMONY.

1. Whether or not any party elects to request a pretrial hearing contemplated in subsection E of this section, all parties shall disclose to other parties the identity of any person who may be used at trial to present expert evidence.

2. Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten (10) years; the compensation to be paid



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four (4) years.

3. These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least ninety (90) days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph 2 of this subsection, within thirty (30) days after the disclosure made by the other party.

4. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under paragraph 2 of this subsection, the deposition shall not be conducted until after the report is provided.

G. INTERPRETATION. In interpreting and applying this section, the courts of this state shall follow the opinions of the Supreme Court of the United States in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), General Electric Co. v. Joiner, 522 U.S. 136 (1997), Kuhmo Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999), Weisgram v. Marley, 528 U.S. 440 (2000), and their progeny; moreover, the courts of this state may draw from other precedents binding in the federal courts of this state applying the standard announced by the Supreme Court of the United States in the foregoing cases.

H. INTERLOCUTORY APPEAL. Interlocutory appeal of a ruling on the admissibility of expert evidence shall be available at the discretion of the appellate court. In deciding whether to grant the interlocutory appeal, the court shall consider whether:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

1. The ruling involved any challenge to the constitutionality of this section;

2. The ruling will help prove or disprove criminal liability; or

3. The ruling will help establish civil liability at or above Seventy-five Thousand Dollars ($75,000.00), where the testimony could be outcome—determinative for establishing liability or determining damages. Neither a party's failure to seek interlocutory appeal or an appellate court's decision to deny a motion for interlocutory appeal shall waive a party's right to appeal a ruling on the admissibility of expert evidence after an entry of judgment in the case.

I. STANDARD OF REVIEW.

1. As the proper construction of the expert evidence admissibility framework prescribed by this section is a question of law, the courts of appeals shall apply a de novo standard of review in determining whether the trial court fully applied the proper legal standard in considering the admissibility of expert evidence.

2. As the application of this section to determine the admissibility of expert testimony is a question of fact, the courts of appeals shall apply an abuse of discretion standard in determining whether the trial court properly admitted or excluded particular expert evidence.

J. SEVERABILITY CLAUSE. The provisions of this section are severable. If any portion of this section is declared unconstitutional or the application of any part of this section to any person or circumstance is held invalid, the remaining portions of the section and their applicability to any person or circumstance shall remain valid and enforceable.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

<u>K. EFFECTIVE DATE. This section shall apply to all actions commenced on or after November 1, 2007, and to all pending actions in which trial has not been scheduled or in which trial has been scheduled after February 1, 2008</u>.

SECTION 27. AMENDATORY 12 O.S. 2001, Section 3226, as last amended by Section 3, Chapter 519, O.S.L. 2004 (12 O.S. Supp. 2006, Section 3226), is amended to read as follows:

Section 3226. A. DISCOVERY METHODS. Parties may obtain discovery by one or more of the following methods: Depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission. Unless the court orders otherwise under this section, the frequency of use of these methods is not limited.

B. DISCOVERY SCOPE AND LIMITS. Unless otherwise limited by order of the court in accordance with the Oklahoma Discovery Code, the scope of discovery is as follows:

1. IN GENERAL. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not a ground for objection that the information sought will be inadmissible at the trial if the



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

information sought appears reasonably calculated to lead to the discovery of admissible evidence. ~~A party shall produce upon request pursuant to Section 3234 of this title, any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this section, an application for insurance shall not be treated as a part of an insurance agreement.~~

2. INITIAL DISCLOSURES.

a. Except in categories of proceedings specified in subparagraph b of this paragraph, or to the extent otherwise stipulated or directed by order, a party, without awaiting a discovery request, must provide to other parties a computation of any category of damages claimed by the disclosing party, making available for inspection and copying the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

b. The following categories of proceedings are exempt from initial disclosure under subparagraph a of this paragraph:

(1) an action for review on an administrative record,

(2) a petition for habeas corpus or other proceeding to challenge a criminal conviction or sentence,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

(3) an action brought without counsel by a person in custody of the United States, a state, or a state subdivision,

(4) an action to enforce or quash an administrative summons or subpoena,

(5) an action by the United States to recover benefit payments,

(6) an action by the United States to collect on a student loan guaranteed by the United States,

(7) a proceeding ancillary to proceedings in other courts, and

(8) an action to enforce an arbitration award.

3. TIME FOR DISCLOSURES. These disclosures must be made at or within fourteen (14) days after the discovery conference provided for in subsection F of this section unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in the circumstances of the action and states the objection in the discovery plan. In ruling on the object, the court must determine what disclosures, if any, are to be made and set the time for disclosure. Any party first served or otherwise joined after the discovery conference must make these disclosures within thirty (30) days after being served or joined unless a different time is set by stipulation or court order. A party must make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

4. TRIAL PREPARATION: MATERIALS. Subject to the provisions of paragraph ~~3~~ 5 of this subsection, discovery may be obtained of documents and tangible things otherwise discoverable under paragraph 1 of this subsection and prepared in anticipation of litigation or for trial by or for another party or by or for the representative of that other party, including his attorney, consultant, surety, indemnitor, only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

A party may obtain, without the required showing provided for in this paragraph, a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provisions of paragraph 4 of subsection A of Section 3237 of this title apply to the award of expenses incurred in relation to the motion. For purposes of this paragraph, a statement previously made is:

a. A written statement signed or otherwise adopted or approved by the person making it, or

b. A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which substantially recites an oral statement by the person making it and contemporaneously recorded.

~~3.~~ 5. TRIAL PREPARATION: EXPERTS.

a. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of paragraph 1 of this subsection and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(1) A party may, through interrogatories, require any other party to identify each person whom that other party expects to call as an expert witness at trial and give the address at which that expert witness may be located.

(2) After disclosure of the names and addresses of the expert witnesses, the other party expects to call as witnesses, the party, who has requested disclosure, may depose any such expert witnesses subject to scope of this section. Prior to taking the deposition the party must give notice as required in subsections A and C of Section 3230 of this title. If any documents are provided to such disclosed expert witnesses, the documents shall not be protected from disclosure by privilege or work product protection and they may be obtained through discovery.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

(3) In addition to taking the depositions of expert witnesses the party may, through interrogatories, require the party who expects to call the expert witnesses to state the subject matter on which each expert witness is expected to testify; the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion; the qualifications of each expert witness, including a list of all publications authored by the expert witness within the preceding ten (10) years; the compensation to be paid to the expert witness for the testimony and preparation for the testimony; and a listing of any other cases in which the expert witness has testified as an expert at trial or by deposition within the preceding four (4) years. An interrogatory seeking the information specified above shall be treated as a single interrogatory for purposes of the limitation on the number of interrogatories in Section 3233 of this title.

b. A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only upon motion, when the court may order discovery as provided in Section 3235 of this title or upon a showing of exceptional circumstances under which it is

impracticable for the party seeking discovery to obtain facts or opinions on the same subject by any other means.

c. Unless manifest injustice would result:

(1) The court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under division (2) of subparagraph a of this paragraph and subparagraph b of this paragraph.

(2) The court shall require that the party seeking discovery with respect to discovery obtained under subparagraph b of this paragraph, pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

~~4.~~ 6. CLAIMS OF PRIVILEGE OR PROTECTION OF TRIAL PREPARATION MATERIALS. When a party withholds information otherwise discoverable under the Oklahoma Discovery Code by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

C. PROTECTIVE ORDERS.

1. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

to confer, either in person or by telephone, with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or on matters relating to a deposition, the district court in the county where the deposition is to be taken may enter any order which justice requires to protect a party or person from annoyance, harassment, embarrassment, oppression or undue delay, burden or expense, including one or more of the following:

a. that the discovery not be had,

b. that the discovery may be had only on specified terms and conditions, including a designation of the time or place,

c. that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery,

d. that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters,

e. that discovery be conducted with no one present except persons designated by the court,

f. that a deposition after being sealed be opened only by order of the court,

g. that a trade secret or other confidential research, development or commercial information not be disclosed or be disclosed only in a designated way, and

h. that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court;

2. If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of paragraph 4 of subsection A of Section 3237 of this title apply to the award of expenses incurred in relation to the motion. Any protective order of the court which has the effect of removing any material obtained by discovery from the public record shall contain the following:

a. a statement that the court has determined it is necessary in the interests of justice to remove the material from the public record,

b. specific identification of the material which is to be removed or withdrawn from the public record, or which is to be filed but not placed in the public record, and

c. a requirement that any party obtaining a protective order place the protected material in a sealed manila envelope clearly marked with the caption and case number and is clearly marked with the word "CONFIDENTIAL", and stating the date the order was entered and the name of the judge entering the order;

3. No protective order entered after the filing and microfilming of documents of any kind shall be construed to require the microfilm record of such filing to be amended in any fashion;

4. The party or counsel which has received the protective order shall be responsible for promptly presenting the order to appropriate court clerk personnel for appropriate action;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

5. All documents produced or testimony given under a protective order shall be retained in the office of counsel until required by the court to be filed in the case;

6. Counsel for the respective parties shall be responsible for informing witnesses, as necessary, of the contents of the protective order; and

7. When a case is filed in which a party intends to seek a protective order removing material from the public record, the plaintiff(s) and defendant(s) shall be initially designated on the petition under pseudonym such as "John or Jane Doe", or "Roe", and the petition shall clearly indicate that the party designations are fictitious. The party seeking confidentiality or other order removing the case, in whole or in part, from the public record, shall immediately present application to the court, seeking instructions for the conduct of the case, including confidentiality of the records.

D. SEQUENCE AND TIMING OF DISCOVERY. Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence. The fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay discovery by any other party.

E. SUPPLEMENTATION OF RESPONSES. A party who has responded to a request for discovery with a response that was complete when it was made is under no duty to supplement the response to include information thereafter acquired, except as follows:

1. A party is under a duty seasonably to supplement the response with respect to any question directly addressed to:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

a. the identity and location of persons having knowledge of discoverable matters, and

b. the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the testimony of the person.

2. A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party obtains information upon the basis of which:

a. (i) the party knows that the response was incorrect in some material respect when made, or

(ii) the party knows that the response, which was correct when made, is no longer true in some material respect; and

b. the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

3. A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

F. DISCOVERY CONFERENCE. At any time after commencement of an action, the court may direct the attorneys for the parties to appear for a conference on the subject of discovery. The court shall do so upon motion by the attorney for any party if the motion includes:

1. A statement of the issues as they then appear;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

2. A proposed plan and schedule of discovery;

3. Any limitations proposed to be placed on discovery;

4. Any other proposed orders with respect to discovery; and

5. A statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in the motion.

Each party and his attorney are under a duty to participate in good faith in the framing of a discovery plan if a plan is proposed by the attorney for any party. Notice of the motion shall be served on all parties. Objections or additions to matters set forth in the motion shall be served not later than ten (10) days after service of the motion.

Following the discovery conference, the court shall enter an order tentatively identifying the issues for discovery purposes, establishing a plan and schedule for discovery, setting limitations on discovery, if any; and determining such other matters, including the allocation of expenses, as are necessary for the proper management of discovery in the action. In preparing the plan for discovery the court shall protect the parties from excessive or abusive use of discovery. An order shall be altered or amended whenever justice so requires.

Subject to the right of a party who properly moves for a discovery conference to prompt convening of the conference, the court may combine the discovery conference with a pretrial conference.

G. SIGNING OF DISCOVERY REQUESTS, RESPONSES AND OBJECTIONS. Every request for discovery, response or objection thereto made by a party represented by



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

an attorney shall be signed by at least one of his attorneys of record in his individual name whose address shall be stated. A party who is not represented by an attorney shall sign the request, response or objection and state his address. The signature of the attorney or party constitutes a certification that he has read the request, response or objection, and that it is:

1. To the best of his knowledge, information and belief formed after a reasonable inquiry consistent with the Oklahoma Discovery Code and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law;

2. Interposed in good faith and not primarily to cause delay or for any other improper purpose; and

3. Not unreasonable or unduly burdensome or expensive, given the nature and complexity of the case, the discovery already had in the case, the amount in controversy, and other values at stake in the litigation. If a request, response or objection is not signed, it shall be deemed ineffective.

If a certification is made in violation of the provisions of this subsection, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response or objection is made, or both, an appropriate sanction, which may include an order to pay to the amount of the reasonable expenses occasioned thereby, including a reasonable attorney fee.

SECTION 28. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 75lA of Title 15, unless there is created a duplication in numbering, reads as follows:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

It is the intent of the Legislature that in construing the Consumer Protection Act, courts shall be guided by the policies of the Federal Trade Commission and interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C., Section 45(a)(1), as from time to time amended.

SECTION 29. AMENDATORY 15 O.S. 2001, Section 754, is amended to read as follows:

Section 754. Nothing in ~~this act~~ <u>the Consumer Protection Act</u> shall apply to:

1. Publishers, broadcasters, printers, or other persons insofar as an unlawful practice as defined in Section ~~3~~ <u>753</u> of this ~~act~~ <u>title</u> involves information that has been disseminated or reproduced on behalf of others without knowledge that it is an unlawful practice~~.~~<u>;</u>

2. Actions or transactions <u>otherwise permitted or</u> regulated ~~under laws administered~~ by <u>the Federal Trade Commission,</u> the Corporation Commission<u>,</u> or any other regulatory body or officer acting under statutory authority of this state or the United States, or to acts done by retailers or other persons acting in good faith on the basis of information or matter supplied by others and without knowledge of the deceptive character of such information or matter<u>; and</u>

<u>3. Claims seeking damages for conduct that results in bodily injury, death, or damage to property other than the property that is the subject of the practice claimed to be a violation of the Consumer Protection Act</u>.



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

SECTION 30. AMENDATORY 15 O.S. 2001, Section 761.1, is amended to read as follows:

Section 761.1 A. The commission of any act or practice declared to be a violation of the Consumer Protection Act shall render the violator liable to the aggrieved consumer <u>who suffers an ascertainable loss of money or property, real or personal, as a result of the violation</u> for the payment of actual damages sustained by the customer and costs of litigation including reasonable ~~attorney's~~ <u>attorney</u> fees, and the aggrieved consumer shall have a private right of action for <u>actual</u> damages, including but not limited to, costs and ~~attorney's~~ <u>attorney</u> fees. <u>Actual damages shall be measured by the consumer's out-of-pocket loss, which is an amount of money equal to the difference between the amount paid by the consumer for the goods or service and the actual market value of the goods or service that the consumer actually received.</u> In any private action for damages for a violation of the Consumer Protection Act the court shall, subsequent to adjudication on the merits and upon motion of the prevailing party, determine whether a claim or defense asserted in the action by a nonprevailing party was asserted in bad faith, was not well grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Upon so finding, the court shall enter a judgment ordering such nonprevailing party to reimburse the prevailing party an amount not to exceed Ten Thousand Dollars ($10,000.00) for reasonable costs, including ~~attorney's~~ <u>attorney</u> fees, incurred with respect to such claim or defense.

B. <u>In order to recover damages in an action for a violation of the Consumer Protection Act, a person shall be required to prove that the person reasonably relied to</u>



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

that person's detriment upon the practice alleged to be a violation of the Consumer Protection Act, and that the damages were proximately caused by the practice alleged to be a violation of the Consumer Protection Act.

C. The commission of any act or practice declared to be a violation of the Consumer Protection Act, if such act or practice is also found to be unconscionable, shall render the violator liable to the aggrieved customer for the payment of a civil penalty, recoverable in an individual action only, in a sum set by the court of not more than Two Thousand Dollars ($2,000.00) for each violation. In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration by the court: (1) whether the violator knowingly or with reason to know, took advantage of a consumer reasonably unable to protect his or her interests because of his or her age, physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; (2) whether, at the time the consumer transaction was entered into, the violator knew or had reason to know that price grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by like consumers; (3) whether, at the time the consumer transaction was entered into, the violator knew or had reason to know that there was no reasonable probability of payment of the obligation in full by the consumer; (4) whether the violator knew or had reason to know that the transaction he or she induced the consumer to enter into was excessively one-sided in favor of the violator.

~~C.~~ D. Any person who is found to be in violation of the Oklahoma Consumer Protection Act in a civil action or who willfully violates the terms of any injunction or



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

court order issued pursuant to the Consumer Protection Act shall forfeit and pay a civil penalty of not more than Ten Thousand Dollars ($10,000.00) per violation, in addition to other penalties that may be imposed by the court, as the court shall deem necessary and proper. For the purposes of this section, the district court issuing an injunction shall retain jurisdiction, and in such cases, the Attorney General, acting in the name of the state, or a district attorney may petition for recovery of civil penalties.

~~D.~~ E. In administering and pursuing actions under this act, the Attorney General and a district attorney are authorized to sue for and collect reasonable expenses, ~~attorney's~~ attorney fees, and investigation fees as determined by the court. Civil penalties or contempt penalties sued for and recovered by the Attorney General or a district attorney shall be used for the furtherance of their duties and activities under the Consumer Protection Act.

~~E.~~ F. In addition to other penalties imposed by the Oklahoma Consumer Protection Act, any person convicted in a criminal proceeding of violating the Oklahoma Consumer Protection Act shall be guilty of a misdemeanor for the first offense and upon conviction thereof shall be subject to a fine not to exceed One Thousand Dollars ($1,000.00), or imprisonment in the county jail for not more than one (1) year, or both such fine and imprisonment. If the value of the money, property or valuable thing referred to in this section is Five Hundred Dollars ($500.00) or more or if the conviction is for a second or subsequent violation of the provisions of the Oklahoma Consumer Protection Act, any person convicted pursuant to this subsection shall be deemed guilty of a felony and shall be subject to imprisonment in the State Penitentiary, for not more than ten (10) years, or



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

a fine not to exceed Five Thousand Dollars ($5,000.00), or both such fine and imprisonment.

SECTION 31. AMENDATORY 23 O.S. 2001, Section 9.1, as amended by Section 1, Chapter 462, O.S.L. 2002 (23 O.S. Supp. 2006, Section 9.1), is amended to read as follows:

Section 9.1 A. ~~In~~ Except as provided in Section 33 of this act, in an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C ~~and~~, D, E and G of this section, award punitive damages for the sake of example and by way of punishing the defendant based upon the following factors:

1. The seriousness of the hazard to the public arising from the defendant's misconduct and any harm likely to result or harm that has actually occurred due to the misconduct;

2. The profitability of the misconduct to the defendant;

3. The duration and frequency of the misconduct and any concealment of it;

4. The degree of the defendant's awareness of the hazard and of its excessiveness;

5. The attitude and conduct of the defendant upon discovery of the misconduct or hazard;

6. In the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and

7. The financial condition of the defendant.

B. Category I. Where the jury finds by clear and convincing evidence that:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

1. The defendant has been guilty of reckless disregard for the rights of others; or

2. An insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured; the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greater of:

a. One Hundred Thousand Dollars ($100,000.00), or

b. the amount of the actual damages awarded.

Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

C. Category II. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or

2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured;

the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greatest of:

a. Five Hundred Thousand Dollars ($500,000.00),

b. twice the amount of actual damages awarded, or

c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

The trial court shall reduce any award for punitive damages awarded pursuant to the provisions of subparagraph c of this paragraph by the amount it finds the defendant or insurer has previously paid as a result of all punitive damage verdicts entered in any court of this state for the same conduct by the defendant or insurer. Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

D. Category III. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or

2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured; and the court finds, on the record and out of the presence of the jury, that there is evidence beyond a reasonable doubt that the defendant or insurer acted intentionally and with malice and engaged in conduct life-threatening to humans,

the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in any amount the jury deems appropriate, without regard to the limitations set forth in subsections B and C of this section. Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

E. In any civil action in which an entitlement to punitive damages shall have been established, no award of punitive damages shall exceed Two Million Dollars ($2,000,000.00).



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

F. In a claim for punitive damages, a plaintiff shall present prima facie evidence for the punitive damages claim before conducting discovery regarding the financial assets or financial condition of the defendant. The limitation on the amount of punitive damages imposed by subsection E of this section shall not be disclosed to the jury, but shall be applied by the court to any punitive damages verdict.

G. In determining the amount, if any, of punitive damages to be awarded under either subsection B, C or D of this section, the jury shall make the award based upon the factors set forth in subsection A of this section.

~~F.~~ H. 1. In a case involving injury or harm allegedly caused by a product, the manufacturer, distributor or seller of the product shall not be subject to exemplary or punitive damages if, at the time the product left the control of the manufacturer, distributor or seller, the product or the aspect, component, warning or absence of warning contained in or accompanying the product that allegedly caused the injury or harm either:

a. was in material compliance with statute or with the standards, rules, regulations, requirements or specifications of a federal or state agency responsible for regulating, evaluating or approving the project, or

b. was approved by a federal or state agency responsible for regulating, evaluating or approving the product.

2. This subsection shall not apply if it is proven by clear and convincing evidence that the defendant at any time before the event that allegedly caused the injury:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

a. intentionally withheld or intentionally misrepresented information which it was required at any time to submit to the agency and the withholding or misrepresentation of such information was causally related to the injury or harm alleged, or

b. made an illegal payment to an official or employee of the federal or state government for the purpose of securing or maintaining approval of the product.

3. This subsection shall apply to every case pending on or after November 1, 2007, regardless of when the case was filed.

I. The provisions of this section are severable, and if any part or provision thereof shall be held void, the decision of the court shall not affect or impair any of the remaining parts or provisions thereof.

~~G. This~~ J. The provisions of this section, except subsections E, F and H of this section, shall apply to all civil actions filed after ~~the effective date of this act~~ August 25, 1995.

K. The provisions of subsections E, F and H of this section shall apply to all civil actions filed on or after November 1, 2007.

SECTION 32. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 9.2 of Title 23, unless there is created a duplication in numbering, reads as follows:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

A. In a medical liability action, the jury may only award punitive damages, in addition to actual damages, if the jury finds by clear and convincing evidence that the defendant has been guilty of intentional or impaired conduct.

B. The jury must award punitive damages in a separate proceeding conducted after the jury has made the finding required by subsection A of this section and awarded actual damages in a medical liability action.

C. The provisions of this section shall apply to all medical liability actions that accrue on or after November 1, 2007.

SECTION 33. AMENDATORY Section 18, Chapter 368, O.S.L. 2004 (23 O.S. Supp. 2006, Section 15), is amended to read as follows:

Section 15. A. Except as provided in ~~subsections~~ subsection B ~~and C~~ of this section, in any civil action based on fault and not arising out of contract, the liability for damages caused by two or more persons shall be several only and a joint tortfeasor shall be liable only for the amount of damages allocated to that tortfeasor.

B. ~~A defendant shall be jointly and severally liable for the damages recoverable by the plaintiff if the percentage of responsibility attributed to the defendant with respect to a cause of action is greater than fifty percent (50%).~~

~~C.~~ If at the time the incident which gave rise to the cause of action occurred, ~~any~~ the joint tortfeasors acted ~~with willful and wanton conduct or with reckless disregard of the consequences of the conduct and such conduct~~ in concert in committing a felony that proximately caused the damages legally recoverable by the plaintiff and the defendants were convicted of the felony, the liability for damages shall be joint and several.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

~~D. This section shall not apply to actions brought by the state or a political subdivision of the state or any action in which no comparative negligence is found to be attributable to the plaintiff.~~

~~E.~~ <u>C.</u> The provisions of this section shall apply to all civil actions based on fault and not arising out of contract that accrue on or after November 1, ~~2004~~ <u>2007</u>.

SECTION 34. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 16 of Title 23, unless there is created a duplication in numbering, reads as follows:

A. If the plaintiff has settled with one or more persons, the court shall reduce the amount of damages to be recovered by the plaintiff with respect to a cause of action by a percentage equal to the percentage of responsibility of each settling person.

B. If the plaintiff in a medical liability action has settled with one or more persons, the court shall reduce the amount of damages to be recovered by the plaintiff with respect to a cause of action by an amount equal to one of the following, as elected by the defendant:

1. The sum of the dollar amounts of all settlements; or

2. A percentage equal to each settling person's percentage of responsibility as found by the trier of fact.

C. In every medical liability action, the plaintiff shall, within sixty (60) days after the commencement of the action, serve written notice to the defendant(s) of any amount paid or payable as a medical benefit pursuant to any health, sickness, or accident insurance or plan, which provides health benefits, or any contract or agreement of any

group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services, and shall file a copy thereof with the court or arbitrator.

D. An election made under subsection B of this section shall be made by any defendant filing a written election before the issues of the action are submitted to the trier of fact and when made, shall be binding on all defendants. If no defendant makes this election or if conflicting elections are made, all defendants are considered to have elected the option provided for in paragraph 1 of subsection B of this section.

SECTION 35. AMENDATORY 23 O.S. 2001, Section 61, is amended to read as follows:

Section 61. A. For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by ~~this chapter~~ law, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.

B. For the breach of an obligation not arising from contract, if the plaintiff receives compensation or is to receive compensation in the future for the injuries or harm that gave rise to the cause of action from a source wholly independent of the defendant, such fact shall be admitted into evidence and the amount may be deducted from the amount of damages that the plaintiff recovers from the defendant.

SECTION 36. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 61.2 of Title 23, unless there is created a duplication in numbering, reads as follows:

A. If any plaintiff seeks recovery for loss of earnings, loss of earning capacity, loss of contributions of a pecuniary value, or loss of inheritance, evidence to prove the loss must be presented in the form of a net loss after reduction for income tax payments or unpaid tax liability pursuant to any state or federal income tax law.

B. The court shall instruct the jury as to whether any recovery sought by the plaintiff is subject to federal or state income taxes.

SECTION 37. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 61.3 of Title 23, unless there is created a duplication in numbering, reads as follows:

A. Except as provided in subsection B of this section, in any action not arising out of contract, the amount of noneconomic damages awarded shall not exceed Three Hundred Thousand Dollars ($300,000.00), regardless of the number of parties against whom the action is brought or the number of actions brought with respect to the personal injury.

B. As used in this section, “noneconomic damages” means all subjective, nonmonetary losses including, but not limited to, pain, suffering, inconvenience, mental anguish, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation; provided, however, noneconomic damages do not include exemplary damages, as provided for in Section 9.1 of Title 23 of the Oklahoma Statutes.

C. Nothing in this section shall apply to an action brought for wrongful death.

D. The provisions of this section shall apply only to actions that accrue on or after November 1, 2007.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

SECTION 38. AMENDATORY 47 O.S. 2001, Section 11-1112, as last amended by Section 1, Chapter 361, O.S.L. 2005 (47 O.S. Supp. 2006, Section 11-1112), is amended to read as follows:

Section 11-1112. A. Every driver, when transporting a child under six (6) years of age in a motor vehicle operated on the roadways, streets, or highways of this state, shall provide for the protection of said child by properly using a child passenger restraint system. For purposes of this section and Section 11-1113 of this title, "child passenger restraint system" means an infant or child passenger restraint system which meets the federal standards as set by 49 C.F.R., Section 571.213.

B. Children at least six (6) years of age but younger than thirteen (13) years of age shall be protected by use of a child passenger restraint system or a seat belt.

C. The provisions of this section shall not apply to:

1. The driver of a school bus, taxicab, moped, motorcycle, or other motor vehicle not required to be equipped with safety belts pursuant to state or federal laws;

2. The driver of an ambulance or emergency vehicle;

3. The driver of a vehicle in which all of the seat belts are in use;

4. The transportation of children who for medical reasons are unable to be placed in such devices; or

5. The transportation of a child who weighs more than forty (40) pounds and who is being transported in the back seat of a vehicle while wearing only a lap safety belt when the back seat of the vehicle is not equipped with combination lap and shoulder safety belts, or when the combination lap and shoulder safety belts in the back seat are being



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

used by other children who weigh more than forty (40) pounds. Provided, however, for purposes of this paragraph, back seat shall include all seats located behind the front seat of a vehicle operated by a licensed child care facility or church. Provided further, there shall be a rebuttable presumption that a child has met the weight requirements of this paragraph if at the request of any law enforcement officer, the licensed child care facility or church provides the officer with a written statement verified by the parent or legal guardian that the child weighs more than forty (40) pounds.

D. A law enforcement officer is hereby authorized to stop a vehicle if it appears that the driver of the vehicle has violated the provisions of this section and to give an oral warning to said driver. The warning shall advise the driver of the possible danger to children resulting from the failure to install or use a child passenger restraint system or seat belts in the motor vehicle.

E. ~~A violation of the provisions of this section shall not be admissible as evidence in any civil action or proceeding for damages.~~

~~F. In any action brought by or on behalf of an infant for personal injuries or wrongful death sustained in a motor vehicle collision, the failure of any person to have the infant properly restrained in accordance with the provisions of this section shall not be used in aggravation or mitigation of damages.~~

~~G.~~ Any person convicted of violating subsection A or B of this section shall be punished by a fine of Fifty Dollars ($50.00) and shall pay all court costs thereof. Revenue from such fine shall be apportioned to the Department of Public Safety Revolving Fund and used by the Oklahoma Highway Safety Office to promote the use of child passenger



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

restraint systems as provided in Section 11-1113 of this title. This fine shall be suspended and the court costs limited to a maximum of Fifteen Dollars ($15.00) in the case of the first offense upon proof of purchase or acquisition by loan of a child passenger restraint system. Provided, the Department of Public Safety shall not assess points to the driving record of any person convicted of a violation of this section.

SECTION 39. AMENDATORY 47 O.S. 2001, Section 12-420, as amended by Section 13, Chapter 50, O.S.L. 2005 (47 O.S. Supp. 2006, Section 12-420), is amended to read as follows:

Section 12-420. ~~Nothing in Sections 12-416 through 12-420 of this title shall~~ <u>Any violation of the Oklahoma Mandatory Seat Belt Use Act may</u> be used in any civil proceeding in this state and the use or nonuse of seat belts shall ~~not~~ be ~~submitted into~~ <u>permitted as</u> evidence in any civil suit in Oklahoma.

SECTION 40. AMENDATORY 47 O.S. 2001, Section 230.30, is amended to read as follows:

Section 230.30 A. No license shall be issued by the <u>Corporation</u> Commission to any carrier until after the carrier shall have filed with the Commission a liability insurance policy or bond covering public liability and property damage, issued by some insurance or bonding company or insurance carrier authorized pursuant to this section and which has complied with all of the requirements of the Commission, which bond or policy shall be approved by the Commission, and shall be in a sum and amount as fixed by a proper order of the Commission; and the liability and property damage insurance policy or bond shall bind the obligor thereunder to make compensation for injuries to, or death of,



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

persons, and loss or damage to property, resulting from the operation of any carrier for which the carrier is legally liable. A copy of the policy or bond shall be filed with the Commission, and, after judgment against the carrier for any damage, the injured party may maintain an action upon the policy or bond to recover the same, and shall be a proper party to maintain such action <u>only after a final judgment against the carrier has been entered by the court; provided, in a civil action against a motor carrier operating in this state, there shall be no direct action allowed against the insurer required by this statute. In no instance shall an insurance or bonding company or insurance carrier authorized pursuant to this section be sued in a civil action by a third party before a final judgment against the carrier has been entered by the court</u>.

B. Every motor carrier shall file with the Commission a cargo insurance policy or bond covering any goods or property being transported, issued by some insurance or bonding company or insurance carrier authorized as set forth below, and which has complied with all of the requirements of the Commission, which bond or policy shall be approved by the Commission, and shall be in a sum and amount as fixed by a proper order of the Commission. The cargo insurance must be filed with the Commission prior to a license being issued by the Commission, unless the motor carrier has been exempted from this requirement.

Intrastate motor carriers of sand, rock, gravel, asphaltic mixtures or other similar road building materials shall not be required to file cargo insurance and shall be required to maintain liability insurance limits of Three Hundred Fifty Thousand Dollars ($350,000.00) combined single limit.

No carrier, whose principal place of business is in Oklahoma, shall conduct any operations in this state unless the operations are covered by a valid primary bond or insurance policy issued by a provider authorized or approved by the State Insurance Commissioner. No carrier shall conduct any operations in this state unless the operations are covered by a valid bond or insurance policy issued by a provider authorized and approved by a National Association of Insurance Commissioners and certified by the State Insurance Commission.

C. Each carrier shall maintain on file, in full force, all insurance required by the laws of this state and the rules of the Commission during the operation of the carrier and that the failure for any cause to maintain the coverage in full force and effect shall immediately, without any notice from the Commission, suspend the rights of the carrier to operate until proper insurance is provided. Any carrier suspended for failure to maintain proper insurance shall have a reasonable time, not exceeding sixty (60) days, to have its license reactivated, and to provide proper insurance upon showing:

1. No operation during the period in which it did not have insurance; and

2. Furnishing of proper insurance coverage.

D. Any carrier who fails to reactivate its license within sixty (60) days after the suspension, as above provided, shall have the license canceled, by operation of law, without any notice from the Commission. No license so canceled shall be reinstated or otherwise made operative except that the Commission may reinstate the license of a carrier upon proper showing that the carrier was actually covered by proper insurance during the suspension or cancellation period, and that failure to file with the Commission



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

was not due to the negligence of the carrier. Any carrier desiring to file for reinstatement of its license shall do so within ninety (90) days of its cancellation by law.

E. The Commission shall, in its discretion, permit the filing of certificates of insurance coverage or such form as may be prescribed by the Commission, in lieu of copies of insurance policies or bonds, with the proviso that if the certificates are authorized the insurance company or carrier so filing it, upon request of the Commission, will, at any time, furnish an authenticated copy of the policy which the certificate represents, and further provided that thirty (30) days prior to effective cancellation or termination of the policy of insurance for any cause, the insurer shall so notify the Commission in writing of the facts or as deemed necessary by the Commission.

SECTION 41. AMENDATORY Section 4, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2006, Section 1-1708.1D), is amended to read as follows:

Section 1-1708.1D A. In any medical liability action, if the plaintiff receives compensation or is to receive compensation in the future for the injuries or harm that gave rise to the cause of action from a source wholly independent of the defendant, such fact shall be admitted into evidence and the amount may be deducted from the amount of damages that the plaintiff recovers from the defendant.

B. In every medical liability action, the court shall admit evidence of payments of medical bills made to the injured party~~, unless the court makes the finding described in paragraph B of this section~~. Recovery for payment of medical bills shall be limited to the amount actually paid, not the amount billed. In case of unreimbursed care, payment shall be paid according to Medicare reimbursement rates at the time care was provided.

~~B. In any medical liability action, upon application of a party, the court shall make a determination whether amounts claimed by a health care provider to be a payment of medical bills from a collateral source is subject to subrogation or other right of recovery. If the court makes a determination that any such payment is subject to subrogation or other right of recovery, evidence of the payment from the collateral source and subject to subrogation or other right of recovery shall not be admitted.~~

SECTION 42. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1F-2 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. Except as provided in subsection B of this section, in any civil action brought against a hospital or hospital system, or its employees, officers, directors, or volunteers, for damages based on an act or omission by the hospital or hospital system, or its employees, officers, directors, or volunteers, the liability of the hospital or hospital system is limited to money damages in a maximum amount of Five Hundred Thousand Dollars ($500,000.00) for any act or omission resulting in damage or injury to a patient if the patient or, if the patient is a minor or is otherwise legally incompetent, the person responsible for the patient, signs a written statement that acknowledges:

1. That the hospital is providing care that is not administered for or in expectation of compensation; and

2. The limitations on the recovery of damages from the hospital in exchange for receiving the health care services.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

B. This section shall not apply to wrongful death actions or to an act or omission that is the result of gross negligence or willful or wanton misconduct.

SECTION 43. AMENDATORY Section 7, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2005, Section 1-1708.1G), is amended to read as follows:

Section 1-1708.1G Notwithstanding the provisions of Section 727 of Title 12 of the Oklahoma Statutes or any other provision of the Oklahoma Statutes to the contrary, prejudgment interest in a medical liability action shall be determined using a rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year. Prejudgment interest shall be applicable only to actions filed prior to November 1, 2007.

SECTION 44. AMENDATORY Section 24, Chapter 368, O.S.L. 2004 (63 O.S. Supp. 2005, Section 1-1708.1I), is amended to read as follows:

Section 1-1708.1I A. To be qualified to offer expert testimony on the issue of whether a defendant health care provider departed from accepted standards of health care, a witness must be currently practicing health care in the field of health care services relevant to the claim or must have been practicing in that field at the time the claim was filed.

B. The court shall apply the criteria specified in subsection ~~B~~ C of this section and in Section 2702 of Title 12 of the Oklahoma Statutes in determining whether an expert is qualified to offer expert testimony on the issue of whether the defendant health care provider departed from accepted standards of health care but may depart from those



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

6:16-cv-00113-KEW Document 2-1 6 Filed in ED/OK on 08/17/20 Page 114 of 157 178

criteria if, under the circumstances, the court determines that there is good reason to admit the expert's testimony. The court shall state on the record the reason for admitting the testimony if the court departs from the criteria.

~~B.~~ C. In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness~~:~~

~~1. Is licensed to practice medicine~~ is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in ~~any~~ the area of health care relevant to the claim~~; and~~

~~2. Is actively practicing or retired from practicing health care in any area of health care services relevant to the claim~~.

~~C.~~ D. This section shall not prevent a health care provider who is a defendant, or an employee of the defendant health care provider, from qualifying as an expert.

SECTION 45. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1708.1J of Title 63, unless there is created a duplication in numbering, reads as follows:

A. As used in this section:

1. "Future damages" means damages that are incurred after the date of judgment for:

a. medical, health care, or custodial care services,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

b. physical pain and mental anguish, disfigurement, or physical impairment,

c. loss of consortium, companionship, or society, or

d. loss of earnings;

2. "Future loss of earnings" means the following losses incurred after the date of the judgment:

a. loss of income, wages, or earning capacity and other pecuniary losses, and

b. loss of inheritance; and

3. "Periodic payments" means the payment of money or its equivalent to the recipient of future damages at defined intervals.

B. This section applies only to a medical liability action against a health care provider in which the present value of the award of future damages, as determined by the court, equals or exceeds One Hundred Thousand Dollars ($100,000.00).

C. The court shall order that medical, health care, or custodial services awarded in a medical liability action be paid in periodic payments rather than by a lump-sum payment subject to supervision by the court, unless both parties agree to a lump-sum payment of all or part of the award.

D. At the request of a defendant health care provider or a plaintiff, the court may order that future damages other than medical, health care, or custodial services awarded in a health care liability claim be paid in whole or in part in periodic payments rather than by a lump-sum payment subject to supervision by the court.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

E. The court shall make a specific finding of the dollar amount of periodic payments that will compensate the plaintiff for the future damages.

F. The court shall specify in its judgment ordering the payment of future damages by periodic payments the:

1. Recipient of the payments;

2. Dollar amount of the payments;

3. Interval between payments; and

4. Number of payments or the period of time over which payments must be made.

G. The entry of an order for the payment of future damages by periodic payments constitutes a release of the health care liability claim filed by the plaintiff.

H. As a condition to authorizing periodic payments of future damages, the court shall require a defendant who is not adequately insured to provide evidence of financial responsibility in an amount adequate to assure full payment of damages awarded by the judgment.

I. The judgment shall provide for payments to be funded by:

1. An annuity contract issued by a company licensed to do business as an insurance company, including an assignment within the meaning of Section 130, Internal Revenue Code of 1986, as amended;

2. An obligation of the United States;

3. Applicable and collectible liability insurance from one or more qualified insurers; or

4. Any other satisfactory form of funding approved by the court.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

J. On termination of periodic payments of future damages, the court shall order the return of the security, or as much as remains, to the defendant.

K. On the death of the recipient, money damages awarded for loss of future earnings shall continue to be paid to the estate of the recipient of the award without reduction. Periodic payments, other than future loss of earnings, terminate on the death of the recipient. If the recipient of periodic payments dies before all payments required by the judgment are paid, the court may modify the judgment to award and apportion the unpaid damages for future loss of earnings in an appropriate manner. Following the satisfaction or termination of any obligations specified in the judgment for periodic payments, any obligation of the defendant health care provider to make further payments ends and any security given reverts to the defendant.

L. For purposes of computing the award of attorney fees when the plaintiff is awarded a recovery that will be paid in periodic payments, the court shall place a total value on the payments based on the plaintiff's projected life expectancy and reduce the amount to present value.

SECTION 46. AMENDATORY 63 O.S. 2001, Section 1-1709.1, as last amended by Section 2, Chapter 558, O.S.L. 2004 (63 O.S. Supp. 2006, Section 1-1709.1), is amended to read as follows:

Section 1-1709.1 A. As used in this section:

1. "Credentialing or recredentialing data" means:

a. the application submitted by a health care professional requesting appointment or reappointment to the medical staff of a health care



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

facility or requesting clinical privileges or other permission to provide health care services at a health care facility,

b. any information submitted by the health care professional in support of such application,

c. any information, unless otherwise privileged, obtained by the health care facility during the credentialing or recredentialing process regarding such application, and

d. the decision made by the health care facility regarding such application;

2. "Credentialing or recredentialing process" means any process, program or proceeding utilized by a health care facility to assess, review, study or evaluate the credentials of a health care professional;

3. "Health care facility" means:

a. any hospital or related institution offering or providing health care services under a license issued pursuant to Section 1-706 of this title,

b. any ambulatory surgical center offering or providing health care services under a license issued pursuant to Section 2660 of this title, and

c. the clinical practices of accredited allopathic and osteopathic state medical schools;

4. "Health care professional" means any person authorized to practice allopathic medicine and surgery, osteopathic medicine, podiatric medicine, optometry, chiropractic,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

psychology, dentistry or a dental specialty under a license issued pursuant to Title 59 of the Oklahoma Statutes;

5. "Peer review information" means all records, documents and other information generated during the course of a peer review process, including any reports, statements, memoranda, correspondence, record of proceedings, materials, opinions, findings, conclusions and recommendations, but does not include:

a. the medical records of a patient whose health care in a health care facility is being reviewed,

b. incident reports and other like documents regarding health care services being reviewed, regardless of how the reports or documents are titled or captioned,

c. the identity of any individuals who have personal knowledge regarding the facts and circumstances surrounding the patient's health care in the health care facility,

d. factual statements regarding the patient's health care in the health care facility from any individuals who have personal knowledge regarding the facts and circumstances surrounding the patient's health care, which factual statements were generated outside the peer review process,

e. the identity of all documents and raw data previously created elsewhere and considered during the peer review process,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

f. copies of all documents and raw data previously created elsewhere and considered during the peer review process, whether available elsewhere or not, or

g. credentialing or recredentialing data regarding the health care professional who provided the health care services being reviewed or who is the subject of a credentialing or recredentialing process; and

6. "Peer review process" means any process, program or proceeding, including a credentialing or recredentialing process, utilized by a health care facility or county medical society to assess, review, study or evaluate the credentials, competence, professional conduct or health care services of a health care professional.

B. 1. Peer review information shall be private, confidential and privileged~~:~~

~~a.~~ except that a health care facility or county medical society shall be permitted to provide relevant peer review information to the state agency or board which licensed the health care professional who provided the health care services being reviewed in a peer review process or who is the subject of a credentialing or recredentialing process, with notice to the health care professional~~, and~~

~~b.~~ ~~except as provided in subsections C and D of this section~~.

2. Nothing in this section shall be construed to abrogate, alter or affect any provision in the Oklahoma Statutes which provides that information regarding liability insurance of a health care facility or health care professional is not discoverable or admissible.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

C. In any civil action in which a patient or patient's legal representative has alleged that the patient has suffered injuries resulting from negligence by a health care professional in providing health care services to the patient in a health care facility, factual statements, presented during a peer review process utilized by such health care facility, regarding the patient's health care in the health care facility from individuals who have personal knowledge of the facts and circumstances surrounding the patient's health care shall <u>not</u> be subject to discovery~~, pursuant to the Oklahoma Discovery Code, upon an affirmative showing that such statements are not otherwise available in any other manner~~.

D. ~~1.~~ In any civil action in which a patient or patient's legal representative has alleged:

~~a. that~~

<u>1. That</u> the patient has suffered injuries resulting from negligence by a health care professional in providing health care services to the patient in a health care facility~~,~~<u>;</u> or

~~b. that~~

<u>2. That</u> the health care facility was independently negligent as a result of permitting the health care professional to provide health care services to the patient in the health care facility,

the recommendations made and action taken as a result of any peer review process utilized by such health care facility regarding the health care professional prior to the date of the alleged negligence shall <u>not</u> be subject to discovery pursuant to the Oklahoma Discovery Code.



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

~~2. Any information discovered pursuant to this subsection :~~

~~a.~~ ~~shall not be admissible as evidence until a judge or jury has found the health care professional to have been negligent in providing health care services to the patient in such health care facility, and~~

~~b.~~ ~~shall not at any time include the identity or means by which to ascertain the identity of any other patient or health care professional.~~

E. No person involved in a peer review process may be permitted or required to testify regarding the peer review process in any civil proceeding or disclose by responses to written discovery requests any peer review information.

SECTION 47. AMENDATORY 76 O.S. 2001, Section 18, as amended by Section 4, Chapter 462, O.S.L. 2002 (76 O.S. Supp. 2006, Section 18), is amended to read as follows:

Section 18. ~~An~~ <u>A. Subject to the provisions of subsection B of this section, an</u> action for damages for injury or death against any physician, health care provider or hospital licensed under the laws of this state, whether based in tort, breach of contract or otherwise, arising out of patient care, shall be brought within two (2) years of the date the plaintiff knew or should have known, through the exercise of reasonable diligence, of the existence of the death, injury or condition complained of; provided, however, the minority or incompetency when the cause of action arises will extend said period of limitation.

<u>B. Any action for damages for injury or death against any physician, health care provider, or hospital licensed under the laws of this state, based in tort and arising out of</u>



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

patient care, shall be brought within eight (8) years after the date of the act or omission that gives rise to the claim. This subsection is intended as a statute of repose and all actions which are not brought within eight (8) years after the act or omission giving rise to the claim are time barred. The provisions of this subsection do not extend the statute of limitations provided for in subsection A of this section.

SECTION 48. AMENDATORY 76 O.S. 2001, Section 25, is amended to read as follows:

Section 25. A. A professional review body, members and staff of such professional review body and persons who contract with such professional review body shall not be liable in any way in damages under any law of this state with respect to a professional review action taken in good faith by such professional review body.

B. Peer review information shall be private, confidential and privileged except that a peer review body shall be permitted to provide relevant peer review information to a state agency or board which licensed the professional whose competence and performance is being reviewed in a peer review process or who is the subject of a credentialing or recredentialing process. Notice that the information is being provided to a state agency or board shall be given to the professional.

C. In any civil action in which a plaintiff or legal representative of a plaintiff has alleged that the plaintiff has suffered injuries resulting from the negligence of the professional in providing professional services to the plaintiff, factual statements presented during a peer review process shall not be subject to discovery.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

D. In any civil action in which a plaintiff or legal representative of a plaintiff has alleged that the plaintiff has suffered injuries resulting from the negligence of the professional in providing professional services to the plaintiff, the recommendations made and action taken as a result of any peer review process shall not be subject to discovery.

E. No person involved in a peer review process may be permitted or required to testify regarding the peer review process in any civil proceeding or disclose by responses to written discovery requests any peer review information.

SECTION 49. AMENDATORY 76 O.S. 2001, Section 31, is amended to read as follows:

Section 31. A. Any volunteer shall be immune from liability in a civil action on the basis of any act or omission of the volunteer resulting in damage or injury if:

1. The volunteer was acting in good faith and within the scope of the volunteer's official functions and duties for a charitable organization or not-for-profit corporation; and

2. The damage or injury was not caused by gross negligence or willful and wanton misconduct by the volunteer.

B. In any civil action against a charitable organization or not-for-profit corporation for damages based upon the conduct of a volunteer, the doctrine of respondeat superior shall apply, notwithstanding the immunity granted to the volunteer in subsection A of this section.

C. Any person who, in good faith and without compensation, or expectation of compensation, donates or loans emergency service equipment to a volunteer shall not be liable for damages resulting from the use of such equipment by the volunteer, except when the donor of the equipment knew or should have known that the equipment was dangerous or faulty in a way which could result in bodily injury, death or damage to property.

D. Definitions.

1. For the purposes of this section, the term "volunteer" means a person who enters into a service or undertaking of the person's free will without compensation or expectation of compensation in money or other thing of value in order to provide a service, care, assistance, advice, or other benefit ~~where the person does not offer that type of service, care, assistance, advice or other benefit for sale to the public~~<u>; provided, being legally entitled to receive compensation for the service or undertaking performed shall not preclude a person from being considered a volunteer</u>.

2. For the purposes of this section, the term "charitable organization" means any benevolent, philanthropic, patriotic, eleemosynary, educational, social, civic, recreational, religious group or association or any other person performing or purporting to perform acts beneficial to the public.

3. For the purposes of this section, the term "not-for-profit corporation" means a corporation formed for a purpose not involving pecuniary gain to its shareholders or members, paying no dividends or other pecuniary remuneration, directly or indirectly, to its shareholders or members as such, and having no capital stock.



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

E. The provisions of this section shall not affect the liability that any person may have which arises from the operation of a motor vehicle, watercraft, or aircraft in rendering the service, care, assistance, advice or other benefit as a volunteer.

F. The immunity from civil liability provided for by this section shall extend only to the actions taken by a person rendering the service, care, assistance, advice, or other benefit as a volunteer, and does not confer any immunity to any person for actions taken by the volunteer prior to or after the rendering of the service, care, assistance, advice, or other benefit as a volunteer.

G. This section shall apply to all civil actions filed after the effective date of this act.

SECTION 50. AMENDATORY Section 34, Chapter 368, O.S.L. 2004 (76 O.S. Supp. 2006, Section 32), is amended to read as follows:

Section 32. A. This section shall be known and may be cited as the "Volunteer Medical Professional Services Immunity Act".

B. Any volunteer medical professional shall be immune from liability in a civil action on the basis of any act or omission of the volunteer medical professional resulting in damage or injury if:

1. The volunteer medical professional services were provided ~~at a free clinic where neither the professional nor the clinic receives~~ without any kind of compensation being paid for ~~any~~ the treatment provided ~~at the clinic~~;

2. The volunteer medical professional was acting in good faith and, if licensed, the services provided were within the scope of the license of the volunteer medical professional;

3. The volunteer medical professional commits the act or omission in the course of providing professional services;

4. The damage or injury was not caused by gross negligence or willful and wanton misconduct by the volunteer medical professional; and

5. Before the volunteer medical professional provides professional medical services, the volunteer medical professional and the person receiving the services or, if that person is a minor or otherwise legally incapacitated, the person's parent, conservator, legal guardian, or other person with legal responsibility for the care of the person <u>or animal</u> signs a written statement that acknowledges:

a. that the volunteer medical professional providing professional medical services has no expectation of and will receive no compensation of any kind for providing the professional medical services, and

b. an understanding of the limitations on the recovery of damages from the volunteer medical professional in exchange for receiving free professional medical services.

C. In the event the volunteer medical professional refers the patient covered by this section to another volunteer medical professional for additional treatment, the referred volunteer medical professional shall be subject to the provisions of this section if:



<u>UNDERLINED</u> language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

1. The referred volunteer medical professional provides services without receiving any compensation for the treatment;

2. The referred volunteer medical professional was acting in good faith and, if licensed, the services provided were within the scope of the license of the referred volunteer medical professional;

3. The referred volunteer medical professional commits the act or omission in the course of providing professional services;

4. The damage or injury was not caused by gross negligence or willful and wanton misconduct by the referred volunteer medical professional; and

5. Before the referred volunteer medical professional provides professional services, the referred volunteer medical professional and the person receiving the services or, if that person is a minor or otherwise legally incapacitated, the person's parent, conservator, legal guardian, or other person with legal responsibility for the care of the person or animal signs a written statement that acknowledges:

a. that the referred volunteer medical professional providing professional medical services has no expectation of and will receive no compensation of any kind for providing the professional medical services, and

b. an understanding of the limitations on the recovery of damages from the volunteer medical professional in exchange for receiving free professional medical services.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

D. The provisions of this section shall not affect the liability that any person may have which arises from the operation of a motor vehicle, watercraft, or aircraft in rendering the service, care, assistance, advice or other benefit as a volunteer medical professional.

E. The immunity from civil liability provided by this section shall extend only to the actions taken by a person rendering the service, care, assistance, advice or other benefit as a volunteer medical professional, and does not confer any immunity to any person for actions taken by the volunteer medical professional prior to or after the rendering of the service, care, assistance, advice or other benefit as a volunteer medical professional.

F. For the purpose of this section, the term "volunteer medical professional" and "referred volunteer medical professional" means a person who voluntarily provides professional medical services without compensation or expectation of compensation of any kind. A volunteer medical professional or a referred volunteer medical professional shall include the following licensed professionals:

1. Physician;

2. Physician's assistant;

3. Registered nurse;

4. Advanced nurse practitioner or vocational nurse;

5. Pharmacist;

6. Podiatrist;

7. Dentist or dental hygienist; ~~or~~



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

8. Optometrist;

9. Veterinarian; or

10. Registered veterinarian technician.

A volunteer medical professional shall be engaged in the active practice of a medical professional or retired from a medical profession, if still eligible to provide medical professional services within this state.

G. Any person participating in a Medical or Veterinary Reserve Corps and assisting with emergency management, emergency operations, or hazard mitigation in response to any emergency, man-made disaster, or natural disaster, or participating in public health initiatives endorsed by a city, county, or state health ~~department~~ or agricultural departments in the State of Oklahoma, shall not be liable for civil damages on the basis of any act or omission, if:

1. The person was acting in good faith and within the scope of the official duties and functions of the Medical or Veterinary Reserve Corps; and

2. The acts or omissions were not caused from gross, willful, or wanton acts of negligence.

H. This section shall apply to all civil actions, including civil actions against veterinarians, registered veterinary technicians, or Veterinary Reserve Corps filed on or after November 1, ~~2004~~ 2007.

SECTION 51. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 33 of Title 76, unless there is created a duplication in numbering, reads as follows:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

Sections 51 through 54 of this act shall be known and may be cited as the "Common Sense Consumption Act".

SECTION 52. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 34 of Title 76, unless there is created a duplication in numbering, reads as follows:

The intent of the Common Sense Consumption Act is to prevent frivolous lawsuits against manufacturers, packers, distributors, carriers, holders, sellers, marketers or advertisers of food products that comply with applicable statutory and regulatory requirements.

SECTION 53. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 35 of Title 76, unless there is created a duplication in numbering, reads as follows:

As used in the Common Sense Consumption Act:

1. "Claim" means any claim by or on behalf of a natural person, as well as any derivative or other claim arising therefrom asserted by or on behalf of any other individual, corporation, company, association, firm, partnership, society, joint-stock company, or any other entity, including any governmental entity or governmental officer, or private attorney;

2. "Generally known condition allegedly caused by or allegedly likely to result from long-term consumption" means a condition generally known to result or to likely result from the cumulative effect of consumption, and not from a single instance of consumption; and



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

3. "Knowing and willful" violation means that:

a. the conduct constituting the violation was committed with the intent to deceive or injure consumers or with actual knowledge that such conduct was injurious to consumers, and

b. the conduct constituting the violation was not required by regulations, orders, rules or other pronouncement of, or any statute administered by, a federal, state, or local government agency.

SECTION 54. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 36 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. Except as provided in subsection B of this section, a manufacturer, packer, distributor, carrier, holder, seller, marketer or advertiser of a food, as defined in Section 201(f) of the federal Food, Drug and Cosmetic Act (21 U.S.C., Section 321(f)), or an association of one or more such entities, shall not be subject to civil liability arising under any law of this state, including all statutes, regulations, rules, common law, public policies, court or administrative decisions or decrees, or other state action having the effect of law, for any claim arising out of weight gain, obesity, a health condition associated with weight gain or obesity, or other generally known condition allegedly caused by or allegedly likely to result from long-term consumption of food.

B. Subsection A of this section shall not preclude civil liability if the claim of weight gain, obesity, health condition associated with weight gain or obesity, or other generally



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

known condition allegedly caused by or allegedly likely to result from long-term consumption of food is based on:

1. A material violation of an adulteration or misbranding requirement prescribed by statute or regulation of this state or the United States of America and the claimed injury was proximately caused by such violation; or

2. Any other material violation of federal or state law applicable to the manufacturing, marketing, distribution, advertising, labeling, or sale of food; provided, that such violation is knowing and willful, and the claimed injury was proximately caused by such violation.

C. In any action exempted under paragraph 1 of subsection B of this section, the complaint initiating such action shall state with particularity the following: the statute, regulation or other law of this state or of the United States that was allegedly violated; the facts that are alleged to constitute a material violation of such statute or regulation; and the facts alleged to demonstrate that such violation proximately caused actual injury to the plaintiff. In any action exempted under paragraph 2 of subsection B of this section, in addition to the foregoing pleading requirements, the complaint initiating such action shall state with particularity facts sufficient to support a reasonable inference that the violation was with intent to deceive or injure consumers or with the actual knowledge that such violation was injurious to consumers. For purposes of applying the Common Sense Consumption Act, the foregoing pleading requirements are hereby deemed part of the substantive law of this state and not merely in the nature of procedural provisions.

D. In any action exempted under subsection B of this section, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party. During the pendency of any stay of discovery pursuant to this subsection, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations, including electronically recorded or stored data, and tangible objects that are in the custody or control of such party and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under Section 3234 of Title 12 of the Oklahoma Statutes.

E. The provisions of the Common Sense Consumption Act shall apply to all covered claims pending on November 1, 2007, and all claims filed thereafter, regardless of when the claim arose.

SECTION 55. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 101 of Title 76, unless there is created a duplication in numbering, reads as follows:

Sections 55 through 64 of this act shall be known and may be cited as the "Product Liability Act".

SECTION 56. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 102 of Title 76, unless there is created a duplication in numbering, reads as follows:

In the Product Liability Act:

1. "Claimant" means a party seeking relief, including a plaintiff, counterclaimant, or cross-claimant;

2. "Product liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories;

3. "Seller" means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof; and

4. "Manufacturer" means a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce.

SECTION 57. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 103 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action, a manufacturer or seller shall not be liable if:

1. The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

2. The product is a common consumer product intended for personal consumption.

B. For purposes of this section, the term "product liability action" does not include an action based on manufacturing defect or breach of an express warranty.

SECTION 58. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 104 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action in which a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that:

1. There was a safer alternative design; and

2. The defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.

B. In this section, "safer alternative design" means a product design other than the one actually used that in reasonable probability:

1. Would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and

2. Was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

C. This section does not supersede or modify any statute, regulation, or other law of this state or of the United States that relates to liability for, or to relief in the form of,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

abatement of nuisance, civil penalties, cleanup costs, cost recovery, an injunction, or restitution that arises from contamination or pollution of the environment.

D. This section does not apply to:

1. A cause of action based on a toxic or environmental tort; or

2. A drug or device, as those terms are defined in the federal Food, Drug, and Cosmetic Act (21 U.S.C., Section 321).

E. This section is not declarative, by implication or otherwise, of the common law with respect to any product and shall not be construed to restrict the courts of this state in developing the common law with respect to any product which is not subject to this section.

SECTION 59. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 105 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action brought against a manufacturer or seller of a firearm or ammunition that alleges a design defect in the firearm or ammunition, the burden is on the claimant to prove, in addition to any other elements that the claimant must prove, that:

1. The actual design of the firearm or ammunition was defective, causing the firearm or ammunition not to function in a manner reasonably expected by an ordinary consumer of firearms or ammunition; and

2. The defective design was a proximate cause of the personal injury, property damage, or death.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

B. The claimant may not prove the existence of the defective design by a comparison or weighing of the benefits of the firearm or ammunition against the risk of personal injury, property damage, or death posed by its potential to cause such injury, damage, or death when discharged.

SECTION 60. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 106 of Title 76, unless there is created a duplication in numbering, reads as follows:

A seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves:

1. That the seller participated in the design of the product;

2. That the seller altered or modified the product and the claimant's harm resulted from that alteration or modification;

3. That the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation onto the assembled product;

4. That:

a. the seller exercised substantial control over the content of a warning or instruction that accompanied the product,

b. the warning or instruction was inadequate, and

c. the claimant's harm resulted from the inadequacy of the warning or instruction;

5. That:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

a. the seller made an express factual representation about an aspect of the product,

b. the representation was incorrect,

c. the claimant relied on the representation in obtaining or using the product, and

d. if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;

6. That:

a. the seller actually knew of a defect to the product at the time the seller supplied the product, and

b. the claimant's harm resulted from the defect; or

7. That the manufacturer of the product is:

a. insolvent, or

b. not subject to the jurisdiction of the court.

SECTION 61. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 107 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action alleging that an injury was caused by a failure to provide adequate warnings or information with regard to a pharmaceutical product, there is a rebuttable presumption that the defendant or defendants, including a health



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

care provider, manufacturer, distributor, and prescriber, are not liable with respect to the allegations involving failure to provide adequate warnings or information if:

1. The warnings or information that accompanied the product in its distribution were those approved by the United States Food and Drug Administration for a product approved under the federal Food, Drug, and Cosmetic Act (21 U.S.C., Section 301 et seq.), as amended, or Section 351, Public Health Service Act (43 U.S.C., Section 262), as amended; or

2. The warnings provided were those stated in monographs developed by the United States Food and Drug Administration for pharmaceutical products that may be distributed without an approved new drug application.

B. The claimant may only rebut the presumption provided for in subsection A of this section as to each defendant by establishing that:

1. The defendant, before or after premarket approval or licensing of the product, withheld from or misrepresented to the United States Food and Drug Administration required information that was material and relevant to the performance of the product and was causally related to the claimant's injury;

2. The pharmaceutical product as sold or prescribed in the United States by the defendant after the effective date of an order of the United States Food and Drug Administration to remove the product from the market or to withdraw its approval of the product;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

3. a. The defendant recommended, promoted, or advertised the pharmaceutical product for an indication not approved by the United States Food and Drug Administration,

b. The product was used as recommended, promoted, or advertised, and

c. The claimant's injury was causally related to the recommended, promoted, or advertised use of the product;

4. a. The defendant prescribed the pharmaceutical product for an indication not approved by the United States Food and Drug Administration, and

b. The product was used as prescribed, and

c. The claimant's injury was causally related to the prescribed use of the product; or

5. The defendant, before or after premarket approval or licensing of the product, engaged in conduct that would constitute a violation of 18 U.S.C., Section 201 and that conduct caused the warnings or instructions approved for the product by the United States Food and Drug Administration to be inadequate.

SECTION 62. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 108 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the formula, labeling, or



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

design for the product complied with mandatory safety standards or regulations adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm.

B. The claimant may rebut the presumption in subsection A of this section by establishing that:

1. The mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage; or

2. The manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action.

C. In a product liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant allegedly caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the product was subject to premarket licensing or approval by the federal government, or an agency of the federal government, that the manufacturer complied with all of the government's or agency's procedures and requirements with respect to premarket licensing or approval, and that after full consideration of the product's risks and benefits the product was approved or licensed for sale by the government or agency. The claimant may rebut this presumption by establishing that:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

1. The standards or procedures used in the particular premarket approval or licensing process were inadequate to protect the public from unreasonable risks of injury or damage; or

2. The manufacturer, before or after premarket approval or licensing of the product, withheld from or misrepresented to the government or agency information that was material and relevant to the performance of the product and was causally related to the claimant's injury.

D. This section does not extend to manufacturing flaws or defects even though the product manufacturer has complied with all quality control and manufacturing practices mandated by the federal government or an agency of the federal government.

E. This section does not extend to products covered by Section 54 of this act.

SECTION 63. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 109 of Title 76, unless there is created a duplication in numbering, reads as follows:

In a product liability action, if measures are taken which, if taken previously, would have made an event less likely to occur, evidence of the subsequent measures is not admissible to prove a defect in a product, negligence, or culpable conduct in connection with the event. In a product liability action brought under any theory or doctrine, if the feasibility of a design or change in warnings is not controverted, then a subsequent design change or change in warnings shall not be admissible into evidence. This section shall not require the exclusion of evidence of subsequent measures when offered for another purpose such as proving ownership, control, or impeachment.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

SECTION 64. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 110 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In any product liability action in which the plaintiff seeks damages for bodily injuries or death, the attorney for the plaintiff or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the complaint, declaring one of the following:

1. That the plaintiff or attorney has consulted and reviewed the facts of the case with a qualified expert, as defined in subsection C of this section, who has determined in a written report, after examination of the product or a review of literature pertaining to the product, that:

a. in any action based on strict tort liability, the product contained specific identifiable defects having a potential for injury beyond that which would be contemplated by the ordinary user of the product and was unreasonably dangerous and in a defective condition when it left the control of the manufacturer, or

b. in any other action, those acts or omissions would give rise to fault, and

c. in any action based on any theory or doctrine, the defective condition of the product or other fault was a proximate cause of the plaintiff's injury; or



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

2. That the plaintiff or attorney was unable to obtain a consultation required by paragraph 1 of this subsection because a statute of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations. If an affidavit is executed pursuant to this paragraph, the affidavit required by this subsection shall be filed within ninety (90) days after the filing of the complaint. The defendant shall be excused from answering or otherwise pleading until thirty (30) days after being served with an affidavit required by this subsection. No plaintiff shall be afforded the ninety-day extension of time provided by this paragraph if the plaintiff has voluntarily dismissed an action and has subsequently commenced a new action.

B. If the defective condition referred to in the written report required by paragraph 1 of subsection A of this section is based on a design defect, the plaintiff or attorney shall further state that the qualified expert has identified in the written report either:

1. A feasible alternative design that existed at the time the product left the control of the manufacturer; or

2. An applicable government or industry standard to which the product did not conform.

C. A "qualified expert", for the purposes of this section, means someone who possesses scientific, technical, or other specialized knowledge regarding the product at issue or similar products and who is qualified to prepare the report required by this section.

D. A copy of the written report required by this section shall be attached to the original and all copies of the complaint.

E. The failure to file an affidavit required by this section shall be grounds for dismissal.

F. This section shall apply to any cause of action filed on or after November 1, 2007.

SECTION 65. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 71 of Title 76, unless there is created a duplication in numbering, reads as follows:

Sections 65 through 71 of this act shall be known and may be cited as the "Asbestos and Silica Claims Priorities Act."

SECTION 66. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 72 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. FINDINGS. The Legislature finds that:

1. Asbestos is a mineral that was widely used prior to the mid-1970s for insulation, fireproofing, and other purposes;

2. Many American workers were exposed to asbestos, especially during World War II;

3. Long-term exposure to asbestos has been associated with mesothelioma and lung cancer, as well as nonmalignant conditions, such as asbestosis, pleural plaques, and diffuse bilateral pleural thickening;

4. The United States Supreme Court has said that this country is experiencing an "asbestos-litigation crisis";



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

5. Reports indicate that up to ninety percent (90%) of asbestos claims are filed by individuals who allege that they have been exposed to asbestos, but who suffer no demonstrable asbestos-related impairment. Lawyer-sponsored x-ray screenings of workers at occupational locations are used to amass large numbers of claimants, the vast majority of whom are unimpaired;

6. The costs of compensating unimpaired claimants and litigating their claims jeopardizes the ability of defendants to compensate people with cancer and other serious diseases; threatens the savings, retirement benefits, and jobs of current and retired employees; and adversely affects the communities in which the defendants operate;

7. At least seventy-eight companies have declared bankruptcy due to the burden of asbestos litigation. The rate of asbestos-driven bankruptcies has accelerated. Between 2000 and 2004, there were more asbestos-related bankruptcy filings than in either of the prior two decades;

8. Bankruptcies have led plaintiffs and their lawyers to expand their search for solvent peripheral defendants. The number of asbestos defendants now includes over eight thousand five hundred companies, affecting many small- and medium-size companies in industries that cover eighty-five percent (85%) of the United States economy;

9. Efforts to address asbestos litigation may increase the number of silica-related filings;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

10. Silica is a naturally occurring mineral and is the second most common constituent of the earth's crust. Crystalline silica in the form of quartz is present in sand, gravel, soil, and rocks;

11. Silica-related illnesses, including silicosis, can develop from the prolonged inhalation of respirable silica dust. Silicosis was widely recognized as an occupational disease many years ago;

12. Silica claims, like asbestos claims, often involve individuals with no demonstrable impairment. Claimants frequently are identified through the use of interstate, for-profit, screening companies;

13. Silica screening processes have been found subject to substantial abuse and potential fraud in federal silica litigation (In re Silica Prods. Liab. Litig. (MDL No. 1553), 398 F. Supp. 2d 563 (S.D. Tex. 2005));

14. Concerns about statutes of limitations may prompt unimpaired asbestos and silica claimants to bring lawsuits prematurely to protect against losing their ability to assert a claim in the future should they develop an impairing condition;

15. Sound public policy requires that the claims of persons with no present physical impairment from asbestos or silica exposure be deferred to give priority to physically impaired claimants, and to safeguard the jobs, benefits, and savings of workers in affected companies; and

16. Claimant consolidations, joinders, and similar procedures used by some courts to deal with the mass of asbestos and silica cases can undermine the appropriate functioning of the court system, deny due process to plaintiffs and defendants, and



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

further encourage the filing of thousands of cases by persons who are not sick and likely will never develop an impairing condition caused by exposure to asbestos or silica.

B. PURPOSES. The purposes of the Asbestos and Silica Claims Priorities Act are to:

1. Give priority to current claimants who can demonstrate an asbestos-related or silica-related impairment based on reasonable, objective medical criteria;

2. Toll the running of statutes of limitations for persons who have been exposed to asbestos or to silica, but who have no present asbestos-related or silica-related impairment; and

3. Enhance the ability of the courts to supervise and control asbestos and silica litigation.

SECTION 67. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 72 of Title 76, unless there is created a duplication in numbering, reads as follows:

As used in the Asbestos and Silica Claims Priorities Act, the term:

1. "AMA Guides to the Evaluation of Permanent Impairment" means the American Medical Association's "Guides to the Evaluation of Permanent Impairment" in effect at the time of the performance of any examination or test on the exposed person required under the Asbestos and Silica Claims Priorities Act;

2. "Asbestos" means chrysotile, amosite, crocidolite, tremolite asbestos, anthophyllite asbestos, actinolite asbestos, winchite, richterite, asbestiform amphibole minerals, and any of these minerals that have been chemically treated or altered,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

including all minerals defined as asbestos in 29 C.F.R. 1910 at the time an asbestos claim is made;

3. "Asbestos claim" means any claim for damages, losses, indemnification, contribution, or other relief of whatever nature arising out of, based on, or in any way related to the alleged health effects associated with the inhalation or ingestion of asbestos, including:

a. loss of consortium,

b. personal injury or death,

c. mental or emotional injury,

d. risk or fear of disease or other injury,

e. the costs of medical monitoring or surveillance, to the extent such claims are recognized under state law, or

f. any claim made by or on behalf of any person exposed to asbestos, or a representative, spouse, parent, child, or other relative of the exposed person.

The term "asbestos claim" does not include a claim for compensatory benefits pursuant to a workers' compensation law or a veterans' benefits program;

4. "Asbestosis" means bilateral diffuse interstitial fibrosis of the lungs caused by inhalation of asbestos;

5. "Board-certified internist" means a qualified physician:

a. who is certified by the American Board of Internal Medicine, and

b. whose certification was current at the time of:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

(1) the performance of any examination, and

(2) rendition of any report required under the Asbestos and Silica Claims Priorities Act;

6. “Board-certified occupational medicine specialist” means a qualified physician:

a. who is certified in the subspecialty of occupational medicine by the American Board of Preventive Medicine, and

b. whose certification was current at the time of:

(1) the performance of any examination, and

(2) rendition of any report required under the Asbestos and Silica Claims Priorities Act;

7. “Board-certified pathologist” means a qualified physician:

a. who holds primary certification in anatomic pathology or combined anatomic or clinical pathology from the American Board of Pathology,

b. whose professional practice is principally in the field of pathology and involves regular evaluation of pathology materials obtained from surgical or postmortem specimens, and

c. whose certification was current at the time of:

(1) any slide or tissue examination, and

(2) rendition of any report required under the Asbestos and Silica Claims Priorities Act;

8. “Board-certified pulmonologist” means a qualified physician:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

a. who is certified in the subspecialty of pulmonary medicine by the American Board of Internal Medicine, and

b. whose certification was current at the time of:

(1) the performance of any examination, and

(2) rendition of any report required under the Asbestos and Silica Claims Priorities Act;

9. "Certified B-reader" means a person who has successfully passed the B-reader certification examination for x-ray interpretation sponsored by the National Institute for Occupational Safety and Health, and whose certification was current at the time of any readings required under the Asbestos and Silica Claims Priorities Act;

10. "Chest x-rays" means radiographic films taken in accordance with all applicable state and federal standards and in the posterior-anterior view;

11. "Claimant" means any party asserting an asbestos or silica claim, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff; if a claim is brought through or on behalf of an estate, the term includes the claimant's decedent; if a claim is brought through or on behalf of a minor or incompetent, the term includes the claimant's parent or guardian;

12. "DLCO" means diffusing capacity of the lung for carbon monoxide, which is the measurement of carbon monoxide transfer from inspired gas to pulmonary capillary blood;

13. "Exposed person" means a person whose claimed exposure to respirable asbestos or respirable silica is the basis for an asbestos or silica claim;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

14. "FEV-1" means forced expiratory volume in the first second, which is the maximal volume of air expelled in one (1) second during performance of simple spirometric tests;

15. "FVC" means forced vital capacity, which is the maximal volume of air expired with maximum effort from a position of full inspiration;

16. "ILO scale" means the system for the classification of chest x-rays set forth in the International Labor Office's "Guidelines for the Use of ILO International Classification of Radiographs of Pneumoconioses" in effect at the time of the performance of any examination or test on the exposed person required under the Asbestos and Silica Claims Priorities Act;

17. "Pathological evidence of asbestosis" means pathological asbestosis graded 1(B) or higher under the criteria published in the "Asbestos-Associated Diseases", Special Issue of the Archives of Pathological and Laboratory Medicine, Vol. 106, No. 11, Appendix 3 (Oct. 8, 1982);

18. "Pathological evidence of silicosis" mean demonstration of classic silicotic nodules exceeding one (1) centimeter in diameter as set forth in 112 "Archives of Pathology & Laboratory Medicine" 673-720 (1988);

19. "Predicted lower limit of normal" means the calculated standard convention lying at the fifth percentile, below the upper ninety-five percent (95%) of the reference population, based on age, height, and gender, according to the recommendations of the American Thoracic Society as referenced in the AMA's "Guides to the Evaluation of Permanent Impairment";



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

20. “Qualified physician” means a licensed, Board-certified internist, occupational medicine specialist, pathologist or pulmonologist:

a. who has personally conducted a physical examination of the exposed person, or in the case of a Board-certified pathologist, has examined tissue samples or pathological slides of the exposed person, or if the exposed person is deceased, based upon a detailed review of the medical records and existing tissue samples and pathological slides of the deceased person,

b. who is treating or treated the exposed person and has or had a doctor-patient relationship with the exposed person at the time of the physical examination, or in the case of a Board-certified pathologist, has examined tissue samples or pathological slides of the exposed person at the request of such treating physician,

c. who receives or received payment for the exposed person’s diagnosis, examination, and treatment from the exposed person or claimant or from the exposed person’s health maintenance organization or other medical provider, and such payment is not subject to reimbursement by or on behalf of anyone providing legal services to the claimant, and

d. whose diagnosing, examining, testing, screening or treating of the exposed person was not, directly or indirectly, premised upon and did not require the exposed person or claimant to retain the legal services of an attorney or law firm;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

21. "Radiological evidence of asbestosis" means an ILO quality 1 or 2 chest x-ray read by a certified B-reader as showing, according to the ILO scale, bilateral small irregular opacities (s, t, or u) graded 1/1 or higher;

22. "Radiological evidence of diffuse bilateral pleural thickening" means an ILO quality 1 or 2 chest x-ray read by a certified B-reader as showing, according to the ILO scale, diffuse bilateral pleural thickening graded b2 or higher including blunting of the costophrenic angle;

23. "Radiological evidence of silicosis" means an ILO quality 1 or 2 chest x-ray read by a certified B-reader as showing, according to the ILO scale, either:

a. bilateral predominantly nodular opacities (p, q, or r) occurring primarily in the upper lung fields, graded 1/1 or higher, or

b. A-, B-, or C-sized opacities representing complicated silicosis (also known as progressive massive fibrosis);

24. "Silica" means a respirable crystalline form of the naturally occurring mineral form of silicon dioxide, including quartz, cristobalite, and tridymite;

25. "Silica claim" means any claim for damages, losses, indemnification, contribution, or other relief of whatever nature arising out of, based on, or in any way related to the alleged health effects associated with the inhalation of silica, including:

a. loss of consortium,

b. personal injury or death,

c. mental or emotional injury,

d. risk or fear of disease or other injury,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

e. the costs of medical monitoring or surveillance, to the extent such claims are recognized under state law, or

f. any claim made by or on behalf of any person exposed to silica, or a representative, spouse, parent, child, or other relative of the exposed person.

The term “silica claim” does not include a claim for compensatory benefits pursuant to a workers’ compensation law or a veterans’ benefits program;

26. “Silicosis” means fibrosis of the lung produced by inhalation of silica, including acute silicosis, accelerated silicosis, and chronic silicosis;

27. “Substantial contributing factor”:

a. in the context of an asbestos claim, means that:

(1) the claimant must identify:

(a) the specific asbestos product to which the exposed person was exposed or the specific premises at which the exposed person was exposed,

(b) the location and duration of such exposure, and

(c) the specific circumstances of such exposure,

(2) such exposure:

(a) was more than incidental contact with the product and location, and

(b) took place on a regular basis over an extended period of time in physical proximity to the exposed person,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

(3) the exposed person inhaled respirable asbestos fibers in sufficient quantities to be capable of causing harm, and

(4) a qualified physician has determined with a reasonable degree of medical certainty that the exposed person's impairment would not have occurred but for the specific asbestos exposure, and

b. in the context of a silica claim, means that:

(1) the claimant must identify:

(a) the specific silica product to which the exposed person was exposed,

(b) the location and duration of such exposure, and

(c) the specific circumstances of such exposure,

(2) such exposure:

(a) was more than incidental contact with the product and location, and

(b) took place on a regular basis over an extended period of time in physical proximity to the exposed person,

(3) the exposed person inhaled respirable silica particles in sufficient quantities to be capable of causing harm, and

(4) a qualified physician has determined with a reasonable degree of medical certainty that the exposed person's impairment would not have occurred but for the specific silica exposure;



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

28. "Supporting test results" means copies of the B-reading, pulmonary function tests (including printouts of the flow volume loops, volume time curves, DLCO graphs, and data for all trials and all other elements required to demonstrate compliance with the equipment, quality, interpretation and reporting standards set forth herein) lung volume tests, reports of x-ray examinations, diagnostic imaging of the chest, pathology reports, and all other tests reviewed by the diagnosing, qualified physician in reaching the physician's conclusions;

29. "Total lung capacity" means the volume of gas contained in the lungs at the end of a maximal inspiration;

30. "Veterans' benefits program" means a program for benefits in connection with military service administered by the Veterans' Administration under Title 38, U.S.C.; and

31. "Workers' compensation law":

a. means a law respecting a program administered by a state or the United States to provide compensatory benefits, funded by a responsible employer or its insurance carrier, for occupational diseases or injuries or for disability or death caused by occupational diseases or injuries,

b. includes the Longshore and Harbor Workers' Compensation Act (33 U.S.C., Section 901 et seq.) and the Federal Employees' Compensation Act (Chap. 81 of Title 5, U.S.C.), and

c. does not include:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

(1) the Act of April 22, 1908, commonly known as the Federal Employers' Liability Act (45 U.S.C., Section 51 et seq.), or

(2) any claim for exemplary or punitive damages by an employee, estate, heir, representative or any other person or entity against the employer of an exposed person arising out of or related to asbestos-related injury or silica-related injury.

SECTION 68. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 73 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. IMPAIRMENT ESSENTIAL ELEMENT OF CLAIM. To bring or maintain an asbestos or silica claim, an exposed person must have a physical impairment and present prima facie evidence that exposure to asbestos or silica was a substantial contributing factor to that impairment. The prima facie showing shall be made as to each defendant against whom a claimant alleges an asbestos or silica claim.

B. PRELIMINARY PROCEEDINGS.

1. FILING OF REPORT. The plaintiff in any civil action alleging an asbestos or silica claim shall file together with the complaint or other initial pleading a written report and supporting test results constituting prima facie evidence of the claimant's asbestos-related or silica-related impairment meeting the requirements of this section. The written report shall be prepared by the diagnosing, qualified physician and shall not be prepared by a lawyer or person working for or on behalf of any lawyer or law firm.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

2. TIMING. For any asbestos or silica claim pending on the effective date of the Asbestos and Silica Claims Priorities Act, the claimant shall file the written report and supporting test results described in paragraph 1 of this subsection not later than one hundred eighty (180) days after the effective date of the Asbestos and Silica Claims Priorities Act or not later than sixty (60) days prior to the commencement of trial, whichever occurs first.

3. DEFENDANT'S RIGHT TO CHALLENGE. The defendant shall be afforded a reasonable opportunity to challenge the adequacy of the proffered prima facie evidence of impairment.

4. DISMISSAL. The claim shall be dismissed without prejudice upon a finding of failure to make the required prima facie showing.

C. NEW CLAIM REQUIRED INFORMATION.

1. IN GENERAL. All asbestos claims and silica claims filed in this state on or after the effective date of the Asbestos and Silica Claims Priorities Act shall include a sworn information form containing all of the following:

a. the claimant's name, address, date of birth, social security number, and marital status,

b. the exposed person's name, last-known address, date of birth, social security number, and marital status,

c. if the claimant alleges exposure to asbestos or silica through another person, the name, address, date of birth, social security number, marital status, for each person by which claimant alleges exposure



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

(hereafter the "index person") and the claimant's relationship to each such person,

d. for each alleged exposure of the exposed person and for each index person:

(1) the specific location and manner of each such exposure,

(2) the beginning and ending dates of each such exposure, and

(3) the identity of the manufacturer of the specific asbestos or silica product to which the exposed person or index person was exposed or the specific premises at which the exposed person or index person was exposed,

e. the occupation and name of the employer of the exposed person at the time of each alleged exposure,

f. the identity of the defendant or defendants against whom the claimant asserts a claim,

g. the specific disease related to asbestos or silica claimed to exist, and

h. any:

(1) supporting documentation of the condition claimed to exist, and

(2) documentation to support the claimant or index person's identification of the asbestos or silica product to which such person was exposed or the specific premises at which the person was exposed.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

2. INDIVIDUAL REQUIREMENTS. All asbestos claims and silica claims along with sworn information forms must be individually filed. No claims on behalf of a group or class of persons shall be permitted.

D. PRIMA FACIE EVIDENCE OF PHYSICAL IMPAIRMENT FOR NONMALIGNANT ASBESTOS CLAIMS.

1. IN GENERAL. No person shall bring or maintain an asbestos claim related to an alleged nonmalignant asbestos-related condition in the absence of a prima facie showing of physical impairment of the exposed person for which asbestos exposure is a substantial contributing factor.

2. PRIMA FACIE SHOWING. The prima facie showing under paragraph 1 of this subsection shall be made as to each defendant and include a detailed narrative medical report and diagnosis by a qualified physician that includes all of the following:

a. evidence verifying that the diagnosing, qualified physician has taken a detailed occupational, exposure, medical, and smoking history from the exposed person or, if that person is deceased, from a person who is knowledgeable regarding such history,

b. evidence sufficient to demonstrate that at least fifteen (15) years have elapsed between the exposed person's first exposure to asbestos and the date of diagnosis,

c. a determination by the diagnosing, qualified physician, on the basis of a personal medical examination and pulmonary function testing of the exposed person (or, if the exposed person is deceased, based upon the



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

person's medical records) that the claimant has (or deceased person had) a permanent respiratory impairment rating of at least Class 2 as defined by and evaluated pursuant to the AMA's "Guides to the Evaluation of Permanent Impairment",

d. evidence verifying that the exposed person has asbestosis or diffuse bilateral pleural thickening, based at a minimum on radiological or pathological evidence of asbestosis or radiological evidence of diffuse bilateral pleural thickening,

e. a determination by the diagnosing, qualified physician that asbestosis or diffuse bilateral pleural thickening, rather than chronic obstructive pulmonary disease, is a substantial contributing factor to the exposed person's physical impairment, based at a minimum on a determination that the exposed person has:

(1) forced vital capacity below the predicted lower limit of normal and FEV1/FVC ratio (using actual values) at or above the predicted lower limit of normal, or

(2) total lung capacity, by plethysmography or timed gas dilution, below the predicted lower limit of normal, and

f. verification that the diagnosing, qualified physician has concluded that the exposed person's impairment was not more probably the result of causes other than asbestos exposure as revealed by the exposed person's occupational, exposure, medical, and smoking history. A



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

conclusion which states that the impairment is consistent or compatible with asbestos exposure or asbestos-related disease does not meet the requirements of this paragraph.

E. PRIMA FACIE EVIDENCE OF ASBESTOS-RELATED CANCER OTHER THAN MESOTHELIOMA.

1. IN GENERAL. No person shall bring or maintain an asbestos claim related to an alleged asbestos-related cancer, other than mesothelioma, in the absence of a prima facie showing of a primary cancer for which exposure to asbestos was a substantial contributing factor.

2. PRIMA FACIE SHOWING. The prima facie showing under paragraph 1 of this subsection shall be made as to each defendant and include a detailed narrative medical report and diagnosis by a qualified physician that includes all of the following:

a. evidence verifying that the diagnosing, qualified physician has taken a detailed occupational, exposure, medical, and smoking history from the exposed person or, if that person is deceased, from a person who is knowledgeable regarding such history,

b. evidence sufficient to demonstrate that at least fifteen (15) years have elapsed between the exposed person's first exposure to asbestos and the date of diagnosis,

c. evidence verifying that the exposed person has asbestosis, based at a minimum on radiological or pathological evidence of asbestosis, and



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

d. the diagnosing, qualified physician has concluded that the claimant's cancer was not more probably the result of causes other than asbestos exposure as revealed by the exposed person's occupational, exposure, medical, and smoking history. A conclusion which states that the cancer is consistent or compatible with asbestos exposure or asbestos-related disease does not meet the requirements of this paragraph.

F. PRIMA FACIE EVIDENCE OF ASBESTOS-RELATED MESOTHELIOMA.

1. IN GENERAL. No person shall bring or maintain an asbestos claim related to alleged mesothelioma in the absence of a prima facie showing of an asbestos-related malignant tumor with a primary site of origin in the pleura, the peritoneum, or pericardium.

2. PRIMA FACIE SHOWING. The prima facie showing under paragraph 1 of this subsection shall be made as to each defendant and include a detailed narrative medical report by a qualified Board-certified pathologist certifying the diagnosis of mesothelioma and a report by a qualified physician certifying that:

a. exposure to asbestos was a substantial contributing factor to the diagnosed mesothelioma, and

b. the mesothelioma was not more probably the result of causes other than asbestos exposure as revealed by the exposed person's occupational, exposure, medical, and smoking history.

G. PRIMA FACIE EVIDENCE OF PHYSICAL IMPAIRMENT FOR SILICA CLAIMS.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

1. IN GENERAL. No person shall bring or maintain a silica claim related to an alleged silica-related condition, other than a silica-related cancer, in the absence of a prima facie showing of physical impairment as a result of a medical condition for which exposure to silica was a substantial contributing factor.

2. PRIMA FACIE SHOWING. The prima facie showing under paragraph 1 of this subsection shall be made as to each defendant and include a detailed narrative medical report and diagnosis by a qualified physician that includes all of the following:

a. evidence verifying that the diagnosing, qualified physician has taken a detailed occupational, exposure, medical, and smoking history from the exposed person or, if that person is deceased, from a person who is knowledgeable regarding such history,

b. evidence verifying that the exposed person has silicosis, based at a minimum on radiological or pathological evidence of silicosis, or acute silicosis,

c. evidence verifying there has been a sufficient latency period for the applicable type of silicosis,

d. a determination by the diagnosing, qualified physician, on the basis of a personal medical examination and pulmonary function testing of the exposed person (or, if the exposed person is deceased, based upon the person's medical records) that the claimant has (or deceased person had) a permanent respiratory impairment rating of at least Class 2 as



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

defined by and evaluated pursuant to the AMA's "Guides to the Evaluation of Permanent Impairment", and

e. verification that the diagnosing, qualified physician has concluded that the exposed person's impairment was not more probably the result of causes other than silica exposure as revealed by the exposed person's occupational, exposure, medical, and smoking history. A conclusion which states that the impairment is consistent or compatible with silica exposure or silica-related disease does not meet the requirements of this paragraph.

H. PRIMA FACIE EVIDENCE OF SILICA-RELATED CANCER.

1. IN GENERAL. No person shall bring or maintain a silica claim related to an alleged silica-related cancer in the absence of a prima facie showing of a primary cancer for which exposure to silica was a substantial contributing factor.

2. PRIMA FACIE. The prima facie showing Under paragraph 1 of this subsection shall be made as to each defendant and include a detailed narrative medical report and diagnosis by a qualified physician that includes all of the following:

a. evidence verifying that the diagnosing, qualified physician has taken a detailed occupational, exposure, medical, and smoking history from the exposed person or, if that person is deceased, from a person who is knowledgeable regarding such history,

b. evidence verifying that the exposed person has silicosis, based at a minimum on radiological or pathological evidence of silicosis,



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

c. evidence sufficient to demonstrate that at least fifteen (15) years have elapsed between the exposed person's first exposure to silica and the date of diagnosis, and

d. verification that the diagnosing, qualified physician has concluded that the claimant's cancer was not more probably the result of causes other than silica exposure as revealed by the exposed person's occupational, exposure, medical, and smoking history. A conclusion which states that the cancer is consistent or compatible with silica exposure or silica-related disease does not meet the requirements of this paragraph.

I. COMPLIANCE WITH TECHNICAL STANDARDS. Evidence relating to physical impairment under this section, including pulmonary function testing and diffusing studies, shall:

1. Comply with the quality controls, equipment requirements, methods of calibration and techniques set forth in the AMA's "Guides to the Evaluation of Permanent Impairment" and all standards set forth in the "Official Statements of the American Thoracic Society" which are in effect on the date of any examination or pulmonary function testing of the exposed person required by the Asbestos and Silica Claims Priorities Act;

2. Not be obtained and may not be based on testing or examinations that violate any law, regulation, licensing requirement, or medical code of practice of the state in which the examination, test, or screening was conducted, or of this state; and



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

3. Not be obtained under the condition that the claimant retains the legal services of the attorney or law firm sponsoring the examination, test, or screening.

SECTION 69. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 74 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. NO PRESUMPTION AT TRIAL. Evidence relating to the prima facie showings required under the Asbestos and Silica Claims Priorities Act shall not create any presumption that the claimant has an asbestos- or silica-related injury or impairment, and shall not be conclusive as to the liability of any defendant.

B. ADMISSIBILITY OF EVIDENCE. No evidence shall be offered at trial, and the jury shall not be informed of:

1. The grant or denial of a motion to dismiss an asbestos or silica claim under the provisions of the Asbestos and Silica Claims Priorities Act; or

2. The provisions of the Asbestos and Silica Claims Priorities Act with respect to what constitutes a prima facie showing of asbestos- or silica-related impairment.

C. DISCOVERY. Until such time as the trial court enters an order determining that the claimant has established prima facie evidence of impairment, no asbestos or silica claim shall be subject to discovery, except discovery related to establishing or challenging the prima facie evidence or by order of the trial court upon motion of one of the parties and for good cause shown.

D. CONSOLIDATION.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

1. A court may consolidate for trial any number and type of asbestos or silica claims with the consent of all the parties. In the absence of such consent, the court may consolidate for trial only asbestos claims or silica claims relating to the exposed person and members of the household of the exposed person.

2. No class action or any other form of mass aggregation claim filing relating to more than one exposed person, except claims relating to the exposed person and members of his or her household, shall be permitted for asbestos or silica claims.

3. The provisions of this section do not preclude consolidation of cases by court order for pretrial or discovery purposes.

E. FORUM NON CONVENIENS.

1. As to any asbestos or silica claim filed on or after the date of enactment of the Asbestos and Silica Claims Priorities Act, or that is pending on the date of enactment of the Asbestos and Silica Claims Priorities Act but that has not commenced trial or any new trial or retrial following motion, appeal, or otherwise with the presentation of evidence to the trier of fact prior to the date of enactment of the Asbestos and Silica Claims Priorities Act, if the court in which the asbestos or silica claim is pending, on written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action to which the Asbestos and Silica Claims Priorities Act applies would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action. In determining whether to grant a motion to stay or



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

dismiss an action under the doctrine of forum non conveniens, the court shall consider whether:

a. an alternate forum exists in which the claim or action may be tried,

b. the alternate forum provides an adequate remedy,

c. maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party,

d. the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim,

e. the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, and

f. the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.

2. A trial court may not abate or dismiss a claim under this paragraph until the defendant files with the court or with the clerk of the court a written stipulation that, with respect to a new action on the claim commenced by the plaintiff, the defendant waives the right to assert a statute of limitations defense in all other states of the United States in which the claim was not barred by limitations at the time the claim was filed in this state as necessary to effect a tolling of the limitations periods in those states beginning on the date the action originally was filed and ending on the date the claim is dismissed or an abatement period of one (1) year ends. The court may not abate or



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

dismiss a claim under this paragraph until the defendant files with the court or with the clerk of the court a written stipulation that, with respect to a new action on the claim commenced by the plaintiff in another state of the United States, the claimant may elect that the claimant and the defendant may rely on responses to discovery already provided under the rules of civil procedure of this state, plus any additional discovery that may be conducted under the rules of civil procedure in another state, or use responses to discovery already provided and conduct additional discovery as permitted under the rules of civil procedure in the other state.

F. VENUE.

1. An asbestos or silica claim filed after the November 1, 2007, shall be filed in this state only in the county where:

a. the claimant resided for a period Of at least one hundred eighty (180) consecutive days immediately prior to filing suit, or

b. the exposed person had the most substantial cumulative exposure to asbestos for an asbestos claim or to silica for a silica claim, and that such exposure was a substantial contributing factor to the asbestos- or silica-related impairment on which the claim is based.

2. With respect to asbestos or silica claims pending as of November 1, 2007, and in which the trial, or any new trial or retrial following motion, appeal, or otherwise, commences with the presentation of evidence to the trier of fact on or after November 1, 2007, any claim as to which venue would not have been proper if the claim originally had been brought in accordance with paragraph 1 of this subsection shall be transferred



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

within ninety (90) days after November 1, 2007, to the district court in the county in which either:

a. the claimant was domiciled at the time the asbestos or silica claim originally was filed, or

b. the exposed person had the most substantial cumulative exposure to asbestos for an asbestos claim or to silica for a silica claim, and that such exposure was a substantial contributing factor to the asbestos- or silica-related impairment on which the claim is based.

SECTION 70. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 75 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. STATUTE OF LIMITATIONS.

1. With respect to an asbestos or silica claim not barred by limitations in this state as of November 1, 2007, a claimant's cause of action shall not accrue, nor shall the running of limitations commence, prior to the earlier of the date:

a. the exposed person received a medical diagnosis of an asbestos-related impairment or silica-related impairment,

b. the exposed person discovered facts that would have led a reasonable person to obtain a medical diagnosis with respect to the existence of an asbestos-related impairment or silica-related impairment, or

c. the date of death of the exposed person having an asbestos-related or silica-related impairment.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

2. Nothing in this section shall be construed to revive or extend limitations with respect to any claim for asbestos-related impairment or silica-related impairment that was otherwise time-barred as a matter of applicable state law as of the date the Asbestos and Silica Claims Priorities Act is enacted.

3. Nothing in this section shall be construed so as to adversely affect, impair, limit, modify or nullify any settlement or other agreements with respect to an asbestos or silica claim entered into prior to the date of enactment of the Asbestos and Silica Claims Priorities Act.

B. TWO-DISEASE RULE. An asbestos or silica claim arising out of a nonmalignant condition shall be a distinct cause of action from a claim for an asbestos-related or silica-related cancer. No damages shall be awarded for fear or increased risk of future disease in any civil action asserting an asbestos or silica claim.

SECTION 71. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 76 of Title 76, unless there is created a duplication in numbering, reads as follows:

The Asbestos and Silica Claims Priorities Act applies to all asbestos or silica claims filed on or after November 1, 2007. The Asbestos and Silica Claims Priorities Act also applies to any pending asbestos or silica claim in which trial has not commenced as of November 1, 2007.

SECTION 72. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 111 of Title 76, unless there is created a duplication in numbering, reads as follows:



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

A. 1. In any civil action for professional negligence, except as provided in subsection B of this section, the plaintiff shall attach to the petition an affidavit attesting that:

a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,

b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the expert's determination that, based upon a review of the available medical records, facts or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the defendant against whom the action is brought constituted professional negligence, and

c. on the basis of the qualified expert's review and consultation, the plaintiff has concluded that the claim is meritorious and based on good cause.

2. If the civil action for professional negligence is filed:

a. without an affidavit being attached to the petition, as required in paragraph 1 of this subsection, and

b. no extension of time is subsequently granted by the court pursuant to subsection B of this section,

the court shall, upon motion of the defendant, dismiss the action without prejudice to its refiling.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

3. The written opinion from the qualified expert shall state the acts or omissions of the defendant or defendants that the expert then believes constituted professional negligence and shall include reasons explaining why the acts or omissions constituted professional negligence. The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.

B. 1. The court may, upon application of the plaintiff for good cause shown, grant the plaintiff an extension of time, not exceeding ninety (90) days after the date the petition is filed, except for good cause shown, to file in the action an affidavit attesting that the plaintiff has obtained a written opinion from a qualified expert as described in paragraph 1 of subsection A of this section.

2. If on the expiration of an extension period described in paragraph 1 of this subsection, the plaintiff has failed to file in the action an affidavit as described above, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.

C. 1. Upon written request of any defendant in a civil action for professional negligence, the plaintiff shall, within ten (10) business days after receipt of such request, provide the defendant with:

a. a copy of the written opinion of a qualified expert mentioned in an affidavit filed pursuant to subsection A or B of this section, and

b. an authorization from the plaintiff in a form that complies with applicable state and federal laws, including the Health Insurance



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

Portability and Accountability Act of 1996, for the release of any and all medical records related to the plaintiff for a period commencing five (5) years prior to the incident that is at issue in the civil action for professional negligence.

2. If the plaintiff fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.

SECTION 73. REPEALER Section 9, Chapter 390, O.S.L. 2003 (12 O.S. Supp. 2006, Section 150), is hereby repealed.

SECTION 74. REPEALER Section 8, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2006, Section 832.1), is hereby repealed.

SECTION 75. REPEALER 23 O.S. 2001, Section 103, is hereby repealed.

SECTION 76. REPEALER Section 6, Chapter 390, O.S.L. 2003, as amended by Section 21, Chapter 368, O.S.L. 2004, and Section 22, Chapter 368, O.S.L. 2004 (63 O.S. Supp. 2006, Sections 1-1708.1F and 1-1708.1F-1), are hereby repealed.

SECTION 77. This act shall become effective November 1, 2007.

COMMITTEE REPORT BY: COMMITTEE ON JUDICIARY AND PUBLIC SAFETY, dated 03-07-07 - DO PASS, As Amended and Coauthored.



UNDERLINED language denotes Amendments to present Statutes.
BOLD FACE CAPITALIZED language denotes Committee Amendments.
~~Strike thru~~ language denotes deletion from present Statutes.

# Exhibit 7

ENGROSSED HOUSE
BILL NO. 1603

By: Sullivan, McCullough, Derby and Osborn of the House

and

Coffee of the Senate

An Act relating to civil procedure; requiring appointment of attorney for specified purpose; providing for award of certain fees; requiring plaintiff to attach certain affidavit in civil action for negligence; defining term; providing statute of repose for product liability actions; providing exclusions; clarifying scope and application; amending Section 2, Chapter 368, O.S.L. 2004 and 12 O.S. 2001, Sections 134 and 137 (12 O.S. Supp. 2008, Section 130), which relate to venue; modifying venue for certain actions; authorizing the court to decline to exercise jurisdiction under the doctrine of forum non conveniens; providing that bringing action in county in which venue does not lie does not toll statute of limitations; requiring each plaintiff to establish venue in cases in which there are multiple plaintiffs; providing for interlocutory appeals; providing requirements for Oklahoma Uniform Jury Instructions; amending 12 O.S. 2001, Section 588, which relates to general and specific findings; modifying procedure; amending 12 O.S. 2001, Sections 683 and 684, as amended by Sections 3 and 4, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Sections 683 and 684), which relate to dismissal; modifying procedure for dismissal without court order; providing for dismissal of action under certain circumstances; allowing for extension under certain circumstances; requiring plaintiff to provide certain information; amending Section 7, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Section 727.1), which relates to interest on judgments; modifying time of accrual of prejudgment interest on certain actions; modifying method of computing interest; amending 12

O.S. 2001, Sections 990.4, as last amended by Section 6, Chapter 1, O.S.L. 2005, 993, 2004, as amended by Section 7, Chapter 402, O.S.L. 2002, 2008, 2009, 2011, as amended by Section 10, Chapter 368, O.S.L. 2004, Section 1, Chapter 370, O.S.L. 2004, as amended by Section 10, Chapter 12, O.S.L. 2007, 2023 and 2702 (12 O.S. Supp. 2008, Sections 990.4, 2004, 2011 and 2011.1), which relate to stays of enforcement, interlocutory appeals, the Oklahoma Pleading Code, frivolous claims or defenses, class actions and expert testimony; modifying certain appeal bond procedures; modifying grounds and procedure for interlocutory appeals; modifying time limit for service of process; modifying monetary threshold for which amount of damages is not specified; limiting amount of damages that may be recovered under certain circumstances; modifying procedure for petition for special damages; modifying definitions; providing procedure for pretrial conferences; requiring certain standard of review upon appeal of order maintaining a class action; requiring stay of discovery while appeal is pending; requiring potential class members to request inclusion in the class; providing for determination of attorney fees in class actions; requiring plaintiffs to sign representation agreements; providing method of calculating attorney fees for class action cases; providing for judicial discretion to modify the fee award; requiring attorney fees to include noncash benefits in certain circumstances; defining term; providing class membership limitations; providing procedure for summary judgment; providing that certain evidence is admissible in certain actions; providing requirements for expert testimony; providing role of the court; providing for interpretation; stating legislative intent; amending 12 O.S. 2001, Section 3226, as last amended by Section 3, Chapter 519, O.S.L. 2004 (12 O.S. Supp. 2008, Section 3226), which relates to discovery; eliminating requirement that a party produce certain agreement; requiring certain disclosures prior to discovery request; amending 15 O.S. 2001, Sections 754 and 761.1, which relate to the Oklahoma Consumer Protection Act; updating statutory reference; excepting certain actions, transactions, and claims from the Oklahoma Consumer Protection Act; requiring certain losses to be ascertainable; providing for private right of action

for actual damages; providing for determination of actual damages; allowing court to order reimbursement of certain costs and fees; providing for maximum amount that court may order as reimbursement of certain costs and fees; requiring certain proof in order to recover damages; defining terms; amending 23 O.S. 2001, Section 9.1, as amended by Section 1, Chapter 462, O.S.L. 2002 (23 O.S. Supp. 2008, Section 9.1), which relates to punitive damages; modifying factors to be considered in awarding punitive damages; requiring presentation of prima facie evidence for punitive damages claims prior to certain discovery; prohibiting punitive damages in product liability actions under certain conditions; providing restrictions and procedures for punitive damages in medical liability actions; providing for periodic payment of certain damages; amending Section 18, Chapter 368, O.S.L. 2004 and 23 O.S. 2001, Section 61 (23 O.S. Supp. 2008, Section 15), which relate to joint and several liability and obligations not arising from contract; modifying exceptions to severability; providing limits of liability for noneconomic damages for certain actions; requiring certain adjustment; defining term; requiring admission of evidence of certain payments; limiting evidence to amounts paid; excluding certain payments; allowing discretion in limiting award of certain damages; providing exception; defining term; providing that proof of certain losses must be in the form of a net loss after reduction for income tax payments or unpaid tax liability; amending 47 O.S. 2001, Sections 11-1112, as last amended by Section 1, Chapter 361, O.S.L. 2005 and 12-420, as amended by Section 13, Chapter 50, O.S.L. 2005 (47 O.S. Supp. 2008, Sections 11-1112 and 12-420), which relate to child passenger restraint systems and seat belts; eliminating prohibitions against admissibility of certain evidence in civil actions; amending Section 7, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2008, Section 1-1708.1G), which relates to prejudgment interest for medical liability actions; providing time that prejudgment interest accrues; amending 63 O.S. 2001, Section 1-1709.1, as last amended by Section 2, Chapter 558, O.S.L. 2004 (63 O.S. Supp. 2008, Section 1-1709.1), which relates to peer review information; providing that certain information is not subject to discovery or admissible at trial;

requiring certain findings for certain information to be admissible; creating the Uniform Emergency Volunteer Health Practitioners Act; providing short title; defining terms; providing for application; authorizing the State Department of Health to regulate volunteer health practitioners in a declared emergency; requiring certain consultation and compliance of specified host entities; setting requirements for a volunteer health practitioner registration system; permitting certain confirmation; requiring certain notification; authorizing host entities to refuse the services of a volunteer health practitioner; permitting certain volunteer health practitioners to practice in this state during a declared emergency; prohibiting certain volunteer health practitioners from certain protections; defining terms; clarifying credentialing or privileging standards; requiring adherence to certain scopes of practice; prohibiting the providing of services outside a practitioner's scope of practice; authorizing the Department or a host entity to restrict certain services; providing certain protection; permitting certain licensing boards to impose administrative sanctions; requiring certain reporting; requiring certain consideration; providing for certain rights, privileges or immunities; permitting the Department to incorporate certain volunteer health practitioners; authorizing the State Board of Health to promulgate rules; requiring consideration for uniformity; amending 63 O.S. 2001, Sections 683.9 and 683.13, as amended by Sections 9 and 12, Chapter 329, O.S.L. 2003 (63 O.S. Supp. 2008, Sections 683.9 and 683.13), which relate to the Emergency Management Act of 2003; modifying definition; providing certain exclusion; stating legislative findings; defining terms; providing for confidentiality of certain records; prohibiting certain testimony; limiting liability of certain persons; prohibiting submission of certain information into evidence; amending 76 O.S. 2001, Sections 5.5, 25 and 31, which relate to limitations for certain actions, professional review bodies, civil immunity for volunteers, charitable organizations, and not-for-profit corporations; establishing a statute of repose for certain actions; providing that peer review information is private, confidential and privileged; providing exception;

providing notice requirement; providing that certain information is not subject to discovery or admissible at trial; prohibiting testimony by certain persons; modifying definition; creating the Common Sense Consumption Act; providing short title; stating legislative intent; defining terms; providing immunity from civil liability for certain claims; providing exception; providing pleading requirements; providing for stay of discovery and other proceedings in certain circumstances; providing scope of claims covered; stating legislative findings; limiting liability of certain manufacturers; limiting liability of certain associations; clarifying applicability of certain provisions; creating the Product Liability Act; providing short title; defining terms; providing that a manufacturer or seller shall not be liable for inherently unsafe products; providing procedures and requirements in actions alleging design defect; limiting liability of nonmanufacturing sellers; providing rebuttable presumption in actions relating to pharmaceutical products; providing rebuttable presumption concerning compliance with government standards; defining term; making evidence regarding measures taken after injury inadmissible; requiring filing of certain affidavit and procedures therefor; creating the Asbestos and Silica Claims Priorities Act; providing legislative findings; stating purposes; defining terms; providing elements of proof and proceedings for asbestos or silica claims; providing that certain evidence does not create a presumption; providing that certain evidence is inadmissible; providing for discovery; providing for consolidation of claims; authorizing the court to decline to exercise jurisdiction in certain circumstances; providing for venue; providing a statute of limitations; establishing two-disease rule; providing scope of applicability of the Asbestos and Silica Claims Priorities Act; creating the Innocent Successor Asbestos-Related Liability Fairness Act; defining terms; providing limitations on successor asbestos-related liabilities; providing method for establishing fair market value of gross assets; providing for adjustment of fair market value; providing scope of act; providing date of application; repealing Section 1, Chapter 368, O.S.L. 2004 (5 O.S. Supp. 2008, Section 7.1), which relates to the award of attorney fees in class actions;

repealing Section 4, Chapter 390, O.S.L. 2003, Section 6, Chapter 390, O.S.L. 2003, as amended by Section 21, Chapter 368, O.S.L. 2004 and Section 22, Chapter 368, O.S.L. 2004 (63 O.S. Supp. 2008, Sections 1-1708.1D, 1-1708.1F and 1-1708.1F-1), which relate to limits on noneconomic damages in medical liability actions; repealing Section 19, Chapter 473, O.S.L. 2003 (63 O.S. Supp. 2008, Section 6602), which relates to emergency powers regarding licensing and appointment of health personnel; providing for codification; providing for noncodification; providing for severability; and providing an effective date.

BE IT ENACTED BY THE PEOPLE OF THE STATE OF OKLAHOMA:

SECTION 1. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 7.2 of Title 5, unless there is created a duplication in numbering, reads as follows:

In class actions, if a request for an award of attorney fees is made, the court may appoint an attorney to represent the class upon request by any members of the class in a hearing on the issue of the amount of attorney fees only. Said attorney shall be independent of the attorney or attorneys seeking attorney fees in the class action, and said independent attorney shall be awarded reasonable fees by the court on an hourly basis out of the proceeds awarded to the class.

SECTION 2. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 95.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. As used in this section, "product liability action" means any action against a manufacturer or seller for recovery of damages or other relief for harm allegedly caused by a defective product, whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories, and whether the relief sought is recovery of damages or any other legal or equitable relief, including, but not limited to, an action for:

1. Injury or damage to or loss of real or personal property;

2. Personal injury;

3. Wrongful death;

4. Economic loss; or

5. Declaratory, injunctive, or other equitable relief.

B. Except as provided by subsections C, D and E of this section, a plaintiff must commence a product liability action against a manufacturer or seller of a product before the end of ten (10) years after the date of the sale of the product by the defendant.

C. If a manufacturer or seller expressly warrants in writing that the product has a useful safe life of longer than ten (10) years, a plaintiff must commence a product liability action against that manufacturer or seller of the product before the end of the

number of years warranted after the date of the sale of the product by that seller.

D. This section shall not apply to a product liability action seeking damages for personal injury or wrongful death in which the claimant alleges:

1. The plaintiff was exposed to the product that is the subject of the action before the end of ten (10) years after the date the product was first sold;

2. Exposure to the product caused a disease that is the basis of the action; and

3. The symptoms of the disease did not, before the end of ten (10) years after the date of the first sale of the product by the defendant, manifest themselves to a degree and for a duration that would put a reasonable person on notice that the person suffered some injury.

E. This section shall not reduce a limitations period for a cause of action described by subsection D of this section that accrues before the end of the limitations period under this section.

F. This section shall not extend the limitations period within which a products liability action involving the product may be commenced under any other law.

G. This section applies only to the sale and not to the lease of a product.

H. This section shall not apply to any claim to which the General Aviation Revitalization Act of 1994 (Pub. L. No. 103-298, 108 Stat. 1552) (1994), 49 U.S.C., Section 40101 or its exceptions are applicable.

SECTION 3. AMENDATORY Section 2, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Section 130), is amended to read as follows:

Section 130. The venue of civil actions for damages brought pursuant to the Affordable Access to Health Care Act, Section 1-1708.1A et seq. of Title 63 of the Oklahoma Statutes, shall be in a county where the cause of action or any portion thereof arose, or in any county in which any of the defendants reside, or in the case of a corporation, in a county in which it is situated, or has its principal office or place of business~~, or in any county where a codefendant of such corporation may be sued~~. Upon a finding of lack of venue, the court shall transfer or dismiss the action; provided, however, that if the court finds lack of venue and that a dismissal would operate as a dismissal with prejudice, the court shall transfer the action.

SECTION 4. AMENDATORY 12 O.S. 2001, Section 134, is amended to read as follows:

Section 134. An action, other than one of those mentioned in ~~first three sections of this article~~ <u>Section 131, 132 or 133 of this title</u>, against a corporation created by the laws of this state, may

be brought in the county in which it is situated, or has its principal office or place of business, or in which any of the principal officers thereof may reside, ~~or be summoned,~~ or in the county where the cause of action or some part thereof arose~~, or in any county where a codefendant of such corporation created by the laws of this state may properly be sued~~.

SECTION 5. AMENDATORY 12 O.S. 2001, Section 137, is amended to read as follows:

Section 137. A. In addition to the other counties in which an action may be brought against a nonresident of this state, ~~or~~ other than a foreign corporation, such action may be brought in any county in which there may be property of or debts owing to such defendant, or where such defendant may be found~~, or in any county where a codefendant may properly be sued; if~~.

B. An action may be brought against a foreign corporation in the county in which the corporation has its principal office or place of business or in which any of the principal officers thereof reside, or where such company has a service agent.

C. If such defendant ~~be~~ is a foreign insurance company the action may be brought in any county ~~where such cause of action, or any part thereof, arose, or where the plaintiff resides or~~ where such company has ~~an~~ its principal office or place of business or in which any of the principal officers thereof reside, or where such company has a service agent.

SECTION 6. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 140.2 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. If the court, upon motion by a party or on the court's own motion, finds that, in the interest of justice and for the convenience of the parties, a claim or action would be more properly heard in another forum either in this state or outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action.

B. In determining whether to grant a motion to stay or dismiss an action pursuant to this section, the court shall consider:

1. Whether an alternate forum exists in which the claim or action may be tried;

2. Whether the alternate forum provides an adequate remedy;

3. Whether maintenance of the claim in the court in which the case is filed would work a substantial injustice to the moving party;

4. Whether the alternate forum can exercise jurisdiction over all the defendants properly joined in the claim of the plaintiff;

5. Whether the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum; and

6. Whether the stay or dismissal would prevent unreasonable duplication or proliferation of litigation.

SECTION 7. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 140.3 of Title 12, unless there is created a duplication in numbering, reads as follows:

An action brought in a county in which venue does not lie does not toll the statute of limitations.

SECTION 8. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 144 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. In a suit in which there is more than one plaintiff, whether the plaintiffs are included by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise, each plaintiff shall, independently of every other plaintiff, establish proper venue. If a plaintiff cannot independently establish proper venue, that plaintiff’s part of the suit, including all of that plaintiff’s claims and causes of action, shall be transferred to a county of proper venue or dismissed, as is appropriate, unless that plaintiff, independently of every other plaintiff, establishes that:

1. Joinder of that plaintiff or intervention in the suit by that plaintiff is proper under Oklahoma law and applicable court rules;

2. Maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit;

3. There is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and

4. The county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought.

B. An interlocutory appeal may be taken of a trial court's determination under subsection A of this section that:

1. A plaintiff did or did not independently establish proper venue; or

2. A plaintiff that did not independently establish proper venue did or did not establish the items prescribed by paragraphs 1 through 4 of subsection A of this section.

C. The court of appeals shall:

1. Determine whether the trial court's order is proper, based on an independent determination from the record and not under either an abuse of discretion or substantial evidence standard; and

2. Render judgment not later than one hundred twenty (120) days after the date the appeal is perfected.

SECTION 9. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 191 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. 1. In any action not arising out of contract, wherein the party intends or is required by law to use a qualified expert to prove liability, except as provided in subsection B of this section,

the party shall file within sixty (60) days of filing the petition an affidavit attesting that:

a. the party has consulted and reviewed the facts of the claim with a qualified expert,

b. the party has obtained a written opinion from a qualified expert that clearly identifies the party and includes the expert's determination that, based upon a review of the pertinent records, facts or other relevant material, a reasonable interpretation of the facts supports a finding of liability of the adverse party against whom the action is brought, and

c. on the basis of the qualified expert's review and consultation, the party has concluded that the claim is meritorious and based on good cause.

2. If the civil action is filed:

a. without an affidavit being attached to the petition, as required in paragraph 1 of this subsection, and

b. no extension of time is subsequently granted by the court, pursuant to subsection B of this section,

the court shall, upon motion of the adverse party, dismiss the action.

3. The written opinion from the qualified expert shall state the acts or omissions of the adverse party or parties that the

expert then believes establish liability and shall include reasons explaining why the acts or omissions establish such liability.

B. 1. The court may, upon application of the party for good cause shown, grant the party an extension of time, not exceeding ninety (90) days after the date the petition is filed, to file in the action an affidavit attesting that the party has obtained a written opinion from a qualified expert as described in paragraph 1 of subsection A of this section.

2. If on the expiration of an extension period described in paragraph 1 of this subsection, the party has failed to file in the action an affidavit as described above, the court shall, upon motion of the adverse party, dismiss the action.

C. 1. Upon written request of any adverse party in any action not arising out of contract, the party shall, within ten (10) business days after receipt of such request, provide the adverse party with:

a. a copy of the written opinion of a qualified expert mentioned in an affidavit filed pursuant to subsection A or B of this section, and

b. an authorization from the party in a form that complies with applicable state and federal laws, including the Health Insurance Portability and Accountability Act of 1996, for the release of any and all medical records and bills related to the party for

a period commencing ten (10) years prior to the incident that is at issue.

2. If the party fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the adverse party, unless good cause is shown for such failure, dismiss the action.

SECTION 10. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 577.4 of Title 12, unless there is created a duplication in numbering, reads as follows:

The Oklahoma Uniform Jury Instructions (OUJI) applicable in a civil case shall include an instruction notifying the jury as to that part of an award which is not subject to federal or state income tax. Any amount that the jury determines to be proper compensation for personal injury or wrongful death shall not be increased or decreased by any consideration for income taxes.

SECTION 11. AMENDATORY 12 O.S. 2001, Section 588, is amended to read as follows:

Section 588. In all cases the jury shall render a general verdict, ~~and the court may in any case at the request of~~ unless the parties thereto, or either of them shall have requested, in addition to the general verdict, ~~direct~~ that the jury ~~to~~ find upon particular questions of fact, to be stated in writing by the party or parties requesting the same. Upon receipt of a request for a finding upon particular questions of fact, the court shall so direct the jury.

SECTION 12. AMENDATORY 12 O.S. 2001, Section 683, as amended by Section 3, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Section 683), is amended to read as follows:

Section 683. Except as provided in Section ~~5~~ <u>684</u> of this ~~act~~ <u>title</u>, an action may be dismissed, without prejudice to a future action:

1. By the plaintiff, before the final submission of the case to the jury, or to the court, where the trial is by the court;

2. By the court, where the plaintiff fails to appear on the trial;

3. By the court, for the want of necessary parties;

4. By the court, on the application of some of the defendants, where there are others whom the plaintiff fails to prosecute with diligence;

5. By the court, for disobedience by the plaintiff of an order concerning the proceedings in the action; and

6. In all other cases, upon the trial of the action, the decision must be upon the merits.

SECTION 13. AMENDATORY 12 O.S. 2001, Section 684, as amended by Section 4, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Section 684), is amended to read as follows:

Section 684. A. ~~Except as provided in Section 5 of this act, an~~ <u>An</u> action may be dismissed ~~on the payment of costs and~~ <u>by the plaintiff</u> without an order of court by ~~the plaintiff~~ <u>filing a notice</u>

of dismissal at any time before ~~a petition of intervention or answer praying for affirmative relief against the plaintiff is filed in the action. A plaintiff may, at any time before the trial is commenced, on payment of the costs and without any order of court, dismiss the action after the filing of a petition of intervention or answer praying for affirmative relief, but such dismissal shall not prejudice the right of the intervenor or defendant to proceed with the action. Any defendant or intervenor may, in like manner, dismiss an action against the plaintiff, without an order of court, at any time before the trial is begun, on payment of the costs made on the claim filed by the defendant or intervenor. All parties to a civil action may at any time before trial, without an order of court, and on payment of costs, by agreement, dismiss the action.~~

~~B. Such dismissal shall be in writing and signed by the party or the attorney for the party, and shall be filed with the clerk of the district court where the action is pending, who shall note the fact on the proper record: Provided, such dismissal shall be held to be without prejudice, unless the words "with prejudice" be expressed therein.~~

~~C. When an action is dismissed after a jury in the action is empanelled and the case is subsequently refiled, the court, at the conclusion of the subsequent action, may assess costs and attorney fees incurred in the previous action by the defendants subsequent to the jury being empanelled~~ service by the adverse party of an answer

or of a motion for summary judgment, whichever first occurs, or by filing a stipulation for dismissal signed by all parties who have appeared in the action; provided, if a plaintiff files a notice of dismissal after discovery has commenced, any such action shall not be dismissed without prejudice without the consent of the defendant. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

B. Except as provided in subsection A of this section, an action shall not be dismissed at the plaintiff's instance except upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaims can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this subsection is without prejudice.

C. For failure of the plaintiff to prosecute or to comply with the provisions of this section or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise

specifies, a dismissal under this subsection and any dismissal not provided for in this section, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party, operates as an adjudication upon the merits.

D. The provisions of this section apply to the dismissal of any counterclaim, cross-claim, or third-party claim. A voluntary dismissal by the claimant alone pursuant to subsection A of this section shall be made before a responsive pleading is served or, if there is none, before the introduction of evidence at the trial or hearing.

If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order. If an action is refiled and the plaintiff does not comply with the time limits for service required by subsection I of Section 2004 of this title, the action shall be dismissed with prejudice.

SECTION 14. AMENDATORY Section 7, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Section 727.1), is amended to read as follows:

Section 727.1

POSTJUDGMENT INTEREST

A. 1. Except as otherwise provided by this section, all judgments of courts of record, including costs and attorney fees authorized by statute or otherwise and allowed by the court, shall bear interest at a rate prescribed pursuant to this section.

2. Costs and attorney fees allowed by the court shall bear interest from the earlier of the date the judgment or order is pronounced, if expressly stated in the written judgment or order awarding the costs and attorney fees, or the date the judgment or order is filed with the court clerk.

B. Judgments, including costs and attorney fees authorized by statute or otherwise and allowed by the court, against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, shall bear interest during the term of judgment at a rate prescribed pursuant to this section from the date of rendition. No judgment against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, inclusive of postjudgment interest, shall exceed the total amount of liability of the governmental entity pursuant to The Governmental Tort Claims Act.

C. The postjudgment interest authorized by subsection A or subsection B of this section shall accrue from the earlier of the

date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk, and shall initially accrue at the rate in effect for the calendar year during which the judgment is rendered until the end of the calendar year in which the judgment was rendered, or until the judgment is paid, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the judgment is paid, whichever first occurs, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. For each succeeding calendar year, or part of a calendar year, during which a judgment remains unpaid, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. A separate computation using the interest rate in effect for judgments as provided by subsection I of this section shall be made for each calendar year, or part of a calendar year, during which the judgment remains unpaid in order to determine the total amount of interest for which the judgment debtor is liable. The postjudgment interest rate for each calendar year or part of a calendar year a judgment remains unpaid shall be multiplied by the

original amount of the judgment, including any prejudgment interest, together with postjudgment interest previously accrued. Interest shall accrue on a judgment in the manner prescribed by this subsection until the judgment is satisfied or released.

D. If a rate of interest is specified in a contract, the rate specified shall apply and be stated in the journal entry of judgment. The rate of interest shall not exceed the lawful rate for that obligation. Postjudgment interest shall be calculated and accrued in the same manner as prescribed in subsection C of this section.

PREJUDGMENT INTEREST

E. Except as provided by subsection F of this section ~~or Section 1-1708.1G of Title 63 of the Oklahoma Statutes~~, beginning November 1, 2009, if a verdict for damages by reason of personal injuries or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another is accepted by the trial court, the court in rendering judgment shall add interest on the verdict at a rate prescribed pursuant to subsection I of this section from the date which is thirty-six (36) months after the suit resulting in the judgment was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk. No prejudgment

<u>interest shall begin to accrue until thirty-six (36) months after the suit resulting in the judgment was commenced.</u> The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year ~~in~~ which <u>is thirty-six (36) months after</u> the suit resulting in the judgment ~~is~~ <u>was</u> commenced. This rate shall be in effect until the end of the calendar year in which ~~the suit resulting in judgment was filed~~ <u>interest begins to accrue</u> or until the date judgment is filed, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the date the judgment is filed, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of all prejudgment interest has been completed, the total amount of prejudgment interest shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection A of this section.

F. If a verdict of the type described by subsection E of this section is rendered against this state or its political subdivisions, including counties, municipalities, school districts,

and public trusts of which this state or a political subdivision of this state is a beneficiary, the judgment shall bear interest at the rate prescribed pursuant to subsection I of this section from the date the suit was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment or the date the judgment is filed with the court clerk. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year in which the suit resulting in the judgment is commenced. This rate shall be in effect until the end of the calendar year in which the suit resulting in judgment was filed or until the date the judgment is rendered as expressly stated in the judgment, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the date judgment is rendered, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of prejudgment interest has been completed, the amount shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection B of this

section. No award of prejudgment interest against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, including the amount of the judgment awarded pursuant to trial of the action, shall exceed the total amount of liability of the governmental entity pursuant to The Governmental Tort Claims Act.

G. If exemplary or punitive damages are awarded in an action for personal injury or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another, the interest on that award shall begin to accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk.

H. If a judgment is rendered establishing the existence of a lien against property and no rate of interest exists, the court shall allow prejudgment interest at a rate prescribed pursuant to subsection I of this section from the date the lien is filed to the date of verdict.

I. For purposes of computing either postjudgment interest or prejudgment interest as authorized by this section, interest shall be ~~the prime rate, as listed in the first edition of the Wall Street Journal published for each calendar year and as certified to the~~

~~Administrative Director of the Courts by the State Treasurer on the first regular business day following publication in January of each year, plus two percent (2%)~~ <u>determined using a rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year</u>.

J. For purposes of computing postjudgment interest, the provisions of this section shall be applicable to all judgments of the district courts rendered on or after January 1, ~~2005~~ <u>2010</u>. Effective January 1, ~~2005~~ <u>2010</u>, the method for computing postjudgment interest prescribed by this section shall be applicable to all judgments remaining unpaid rendered prior to January 1, ~~2005~~ <u>2010</u>.

K. For purposes of computing prejudgment interest, the provisions of this section shall be applicable to all actions which are filed in the district courts on or after January 1, ~~2005~~ <u>2010</u>, for which an award of prejudgment interest is authorized by the provisions of this section.

SECTION 15. AMENDATORY 12 O.S. 2001, Section 990.4, as last amended by Section 6, Chapter 1, O.S.L. 2005 (12 O.S. Supp. 2008, Section 990.4), is amended to read as follows:

Section 990.4 A. Except as provided in subsection C of this section, a party may obtain a stay of the enforcement of a judgment, decree or final order:

1. While a ~~post-trial~~ posttrial motion is pending;

2. During the time in which an appeal may be commenced in any court in or outside of this state; or

3. While an appeal is pending in any court in or outside of this state.

Such stay may be obtained by filing with the court clerk a written undertaking and the posting of a supersedeas bond or other security as provided in this section. In the undertaking the appellant shall agree to satisfy the judgment, decree or final order, and pay the costs and interest on appeal, if it is affirmed. The undertaking and supersedeas bond or security may be given at any time. The stay is effective when the bond and the sufficiency of the sureties are approved by the trial court or the security is deposited with the court clerk. The enforcement of the judgment, decree or order shall no longer be stayed, and the judgment, decree or order may be enforced against any surety on the bond or other security:

1. If neither a ~~post-trial~~ posttrial motion nor a petition in error is filed, and the time for appeal has expired;

2. If a ~~post-trial~~ posttrial motion is no longer pending, no petition in error has been filed, and the time for appeal has expired; or

3. If an appeal is no longer pending.

B. The amount of the bond or other security shall be as follows:

1. When the judgment, decree or final order is for payment of money:

a. subject to the limitations hereinafter provided, the bond shall be double the amount of the judgment, decree or final order, unless the bond is executed or guaranteed by a surety as hereinafter provided. The bond shall be for the amount of the judgment, decree or order including costs and interest on appeal where it is executed or guaranteed by an entity with suretyship powers as provided by the laws of Oklahoma. In no case shall the bond exceed Twenty-five Million Dollars ($25,000,000.00). If the party posting the supersedeas bond is an individual or a business with two hundred fifty employees or less on the date of the judgment, the supersedeas bond shall not exceed One Million Dollars ($1,000,000.00). On a showing by the judgment debtor that the judgment debtor is likely to suffer substantial economic harm if required to post bond in the amount required by this paragraph, the court shall balance the likely substantial economic harm to the judgment debtor with the ability of the

judgment creditor to collect the judgment in the event the judgment is affirmed on appeal and may lower the bond accordingly. "Substantial economic harm" means insolvency or creating a significant risk of insolvency. ~~The court shall not lower a bond as provided in this paragraph to the extent there is in effect an insurance policy, or agreement under which a third party is liable to satisfy part or all of the judgment entered and such party is required to post all or part of the bond. Upon lowering the bond as provided in this paragraph, the court shall enter an order enjoining a judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment, but the court shall not make any order that interferes with the judgment debtor's use of assets in the normal course of business~~ If it is proven by a preponderance of the evidence that the appellant for whom the bond has been limited pursuant to this subparagraph is intentionally dissipating or diverting assets outside of the ordinary course of its business for the purpose of avoiding payment of the judgment, the court shall enter such orders as are necessary to prevent dissipation or diversion including, but not limited to, requiring that a bond be posted equal to

the full amount of security required pursuant to this section, and

b. instead of filing a supersedeas bond, the appellant may obtain a stay by depositing cash with the court clerk in the amount of the judgment or order plus an amount that the court determines will cover costs and interest on appeal. The court shall have discretion to accept United States Treasury notes or general obligation bonds of the State of Oklahoma in lieu of cash. If the court accepts such notes or bonds, it shall make appropriate orders for their safekeeping and maintenance during the stay;

2. When the judgment, decree or final order directs execution of a conveyance or other instrument, the amount of the bond shall be determined by the court. Instead of posting a supersedeas bond or other security, the appellant may execute the conveyance or other instrument and deliver it to the clerk of the court for deposit with a public or private entity for safekeeping, as directed by the court in writing;

3. When the judgment, decree or final order directs the delivery of possession of real or personal property, the bond shall be in an amount, to be determined by the court, that will protect the interests of the parties. The court may consider the value of the use of the property, any waste that may be committed on or to

the property during the pendency of the stay, the value of the property, and all costs. When the judgment, decree or final order is for the sale of mortgaged premises and the payment of a deficiency arising from the sale, the bond must also provide for the payment of the deficiency;

4. When the judgment or final order directs the assignment or delivery of documents, they may be placed in the custody of the clerk of the court in which the judgment or order was rendered, for deposit with a public or private entity for safekeeping during the pendency of the stay, as directed by the court in writing, or the bond shall be in such sum as may be prescribed by the court; or

5. In order to protect any monies payable to the Tobacco Settlement Fund as set forth in Section 50 of Title 62 of the Oklahoma Statutes, the bond in any action or litigation brought under any legal theory involving a signatory, successor of a signatory or an affiliate of a signatory to the Master Settlement Agreement dated November 23, 1998, or a signatory, successor of a signatory or an affiliate of a signatory to the Smokeless Tobacco Master Settlement Agreement, also dated November 23, 1998, shall be in an amount not to exceed one hundred percent (100%) of the judgment, exclusive of interest and costs, ten percent (10%) of the net worth of the judgment debtor, or Twenty-five Million Dollars ($25,000,000.00), whichever is less. However, if it is proved by a preponderance of the evidence that the appellant for whom the bond

has been limited pursuant to this paragraph is intentionally dissipating or diverting assets outside of the ordinary course of its business for the purpose of avoiding payment of the judgment, the court shall enter such orders as are necessary to prevent dissipation or diversion, including, but not limited to, requiring that a bond be posted equal to the full amount of security required pursuant to this section. For purposes of this paragraph, "Master Settlement Agreement" shall have the same meaning as that term is defined in paragraph 5 of Section 600.22 of Title 37 of the Oklahoma Statutes, and "Smokeless Tobacco Master Settlement Agreement" means the settlement agreement and related documents entered into on November 23, 1998, by this state and leading United States smokeless tobacco product manufacturers.

C. Subsections A and B of this section shall not apply in actions involving temporary or permanent injunctions, actions for divorce, separate maintenance, annulment, paternity, custody, adoption, or termination of parental rights, or in juvenile matters, ~~post-decree~~ postdecree matrimonial proceedings or habeas corpus proceedings. The trial or appellate court, in its discretion, may stay the enforcement of any provision in a judgment, decree or final order in any of the types of actions or proceedings listed in this subsection during the pendency of the appeal or while any ~~post-trial~~ posttrial motion is pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the

parties. If a temporary or permanent injunction is denied or dissolved, the trial or appellate court, in its discretion, may restore or grant an injunction during the pendency of the appeal and while any ~~post-trial~~ <u>posttrial</u> motions are pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties.

D. In any action not provided for in ~~subsections~~ <u>subsection</u> A, B or C <u>of this section</u>, the court may stay the enforcement of any judgment, decree or final order during the pendency of the appeal or while any ~~post-trial~~ <u>posttrial</u> motion is pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties.

E. The trial court shall have continuing jurisdiction during the pendency of any ~~post-trial~~ <u>posttrial</u> motion and appeal to modify any order it has entered regarding security or other conditions in connection with a stay.

F. The execution of a supersedeas bond shall not be a condition for the granting of a stay of judgment, decree or final order of any judicial tribunal against any county, municipality, or other political subdivision of the State of Oklahoma.

G. Executors, administrators and guardians who have given bond in this state, with sureties, according to law, are not required to provide a supersedeas bond if they are granted a stay of enforcement of a judgment, decree or final order.

H. After an appeal has been decided, but before the mandate has issued, a party whose trial court judgment has been affirmed, may move the appellate court to order judgment on the bond or other security in the amount of the judgment plus interest, appeals costs and allowable appeal-related attorney fees. After mandate has issued, a party who has posted a bond or other security may move for exoneration of the bond or other security only in the trial court; and all motions concerning the bond or other security must be addressed to the trial court.

I. Appeal bonds shall not be required for appeals of punitive damages.

SECTION 16. AMENDATORY 12 O.S. 2001, Section 993, is amended to read as follows:

Section 993. A. When an order:

1. Discharges, vacates, or modifies or refuses to discharge, vacate, or modify an attachment;

2. Denies a temporary or permanent injunction, grants a temporary or permanent injunction except where granted at an ex parte hearing, or discharges, vacates, or modifies or refuses to discharge, vacate, or modify a temporary or permanent injunction;

3. Discharges, vacates, or modifies or refuses to discharge, vacate, or modify a provisional remedy which affects the substantial rights of a party;

4. Appoints a receiver except where the receiver was appointed at an ex parte hearing, refuses to appoint a receiver, or vacates or refuses to vacate the appointment of a receiver;

5. Directs the payment of money pendente lite except where granted at an ex parte hearing, refuses to direct the payment of money pendente lite, or vacates or refuses to vacate an order directing the payment of money pendente lite;

6. Certifies or refuses to certify an action to be maintained as a class action; ~~or~~

7. Denies a motion in a class action asserting lack of jurisdiction because an agency of this state has exclusive or primary jurisdiction of the action or a part of the action, or asserting that a party has failed to exhaust administrative remedies;

8. Determines whether or not a plaintiff has established proper venue pursuant to Section 8 of this act; or

9. Grants a new trial or opens or vacates a judgment or order, the party aggrieved thereby may appeal the order to the Supreme Court without awaiting the final determination in said cause, by filing the petition in error and the record on appeal with the Supreme Court within thirty (30) days after the order prepared in conformance with Section 696.3 of this title, is filed with the court clerk. If the appellant did not prepare the order, and Section 696.2 of this title required a copy of the order to be

mailed to the appellant, and the court records do not reflect the mailing of a copy of the order to the appellant within three (3) days, exclusive of weekends and holidays, after the filing of the order, the petition in error may be filed within thirty (30) days after the earliest date on which the court records show that a copy of the order was mailed to the appellant. The Supreme Court may extend the time for filing the record upon good cause shown.

B. If the order discharges or modifies an attachment or temporary injunction and it becomes operative, the undertaking given upon the allowance of an attachment or temporary injunction shall stay the enforcement of said order and remain in full force until final order of discharge shall take effect.

C. ~~Where~~ <u>If</u> a receiver shall be or has been appointed, upon the appellant filing an appeal bond, with sufficient sureties, in such sum as may have been required of the receiver by the court or a judge thereof, conditioned for the due prosecution of the appeal and the payment of all costs or damages that may accrue to the state or any officer or person by reason thereof, the authority of the receiver shall be suspended until the final determination of the appeal, and if the receiver has taken possession of any property, real or personal, it shall be returned and surrendered to the appellant upon the filing and approval of the bonds.

<u>D. If the order determines whether or not a plaintiff has established proper venue pursuant to Section 8 of this act, the</u>

Supreme Court shall determine whether the order of the trial court is proper based on an independent determination of the record and not under either an abuse of discretion or substantial evidence standard and shall render judgment within one hundred twenty (120) days after the date the appeal is perfected.

E. During the pendency of an appeal pursuant to paragraph 6, 7, or 8 of subsection A of this section, the action in the trial court shall be stayed in all respects.

SECTION 17. AMENDATORY 12 O.S. 2001, Section 2004, as amended by Section 7, Chapter 402, O.S.L. 2002 (12 O.S. Supp. 2008, Section 2004), is amended to read as follows:

Section 2004.

PROCESS

A. SUMMONS: ISSUANCE. Upon filing of the petition, the clerk shall forthwith issue a summons. Upon request of the plaintiff separate or additional summons shall issue against any defendants.

B. SUMMONS: FORM.

1. The summons shall be signed by the clerk, be under the seal of the court, contain the name of the court and the names of the parties, be directed to the defendant, state the name and address of the plaintiff's attorney, if any, otherwise, the plaintiff's address, and the time within which these rules require the defendant to appear and defend, and shall notify the defendant that in case of

failure to appear, judgment by default will be rendered against the defendant for the relief demanded in the petition.

2. A judgment by default shall not be different in kind from or exceed in amount that prayed for in either the demand for judgment or in cases not sounding in contract in a notice which has been given the party against whom default judgment is sought. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his or her pleadings.

C. BY WHOM SERVED: PERSON TO BE SERVED.

1. SERVICE BY PERSONAL DELIVERY.

a. At the election of the plaintiff, process, other than a subpoena, shall be served by a sheriff or deputy sheriff, a person licensed to make service of process in civil cases, or a person specially appointed for that purpose. The court shall freely make special appointments to serve all process, other than a subpoena, under this paragraph.

b. A summons to be served by the sheriff or deputy sheriff shall be delivered to the sheriff by the court clerk or an attorney of record for the plaintiff. When a summons, subpoena, or other process is to be served by the sheriff or deputy sheriff of another

county, the court clerk shall mail it, together with his the voucher of the court clerk for the fees collected for the service, to the sheriff of that county. The sheriff shall deposit the voucher in the Sheriff's Service Fee Account created pursuant to Section 514.1 of Title 19 of the Oklahoma Statutes. The sheriff or deputy sheriff shall serve the process in the manner that other process issued out of the court of the sheriff's own county is served. A summons to be served by a person licensed to make service of process in civil cases or by a person specially appointed for that purpose shall be delivered by an attorney of record for the plaintiff to such person.

c. Service shall be made as follows:

(1) Upon an individual other than an infant who is less than fifteen (15) years of age or an incompetent person, by delivering a copy of the summons and of the petition personally or by leaving copies thereof at the person's dwelling house or usual place of abode with some person then residing therein who is fifteen (15) years of age or older or by delivering a copy of the summons and of the petition to an agent

authorized by appointment or by law to receive service of process;

(2) Upon an infant who is less than fifteen (15) years of age, by serving the summons and petition personally and upon either of the infant's parents or guardian, or if they cannot be found, then upon the person having the care or control of the infant or with whom the infant lives; and upon an incompetent person by serving the summons and petition personally and upon the incompetent person's guardian;

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the petition to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant;

(4) Upon the United States or an officer or agency thereof in the manner specified by Federal Rule of Civil Procedure 4;

(5) Upon a state, county, school district, public trust or municipal corporation or other governmental organization thereof subject to suit, by delivering a copy of the summons and of the petition to the officer or individual designated by specific statute; however, if there is no statute, then upon the chief executive officer or a clerk, secretary, or other official whose duty it is to maintain the official records of the organization; and

(6) Upon an inmate incarcerated in an institution under the jurisdiction and control of the Department of Corrections, by delivering a copy of the summons and of the petition to the warden or superintendent or the designee of the warden or superintendent of the institution where the inmate is housed. It shall be the duty of the receiving warden or superintendent or a designee to promptly deliver the summons and petition to the inmate named therein. The warden or superintendent or his or her designee shall

reject service of process for any inmate who is not actually present in said institution.

2. SERVICE BY MAIL.

a. At the election of the plaintiff, a summons and petition may be served by mail by the plaintiff's attorney, any person authorized to serve process pursuant to subparagraph a of paragraph 1 of this subsection, or by the court clerk upon a defendant of any class referred to in division (1), (3), or (5) of subparagraph c of paragraph 1 of this subsection. Service by mail shall be effective on the date of receipt or if refused, on the date of refusal of the summons and petition by the defendant.

b. Service by mail shall be accomplished by mailing a copy of the summons and petition by certified mail, return receipt requested and delivery restricted to the addressee. When there is more than one defendant, the summons and a copy of the petition or order shall be mailed in a separate envelope to each defendant. If the summons is to be served by mail by the court clerk, the court clerk shall enclose the summons and a copy of the petition or order of the court to be served in an envelope, prepared by the plaintiff, addressed to the defendant, or to the resident service

agent if one has been appointed. The court clerk shall prepay the postage and mail the envelope to the defendant, or service agent, by certified mail, return receipt requested and delivery restricted to the addressee. The return receipt shall be prepared by the plaintiff. Service by mail to a garnishee shall be accomplished by mailing a copy of the summons and notice by certified mail, return receipt requested, and at the election of the judgment creditor by restricted delivery, to the addressee.

c. Service by mail shall not be the basis for the entry of a default or a judgment by default unless the record contains a return receipt showing acceptance by the defendant or a returned envelope showing refusal of the process by the defendant. Acceptance or refusal of service by mail by a person who is fifteen (15) years of age or older who resides at the defendant's dwelling house or usual place of abode shall constitute acceptance or refusal by the party addressed. In the case of an entity described in division (3) of subparagraph c of paragraph 1 of this subsection, acceptance or refusal by any officer or by any employee of the registered office or principal place of business who is authorized to or who

regularly receives certified mail shall constitute acceptance or refusal by the party addressed. A return receipt signed at such registered office or principal place of business shall be presumed to have been signed by an employee authorized to receive certified mail. In the case of a state municipal corporation, or other governmental organization thereof subject to suit, acceptance or refusal by an employee of the office of the officials specified in division (5) of subparagraph c of paragraph 1 of this subsection who is authorized to or who regularly receives certified mail shall constitute acceptance or refusal by the party addressed. If delivery of the process is refused, upon the receipt of notice of such refusal and at least ten (10) days before applying for entry of default, the person elected by plaintiff pursuant to subparagraph a of this paragraph to serve the process shall mail to the defendant by first-class mail a copy of the summons and petition and a notice prepared by the plaintiff that despite such refusal the case will proceed and that judgment by default will be rendered against him unless he appears to defend the suit. Any default or judgment by default shall be set aside upon motion of the defendant in the

manner prescribed in Section 1031.1 of this title, or upon petition of the defendant in the manner prescribed in Section 1033 of this title if the defendant demonstrates to the court that the return receipt was signed or delivery was refused by an unauthorized person. A petition shall be filed within one (1) year after the defendant has notice of the default or judgment by default but in no event more than two (2) years after the filing of the judgment.

3. SERVICE BY PUBLICATION.

a. Service of summons upon a named defendant may be made by publication when it is stated in the petition, verified by the plaintiff or the plaintiff’s attorney, or in a separate affidavit by the plaintiff or the plaintiff’s attorney filed with the court, that with due diligence service cannot be made upon the defendant by any other method.

b. Service of summons upon the unknown successors of a named defendant, a named decedent, or a dissolved partnership, corporation, or other association may be made by publication when it is stated in a petition, verified by the plaintiff or the plaintiff's attorney, or in a separate affidavit by the plaintiff or the plaintiff's attorney filed with the court, that the

person who verified the petition or the affidavit does not know and with due diligence cannot ascertain the following:

(1) whether a person named as defendant is living or dead, and, if dead, the names or whereabouts of the person's successors, if any,

(2) the names or whereabouts of the unknown successors, if any, of a named decedent,

(3) whether a partnership, corporation, or other association named as a defendant continues to have legal existence or not; or the names or whereabouts of its officers or successors,

(4) whether any person designated in a record as a trustee continues to be the trustee; or the names or whereabouts of the successors of the trustee, or

(5) the names or whereabouts of the owners or holders of special assessment or improvement bonds, or any other bonds, sewer warrants or tax bills.

c. Service pursuant to this paragraph shall be made by publication of a notice, signed by the court clerk, one (1) day a week for three (3) consecutive weeks in a newspaper authorized by law to publish legal notices which is published in the county where the petition is

filed. If no newspaper authorized by law to publish legal notices is published in such county, the notice shall be published in some such newspaper of general circulation which is published in an adjoining county. All named parties and their unknown successors who may be served by publication may be included in one notice. The notice shall state the court in which the petition is filed and the names of the plaintiff and the parties served by publication, and shall designate the parties whose unknown successors are being served. The notice shall also state that the named defendants and their unknown successors have been sued and must answer the petition on or before a time to be stated (which shall not be less than forty-one (41) days from the date of the first publication), or judgment, the nature of which shall be stated, will be rendered accordingly. If jurisdiction of the court is based on property, any real property subject to the jurisdiction of the court and any property or debts to be attached or garnished must be described in the notice.

(1) When the recovery of money is sought, it is not necessary for the publication notice to state the separate items involved, but the total amount

that is claimed must be stated. When interest is claimed, it is not necessary to state the rate of interest, the date from which interest is claimed, or that interest is claimed until the obligation is paid.

(2) It is not necessary for the publication notice to state that the judgment will include recovery of costs in order for a judgment following the publication notice to include costs of suit.

(3) In an action to quiet title to real property, it is not necessary for the publication notice to state the nature of the claim or interest of either party, and in describing the nature of the judgment that will be rendered should the defendant fail to answer, it is sufficient to state that a decree quieting plaintiff's title to the described property will be entered. It is not necessary to state that a decree forever barring the defendant from asserting any interest in or to the property is sought or will be entered if the defendant does not answer.

(4) In an action to foreclose a mortgage, it is sufficient that the publication notice state that if the defendant does not answer, the defendant's

interest in the property will be foreclosed. It is not necessary to state that a judgment forever barring the defendant from all right, title, interest, estate, property and equity of redemption in or to said property or any part thereof is requested or will be entered if the defendant does not answer.

d. Service by publication is complete when made in the manner and for the time prescribed in subparagraph c of this paragraph. Service by publication shall be proved by the affidavit of any person having knowledge of the publication. No default judgment may be entered on such service until proof of service by publication is filed with and approved by the court.

e. Before entry of a default judgment or order against a party who has been served solely by publication under this paragraph, the court shall conduct an inquiry to determine whether the plaintiff, or someone acting in ~~his~~ behalf <u>of the plaintiff</u>, made a distinct and meaningful search of all reasonably available sources to ascertain the whereabouts of any named parties who have been served solely by publication under this paragraph. Before entry of a default judgment or order against the unknown successors of a named

defendant, a named decedent, or a dissolved partnership, corporation or association, the court shall conduct an inquiry to ascertain whether the requirements described in subparagraph b of this paragraph have been satisfied.

f. A party against whom a default judgment or order has been rendered, without other service than by publication in a newspaper, may, at any time within three (3) years after the filing of the judgment or order, have the judgment or order set aside in the manner prescribed in Sections 1031.1 and 1033 of this title. Before the judgment or order is set aside, the applicant shall notify the adverse party of the intention to make an application and shall file a full answer to the petition, pay all costs if the court requires them to be paid, and satisfy the court by affidavit or other evidence that during the pendency of the action the applicant had no actual notice thereof in time to appear in court and make a defense. The title to any property which is the subject of and which passes to a purchaser in good faith by or in consequence of the judgment or order to be opened shall not be affected by any proceedings under this subparagraph. Nor shall proceedings under this

subparagraph affect the title of any property sold before judgment under an attachment. The adverse party, on the hearing of an application to open a judgment or order as provided by this subparagraph, shall be allowed to present evidence to show that during the pendency of the action the applicant had notice thereof in time to appear in court and make a defense.

g. The term "successors" includes all heirs, executors, administrators, devisees, trustees, and assigns, immediate and remote, of a named individual, partnership, corporation, or association.

h. Service outside of the state does not give the court in personal jurisdiction over a defendant who is not subject to the jurisdiction of the courts of this state or who has not, either in person or through an agent, submitted to the jurisdiction of the courts of this state.

4. SERVICE ON THE SECRETARY OF STATE.

a. Service of process on a domestic or foreign corporation may be made by serving the Secretary of State as the corporation's agent, if:

(1) there is no registered agent for the corporation listed in the records of the Secretary of State; or

(2) neither the registered agent nor an officer of the corporation could be found at the registered office of the corporation, when service of process was attempted.

b. Before resorting to service on the Secretary of State the plaintiff must have attempted service either in person or by mail on the corporation at:

(1) the corporation's last-known address shown on the records of the Franchise Tax Division of the Oklahoma Tax Commission, if any is listed there; and

(2) the corporation's last-known address shown on the records of the Secretary of State, if any is listed there; and

(3) the corporation's last address known to the plaintiff.

If any of these addresses are the same, the plaintiff is not required to attempt service more than once at any address. The plaintiff shall furnish the Secretary of State with a certified copy of the return or returns showing the attempted service.

c. Service on the Secretary of State shall be made by filing two (2) copies of the summons and petition with the Secretary of State, notifying the Secretary of State that service is being made pursuant to the provisions of this paragraph, and paying the Secretary of State the fee prescribed in paragraph 7 of Section 1142 of Title 18 of the Oklahoma Statutes, which fee shall be taxed as part of the costs of the action, suit or proceeding if the plaintiff shall prevail therein. If a registered agent for the corporation is listed in the records of the Secretary of State, the plaintiff must also furnish a certified copy of the return showing that service on the registered agent has been attempted either in person or by mail, and that neither the registered agent nor an officer of the corporation could be found at the registered office of the corporation.

d. Within three (3) working days after receiving the summons and petition, the Secretary of State shall send notice by letter, certified mail, return receipt requested, directed to the corporation at its registered office or the last-known address found in the office of the Secretary of State, or if no address is found there, to the corporation's last-known

address provided by the plaintiff. The notice shall enclose a copy of the summons and petition and any other papers served upon the Secretary of State. The corporation shall not be required to serve its answer until forty (40) days after service of the summons and petition on the Secretary of State.

e. Before entry of a default judgment or order against a corporation that has been served by serving the Secretary of State as its agent under this paragraph, the court shall determine whether the requirements of this paragraph have been satisfied. A default judgment or order against a corporation that has been served only by service on the Secretary of State may be set aside upon motion of the corporation in the manner prescribed in Section 1031.1 of this title, or upon petition of the corporation in the manner prescribed in Section 1033 of this title, if the corporation demonstrates to the court that it had no actual notice of the action in time to appear and make its defense. A petition shall be filed within one (1) year after the corporation has notice of the default judgment or order but in no event more than two (2) years after the filing of the default judgment or order.

f. The Secretary of State shall maintain an alphabetical record of service setting forth the name of the plaintiff and defendant, the title, docket number, and nature of the proceeding in which the process has been served upon the defendant, the fact that service has been effected pursuant to the provisions of this paragraph, the return date thereof, and the date when the service was made. The Secretary of State shall not be required to retain this information for a period longer than five (5) years from receipt of the service of process.

g. The provisions of this paragraph shall not apply to a foreign insurance company doing business in this state.

5. SERVICE BY ACKNOWLEDGMENT. An acknowledgment on the back of the summons or the voluntary appearance of a defendant is equivalent to service.

6. SERVICE BY OTHER METHODS. If service cannot be made by personal delivery or by mail, a defendant of any class referred to in division (1) or (3) of subparagraph c of paragraph 1 of this subsection may be served as provided by court order in any manner which is reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard.

7. NO SERVICE BY PRISONER. No prisoner in any jail, Department of Corrections facility, private prison, or parolee or probationer under supervision of the Department of Corrections shall be appointed by any court to serve process on any defendant, party or witness.

D. SUMMONS AND PETITION. The summons and petition shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. The failure to serve a copy of the petition with the summons is not a ground for dismissal for insufficiency of service of process, but on motion of the party served, the court may extend the time to answer or otherwise plead. If a summons and petition are served by personal delivery, the person serving the summons shall state on the copy that is left with the person served the date that service is made. This provision is not jurisdictional, but if the failure to comply with it prejudices the party served, the court, on motion of the party served, may extend the time to answer or otherwise plead.

E. SUMMONS: TERRITORIAL LIMITS OF EFFECTIVE SERVICE.

1. Service of the summons and petition may be made anywhere within this state in the manner provided by subsection C of this section.

2. When the exercise of jurisdiction is authorized by subsection F of this section, service of the summons and petition may be made outside this state:

a. by personal delivery in the manner prescribed for service within this state,

b. in the manner prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction,

c. in the manner prescribed by paragraph 2 of subsection C of this section,

d. as directed by the foreign authority in response to a letter rogatory,

e. in the manner prescribed by paragraph 3 of subsection C of this section only when permitted by subparagraphs a and b of paragraph 3 of subsection C of this section, or

f. as directed by the court.

3. Proof of service outside this state may be made in the manner prescribed by subsection G of this section, the order pursuant to which the service is made, or the law of the place in which the service is made for proof of service in an action in any of its courts of general jurisdiction.

4. Service outside this state may be made by an individual permitted to make service of process under the law of this state or under the law of the place in which the service is made or who is designated to make service by a court of this state.

5. When subsection C of this section requires that in order to effect service one or more designated individuals be served, service outside this state under this section must be made upon the designated individual or individuals.

6. a. A court of this state may order service upon any person who is domiciled or can be found within this state of any document issued in connection with a proceeding in a tribunal outside this state. The order may be made upon application of any interested person or in response to a letter rogatory issued by a tribunal outside this state and shall direct the manner of service.

b. Service in connection with a proceeding in a tribunal outside this state may be made within this state without an order of court.

c. Service under this paragraph does not, of itself, require the recognition or enforcement of an order, judgment, or decree rendered outside this state.

F. ASSERTION OF JURISDICTION. A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.

G. RETURN.

1. The person serving the process shall make proof of service thereof to the court promptly and in any event within the time

during which the person served must respond to the process, but the failure to make proof of service does not affect the validity of the service.

2. When process has been served by a sheriff or deputy sheriff and return thereof is filed in the office of the court clerk, a copy of the return shall be sent by the court clerk to the plaintiff's attorney within three (3) days after the return is filed. If service is made by a person other than a sheriff, deputy sheriff, or licensed process server, that person shall make affidavit thereof. The return shall set forth the name of the person served and the date, place, and method of service.

3. If service was by mail, the person mailing the summons and petition shall endorse on the copy of the summons or order of the court that is filed in the action the date and place of mailing and the date when service was receipted or service was rejected, and shall attach to the copy of the summons or order a copy of the return receipt or returned envelope, if and when received, showing whether the mailing was accepted, refused, or otherwise returned. If the mailing was refused, the return shall also show the date and place of any subsequent mailing pursuant to paragraph 2 of subsection C of this section. When the summons and petition are mailed by the court clerk, the court clerk shall notify the plaintiff's attorney within three (3) days after receipt of the

returned card or envelope showing that the card or envelope has been received.

H. AMENDMENT. At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

I. SUMMONS: TIME LIMIT FOR SERVICE. If service of process is not made upon a defendant within ~~one hundred eighty (180)~~ <u>one hundred twenty (120)</u> days after the filing of the petition and the plaintiff cannot show good cause why such service was not made within that period, the action ~~may~~ <u>shall</u> be <u>deemed</u> dismissed as to that defendant without prejudice ~~upon the court's own initiative with notice to the plaintiff or upon motion~~. The action shall not be dismissed ~~where~~ <u>if</u> a summons was served on the defendant within ~~one hundred eighty (180)~~ <u>one hundred twenty (120)</u> days after the filing of the petition and a court later holds that the summons or its service was invalid. After a court quashes a summons or its service, a new summons may be served on the defendant within a time specified by the judge. If the new summons is not served within the specified time, the action shall be deemed to have been dismissed without prejudice as to that defendant. This subsection shall not apply with respect to a defendant who has been outside of this state

for ~~one hundred eighty (180)~~ one hundred twenty (120) days following the filing of the petition.

SECTION 18. AMENDATORY 12 O.S. 2001, Section 2008, is amended to read as follows:

Section 2008.

GENERAL RULES OF PLEADING

A. CLAIMS FOR RELIEF. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain:

1. A short and plain statement of the claim showing that the pleader is entitled to relief; and

2. A demand for judgment for the relief to which he deems himself entitled. Every pleading demanding relief for damages in money in excess of ~~Ten Thousand Dollars ($10,000.00)~~ the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code shall, without demanding any specific amount of money, set forth only that the amount sought as damages is in excess of ~~Ten Thousand Dollars ($10,000.00)~~ the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, except in actions sounding in contract. Every pleading demanding relief for damages in money in an amount ~~of Ten Thousand Dollars ($10,000.00)~~ that is required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code or less shall specify the amount of such damages

sought to be recovered. If the amount of damages sought to be recovered is the same as the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code or less, the amount of damages that may be recovered shall not exceed the amount set forth in the pleadings. Relief in the alternative or of several different types may be demanded.

B. DEFENSES; FORM OF DENIALS. A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If he is without knowledge or information sufficient to form a belief as to the truth of an averment, he shall so state and this statement has the effect of a denial. Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, he shall specify so much of it as is true and material and shall deny only the remainder. Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, he may make his denials as specific denials of designated averments or paragraphs or he may generally deny all the averments except such designated averments or paragraphs as he expressly admits; but, when he does so intend to controvert all its averments, he may do so by general denial subject to the obligations set forth in Section 2011 of this title.

C. AFFIRMATIVE DEFENSES. In pleading to a preceding pleading, a party shall set forth affirmatively:

1. Accord and satisfaction;

2. Arbitration and award;

3. Assumption of risk;

4. Contributory negligence;

5. Discharge in bankruptcy;

6. Duress;

7. Estoppel;

8. Failure of consideration;

9. Fraud;

10. Illegality;

11. Injury by fellow servant;

12. Laches;

13. License;

14. Payment;

15. Release;

16. Res judicata;

17. Statute of frauds;

18. Statute of limitations;

19. Waiver; and

20. Any other matter constituting an avoidance or affirmative defense.

When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

D. EFFECT OF FAILURE TO DENY. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

E. PLEADING TO BE CONCISE AND DIRECT; CONSISTENCY.

1. Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required.

2. A party may set forth, and at trial rely on, two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds. All statements shall be made subject to the obligations set forth in Section 2011 of this title.

F. CONSTRUCTION OF PLEADINGS. All pleadings shall be so construed as to do substantial justice.

SECTION 19. AMENDATORY 12 O.S. 2001, Section 2009, is amended to read as follows:

Section 2009.

PLEADING SPECIAL MATTERS

A. CAPACITY. It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge, and he shall have the burden of proof on that issue.

B. FRAUD, MISTAKE, CONDITION OF THE MIND. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

C. CONDITIONS PRECEDENT. In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity.

D. OFFICIAL DOCUMENT OR ACT. In pleading an official document or official act it is sufficient to aver that the document was issued or the act done in compliance with law.

E. JUDGMENT. In pleading a judgment or decision of a domestic or foreign court, judicial or quasi-judicial tribunal, or of a board or officer, it is sufficient to aver the judgment or decision without setting forth matter showing jurisdiction to render it.

F. TIME AND PLACE. For the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter.

G. SPECIAL DAMAGE. When items of special damage are claimed, their nature shall be specifically stated. In actions where exemplary or punitive damages are sought, the petition shall ~~not~~ state a specific dollar amount for damages sought to be recovered ~~but shall state whether the amount of damages sought to be recovered is in excess of or not in excess of Ten Thousand Dollars ($10,000.00)~~. If the amount of damages sought to be recovered is in excess of Ten Thousand Dollars ($10,000.00) but less than the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, the amount of damages that may be recovered shall not exceed the amount set forth in the pleadings, unless a good-faith-based change in circumstances arises. The party may seek, by application to the court prior to the pretrial order, an amendment to change the amount pled for good cause. If the

<u>amount sought exceeds the amount required to satisfy diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, the specific amount must be included in the petition.</u>

SECTION 20. AMENDATORY 12 O.S. 2001, Section 2011, as amended by Section 10, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Section 2011), is amended to read as follows:

Section 2011.

SIGNING OF PLEADINGS

A. SIGNATURE. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in ~~his~~ <u>the</u> ~~attorney's~~ individual name <u>of the attorney</u>, whose Oklahoma Bar Association identification number shall be stated, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the address of the signer and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless the omission of the signature is corrected promptly after being called to the attention of the attorney or party.

B. REPRESENTATIONS TO COURT. By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1. It is not being presented for any improper or frivolous purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2. The claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

3. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

C. SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subsection B of this section has been violated, the court shall, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subsection B of this section or are responsible for the violation.

1. HOW INITIATED.

a. By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection B of this section. It shall be served as provided in Section 2005 of this title, but shall not be filed with or presented to the court unless, within twenty-one (21) days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorneys fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

b. On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subsection B of this section and directing an attorney, law firm, or party to show cause why it has not violated subsection B of this section with respect thereto.

2. NATURE OF SANCTIONS; LIMITATIONS. A sanction imposed for violation of this section shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs a, b and c of this paragraph, the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys fees and other expenses incurred as a direct result of the violation.

a. Monetary sanctions shall not be awarded against a represented party for a violation of paragraph 2 of subsection B of this section.

b. Monetary sanctions shall not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

c. Monetary sanctions shall be awarded for any violations of paragraph 1 of subsection B of this section. The sanctions shall consist of an order directing payment of reasonable costs, including attorney fees, incurred by the movant with respect to the conduct for which the sanctions are imposed. In addition, the court may

impose any other sanctions authorized by this paragraph.

3. ORDER. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed.

D. INAPPLICABILITY TO DISCOVERY. This section does not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Sections 3226 through 3237 of this title.

E. DEFINITION. As used in this section, "frivolous" means the action or pleading was knowingly asserted in bad faith~~, was unsupported by any credible evidence, was not grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law~~ <u>or without any rational argument based in law or facts to support the position of the litigant</u>.

SECTION 21. AMENDATORY Section 1, Chapter 370, O.S.L. 2004, as amended by Section 10, Chapter 12, O.S.L. 2007 (12 O.S. Supp. 2008, Section 2011.1), is amended to read as follows:

Section 2011.1 In any action not arising out of contract, if requested the court shall, upon ruling on a motion to dismiss an action or a motion for summary judgment or subsequent to adjudication on the merits, determine whether a claim or defense asserted in the action by a nonprevailing party was frivolous. As

used in this section, "frivolous" means the claim or defense was knowingly asserted in bad faith~~, was unsupported by any credible evidence, was not grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law~~ or without any rational argument based in law or facts to support the position of the litigant. Upon so finding, the court shall enter an order requiring such nonprevailing party to reimburse the prevailing party for reasonable costs, including attorney fees, incurred with respect to such claim or defense. In addition, the court may impose any sanction authorized by Section 2011 of ~~Title 12 of the Oklahoma Statutes~~ this title.

SECTION 22. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2016.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

PRETRIAL CONFERENCE

A. PRETRIAL ORDER. After any pretrial conference, a pretrial order shall be entered reciting the action taken. This order shall control the subsequent course of action unless modified by subsequent order. The order following a pretrial conference shall be modified only to prevent manifest injustice.

B. COMPULSORY REQUIREMENTS. The pretrial order shall include, among other things, a specific itemization of damages for each party claiming monetary damages. The amount of damages that may be

recovered shall not exceed the amount set forth in the order. The trial court shall, by written order, remit any amounts that exceed the itemized amounts contained in the pretrial order.

SECTION 23. AMENDATORY 12 O.S. 2001, Section 2023, is amended to read as follows:

Section 2023.

CLASS ACTIONS

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

1. The prosecution of separate actions by or against individual members of the class would create a risk of:

a. inconsistent or varying adjudications with respect to individual members of the class which would establish

incompatible standards of conduct for the party opposing the class, or

b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,

b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,

c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and

d. the difficulties likely to be encountered in the management of a class action.

C. DETERMINATION BY ORDER WHETHER CLASS ACTION TO BE MAINTAINED; NOTICE; JUDGMENT; ACTIONS CONDUCTED PARTIALLY AS CLASS ACTIONS.

1. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subsection may be conditional, and may be altered or amended before the decision on the merits.

2. If the order described in paragraph 1 of this subsection becomes subject to appellate review, the reviewing court shall apply a de novo standard. While the appeal of the order is pending, discovery shall be stayed.

3. In any class action maintained under paragraph 3 of subsection B of this section, the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all potential members who can be identified through reasonable effort. The notice shall advise each potential member that:

a. the court will ~~exclude him from~~ include the potential member in the class only if ~~he~~ the potential member so requests by a specified date,

b. the judgment, whether favorable or not, will include ~~all~~ only members who ~~do not request exclusion~~ have advised the court by the specified date that they desire to be included in the class, and

c. any member who ~~does not request exclusion~~ requests inclusion may~~, if he desires,~~ enter an appearance through ~~his~~ counsel.

~~Where~~ If the class contains more than five hundred ~~(500)~~ potential members who can be identified through reasonable effort, it shall not be necessary to direct individual notice to more than five hundred ~~(500)~~ potential members, but the potential members to whom individual notice is not directed shall be given notice in such manner as the court shall direct, which may include publishing notice in newspapers, magazines, trade journals or other publications, posting it in appropriate places, and taking other steps that are reasonably calculated to bring the notice to the attention of such members~~,~~; provided, that the cost of giving such notice shall be reasonable in view of the amounts that may be recovered by the class ~~members who are being notified~~. ~~Members~~ Potential members to whom individual notice was not directed may request ~~exclusion from~~ inclusion in the class at any time before the

issue of liability is determined~~, and~~; provided, commencing an individual action before the issue of liability is determined in the class action shall ~~be the equivalent of requesting~~ result in exclusion from the class.

~~3.~~ 4. The judgment in an action maintained as a class action under ~~paragraphs~~ paragraph 1 or 2 of subsection B of this section, whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under paragraph 3 of subsection B of this section, whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in paragraph ~~2~~ 3 of this subsection ~~C of this section~~ was directed, and who have not requested ~~exclusion~~ inclusion, and whom the court finds to be members of the class.

~~4.~~ 5. When appropriate:

a. an action may be brought or maintained as a class action with respect to particular issues, or

b. a class may be divided into subclasses and each subclass treated as a class.

The provisions of this section shall then be construed and applied accordingly.

D. ORDERS IN CONDUCT OF ACTIONS. In the conduct of actions to which this section applies, the court may make appropriate orders:

1. Determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument;

2. Requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;

3. <u>Upon certification of a class, requiring for the sole purpose of class notice, parties to the action provide such names and addresses of potential members of the class as they possess;</u>

<u>4.</u> Imposing conditions on the representative parties or on intervenors;

~~4.~~ <u>5.</u> Requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; and

~~5.~~ <u>6.</u> Dealing with similar procedural matters.

The orders may be combined with an order under Section ~~16~~ <u>2016</u> of this ~~act~~ <u>title</u> and may be altered or amended as may be desirable from time to time.

E. DISMISSAL OR COMPROMISE. A class action shall not be dismissed or compromised without the approval of the court, and

notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

F. ATTORNEY FEES. 1. In class actions, if an award of attorney fees is available, the trial court shall use the Lodestar Rule to calculate the amount of fees to be awarded to class counsel. The court may increase or decrease the fee award calculated by using the Lodestar method by no more than three times based on specified factors established by rule of the Supreme Court.

2. If any portion of the benefits recovered for the class are in the form of coupons or other noncash common benefits, the attorney fees awarded in the class action shall be in cash and noncash amounts in the same proportion as the recovery for the class.

3. As used in this section, “Lodestar Rule” means the number of hours reasonably expended multiplied by the prevailing hourly rate in the community and then adjusted for other factors. In arriving at just compensation, the court shall consider the following factors:

a. time and labor required,

b. the novelty and difficulty of the case,

c. the skill required to perform the legal service properly,

d. the preclusion of other employment by the attorney due to acceptance of the case,

e. the customary fee,

f. whether the fee is fixed or contingent,

g. time limitations imposed by the client or the circumstances,

h. the amount in controversy and the results obtained,

i. the experience, reputation and ability of the attorney,

j. whether or not the case is an undesirable case,

k. the nature and length of the professional relationship with the client, and

l. awards in similar cases.

G. CLASS MEMBERSHIP LIMITATIONS. Class membership shall be limited only to individuals who are:

1. Residents of this state; or

2. Nonresidents of Oklahoma who:

a. own property located in this state, and

b. the property is relevant to the class action.

SECTION 24. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2056 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. FOR CLAIMANT. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may move, at any time after the expiration of twenty (20) days from the commencement of the action or after service of a motion for summary

judgment by the adverse party, with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

B. FOR DEFENDING PARTY. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may move, at any time, with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

C. MOTIONS AND PROCEEDINGS THEREON. The motion shall be served at least ten (10) days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

D. NOT FULLY ADJUDICATED ON MOTION. If, on motion under this section, judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall ascertain, if practicable, what

material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall make thereupon an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action, the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

E. FORM OF AFFIDAVITS; FURTHER TESTIMONY; DEFENSE REQUIRED. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this section, a party may not rest upon the mere allegations or denials of the party's pleading, but the party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial or no genuine issue for trial, as appropriate. The adverse party has the burden of producing evidence on any issue raised in the motion on which the adverse party would

have the burden of persuasion at trial. If the adverse party does not so respond, summary judgment, if otherwise appropriate hereunder, shall be entered against the adverse party.

F. WHEN AFFIDAVITS ARE UNAVAILABLE. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. Upon request of a party opposing a motion for summary judgment, the court shall allow a reasonable amount of time to conclude discovery sufficient to allow the party to adequately respond to the motion for summary judgment.

G. AFFIDAVITS MADE IN BAD FAITH. Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this section are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney fees, and any offending party or attorney may be adjudged guilty of contempt.

H. STANDARD OF PROOF. Summary judgment shall be granted in favor of a party only if there is no genuine issue as to any material fact and upon a finding that the moving party is entitled

to a judgment as a matter of law. If a standard of proof beyond a preponderance of the evidence applies at trial, the heightened standard shall be taken into account by the court in ruling on a motion for summary judgment.

I. APPEALS. An order denying summary judgment, summary disposition of issues, or partial summary adjudication will be appealable as part of any appeal from an appealable order or judgment which is later rendered in the case.

J. SUPERSESSION. The provisions of this section supersede any court rules otherwise applicable to the subject matter of this section.

SECTION 25. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2415 of Title 12, unless there is created a duplication in numbering, reads as follows:

In an action to recover damages for injuries resulting in death, evidence of the remarriage or social situation of the surviving spouse of the decedent is admissible.

SECTION 26. AMENDATORY 12 O.S. 2001, Section 2702, is amended to read as follows:

Section 2702. A. OPINION TESTIMONY BY LAY WITNESSES. If the witness is not testifying as an expert, the testimony of the witness in the form of opinions or inferences is limited to those opinions or inferences which are:

1. Rationally based on the perception of the witness;

2. Helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and

3. Not based on scientific, technical, or other specialized knowledge within the scope of subsection B of this section.

B. TESTIMONY BY EXPERTS. If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise, if:

1. The testimony is based upon sufficient facts or data;

2. The testimony is the product of reliable principles and methods; and

3. The witness has applied the principles and methods reliably to the facts of the case.

C. BASES OF EXPERT OPINION TESTIMONY. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines

that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

D. BARS TO EXPERT TESTIMONY.

1. A witness qualified as an expert by knowledge, skill, experience, training, or education may only offer expert testimony with respect to a particular field in which the expert is qualified.

2. An expert witness may receive a reasonable and customary fee for the rendering of professional services; provided, that the testimony of an expert witness shall not be admitted if any such compensation is contingent on the outcome of any claim or case with respect to which the testimony is being offered and said contingency contract shall be null and void as against public policy.

E. MANDATORY PRETRIAL HEARING. If the witness is testifying as an expert, then upon motion of a party, the court shall hold a pretrial hearing to determine whether the witness qualifies as an expert and whether the expert's testimony satisfies the requirements of subsections B through D of this section. The court shall allow sufficient time for a hearing and shall rule on the qualifications of the witness to testify as an expert and whether or not the testimony satisfies the requirements of subsections B through D of this section. Such hearing and ruling shall be completed no later than the final pretrial hearing. Upon request, the trial court's ruling shall set forth the findings of fact and conclusions of law upon which the order to admit or exclude expert evidence is based.

F. MANDATORY PRETRIAL DISCLOSURE OF EXPERT TESTIMONY.

1. Whether or not any party elects to request a pretrial hearing contemplated in subsection E of this section, all parties shall disclose to other parties the identity of any person who may be used at trial to present expert evidence.

2. Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information relied upon by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten (10) years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four (4) years.

3. These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least ninety (90) days before the trial date or the date

the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph 2 of this subsection, within thirty (30) days after the disclosure made by the other party.

4. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under paragraph 2 of this subsection, the deposition shall not be conducted until after the report is provided.

G. INTERPRETATION. In interpreting and applying this section, the courts of this state shall follow the opinions of the Supreme Court of the United States in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), *Kuhmo Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999), *Weisgram v. Marley*, 528 U.S. 440 (2000); moreover, the courts of this state may draw from other precedents binding in the federal courts of this state applying the standards announced by the Supreme Court of the United States in the foregoing cases.

H. INTERLOCUTORY APPEAL. Interlocutory appeal of a ruling on the admissibility of expert evidence shall be available at the discretion of the appellate court. In deciding whether to grant the interlocutory appeal, the court shall consider whether:

1. The ruling involved any challenge to the constitutionality of this section;

2. The ruling will help prove or disprove criminal liability; or

3. The ruling will help establish civil liability at or above Seventy-five Thousand Dollars ($75,000.00), where the testimony could be outcome-determinative for establishing liability or determining damages. Neither a party's failure to seek interlocutory appeal or an appellate court's decision to deny a motion for interlocutory appeal shall waive a party's right to appeal a ruling on the admissibility of expert evidence after an entry of judgment in the case.

I. STANDARD OF REVIEW.

1. As the proper construction of the expert evidence admissibility framework prescribed by this section is a question of law, the courts of appeals shall apply a de novo standard of review in determining whether the trial court fully applied the proper legal standard in considering the admissibility of expert evidence.

2. As the application of this section to determine the admissibility of expert testimony is a question of fact, the courts of appeals shall apply an abuse of discretion standard in determining whether the trial court properly admitted or excluded particular expert evidence.

J. SEVERABILITY CLAUSE. The provisions of this section are severable. If any portion of this section is declared unconstitutional or the application of any part of this section to any person or circumstance is held invalid, the remaining portions of the section and their applicability to any person or circumstance shall remain valid and enforceable.

K. EFFECTIVE DATE. This section shall become effective upon enactment and shall apply to all actions commenced on or after November 1, 2009, and to all pending actions in which trial has not been scheduled or in which trial has been scheduled in excess of ninety (90) days after November 1, 2009.

SECTION 27. AMENDATORY 12 O.S. 2001, Section 3226, as last amended by Section 3, Chapter 519, O.S.L. 2004 (12 O.S. Supp. 2008, Section 3226), is amended to read as follows:

Section 3226. A. DISCOVERY METHODS. Parties may obtain discovery by one or more of the following methods: Depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission. Unless the court orders otherwise under this section, the frequency of use of these methods is not limited.

B. DISCOVERY SCOPE AND LIMITS. Unless otherwise limited by order of the court in accordance with the Oklahoma Discovery Code, the scope of discovery is as follows:

1. IN GENERAL. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. ~~A party shall produce upon request pursuant to Section 3234 of this title, any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this section, an application for insurance shall not be treated as a part of an insurance agreement.~~

2. INITIAL DISCLOSURES.

a. Except in categories of proceedings specified in subparagraph b of this paragraph, or to the extent otherwise stipulated or directed by order, a party, without awaiting a discovery request, must provide to other parties a computation of any category of damages claimed by the disclosing party, making available for inspection and copying the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

b. The following categories of proceedings are exempt from initial disclosure under subparagraph a of this paragraph:

(1) an action for review on an administrative record,

(2) a petition for habeas corpus or other proceeding to challenge a criminal conviction or sentence,

(3) an action brought without counsel by a person in custody of the United States, a state, or a state subdivision,

(4) an action to enforce or quash an administrative summons or subpoena,

(5) an action by the United States to recover benefit payments,

(6) an action by the United States to collect on a student loan guaranteed by the United States,

(7) a proceeding ancillary to proceedings in other courts, and

(8) an action to enforce an arbitration award.

3. TIME FOR DISCLOSURES. These disclosures must be made at or within fourteen (14) days after the discovery conference provided for in subsection F of this section unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in the circumstances of the action and states the objection in the discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and set the time for disclosure. Any party first served or otherwise joined after the discovery conference must make these disclosures within thirty (30) days after being served or joined unless a different time is set by stipulation or court order. A party must make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party’s disclosures or because another party has not made its disclosures.

4. TRIAL PREPARATION: MATERIALS. Subject to the provisions of paragraph ~~3~~ 5 of this subsection, discovery may be obtained of

documents and tangible things otherwise discoverable under paragraph 1 of this subsection and prepared in anticipation of litigation or for trial by or for another party or by or for the representative of that other party, including his attorney, consultant, surety, indemnitor, only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

A party may obtain, without the required showing provided for in this paragraph, a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provisions of paragraph 4 of subsection A of Section 3237 of this title apply to the award of expenses incurred in relation to the motion. For purposes of this paragraph, a statement previously made is:

a. A written statement signed or otherwise adopted or approved by the person making it, or

b. A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which substantially recites an oral statement by the person making it and contemporaneously recorded.

~~3.~~ 5. TRIAL PREPARATION: EXPERTS.

a. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of paragraph 1 of this subsection and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(1) A party may, through interrogatories, require any other party to identify each person whom that other party expects to call as an expert witness at trial and give the address at which that expert witness may be located.

(2) After disclosure of the names and addresses of the expert witnesses, the other party expects to call as witnesses, the party, who has requested disclosure, may depose any such expert witnesses subject to scope of this section. Prior to taking the deposition the party must give notice as required in subsections A and C of Section 3230 of this title. If any documents are provided to such disclosed expert witnesses, the

documents shall not be protected from disclosure by privilege or work product protection and they may be obtained through discovery.

(3) In addition to taking the depositions of expert witnesses the party may, through interrogatories, require the party who expects to call the expert witnesses to state the subject matter on which each expert witness is expected to testify; the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion; the qualifications of each expert witness, including a list of all publications authored by the expert witness within the preceding ten (10) years; the compensation to be paid to the expert witness for the testimony and preparation for the testimony; and a listing of any other cases in which the expert witness has testified as an expert at trial or by deposition within the preceding four (4) years. An interrogatory seeking the information specified above shall be treated as a single interrogatory for purposes of the limitation on the number of interrogatories in Section 3233 of this title.

b. A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only upon motion, when the court may order discovery as provided in Section 3235 of this title or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by any other means.

c. Unless manifest injustice would result:

(1) The court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under division (2) of subparagraph a of this paragraph and subparagraph b of this paragraph.

(2) The court shall require that the party seeking discovery with respect to discovery obtained under subparagraph b of this paragraph, pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

~~4.~~ <u>6.</u> CLAIMS OF PRIVILEGE OR PROTECTION OF TRIAL PREPARATION MATERIALS. When a party withholds information otherwise

discoverable under the Oklahoma Discovery Code by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

C. PROTECTIVE ORDERS.

1. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer, either in person or by telephone, with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or on matters relating to a deposition, the district court in the county where the deposition is to be taken may enter any order which justice requires to protect a party or person from annoyance, harassment, embarrassment, oppression or undue delay, burden or expense, including one or more of the following:

a. that the discovery not be had,

b. that the discovery may be had only on specified terms and conditions, including a designation of the time or place,

c. that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery,

d. that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters,

e. that discovery be conducted with no one present except persons designated by the court,

f. that a deposition after being sealed be opened only by order of the court,

g. that a trade secret or other confidential research, development or commercial information not be disclosed or be disclosed only in a designated way, and

h. that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court;

2. If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of paragraph 4 of subsection A of Section 3237 of this title apply to the award of expenses incurred in relation to the motion. Any protective order of the court which has the effect of removing any material obtained by discovery from the public record shall contain the following:

a. a statement that the court has determined it is necessary in the interests of justice to remove the material from the public record,

b. specific identification of the material which is to be removed or withdrawn from the public record, or which is to be filed but not placed in the public record, and

c. a requirement that any party obtaining a protective order place the protected material in a sealed manila envelope clearly marked with the caption and case number and is clearly marked with the word "CONFIDENTIAL", and stating the date the order was entered and the name of the judge entering the order;

3. No protective order entered after the filing and microfilming of documents of any kind shall be construed to require the microfilm record of such filing to be amended in any fashion;

4. The party or counsel which has received the protective order shall be responsible for promptly presenting the order to appropriate court clerk personnel for appropriate action;

5. All documents produced or testimony given under a protective order shall be retained in the office of counsel until required by the court to be filed in the case;

6. Counsel for the respective parties shall be responsible for informing witnesses, as necessary, of the contents of the protective order; and

7. When a case is filed in which a party intends to seek a protective order removing material from the public record, the plaintiff(s) and defendant(s) shall be initially designated on the petition under pseudonym such as "John or Jane Doe", or "Roe", and the petition shall clearly indicate that the party designations are fictitious. The party seeking confidentiality or other order removing the case, in whole or in part, from the public record, shall immediately present application to the court, seeking instructions for the conduct of the case, including confidentiality of the records.

D. SEQUENCE AND TIMING OF DISCOVERY. Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence. The fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay discovery by any other party.

E. SUPPLEMENTATION OF RESPONSES. A party who has responded to a request for discovery with a response that was complete when it was made is under no duty to supplement the response to include information thereafter acquired, except as follows:

1. A party is under a duty seasonably to supplement the response with respect to any question directly addressed to:

a. the identity and location of persons having knowledge of discoverable matters, and

b. the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the testimony of the person.

2. A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party obtains information upon the basis of which:

a. (i) the party knows that the response was incorrect in some material respect when made, or

(ii) the party knows that the response, which was correct when made, is no longer true in some material respect; and

b. the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

3. A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

F. DISCOVERY CONFERENCE. At any time after commencement of an action, the court may direct the attorneys for the parties to appear

for a conference on the subject of discovery. The court shall do so upon motion by the attorney for any party if the motion includes:

1. A statement of the issues as they then appear;

2. A proposed plan and schedule of discovery;

3. Any limitations proposed to be placed on discovery;

4. Any other proposed orders with respect to discovery; and

5. A statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in the motion.

Each party and his attorney are under a duty to participate in good faith in the framing of a discovery plan if a plan is proposed by the attorney for any party. Notice of the motion shall be served on all parties. Objections or additions to matters set forth in the motion shall be served not later than ten (10) days after service of the motion.

Following the discovery conference, the court shall enter an order tentatively identifying the issues for discovery purposes, establishing a plan and schedule for discovery, setting limitations on discovery, if any; and determining such other matters, including the allocation of expenses, as are necessary for the proper management of discovery in the action. In preparing the plan for discovery the court shall protect the parties from excessive or abusive use of discovery. An order shall be altered or amended whenever justice so requires.

Subject to the right of a party who properly moves for a discovery conference to prompt convening of the conference, the court may combine the discovery conference with a pretrial conference.

G. SIGNING OF DISCOVERY REQUESTS, RESPONSES AND OBJECTIONS. Every request for discovery, response or objection thereto made by a party represented by an attorney shall be signed by at least one of his attorneys of record in his individual name whose address shall be stated. A party who is not represented by an attorney shall sign the request, response or objection and state his address. The signature of the attorney or party constitutes a certification that he has read the request, response or objection, and that it is:

1. To the best of his knowledge, information and belief formed after a reasonable inquiry consistent with the Oklahoma Discovery Code and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law;

2. Interposed in good faith and not primarily to cause delay or for any other improper purpose; and

3. Not unreasonable or unduly burdensome or expensive, given the nature and complexity of the case, the discovery already had in the case, the amount in controversy, and other values at stake in the litigation. If a request, response or objection is not signed, it shall be deemed ineffective.

If a certification is made in violation of the provisions of this subsection, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response or objection is made, or both, an appropriate sanction, which may include an order to pay to the amount of the reasonable expenses occasioned thereby, including a reasonable attorney fee.

SECTION 28. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 751A of Title 15, unless there is created a duplication in numbering, reads as follows:

It is the intent of the Legislature that in construing the Oklahoma Consumer Protection Act, courts shall be guided by the policies of the Federal Trade Commission and interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C., Section 45(a)(1)), as from time to time amended.

SECTION 29. AMENDATORY 15 O.S. 2001, Section 754, is amended to read as follows:

Section 754. Nothing in the Oklahoma Consumer Protection Act shall apply to:

1. Publishers, broadcasters, printers, or other persons insofar as an unlawful practice as defined in Section ~~3~~ 753 of this ~~act~~ title involves information that has been disseminated or reproduced

on behalf of others without knowledge that it is an unlawful practice~~.~~;

2. Actions or transactions otherwise permitted or regulated ~~under laws administered~~ by the Federal Trade Commission, the Corporation Commission, or any other regulatory body or officer acting under statutory authority of this state or the United States, or to acts done by retailers or other persons acting in good faith on the basis of information or matter supplied by others and without knowledge of the deceptive character of such information or matter; or

3. Claims seeking damages for conduct that results in bodily injury, death, or damage to property other than the property that is the subject of the practice claimed to be a violation of the Oklahoma Consumer Protection Act.

SECTION 30. AMENDATORY 15 O.S. 2001, Section 761.1, is amended to read as follows:

Section 761.1 A. The commission of any act or practice declared to be a violation of the Oklahoma Consumer Protection Act shall render the violator liable to the aggrieved consumer who suffers an ascertainable loss of money or property, real or personal, as a result of the violation for the payment of actual damages sustained by the ~~customer~~ consumer and costs of litigation including reasonable ~~attorney's~~ attorney fees, and the aggrieved consumer shall have a private right of action for actual damages~~,~~

including, but not limited to, costs and ~~attorney's~~ attorney fees. Actual damages shall be measured by the out-of-pocket loss of the consumer, which is an amount of money equal to the difference between the amount paid by the consumer for the good or service and the actual market value of the good or service that the consumer actually received. In any private action for damages for a violation of the Oklahoma Consumer Protection Act the court shall, subsequent to adjudication on the merits and upon motion of the prevailing party, determine whether a claim or defense asserted in the action by a nonprevailing party was asserted in bad faith, was not well grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Upon so finding, the court ~~shall~~ may enter a judgment ordering such nonprevailing party to reimburse the prevailing party an amount not to exceed Ten Thousand Dollars ($10,000.00) for reasonable costs, including ~~attorney's~~ attorney fees, incurred with respect to such claim or defense.

B. In order to recover damages in an action for a violation of the Oklahoma Consumer Protection Act, a person shall be required to prove that the person reasonably relied to the detriment of the person upon the practice alleged to be a violation of the Oklahoma Consumer Protection Act, and that the damages were proximately caused by the practice alleged to be a violation of the Oklahoma Consumer Protection Act.

C. The commission of any act or practice declared to be a violation of the Oklahoma Consumer Protection Act, if such act or practice is also found to be unconscionable, shall render the violator liable to the aggrieved customer for the payment of a civil penalty, recoverable in an individual action only, in a sum set by the court of not more than Two Thousand Dollars ($2,000.00) for each violation. In determining whether an act or practice is unconscionable the following circumstances shall be taken into consideration by the court: ~~(1) whether~~

1. Whether the violator knowingly or with reason to know, took advantage of a consumer reasonably unable to protect ~~his or her~~ the consumer’s own interests because of ~~his or her~~ the age, physical infirmity, ignorance, illiteracy of the consumer, or the inability to understand the language of an agreement or similar factor; ~~(2) whether~~

2. Whether, at the time the consumer transaction was entered into, the violator knew or had reason to know that price grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by like consumers; ~~(3) whether~~

3. Whether, at the time the consumer transaction was entered into, the violator knew or had reason to know that there was no reasonable probability of payment of the obligation in full by the consumer; ~~(4) whether~~ and

4. Whether the violator knew or had reason to know that the transaction ~~he or she~~ the violator induced the consumer to enter into was excessively one-sided in favor of the violator.

~~C.~~ D. Any person who is found to be in violation of the Oklahoma Consumer Protection Act in a civil action or who willfully violates the terms of any injunction or court order issued pursuant to the Oklahoma Consumer Protection Act shall forfeit and pay a civil penalty of not more than Ten Thousand Dollars ($10,000.00) per violation, in addition to other penalties that may be imposed by the court, as the court shall deem necessary and proper. For the purposes of this section, the district court issuing an injunction shall retain jurisdiction, and in such cases, the Attorney General, acting in the name of the state, or a district attorney may petition for recovery of civil penalties.

~~D.~~ E. In administering and pursuing actions under ~~this act~~ the Oklahoma Consumer Protection Act, the Attorney General and a district attorney are authorized to sue for and collect reasonable expenses, ~~attorney's~~ attorney fees, and investigation fees as determined by the court. Civil penalties or contempt penalties sued for and recovered by the Attorney General or a district attorney shall be used for the furtherance of their duties and activities under the Oklahoma Consumer Protection Act.

~~E.~~ F. In addition to other penalties imposed by the Oklahoma Consumer Protection Act, any person convicted in a criminal

proceeding of violating the Oklahoma Consumer Protection Act shall be guilty of a misdemeanor for the first offense and upon conviction thereof shall be subject to a fine not to exceed One Thousand Dollars ($1,000.00), or imprisonment in the county jail for not more than one (1) year, or both such fine and imprisonment. If the value of the money, property or valuable thing referred to in this section is Five Hundred Dollars ($500.00) or more or if the conviction is for a second or subsequent violation of the provisions of the Oklahoma Consumer Protection Act, any person convicted pursuant to this subsection shall be deemed guilty of a felony and shall be subject to imprisonment in the ~~State Penitentiary~~ custody of the Department of Corrections, for not more than ten (10) years, or a fine not to exceed Five Thousand Dollars ($5,000.00), or both such fine and imprisonment.

SECTION 31. AMENDATORY 23 O.S. 2001, Section 9.1, as amended by Section 1, Chapter 462, O.S.L. 2002 (23 O.S. Supp. 2008, Section 9.1), is amended to read as follows:

Section 9.1 A. ~~In~~ Except as provided in Section 30 of this act, in an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C ~~and~~, D and F of this section, award punitive damages for the sake of example and by way of punishing the defendant based upon the following factors:

1. The seriousness of the hazard to the public arising from the defendant's misconduct and any harm likely to result or harm that has actually occurred due to the misconduct;

2. The profitability of the misconduct to the defendant;

3. The duration and frequency of the misconduct and any concealment of it;

4. The degree of the defendant's awareness of the hazard and of its excessiveness;

5. The attitude and conduct of the defendant upon discovery of the misconduct or hazard;

6. In the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and

7. The financial condition of the defendant.

B. Category I. Where the jury finds by clear and convincing evidence that:

1. The defendant has been guilty of reckless disregard for the rights of others; or

2. An insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured; the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greater of:

a. One Hundred Thousand Dollars ($100,000.00), or

b. the amount of the actual damages awarded.

Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

C. Category II. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or

2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured;

the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greatest of:

a. Five Hundred Thousand Dollars ($500,000.00),

b. twice the amount of actual damages awarded, or

c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.

The trial court shall reduce any award for punitive damages awarded pursuant to the provisions of subparagraph c of this paragraph by the amount it finds the defendant or insurer has previously paid as a result of all punitive damage verdicts entered in any court of this state for the same conduct by the defendant or insurer. Any

award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

D. Category III. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or

2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured; and the court finds, on the record and out of the presence of the jury, that there is evidence beyond a reasonable doubt that the defendant or insurer acted intentionally and with malice and engaged in conduct life-threatening to humans,

the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in any amount the jury deems appropriate, without regard to the limitations set forth in subsections B and C of this section. Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error.

E. <u>In a claim for punitive damages, a plaintiff shall present prima facie evidence for the punitive damages claim before conducting discovery regarding the financial assets or financial condition of the defendant.</u>

F. In determining the amount, if any, of punitive damages to be awarded under either subsection B, C or D of this section, the jury shall make the award based upon the factors set forth in subsection A of this section.

~~F.~~ G. 1. In a case involving injury or harm allegedly caused by a product, the manufacturer, distributor or seller of the product shall not be subject to exemplary or punitive damages if, at the time the product left the control of the manufacturer, distributor or seller, the product or the aspect, component, warning or absence of warning contained in or accompanying the product that allegedly caused the injury or harm either:

a. was in material compliance with statute or with the standards, rules, regulations, requirements or specifications of a federal or state agency responsible for regulating, evaluating or approving the project, or

b. was approved by a federal or state agency responsible for regulating, evaluating or approving the product.

2. This subsection shall not apply if it is proven by clear and convincing evidence that the defendant at any time before the event that allegedly caused the injury:

a. intentionally withheld or intentionally misrepresented information which it was required at any time to submit to the agency and the withholding or

misrepresentation of such information was causally related to the injury or harm alleged, or

b. made an illegal payment to an official or employee of the federal or state government for the purpose of securing or maintaining approval of the product.

3. This subsection shall apply to every case pending on or after November 1, 2009, regardless of when the case was filed.

H. The provisions of this section are severable, and if any part or provision thereof shall be held void, the decision of the court shall not affect or impair any of the remaining parts or provisions thereof.

~~G. This~~ I. The provisions of this section, except subsections E and G of this section, shall apply to all civil actions filed after ~~the effective date of this act~~ August 25, 1995.

J. The provisions of subsections E and G of this section shall apply to all civil actions filed on or after November 1, 2009.

SECTION 32. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 9.2 of Title 23, unless there is created a duplication in numbering, reads as follows:

A. As used in this section:

1. "Future damages" means damages that are incurred after the date of judgment for:

a. medical, health care, or custodial care services,

b. physical pain and mental anguish, disfigurement, or physical impairment,

c. loss of consortium, companionship, or society, or

d. loss of earnings;

2. "Future loss of earnings" means the following losses incurred after the date of the judgment:

a. loss of income, wages, or earning capacity and other pecuniary losses, or

b. loss of inheritance; and

3. "Periodic payments" means the payment of money or its equivalent to the recipient of future damages at defined intervals.

B. This section shall apply only to an action in which the present value of the award of future damages, as determined by the court, equals or exceeds One Hundred Thousand Dollars ($100,000.00).

C. Upon request of a party, the court shall order that medical, health care, or custodial services awarded in an action be paid in whole or in part in periodic payments rather than by a lump-sum payment. Upon request of a party, the court may order that future damages other than medical, health care, or custodial services awarded in a health care liability action be paid in whole or in part in periodic payments rather than by a lump-sum payment.

D. The court shall make a specific finding of the dollar amount of periodic payments that will compensate the plaintiff for the

future damages. The court shall specify in its judgment ordering the payment of future damages by periodic payments the:

1. Recipient of the payments;

2. Dollar amount of the payments;

3. Interval between payments; and

4. Number of payments or the period of time over which payments must be made.

E. The entry of an order for the payment of future damages by periodic payments constitutes a release of the health care liability claim filed by the plaintiff.

F. As a condition to authorizing periodic payments of future damages, the court shall require a defendant who is not adequately insured to provide evidence of financial responsibility in an amount adequate to assure full payment of damages awarded by the judgment. The judgment shall provide for payments to be funded by:

1. An annuity contract issued by a company licensed to do business as an insurance company, including an assignment within the meaning of Section 130, Internal Revenue Code of 1986, as amended;

2. An obligation of the United States;

3. Applicable and collectible liability insurance from one or more qualified insurers; or

4. Any other satisfactory form of funding approved by the court.

G. On termination of periodic payments of future damages, the court shall order the return of the security, or as much as remains, to the defendant.

H. On the death of the recipient, money damages awarded for loss of future earnings shall continue to be paid to the estate of the recipient of the award without reduction. Following the satisfaction or termination of any obligations specified in the judgment for periodic payments, any obligation of the defendant health care provider to make further payments ends and any security given reverts to the defendant.

I. For purposes of computing the award of attorney fees when the plaintiff is awarded a recovery that will be paid in periodic payments, the court shall place a total value on the payments based on the plaintiff’s projected life expectancy and reduce the amount to present value.

SECTION 33. AMENDATORY Section 18, Chapter 368, O.S.L. 2004 (23 O.S. Supp. 2008, Section 15), is amended to read as follows:

Section 15. A. Except as provided in ~~subsections~~ subsection B ~~and C~~ of this section, in any civil action based on fault and not arising out of contract, the liability for damages caused by two or more persons shall be several only and a joint tortfeasor shall be liable only for the amount of damages allocated to that tortfeasor.

B. ~~A defendant shall be jointly and severally liable for the damages recoverable by the plaintiff if the percentage of responsibility attributed to the defendant with respect to a cause of action is greater than fifty percent (50%).~~

~~C.~~ If at the time the incident which gave rise to the cause of action occurred, ~~any~~ <u>a</u> joint ~~tortfeasors~~ <u>tortfeasor</u> acted with willful and wanton conduct or with reckless disregard of the consequences of the conduct and such conduct proximately caused the damages legally recoverable by the plaintiff, the liability for damages shall be joint and several <u>as to any such tortfeasor</u>.

~~D. This section shall not apply to actions brought by the state or a political subdivision of the state or any action in which no comparative negligence is found to be attributable to the plaintiff.~~

~~E.~~ <u>C.</u> The provisions of this section shall apply to all civil actions based on fault and not arising out of contract that accrue on or after November 1, ~~2004~~ <u>2009</u>.

SECTION 34. AMENDATORY 23 O.S. 2001, Section 61, is amended to read as follows:

Section 61. <u>A.</u> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by ~~this chapter~~ <u>law</u>, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.

B. In every civil action arising out of bodily injury, the court shall admit evidence of payments of medical bills made to the injured party, unless the court makes the finding described in subsection C or D of this section. The evidence shall be limited to the actual amounts paid.

C. In any civil action arising out of bodily injury, upon application of a party, the court shall make a determination whether amounts claimed by a health care provider to be a payment of medical bills from a collateral source is subject to subrogation or other right of recovery. If the court makes a determination that any such payment is subject to subrogation or other right of recovery, evidence of the payment from the collateral source and subject to subrogation or other right of recovery shall not be admitted.

D. If the source of payment to the injured party, the family of the injured party, or the estate of the injured party is in the form of a life insurance payment or disability payment, evidence of the payment from the collateral source shall not be admitted.

SECTION 35. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 61.2 of Title 23, unless there is created a duplication in numbering, reads as follows:

A. Except as provided in subsection B of this section, in any action not arising out of contract, the amount of noneconomic damages awarded shall not exceed Three Hundred Thousand Dollars ($300,000.00), regardless of the number of parties against whom the

action is brought or the number of actions brought with respect to the personal injury. The dollar amount prescribed by this subsection shall be adjusted annually based upon any positive increase in the Consumer Price Index that measures the average changes in prices of goods and services purchased by urban wage earners and clerical workers' families and single workers living alone (CPI-W) for the preceding calendar year. The adjustment required by this subsection shall be made by the State Treasurer and certified to the Administrative Director of the Courts on April 1 of each year or not later than thirty (30) days after the date upon which the Bureau of Labor Statistics releases the (CPI-W) inflationary data for the preceding calendar year, whichever date first occurs. No adjustment to the dollar amount prescribed by this subsection shall be made for any year in which there is a decline in the Consumer Price Index.

B. If the jury finds by clear and convincing evidence that the acts of the party which caused the damages were grossly negligent or committed intentionally or with malice toward others, and the court finds, on the record and out of the presence of the jury that there is evidence beyond a reasonable doubt that the defendant was grossly negligent or acted intentionally or with malice toward others, the jury in a separate proceeding, conducted after the jury has made such a finding and awarded actual damages, may award noneconomic damages in an amount the jury deems appropriate without regard to

the limitation set forth in subsection A of this section. Any award of noneconomic damages under this subsection awarded in any manner other than as required in this section shall be void and reversible.

C. As used in this section, “noneconomic damages” means all subjective, nonmonetary losses including, but not limited to, pain, suffering, inconvenience, mental anguish, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation; provided, however, noneconomic damages do not include punitive damages, as provided for in Section 9.1 of Title 23 of the Oklahoma Statutes.

D. Nothing in this section shall apply to an action brought for wrongful death.

E. The provisions of this section shall apply only to actions that accrue on or after November 1, 2009.

SECTION 36. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 61.3 of Title 23, unless there is created a duplication in numbering, reads as follows:

A. If any plaintiff seeks recovery for loss of earnings, loss of earning capacity, loss of contributions of a pecuniary value, or loss of inheritance, evidence to prove the loss must be presented in the form of a net loss after reduction for income tax payments or unpaid tax liability pursuant to any state or federal income tax law.

B. The court shall instruct the jury as to whether any recovery sought by the plaintiff is subject to federal or state income taxes and shall require that any such damage calculations demonstrate the effect of such taxes.

SECTION 37. AMENDATORY 47 O.S. 2001, Section 11-1112, as last amended by Section 1, Chapter 361, O.S.L. 2005 (47 O.S. Supp. 2008, Section 11-1112), is amended to read as follows:

Section 11-1112. A. Every driver, when transporting a child under six (6) years of age in a motor vehicle operated on the roadways, streets, or highways of this state, shall provide for the protection of said child by properly using a child passenger restraint system. For purposes of this section and Section 11-1113 of this title, “child passenger restraint system” means an infant or child passenger restraint system which meets the federal standards as set by 49 C.F.R., Section 571.213.

B. Children at least six (6) years of age but younger than thirteen (13) years of age shall be protected by use of a child passenger restraint system or a seat belt.

C. The provisions of this section shall not apply to:

1. The driver of a school bus, taxicab, moped, motorcycle, or other motor vehicle not required to be equipped with safety belts pursuant to state or federal laws;

2. The driver of an ambulance or emergency vehicle;

3. The driver of a vehicle in which all of the seat belts are in use;

4. The transportation of children who for medical reasons are unable to be placed in such devices; or

5. The transportation of a child who weighs more than forty (40) pounds and who is being transported in the back seat of a vehicle while wearing only a lap safety belt when the back seat of the vehicle is not equipped with combination lap and shoulder safety belts, or when the combination lap and shoulder safety belts in the back seat are being used by other children who weigh more than forty (40) pounds. Provided, however, for purposes of this paragraph, back seat shall include all seats located behind the front seat of a vehicle operated by a licensed child care facility or church. Provided further, there shall be a rebuttable presumption that a child has met the weight requirements of this paragraph if at the request of any law enforcement officer, the licensed child care facility or church provides the officer with a written statement verified by the parent or legal guardian that the child weighs more than forty (40) pounds.

D. A law enforcement officer is hereby authorized to stop a vehicle if it appears that the driver of the vehicle has violated the provisions of this section and to give an oral warning to said driver. The warning shall advise the driver of the possible danger

to children resulting from the failure to install or use a child passenger restraint system or seat belts in the motor vehicle.

E. ~~A violation of the provisions of this section shall not be admissible as evidence in any civil action or proceeding for damages.~~

~~F.~~ In any action brought by or on behalf of an infant for personal injuries or wrongful death sustained in a motor vehicle collision, the failure of any person to have the infant properly restrained in accordance with the provisions of this section shall not be used in aggravation or mitigation of damages.

~~G.~~ F. Any person convicted of violating subsection A or B of this section shall be punished by a fine of Fifty Dollars ($50.00) and shall pay all court costs thereof. Revenue from such fine shall be apportioned to the Department of Public Safety Revolving Fund and used by the Oklahoma Highway Safety Office to promote the use of child passenger restraint systems as provided in Section 11-1113 of this title. This fine shall be suspended and the court costs limited to a maximum of Fifteen Dollars ($15.00) in the case of the first offense upon proof of purchase or acquisition by loan of a child passenger restraint system. Provided, the Department of Public Safety shall not assess points to the driving record of any person convicted of a violation of this section.

SECTION 38. AMENDATORY 47 O.S. 2001, Section 12-420, as amended by Section 13, Chapter 50, O.S.L. 2005 (47 O.S. Supp. 2008, Section 12-420), is amended to read as follows:

Section 12-420. ~~Nothing in~~ Sections 12-416 through 12-420 of this title ~~shall~~ <u>may</u> be used in any civil proceeding in this state and the use or nonuse of seat belts shall ~~not~~ be submitted into evidence in any civil suit in Oklahoma.

SECTION 39. AMENDATORY Section 7, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2008, Section 1-1708.1G), is amended to read as follows:

Section 1-1708.1G Notwithstanding ~~the provisions of Section 727 of Title 12 of the Oklahoma Statutes or~~ any other provision of the Oklahoma Statutes to the contrary, prejudgment interest in a medical liability action shall be determined using a rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year. <u>Prejudgment interest shall accrue from the time provided in subsection E of Section 727.1 of Title 12 of the Oklahoma Statutes.</u>

SECTION 40. AMENDATORY 63 O.S. 2001, Section 1-1709.1, as last amended by Section 2, Chapter 558, O.S.L. 2004 (63 O.S. Supp. 2008, Section 1-1709.1), is amended to read as follows:

Section 1-1709.1 A. As used in this section:

1. “Credentialing or recredentialing data” means:

a. the application submitted by a health care professional requesting appointment or reappointment to the medical staff of a health care facility or requesting clinical privileges or other permission to provide health care services at a health care facility,

b. any information submitted by the health care professional in support of such application,

c. any information, unless otherwise privileged, obtained by the health care facility during the credentialing or recredentialing process regarding such application, and

d. the decision made by the health care facility regarding such application;

2. “Credentialing or recredentialing process” means any process, program or proceeding utilized by a health care facility to assess, review, study or evaluate the credentials of a health care professional;

3. “Health care facility” means:

a. any hospital or related institution offering or providing health care services under a license issued pursuant to Section 1-706 of this title,

b. any ambulatory surgical center offering or providing health care services under a license issued pursuant to Section 2660 of this title, and

c. the clinical practices of accredited allopathic and osteopathic state medical schools;

4. "Health care professional" means any person authorized to practice allopathic medicine and surgery, osteopathic medicine, podiatric medicine, optometry, chiropractic, psychology, dentistry or a dental specialty under a license issued pursuant to Title 59 of the Oklahoma Statutes;

5. "Peer review information" means all records, documents and other information generated during the course of a peer review process, including any reports, statements, memoranda, correspondence, record of proceedings, materials, opinions, findings, conclusions and recommendations, <u>credentialing data and recredentialing data,</u> but does not include:

a. the medical records of a patient whose health care in a health care facility is being reviewed,

b. incident reports and other like documents regarding health care services being reviewed, regardless of how the reports or documents are titled or captioned,

c. the identity of any individuals who have personal knowledge regarding the facts and circumstances

surrounding the patient's health care in the health care facility,

d. factual statements regarding the patient's health care in the health care facility from any individuals who have personal knowledge regarding the facts and circumstances surrounding the patient's health care, which factual statements were generated outside the peer review process,

e. the identity of all documents and raw data previously created elsewhere and considered during the peer review process, or

f. copies of all documents and raw data previously created elsewhere and considered during the peer review process, whether available elsewhere or not~~, or~~

~~g. credentialing or recredentialing data regarding the health care professional who provided the health care services being reviewed or who is the subject of a credentialing or recredentialing process~~; and

6. "Peer review process" means any process, program or proceeding, including a credentialing or recredentialing process, utilized by a health care facility or county medical society to assess, review, study or evaluate the credentials, competence, professional conduct or health care services of a health care professional.

B. 1. Peer review information shall be private, confidential and privileged~~:~~

~~a.~~ except that a health care facility or county medical society shall be permitted to provide relevant peer review information to the state agency or board which licensed the health care professional who provided the health care services being reviewed in a peer review process or who is the subject of a credentialing or recredentialing process, with notice to the health care professional~~, and~~

~~b. except as provided in subsections C and D of this section~~.

2. Nothing in this section shall be construed to abrogate, alter or affect any provision in the Oklahoma Statutes which provides that information regarding liability insurance of a health care facility or health care professional is not discoverable or admissible.

C. In any civil action in which a patient or patient’s legal representative has alleged that the patient has suffered injuries resulting from negligence by a health care professional in providing health care services to the patient in a health care facility, factual statements, presented during a peer review process utilized by such health care facility, regarding the patient’s health care in the health care facility from individuals who have personal

knowledge of the facts and circumstances surrounding the patient's health care shall not be subject to discovery~~, pursuant to the Oklahoma Discovery Code, upon an affirmative showing that such statements are not otherwise available in any other manner~~.

D. ~~1.~~ In any civil action in which a patient or patient's legal representative has alleged:

~~a. that~~

1. That the patient has suffered injuries resulting from negligence by a health care professional in providing health care services to the patient in a health care facility~~,~~; or

~~b. that~~

2. That the health care facility was independently negligent as a result of permitting the health care professional to provide health care services to the patient in the health care facility, the recommendations made and action taken as a result of any peer review process utilized by such health care facility regarding the health care professional prior to the date of the alleged negligence shall not be subject to discovery pursuant to the Oklahoma Discovery Code or admissible at trial.

~~2.~~ E. Any information discovered pursuant to ~~this subsection:~~

~~a.~~ a claim of independent negligence against a health care facility shall not be admissible as evidence until a judge or jury has first found the health care professional to have been negligent in providing

health care services to the patient in such health care facility~~, and~~

~~b. shall not at any time include the identity or means by which to ascertain the identity of any other patient or health care professional~~.

~~E.~~ F. No person involved in a peer review process may be permitted or required to testify regarding the peer review process in any civil proceeding or disclose by responses to written discovery requests any peer review information.

SECTION 41. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.14 of Title 63, unless there is created a duplication in numbering, reads as follows:

Sections 41 through 51 of this act shall be known and may be cited as the "Uniform Emergency Volunteer Health Practitioners Act".

SECTION 42. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.15 of Title 63, unless there is created a duplication in numbering, reads as follows:

As used in the Uniform Emergency Volunteer Health Practitioners Act:

1. "Disaster relief organization" means an entity that provides emergency or disaster relief services that include health or veterinary services provided by volunteer health practitioners and that:

a. is designated or recognized as a provider of those services pursuant to a disaster response and recovery plan adopted by an agency of the federal government or the State Department of Health, and

b. regularly plans and conducts its activities in coordination with an agency of the federal government or the State Department of Health;

2. “Emergency” means an event or condition that is an emergency pursuant to the Oklahoma Emergency Management Act of 2003 or the Catastrophic Health Emergency Powers Act;

3. “Emergency declaration” means a declaration of emergency issued by a person authorized to do so under the laws of this state pursuant to the Oklahoma Emergency Management Act of 2003 or the Catastrophic Health Emergency Powers Act;

4. “Emergency Management Assistance Compact” means the interstate compact approved by Congress by Public Law No. 104-321,110 Stat. 3877;

5. “Entity” means a person other than an individual;

6. “Health facility” means an entity licensed under the laws of this or another state to provide health or veterinary services;

7. “Health practitioner” means an individual licensed under the laws of this or another state to provide health or veterinary services;

8. "Health services" means the provision of treatment, care, advice or guidance, or other services, or supplies, related to the health or death of individuals or human populations, to the extent necessary to respond to an emergency, including:

a. the following, concerning the physical or mental condition or functional status of an individual or affecting the structure or function of the body:

(1) preventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and

(2) counseling, assessment, procedures, or other services,

b. sale or dispensing of a drug, a device, equipment, or another item to an individual in accordance with a prescription, and

c. funeral, cremation, cemetery, or other mortuary services;

9. "Host entity" means an entity operating in this state which uses volunteer health practitioners to respond to an emergency;

10. "License" means authorization by a state to engage in health or veterinary services that are unlawful without the authorization and includes authorization under the laws of this state to an individual to provide health or veterinary services

based upon a national certification issued by a public or private entity;

11. “Person” means an individual, corporation, business trust, trust, partnership, limited liability company, association, joint venture, public corporation, government or governmental subdivision, agency, or instrumentality, or any other legal or commercial entity;

12. “Scope of practice” means the extent of the authorization to provide health or veterinary services granted to a health practitioner by a license issued to the practitioner in the state in which the principal part of the practitioner’s services are rendered, including any conditions imposed by the licensing authority;

13. “State” means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States;

14. “Veterinary services” means the provision of treatment, care, advice or guidance, or other services, or supplies, related to the health or death of an animal or to animal populations, to the extent necessary to respond to an emergency, including, but not limited to:

a. diagnosis, treatment, or prevention of an animal disease, injury, or other physical or mental condition

by the prescription, administration, or dispensing of vaccine, medicine, surgery, or therapy,

b. use of a procedure for reproductive management, and

c. monitoring and treatment of animal populations for diseases that have spread or demonstrate the potential to spread to humans; and

15. "Volunteer health practitioner" means a health practitioner who provides health or veterinary services, whether or not the practitioner receives compensation for those services and does not include a practitioner who receives compensation pursuant to a preexisting employment relationship with a host entity or affiliate which requires the practitioner to provide health services in this state, unless the practitioner is not a resident of this state and is employed by a disaster relief organization providing services in this state while an emergency declaration is in effect.

SECTION 43. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.16 of Title 63, unless there is created a duplication in numbering, reads as follows:

This Uniform Emergency Volunteer Health Practitioners Act applies to volunteer health practitioners registered with a registration system that complies with Section 45 of this act and who provide health or veterinary services in this state for a host entity while an emergency declaration is in effect.

SECTION 44. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.17 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. While an emergency declaration is in effect, the State Department of Health may limit, restrict, or otherwise regulate:

1. The duration of practice by volunteer health practitioners;

2. The geographical areas in which volunteer health practitioners may practice;

3. The types of volunteer health practitioners who may practice; and

4. Any other matters necessary to coordinate effectively the provision of health or veterinary services during the emergency.

B. An order issued pursuant to subsection A of this section may take effect immediately, without prior notice or comment, and is not a rule within the meaning of the Administrative Procedures Act.

C. A host entity that uses volunteer health practitioners to provide health or veterinary services in this state shall:

1. Consult and coordinate its activities with the State Department of Health to the extent practicable to provide for the efficient and effective use of volunteer health practitioners; and

2. Comply with any laws other than this act relating to the management of emergency health or veterinary services, including the Oklahoma Emergency Management Act of 2003 and the Catastrophic Health Emergency Powers Act.

SECTION 45. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.18 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. To qualify as a volunteer health practitioner registration system, a system must:

1. Accept applications for the registration of volunteer health practitioners before or during an emergency;

2. Include information about the licensure and good standing of health practitioners which is accessible by authorized persons;

3. Be capable of confirming the accuracy of information concerning whether a health practitioner is licensed and in good standing before health services or veterinary services are provided under the Uniform Emergency Volunteer Health Practitioners Act; and

4. Meet one of the following conditions:

a. be an emergency system for advance registration of volunteer health practitioners established by a state and funded through the Health Resources Services Administration under Section 319I of the Public Health Services Act, 42 U.S.C., Section 247d-7b,

b. be a local unit consisting of trained and equipped emergency response, public health, and medical personnel formed pursuant to Section 2801 of the Public Health Services Act, 42 U.S.C., Section 300hh,

c. be operated by a:

(1) disaster relief organization,

(2) licensing board,

(3) national or regional association of licensing boards or health practitioners,

(4) health facility that provides comprehensive inpatient and outpatient health-care services, including a tertiary care and teaching hospital, or

(5) governmental entity, or

d. be designated by the State Department of Health as a registration system for purposes of the Uniform Emergency Volunteer Health Practitioners Act.

B. While an emergency declaration is in effect, the State Department of Health, a person authorized to act on behalf of the Department, or a host entity may confirm whether volunteer health practitioners utilized in this state are registered with a registration system that complies with subsection A of this section. Confirmation is limited to obtaining identities of the practitioners from the system and determining whether the system indicates that the practitioners are licensed and in good standing.

C. Upon request of a person in this state authorized under subsection B of this section, or a similarly authorized person in another state, a registration system located in this state shall notify the person of the identities of volunteer health

practitioners and whether the practitioners are licensed and in good standing.

D. A host entity shall not be required to use the services of a volunteer health practitioner even if the practitioner is registered with a registration system that indicates that the practitioner is licensed and in good standing.

SECTION 46. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.19 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. While an emergency declaration is in effect, a volunteer health practitioner, registered with a registration system that complies with Section 45 of this act and licensed and in good standing in the state upon which the registration of the practitioner is based, may practice in this state to the extent authorized by the Uniform Emergency Volunteer Health Practitioners Act as if the practitioner were licensed in this state.

B. A volunteer health practitioner qualified under subsection A of this section is not entitled to the protections of the Uniform Emergency Volunteer Health Practitioners Act if the practitioner is licensed in more than one state and any license of the practitioner is suspended, revoked, or subject to an agency order limiting or restricting practice privileges, or has been voluntarily terminated under threat of sanction.

SECTION 47. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.20 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. For purposes of this section:

1. "Credentialing" means obtaining, verifying, and assessing the qualifications of a health practitioner to provide treatment, care, or services in or for a health facility; and

2. "Privileging" means the authorizing by an appropriate authority, such as a governing body, of a health practitioner to provide specific treatment, care, or services at a health facility subject to limits based on factors that include license, education, training, experience, competence, health status, and specialized skill.

B. The Uniform Emergency Volunteer Health Practitioners Act does not affect credentialing or privileging standards of a health facility and does not preclude a health facility from waiving or modifying those standards while an emergency declaration is in effect.

SECTION 48. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.21 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. Subject to subsections B and C of this section, a volunteer health practitioner shall adhere to the scope of practice for a

similarly licensed practitioner established by the licensing provisions, practice acts, or other laws of this state.

B. Except as otherwise provided in subsection C of this section, the Uniform Emergency Volunteer Health Practitioners Act does not authorize a volunteer health practitioner to provide services that are outside the scope of practice of the practitioner, even if a similarly licensed practitioner in this state would be permitted to provide the services.

C. The State Department of Health may modify or restrict the health or veterinary services that volunteer health practitioners may provide pursuant to the Uniform Emergency Volunteer Health Practitioners Act. An order under this subsection may take effect immediately, without prior notice or comment, and is not a rule within the meaning of the Administrative Procedures Act.

D. A host entity may restrict the health or veterinary services that a volunteer health practitioner may provide pursuant to the Uniform Emergency Volunteer Health Practitioners Act.

E. A volunteer health practitioner does not engage in unauthorized practice unless the practitioner has reason to know of any limitation, modification, or restriction under this section or that a similarly licensed practitioner in this state would not be permitted to provide the services. A volunteer health practitioner has reason to know of a limitation, modification, or restriction or

that a similarly licensed practitioner in this state would not be permitted to provide a service if:

1. The practitioner knows the limitation, modification, or restriction exists or that a similarly licensed practitioner in this state would not be permitted to provide the service; or

2. From all the facts and circumstances known to the practitioner at the relevant time, a reasonable person would conclude that the limitation, modification, or restriction exists or that a similarly licensed practitioner in this state would not be permitted to provide the service.

F. In addition to the authority granted by law of this state other than the Uniform Emergency Volunteer Health Practitioners Act to regulate the conduct of health practitioners, a licensing board or other disciplinary authority in this state:

1. May impose administrative sanctions upon a health practitioner licensed in this state for conduct outside of this state in response to an out-of-state emergency;

2. May impose administrative sanctions upon a practitioner not licensed in this state for conduct in this state in response to an in-state emergency; and

3. Shall report any administrative sanctions imposed upon a practitioner licensed in another state to the appropriate licensing board or other disciplinary authority in any other state in which the practitioner is known to be licensed.

G. In determining whether to impose administrative sanctions under subsection F of this section, a licensing board or other disciplinary authority shall consider the circumstances in which the conduct took place, including any exigent circumstances, and the scope of practice, education, training, experience, and specialized skill of the practitioner.

SECTION 49. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.22 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. The Uniform Emergency Volunteer Health Practitioners Act does not limit rights, privileges, or immunities provided to volunteer health practitioners by laws other than the Uniform Emergency Volunteer Health Practitioners Act. Except as otherwise provided in subsection B of this section, the Uniform Emergency Volunteer Health Practitioners Act does not affect requirements for the use of health practitioners pursuant to the Emergency Management Assistance Compact.

B. The State Department of Health, pursuant to the Emergency Management Assistance Compact, may incorporate into the emergency forces of this state volunteer health practitioners who are not officers or employees of this state, a political subdivision of this state, or a municipality or other local government within this state.

SECTION 50. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.23 of Title 63, unless there is created a duplication in numbering, reads as follows:

The State Board of Health may promulgate rules to implement the Uniform Emergency Volunteer Health Practitioners Act. In doing so, the State Department of Health shall consult with and consider the recommendations of the entity established to coordinate the implementation of the Emergency Management Assistance Compact and shall also consult with and consider rules promulgated by similarly empowered agencies in other states to promote uniformity of application of the Uniform Emergency Volunteer Health Practitioners Act and make the emergency response systems in the various states reasonably compatible.

SECTION 51. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.24 of Title 63, unless there is created a duplication in numbering, reads as follows:

In applying and construing the Uniform Emergency Volunteer Health Practitioners Act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.

SECTION 52. AMENDATORY 63 O.S. 2001, Section 683.9, as amended by Section 9, Chapter 329, O.S.L. 2003 (63 O.S. Supp. 2008, Section 683.9), is amended to read as follows:

Section 683.9 The provisions of this section shall be operative only during the existence of a natural or man-made emergency. The existence of such emergency may be proclaimed by the Governor or by concurrent resolution of the Legislature if the Governor in such proclamation, or the Legislature in such resolution, finds that an emergency or disaster has occurred or is anticipated in the immediate future. Any such emergency, whether proclaimed by the Governor or by the Legislature, shall terminate upon the proclamation of the termination thereof by the Governor, or by passage by the Legislature of a concurrent resolution terminating such emergency. During such period as such state of emergency exists or continues, the Governor shall have and may exercise the following additional emergency powers:

1. To activate the Emergency Operations Plan, and to assume regulatory control over all essential resources of this state, directly or through the boards, agencies, offices and officers established by ~~said~~ the Emergency Operations Plan, to determine priorities of such resources and allocate such resources as the Governor may deem necessary in cooperation with the political subdivisions of this state, the federal government, or other states. "Resources" shall mean all economic resources within this state including but not limited to food, manpower, health ~~and health manpower~~, water, transportation, economic stabilization, electric

power, petroleum, gas, and solid fuel, industrial production, construction and housing~~.~~<u>;</u>

2. To enforce all laws, rules and regulations relating to emergency management and to assume direct operational control of any or all emergency management forces and helpers in this state~~.~~<u>;</u>

3. To provide for the evacuation of all or part of the population from any stricken or threatened area or areas within this state and to take such steps as are necessary for the receipt and care of such evacuees~~.~~<u>;</u>

4. Subject to the provisions of the State Constitution, to remove from office any public officer having administrative responsibilities under this act for willful failure to obey any order, rule or regulation adopted pursuant to this act. Such removal shall be upon charges after service upon such person of a copy of such charges and after giving such person an opportunity to be heard in the defense of such person. Pending the preparation and disposition of charges, the Governor may suspend such person for a period not exceeding thirty (30) days. A vacancy resulting from removal or suspension pursuant to this section shall be filled by the Governor until it is filled as otherwise provided by law~~.~~<u>; and</u>

5. To perform and exercise such other functions, powers, and duties as are necessary to promote and secure the safety and protection of the civilian population and to carry out the

provisions of the Emergency Operations Plan in a national or state emergency.

SECTION 53. AMENDATORY 63 O.S. 2001, Section 683.13, as amended by Section 12, Chapter 329, O.S.L. 2003 (63 O.S. Supp. 2008, Section 683.13), is amended to read as follows:

Section 683.13 A. All functions hereunder and all other activities relating to emergency management are hereby declared to be governmental functions. The provisions of this section shall not affect the right of any person to receive benefits to which the person would otherwise be entitled under this act, or under the workers' compensation law, or under any pension law, nor the right of any such person to receive any benefits or compensation under any Act of Congress. Any municipal fireman or policeman engaged in any emergency management activities, while complying with or attempting to comply with this act or any rule or regulation pursuant thereto, shall be considered as serving in his or her regular line of duty and shall be entitled to all benefits of any applicable pension fund.

B. Any requirement for a license to practice any professional, mechanical, or other skill shall not apply to any authorized emergency management worker from any state rendering mutual aid and who holds a comparable license in that state, who shall practice such professional, mechanical, or other skill during an emergency declared under the provisions of this act, when such professional,

mechanical or other skill is exercised in accordance with the provisions of this act.

C. As used in this section, the term “emergency management worker" shall include any full or part-time paid, volunteer, or auxiliary employee of this state, or other states, territories, possession or the District of Columbia, of the federal government, or any neighboring country, or of any political subdivision thereof, or of any agency or organization, performing emergency management services under state supervision, and who has been properly trained in the performance of emergency management functions, at any place in this state subject to the order or control of, or pursuant to a request of, the state government or any political subdivision thereof. The term “emergency management worker” shall not include any volunteer health practitioner subject to the provisions of the Uniform Emergency Volunteer Health Practitioners Act.

D. Any emergency management worker, as defined in this section, performing emergency management services at any place in this state pursuant to agreements, compacts, or arrangements for mutual aid and assistance, to which the state or a political subdivision thereof is a party, shall possess the same powers, duties, immunities, and privileges the person would ordinarily possess if performing the same duties in the state, province, or political subdivision thereof in which normally employed or rendering services.

SECTION 54. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1924.2 of Title 63, unless there is created a duplication in numbering, reads as follows:

The Legislature finds that:

1. Skilled nursing facilities, as defined in 42 U.S.C., Section 1395i-3, participating in the Medicare program and nursing facilities, as defined in 42 U.S.C., Section 1396r, participating in the Medicaid program are required to establish and maintain quality assessment and assurance committees to identify issues with respect to which quality assessment and assurance activities are necessary and to develop and implement appropriate plans of action to correct identified quality deficiencies pursuant to 42 U.S.C., Sections 1395i-3 and 1396r and rules promulgated by the State Department of Health;

2. The Centers for Medicare and Medicaid Services and the State Department of Health have recognized the effectiveness of such quality assessment and assurance programs to measure, monitor and improve the quality of care furnished by skilled nursing facilities and nursing facilities;

3. The threat of liability for private money damages or civil money penalties under federal and state law unreasonably discourages skilled nursing facilities, nursing facilities, health care professionals and other health care providers from conducting or

participating in effective quality assessment and assurance activities and medical error review activities;

4. There is an overriding national and state need to provide incentives and protection for individuals and entities engaging in quality assessment and assurance and medical error review activities; and

5. The Minimum Data Set (MDS) contains clinical information from the comprehensive assessments of persons residing in long-term care facilities and is used by federal and state regulators for the survey and certification of Medicare and Medicaid long-term care facilities to study the effectiveness and quality of care given in those facilities, and to support other regulatory, reimbursement, policy and research functions.

SECTION 55. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1924.3 of Title 63, unless there is created a duplication in numbering, reads as follows:

For purposes of this section and Sections 56 through 58 of this act:

1. “Quality assessment and assurance activities” means activities performed by a health care provider for the purpose of evaluating matters relating to patient safety and quality of care, or health resources management review and identification and prevention of medical incidents and risks, and shall include without

limitation peer review activities, quality assessment and assurance committee activities and patient care assessment;

2. “Quality assessment and assurance committee” means any committee of a skilled nursing facility or a nursing facility which conducts quality assessment and assurance activities;

3. “Quality assessment and assurance committee records” means documents and other information in whatever form:

a. submitted to, reviewed or generated by, or produced at the request of a quality assessment and assurance committee for purposes of quality assessment, assurance or improvement, including without limitation proceedings, records, reports, statements, notes, incident reports, memoranda, minutes, conclusions, deliberations, findings, and internal working papers, or

b. submitted or reported by a skilled nursing facility or a nursing facility to an accredited organization, trade association, or other entity for purposes of improving quality of care in the skilled nursing facility or the nursing facility industry;

4. “Statements of deficiencies” means information respecting surveys and certifications made regarding a skilled nursing facility or a nursing facility including, but not limited to, federal and state survey reports, citation reports, statements of deficiencies,

plans of correction or similar findings of noncompliance with statutory or regulatory requirements or standards; and

5. “Minimum-Data-Set-related documentation” means documents and other information in whatever form related to the reporting of resident assessment data by skilled nursing facilities or nursing facilities for inclusion in the Minimum Data Set (MDS).

SECTION 56. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1924.4 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. Quality assessment and assurance committee records shall be confidential and privileged. Such records shall not be disclosed to any person or entity and are privileged for purposes of state judicial proceedings in civil matters and for purposes of state administrative proceedings, including with respect to discovery and subpoenas.

B. A person who reviews or creates quality assessment and assurance committee records or who participates in any proceeding that reviews or creates such records may not be permitted or required to testify in any civil judicial or administrative proceeding with respect to such records or with respect to any finding, recommendation, evaluation, opinion, or action taken by such person or body in connection with such records.

C. Records created solely for the quality assessment and assurance committee, and related solely to the purpose of the

committee, shall be confidential and privileged and not disclosed, but other records reviewed or consulted by the committee do not become confidential and privileged solely by virtue of being turned over to, or reviewed by, the committee.

SECTION 57. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1924.5 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. A quality assessment and assurance committee, any person acting as a member of or staff to such committee, and any person who participates with or assists such committee regarding its activities shall not be liable in damages under any law of the state or political subdivision thereof with respect to the quality assessment and assurance activities of such quality assessment and assurance committee.

B. Notwithstanding any other provision of law, no member of a quality assessment and assurance committee or person providing information to a quality assessment and assurance body shall be held, by reason of participation in quality assessment and assurance activities, liable in damages under any law of the state or political subdivision thereof unless such individual provided false information with the knowledge that such information was false.

SECTION 58. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1-1924.6 of Title 63, unless there is created a duplication in numbering, reads as follows:

Statements of deficiencies issued by any federal or state entity to a skilled nursing facility or a nursing facility and such facility's Minimum-Data-Set-related documentation may not be admitted into evidence in any state judicial or administrative proceeding unless:

1. The deficiency determination is final, adjudicated and has been appealed;

2. The deficiency determination or Minimum-Data-Set-related documentation is otherwise admissible under the State Rules of Civil Procedure, as applicable; and

3. The statements of deficiencies, plans of correction or Minimum-Data-Set-related documentation is directly related to the harm allegedly caused to the patient that is the subject of the proceeding.

Statements of deficiencies, plans of correction and Minimum-Data-Set-related documentation may not be admitted into evidence in any judicial or administrative proceeding for purposes of establishing a standard of care or negligence as a matter of law.

SECTION 59. AMENDATORY 76 O.S. 2001, Section 5.5, is amended to read as follows:

Section 5.5 A. Any claim filed herein shall be filed within two (2) years of the date of injury, death or damage to property, or, if applicable, within one (1) year of the date of a final adjudication on any legal action taken by the claimant against any

person responsible for the injury, death or damage to property, or be barred by limitations from recovery.

B. Regardless of when the cause of action shall have accrued, any action for damages based in tort shall be brought within eight (8) years from the date of the act or omission that gives rise to the claim. This subsection is intended as a statute of repose and any action which is not brought within eight (8) years after the act or omission giving rise to the claim is time-barred.

SECTION 60. AMENDATORY 76 O.S. 2001, Section 25, is amended to read as follows:

Section 25. A. A professional review body, members and staff of such professional review body and persons who contract with such professional review body shall not be liable in any way in damages under any law of this state with respect to a professional review action taken in good faith by such professional review body.

B. Peer review information shall be private, confidential and privileged except that a peer review body shall be permitted to provide relevant peer review information to a state agency or board which licensed the professional whose competence and performance is being reviewed in a peer review process or who is the subject of a credentialing or recredentialing process. Notice that the information is being provided to a state agency or board shall be given to the professional.

C. In any civil action in which a plaintiff or legal representative of a plaintiff has alleged that the plaintiff has suffered injuries resulting from the negligence of the professional in providing professional services to the plaintiff, factual statements, opinions and conclusions, presented during a peer review process, shall not be subject to discovery or admissible at trial.

D. In any civil action in which a plaintiff or legal representative of a plaintiff has alleged that the plaintiff has suffered injuries resulting from the negligence of the professional in providing professional services to the plaintiff, the recommendations made and action taken as a result of any peer review process shall not be subject to discovery or admissible at trial.

E. No person involved in a peer review process may testify regarding the peer review process in any civil proceeding or disclose by responses to written discovery requests any peer review information. However, a person's involvement in a peer review process does not prevent the person from testifying about knowledge the person obtained or observations the person made prior to or outside the peer review process.

SECTION 61. AMENDATORY 76 O.S. 2001, Section 31, is amended to read as follows:

Section 31. A. Any volunteer shall be immune from liability in a civil action on the basis of any act or omission of the volunteer resulting in damage or injury if:

1. The volunteer was acting in good faith and within the scope of the volunteer's official functions and duties for a charitable organization or not-for-profit corporation; and

2. The damage or injury was not caused by gross negligence or willful and wanton misconduct by the volunteer.

B. In any civil action against a charitable organization or not-for-profit corporation for damages based upon the conduct of a volunteer, the doctrine of respondeat superior shall apply, notwithstanding the immunity granted to the volunteer in subsection A of this section.

C. Any person who, in good faith and without compensation, or expectation of compensation, donates or loans emergency service equipment to a volunteer shall not be liable for damages resulting from the use of such equipment by the volunteer, except when the donor of the equipment knew or should have known that the equipment was dangerous or faulty in a way which could result in bodily injury, death or damage to property.

D. Definitions.

1. For the purposes of this section, the term "volunteer" means a person who enters into a service or undertaking of the person's free will without compensation or expectation of compensation in money or other thing of value in order to provide a service, care, assistance, advice, or other benefit ~~where the person does not offer that type of service, care, assistance, advice or other benefit for~~

~~sale to the public~~; provided, being legally entitled to receive compensation for the service or undertaking performed shall not preclude a person from being considered a volunteer.

2. For the purposes of this section, the term "charitable organization" means any benevolent, philanthropic, patriotic, eleemosynary, educational, social, civic, recreational, religious group or association or any other person performing or purporting to perform acts beneficial to the public.

3. For the purposes of this section, the term "not-for-profit corporation" means a corporation formed for a purpose not involving pecuniary gain to its shareholders or members, paying no dividends or other pecuniary remuneration, directly or indirectly, to its shareholders or members as such, and having no capital stock.

E. The provisions of this section shall not affect the liability that any person may have which arises from the operation of a motor vehicle, watercraft, or aircraft in rendering the service, care, assistance, advice or other benefit as a volunteer.

F. The immunity from civil liability provided for by this section shall extend only to the actions taken by a person rendering the service, care, assistance, advice, or other benefit as a volunteer, and does not confer any immunity to any person for actions taken by the volunteer prior to or after the rendering of the service, care, assistance, advice, or other benefit as a volunteer.

G. This section shall apply to all civil actions filed after ~~the effective date of this act~~ <u>August 25, 1995</u>.

SECTION 62. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 33 of Title 76, unless there is created a duplication in numbering, reads as follows:

Sections 62 through 65 of this act shall be known and may be cited as the “Common Sense Consumption Act”.

SECTION 63. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 34 of Title 76, unless there is created a duplication in numbering, reads as follows:

The intent of the Common Sense Consumption Act is to prevent frivolous lawsuits against manufacturers, packers, distributors, carriers, holders, sellers, marketers or advertisers of food products that comply with applicable statutory and regulatory requirements.

SECTION 64. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 35 of Title 76, unless there is created a duplication in numbering, reads as follows:

As used in the Common Sense Consumption Act:

1. “Claim” means any claim by or on behalf of a natural person, as well as any derivative or other claim arising therefrom asserted by or on behalf of any other individual, corporation, company, association, firm, partnership, society, joint-stock company, or any

other entity, including any governmental entity or governmental officer, or private attorney;

2. "Generally known condition allegedly caused by or allegedly likely to result from long-term consumption" means a condition generally known to result or to likely result from the cumulative effect of consumption, and not from a single instance of consumption; and

3. "Knowing and willful violation" means that:

a. the conduct constituting the violation was committed with the intent to deceive or injure consumers or with actual knowledge that such conduct was injurious to consumers, and

b. the conduct constituting the violation was not required by regulations, orders, rules or other pronouncement of, or any statute administered by, a federal, state, or local government agency.

SECTION 65. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 36 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. Except as provided in subsection B of this section, a manufacturer, packer, distributor, carrier, holder, seller, marketer or advertiser of a food, as defined in Section 201(f) of the Federal Food, Drug and Cosmetic Act (21 U.S.C., Section 321(f)), or an association of one or more such entities, shall not be subject to

civil liability arising under any law of this state, including all statutes, regulations, rules, common law, public policies, court or administrative decisions or decrees, or other state action having the effect of law, for any claim arising out of weight gain, obesity, a health condition associated with weight gain or obesity, or other generally known condition allegedly caused by or allegedly likely to result from long-term consumption of food.

B. Subsection A of this section shall not preclude civil liability if the claim of weight gain, obesity, health condition associated with weight gain or obesity, or other generally known condition allegedly caused by or allegedly likely to result from long-term consumption of food is based on:

1. A material violation of an adulteration or misbranding requirement prescribed by statute or regulation of this state or the United States of America and the claimed injury was proximately caused by such violation; or

2. Any other material violation of federal or state law applicable to the manufacturing, marketing, distribution, advertising, labeling, or sale of food, provided that such violation is knowing and willful, and the claimed injury was proximately caused by such violation.

C. In any action exempted under paragraph 1 of subsection B of this section, the complaint initiating such action shall state with particularity the following: the statute, regulation or other law

6:16-cv-00113-KEW Document 2-1 Filed in ED/OK on 04/11/20 Page 163 of 230

of this state or of the United States that was allegedly violated; the facts that are alleged to constitute a material violation of such statute or regulation; and the facts alleged to demonstrate that such violation proximately caused actual injury to the plaintiff. In any action exempted under paragraph 2 of subsection B of this section, in addition to the foregoing pleading requirements, the complaint initiating such action shall state with particularity facts sufficient to support a reasonable inference that the violation was with intent to deceive or injure consumers or with the actual knowledge that such violation was injurious to consumers. For purposes of applying the Common Sense Consumption Act, the foregoing pleading requirements are hereby deemed part of the substantive law of this state and not merely in the nature of procedural provisions.

D. In any action exempted under subsection B of this section, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party. During the pendency of any stay of discovery pursuant to this subsection, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations, including electronically recorded or stored data, and tangible objects that

are in the custody or control of such party and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under Section 3234 of Title 12 of the Oklahoma Statutes.

E. The provisions of the Common Sense Consumption Act shall apply to all covered claims pending on November 1, 2009, and all claims filed thereafter, regardless of when the claim arose.

SECTION 66. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 51 of Title 76, unless there is created a duplication in numbering, reads as follows:

The Legislature finds that the unlawful use of firearms, rather than their lawful manufacture, distribution, or sale, is the proximate cause of any injury arising from their unlawful use.

SECTION 67. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 52 of Title 76, unless there is created a duplication in numbering, reads as follows:

No firearm manufacturer, distributor, or seller who lawfully manufactures, distributes, or sells a firearm is liable to any person or entity, or to the estate, successors, or survivors of either, for any injury suffered, including wrongful death and property damage, because of use of such firearm by another.

SECTION 68. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 53 of Title 76, unless there is created a duplication in numbering, reads as follows:

No association of persons who hold licenses under Section 923 of Chapter 44 of Title 18, United States Code, as in effect on January 1, 1999, is liable to any person or entity, or to the estate, successors or survivors of either, for any injury suffered, including wrongful death and property damage, because of the use of a firearm sold or manufactured by any licensee who is a member of such association.

SECTION 69. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 54 of Title 76, unless there is created a duplication in numbering, reads as follows:

The provisions of Sections 66 through 68 of this act do not apply to actions for deceit, breach of contract, or expressed or implied warranties, or for injuries resulting from failure of firearms to operate in a normal or usual manner due to defects or negligence in design or manufacture. The provisions of Sections 66 through 68 of this act do not apply to actions arising from the unlawful sale or transfer of firearms, or to instances in which the transferor knew, or should have known, that the recipient would engage in the unlawful sale or transfer of the firearm, or would use, or purposely allow the use of, the firearm in an unlawful, negligent, or improper fashion. For purposes of this section, the potential of a firearm to cause serious injury, damage, or death as a result of normal function does not constitute a defective condition of the product. A firearm may not be deemed defective on

the basis of its potential to cause serious injury, damage, or death when discharged.

SECTION 70. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 55 of Title 76, unless there is created a duplication in numbering, reads as follows:

Sections 70 through 78 of this act shall be known and may be cited as the “Product Liability Act”.

SECTION 71. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 56 of Title 76, unless there is created a duplication in numbering, reads as follows:

In the Product Liability Act:

1. “Claimant” means a party seeking relief, including a plaintiff, counterclaimant, or cross-claimant;

2. “Product liability action” means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories;

3. “Seller” means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof; and

4. "Manufacturer" means a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce.

SECTION 72. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 57 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action, a manufacturer or seller shall not be liable if:

1. The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and

2. The product is a common consumer product intended for personal consumption.

B. For purposes of this section, the term "product liability action" does not include an action based on manufacturing defect or breach of an express warranty.

SECTION 73. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 58 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action in which a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that:

1. There was a safer alternative design; and

2. The defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.

B. In this section, “safer alternative design” means a product design other than the one actually used that in reasonable probability:

1. Would have prevented or significantly reduced the risk of the claimant’s personal injury, property damage, or death without substantially impairing the product’s utility; and

2. Was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

C. This section does not supersede or modify any statute, regulation, or other law of this state or of the United States that relates to liability for, or to relief in the form of, abatement of nuisance, civil penalties, cleanup costs, cost recovery, an injunction, or restitution that arises from contamination or pollution of the environment.

D. This section does not apply to:

1. A cause of action based on a toxic or environmental tort; or

2. A drug or device, as those terms are defined in the federal Food, Drug, and Cosmetic Act (21 U.S.C., Section 321).

E. This section is not declarative, by implication or otherwise, of the common law with respect to any product and shall not be construed to restrict the courts of this state in developing the common law with respect to any product which is not subject to this section.

SECTION 74. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 59 of Title 76, unless there is created a duplication in numbering, reads as follows:

A seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves:

1. That the seller participated in the design of the product;

2. That the seller altered or modified the product and the claimant's harm resulted from that alteration or modification;

3. That the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation onto the assembled product;

4. That:

a. the seller exercised substantial control over the content of a warning or instruction that accompanied the product,

b. the warning or instruction was inadequate, and

c. the claimant's harm resulted from the inadequacy of the warning or instruction;

5. That:

a. the seller made an express factual representation about an aspect of the product,

b. the representation was incorrect,

c. the claimant relied on the representation in obtaining or using the product, and

d. if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;

6. That:

a. the seller actually knew of a defect to the product at the time the seller supplied the product, and

b. the claimant's harm resulted from the defect; or

7. That the manufacturer of the product is:

a. insolvent, or

b. not subject to the jurisdiction of the court.

SECTION 75. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 60 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action alleging that an injury was caused by a failure to provide adequate warnings or information with regard to a pharmaceutical product, there is a rebuttable presumption that the defendant or defendants, including a health care provider, manufacturer, distributor, and prescriber, are not

liable with respect to the allegations involving failure to provide adequate warnings or information if:

1. The warnings or information that accompanied the product in its distribution were those approved by the United States Food and Drug Administration for a product approved under the federal Food, Drug, and Cosmetic Act (21 U.S.C., Section 301 et seq.), as amended, or Section 351, Public Health Service Act (43 U.S.C., Section 262), as amended; or

2. The warnings provided were those stated in monographs developed by the United States Food and Drug Administration for pharmaceutical products that may be distributed without an approved new drug application.

B. The claimant may only rebut the presumption provided for in subsection A of this section as to each defendant by establishing that:

1. The defendant, before or after premarket approval or licensing of the product, withheld from or misrepresented to the United States Food and Drug Administration required information that was material and relevant to the performance of the product and was causally related to the claimant’s injury;

2. The pharmaceutical product as sold or prescribed in the United States by the defendant after the effective date of an order of the United States Food and Drug Administration to remove the product from the market or to withdraw its approval of the product;

3. a. The defendant recommended, promoted, or advertised the pharmaceutical product for an indication not approved by the United States Food and Drug Administration,

b. The product was used as recommended, promoted, or advertised, and

c. The claimant's injury was causally related to the recommended, promoted, or advertised use of the product;

4. a. The defendant prescribed the pharmaceutical product for an indication not approved by the United States Food and Drug Administration, and

b. The product was used as prescribed, and

c. The claimant's injury was causally related to the prescribed use of the product; or

5. The defendant, before or after premarket approval or licensing of the product, engaged in conduct that would constitute a violation of 18 U.S.C., Section 201 and that conduct caused the warnings or instructions approved for the product by the United States Food and Drug Administration to be inadequate.

SECTION 76. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 61 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the

product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the formula, labeling, or design for the product complied with mandatory safety standards or regulations adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm.

B. The claimant may rebut the presumption in subsection A of this section by establishing that:

1. The mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage; or

2. The manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action.

C. In a product liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant allegedly caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the product was subject to premarket

licensing or approval by the federal government, or an agency of the federal government, that the manufacturer complied with all of the government's or agency's procedures and requirements with respect to premarket licensing or approval, and that after full consideration of the product's risks and benefits the product was approved or licensed for sale by the government or agency. The claimant may rebut this presumption by establishing that:

1. The standards or procedures used in the particular premarket approval or licensing process were inadequate to protect the public from unreasonable risks of injury or damage; or

2. The manufacturer, before or after premarket approval or licensing of the product, withheld from or misrepresented to the government or agency information that was material and relevant to the performance of the product and was causally related to the claimant's injury.

D. This section does not extend to manufacturing flaws or defects even though the product manufacturer has complied with all quality control and manufacturing practices mandated by the federal government or an agency of the federal government.

E. This section does not extend to products covered by Section 75 of this act.

SECTION 77. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 62 of Title 76, unless there is created a duplication in numbering, reads as follows:

In a product liability action, if measures are taken which, if taken previously, would have made an event less likely to occur, evidence of the subsequent measures is not admissible to prove a defect in a product, negligence, or culpable conduct in connection with the event. In a product liability action brought under any theory or doctrine, if the feasibility of a design or change in warnings is not controverted, then a subsequent design change or change in warnings shall not be admissible into evidence. This section shall not require the exclusion of evidence of subsequent measures when offered for another purpose such as proving ownership, control, or impeachment.

SECTION 78. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 63 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In any product liability action in which the plaintiff seeks damages for bodily injuries or death, the attorney for the plaintiff or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the complaint, declaring one of the following:

1. That the plaintiff or attorney has consulted and reviewed the facts of the case with a qualified expert, as defined in subsection C of this section, who has determined in a written report, after examination of the product or a review of literature pertaining to the product, that:

a. in any action based on strict tort liability, the product contained specific identifiable defects having a potential for injury beyond that which would be contemplated by the ordinary user of the product and was unreasonably dangerous and in a defective condition when it left the control of the manufacturer, or

b. in any other action, those acts or omissions would give rise to fault, and

c. in any action based on any theory or doctrine, the defective condition of the product or other fault was a proximate cause of the plaintiff's injury; or

2. That the plaintiff or attorney was unable to obtain a consultation required by paragraph 1 of this subsection because a statute of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations. If an affidavit is executed pursuant to this paragraph, the affidavit required by this subsection shall be filed within ninety (90) days after the filing of the complaint. The defendant shall be excused from answering or otherwise pleading until thirty (30) days after being served with an affidavit required by this subsection. No plaintiff shall be afforded the ninety-day extension of time provided by this paragraph if the plaintiff has

voluntarily dismissed an action and has subsequently commenced a new action.

B. If the defective condition referred to in the written report required by paragraph 1 of subsection A of this section is based on a design defect, the plaintiff or attorney shall further state that the qualified expert has identified in the written report either:

1. A feasible alternative design that existed at the time the product left the control of the manufacturer; or

2. An applicable government or industry standard to which the product did not conform.

C. A “qualified expert”, for the purposes of this section, means someone who possesses scientific, technical, or other specialized knowledge regarding the product at issue or similar products and who is qualified to prepare the report required by this section.

D. A copy of the written report required by this section shall be attached to the original and all copies of the complaint.

E. The failure to file an affidavit required by this section shall be grounds for dismissal.

F. This section shall apply to any cause of action filed on or after November 1, 2009.

SECTION 79. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 64 of Title 76, unless there is created a duplication in numbering, reads as follows:

Sections 79 through 85 of this act shall be known and may be cited as the "Asbestos and Silica Claims Priorities Act".

SECTION 80. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 65 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. FINDINGS. The Legislature finds that:

1. Asbestos is a mineral that was widely used prior to the mid-1970s for insulation, fireproofing, and other purposes;

2. Many American workers were exposed to asbestos, especially during World War II;

3. Long-term exposure to some types of asbestos has been causally associated with mesothelioma and lung cancer, as well as nonmalignant conditions, such as asbestosis, pleural plaques, and diffuse bilateral pleural thickening;

4. The United States Supreme Court has described asbestos litigation in this country as a "crisis";

5. Reports indicate that up to ninety percent (90%) of recent asbestos claims were filed by individuals with no demonstrable asbestos-related impairment. Lawyer-sponsored X-ray screenings of workers at occupational locations have been used to amass large numbers of unimpaired claimants;

6. The costs of compensating unimpaired claimants and litigating their claims jeopardize the ability of defendants to compensate people with cancer and other serious diseases; threatens

the savings, retirement benefits, and jobs of current and retired employees; and adversely impacts affected communities;

7. Asbestos litigation has forced an estimated eighty-six employers into bankruptcy. The rate of asbestos-driven bankruptcies has accelerated in recent years. Between 2000 and 2004, there were more asbestos-related bankruptcy filings than in either of the prior two (2) decades;

8. Personal injury lawyers have responded to these bankruptcies by expanding their search for solvent defendants. The number of asbestos defendants includes over eight thousand five hundred companies, including many small- and medium-size companies, in industries that cover eighty-five percent (85%) of the United States economy;

9. Efforts to address asbestos litigation may increase the number of silica-related filings;

10. Silica is a naturally occurring mineral and is the second most common constituent of the earth's crust. Crystalline silica in the form of quartz is present in sand, gravel, soil, and rocks;

11. Silica-related illness, including silicosis, can develop from the prolonged inhalation of respirable silica dust. Silicosis was widely recognized as an occupational disease many years ago;

12. Silica claims, like asbestos claims, often involve individuals with no demonstrable impairment. Claimants frequently

are identified through the use of interstate, for-profit, screening companies;

13. Silica screening processes have been found subject to substantial abuse and potential fraud (In re Silica Prods. Liab. Litig., 398 F. Supp. 2d 563 (S.D. Tex. 2005));

14. Concerns about statutes of limitations may prompt unimpaired asbestos and silica claimants to bring lawsuits prematurely to protect against losing their ability to assert a claim in the future should they develop an impairing condition;

15. Sound public policy requires that the claims of persons with no present physical impairment caused by asbestos or silica exposure be deferred to give priority to physically impaired claimants, and to safeguard the jobs, benefits, and savings of workers in affected companies; and

16. Trial consolidations, joinders, and similar trial procedures used by some courts to handle asbestos and silica cases can undermine the appropriate functioning of the court system, deny due process to plaintiffs and defendants, and further encourage the filing of cases by persons who are not sick and likely will never develop an impairing condition caused by exposure to asbestos or silica.

B. PURPOSES. The purposes of the Asbestos and Silica Claims Priorities Act are to:

1. Give priority to current claimants who can demonstrate present physical impairment caused by asbestos or silica exposure based on objective medical criteria;

2. Toll the running of statutes of limitations for persons who have been exposed to asbestos or to silica, but who have no present asbestos-related or silica-related impairment; and

3. Enhance the ability of the courts to supervise and manage asbestos and silica claims.

SECTION 81. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 66 of Title 76, unless there is created a duplication in numbering, reads as follows:

DEFINITIONS. As used in the Asbestos and Silica Claims Priorities Act:

1. “AMA Guides to the Evaluation of Permanent Impairment” means the American Medical Association’s Guides to the Evaluation of Permanent Impairment in effect at the time of the performance of any examination or test on the exposed person required under the Asbestos and Silica Claims Priorities Act;

2. “Asbestos” means chrysotile, amosite, crocidolite, tremolite asbestos, anthophyllite asbestos, actinolite asbestos, asbestiform winchite, asbestiform richterite, asbestiform amphibole minerals, and any of these minerals that have been chemically treated or altered, including all minerals defined as asbestos in 29 C.F.R. 1910 at the time an asbestos claim is made;

3. “Asbestos claim” means any claim for damages, losses, indemnification, contribution, or other relief of whatever nature arising out of, based on, or in any way related to the alleged health effects associated with the inhalation or ingestion of asbestos, to the extent such claims are recognized, including loss of consortium, personal injury or death, mental or emotional injury, risk or fear of disease or other injury, the costs of medical monitoring or surveillance, and any claim made by or on behalf of any person exposed to asbestos or a representative, spouse, parent, child, or other relative of the exposed person. The term “asbestos claim” does not include a claim for compensatory benefits pursuant to a workers’ compensation law or a veterans’ benefits program;

4. “Asbestosis” means bilateral diffuse interstitial fibrosis of the lungs caused by inhalation of asbestos fibers;

5. “Board-certified in internal medicine” means a physician who is certified by the American Board of Internal Medicine or the American Osteopathic Board of Internal Medicine and whose certification was current at the time of the performance of any examination and rendition of any report required by the Asbestos and Silica Claims Priorities Act;

6. “Board-certified in occupational medicine” means a physician who is certified in the subspecialty of occupational medicine by the American Board of Preventive Medicine or the American Osteopathic Board of Preventive Medicine and whose certification was current at

the time of the performance of any examination and rendition of any report required by the Asbestos and Silica Claims Priorities Act;

7. "Board-certified in oncology" means a physician who is certified in the subspecialty of medical oncology by the American Board of Internal Medicine or the American Osteopathic Board of Internal Medicine and whose certification was current at the time of the performance of any examination and rendition of any report required by the Asbestos and Silica Claims Priorities Act;

8. "Board-certified in pathology" means a physician who holds primary certification in anatomic pathology or clinical pathology from the American Board of Pathology or the American Osteopathic Board of Internal Medicine, whose certification was current at the time of the performance of any examination and rendition of any report required by the Asbestos and Silica Claims Priorities Act, and whose professional practice is principally in the field of pathology and involves regular evaluation of pathology materials obtained from surgical or postmortem specimens;

9. "Board-certified in pulmonary medicine" means a physician who is certified in the subspecialty of pulmonary medicine by the American Board of Internal Medicine or the American Osteopathic Board of Internal Medicine and whose certification was current at the time of the performance of any examination and rendition of any report required by the Asbestos and Silica Claims Priorities Act;

10. "Certified B-reader" means an individual qualified as a "final" or "B-reader" in accordance with 42 C.F.R. 37.51(b) and whose certification was current at the time of any readings required under the Asbestos and Silica Claims Priorities Act;

11. "Certified industrial hygienist" means an industrial hygienist having attained the status of diplomate of the American Academy of Industrial Hygiene subject to compliance with requirements established by the American Board of Industrial Hygiene;

12. "Certified safety professional (CSP)" means a person who meets all requirements established by the Board of Certified Safety Professionals and is authorized to use the Certified Safety Professional title or the CSP designation;

13. "Chest X-rays" means chest films taken in accordance with all applicable state and federal regulatory standards and taken in the posterior-anterior and lateral views;

14. "Claimant" means any plaintiff asserting an asbestos or silica claim; if a claim is brought through or on behalf of an estate, the term includes the claimant's decedent; if a claim is brought through or on behalf of a minor or incompetent, the term includes the claimant's parent or guardian;

15. "DLCO" means diffusing capacity of the lung for carbon monoxide, which is the measurement of carbon monoxide transfer from inspired gas to pulmonary capillary blood;

16. "Exposed person" means any person claiming exposure to asbestos or silica or to asbestos-containing or silica-containing products;

17. "FEV-1" means forced expiratory volume in the first second, which is the maximal volume of air expelled in one (1) second during performance of simple spirometric tests;

18. "FVC" means forced vital capacity, which is the maximal volume of air expired with maximum effort from a position of full inspiration;

19. "ILO system and ILO scale" means the radiological ratings and system for the classification of chest X-rays of the International Labor Office provided in Guidelines for the Use of ILO International Classification of Radiographs of Pneumoconioses in effect on the day any X-rays of the exposed person were reviewed by a certified B-reader;

20. "Lung cancer" means a malignant tumor, diagnosed by a board-certified pathologist or oncologist, in which the primary site of origin is located inside the lungs;

21. "Mesothelioma" means a malignant tumor with a primary site of origin in the pleura, peritoneum, or pericardium, diagnosed by a board-certified pathologist or oncologist, using standardized and accepted criteria of microscopic morphology and appropriate immunohistochemical staining techniques;

22. “Nonsmoker” means a person who has not smoked cigarettes or used any tobacco products on a consistent and frequent basis during the fifteen (15) years preceding the day of diagnosis of an asbestos-related or silica-related disease through the present date;

23. “Official Statements of the American Thoracic Society” means lung function testing standards set forth in statements from the American Thoracic Society (and, if applicable, the European Respiratory Society), including standardizations of spirometry, standardizations of lung volume testing, standardizations of diffusion capacity testing or single-breath determination of carbon monoxide uptake in the lung, and interpretive strategies for lung function tests, which are in effect on the day of the pulmonary function testing of the exposed person;

24. “Pathological evidence of asbestosis” means a statement by a board-certified pathologist that more than one representative section of lung tissue, uninvolved with any other disease process, demonstrates a pattern of peribronchiolar or parenchymal scarring in the presence of characteristic asbestos bodies graded 1(B) or higher under the criteria published in Asbestos-Associated Diseases, 106 Archive of Pathology and Laboratory Medicine 11, Appendix 3 (October 8, 1982), or as amended at the time of the exam, and that no other more likely explanation for the presence of the fibrosis exists;

25. “Pathological evidence of silicosis” means a statement by a board-certified pathologist that more than one representative

section of lung tissue uninvolved with any other disease process demonstrates complicated silicosis with characteristic confluent silicotic nodules or lesions equal to or greater than one (1) centimeter and birefringent crystals or other demonstration of crystal structures consistent with silica (well-organized concentric whorls of collagen surrounded by inflammatory cells) in the lung parenchyma and no other more likely explanation for the presence of the fibrosis exists, or acute silicosis with characteristic pulmonary edema, interstitial inflammation, and the accumulation within the alveoli of proteinaceous fluid rich in surfactant;

26. “Plethysmography or body plethysmography” means the test for determining lung volume in which the exposed person is enclosed in a chamber equipped to measure pressure, flow, or volume change;

27. “Premises owner” means a person who owns, in whole or in part, leases, rents, maintains, or controls privately owned lands, ways or waters, or any buildings and structures on those lands, ways or waters, and all privately owned and state-owned lands, ways or waters leased to a private person, firm, or organization, including any buildings and structures on those lands, ways or waters;

28. “Predicted lower limit of normal” for any test value means the calculated standard convention lying at the fifth percentile, below the upper ninety-five percent (95%) of the reference population, based on age, height, and gender, according to the recommendations by the American Thoracic Society and as referenced

in the applicable AMA Guides to the Evaluation of Permanent Impairment;

29. “Pulmonary function test” means spirometry, lung volume testing, diffusion capacity testing, and exercise testing, including appropriate measurements and graphs, performed in accordance with the methods of calibration and techniques provided in the applicable AMA Guides to the Evaluation of Permanent Impairment and all standards provided in the Official Statements of the American Thoracic Society in effect on the day pulmonary function testing of the exposed person was conducted;

30. “Qualified physician” means a board-certified internist, oncologist, pathologist, pulmonary specialist, radiologist, or specialist in occupational and environmental medicine, as may be appropriate to the actual diagnostic specialty in question, that meets all of the following requirements:

a. the physician personally conducted a physical examination of the exposed person and has taken or has directed to be taken at his supervision, direction and control, a detailed occupational, exposure, medical, smoking and social history from the exposed person, or if the exposed person is deceased, from the person most knowledgeable about the information forming the basis of the asbestos or silica claim,

b. the physician treated or is treating the exposed person, and has or had a doctor-patient relationship with the exposed person at the time of the physical examination, or in the case of a board-certified pathologist, examined tissue samples or pathological slides of the exposed person at the request of the treating physician,

c. the physician spends no more than ten percent (10%) of the physician’s professional practice time providing consulting or expert services in actual or potential civil actions, and whose medical group, professional corporation, clinic, or other affiliated group earns not more than twenty percent (20%) of its revenue providing such services,

d. the physician is currently licensed to practice, or was licensed to practice on the day any examination or pulmonary function testing was conducted, and actively practices or practiced in the state where the claimant resides, the claimant’s civil action was filed, or the claimant resided at the time of the examination,

e. the physician received or is receiving payment for the treatment of the exposed person from the exposed person, a member of the exposed person’s family, or the exposed person’s health care plan,

f. the physician prepared the report, or directly supervised the preparation and final review of the report, and

g. the physician may not, as the basis for a diagnosis, rely, in whole or in part, on any of the reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the exposed person in violation of any law, regulation, licensing requirement, or medical code of practice of the state in which the examination, test, or screening was conducted, or that was conducted without clearly establishing a doctor-patient relationship with the exposed person or medical personnel involved in the examination, test, or screening process, or that required the exposed person to agree to retain the legal service of a law firm;

31. “Radiological evidence of asbestosis” means a quality 1 chest X-ray under the ILO system, or a quality 2 chest X-ray in a death case when no pathology or quality 1 chest X-ray is available, showing bilateral small, irregular opacities (s, t, or u) graded by a certified B-reader as at least 1/1 on the ILO scale;

32. “Radiological evidence of diffuse bilateral pleural thickening” means a quality 1 chest X-ray under the ILO system, or a

quality 2 chest X-ray in a death case when no pathology or quality 1 chest X-ray is available, showing diffuse bilateral pleural thickening of at least b2 on the ILO scale and blunting of at least one costophrenic angle as classified by a certified B-reader;

33. “Radiological evidence of silicosis” means a quality 1 chest X-ray under the ILO system, or a quality 2 chest X-ray in a death case when no pathology or quality 1 chest X-ray is available, showing bilateral predominantly nodular or rounded opacities (p, q, or r) occurring primarily in the upper lung fields by a certified B-reader as at least 1/1 on the ILO scale or A-, B-, or C-sized opacities representing complicated silicosis or acute silicosis with characteristic pulmonary edema, interstitial inflammation, and the accumulation within the alveoli of proteinaceous fluid rich in surfactant;

34. “Silica” means a respirable crystalline form of silicon dioxide, including quartz, cristobalite, and tridymite;

35. “Silica claim” means any claim for damages, losses, indemnification, contribution, or other relief of whatever nature arising out of, based on, or in any way related to the alleged health effects associated with the inhalation of silica, to the extent such claims are recognized, including loss of consortium, personal injury or death, mental or emotional injury, risk or fear of disease or other injury, the costs of medical monitoring or surveillance, and any claim made by or on behalf of any person

exposed to silica, or a representative, spouse, parent, child, or other relative of the exposed person. The term “silica claim” does not include a claim for compensatory benefits pursuant to a workers’ compensation law or a veterans’ benefits program;

36. “Silicosis” means simple silicosis, acute silicosis, accelerated silicosis, or chronic silicosis caused by the inhalation of respirable silica;

37. “Smoker” means a person who has smoked cigarettes or used any tobacco products on a consistent and frequent basis during the fifteen (15) years preceding the day of diagnosis through the present date;

38. “Spirometry” means a test of air capacity of the lung through a spirometer to measure the volume of air inspired and expired;

39. “Substantial contributing factor” means all of the following:

a. the predominate cause of the physical impairment alleged in the asbestos or silica claim was exposure to asbestos or silica from the defendant, from the premises of the defendant, or as a result of a product from the defendant,

b. there is credible evidence that the claimant identified the specific product, operation or specific

premises at issue and the location, duration, and specific circumstances of exposure,

c. the exposure to asbestos or asbestos-containing product or silica or silica-containing product happened on a frequent or recurring basis over an extended period of time and in close proximity to the exposed person and constituted more than incidental contact with the product, operation, or location,

d. the exposed person inhaled asbestos fibers or silica from the defendant, from the premises of the defendant, or as a result of a product from the defendant in sufficient quantities capable of causing his harm, and

e. a qualified physician determined with a reasonable degree of medical certainty that the physical impairment of the exposed person would not have occurred but for the exposure to asbestos or silica from the defendant, from the premises of the defendant, or as a result of a product from the defendant;

40. “Substantial occupational exposure to asbestos” means employment of a cumulative period of at least ten (10) years in an industry and occupation in which, for a substantial portion of a normal work year for that occupation, the exposed person handled raw

asbestos fibers; fabricated asbestos-containing products; altered, repaired, or otherwise worked with an asbestos-containing product; or worked in close proximity to other workers engaged in any of these activities;

41. “Substantial occupational exposure to silica” means employment of a cumulative period of at least five (5) years in an industry and occupation in which, for a substantial portion of a normal work year for that occupation, the exposed person handled silica; fabricated silica-containing products; altered, repaired, or otherwise worked with a silica-containing product; or worked in close proximity to other workers engaged in any of these activities;

42. “Supporting test results” means copies of the B-reading, pulmonary function tests (including printouts of the flow volume loops, volume time curves, DLCO graphs, and data for all trials and all other elements required to demonstrate compliance with the equipment, quality, interpretation and reporting standards set forth herein), lung volume tests, reports of X-ray examinations, diagnostic imaging of the chest, pathology reports, and all other tests reviewed by the diagnosing, qualified physician in reaching the physician’s conclusion;

43. “Timed gas dilution” means a method for measuring total lung capacity in which the subject breathes into a spirometer containing a known concentration of an inert and insoluble gas for a specific time, and the concentration of that inert and insoluble gas

in the lung is compared to the concentration of that type of gas in the spirometer;

44. “Total lung capacity” means the volume of gas contained in the lungs at the end of a maximal inspiration;

45. “Veterans’ benefits program” means a program for benefits in connection with military service administered by the Veterans’ Administration under Title 38, United States Code; and

46. “Workers’ compensation law” means a law respecting a program administered by a state or the United States to provide compensatory benefits, funded by a responsible employer or its insurance carrier, for occupational diseases or injuries or for disability or death caused by occupational diseases or injuries. The term includes the Longshore and Harbor Workers’ Compensation Act (33 U.S.C., Section 901 et seq.) and the Federal Employees’ Compensation Act (Chap. 81 of Title 5, United States Code). The term does not include the Act of April 22, 1908, commonly known as the Federal Employers’ Liability Act (45 U.S.C., Section 51 et seq.), or any claim for exemplary or punitive damages by an employee, estate, heir, representative or any other person or entity against the employer of an exposed person arising out of or related to asbestos-related injury or silica-related injury.

SECTION 82. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 67 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. ELEMENTS OF PROOF FOR ASBESTOS OR SILICA CLAIMS.

Preliminary Proceedings.

1. QUALIFIED PHYSICIAN'S REPORT. The claimant in any civil action alleging an asbestos or silica claim shall file together with the complaint or other initial pleading a detailed narrative medical report and diagnosis, signed under oath by a qualified physician and accompanied by supporting test results, constituting prima facie evidence that the claimant meets the requirements of this section. The written report shall be prepared by the diagnosing, qualified physician and shall not be prepared by a lawyer or person working for or on behalf of any lawyer or law firm.

2. TIMING. The claimant in any civil action alleging an asbestos or silica claim pending on November 1, 2009, shall file the written report and supporting test results described in paragraph 1 of this subsection not later than one hundred eighty (180) days after November 1, 2009, or not later than sixty (60) days prior to the commencement of trial, whichever occurs first.

3. DEFENDANT'S RIGHT TO CHALLENGE. The defendant shall be afforded a reasonable opportunity to challenge the adequacy of the proffered prima facie evidence.

4. DISMISSAL. The claim shall be dismissed without prejudice upon a finding that the claimant has failed to make the required prima facie showing.

B. NEW CLAIM REQUIRED INFORMATION.

1. IN GENERAL. The claimant in any civil action alleging an asbestos or silica claim filed in this state on or after the effective date of the Asbestos and Silica Claims Priorities Act shall include a sworn information form containing all of the following:

a. the name, address, date of birth, social security number, marital status, occupation, and employer of the claimant, the exposed person, and any person through which the claimant alleges exposure,

b. the claimant’s relationship to the exposed person or person through which the claimant alleges exposure,

c. the specific location and manner of each alleged exposure, including for persons alleging exposure through another person, the specific premises at which such other person was exposed, the beginning and ending dates of each alleged exposure, and the identity of the manufacturer of the specific asbestos or silica product at issue,

d. the identity of the defendant or defendants against whom the claimant asserts a claim,

e. the specific asbestos-related or silica-related disease claimed to exist,

f. information as to any lawsuits filed or claims made by or on behalf of the claimant and exposed person,

including any claims made against bankruptcy trusts, and information as to the case caption, docket number, identification of the court or bankruptcy trust in which the claim is or was pending, and a description of the status of the case or claim, and

g. any supporting documentation relating to subparagraphs c through f of this paragraph.

2. INDIVIDUAL REQUIREMENTS. All asbestos claims and silica claims along with sworn information forms must be individually filed. No claims on behalf of a group or class of persons shall be permitted.

C. PRIMA FACIE EVIDENCE OF PHYSICAL IMPAIRMENT FOR NONMALIGNANT ASBESTOS CLAIMS. No person shall bring or maintain an asbestos claim related to an alleged nonmalignant asbestos-related condition in the absence of prima facie evidence that the exposed person has a physical impairment for which asbestos exposure was a substantial contributing factor. The prima facie showing shall be made as to each defendant and include a detailed narrative medical report and diagnosis signed under oath by a qualified physician that includes all of the following:

1. Radiological or pathological evidence of asbestosis or radiological evidence of diffuse bilateral pleural thickening or a computed tomography or high-resolution computed tomography scan showing evidence of asbestosis or diffuse pleural thickening;

2. Evidence verifying that a qualified physician has taken a detailed occupational and exposure history from the exposed person or, if the person is deceased, from the person most knowledgeable about the exposures that form the basis of the claim, including identification of all of the exposed person’s principal places of employment and exposures to airborne contaminants and whether each place of employment involved exposures to airborne contaminants, including asbestos fibers or other disease-causing dusts or fumes, that may cause pulmonary impairment and the nature, duration, and level of any exposure;

3. Evidence verifying that a qualified physician has taken a detailed medical, social, and smoking history from the exposed person or, if the person is deceased, from the person most knowledgeable, including a thorough review of the past and present medical problems of the exposed person and their most probable cause;

4. Evidence demonstrating that at least fifteen (15) years elapsed between the date of first exposure to asbestos and the date of diagnosis;

5. Evidence verifying that a qualified physician, on the basis of a personal medical examination and pulmonary function testing of the exposed person, or if the exposed person is deceased, based upon the person’s medical records, that the claimant has, or deceased person had, a permanent respiratory impairment rating of at least

Class 2 as defined by and evaluated pursuant to the AMA's Guides to the Evaluation of Permanent Impairment;

6. Evidence verifying that a qualified physician has determined that asbestosis or diffuse bilateral pleural thickening, rather than chronic obstructive pulmonary disease, is a substantial contributing factor to the physical impairment, based on a determination that the exposed person has:

a. forced vital capacity below the predicted lower limit of normal and FEV1/FVC ratio, using actual values, at or above the predicted lower limit of normal,

b. total lung capacity, by plethysmography or timed gas dilution, below the predicted lower limit of normal, or

c. a chest X-ray showing bilateral small, irregular opacities (s, t, or u) graded by a certified B-reader at least 2/1 on the ILO scale; and

7. Evidence verifying that the qualified physician signing the detailed narrative medical report and diagnosis has concluded that exposure to asbestos was a substantial contributing factor to the physical impairment and not more probably the result of other causes. An opinion that the medical findings and impairment are "consistent with" or "compatible with" exposure to asbestos, or words to that effect, do not satisfy the requirements of this subsection.

D. PRIMA FACIE EVIDENCE OF ASBESTOS-RELATED LUNG CANCER. No person shall bring or maintain an asbestos claim related to alleged asbestos-related lung cancer in the absence of a prima facie showing of a primary lung cancer for which exposure to asbestos was a substantial contributing factor. The prima facie showing shall be made as to each defendant and include a detailed narrative medical report and diagnosis signed under oath by a qualified physician that includes all of the following:

1. Evidence verifying that a qualified physician has taken a detailed occupational and exposure history from the exposed person or, if he is deceased, from the person most knowledgeable about the exposures that form the basis of the claim, including identification of all of the principal places of employment of the exposed person and exposures to airborne contaminants and whether each place of employment involved exposures to airborne contaminants, including asbestos fibers or other disease-causing dusts or fumes, that may cause cancer and the nature, duration, and level of any exposure;

2. Evidence verifying that a qualified physician has taken a detailed medical, social, and smoking history from the exposed person or, if he is deceased, from the person most knowledgeable, including a thorough review of the past and present medical problems and their most probable cause;

3. A diagnostic report signed by a qualified physician who is board-certified in pathology, pulmonary medicine or oncology

verifying that the exposed person has primary lung cancer and that exposure to asbestos was a substantial contributing factor, including pathological evidence of the presence of a primary lung cancer if the diagnosis is made by a qualified physician who is board-certified in pulmonary medicine;

4. Evidence demonstrating that at least fifteen (15) years elapsed between the date of first exposure to asbestos and the date of diagnosis;

5. Evidence demonstrating:

a. if the exposed person is a nonsmoker, radiological or pathological evidence of asbestosis or radiological evidence of diffuse bilateral pleural thickening or a computed tomography or high-resolution computed tomography scan showing evidence of asbestosis or diffuse bilateral pleural thickening or evidence verifying substantial occupational exposure to asbestos or evidence verifying exposure to asbestos at least equal to twenty-five fiber per cc years as determined to a reasonable degree of scientific probability by a scientifically valid retrospective exposure reconstruction conducted by a certified industrial hygienist or certified safety professional based upon all reasonably available quantitative air monitoring data and all other reasonably available

information concerning occupational and exposure history,

b. if the exposed person is a smoker, radiological or pathological evidence of asbestosis or radiological evidence of diffuse bilateral pleural thickening or a computed tomography or high-resolution computed tomography scan showing evidence of asbestosis or diffuse bilateral pleural thickening and evidence verifying substantial occupational exposure to asbestos or exposure to asbestos at least equal to twenty-five fiber per cc years as determined to a reasonable degree of scientific probability by a scientifically valid retrospective exposure reconstruction conducted by certified industrial hygienist or certified safety professional based upon all reasonably available quantitative air monitoring data and all other reasonably available information concerning occupational and exposure history, or

c. if a claimant alleges an asbestos claim based upon lung cancer and alleges that the exposure of the claimant to asbestos was the result of living with an exposed person, the claimant shall demonstrate radiological or pathological evidence of asbestosis or radiological evidence of diffuse bilateral pleural

thickening or a computed tomography or high-resolution computed tomography scan showing evidence of asbestosis or diffuse bilateral pleural thickening and verify that the exposed person had substantial occupational exposure to asbestos or exposure to asbestos at least equal to twenty-five fiber per cc years as determined to a reasonable degree of scientific probability by a scientifically valid retrospective exposure reconstruction conducted by a certified industrial hygienist or certified safety professional based upon all reasonably available quantitative air monitoring data and all other reasonably available information concerning occupational and exposure history; and

6. Evidence verifying that the qualified physician signing the detailed narrative medical report and diagnosis has concluded that exposure to asbestos was a substantial contributing factor to the lung cancer of the exposed person and not more probably the result of other causes. An opinion stating that the medical findings and lung cancer are “consistent with” or “compatible with” exposure to asbestos, or words to that effect, do not satisfy the requirements of this subsection.

E. PRIMA FACIE EVIDENCE OF ASBESTOS-RELATED CANCER OF THE COLON, RECTUM, LARYNX, PHARYNX, OR ESOPHAGUS (OTHER CANCER). No

person shall bring or maintain an asbestos claim related to an alleged asbestos-related cancer of the colon, rectum, larynx, pharynx, or esophagus (other cancer) in the absence of a prima facie showing of a primary cancer of the colon, rectum, larynx, pharynx, or esophagus for which exposure to asbestos was a substantial contributing factor. The prima facie showing shall be made as to each defendant and include a detailed narrative medical report and diagnosis signed under oath by a qualified physician that includes all of the following:

1. Evidence verifying that a qualified physician has taken a detailed occupational and exposure history from the exposed person or, if the person is deceased, from the person most knowledgeable about the exposures that form the basis of the claim, including identification of all of the principal places of employment and exposure to airborne contaminants and whether each place of employment involved exposures to airborne contaminants, including asbestos fibers or other disease-causing dusts or fumes, that may cause cancer and the nature, duration, and level of any exposure;

2. Evidence verifying that a qualified physician has taken a detailed medical, social, and smoking history from the exposed person or, if the person is deceased, from the person most knowledgeable, including a thorough review of the past and present medical problems of the exposed person and their most probable cause;

3. A diagnosis by a qualified physician who is board-certified in pathology or oncology, gastroenterology or otolaryngology, as appropriate for the type of cancer claimed, or primary cancer of the colon, rectum, larynx, pharynx, or esophagus and that exposure to asbestos was a substantial contributing factor;

4. Evidence demonstrating that at least fifteen (15) years elapsed between the date of first exposure to asbestos and the date of diagnosis;

5. Radiological or pathological evidence of asbestosis or radiological evidence of diffuse bilateral pleural thickening or a computed tomography or high-resolution computed tomography scan showing evidence of asbestosis or diffuse bilateral pleural thickening and evidence verifying substantial occupational exposure or exposure to asbestos at least equal to twenty-five fiber per cc years as determined to a reasonable degree of scientific probability by a scientifically valid retrospective exposure reconstruction conducted by a certified industrial hygienist or certified safety professional based upon all reasonably available quantitative air monitoring data and all other reasonably available information concerning the occupational and exposure history of the exposed person;

6. If a claimant alleges an asbestos claim based upon cancer of the colon, rectum, larynx, pharynx, or esophagus and alleges that the exposure of the claimant to asbestos was the result of living

with an exposed person, the clamant shall have evidence verifying that the exposed person had substantial occupational exposure to asbestos or exposure to asbestos at least equal to twenty-five fiber per cc years as determined to a reasonable degree of scientific probability by a scientifically valid retrospective exposure reconstruction conducted by a certified industrial hygienist or certified safety professional based upon all reasonably available quantitative air monitoring data and all other reasonably available information concerning occupational and exposure history; and

7. Evidence verifying that the qualified physician signing the detailed narrative medical report and diagnosis has concluded that exposure to asbestos was a substantial contributing factor to the cancer and not more probably the result of other causes. An opinion stating that the medical findings and cancer are “consistent with” or “compatible with” exposure to asbestos, or words to that effect do not satisfy the requirements of this subsection.

F. PRIMA FACIE EVIDENCE OF ASBESTOS-RELATED MESOTHELIOMA. No person shall bring or maintain an asbestos claim related to alleged mesothelioma in the absence of a prima facie showing of an asbestos-related mesothelioma. The prima facie showing shall be made as to each defendant and include all of the following:

1. A report by a qualified physician who is board-certified in pathology, pulmonary medicine or oncology verifying a diagnosis of mesothelioma and that exposure to asbestos was a substantial

contributing factor, including pathological evidence of the presence of a mesothelioma if the diagnosis is made by a qualified physician who is board-certified in pulmonary medicine; and

2. Evidence of identifiable exposure to asbestos resulting from substantial occupational exposure or exposure to asbestos fibers brought into the home of the claimant by a person with substantial occupational exposure to asbestos.

G. PRIMA FACIE EVIDENCE OF ASBESTOS-RELATED CLAIMS OTHER THAN NONMALIGNANT CONDITIONS, LUNG CANCER, CANCER OF THE COLON, RECTUM, LARYNX, PHARYNX, OR ESOPHAGUS, OR MESOTHELIOMA. No person shall bring or maintain an asbestos claim other than an asbestos-related nonmalignant condition, asbestos-related lung cancer, asbestos-related cancer of the colon, rectum, larynx, pharynx, or esophagus, or asbestos-related mesothelioma, in the absence of a prima facie showing of a primary cancer for which exposure to asbestos was a substantial contributing factor. The prima facie showing shall be made as to each defendant and include a detailed narrative medical report and diagnosis signed under oath by a qualified physician that includes all of the following:

1. A diagnosis of an asbestos-related disease based on findings by a qualified physician and credible evidence of identifiable exposure to asbestos resulting from substantial occupational exposure or exposure to asbestos fibers brought into the home of the

claimant by a person with substantial occupational exposure to asbestos;

2. Evidence verifying that the qualified physician signing the detailed narrative medical report and diagnosis has concluded that exposure to asbestos was a substantial contributing factor to the medical findings and impairment and not more probably the result of other causes. An opinion stating that the medical findings and impairment are "consistent with" or "compatible with" exposure to asbestos, or words to that effect, do not satisfy the requirements of this subsection; and

3. The court holds an evidentiary hearing and finds that the claimant has established a prima facie showing of physical impairment to which exposure to asbestos was a substantial contributing factor.

H. PRIMA FACIE EVIDENCE OF PHYSICAL IMPAIRMENT FOR SILICOSIS CLAIMS. No person shall bring or maintain a silica claim related to alleged silicosis in the absence of a prima facie showing of physical impairment as a result of silicosis. The prima facie showing shall be made as to each defendant and include a detailed narrative medical report and diagnosis signed under oath by a qualified physician that includes all of the following:

1. Radiological or pathological evidence of silicosis or a computed tomography or high-resolution computed tomography scan showing evidence of silicosis;

2. Evidence verifying that a qualified physician has taken a detailed occupational and exposure history from the exposed person or, if the person is deceased, from the person most knowledgeable about the exposures that form the basis of the claim, including identification of all principal places of employment and exposures to airborne contaminants and whether each place of employment involved exposures to airborne contaminants, including silica or other disease-causing dusts or fumes, that may cause pulmonary impairment and the nature, duration, and level of any exposure;

3. Evidence verifying that a qualified physician has taken a detailed medical, social, and smoking history from the exposed person or, if the person is deceased, from the person most knowledgeable, including a thorough review of the past and present medical problems and their most probable cause;

4. Evidence demonstrating that a sufficient latency period elapsed between the date of first exposure to silica and the day of diagnosis;

5. Evidence verifying that the qualified physician, on the basis of a personal medical examination and pulmonary function testing of the exposed person (or, if the exposed person is deceased, based upon the person's medical records) that the claimant has (or deceased person had) a permanent respiratory impairment rating of at least Class 2 as defined by and evaluated pursuant to the AMA's Guides to the Evaluation of Permanent Impairment; and

6. Evidence verifying that the qualified physician signing the detailed narrative medical report and diagnosis has concluded that exposure to silica was a substantial contributing factor to the physical impairment and not more probably the result of other causes. An opinion stating that the medical findings and impairment are "consistent with" or "compatible with" exposure to silica, or words to that effect, do not satisfy the requirements of this subsection.

I. PRIMA FACIE EVIDENCE OF SILICA-RELATED LUNG CANCER. No person shall bring or maintain a silica claim related to an alleged silica-related lung cancer in the absence of a prima facie showing of a primary lung cancer for which exposure to silica was a substantial contributing factor. The prima facie showing shall be made as to each defendant and include a detailed narrative medical report and diagnosis signed under oath by a qualified physician that includes all of the following:

1. Evidence verifying that a qualified physician has taken a detailed occupational and exposure history from the exposed person or, if the exposed person is deceased, from the person most knowledgeable about the exposures that form the basis of the claim, including identification of all principal places of employment and exposures to airborne contaminants and whether each place of employment involved exposures to airborne contaminants, including

disease-causing dusts or fumes, that may cause cancer and the nature, duration, and level of any exposure;

2. Evidence verifying that a qualified physician has taken a detailed medical, social, and smoking history from the exposed person or, if the person is deceased, from the person most knowledgeable, including a thorough review of the past and present medical problems and their most probable cause;

3. A diagnostic report signed by a qualified physician who is board-certified in pathology, pulmonary medicine or oncology verifying that the exposed person has primary lung cancer and that exposure to silica was a substantial contributing factor, including pathological evidence of the presence of a primary lung cancer if the diagnosis is made by a qualified physician who is board-certified in pulmonary medicine;

4. Evidence demonstrating that at least fifteen (15) years elapsed between the date of first exposure to silica and the date of diagnosis;

5. Evidence demonstrating:

a. if the exposed person is a nonsmoker, radiological or pathological evidence of silicosis or a computed tomography or high-resolution computed tomography scan showing evidence of silicosis or evidence verifying substantial occupational exposure to silica, and

b. if the exposed person is a smoker, radiological or pathological evidence of silicosis or a computed tomography or high-resolution computed tomography scan showing evidence of silicosis and evidence verifying substantial occupational exposure to silica; and

6. Evidence verifying that the qualified physician signing the detailed narrative medical report and diagnosis has concluded that exposure to silica was a substantial contributing factor to the lung cancer of the exposed person and not more probably the result of other causes. An opinion stating that the medical findings and lung cancer are “consistent with” or “compatible with” exposure to silica, or words to that effect, do not satisfy the requirements of this subsection.

J. PRIMA FACIE EVIDENCE OF PHYSICAL IMPAIRMENT FOR OTHER SILICA-RELATED CLAIMS. No person shall bring or maintain a silica claim related to an alleged silica-related condition, other than silicosis or silica-related lung cancer, in the absence of a prima facie showing of physical impairment as a result of a medical condition for which exposure to silica was a substantial contributing factor. The prima facie showing shall be made as to each defendant and include a detailed narrative medical report and diagnosis signed under oath by a qualified physician that includes all of the following:

1. A diagnosis of a silica-related disease based on findings by a qualified physician and credible evidence of identifiable exposure, to silica resulting from substantial occupational exposure, or exposure brought into the home of the claimant by a person with substantial occupational exposure;

2. Evidence verifying that the qualified physician signing the detailed narrative medical report and diagnosis has concluded that exposure was a substantial contributing factor to the medical findings and impairment and not more probably the result of other causes. An opinion stating that the medical findings and impairment are "consistent with" or "compatible with" exposure to silica, or words to that effect, do not satisfy the requirements of this subsection; and

3. The court holds an evidentiary hearing and finds that the claimant has established a prima facie showing of physical impairment to which exposure was a substantial contributing factor.

K. COMPLIANCE WITH TECHNICAL STANDARDS. Evidence relating to physical impairment under the Asbestos and Silica Claims Priorities Act, including pulmonary function testing and diffusing studies, shall:

1. Comply with the quality controls, equipment requirements, methods of calibration and techniques set forth in the AMA's Guides to the Evaluation of Permanent Impairment and all standards set forth in the Official Statements of the American Thoracic Society

which are in effect on the date of any examination or pulmonary function testing of the exposed person required by the Asbestos and Silica Claims Priorities act;

2. Not be obtained and may not be based on testing or examinations that violate any law, regulation, licensing requirement, or medical code of practice of the state in which the examination, test, or screening was conducted, or of this state; and

3. Not be obtained under the condition that the claimant retains the legal services of the attorney or law firm sponsoring the examination, test, or screening.

L. PREMISES OWNERS. In any asbestos or silica claim, a premises owner, or any entity performing any operations on a premises, is not liable to a plaintiff for asbestos or silica claims unless that plaintiff's alleged exposure occurred while the exposed person was at the premises.

SECTION 83. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 68 of Title 76, unless there is created a duplication in numbering, reads as follows:

PROCEDURES. A. NO PRESUMPTION AT TRIAL. Evidence relating to the prima facie showings required under the Asbestos and Silica Claims Priorities Act shall not create any presumption that the claimant has an asbestos- or silica-related injury or impairment, and shall not be conclusive as to the liability of any defendant.

B. ADMISSIBILITY OF EVIDENCE. No evidence shall be offered at trial, and the jury shall not be informed of:

1. The grant or denial of a motion to dismiss an asbestos or silica claim under the provisions of the Asbestos and Silica Claims Priorities Act; or

2. The provisions of the Asbestos and Silica Claims Priorities Act with respect to what constitutes a prima facie showing of asbestos- or silica-related impairment.

C. DISCOVERY. Until such time as the trial court enters an order determining that the claimant has established prima facie evidence of impairment, no asbestos or silica claim shall be subject to discovery, except discovery related to establishing or challenging the prima facie evidence or by order of the trial court upon motion of one of the parties and for good cause shown.

D. CONSOLIDATION. 1. A court may consolidate for trial any number and type of asbestos or silica claims with the consent of all the parties. In the absence of such consent, the court may consolidate for trial only asbestos claims or silica claims relating to the exposed person and members of the household of the exposed person.

2. No class action or any other form of mass-aggregation claim filing relating to more than one exposed person, except claims relating to the exposed person and member of the household of the exposed person, shall be permitted for asbestos or silica claims.

3. The provisions of this section do not preclude consolidation of cases by court order for pretrial or discovery purposes.

SECTION 84. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 68 of Title 76, unless there is created a duplication in numbering, reads as follows:

STATUTE OF LIMITATIONS; TWO-DISEASE RULE. A. STATUTE OF LIMTATIONS. 1. With respect to an asbestos or silica claim not barred by limitations in this state as of the effective date of the Asbestos and Silica Claims Priorities Act, a claimant’s cause of action shall not accrue, nor shall the running of limitations commence, prior to the earlier of the date:

a. the exposed person received a medical diagnosis of an asbestos-related impairment or silica-related impairment,

b. the exposed person discovered facts that would have led a reasonable person to obtain a medical diagnosis with respect to the existence of an asbestos-related impairment or silica-related impairment, or

c. the date of death of the exposed person having an asbestos-related or silica-related impairment.

2. Nothing in the section shall be construed to revive or extend limitations with respect to any claim for asbestos-related impairment or silica-related impairment that was otherwise time-barred as a matter of applicable state law as of November 1, 2009.

3. Nothing in this section shall be construed so as to adversely affect, impair, limit, modify or nullify any settlement or other agreements with respect to an asbestos or silica claim entered into prior to November 1, 2009.

B. TWO-DISEASE RULE. An asbestos or silica claim arising out of a nonmalignant condition shall be a distinct cause of action from a claim for an asbestos-related or silica-related cancer. Where otherwise permitted under state law, no damages shall be awarded for fear or increased risk of future disease in any civil action asserting an asbestos or silica claim.

SECTION 85. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 69 of Title 76, unless there is created a duplication in numbering, reads as follows:

EFFECTIVE DATE. The Asbestos and Silica Claims Priorities Act shall apply to all asbestos or silica claims filed on or after November 1, 2009. The Asbestos and Silica Claims Priorities Act shall also apply to any pending asbestos or silica claims in which trial has not commenced by November 1, 2009, except that any provisions of these sections which would be unconstitutional if applied retroactively shall be applied prospectively.

SECTION 86. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 70 of Title 76, unless there is created a duplication in numbering, reads as follows:

SHORT TITLE. Sections 86 through 93 of this act shall be known and may be cited as the "Innocent Successor Asbestos-Related Liability Fairness Act".

SECTION 87. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 71 of Title 76, unless there is created a duplication in numbering, reads as follows:

DEFINITIONS. As used in the Innocent Successor Asbestos-Related Liability Fairness Act:

1. "Asbestos claim" means any claim, wherever or whenever made, for damages, losses, indemnification, contribution, or other relief arising out of, based on, or in any way related to asbestos, including:

a. the health effects of exposure to asbestos, including any claim for:

(1) personal injury or death,

(2) mental or emotional injury,

(3) risk of disease or other injury, or

(4) the costs of medical monitoring or surveillance,

b. any claim made by or on behalf of any person exposed to asbestos, or a representative, spouse, parent, child, or other relative of the person, and

c. any claim for damage or loss caused by the installation, presence, or removal of asbestos;

2. "Corporation" means a corporation for profit, including a domestic corporation organized under the laws of this state, or a foreign corporation organized under laws other than the laws of this state;

3. "Innocent successor" means a corporation that assumes or incurs or has assumed or incurred successor asbestos-related liabilities that is a successor and became a successor before January 1, 1972, or is any of that successor corporation's successors, and that after a merger or consolidation did not continue in the business of mining asbestos, in the business of selling or distributing asbestos fibers, or in the business of manufacturing, distributing, removing, or installing asbestos-containing products that were the same or substantially the same as those products previously manufactured, distributed, removed, or installed by the transferor;

4. "Successor asbestos-related liabilities" means any liabilities, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due, which are related to asbestos claims and were assumed or incurred by a corporation as a result of or in connection with a merger or consolidation, or the plan of merger or consolidation related to the merger or consolidation with or into another corporation, or that are related in any way to asbestos claims based on the exercise of control or the ownership of

stock of the corporation before the merger or consolidation. The term includes liabilities that, after the time of the merger or consolidation for which the fair market value of total gross assets is determined pursuant to Section 90 of this act, were or are paid or otherwise discharged, or committed to be paid or otherwise discharged, by or on behalf of the corporation, or by a successor of the corporation, or by or on behalf of a transferor, in connection with settlements, judgments, or other discharges in this state or another jurisdiction; and

5. “Transferor” means a corporation from which successor asbestos-related liabilities are or were assumed or incurred.

SECTION 88. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 72 of Title 76, unless there is created a duplication in numbering, reads as follows:

APPLICABILITY. A. The limitations in Section 89 of this act shall apply to any innocent successor corporation.

B. The limitations in Section 89 of this act shall not apply to:

1. Workers’ compensation benefits paid by or on behalf of an employer to an employee under this state’s Workers’ Compensation Act or a comparable workers’ compensation law of another jurisdiction;

2. Any claim against a corporation that does not constitute a successor asbestos-related liability; or

3. Any obligations under the National Labor Relations Act, 29 U.S.C., Section 151 et seq., as amended, or under any collective bargaining agreement.

SECTION 89. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 73 of Title 76, unless there is created a duplication in numbering, reads as follows:

LIMITATIONS ON SUCCESSOR ASBESTOS-RELATED LIABILITIES. A. Except as further limited in subsection B of this section, the cumulative successor asbestos-related liabilities of an innocent successor corporation are limited to the fair market value of the total gross assets of the transferor determined as of the time of the merger or consolidation. The innocent successor corporation does not have any responsibility for successor asbestos-related liabilities in excess of this limitation.

B. If the transferor had assumed or incurred successor asbestos-related liabilities in connection with a prior merger or consolidation with a prior transferor, then the fair market value of the total assets of the prior transferor, determined as of the time of such earlier merger or consolidation, shall be substituted for the limitation set forth in subsection A of this section for purposes of determining the limitation of liability of an innocent successor corporation.

SECTION 90. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 74 of Title 76, unless there is created a duplication in numbering, reads as follows:

ESTABLISHING FAIR MARKET VALUE OF TOTAL GROSS ASSETS. A. An innocent successor corporation may establish the fair market value of total gross assets for the purpose of the limitations under Section 89 of this act through any method reasonable under the circumstances, including:

1. By reference to the going concern value of the assets or to the purchase price attributable to or paid for the assets in an arm’s-length transaction; or

2. In the absence of other readily available information from which fair market value can be determined, by reference to the value of the assets recorded on a balance sheet.

B. Total gross assets include intangible assets.

C. To the extent total gross assets include any liability insurance issued to the transferor whose assets are being valued for the purposes of this section, the applicability, terms, conditions, and limits of such insurance shall not be affected by this act, nor shall the Innocent Successor Asbestos-Related Liability Fairness Act otherwise affect the rights and obligations of a transferor, successor, or insurer under any insurance contract and/or any related agreements, including, without limitation, rights and obligations under preenactment settlements between a transferor or

successor and its insurers resolving liability insurance coverage, and the rights of an insurer to seek payment for applicable deductibles, retrospective premiums or self-insured retentions or to seek contribution from a successor for uninsured or self-insured periods or periods where insurance is uncollectible or otherwise unavailable. Without limiting the foregoing, to the extent total gross assets include any such liability insurance, a settlement of a dispute concerning any such liability insurance coverage entered into by a transferor or successor with the insurers of the transferor before the effective date of the Innocent Successor Asbestos-Related Liability Fairness Act shall be determinative of the total coverage of such liability insurance to be included in the calculation of the transferor's total gross assets.

SECTION 91. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 75 of Title 76, unless there is created a duplication in numbering, reads as follows:

ADJUSTMENT. A. Except as provided in subsections B, C, and D of this section, the fair market value of total gross assets at the time of a merger or consolidation increases annually at a rate equal to the sum of:

1. The prime rate as listed in the first edition of "The Wall Street Journal" published for each calendar year since the merger or consolidation, unless the prime rate is not published in that edition of "The Wall Street Journal", in which case any reasonable

determination of the prime rate on the first day of the year may be used; and

2. One percent (1%).

B. The rate provided for in subsection A of this section shall not be compounded.

C. The adjustment of fair market value of total gross assets continues as provided under subsection A of this section until the date the adjusted value is first exceeded by the cumulative amounts of successor asbestos-related liabilities paid or committed to be paid by or on behalf of the innocent successor corporation or a predecessor, or by or on behalf of a transferor, after the time of the merger or consolidation for which the fair market value of total gross assets is determined.

D. No adjustment of the fair market value of total gross assets shall be applied to any liability insurance that may be included in the definition of total gross assets by subsection C of Section 90 of this act.

SECTION 92. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 76 of Title 76, unless there is created a duplication in numbering, reads as follows:

SCOPE OF ACT. The courts of this state shall construe the provisions of the Innocent Successor Asbestos-Related Liability Fairness Act liberally with regard to innocent successors.

SECTION 93. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 77 of Title 76, unless there is created a duplication in numbering, reads as follows:

EFFECTIVE DATE. The Innocent Successor Asbestos-Related Liability Fairness Act shall apply to all asbestos claims filed against an innocent successor on or after the effective date of the Innocent Successor Asbestos-Related Liability Fairness Act. The Innocent Successor Asbestos-Related Liability Fairness Act shall also apply to any pending asbestos claims against an innocent successor in which trial has not commenced as of the effective date of the Innocent Successor Asbestos-Related Liability Fairness Act, except that any provisions of these sections which would be unconstitutional if applied retroactively shall be applied prospectively.

SECTION 94. REPEALER Section 1, Chapter 368, O.S.L. 2004 (5 O.S. Supp. 2008, Section 7.1), is hereby repealed.

SECTION 95. REPEALER Section 4, Chapter 390, O.S.L. 2003, Section 6, Chapter 390, O.S.L. 2003, as amended by Section 21, Chapter 368, O.S.L. 2004 and Section 22, Chapter 368, O.S.L. 2004 (63 O.S. Supp. 2008, Sections 1-1708.1D, 1-1708.1F and 1-1708.1F-1), are hereby repealed.

SECTION 96. REPEALER Section 19, Chapter 473, O.S.L. 2003 (63 O.S. Supp. 2008, Section 6602), is hereby repealed.

SECTION 97. The provisions of this act are severable and if any part or provision shall be held void the decision of the court so holding shall not affect or impair any of the remaining parts or provisions of this act.

SECTION 98. This act shall become effective November 1, 2009.

Passed the House of Representatives the 4th day of March, 2009.

_________________________________
Presiding Officer of the House of Representatives

Passed the Senate the ____ day of __________, 2009.

_________________________________
Presiding Officer of the Senate

# Exhibit 8

ENROLLED HOUSE
BILL NO. 1603

By: Sullivan, McCullough, Derby, Osborn, Faught, Ritze, Dank, McDaniel (Randy) and Wright (John) of the House

and

Coffee, Jolley, Sykes, Branan, Schulz, Brogdon, Lamb, Justice, Barrington, Mazzei, Bingman, Crain, Halligan, Ford, Johnson (Mike), Reynolds, Myers, Stanislawski and Marlatt of the Senate

An Act relating to civil procedure; creating the Comprehensive Lawsuit Reform Act of 2009; requiring filing of certain affidavit with petition in professional negligence actions; providing contents; providing for time extensions for filing of affidavit; requiring plaintiff to provide defendant with certain information; providing for dismissal of action without prejudice in certain circumstances; authorizing the court to decline to exercise jurisdiction under the doctrine of forum non conveniens; providing factors to be considered; authorizing a plaintiff to request an indigency exemption from requirement to file certain affidavit; providing procedure; requiring payment of application fee and establishing amount; authorizing deferral of all or part of fee in certain circumstances; providing for deposit of fees into the Court Clerk's Revolving Fund; requiring quarterly reports; requiring promulgation of rules governing determination of indigency; providing procedure for determination of indigency; amending 12 O.S. 2001, Sections 683 and 684, as amended by Sections 3 and 4, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Sections 683 and 684), which relate to dismissal; modifying procedure for dismissals; authorizing the court to order payment of costs; amending Section 7, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Section 727.1), which relates to interest on judgments; modifying time of accrual of prejudgment interest on certain actions; modifying method of computing

interest; amending 12 O.S. 2001, Section 990.4, as last amended by Section 6, Chapter 1, O.S.L. 2005 (12 O.S. Supp. 2008, Section 990.4), which relates to stays of enforcement of judgments; modifying grounds for obtaining stay of enforcement; limiting amount of appeal bond; authorizing the court to enter certain orders; providing that appeal bonds shall not be required for appeals of punitive damages after a certain date; amending 12 O.S. 2001, Section 993, which relates to appeals from certain orders; modifying grounds for interlocutory appeals; providing for recovery of certain payments; providing procedures; providing for computations; providing for determination of recovery amounts; granting certain authority to the Oklahoma Health Care Authority; amending 12 O.S. 2001, Sections 2004, as amended by Section 7, Chapter 402, O.S.L. 2002, 2008, 2009, 2011, as amended by Section 10, Chapter 368, O.S.L. 2004, Section 1, Chapter 370, O.S.L. 2004, as amended by Section 10, Chapter 12, O.S.L. 2007 and 2023 (12 O.S. Supp. 2008, Sections 2004, 2011 and 2011.1), which relate to the Oklahoma Pleading Code; providing that action is dismissed without prejudice if service of process is not timely; modifying monetary threshold for which amount of damages is not specified; providing for motions to clarify damages for limited purpose; providing for amended pleading in certain circumstances; modifying definition; providing requirements for orders entered after certain date certifying class action; providing for review of orders; providing for trial court jurisdiction over class action cases; providing for notice for class action cases; modifying notice requirements; limiting class membership; requiring court approval for proposed settlement, voluntary dismissal or compromise in class actions; providing procedures and requirements for motions filed after certain date; providing procedure for appointment of class counsel; providing factors to be considered in appointment of class counsel; authorizing certain orders by the court regarding class counsel; providing for interim counsel; providing for award of attorney fees and nontaxable costs in class actions; providing procedure and requirements for claims for award of attorney fees and costs; providing factors

to be considered in motions filed after certain date; providing for appointment of counsel or referral of issue of referee; providing requirements for appointed attorney; providing factor to be considered in determining fair and reasonable fee; providing for noncash payments in certain circumstances; providing procedure for summary judgment; amending 12 O.S. 2001, Sections 2702 and 2703, as amended by Section 55, Chapter 468, O.S.L. 2002 (12 O.S. Supp. 2008, Section 2703), which relate to the Oklahoma Evidence Code; providing requirements for expert testimony; providing that certain facts or data shall not be disclosed to the jury, with exception; amending 12 O.S. 2001, Section 3226, as last amended by Section 3, Chapter 519, O.S.L. 2004 (12 O.S. Supp. 2008, Section 3226), which relates to discovery; authorizing certain initial disclosures; exempting certain categories of procedures from initial disclosure; providing times for disclosures; providing for objections; providing information to be used in making initial disclosures; amending Section 17, Chapter 139, O.S.L. 2005 (12A O.S. Supp. 2008, Section 1-304), which relates to the obligation of good faith; providing that a breach of the obligations of good faith shall not give rise to a separate tort cause of action; requiring the Supreme Court to establish qualification rules for determination of indigency by a certain date; amending Section 18, Chapter 368, O.S.L. 2004 (23 O.S. Supp. 2008, Section 15), which relates to joint and several liability in civil actions based on fault and not arising out of contract; modifying exemption; modifying exclusion from application; providing for compensation in civil actions arising from claims of bodily injury; providing that economic damages shall not be subject to limitation; providing limit on amount of noneconomic damages, with exceptions; providing there shall be no limit on noneconomic damages in certain circumstances; requiring the jury to return a general verdict accompanied by specific answers to interrogatories; providing procedures for entering judgments; providing procedures regarding determination of noneconomic damages; providing exclusion for actions brought under The Governmental Tort Claims Act and for wrongful death actions;

defining terms; providing for Health Care Indemnity Fund awards; stating legislative intent; creating the Health Care Indemnity Fund Task Force; stating purpose; providing duties; providing for composition; providing for meetings; providing for travel reimbursement; authorizing hiring of actuarial and other professional services; requiring quorum for final action; requiring report by certain date; amending 47 O.S. 2001, Sections 11-1112, as last amended by Section 1, Chapter 361, O.S.L. 2005 and 12-420, as amended by Section 13, Chapter 50, O.S.L. 2005 (47 O.S. Supp. 2008, Sections 11-1112 and 12-420), which relate to child passenger restraint systems and seat belts; eliminating prohibitions against admissibility of certain evidence in civil actions unless plaintiff is under certain age; amending 63 O.S. 2001, Section 1-1709.1, as last amended by Section 2, Chapter 558, O.S.L. 2004 (63 O.S. Supp. 2008, Section 1-1709.1), which relates to peer review information; modifying definition; modifying information that is not private, confidential and privileged; providing that certain information shall not be subject to discovery; modifying information that is subject to discovery; amending 63 O.S. 2001, Sections 683.9 and 683.13, as amended by Sections 9 and 12, Chapter 329, O.S.L. 2003 (63 O.S. Supp. 2008, Sections 683.9 and 683.13), which relate to the Emergency Management Act of 2003; modifying definition; providing certain exclusion; creating the Uniform Emergency Volunteer Health Practitioners Act; providing short title; defining terms; providing for application; authorizing the State Department of Health to regulate volunteer health practitioners in a declared emergency; requiring certain consultation and compliance of specified host entities; setting requirements for a volunteer health practitioner registration system; permitting certain confirmation; requiring certain notification; authorizing host entities to refuse the services of a volunteer health practitioner; permitting certain volunteer health practitioners to practice in this state during a declared emergency; prohibiting certain volunteer health practitioners from certain protections; defining terms; clarifying credentialing or privileging standards; requiring

adherence to certain scopes of practice; prohibiting the providing of services outside a practitioner’s scope of practice; authorizing the Department or a host entity to restrict certain services; providing certain protection; permitting certain licensing boards to impose administrative sanctions; requiring certain reporting; requiring certain consideration; providing for certain rights, privileges or immunities; permitting the Department to incorporate certain volunteer health practitioners; authorizing the State Board of Health to promulgate rules; requiring consideration for uniformity; amending 76 O.S. 2001, Section 31, which relates to civil immunity for volunteers; modifying definition; modifying circumstances under which immunity exists; creating the Common Sense Consumption Act; providing short title; stating legislative intent; defining terms; providing immunity from civil liability for certain claims; providing exception; providing pleading requirements; providing for stay of discovery and other proceedings in certain circumstances; providing scope of claims covered; amending 76 O.S. 2001, Section 50.2, which relates to the Oklahoma Livestock Activities Liability Limitation Act; modifying definitions; adding definition; stating legislative findings; limiting liability of certain manufacturers; limiting liability of certain associations; clarifying applicability of certain provisions; providing that a manufacturer or seller shall not be liable for inherently unsafe products; providing that claim that product is inherently unsafe is affirmative defense; providing procedures and requirements for defense to apply; defining term; making evidence regarding measures taken after injury inadmissible; creating the Asbestos and Silica Claims Priorities Act; providing legislative findings; stating purposes; defining terms; providing elements of proof and proceedings for asbestos or silica claims; providing that certain evidence does not create a presumption; providing that certain evidence is inadmissible; providing for discovery; providing for consolidation of claims; authorizing the court to decline to exercise jurisdiction in certain circumstances; providing for venue; providing a statute of

limitations; establishing two-disease rule; providing scope of applicability of the Asbestos and Silica Claims Priorities Act; creating the Innocent Successor Asbestos-Related Liability Fairness Act; defining terms; providing limitations on successor asbestos-related liabilities; providing method for establishing fair market value of gross assets; providing for adjustment of fair market value; providing scope of act; providing date of application; prohibiting certain persons from being involved in due process hearings; creating the School Protection Act; stating purpose; defining terms; prohibiting certain acts and providing penalties therefor; providing for award of costs and reasonable attorney fees, with exception; authorizing expert witness fees; providing that insurance policies do not constitute waiver of any defense; prohibiting certain acts and making violations subject to out-of-school suspension; providing penalty is in addition to criminal liability; providing that certain education employees shall be entitled to leave of absence without loss of benefits; providing that the School Protection Act is in addition to and does not limit or amend The Governmental Tort Claims Act; amending 70 O.S. 2001, Section 24-101.3, as last amended by Section 2, Chapter 210, O.S.L. 2006 (70 O.S. Supp. 2008, Section 24-101.3), which relates to out-of-school suspensions; requiring out-of-school suspension for certain acts; amending 51 O.S. 2001, Section 155, as last amended by Section 1, Chapter 381, O.S.L. 2004 (51 O.S. Supp. 2008, Section 155), which relates to The Governmental Tort Claims Act; expanding grounds for which the state or a political subdivision shall not be liable; repealing Section 1, Chapter 368, O.S.L. 2004 (5 O.S. Supp. 2008, Section 7.1), which relates to attorney fees in class actions; repealing Sections 5 and 7, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2008, Sections 1-1708.1E and 1-1708.1G), which relate to the Affordable Access to Health Care Act; repealing Section 19, Chapter 473, O.S.L. 2003 (63 O.S. Supp. 2008, Section 6602), which relates to licensing and appointment of health personnel during catastrophic health emergencies; providing for severability; providing for codification; and providing an effective date.

BE IT ENACTED BY THE PEOPLE OF THE STATE OF OKLAHOMA:

SECTION 1. NEW LAW A new section of law not to be codified in the Oklahoma Statutes reads as follows:

This act shall be known and may be cited as the "Comprehensive Lawsuit Reform Act of 2009".

SECTION 2. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 19 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. 1. In any civil action for professional negligence, except as provided in subsection B of this section, the plaintiff shall attach to the petition an affidavit attesting that:

a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,

b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the determination of the expert that, based upon a review of the available material including, but not limited to, applicable medical records, facts or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the defendant against whom the action is brought constituted professional negligence, and

c. on the basis of the review and consultation of the qualified expert, the plaintiff has concluded that the claim is meritorious and based on good cause.

2. If the civil action for professional negligence is filed:

a. without an affidavit being attached to the petition, as required in paragraph 1 of this subsection, and

b. no extension of time is subsequently granted by the court, pursuant to subsection B of this section,

the court shall, upon motion of the defendant, dismiss the action without prejudice to its refiling.

3. The written opinion from the qualified expert shall state the acts or omissions of the defendant or defendants that the expert then believes constituted professional negligence and shall include reasons explaining why the acts or omissions constituted professional negligence. The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.

B. 1. The court may, upon application of the plaintiff for good cause shown, grant the plaintiff an extension of time, not exceeding ninety (90) days after the date the petition is filed, except for good cause shown, to file in the action an affidavit attesting that the plaintiff has obtained a written opinion from a qualified expert as described in paragraph 1 of subsection A of this section.

2. If on the expiration of an extension period described in paragraph 1 of this subsection, the plaintiff has failed to file in the action an affidavit as described above, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling. If good cause is shown, the resulting extension shall in no event exceed sixty (60) days.

C. 1. Upon written request of any defendant in a civil action for professional negligence, the plaintiff shall, within ten (10) business days after receipt of such request, provide the defendant with:

a. a copy of the written opinion of a qualified expert mentioned in an affidavit filed pursuant to subsection A or B of this section, and

b. an authorization from the plaintiff in a form that complies with applicable state and federal laws, including the Health Insurance Portability and Accountability Act of 1996, for the release of any and all medical records related to the plaintiff for a period commencing five (5) years prior to the incident that is at issue in the civil action for professional negligence.

2. If the plaintiff fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the defendant, unless

good cause is shown for such failure, dismiss the action without prejudice to its refiling.

D. A plaintiff in a civil action for professional negligence may claim an exemption to the provisions of this section based on indigency pursuant to the qualification rules established as set forth in Section 4 of this act.

SECTION 3. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 140.2 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. If the court, upon motion by a party or on the court's own motion, finds that, in the interest of justice and for the convenience of the parties, an action would be more properly heard in another forum either in this state or outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay, transfer or dismiss the action.

B. In determining whether to grant a motion to stay, transfer or dismiss an action pursuant to this section, the court shall consider:

1. Whether an alternate forum exists in which the action may be tried;

2. Whether the alternate forum provides an adequate remedy;

3. Whether maintenance of the action in the court in which the case is filed would work a substantial injustice to the moving party;

4. Whether the alternate forum can exercise jurisdiction over all the defendants properly joined in the action of the plaintiff;

5. Whether the balance of the private interests of the parties and the public interest of the state predominate in favor of the action being brought in an alternate forum; and

6. Whether the stay, transfer or dismissal would prevent unreasonable duplication or proliferation of litigation.

SECTION 4. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 192 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. When a plaintiff requests an indigency exemption from providing an affidavit of merit in a civil action for professional negligence pursuant to Section 2 of this act, such person shall submit an appropriate application to the court clerk, on a form created by the Administrative Director of the Courts, which shall state that the application is signed under oath and under the penalty of perjury and that a false statement may be prosecuted as such. A nonrefundable application fee of Forty Dollars ($40.00) shall be paid to the court clerk at the time the application is submitted, and no application shall be accepted without payment of the fee; except that the court may, based upon the financial information submitted, defer all or part of the fee if the court determines that the person does not have the financial resources to pay the fee at time of application. Any fees collected pursuant to this subsection shall be retained by the court clerk, deposited in the Court Clerk's Revolving Fund, and reported quarterly to the Administrative Office of the Courts.

B. 1. The Supreme Court shall promulgate rules governing the determination of indigency pursuant to the provisions of Section 22 of this act. The initial determination of indigency shall be made by the Chief Judge of the Judicial District or a designee thereof, based on the plaintiff's application and the rules provided herein.

2. Upon promulgation of the rules required by law, the determination of indigency shall be subject to review by the Presiding Judge of the Judicial Administrative District.

SECTION 5. AMENDATORY 12 O.S. 2001, Section 683, as amended by Section 3, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Section 683), is amended to read as follows:

Section 683. Except as provided in Section ~~5~~ 684.1 of this ~~act~~ title, an action may be dismissed, without prejudice to a future action:

1. By the plaintiff, before the final submission of the case to the jury, or to the court, where the trial is by the court;

2. By the court, where the plaintiff fails to appear on the trial;

3. By the court, for the want of necessary parties;

4. By the court, on the application of some of the defendants, where there are others whom the plaintiff fails to prosecute with diligence;

5. By the court, for disobedience by the plaintiff of an order concerning the proceedings in the action; and

6. In all other cases, upon the trial of the action, the decision must be upon the merits.

SECTION 6. AMENDATORY 12 O.S. 2001, Section 684, as amended by Section 4, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Section 684), is amended to read as follows:

Section 684. A. ~~Except as provided in Section 5 of this act, an~~ An action may be dismissed ~~on the payment of costs and~~ by the plaintiff without an order of court by ~~the plaintiff~~ filing a notice of dismissal at any time before ~~a petition of intervention or answer praying for affirmative relief against the plaintiff is filed in the action. A plaintiff may, at any time before the trial is commenced, on payment of the costs and without any order of court, dismiss the action after the filing of a petition of intervention or answer praying for affirmative relief, but such dismissal shall not prejudice the right of the intervenor or defendant to proceed with the action. Any defendant or intervenor may, in like manner, dismiss an action against the plaintiff, without an order of court, at any time before the trial is begun, on payment of the costs made on the claim filed by the defendant or intervenor. All parties to a civil action may at any time before trial, without an order of court, and on payment of costs, by agreement, dismiss the action.~~

~~B. Such dismissal shall be in writing and signed by the party or the attorney for the party, and shall be filed with the clerk of the district court where the action is pending, who shall note the fact on the proper record: Provided, such dismissal shall be held to be without prejudice, unless the words "with prejudice" be expressed therein.~~

~~C. When an action is dismissed after a jury in the action is empanelled and the case is subsequently refiled, the court, at the conclusion of the subsequent action, may assess costs and attorney fees incurred in the previous action by the defendants subsequent to the jury being empanelled~~ pretrial. After the pretrial hearing, an action may only be dismissed by agreement of the parties or by the

court. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice.

B. Except as provided in subsection A of this section, an action shall not be dismissed at the plaintiff's request except upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaims can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this subsection is without prejudice.

C. For failure of the plaintiff to prosecute or to comply with the provisions of this section or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.

D. The provisions of this section apply to the dismissal of any counterclaim, cross-claim, or third-party claim. A voluntary dismissal by the claimant alone pursuant to subsection A of this section shall be made before a responsive pleading is served or, if there is none, before the introduction of evidence at the trial or hearing.

If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

SECTION 7. AMENDATORY Section 7, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Section 727.1), is amended to read as follows:

Section 727.1

POSTJUDGMENT INTEREST

A. 1. Except as otherwise provided by this section, all judgments of courts of record, including costs and attorney fees authorized by statute or otherwise and allowed by the court, shall bear interest at a rate prescribed pursuant to this section.

2. Costs and attorney fees allowed by the court shall bear interest from the earlier of the date the judgment or order is pronounced, if expressly stated in the written judgment or order awarding the costs and attorney fees, or the date the judgment or order is filed with the court clerk.

B. Judgments, including costs and attorney fees authorized by statute or otherwise and allowed by the court, against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, shall bear interest during the term of judgment at a rate prescribed pursuant to this section from the date of rendition. No judgment against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, inclusive of postjudgment interest, shall exceed the total amount of liability of the governmental entity pursuant to The Governmental Tort Claims Act.

C. The postjudgment interest authorized by subsection A or subsection B of this section shall accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk, and shall initially accrue at the rate in effect for the calendar year during which the judgment is rendered until the end of the calendar year in which the judgment was rendered, or until the judgment is paid, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the judgment is paid, whichever first occurs, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. For each succeeding calendar year, or part of a calendar year, during which a judgment remains unpaid, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. A separate computation using the interest rate in effect for judgments as provided by subsection I of this section shall be made for each calendar year, or part of a calendar year, during which the judgment remains unpaid in order to determine the total amount of interest for which the judgment debtor is liable. The postjudgment interest rate for each calendar year or part of a calendar year a judgment remains unpaid shall be multiplied by the original amount of the judgment, including any prejudgment interest, together with postjudgment interest previously accrued. Interest shall accrue on a judgment in the manner prescribed by this subsection until the judgment is satisfied or released.

D. If a rate of interest is specified in a contract, the rate specified shall apply and be stated in the journal entry of judgment. The rate of interest shall not exceed the lawful rate for that obligation. Postjudgment interest shall be calculated and accrued in the same manner as prescribed in subsection C of this section.

PREJUDGMENT INTEREST

E. Except as provided by subsection F of this section ~~or Section 1-1708.1G of Title 63 of the Oklahoma Statutes~~, beginning November 1, 2009, if a verdict for damages by reason of personal injuries or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another is accepted by the trial court, the court in rendering judgment shall add interest on the verdict at a rate prescribed pursuant to subsection I of this section from the date which is twenty-four (24) months after the suit resulting in the judgment was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk. No prejudgment interest shall begin to accrue until twenty-four (24) months after the suit resulting in the judgment was commenced. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year ~~in~~ which is twenty-four (24) months after the suit resulting in the judgment ~~is~~ was commenced. This rate shall be in effect until the end of the calendar year in which ~~the suit resulting in judgment was filed~~ interest begins to accrue or until the date judgment is filed, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the date the judgment is filed, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of all prejudgment interest has been completed, the total amount of prejudgment interest shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection A of this section.

F. If a verdict of the type described by subsection E of this section is rendered against this state or its political

subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, the judgment shall bear interest at the rate prescribed pursuant to subsection I of this section from the date the suit was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment or the date the judgment is filed with the court clerk. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year in which the suit resulting in the judgment is commenced. This rate shall be in effect until the end of the calendar year in which the suit resulting in judgment was filed or until the date the judgment is rendered as expressly stated in the judgment, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the date judgment is rendered, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of prejudgment interest has been completed, the amount shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection B of this section. No award of prejudgment interest against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, including the amount of the judgment awarded pursuant to trial of the action, shall exceed the total amount of liability of the governmental entity pursuant to The Governmental Tort Claims Act.

G. If exemplary or punitive damages are awarded in an action for personal injury or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another, the interest on that award shall begin to accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk.

H. If a judgment is rendered establishing the existence of a lien against property and no rate of interest exists, the court shall allow prejudgment interest at a rate prescribed pursuant to

subsection I of this section from the date the lien is filed to the date of verdict.

I. For purposes of computing ~~either~~ postjudgment interest ~~or prejudgment interest~~ as authorized by this section, interest shall be the prime rate, as listed in the first edition of the Wall Street Journal published for each calendar year and as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day following publication in January of each year, plus two percent (2%). <u>For purposes of computing prejudgment interest as authorized by this section, interest shall be determined using a rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year.</u>

J. For purposes of computing postjudgment interest, the provisions of this section shall be applicable to all judgments of the district courts rendered on or after January 1, 2005. Effective January 1, 2005, the method for computing postjudgment interest prescribed by this section shall be applicable to all judgments remaining unpaid rendered prior to January 1, 2005.

K. For purposes of computing prejudgment interest, the provisions of this section shall be applicable to all actions which are filed in the district courts on or after January 1, ~~2005~~ <u>2010</u>, for which an award of prejudgment interest is authorized by the provisions of this section.

SECTION 8. AMENDATORY 12 O.S. 2001, Section 990.4, as last amended by Section 6, Chapter 1, O.S.L. 2005 (12 O.S. Supp. 2008, Section 990.4), is amended to read as follows:

Section 990.4 A. Except as provided in subsection C of this section, a party may obtain a stay of the enforcement of a judgment, decree or final order:

1. While a ~~post-trial~~ <u>posttrial</u> motion is pending;

2. During the time in which an appeal may be commenced <u>in any court in or outside of this state</u>; or

3. While an appeal is pending <u>in any court in or outside of this state</u>.

Such stay may be obtained by filing with the court clerk a written undertaking and the posting of a supersedeas bond or other security as provided in this section. In the undertaking the appellant shall agree to satisfy the judgment, decree or final order, and pay the costs and interest on appeal, if it is affirmed. The undertaking and supersedeas bond or security may be given at any time. The stay is effective when the bond and the sufficiency of the sureties are approved by the trial court or the security is deposited with the court clerk. The enforcement of the judgment, decree or order shall no longer be stayed, and the judgment, decree or order may be enforced against any surety on the bond or other security:

1. If neither a ~~post-trial~~ posttrial motion nor a petition in error is filed, and the time for appeal has expired;

2. If a ~~post-trial~~ posttrial motion is no longer pending, no petition in error has been filed, and the time for appeal has expired; or

3. If an appeal is no longer pending.

B. The amount of the bond or other security shall be as follows:

1. When the judgment, decree or final order is for payment of money:

a. Subject to the limitations hereinafter provided, the bond shall be double the amount of the judgment, decree or final order, unless the bond is executed or guaranteed by a surety as hereinafter provided. The bond shall be for the amount of the judgment, decree or order including costs and interest on appeal where it is executed or guaranteed by an entity with suretyship powers as provided by the laws of Oklahoma.

b. ~~On~~ Upon a showing by the judgment debtor that the judgment debtor is likely to suffer substantial economic harm if required to post bond in the amount required by this paragraph, the court shall balance the likely substantial economic harm to the judgment debtor with the ability of the judgment creditor to collect the judgment in the event the judgment is affirmed on appeal and may lower the bond accordingly. “Substantial economic harm” means insolvency or

creating a significant risk of insolvency. The court shall not lower a bond as provided in this paragraph to the extent there is in effect an insurance policy, or agreement under which a third party is liable to satisfy part or all of the judgment entered and such party is required to post all or part of the bond.

c. Subject to the limitations contained in this paragraph, the bond shall not exceed Twenty-five Million Dollars ($25,000,000.00).

d. Upon ~~lowering~~ limiting the bond ~~as provided in~~ pursuant to subparagraphs b or c of this paragraph, the court shall enter an order enjoining a judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment, but the court shall not make any order that interferes with the judgment debtor's use of assets in the normal course of business~~; and~~. If it is proven by a preponderance of the evidence that the appellant for whom the bond would be or has been limited pursuant to subparagraph b or c of this paragraph likely will be or is intentionally dissipating or diverting assets or engaging in other conduct outside of the ordinary course of its business for the purpose of avoiding payment of the judgment, the court shall enter such orders as are necessary to prevent such conduct including, but not limited to, requiring that a bond be posted equal to the full amount of security required pursuant to this section, without the reduction or limitations allowed by subparagraph b or c of this paragraph.

~~b. instead~~

e. Instead of filing a supersedeas bond, the appellant may obtain a stay by depositing cash with the court clerk in the amount of the judgment or order plus an amount that the court determines will cover costs and interest on appeal. The court shall have discretion to accept United States Treasury notes or general obligation bonds of the State of Oklahoma in lieu of cash. If the court accepts such notes or bonds, it shall make appropriate orders for their safekeeping and maintenance during the stay;

2. When the judgment, decree or final order directs execution of a conveyance or other instrument, the amount of the bond shall be determined by the court. Instead of posting a supersedeas bond or other security, the appellant may execute the conveyance or other instrument and deliver it to the clerk of the court for deposit with a public or private entity for safekeeping, as directed by the court in writing;

3. When the judgment, decree or final order directs the delivery of possession of real or personal property, the bond shall be in an amount, to be determined by the court, that will protect the interests of the parties. The court may consider the value of the use of the property, any waste that may be committed on or to the property during the pendency of the stay, the value of the property, and all costs. When the judgment, decree or final order is for the sale of mortgaged premises and the payment of a deficiency arising from the sale, the bond must also provide for the payment of the deficiency;

4. When the judgment or final order directs the assignment or delivery of documents, they may be placed in the custody of the clerk of the court in which the judgment or order was rendered, for deposit with a public or private entity for safekeeping during the pendency of the stay, as directed by the court in writing, or the bond shall be in such sum as may be prescribed by the court; or

5. In order to protect any monies payable to the Tobacco Settlement Fund as set forth in Section 50 of Title 62 of the Oklahoma Statutes, the bond in any action or litigation brought under any legal theory involving a signatory, successor of a signatory or an affiliate of a signatory to the Master Settlement Agreement dated November 23, 1998, or a signatory, successor of a signatory or an affiliate of a signatory to the Smokeless Tobacco Master Settlement Agreement, also dated November 23, 1998, shall be in an amount not to exceed one hundred percent (100%) of the judgment, exclusive of interest and costs, ten percent (10%) of the net worth of the judgment debtor, or Twenty-five Million Dollars ($25,000,000.00), whichever is less. However, if it is proved by a preponderance of the evidence that the appellant for whom the bond has been limited pursuant to this paragraph is intentionally dissipating or diverting assets outside of the ordinary course of its business for the purpose of avoiding payment of the judgment, the court shall enter such orders as are necessary to prevent dissipation or diversion, including, but not limited to, requiring

that a bond be posted equal to the full amount of security required pursuant to this section. For purposes of this paragraph, “Master Settlement Agreement” shall have the same meaning as that term is defined in paragraph 5 of Section 600.22 of Title 37 of the Oklahoma Statutes, and “Smokeless Tobacco Master Settlement Agreement” means the settlement agreement and related documents entered into on November 23, 1998, by this state and leading United States smokeless tobacco product manufacturers.

C. Subsections A and B of this section shall not apply in actions involving temporary or permanent injunctions, actions for divorce, separate maintenance, annulment, paternity, custody, adoption, or termination of parental rights, or in juvenile matters, ~~post-decree~~ postdecree matrimonial proceedings or habeas corpus proceedings. The trial or appellate court, in its discretion, may stay the enforcement of any provision in a judgment, decree or final order in any of the types of actions or proceedings listed in this subsection during the pendency of the appeal or while any ~~post-trial~~ posttrial motion is pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties. If a temporary or permanent injunction is denied or dissolved, the trial or appellate court, in its discretion, may restore or grant an injunction during the pendency of the appeal and while any ~~post-trial~~ posttrial motions are pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties.

D. In any action not provided for in ~~subsections~~ subsection A, B or C of this section, the court may stay the enforcement of any judgment, decree or final order during the pendency of the appeal or while any ~~post-trial~~ posttrial motion is pending upon such terms as to bond or otherwise as it considers proper for the security of the rights of the parties.

E. The trial court shall have continuing jurisdiction during the pendency of any ~~post-trial~~ posttrial motion and appeal to modify any order it has entered regarding security or other conditions in connection with a stay.

F. The execution of a supersedeas bond shall not be a condition for the granting of a stay of judgment, decree or final order of any judicial tribunal against any county, municipality, or other political subdivision of the State of Oklahoma.

G. Executors, administrators and guardians who have given bond in this state, with sureties, according to law, are not required to provide a supersedeas bond if they are granted a stay of enforcement of a judgment, decree or final order.

H. After an appeal has been decided, but before the mandate has issued, a party whose trial court judgment has been affirmed, may move the appellate court to order judgment on the bond or other security in the amount of the judgment plus interest, appeals costs and allowable appeal-related attorney fees. After mandate has issued, a party who has posted a bond or other security may move for exoneration of the bond or other security only in the trial court; and all motions concerning the bond or other security must be addressed to the trial court.

<u>I. For judgments entered after November 1, 2009, appeal bonds shall not be required for appeals of punitive damages.</u>

SECTION 9. AMENDATORY 12 O.S. 2001, Section 993, is amended to read as follows:

Section 993. A. When an order:

1. Discharges, vacates, or modifies or refuses to discharge, vacate, or modify an attachment;

2. Denies a temporary or permanent injunction, grants a temporary or permanent injunction except where granted at an ex parte hearing, or discharges, vacates, or modifies or refuses to discharge, vacate, or modify a temporary or permanent injunction;

3. Discharges, vacates, or modifies or refuses to discharge, vacate, or modify a provisional remedy which affects the substantial rights of a party;

4. Appoints a receiver except where the receiver was appointed at an ex parte hearing, refuses to appoint a receiver, or vacates or refuses to vacate the appointment of a receiver;

5. Directs the payment of money pendente lite except where granted at an ex parte hearing, refuses to direct the payment of money pendente lite, or vacates or refuses to vacate an order directing the payment of money pendente lite;

6. Certifies or refuses to certify an action to be maintained as a class action; ~~or~~

7. Denies a motion in a class action asserting lack of jurisdiction because an agency of this state has exclusive or primary jurisdiction of the action or a part of the action, or asserting that a party has failed to exhaust administrative remedies, but only if the class is subsequently certified and only as part of the appeal of the order certifying the class action; or

8. Grants a new trial or opens or vacates a judgment or order,

the party aggrieved thereby may appeal the order to the Supreme Court without awaiting the final determination in said cause, by filing the petition in error and the record on appeal with the Supreme Court within thirty (30) days after the order prepared in conformance with Section 696.3 of this title, is filed with the court clerk. If the appellant did not prepare the order, and Section 696.2 of this title required a copy of the order to be mailed to the appellant, and the court records do not reflect the mailing of a copy of the order to the appellant within three (3) days, exclusive of weekends and holidays, after the filing of the order, the petition in error may be filed within thirty (30) days after the earliest date on which the court records show that a copy of the order was mailed to the appellant. The Supreme Court may extend the time for filing the record upon good cause shown.

B. If the order discharges or modifies an attachment or temporary injunction and it becomes operative, the undertaking given upon the allowance of an attachment or temporary injunction shall stay the enforcement of said order and remain in full force until final order of discharge shall take effect.

C. ~~Where~~ If a receiver shall be or has been appointed, upon the appellant filing an appeal bond, with sufficient sureties, in such sum as may have been required of the receiver by the court or a judge thereof, conditioned for the due prosecution of the appeal and the payment of all costs or damages that may accrue to the state or any officer or person by reason thereof, the authority of the receiver shall be suspended until the final determination of the appeal, and if the receiver has taken possession of any property, real or personal, it shall be returned and surrendered to the appellant upon the filing and approval of the bonds.

SECTION 10. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 994.1 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. Recovery against the party that received payment.

1. General rule. Medicaid reduces its recovery to take account of the cost of procuring the judgment or settlement, as provided in this section, if:

a. procurement costs are incurred because the claim is disputed, and

b. those costs are borne by the party against which the Oklahoma Health Care Authority seeks to recover.

2. Special rule. If the Oklahoma Health Care Authority must file suit because the party that received payment opposes the Authority's recovery, the recovery amount is as set forth in subsection E of this section.

B. Recovery against the third-party payer. If the Oklahoma Health Care Authority seeks recovery from the third-party payer, the recovery amount will be no greater than the amount determined under subsection C, D or E of this section.

C. Medicaid payments are less than the judgment or settlement amount. If Medicaid payments are less than the judgment or settlement amount, the recovery is computed as follows:

1. Determine the ratio of the procurement costs to the total judgment or settlement payment;

2. Apply the ratio to the Medicaid payment. The product is the Medicaid share of procurement costs;

3. Subtract the Medicaid share of procurement costs from the Medicaid payments. The remainder is the Medicaid recovery amount.

D. Medicaid payments equal or exceed the judgment or settlement amount. If Medicaid payments equal or exceed the judgment or settlement amount, the recovery amount is the total judgment or settlement payment minus the total procurement costs.

E. The Oklahoma Health Care Authority incurs procurement costs because of opposition to its recovery. If the Oklahoma Health Care Authority must bring suit against the party that received payment because that party opposes the Authority's recovery, the recovery amount is the lower of the following:

1. Medicaid payment; or

2. The total judgment or settlement amount, minus the party's total procurement cost.

F. Medicaid recovery worksheet. The amount to be recovered from the beneficiary is the amount Medicaid paid, less a proportionate share of the costs of procuring the judgment or settlement. The amount to be refunded is determined as follows:

If the Medicaid payment is less than the amount of judgment or settlement:

a. determine the ratio of the Medicaid payments to the total amount of the judgment or settlement,

b. apply this ratio to the costs of procuring the judgment or settlement, including attorney fees, and

c. subtract the Medicaid share of procurement costs from Medicaid payments. The remainder is the amount of reimbursement to be refunded to the Medicaid Program.

Step 1:

$__________________ / $__________________ = __________________

Medicaid Payment / Judgment/Settlement = Ratio (Carry out 6 digits)

Step 2:

__________________ X $__________________ = __________________

Ratio from Step 1 (Carry out 6 digits) X Procurement Costs = Medicaid Share of Procurement Costs

Step 3:

$__________________ - $__________________ = __________________

Medicaid Payment - Medicaid Share of Procurement Costs = Refund to Medicare

G. If the Medicaid payments equal or exceed the amount of the judgment or settlement, subtract the total procurement costs from the judgment or settlement. The remainder is the amount of reimbursement to be refunded to the Medicaid Program. The individual will not be required to refund more than the liability insurance payment minus the procurement costs.

$__________________ - $__________________ = $__________________

| | | |
|---|---|---|
| Judgment/Settlement | Procurement Costs | Refund |

H. The Oklahoma Health Care Authority is authorized to seek from the Centers for Medicare and Medicaid Services any waivers or amendments to existing waivers or to amend the state Medicaid plan in order to accomplish the purposes outlined in this section.

SECTION 11. AMENDATORY 12 O.S. 2001, Section 2004, as amended by Section 7, Chapter 402, O.S.L. 2002 (12 O.S. Supp. 2008, Section 2004), is amended to read as follows:

Section 2004.

PROCESS

A. SUMMONS: ISSUANCE. Upon filing of the petition, the clerk shall forthwith issue a summons. Upon request of the plaintiff separate or additional summons shall issue against any defendants.

B. SUMMONS: FORM.

1. The summons shall be signed by the clerk, be under the seal of the court, contain the name of the court and the names of the parties, be directed to the defendant, state the name and address of the plaintiff's attorney, if any, otherwise, the plaintiff's address, and the time within which these rules require the defendant to appear and defend, and shall notify the defendant that in case of failure to appear, judgment by default will be rendered against the defendant for the relief demanded in the petition.

2. A judgment by default shall not be different in kind from or exceed in amount that prayed for in either the demand for judgment or in cases not sounding in contract in a notice which has been given the party against whom default judgment is sought. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his or her pleadings.

C. BY WHOM SERVED: PERSON TO BE SERVED.

1. SERVICE BY PERSONAL DELIVERY.

a. At the election of the plaintiff, process, other than a subpoena, shall be served by a sheriff or deputy

sheriff, a person licensed to make service of process in civil cases, or a person specially appointed for that purpose. The court shall freely make special appointments to serve all process, other than a subpoena, under this paragraph.

b. A summons to be served by the sheriff or deputy sheriff shall be delivered to the sheriff by the court clerk or an attorney of record for the plaintiff. When a summons, subpoena, or other process is to be served by the sheriff or deputy sheriff of another county, the court clerk shall mail it, together with ~~his~~ the voucher of the court clerk for the fees collected for the service, to the sheriff of that county. The sheriff shall deposit the voucher in the Sheriff's Service Fee Account created pursuant to Section 514.1 of Title 19 of the Oklahoma Statutes. The sheriff or deputy sheriff shall serve the process in the manner that other process issued out of the court of the sheriff's own county is served. A summons to be served by a person licensed to make service of process in civil cases or by a person specially appointed for that purpose shall be delivered by an attorney of record for the plaintiff to such person.

c. Service shall be made as follows:

(1) upon an individual other than an infant who is less than fifteen (15) years of age or an incompetent person, by delivering a copy of the summons and of the petition personally or by leaving copies thereof at the person's dwelling house or usual place of abode with some person then residing therein who is fifteen (15) years of age or older or by delivering a copy of the summons and of the petition to an agent authorized by appointment or by law to receive service of process~~;~~,

(2) upon an infant who is less than fifteen (15) years of age, by serving the summons and petition personally and upon either of the infant's parents or guardian, or if they cannot be found, then upon the person having the care or control

of the infant or with whom the infant lives; and upon an incompetent person by serving the summons and petition personally and upon the incompetent person's guardian,

(3) upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the petition to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant,

(4) upon the United States or an officer or agency thereof in the manner specified by Federal Rule of Civil Procedure 4,

(5) upon a state, county, school district, public trust or municipal corporation or other governmental organization thereof subject to suit, by delivering a copy of the summons and of the petition to the officer or individual designated by specific statute; however, if there is no statute, then upon the chief executive officer or a clerk, secretary, or other official whose duty it is to maintain the official records of the organization, and

(6) upon an inmate incarcerated in an institution under the jurisdiction and control of the Department of Corrections, by delivering a copy of the summons and of the petition to the warden or superintendent or the designee of the warden or superintendent of the institution where the inmate is housed. It shall be the duty of the receiving warden or superintendent or a designee to promptly deliver the summons and petition to the inmate named therein. The warden or superintendent or his or her designee shall reject service of process for any inmate who is not actually present in said institution.

2. SERVICE BY MAIL.

a. At the election of the plaintiff, a summons and petition may be served by mail by the plaintiff's attorney, any person authorized to serve process pursuant to subparagraph a of paragraph 1 of this subsection, or by the court clerk upon a defendant of any class referred to in division (1), (3), or (5) of subparagraph c of paragraph 1 of this subsection. Service by mail shall be effective on the date of receipt or if refused, on the date of refusal of the summons and petition by the defendant.

b. Service by mail shall be accomplished by mailing a copy of the summons and petition by certified mail, return receipt requested and delivery restricted to the addressee. When there is more than one defendant, the summons and a copy of the petition or order shall be mailed in a separate envelope to each defendant. If the summons is to be served by mail by the court clerk, the court clerk shall enclose the summons and a copy of the petition or order of the court to be served in an envelope, prepared by the plaintiff, addressed to the defendant, or to the resident service agent if one has been appointed. The court clerk shall prepay the postage and mail the envelope to the defendant, or service agent, by certified mail, return receipt requested and delivery restricted to the addressee. The return receipt shall be prepared by the plaintiff. Service by mail to a garnishee shall be accomplished by mailing a copy of the summons and notice by certified mail, return receipt requested, and at the election of the judgment creditor by restricted delivery, to the addressee.

c. Service by mail shall not be the basis for the entry of a default or a judgment by default unless the record contains a return receipt showing acceptance by the defendant or a returned envelope showing refusal of the process by the defendant. Acceptance or refusal of service by mail by a person who is fifteen (15) years of age or older who resides at the defendant's dwelling house or usual place of abode shall constitute acceptance or refusal by the party

addressed. In the case of an entity described in division (3) of subparagraph c of paragraph 1 of this subsection, acceptance or refusal by any officer or by any employee of the registered office or principal place of business who is authorized to or who regularly receives certified mail shall constitute acceptance or refusal by the party addressed. A return receipt signed at such registered office or principal place of business shall be presumed to have been signed by an employee authorized to receive certified mail. In the case of a state municipal corporation, or other governmental organization thereof subject to suit, acceptance or refusal by an employee of the office of the officials specified in division (5) of subparagraph c of paragraph 1 of this subsection who is authorized to or who regularly receives certified mail shall constitute acceptance or refusal by the party addressed. If delivery of the process is refused, upon the receipt of notice of such refusal and at least ten (10) days before applying for entry of default, the person elected by plaintiff pursuant to subparagraph a of this paragraph to serve the process shall mail to the defendant by first-class mail a copy of the summons and petition and a notice prepared by the plaintiff that despite such refusal the case will proceed and that judgment by default will be rendered against him unless he appears to defend the suit. Any default or judgment by default shall be set aside upon motion of the defendant in the manner prescribed in Section 1031.1 of this title, or upon petition of the defendant in the manner prescribed in Section 1033 of this title if the defendant demonstrates to the court that the return receipt was signed or delivery was refused by an unauthorized person. A petition shall be filed within one (1) year after the defendant has notice of the default or judgment by default but in no event more than two (2) years after the filing of the judgment.

3. SERVICE BY PUBLICATION.

a. Service of summons upon a named defendant may be made by publication when it is stated in the petition, verified by the plaintiff or the plaintiff’s attorney, or in a separate affidavit by the plaintiff or the

plaintiff’s attorney filed with the court, that with due diligence service cannot be made upon the defendant by any other method.

b. Service of summons upon the unknown successors of a named defendant, a named decedent, or a dissolved partnership, corporation, or other association may be made by publication when it is stated in a petition, verified by the plaintiff or the plaintiff's attorney, or in a separate affidavit by the plaintiff or the plaintiff's attorney filed with the court, that the person who verified the petition or the affidavit does not know and with due diligence cannot ascertain the following:

(1) whether a person named as defendant is living or dead, and, if dead, the names or whereabouts of the person’s successors, if any,

(2) the names or whereabouts of the unknown successors, if any, of a named decedent,

(3) whether a partnership, corporation, or other association named as a defendant continues to have legal existence or not; or the names or whereabouts of its officers or successors,

(4) whether any person designated in a record as a trustee continues to be the trustee; or the names or whereabouts of the successors of the trustee, or

(5) the names or whereabouts of the owners or holders of special assessment or improvement bonds, or any other bonds, sewer warrants or tax bills.

c. Service pursuant to this paragraph shall be made by publication of a notice, signed by the court clerk, one (1) day a week for three (3) consecutive weeks in a newspaper authorized by law to publish legal notices which is published in the county where the petition is filed. If no newspaper authorized by law to publish legal notices is published in such county, the notice shall be published in some such newspaper of general circulation which is published in an adjoining county.

All named parties and their unknown successors who may be served by publication may be included in one notice. The notice shall state the court in which the petition is filed and the names of the plaintiff and the parties served by publication, and shall designate the parties whose unknown successors are being served. The notice shall also state that the named defendants and their unknown successors have been sued and must answer the petition on or before a time to be stated (which shall not be less than forty-one (41) days from the date of the first publication), or judgment, the nature of which shall be stated, will be rendered accordingly. If jurisdiction of the court is based on property, any real property subject to the jurisdiction of the court and any property or debts to be attached or garnished must be described in the notice.

(1) When the recovery of money is sought, it is not necessary for the publication notice to state the separate items involved, but the total amount that is claimed must be stated. When interest is claimed, it is not necessary to state the rate of interest, the date from which interest is claimed, or that interest is claimed until the obligation is paid.

(2) It is not necessary for the publication notice to state that the judgment will include recovery of costs in order for a judgment following the publication notice to include costs of suit.

(3) In an action to quiet title to real property, it is not necessary for the publication notice to state the nature of the claim or interest of either party, and in describing the nature of the judgment that will be rendered should the defendant fail to answer, it is sufficient to state that a decree quieting plaintiff's title to the described property will be entered. It is not necessary to state that a decree forever barring the defendant from asserting any interest in or to the property is sought or will be entered if the defendant does not answer.

(4) In an action to foreclose a mortgage, it is sufficient that the publication notice state that if the defendant does not answer, the defendant's interest in the property will be foreclosed. It is not necessary to state that a judgment forever barring the defendant from all right, title, interest, estate, property and equity of redemption in or to said property or any part thereof is requested or will be entered if the defendant does not answer.

d. Service by publication is complete when made in the manner and for the time prescribed in subparagraph c of this paragraph. Service by publication shall be proved by the affidavit of any person having knowledge of the publication. No default judgment may be entered on such service until proof of service by publication is filed with and approved by the court.

e. Before entry of a default judgment or order against a party who has been served solely by publication under this paragraph, the court shall conduct an inquiry to determine whether the plaintiff, or someone acting in ~~his~~ behalf of the plaintiff, made a distinct and meaningful search of all reasonably available sources to ascertain the whereabouts of any named parties who have been served solely by publication under this paragraph. Before entry of a default judgment or order against the unknown successors of a named defendant, a named decedent, or a dissolved partnership, corporation or association, the court shall conduct an inquiry to ascertain whether the requirements described in subparagraph b of this paragraph have been satisfied.

f. A party against whom a default judgment or order has been rendered, without other service than by publication in a newspaper, may, at any time within three (3) years after the filing of the judgment or order, have the judgment or order set aside in the manner prescribed in Sections 1031.1 and 1033 of this title. Before the judgment or order is set aside, the applicant shall notify the adverse party of the intention to make an application and shall file a full answer to the petition, pay all costs if the court

requires them to be paid, and satisfy the court by affidavit or other evidence that during the pendency of the action the applicant had no actual notice thereof in time to appear in court and make a defense. The title to any property which is the subject of and which passes to a purchaser in good faith by or in consequence of the judgment or order to be opened shall not be affected by any proceedings under this subparagraph. Nor shall proceedings under this subparagraph affect the title of any property sold before judgment under an attachment. The adverse party, on the hearing of an application to open a judgment or order as provided by this subparagraph, shall be allowed to present evidence to show that during the pendency of the action the applicant had notice thereof in time to appear in court and make a defense.

g. The term "successors" includes all heirs, executors, administrators, devisees, trustees, and assigns, immediate and remote, of a named individual, partnership, corporation, or association.

h. Service outside of the state does not give the court in personal jurisdiction over a defendant who is not subject to the jurisdiction of the courts of this state or who has not, either in person or through an agent, submitted to the jurisdiction of the courts of this state.

4. SERVICE ON THE SECRETARY OF STATE.

a. Service of process on a domestic or foreign corporation may be made by serving the Secretary of State as the corporation's agent, if:

(1) there is no registered agent for the corporation listed in the records of the Secretary of State; or

(2) neither the registered agent nor an officer of the corporation could be found at the registered office of the corporation, when service of process was attempted.

b. Before resorting to service on the Secretary of State the plaintiff must have attempted service either in person or by mail on the corporation at:

(1) the corporation's last-known address shown on the records of the Franchise Tax Division of the Oklahoma Tax Commission, if any is listed there; and

(2) the corporation's last-known address shown on the records of the Secretary of State, if any is listed there; and

(3) the corporation's last address known to the plaintiff.

If any of these addresses are the same, the plaintiff is not required to attempt service more than once at any address. The plaintiff shall furnish the Secretary of State with a certified copy of the return or returns showing the attempted service.

c. Service on the Secretary of State shall be made by filing two (2) copies of the summons and petition with the Secretary of State, notifying the Secretary of State that service is being made pursuant to the provisions of this paragraph, and paying the Secretary of State the fee prescribed in paragraph 7 of Section 1142 of Title 18 of the Oklahoma Statutes, which fee shall be taxed as part of the costs of the action, suit or proceeding if the plaintiff shall prevail therein. If a registered agent for the corporation is listed in the records of the Secretary of State, the plaintiff must also furnish a certified copy of the return showing that service on the registered agent has been attempted either in person or by mail, and that neither the registered agent nor an officer of the corporation could be found at the registered office of the corporation.

d. Within three (3) working days after receiving the summons and petition, the Secretary of State shall send notice by letter, certified mail, return receipt requested, directed to the corporation at its registered office or the last-known address found in

the office of the Secretary of State, or if no address is found there, to the corporation's last-known address provided by the plaintiff. The notice shall enclose a copy of the summons and petition and any other papers served upon the Secretary of State. The corporation shall not be required to serve its answer until forty (40) days after service of the summons and petition on the Secretary of State.

e. Before entry of a default judgment or order against a corporation that has been served by serving the Secretary of State as its agent under this paragraph, the court shall determine whether the requirements of this paragraph have been satisfied. A default judgment or order against a corporation that has been served only by service on the Secretary of State may be set aside upon motion of the corporation in the manner prescribed in Section 1031.1 of this title, or upon petition of the corporation in the manner prescribed in Section 1033 of this title, if the corporation demonstrates to the court that it had no actual notice of the action in time to appear and make its defense. A petition shall be filed within one (1) year after the corporation has notice of the default judgment or order but in no event more than two (2) years after the filing of the default judgment or order.

f. The Secretary of State shall maintain an alphabetical record of service setting forth the name of the plaintiff and defendant, the title, docket number, and nature of the proceeding in which the process has been served upon the defendant, the fact that service has been effected pursuant to the provisions of this paragraph, the return date thereof, and the date when the service was made. The Secretary of State shall not be required to retain this information for a period longer than five (5) years from receipt of the service of process.

g. The provisions of this paragraph shall not apply to a foreign insurance company doing business in this state.

5. SERVICE BY ACKNOWLEDGMENT. An acknowledgment on the back of the summons or the voluntary appearance of a defendant is equivalent to service.

6. SERVICE BY OTHER METHODS. If service cannot be made by personal delivery or by mail, a defendant of any class referred to in division (1) or (3) of subparagraph c of paragraph 1 of this subsection may be served as provided by court order in any manner which is reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard.

7. NO SERVICE BY PRISONER. No prisoner in any jail, Department of Corrections facility, private prison, or parolee or probationer under supervision of the Department of Corrections shall be appointed by any court to serve process on any defendant, party or witness.

D. SUMMONS AND PETITION. The summons and petition shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. The failure to serve a copy of the petition with the summons is not a ground for dismissal for insufficiency of service of process, but on motion of the party served, the court may extend the time to answer or otherwise plead. If a summons and petition are served by personal delivery, the person serving the summons shall state on the copy that is left with the person served the date that service is made. This provision is not jurisdictional, but if the failure to comply with it prejudices the party served, the court, on motion of the party served, may extend the time to answer or otherwise plead.

E. SUMMONS: TERRITORIAL LIMITS OF EFFECTIVE SERVICE.

1. Service of the summons and petition may be made anywhere within this state in the manner provided by subsection C of this section.

2. When the exercise of jurisdiction is authorized by subsection F of this section, service of the summons and petition may be made outside this state:

a. by personal delivery in the manner prescribed for service within this state,

b. in the manner prescribed by the law of the place in which the service is made for service in that place in

an action in any of its courts of general jurisdiction,

c. in the manner prescribed by paragraph 2 of subsection C of this section,

d. as directed by the foreign authority in response to a letter rogatory,

e. in the manner prescribed by paragraph 3 of subsection C of this section only when permitted by subparagraphs a and b of paragraph 3 of subsection C of this section, or

f. as directed by the court.

3. Proof of service outside this state may be made in the manner prescribed by subsection G of this section, the order pursuant to which the service is made, or the law of the place in which the service is made for proof of service in an action in any of its courts of general jurisdiction.

4. Service outside this state may be made by an individual permitted to make service of process under the law of this state or under the law of the place in which the service is made or who is designated to make service by a court of this state.

5. When subsection C of this section requires that in order to effect service one or more designated individuals be served, service outside this state under this section must be made upon the designated individual or individuals.

6. a. A court of this state may order service upon any person who is domiciled or can be found within this state of any document issued in connection with a proceeding in a tribunal outside this state. The order may be made upon application of any interested person or in response to a letter rogatory issued by a tribunal outside this state and shall direct the manner of service.

b. Service in connection with a proceeding in a tribunal outside this state may be made within this state without an order of court.

c. Service under this paragraph does not, of itself, require the recognition or enforcement of an order, judgment, or decree rendered outside this state.

F. ASSERTION OF JURISDICTION. A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.

G. RETURN.

1. The person serving the process shall make proof of service thereof to the court promptly and in any event within the time during which the person served must respond to the process, but the failure to make proof of service does not affect the validity of the service.

2. When process has been served by a sheriff or deputy sheriff and return thereof is filed in the office of the court clerk, a copy of the return shall be sent by the court clerk to the plaintiff's attorney within three (3) days after the return is filed. If service is made by a person other than a sheriff, deputy sheriff, or licensed process server, that person shall make affidavit thereof. The return shall set forth the name of the person served and the date, place, and method of service.

3. If service was by mail, the person mailing the summons and petition shall endorse on the copy of the summons or order of the court that is filed in the action the date and place of mailing and the date when service was receipted or service was rejected, and shall attach to the copy of the summons or order a copy of the return receipt or returned envelope, if and when received, showing whether the mailing was accepted, refused, or otherwise returned. If the mailing was refused, the return shall also show the date and place of any subsequent mailing pursuant to paragraph 2 of subsection C of this section. When the summons and petition are mailed by the court clerk, the court clerk shall notify the plaintiff's attorney within three (3) days after receipt of the returned card or envelope showing that the card or envelope has been received.

H. AMENDMENT. At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

I. SUMMONS: TIME LIMIT FOR SERVICE. If service of process is not made upon a defendant within one hundred eighty (180) days after the filing of the petition and the plaintiff cannot show good cause why such service was not made within that period, the action ~~may~~ shall be deemed dismissed as to that defendant without prejudice ~~upon the court's own initiative with notice to the plaintiff or upon motion~~. The action shall not be dismissed ~~where~~ if a summons was served on the defendant within one hundred eighty (180) days after the filing of the petition and a court later holds that the summons or its service was invalid. After a court quashes a summons or its service, a new summons may be served on the defendant within a time specified by the judge. If the new summons is not served within the specified time, the action shall be deemed to have been dismissed without prejudice as to that defendant. This subsection shall not apply with respect to a defendant who has been outside of this state for one hundred eighty (180) days following the filing of the petition.

SECTION 12. AMENDATORY 12 O.S. 2001, Section 2008, is amended to read as follows:

Section 2008.

GENERAL RULES OF PLEADING

A. CLAIMS FOR RELIEF. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain:

1. A short and plain statement of the claim showing that the pleader is entitled to relief; and

2. A demand for judgment for the relief to which he deems himself entitled. Every pleading demanding relief for damages in money in excess of ~~Ten Thousand Dollars ($10,000.00)~~ the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code shall, without demanding any specific amount of money, set forth only that the amount sought as damages is in excess of ~~Ten Thousand Dollars ($10,000.00)~~ the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, except in actions sounding in contract. Every pleading demanding relief for damages in money in an amount ~~of Ten Thousand Dollars ($10,000.00)~~ that is required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the

United States Code or less shall specify the amount of such damages sought to be recovered. Relief in the alternative or of several different types may be demanded.

B. DEFENSES; FORM OF DENIALS. A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If he is without knowledge or information sufficient to form a belief as to the truth of an averment, he shall so state and this statement has the effect of a denial. Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, he shall specify so much of it as is true and material and shall deny only the remainder. Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, he may make his denials as specific denials of designated averments or paragraphs or he may generally deny all the averments except such designated averments or paragraphs as he expressly admits; but, when he does so intend to controvert all its averments, he may do so by general denial subject to the obligations set forth in Section 2011 of this title.

C. AFFIRMATIVE DEFENSES. In pleading to a preceding pleading, a party shall set forth affirmatively:

1. Accord and satisfaction;

2. Arbitration and award;

3. Assumption of risk;

4. Contributory negligence;

5. Discharge in bankruptcy;

6. Duress;

7. Estoppel;

8. Failure of consideration;

9. Fraud;

10. Illegality;

11. Injury by fellow servant;

12. Laches;

13. License;

14. Payment;

15. Release;

16. Res judicata;

17. Statute of frauds;

18. Statute of limitations;

19. Waiver; and

20. Any other matter constituting an avoidance or affirmative defense.

When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

D. EFFECT OF FAILURE TO DENY. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

E. PLEADING TO BE CONCISE AND DIRECT; CONSISTENCY.

1. Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required.

2. A party may set forth, and at trial rely on, two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether

based on legal or equitable grounds. All statements shall be made subject to the obligations set forth in Section 2011 of this title.

F. CONSTRUCTION OF PLEADINGS. All pleadings shall be so construed as to do substantial justice.

SECTION 13. AMENDATORY 12 O.S. 2001, Section 2009, is amended to read as follows:

Section 2009.

PLEADING SPECIAL MATTERS

A. CAPACITY. It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge, and he shall have the burden of proof on that issue.

B. FRAUD, MISTAKE, CONDITION OF THE MIND. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

C. CONDITIONS PRECEDENT. In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity.

D. OFFICIAL DOCUMENT OR ACT. In pleading an official document or official act it is sufficient to aver that the document was issued or the act done in compliance with law.

E. JUDGMENT. In pleading a judgment or decision of a domestic or foreign court, judicial or quasi-judicial tribunal, or of a board or officer, it is sufficient to aver the judgment or decision without setting forth matter showing jurisdiction to render it.

F. TIME AND PLACE. For the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter.

G. SPECIAL DAMAGE. When items of special damage are claimed, their nature shall be specifically stated. In actions where exemplary or punitive damages are sought, the petition shall not state a dollar amount for damages sought to be recovered but shall state whether the amount of damages sought to be recovered is in excess of or not in excess of ~~Ten Thousand Dollars ($10,000.00)~~ the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

H. MOTION TO CLARIFY DAMAGES. If the amount of damages sought to be recovered by the plaintiff is less than the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, the defendant may file, for purposes of establishing diversity jurisdiction only, a Motion to Clarify Damages prior to the pretrial order to require the plaintiff to show by a preponderance of the evidence that the amount of damages, if awarded, will not exceed the amount required for diversity. If the court finds that any damages awarded are more likely than not to exceed the amount of damages required for diversity jurisdiction, the plaintiff shall amend his or her pleadings in conformance with paragraph 2 of subsection A of Section 2008 of this title.

SECTION 14. AMENDATORY 12 O.S. 2001, Section 2011, as amended by Section 10, Chapter 368, O.S.L. 2004 (12 O.S. Supp. 2008, Section 2011), is amended to read as follows:

Section 2011.

SIGNING OF PLEADINGS

A. SIGNATURE. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in ~~his~~ the individual name of the attorney, whose Oklahoma Bar Association identification number shall be stated, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the address of the signer and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless the omission of the signature is corrected promptly after being called to the attention of the attorney or party.

B. REPRESENTATIONS TO COURT. By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1. It is not being presented for any improper or frivolous purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2. The claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

3. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

C. SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subsection B of this section has been violated, the court shall, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subsection B of this section or are responsible for the violation.

1. HOW INITIATED.

a. By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection B of this section. It shall be served as provided in Section 2005 of this title, but shall not be filed with or presented to the court unless, within twenty-one (21) days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not

withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorneys fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

b. On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subsection B of this section and directing an attorney, law firm, or party to show cause why it has not violated subsection B of this section with respect thereto.

2. NATURE OF SANCTIONS; LIMITATIONS. A sanction imposed for violation of this section shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs a, b and c of this paragraph, the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys fees and other expenses incurred as a direct result of the violation.

a. Monetary sanctions shall not be awarded against a represented party for a violation of paragraph 2 of subsection B of this section.

b. Monetary sanctions shall not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

c. Monetary sanctions shall be awarded for any violations of paragraph 1 of subsection B of this section. The sanctions shall consist of an order directing payment of reasonable costs, including attorney fees, incurred by the movant with respect to the conduct for which the sanctions are imposed. In addition, the court may impose any other sanctions authorized by this paragraph.

3. ORDER. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed.

D. INAPPLICABILITY TO DISCOVERY. This section does not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Sections 3226 through 3237 of this title.

E. DEFINITION. As used in this section, "frivolous" means the action or pleading was knowingly asserted in bad faith~~, was unsupported by any credible evidence, was not grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law~~ <u>or without any rational argument based in law or facts to support the position of the litigant or to change existing law</u>.

SECTION 15. AMENDATORY Section 1, Chapter 370, O.S.L. 2004, as amended by Section 10, Chapter 12, O.S.L. 2007 (12 O.S. Supp. 2008, Section 2011.1), is amended to read as follows:

Section 2011.1 In any action not arising out of contract, if requested the court shall, upon ruling on a motion to dismiss an action or a motion for summary judgment or subsequent to adjudication on the merits, determine whether a claim or defense asserted in the action by a nonprevailing party was frivolous. As used in this section, "frivolous" means the claim or defense was knowingly asserted in bad faith~~, was unsupported by any credible evidence, was not grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law~~ <u>or without any rational argument based in law or facts to support the position of the litigant or to change existing law</u>. Upon so finding, the court shall enter an order requiring such nonprevailing party to reimburse the prevailing party for reasonable costs, including attorney fees, incurred with respect to such claim or defense. In addition, the court may impose any sanction authorized by Section 2011 of ~~Title 12 of the Oklahoma Statutes~~ <u>this title</u>.

SECTION 16. AMENDATORY 12 O.S. 2001, Section 2023, is amended to read as follows:

Section 2023.

CLASS ACTIONS

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

1. The prosecution of separate actions by or against individual members of the class would create a risk of:

a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,

b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,

c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and

d. the difficulties likely to be encountered in the management of a class action.

C. DETERMINATION BY ORDER WHETHER CLASS ACTION TO BE MAINTAINED; NOTICE; JUDGMENT; ACTIONS CONDUCTED PARTIALLY AS CLASS ACTIONS.

1. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order entered on or after November 1, 2009, that certifies a class action shall define the class and the class claims, issues or defenses, and shall appoint class counsel under subsection F of this section. An order under this subsection may be conditional, and may be altered or amended before the decision on the merits.

2. The order described in paragraph 1 of this subsection shall be subject to a de novo standard of review by any appellate court reviewing the order. While the appeal of the order on class certification is pending, the trial court shall retain sufficient jurisdiction over the case to consider and implement a settlement of the action should one be reached between the parties and discovery as to the class claims shall be stayed pending resolution of the appeal.

3. For any class certified under paragraph 1 or 2 of subsection B of this section, the court may direct appropriate notice to the class.

4. In any class action maintained under paragraph 3 of subsection B of this section, the court shall direct to the members of the class the best notice practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort. The notice shall ~~advise each member that~~ clearly and concisely state in plain, easily understood language:

a. the nature of the action,

b. the definition of the class certified,

c. the class claims, issues or defenses,

d. that a class member may enter an appearance through an attorney if the member so desires,

e. that the court will exclude him from the class if he so requests by a specified date,

~~b.~~ f. that the judgment, whether favorable or not, will include all members who do not request exclusion, and

~~c.~~ g. that any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

~~Where the class contains more than five hundred (500) members who can be identified through reasonable effort, it shall not be necessary to direct individual notice to more than five hundred (500) members, but the members~~ Members to whom individual notice is not directed shall be given notice in such manner as the court shall direct, which may include publishing notice in newspapers, magazines, trade journals or other publications, posting it in appropriate places, and taking other steps that are reasonably calculated to bring the notice to the attention of such members, provided that the cost of giving such notice shall be reasonable in view of the amounts that may be recovered by the class members who are being notified. Members to whom individual notice was not directed may request exclusion from the class at any time before the issue of liability is determined, and commencing an individual action before the issue of liability is determined shall be the equivalent of requesting exclusion from the class.

~~3.~~ 5. The judgment in an action maintained as a class action under ~~paragraphs~~ paragraph 1 or 2 of subsection B of this section, whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under paragraph 3 of subsection B of this section, whether or not favorable to the class,

shall include and specify or describe those to whom the notice provided in paragraph ~~2~~ 4 of this subsection ~~C of this section~~ was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

~~4.~~ 6. When appropriate:

a. an action may be brought or maintained as a class action with respect to particular issues, or

b. a class may be divided into subclasses and each subclass treated as a class.

The provisions of this section shall then be construed and applied accordingly.

D. ORDERS IN CONDUCT OF ACTIONS. In the conduct of actions to which this section applies, the court may make appropriate orders:

1. Determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument;

2. Requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;

3. For actions filed after November 1, 2009, class membership shall be limited, unless otherwise agreed to by the defendant, only to individuals or entities who are:

a. residents of this state, or

b. nonresidents of this state who:

(1) own an interest in property located in this state where the property is relevant to the class action, or

(2) have a significant portion of the nonresident's cause of action arising from conduct occurring within the state;

4. Requiring, for the sole purpose of class notice upon certification of a class, that parties to the action provide such names and addresses of potential members of the class as they possess, subject to an appropriate protective order;

5. Imposing conditions on the representative parties or on intervenors;

~~4.~~ 6. Requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; and

~~5.~~ 7. Dealing with similar procedural matters.

The orders may be combined with an order under Section ~~16~~ 2016 of this ~~act~~ title and may be altered or amended as may be desirable from time to time.

E. DISMISSAL OR COMPROMISE. ~~A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.~~ The claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. For motions filed after November 1, 2009, the following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

1. The court shall direct notice in a reasonable manner to all class members who would be bound by the proposal;

2. If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable and adequate;

3. The parties seeking approval shall file a statement identifying any agreement made in connection with the proposal;

4. If the class action was previously certified under paragraph 3 of subsection B of this section, the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion

to individual class members who had an earlier opportunity to request exclusion but did not do so; and

5. Any class member may object to the proposal if it requires court approval under this subsection.

F. CLASS COUNSEL. 1. Unless a statute provides otherwise, a court that certifies a class shall appoint class counsel. In appointing class counsel after November 1, 2009, the court:

a. shall consider:

(1) the work counsel has done in identifying or investigating potential claims in the action,

(2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action,

(3) counsel's knowledge of the applicable law, and

(4) the resources that counsel will commit to representing the class,

b. may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class,

c. may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees or nontaxable costs,

d. may include in the appointing order provisions about the award of attorney fees or nontaxable costs, and

e. may make further orders in connection with the appointment;

2. When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under paragraphs 1 and 4 of this subsection. If more than one adequate applicant seeks appointment, the court shall appoint the applicant best able to represent the interests of the class.

3. The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.

4. Class counsel shall fairly and adequately represent the interests of the class.

G. ATTORNEY FEES AND NONTAXABLE COSTS. 1. In a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by law or by the parties' agreement.

2. A claim for an award shall be made by motion, subject to the provisions of this subsection, at a time set by the court. Notice of the motion shall be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

3. A class member, or a party from whom payment is sought, may object to the motion.

4. In considering a motion for attorney fees filed after November 1, 2009:

a. the court shall conduct an evidentiary hearing to determine a fair and reasonable fee for class counsel,

b. the court shall act in a fiduciary capacity on behalf of the class in making such determination,

c. the court may appoint an attorney to represent the class upon the request by any members of the class in a hearing on the issue of the amount of attorney fees or the court may refer the matter to a referee pursuant to Section 613 et seq. of this title,

d. if the court appoints an attorney to represent the class for the fee hearing pursuant to subparagraph c of this paragraph or refers the matter to a referee, the attorney or referee shall be independent of the attorney or attorneys seeking attorney fees in the class action, and said independent attorney or referee shall be awarded reasonable fees by the court on an hourly basis out of the proceeds awarded to the class,

e. in arriving at a fair and reasonable fee for class counsel, the court shall consider the following factors:

(1) time and labor required,

(2) the novelty and difficulty of the questions presented by the litigation,

(3) the skill required to perform the legal service properly,

(4) the preclusion of other employment by the attorney due to acceptance of the case,

(5) the customary fee,

(6) whether the fee is fixed or contingent,

(7) time limitations imposed by the client or the circumstances,

(8) the amount in controversy and the results obtained,

(9) the experience, reputation and ability of the attorney,

(10) whether or not the case is an undesirable case,

(11) the nature and length of the professional relationship with the client,

(12) awards in similar causes, and

(13) the risk of recovery in the litigation, and

f. if any portion of the benefits recovered for the class in an action maintained pursuant to paragraph 3 of subsection B of this section are in the form of coupons, discounts on future goods or services or other similar types of noncash common benefits, the attorney fees awarded in the class action shall be in cash and noncash amounts in the same proportion as the recovery for the class.

SECTION 17. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2056 of Title 12, unless there is created a duplication in numbering, reads as follows:

A. BY A CLAIMING PARTY. A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim. The motion may be filed at any time after twenty (20) days have passed from commencement of the action or the opposing party serves a motion for summary judgment.

B. BY A DEFENDING PARTY. A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim.

C. SERVING THE MOTION AND PROCEEDINGS. The motion must be served at least ten (10) days before the day set for the hearing. An opposing party may serve opposing affidavits before the hearing day. The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

D. CASE NOT FULLY ADJUDICATED ON THE MOTION. If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys. It should then issue an order specifying what facts, including items of damages or other relief, are not genuinely at issue. The facts so specified must be treated as established in the action. An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages.

E. AFFIDAVITS AND FURTHER TESTIMONY. A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must, by affidavits or as otherwise provided in

this rule, set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

F. WHEN AFFIDAVITS ARE UNAVAILABLE. If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may deny the motion, order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken or issue any other just order.

G. AFFIDAVITS SUBMITTED IN BAD FAITH. If satisfied that an affidavit under this rule is submitted in bad faith or solely for delay, the court must order the submitting party to pay the other party the reasonable expenses, including attorney fees, it incurred as a result. An offending party or attorney may also be held in contempt.

SECTION 18. AMENDATORY 12 O.S. 2001, Section 2702, is amended to read as follows:

Section 2702. If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise, if:

1. The testimony is based upon sufficient facts or data;

2. The testimony is the product of reliable principles and methods; and

3. The witness has applied the principles and methods reliably to the facts of the case.

SECTION 19. AMENDATORY 12 O.S. 2001, Section 2703, as amended by Section 55, Chapter 468, O.S.L. 2002 (12 O.S. Supp. 2008, Section 2703), is amended to read as follows:

Section 2703. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or

inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

SECTION 20. AMENDATORY 12 O.S. 2001, Section 3226, as last amended by Section 3, Chapter 519, O.S.L. 2004 (12 O.S. Supp. 2008, Section 3226), is amended to read as follows:

Section 3226. A. DISCOVERY METHODS. Parties may obtain discovery by one or more of the following methods: Depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission. Unless the court orders otherwise under this section, the frequency of use of these methods is not limited.

B. DISCOVERY SCOPE AND LIMITS. Unless otherwise limited by order of the court in accordance with the Oklahoma Discovery Code, the scope of discovery is as follows:

1. IN GENERAL. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. A party shall produce upon request pursuant to Section 3234 of this title, any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this section, an application for insurance shall not be treated as a part of an insurance agreement.

2. INITIAL DISCLOSURES.

a. Except in categories of proceedings specified in subparagraph b of this paragraph, or to the extent otherwise stipulated or directed by order, a party, without awaiting a discovery request, must provide to other parties a computation of any category of damages claimed by the disclosing party, making available for inspection and copying the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

b. The following categories of proceedings are exempt from initial disclosure under subparagraph a of this paragraph:

(1) an action for review on an administrative record,

(2) a petition for habeas corpus or other proceeding to challenge a criminal conviction or sentence,

(3) an action brought without counsel by a person in custody of the United States, a state, or a state subdivision,

(4) an action to enforce or quash an administrative summons or subpoena,

(5) an action by the United States to recover benefit payments,

(6) an action by the United States to collect on a student loan guaranteed by the United States,

(7) a proceeding ancillary to proceedings in other courts, and

(8) an action to enforce an arbitration award.

3. TIME FOR DISCLOSURES. These disclosures shall be made at or within sixty (60) days after service unless a different time is set by stipulation or court order, or unless a party objects that initial disclosures are not appropriate in the circumstances of the action and states the objection in a motion filed with the court. In ruling on the objection, the court shall determine what

disclosures, if any, are to be made and set the time for disclosure. A party shall make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

4. TRIAL PREPARATION: MATERIALS. Subject to the provisions of paragraph ~~3~~ 5 of this subsection, discovery may be obtained of documents and tangible things otherwise discoverable under paragraph 1 of this subsection and prepared in anticipation of litigation or for trial by or for another party or by or for the representative of that other party, including his attorney, consultant, surety, indemnitor, only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

A party may obtain, without the required showing provided for in this paragraph, a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provisions of paragraph 4 of subsection A of Section 3237 of this title apply to the award of expenses incurred in relation to the motion. For purposes of this paragraph, a statement previously made is:

a. a written statement signed or otherwise adopted or approved by the person making it, or

b. a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which substantially recites an oral statement by the person making it and contemporaneously recorded.

~~3.~~ 5. TRIAL PREPARATION: EXPERTS.

a. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of

paragraph 1 of this subsection and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(1) A party may, through interrogatories, require any other party to identify each person whom that other party expects to call as an expert witness at trial and give the address at which that expert witness may be located.

(2) After disclosure of the names and addresses of the expert witnesses, the other party expects to call as witnesses, the party, who has requested disclosure, may depose any such expert witnesses subject to scope of this section. Prior to taking the deposition the party must give notice as required in subsections A and C of Section 3230 of this title. If any documents are provided to such disclosed expert witnesses, the documents shall not be protected from disclosure by privilege or work product protection and they may be obtained through discovery.

(3) In addition to taking the depositions of expert witnesses the party may, through interrogatories, require the party who expects to call the expert witnesses to state the subject matter on which each expert witness is expected to testify; the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion; the qualifications of each expert witness, including a list of all publications authored by the expert witness within the preceding ten (10) years; the compensation to be paid to the expert witness for the testimony and preparation for the testimony; and a listing of any other cases in which the expert witness has testified as an expert at trial or by deposition within the preceding four (4) years. An interrogatory seeking the information specified above shall be treated as a single interrogatory for purposes of the limitation on the number of interrogatories in Section 3233 of this title.

b. A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only upon motion, when the court may order discovery as provided in Section 3235 of this title or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by any other means.

c. Unless manifest injustice would result:

(1) The court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under division (2) of subparagraph a of this paragraph and subparagraph b of this paragraph.

(2) The court shall require that the party seeking discovery with respect to discovery obtained under subparagraph b of this paragraph, pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

~~4.~~ 6. CLAIMS OF PRIVILEGE OR PROTECTION OF TRIAL PREPARATION MATERIALS. When a party withholds information otherwise discoverable under the Oklahoma Discovery Code by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

C. PROTECTIVE ORDERS.

1. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer, either in person or by telephone, with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or on matters relating to a deposition, the district court in the county where the deposition is to be taken

may enter any order which justice requires to protect a party or person from annoyance, harassment, embarrassment, oppression or undue delay, burden or expense, including one or more of the following:

a. that the discovery not be had,

b. that the discovery may be had only on specified terms and conditions, including a designation of the time or place,

c. that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery,

d. that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters,

e. that discovery be conducted with no one present except persons designated by the court,

f. that a deposition after being sealed be opened only by order of the court,

g. that a trade secret or other confidential research, development or commercial information not be disclosed or be disclosed only in a designated way, and

h. that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court;

2. If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of paragraph 4 of subsection A of Section 3237 of this title apply to the award of expenses incurred in relation to the motion. Any protective order of the court which has the effect of removing any material obtained by discovery from the public record shall contain the following:

a. a statement that the court has determined it is necessary in the interests of justice to remove the material from the public record,

b. specific identification of the material which is to be removed or withdrawn from the public record, or which is to be filed but not placed in the public record, and

c. a requirement that any party obtaining a protective order place the protected material in a sealed manila envelope clearly marked with the caption and case number and is clearly marked with the word "CONFIDENTIAL", and stating the date the order was entered and the name of the judge entering the order;

3. No protective order entered after the filing and microfilming of documents of any kind shall be construed to require the microfilm record of such filing to be amended in any fashion;

4. The party or counsel which has received the protective order shall be responsible for promptly presenting the order to appropriate court clerk personnel for appropriate action;

5. All documents produced or testimony given under a protective order shall be retained in the office of counsel until required by the court to be filed in the case;

6. Counsel for the respective parties shall be responsible for informing witnesses, as necessary, of the contents of the protective order; and

7. When a case is filed in which a party intends to seek a protective order removing material from the public record, the plaintiff(s) and defendant(s) shall be initially designated on the petition under pseudonym such as "John or Jane Doe", or "Roe", and the petition shall clearly indicate that the party designations are fictitious. The party seeking confidentiality or other order removing the case, in whole or in part, from the public record, shall immediately present application to the court, seeking instructions for the conduct of the case, including confidentiality of the records.

D. SEQUENCE AND TIMING OF DISCOVERY. Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence. The fact that a party is conducting

discovery, whether by deposition or otherwise, shall not operate to delay discovery by any other party.

E. SUPPLEMENTATION OF RESPONSES. A party who has responded to a request for discovery with a response that was complete when it was made is under no duty to supplement the response to include information thereafter acquired, except as follows:

1. A party is under a duty seasonably to supplement the response with respect to any question directly addressed to:

a. the identity and location of persons having knowledge of discoverable matters, and

b. the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the testimony of the person~~.~~;

2. A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party obtains information upon the basis of which:

a. ~~(i)~~ (1) the party knows that the response was incorrect in some material respect when made, or

~~(ii)~~ (2) the party knows that the response, which was correct when made, is no longer true in some material respect~~;~~, and

b. the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing~~.~~; and

3. A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

F. DISCOVERY CONFERENCE. At any time after commencement of an action, the court may direct the attorneys for the parties to appear for a conference on the subject of discovery. The court shall do so upon motion by the attorney for any party if the motion includes:

1. A statement of the issues as they then appear;

2. A proposed plan and schedule of discovery;

3. Any limitations proposed to be placed on discovery;

4. Any other proposed orders with respect to discovery; and

5. A statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in the motion.

Each party and his attorney are under a duty to participate in good faith in the framing of a discovery plan if a plan is proposed by the attorney for any party. Notice of the motion shall be served on all parties. Objections or additions to matters set forth in the motion shall be served not later than ten (10) days after service of the motion.

Following the discovery conference, the court shall enter an order tentatively identifying the issues for discovery purposes, establishing a plan and schedule for discovery, setting limitations on discovery, if any; and determining such other matters, including the allocation of expenses, as are necessary for the proper management of discovery in the action. In preparing the plan for discovery the court shall protect the parties from excessive or abusive use of discovery. An order shall be altered or amended whenever justice so requires.

Subject to the right of a party who properly moves for a discovery conference to prompt convening of the conference, the court may combine the discovery conference with a pretrial conference.

G. SIGNING OF DISCOVERY REQUESTS, RESPONSES AND OBJECTIONS. Every request for discovery, response or objection thereto made by a party represented by an attorney shall be signed by at least one of his attorneys of record in his individual name whose address shall be stated. A party who is not represented by an attorney shall sign the request, response or objection and state his address. The signature of the attorney or party constitutes a certification that he has read the request, response or objection, and that it is:

1. To the best of his knowledge, information and belief formed after a reasonable inquiry consistent with the Oklahoma Discovery Code and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law;

2. Interposed in good faith and not primarily to cause delay or for any other improper purpose; and

3. Not unreasonable or unduly burdensome or expensive, given the nature and complexity of the case, the discovery already had in the case, the amount in controversy, and other values at stake in the litigation. If a request, response or objection is not signed, it shall be deemed ineffective.

If a certification is made in violation of the provisions of this subsection, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response or objection is made, or both, an appropriate sanction, which may include an order to pay to the amount of the reasonable expenses occasioned thereby, including a reasonable attorney fee.

SECTION 21. AMENDATORY Section 17, Chapter 139, O.S.L. 2005 (12A O.S. Supp. 2008, Section 1-304), is amended to read as follows:

Section 1-304. Obligation of Good Faith.

Every contract of duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement. Breach of the obligation of good faith imposed by this section shall not give rise to a separate tort cause of action.

SECTION 22. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 56 of Title 20, unless there is created a duplication in numbering, reads as follows:

No later than December 1, 2009, the Supreme Court of this state shall establish qualification rules for determination of indigency for a plaintiff claiming an exemption from providing an affidavit of merit in a civil action for professional negligence pursuant to Section 2 of this act.

SECTION 23. AMENDATORY Section 18, Chapter 368, O.S.L. 2004 (23 O.S. Supp. 2008, Section 15), is amended to read as follows:

Section 15. A. Except as provided in ~~subsections~~ subsection B ~~and C~~ of this section, in any civil action based on fault and not

arising out of contract, the liability for damages caused by two or more persons shall be several only and a joint tortfeasor shall be liable only for the amount of damages allocated to that tortfeasor.

B. A defendant shall be jointly and severally liable for the damages recoverable by the plaintiff if the percentage of responsibility attributed to the defendant with respect to a cause of action is greater than fifty percent (50%).

~~C.~~ If at the time the incident which gave rise to the cause of action occurred, ~~any~~ <u>a</u> joint ~~tortfeasors~~ <u>tortfeasor</u> acted with willful and wanton conduct or with reckless disregard of the consequences of the conduct and such conduct proximately caused the damages legally recoverable by the plaintiff, the liability for damages shall be joint and several <u>as to any such tortfeasor</u>.

~~D.~~ <u>C.</u> This section shall not apply to actions brought by <u>or on behalf of</u> the state ~~or a political subdivision of the state or any action in which no comparative negligence is found to be attributable to the plaintiff~~.

~~E.~~ <u>D.</u> The provisions of this section shall apply to all civil actions based on fault and not arising out of contract that accrue on or after November 1, ~~2004~~ <u>2009</u>.

SECTION 24. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 61.2 of Title 23, unless there is created a duplication in numbering, reads as follows:

A. In any civil action arising from a claimed bodily injury, the amount of compensation which the trier of fact may award a plaintiff for economic loss shall not be subject to any limitation.

B. Except as provided in subsections C and D of this section, in any civil action arising from a claimed bodily injury, the amount of compensation which a trier of fact may award a plaintiff for noneconomic loss shall not exceed Four Hundred Thousand Dollars ($400,000.00), regardless of the number of parties against whom the action is brought or the number of actions brought.

C. Notwithstanding subsection B of this section, there shall be no limit on the amount of noneconomic damages which the trier of fact may award the plaintiff in a civil action arising from a claimed bodily injury resulting from professional negligence against

a physician if the judge and jury finds, by clear and convincing evidence, that:

1. The plaintiff or injured person has suffered permanent and substantial physical abnormality or disfigurement, loss of use of a limb, or loss of, or substantial impairment to, a major body organ or system; or

2. The plaintiff or injured person has suffered permanent physical functional injury which prevents them from being able to independently care for themselves and perform life sustaining activities; or

3. The defendant's acts or failures to act were:

a. in reckless disregard for the rights of others,

b. grossly negligent,

c. fraudulent, or

d. intentional or with malice.

D. Notwithstanding subsection B of this section, there shall be no limit on the amount of noneconomic damages which the trier of fact may award the plaintiff in a civil action arising from claimed bodily injury not resulting from professional negligence against a physician if the trier of fact finds, by a preponderance of the evidence, that:

1. The plaintiff or injured person has suffered permanent and substantial physical abnormality or disfigurement, loss of use of a limb, or loss of, or substantial impairment to, a major body organ or system; or

2. The plaintiff or injured person has suffered permanent physical functional injury which prevents them from being able to independently care for themselves and perform life sustaining activities; or

3. The defendant's acts or failures to act were:

a. in reckless disregard for the rights of others,

b. grossly negligent,

c. fraudulent, or

d. intentional or with malice.

E. In the trial of a civil action arising from claimed bodily injury, if the verdict is for the plaintiff, the court, in a nonjury trial, shall make findings of fact, and the jury, in a trial by jury, shall return a general verdict accompanied by answers to interrogatories, which shall specify all of the following:

1. The total compensatory damages recoverable by the plaintiff;

2. That portion of the total compensatory damages representing the plaintiff's economic loss;

3. That portion of the total compensatory damages representing the plaintiff's noneconomic loss;

4. Whether the injuries for which the plaintiff has been awarded compensation include damages for:

a. permanent and substantial physical abnormality or disfigurement, loss of use of a limb, or loss of, or substantial impairment to, a major body organ or system, or

b. permanent physical functional injury that prevents the injured person from being able to independently care for himself or herself and perform life sustaining activities; and

5. If alleged, whether the conduct of the defendant was or amounted to:

a. reckless disregard for the rights of others,

b. gross negligence,

c. fraud, or

d. intentional or malicious conduct.

F. In any civil action to recover damages arising from claimed bodily injury, after the trier of fact makes the findings required

by subsection E of this section, the court shall enter judgment in favor of the plaintiff for economic damages in the amount determined pursuant to paragraph 2 of subsection E of this section, and subject to paragraphs 4 and 5 of subsection E of this section, the court shall enter a judgment in favor of the plaintiff for noneconomic damages. Except as provided in subsections C and D of this section, in no event shall a judgment for noneconomic damages exceed the maximum recoverable amounts set forth in subsection B of this section. Subsection B of this section shall be applied in a jury trial only after the trier of fact has made its factual findings and determinations as to the amount of the plaintiff's damages.

G. In any civil action arising from claimed bodily injury which is tried to a jury, the jury shall not be instructed with respect to the limit on noneconomic damages set forth in subsection B of this section, nor shall counsel for any party nor any witness inform the jury or potential jurors of such limitations.

H. This section shall not apply to actions brought under The Governmental Tort Claims Act or actions for wrongful death.

I. As used in this section:

1. "Bodily injury" means actual physical injury to the body of a person and sickness or disease resulting therefrom;

2. "Economic damages" means any type of pecuniary harm including, but not limited to:

a. all wages, salaries or other compensation lost as a result of a bodily injury that is the subject of a civil action,

b. all costs incurred for medical care or treatment, rehabilitation services, or other care, treatment, services, products or accommodations as a result of a bodily injury that is the subject of a civil action, or

c. any other costs incurred as a result of a bodily injury that is the subject of a civil action;

3. "Fraudulent" or "fraud" means "actual fraud" as defined pursuant to Section 58 of Title 15 of the Oklahoma Statutes;

4. "Gross negligence" means the want of slight care and diligence;

5. "Malice" involves hatred, spite or ill will, or the doing of a wrongful act intentionally without just cause or excuse;

6. "Noneconomic damages" means nonpecuniary harm that arises from a bodily injury that is the subject of a civil action, including damages for pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, disfigurement, mental anguish and any other intangible loss;

7. "Physician" means a doctor of medicine and surgery, doctor of osteopathic medicine and a doctor of allopathic medicine, each duly licensed by this state; and

8. "Reckless disregard of another's rights" shall have the same meaning as willful and wanton conduct and shall mean that the defendant was either aware, or did not care, that there was a substantial and unnecessary risk that his, her or its conduct would cause serious injury to others. In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances and there must have been a high probability that the conduct would cause serious harm to another person.

J. Upon establishment of a Health Care Indemnity Fund, any damages awarded pursuant to subsection C of this section that exceed the limitation established by subsection B of this section shall be paid by such fund. The provisions of this section shall not apply to any action that accrues before the date of enactment of the Health Care Indemnity Fund established pursuant to the recommendations of the Task Force created in Section 25 of this act; provided, such fund shall include professional liability insurance coverage requirements in an amount of not less than One Million Dollars ($1,000,000.00) for physicians, and shall maintain availability of Twenty Million Dollars ($20,000,000.00) annually. It is the intent of the Legislature that the state purchase reinsurance of up to Twenty Million Dollars ($20,000,000.00) to cover judgments through such fund.

SECTION 25. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2211 of Title 36, unless there is created a duplication in numbering, reads as follows:

A. There is hereby created the "Health Care Indemnity Fund Task Force".

B. The task force shall study a mechanism for creating a health care indemnity fund for purposes of paying a portion of damages awarded by the court or settled and approved by the court in professional negligence cases against physicians as defined in subsection I of Section 24 of this act. The task force shall study the following issues:

1. Funding, expenses and investments;

2. Capping the fund at a rate of Twenty Million Dollars ($20,000,000.00) annually;

3. Limiting damage award payments from the fund to:

   a. professional negligence cases against physicians where the noneconomic damage cap has been removed, and

   b. only that amount of damages that exceed the noneconomic damage cap of Four Hundred Thousand Dollars ($400,000.00) per occurrence;

4. Purchase of reinsurance;

5. Professional liability insurance coverage requirements, in an amount of no less than One Million Dollars ($1,000,000.00) for physicians;

6. Qualifications for coverage under the fund;

7. Applicant, compliance, payment and rating procedures; and

8. Any other issues necessary for creating a health care indemnity fund.

C. The task force shall be composed of eight (8) members as follows:

1. The Oklahoma Insurance Commissioner or designee;

2. Three members appointed by the Governor;

3. Two members appointed by the President Pro Tempore of the Senate, one of whom shall be a physician; and

4. Two members appointed by the Speaker of the House of Representatives, one of whom shall be a physician.

D. The task force may meet as often as necessary to perform the duties imposed upon it. Members of the task force shall receive no compensation for their services, but shall receive travel reimbursement as follows:

1. Legislative members of the task force shall be reimbursed for necessary travel expenses incurred in the performance of their duties in accordance with the provisions of Section 456 of Title 74 of the Oklahoma Statutes; and

2. Nonlegislative members of the task force shall be reimbursed for necessary travel expenses incurred in the performance of their duties in accordance with the State Travel Reimbursement Act.

E. The task force shall be authorized to hire actuarial or any other professional services necessary to perform the duties imposed on it.

F. A quorum of the task force shall be required for any final action, and shall report its findings and recommendations to the President Pro Tempore of the Senate and the Speaker of the House of Representatives not later than May 1, 2011.

SECTION 26. AMENDATORY 47 O.S. 2001, Section 11-1112, as last amended by Section 1, Chapter 361, O.S.L. 2005 (47 O.S. Supp. 2008, Section 11-1112), is amended to read as follows:

Section 11-1112. A. Every driver, when transporting a child under six (6) years of age in a motor vehicle operated on the roadways, streets, or highways of this state, shall provide for the protection of said child by properly using a child passenger restraint system. For purposes of this section and Section 11-1113 of this title, "child passenger restraint system" means an infant or child passenger restraint system which meets the federal standards as set by 49 C.F.R., Section 571.213.

B. Children at least six (6) years of age but younger than thirteen (13) years of age shall be protected by use of a child passenger restraint system or a seat belt.

C. The provisions of this section shall not apply to:

1. The driver of a school bus, taxicab, moped, motorcycle, or other motor vehicle not required to be equipped with safety belts pursuant to state or federal laws;

2. The driver of an ambulance or emergency vehicle;

3. The driver of a vehicle in which all of the seat belts are in use;

4. The transportation of children who for medical reasons are unable to be placed in such devices; or

5. The transportation of a child who weighs more than forty (40) pounds and who is being transported in the back seat of a vehicle while wearing only a lap safety belt when the back seat of the vehicle is not equipped with combination lap and shoulder safety belts, or when the combination lap and shoulder safety belts in the back seat are being used by other children who weigh more than forty (40) pounds. Provided, however, for purposes of this paragraph, back seat shall include all seats located behind the front seat of a vehicle operated by a licensed child care facility or church. Provided further, there shall be a rebuttable presumption that a child has met the weight requirements of this paragraph if at the request of any law enforcement officer, the licensed child care facility or church provides the officer with a written statement verified by the parent or legal guardian that the child weighs more than forty (40) pounds.

D. A law enforcement officer is hereby authorized to stop a vehicle if it appears that the driver of the vehicle has violated the provisions of this section and to give an oral warning to said driver. The warning shall advise the driver of the possible danger to children resulting from the failure to install or use a child passenger restraint system or seat belts in the motor vehicle.

E. A violation of the provisions of this section shall ~~not~~ be admissible as evidence in any civil action or proceeding for damages unless the plaintiff in such action or proceeding is a child under sixteen (16) years of age.

~~F.~~ In any action brought by or on behalf of an infant for personal injuries or wrongful death sustained in a motor vehicle

collision, the failure of any person to have the infant properly restrained in accordance with the provisions of this section shall not be used in aggravation or mitigation of damages.

~~G.~~ F. Any person convicted of violating subsection A or B of this section shall be punished by a fine of Fifty Dollars ($50.00) and shall pay all court costs thereof. Revenue from such fine shall be apportioned to the Department of Public Safety Revolving Fund and used by the Oklahoma Highway Safety Office to promote the use of child passenger restraint systems as provided in Section 11-1113 of this title. This fine shall be suspended and the court costs limited to a maximum of Fifteen Dollars ($15.00) in the case of the first offense upon proof of purchase or acquisition by loan of a child passenger restraint system. Provided, the Department of Public Safety shall not assess points to the driving record of any person convicted of a violation of this section.

SECTION 27. AMENDATORY 47 O.S. 2001, Section 12-420, as amended by Section 13, Chapter 50, O.S.L. 2005 (47 O.S. Supp. 2008, Section 12-420), is amended to read as follows:

Section 12-420. ~~Nothing in~~ Sections 12-416 through 12-420 of this title ~~shall~~ may be used in any civil proceeding in this state and the use or nonuse of seat belts shall ~~not~~ be submitted into evidence in any civil suit in Oklahoma unless the plaintiff in such suit is a child under sixteen (16) years of age.

SECTION 28. AMENDATORY 63 O.S. 2001, Section 1-1709.1, as last amended by Section 2, Chapter 558, O.S.L. 2004 (63 O.S. Supp. 2008, Section 1-1709.1), is amended to read as follows:

Section 1-1709.1 A. As used in this section:

1. "Credentialing or recredentialing data" means:

   a. the application submitted by a health care professional requesting appointment or reappointment to the medical staff of a health care facility or requesting clinical privileges or other permission to provide health care services at a health care facility,

   b. any information submitted by the health care professional in support of such application,

c. any information, unless otherwise privileged, obtained by the health care facility during the credentialing or recredentialing process regarding such application, and

d. the decision made by the health care facility regarding such application;

2. "Credentialing or recredentialing process" means any process, program or proceeding utilized by a health care facility to assess, review, study or evaluate the credentials of a health care professional;

3. "Health care facility" means:

a. any hospital or related institution offering or providing health care services under a license issued pursuant to Section 1-706 of this title,

b. any ambulatory surgical center offering or providing health care services under a license issued pursuant to Section 2660 of this title, and

c. the clinical practices of accredited allopathic and osteopathic state medical schools;

4. "Health care professional" means any person authorized to practice allopathic medicine and surgery, osteopathic medicine, podiatric medicine, optometry, chiropractic, psychology, dentistry or a dental specialty under a license issued pursuant to Title 59 of the Oklahoma Statutes;

5. "Peer review information" means all records, documents and other information generated during the course of a peer review process, including any reports, statements, memoranda, correspondence, record of proceedings, materials, opinions, findings, conclusions and recommendations, credentialing data and recredentialing data, but does not include:

a. the medical records of a patient whose health care in a health care facility is being reviewed,

b. incident reports and other like documents regarding health care services being reviewed, regardless of how the reports or documents are titled or captioned,

c. the identity of any individuals who have personal knowledge regarding the facts and circumstances surrounding the patient's health care in the health care facility,

d. factual statements regarding the patient's health care in the health care facility from any individuals who have personal knowledge regarding the facts and circumstances surrounding the patient's health care, which factual statements were generated outside the peer review process,

e. the identity of all documents and raw data previously created elsewhere and considered during the peer review process, or

f. copies of all documents and raw data previously created elsewhere and considered during the peer review process, whether available elsewhere or not~~, or~~

~~g.~~ ~~credentialing or recredentialing data regarding the health care professional who provided the health care services being reviewed or who is the subject of a credentialing or recredentialing process~~; and

6. "Peer review process" means any process, program or proceeding, including a credentialing or recredentialing process, utilized by a health care facility or county medical society to assess, review, study or evaluate the credentials, competence, professional conduct or health care services of a health care professional.

B. 1. Peer review information shall be private, confidential and privileged~~:~~

~~a.~~ except that a health care facility or county medical society shall be permitted to provide relevant peer review information to the state agency or board which licensed the health care professional who provided the health care services being reviewed in a peer review process or who is the subject of a credentialing or recredentialing process, with notice to the health care professional~~, and~~

~~b.~~ ~~except as provided in subsections C and D of this section~~.

2. Nothing in this section shall be construed to abrogate, alter or affect any provision in the Oklahoma Statutes which provides that information regarding liability insurance of a health care facility or health care professional is not discoverable or admissible.

C. In any civil action in which a patient or patient’s legal representative has alleged that the patient has suffered injuries resulting from negligence by a health care professional in providing health care services to the patient in a health care facility, factual statements, presented during a peer review process utilized by such health care facility, regarding the patient’s health care in the health care facility from individuals who have personal knowledge of the facts and circumstances surrounding the patient’s health care shall <u>not</u> be subject to discovery~~, pursuant to the Oklahoma Discovery Code, upon an affirmative showing that such statements are not otherwise available in any other manner~~.

D. ~~1.~~ In any civil action in which a patient or patient’s legal representative has alleged~~:~~

~~a.~~ ~~that the patient has suffered injuries resulting from negligence by a health care professional in providing health care services to the patient in a health care facility, or~~

~~b.~~ that the health care facility was independently negligent as a result of permitting the health care professional to provide health care services to the patient in the health care facility,

the <u>credentialing and recredentialing data, and the</u> recommendations made and action taken as a result of any peer review process utilized by such health care facility regarding the health care professional prior to the date of the alleged negligence shall be subject to discovery pursuant to the Oklahoma Discovery Code.

2. Any information discovered pursuant to this subsection:

a. shall not be admissible as evidence until a judge or jury has <u>first</u> found the health care professional to

have been negligent in providing health care services to the patient in such health care facility, and

b. shall not at any time include the identity or means by which to ascertain the identity of any other patient or health care professional.

E. No person involved in a peer review process may be permitted or required to testify regarding the peer review process in any civil proceeding or disclose by responses to written discovery requests any peer review information.

SECTION 29. AMENDATORY 63 O.S. 2001, Section 683.9, as amended by Section 9, Chapter 329, O.S.L. 2003 (63 O.S. Supp. 2008, Section 683.9), is amended to read as follows:

Section 683.9 The provisions of this section shall be operative only during the existence of a natural or man-made emergency. The existence of such emergency may be proclaimed by the Governor or by concurrent resolution of the Legislature if the Governor in such proclamation, or the Legislature in such resolution, finds that an emergency or disaster has occurred or is anticipated in the immediate future. Any such emergency, whether proclaimed by the Governor or by the Legislature, shall terminate upon the proclamation of the termination thereof by the Governor, or by passage by the Legislature of a concurrent resolution terminating such emergency. During such period as such state of emergency exists or continues, the Governor shall have and may exercise the following additional emergency powers:

1. To activate the Emergency Operations Plan, and to assume regulatory control over all essential resources of this state, directly or through the boards, agencies, offices and officers established by ~~said~~ the Emergency Operations Plan, to determine priorities of such resources and allocate such resources as the Governor may deem necessary in cooperation with the political subdivisions of this state, the federal government, or other states. "Resources" shall mean all economic resources within this state including but not limited to food, manpower, health ~~and health manpower~~, water, transportation, economic stabilization, electric power, petroleum, gas, and solid fuel, industrial production, construction and housing.

2. To enforce all laws, rules and regulations relating to emergency management and to assume direct operational control of any or all emergency management forces and helpers in this state.

3. To provide for the evacuation of all or part of the population from any stricken or threatened area or areas within this state and to take such steps as are necessary for the receipt and care of such evacuees.

4. Subject to the provisions of the State Constitution, to remove from office any public officer having administrative responsibilities under this act for willful failure to obey any order, rule or regulation adopted pursuant to this act. Such removal shall be upon charges after service upon such person of a copy of such charges and after giving such person an opportunity to be heard in the defense of such person. Pending the preparation and disposition of charges, the Governor may suspend such person for a period not exceeding thirty (30) days. A vacancy resulting from removal or suspension pursuant to this section shall be filled by the Governor until it is filled as otherwise provided by law.

5. To perform and exercise such other functions, powers, and duties as are necessary to promote and secure the safety and protection of the civilian population and to carry out the provisions of the Emergency Operations Plan in a national or state emergency.

SECTION 30. AMENDATORY 63 O.S. 2001, Section 683.13, as amended by Section 12, Chapter 329, O.S.L. 2003 (63 O.S. Supp. 2008, Section 683.13), is amended to read as follows:

Section 683.13 A. All functions hereunder and all other activities relating to emergency management are hereby declared to be governmental functions. The provisions of this section shall not affect the right of any person to receive benefits to which the person would otherwise be entitled under this act, or under the workers' compensation law, or under any pension law, nor the right of any such person to receive any benefits or compensation under any Act of Congress. Any municipal fireman or policeman engaged in any emergency management activities, while complying with or attempting to comply with this act or any rule or regulation pursuant thereto, shall be considered as serving in his or her regular line of duty and shall be entitled to all benefits of any applicable pension fund.

B. Any requirement for a license to practice any professional, mechanical, or other skill shall not apply to any authorized emergency management worker from any state rendering mutual aid and who holds a comparable license in that state, who shall practice such professional, mechanical, or other skill during an emergency declared under the provisions of this act, when such professional, mechanical or other skill is exercised in accordance with the provisions of this act.

C. As used in this section, the term “emergency management worker" shall include any full or part-time paid, volunteer, or auxiliary employee of this state, or other states, territories, possession or the District of Columbia, of the federal government, or any neighboring country, or of any political subdivision thereof, or of any agency or organization, performing emergency management services under state supervision, and who has been properly trained in the performance of emergency management functions, at any place in this state subject to the order or control of, or pursuant to a request of, the state government or any political subdivision thereof. The term “emergency management worker” shall not include any volunteer health practitioner subject to the provisions of the Uniform Emergency Volunteer Health Practitioners Act.

D. Any emergency management worker, as defined in this section, performing emergency management services at any place in this state pursuant to agreements, compacts, or arrangements for mutual aid and assistance, to which the state or a political subdivision thereof is a party, shall possess the same powers, duties, immunities, and privileges the person would ordinarily possess if performing the same duties in the state, province, or political subdivision thereof in which normally employed or rendering services.

SECTION 31. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.14 of Title 63, unless there is created a duplication in numbering, reads as follows:

Sections 31 through 41 of this act shall be known and may be cited as the “Uniform Emergency Volunteer Health Practitioners Act”.

SECTION 32. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.15 of Title 63, unless there is created a duplication in numbering, reads as follows:

As used in the Uniform Emergency Volunteer Health Practitioners Act:

1. "Disaster relief organization" means an entity that provides emergency or disaster relief services that include health or veterinary services provided by volunteer health practitioners and that:

a. is designated or recognized as a provider of those services pursuant to a disaster response and recovery plan adopted by an agency of the federal government or the State Department of Health, and

b. regularly plans and conducts its activities in coordination with an agency of the federal government or the State Department of Health;

2. "Emergency" means an event or condition that is an emergency pursuant to the Oklahoma Emergency Management Act of 2003 or the Catastrophic Health Emergency Powers Act;

3. "Emergency declaration" means a declaration of emergency issued by a person authorized to do so under the laws of this state pursuant to the Oklahoma Emergency Management Act of 2003 or the Catastrophic Health Emergency Powers Act;

4. "Emergency Management Assistance Compact" means the interstate compact approved by Congress by Public Law No. 104-321,110 Stat. 3877;

5. "Entity" means a person other than an individual;

6. "Health facility" means an entity licensed under the laws of this or another state to provide health or veterinary services;

7. "Health practitioner" means an individual licensed under the laws of this or another state to provide health or veterinary services;

8. "Health services" means the provision of treatment, care, advice or guidance, or other services, or supplies, related to the health or death of individuals or human populations, to the extent necessary to respond to an emergency, including:

a. the following, concerning the physical or mental condition or functional status of an individual or affecting the structure or function of the body:

(1) preventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and

(2) counseling, assessment, procedures, or other services,

b. sale or dispensing of a drug, a device, equipment, or another item to an individual in accordance with a prescription, and

c. funeral, cremation, cemetery, or other mortuary services;

9. “Host entity” means an entity operating in this state which uses volunteer health practitioners to respond to an emergency;

10. “License” means authorization by a state to engage in health or veterinary services that are unlawful without the authorization and includes authorization under the laws of this state to an individual to provide health or veterinary services based upon a national certification issued by a public or private entity;

11. “Person” means an individual, corporation, business trust, trust, partnership, limited liability company, association, joint venture, public corporation, government or governmental subdivision, agency, or instrumentality, or any other legal or commercial entity;

12. “Scope of practice” means the extent of the authorization to provide health or veterinary services granted to a health practitioner by a license issued to the practitioner in the state in which the principal part of the practitioner’s services are rendered, including any conditions imposed by the licensing authority;

13. “State” means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States;

14. “Veterinary services” means the provision of treatment, care, advice or guidance, or other services, or supplies, related to the health or death of an animal or to animal populations, to the

extent necessary to respond to an emergency, including, but not limited to:

a. diagnosis, treatment, or prevention of an animal disease, injury, or other physical or mental condition by the prescription, administration, or dispensing of vaccine, medicine, surgery, or therapy,

b. use of a procedure for reproductive management, and

c. monitoring and treatment of animal populations for diseases that have spread or demonstrate the potential to spread to humans; and

15. "Volunteer health practitioner" means a health practitioner who provides health or veterinary services, whether or not the practitioner receives compensation for those services and does not include a practitioner who receives compensation pursuant to a preexisting employment relationship with a host entity or affiliate which requires the practitioner to provide health services in this state, unless the practitioner is not a resident of this state and is employed by a disaster relief organization providing services in this state while an emergency declaration is in effect.

SECTION 33. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.16 of Title 63, unless there is created a duplication in numbering, reads as follows:

This Uniform Emergency Volunteer Health Practitioners Act applies to volunteer health practitioners registered with a registration system that complies with Section 35 of this act and who provide health or veterinary services in this state for a host entity while an emergency declaration is in effect.

SECTION 34. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.17 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. While an emergency declaration is in effect, the State Department of Health may limit, restrict, or otherwise regulate:

1. The duration of practice by volunteer health practitioners;

2. The geographical areas in which volunteer health practitioners may practice;

3. The types of volunteer health practitioners who may practice; and

4. Any other matters necessary to coordinate effectively the provision of health or veterinary services during the emergency.

B. An order issued pursuant to subsection A of this section may take effect immediately, without prior notice or comment, and is not a rule within the meaning of the Administrative Procedures Act.

C. A host entity that uses volunteer health practitioners to provide health or veterinary services in this state shall:

1. Consult and coordinate its activities with the State Department of Health to the extent practicable to provide for the efficient and effective use of volunteer health practitioners; and

2. Comply with any laws other than this act relating to the management of emergency health or veterinary services, including the Oklahoma Emergency Management Act of 2003 and the Catastrophic Health Emergency Powers Act.

SECTION 35. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.18 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. To qualify as a volunteer health practitioner registration system, a system must:

1. Accept applications for the registration of volunteer health practitioners before or during an emergency;

2. Include information about the licensure and good standing of health practitioners which is accessible by authorized persons;

3. Be capable of confirming the accuracy of information concerning whether a health practitioner is licensed and in good standing before health services or veterinary services are provided under the Uniform Emergency Volunteer Health Practitioners Act; and

4. Meet one of the following conditions:

a. be an emergency system for advance registration of volunteer health practitioners established by a state

and funded through the Health Resources Services Administration under Section 319I of the Public Health Services Act, 42 U.S.C., Section 247d-7b,

b. be a local unit consisting of trained and equipped emergency response, public health, and medical personnel formed pursuant to Section 2801 of the Public Health Services Act, 42 U.S.C., Section 300hh,

c. be operated by a:

(1) disaster relief organization,

(2) licensing board,

(3) national or regional association of licensing boards or health practitioners,

(4) health facility that provides comprehensive inpatient and outpatient health-care services, including a tertiary care and teaching hospital, or

(5) governmental entity, or

d. be designated by the State Department of Health as a registration system for purposes of the Uniform Emergency Volunteer Health Practitioners Act.

B. While an emergency declaration is in effect, the State Department of Health, a person authorized to act on behalf of the Department, or a host entity may confirm whether volunteer health practitioners utilized in this state are registered with a registration system that complies with subsection A of this section. Confirmation is limited to obtaining identities of the practitioners from the system and determining whether the system indicates that the practitioners are licensed and in good standing.

C. Upon request of a person in this state authorized under subsection B of this section, or a similarly authorized person in another state, a registration system located in this state shall notify the person of the identities of volunteer health practitioners and whether the practitioners are licensed and in good standing.

D. A host entity shall not be required to use the services of a volunteer health practitioner even if the practitioner is registered with a registration system that indicates that the practitioner is licensed and in good standing.

SECTION 36. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.19 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. While an emergency declaration is in effect, a volunteer health practitioner, registered with a registration system that complies with Section 35 of this act and licensed and in good standing in the state upon which the registration of the practitioner is based, may practice in this state to the extent authorized by the Uniform Emergency Volunteer Health Practitioners Act as if the practitioner were licensed in this state.

B. A volunteer health practitioner qualified under subsection A of this section is not entitled to the protections of the Uniform Emergency Volunteer Health Practitioners Act if the practitioner is licensed in more than one state and any license of the practitioner is suspended, revoked, or subject to an agency order limiting or restricting practice privileges, or has been voluntarily terminated under threat of sanction.

SECTION 37. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.20 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. For purposes of this section:

1. “Credentialing” means obtaining, verifying, and assessing the qualifications of a health practitioner to provide treatment, care, or services in or for a health facility; and

2. “Privileging” means the authorizing by an appropriate authority, such as a governing body, of a health practitioner to provide specific treatment, care, or services at a health facility subject to limits based on factors that include license, education, training, experience, competence, health status, and specialized skill.

B. The Uniform Emergency Volunteer Health Practitioners Act does not affect credentialing or privileging standards of a health facility and does not preclude a health facility from waiving or

modifying those standards while an emergency declaration is in effect.

SECTION 38. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.21 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. Subject to subsections B and C of this section, a volunteer health practitioner shall adhere to the scope of practice for a similarly licensed practitioner established by the licensing provisions, practice acts, or other laws of this state.

B. Except as otherwise provided in subsection C of this section, the Uniform Emergency Volunteer Health Practitioners Act does not authorize a volunteer health practitioner to provide services that are outside the scope of practice of the practitioner, even if a similarly licensed practitioner in this state would be permitted to provide the services.

C. The State Department of Health may modify or restrict the health or veterinary services that volunteer health practitioners may provide pursuant to the Uniform Emergency Volunteer Health Practitioners Act. An order under this subsection may take effect immediately, without prior notice or comment, and is not a rule within the meaning of the Administrative Procedures Act.

D. A host entity may restrict the health or veterinary services that a volunteer health practitioner may provide pursuant to the Uniform Emergency Volunteer Health Practitioners Act.

E. A volunteer health practitioner does not engage in unauthorized practice unless the practitioner has reason to know of any limitation, modification, or restriction under this section or that a similarly licensed practitioner in this state would not be permitted to provide the services. A volunteer health practitioner has reason to know of a limitation, modification, or restriction or that a similarly licensed practitioner in this state would not be permitted to provide a service if:

1. The practitioner knows the limitation, modification, or restriction exists or that a similarly licensed practitioner in this state would not be permitted to provide the service; or

2. From all the facts and circumstances known to the practitioner at the relevant time, a reasonable person would

conclude that the limitation, modification, or restriction exists or that a similarly licensed practitioner in this state would not be permitted to provide the service.

F. In addition to the authority granted by law of this state other than the Uniform Emergency Volunteer Health Practitioners Act to regulate the conduct of health practitioners, a licensing board or other disciplinary authority in this state:

1. May impose administrative sanctions upon a health practitioner licensed in this state for conduct outside of this state in response to an out-of-state emergency;

2. May impose administrative sanctions upon a practitioner not licensed in this state for conduct in this state in response to an in-state emergency; and

3. Shall report any administrative sanctions imposed upon a practitioner licensed in another state to the appropriate licensing board or other disciplinary authority in any other state in which the practitioner is known to be licensed.

G. In determining whether to impose administrative sanctions under subsection F of this section, a licensing board or other disciplinary authority shall consider the circumstances in which the conduct took place, including any exigent circumstances, and the scope of practice, education, training, experience, and specialized skill of the practitioner.

SECTION 39. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.22 of Title 63, unless there is created a duplication in numbering, reads as follows:

A. The Uniform Emergency Volunteer Health Practitioners Act does not limit rights, privileges, or immunities provided to volunteer health practitioners by laws other than the Uniform Emergency Volunteer Health Practitioners Act. Except as otherwise provided in subsection B of this section, the Uniform Emergency Volunteer Health Practitioners Act does not affect requirements for the use of health practitioners pursuant to the Emergency Management Assistance Compact.

B. The State Department of Health, pursuant to the Emergency Management Assistance Compact, may incorporate into the emergency forces of this state volunteer health practitioners who are not

officers or employees of this state, a political subdivision of this state, or a municipality or other local government within this state.

SECTION 40. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.23 of Title 63, unless there is created a duplication in numbering, reads as follows:

The State Board of Health may promulgate rules to implement the Uniform Emergency Volunteer Health Practitioners Act. In doing so, the State Department of Health shall consult with and consider the recommendations of the entity established to coordinate the implementation of the Emergency Management Assistance Compact and shall also consult with and consider rules promulgated by similarly empowered agencies in other states to promote uniformity of application of the Uniform Emergency Volunteer Health Practitioners Act and make the emergency response systems in the various states reasonably compatible.

SECTION 41. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.24 of Title 63, unless there is created a duplication in numbering, reads as follows:

In applying and construing the Uniform Emergency Volunteer Health Practitioners Act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.

SECTION 42. AMENDATORY 76 O.S. 2001, Section 31, is amended to read as follows:

Section 31. A. Any volunteer shall be immune from liability in a civil action on the basis of any act or omission of the volunteer resulting in damage or injury if:

1. The volunteer was acting in good faith and within the scope of the volunteer's official functions and duties for a charitable organization or not-for-profit corporation; and

2. The damage or injury was not caused by gross negligence or willful and wanton misconduct by the volunteer.

B. In any civil action against a charitable organization or not-for-profit corporation for damages based upon the conduct of a volunteer, the doctrine of respondeat superior shall apply,

notwithstanding the immunity granted to the volunteer in subsection A of this section.

C. Any person who, in good faith and without compensation, or expectation of compensation, donates or loans emergency service equipment to a volunteer shall not be liable for damages resulting from the use of such equipment by the volunteer, except when the donor of the equipment knew or should have known that the equipment was dangerous or faulty in a way which could result in bodily injury, death or damage to property.

D. Definitions.

1. For the purposes of this section, the term "volunteer" means a person who enters into a service or undertaking of the person's free will without compensation or expectation of compensation in money or other thing of value in order to provide a service, care, assistance, advice, or other benefit ~~where the person does not offer that type of service, care, assistance, advice or other benefit for sale to the public~~<u>; provided, being legally entitled to receive compensation for the service or undertaking performed shall not preclude a person from being considered a volunteer</u>.

2. For the purposes of this section, the term "charitable organization" means any benevolent, philanthropic, patriotic, eleemosynary, educational, social, civic, recreational, religious group or association or any other person performing or purporting to perform acts beneficial to the public.

3. For the purposes of this section, the term "not-for-profit corporation" means a corporation formed for a purpose not involving pecuniary gain to its shareholders or members, paying no dividends or other pecuniary remuneration, directly or indirectly, to its shareholders or members as such, and having no capital stock.

E. The provisions of this section shall not affect the liability that any person may have which arises from the operation of a motor vehicle, watercraft, or aircraft in rendering the service, care, assistance, advice or other benefit as a volunteer.

F. The immunity from civil liability provided for by this section shall extend only to the actions taken by a person rendering the service, care, assistance, advice, or other benefit as a volunteer, ~~and does not~~ <u>where such actions are agreed upon in advance by all involved persons to be provided on a volunteer basis.</u>

<u>This section shall not be construed to</u> confer any immunity to any person for actions taken by the volunteer prior to or after the rendering of the service, care, assistance, advice, or other benefit as a volunteer.

G. This section shall apply to all civil actions filed after ~~the effective date of this act~~ <u>August 25, 1995</u>.

SECTION 43. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 33 of Title 76, unless there is created a duplication in numbering, reads as follows:

Sections 43 through 46 of this act shall be known and may be cited as the "Common Sense Consumption Act".

SECTION 44. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 34 of Title 76, unless there is created a duplication in numbering, reads as follows:

The intent of the Common Sense Consumption Act is to prevent frivolous lawsuits against manufacturers, packers, distributors, carriers, holders, sellers, marketers or advertisers of food products that comply with applicable statutory and regulatory requirements.

SECTION 45. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 35 of Title 76, unless there is created a duplication in numbering, reads as follows:

As used in the Common Sense Consumption Act:

1. "Claim" means any claim by or on behalf of a natural person, as well as any derivative or other claim arising therefrom asserted by or on behalf of any other individual, corporation, company, association, firm, partnership, society, joint-stock company, or any other entity, including any governmental entity or governmental officer, or private attorney; and

2. "Knowing and willful violation" means that:

a. the conduct constituting the violation was committed with the intent to deceive or injure consumers or with actual knowledge that such conduct was injurious to consumers, and

b. the conduct constituting the violation was not required by regulations, orders, rules or other pronouncement of, or any statute administered by, a federal, state, or local government agency.

SECTION 46. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 36 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. Except as provided in subsection B of this section, a manufacturer, packer, distributor, carrier, holder, seller, marketer or advertiser of a food, as defined in Section 201(f) of the Federal Food, Drug and Cosmetic Act (21 U.S.C., Section 321(f)), or an association of one or more such entities, shall not be subject to civil liability arising under any law of this state, including all statutes, regulations, rules, common law, public policies, court or administrative decisions or decrees, or other state action having the effect of law, for any claim arising out of weight gain, obesity, or a health condition associated with weight gain or obesity.

B. Subsection A of this section shall not preclude civil liability if the claim of weight gain, obesity, or a health condition associated with weight gain or obesity, is based on:

1. A material violation of an adulteration or misbranding requirement prescribed by statute or regulation of this state or the United States of America and the claimed injury was proximately caused by such violation; or

2. Any other material violation of federal or state law applicable to the manufacturing, marketing, distribution, advertising, labeling, or sale of food, provided that such violation is knowing and willful, and the claimed injury was proximately caused by such violation.

C. In any action exempted under paragraph 1 of subsection B of this section, the complaint initiating such action shall state with particularity the following: the statute, regulation or other law of this state or of the United States that was allegedly violated; the facts that are alleged to constitute a material violation of such statute or regulation; and the facts alleged to demonstrate that such violation proximately caused actual injury to the plaintiff. In any action exempted under paragraph 2 of subsection B of this section, in addition to the foregoing pleading requirements,

the complaint initiating such action shall state with particularity facts sufficient to support a reasonable inference that the violation was with intent to deceive or injure consumers or with the actual knowledge that such violation was injurious to consumers. For purposes of applying the Common Sense Consumption Act, the foregoing pleading requirements are hereby deemed part of the substantive law of this state and not merely in the nature of procedural provisions.

D. In any action exempted under subsection B of this section, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party. During the pendency of any stay of discovery pursuant to this subsection, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations, including electronically recorded or stored data, and tangible objects that are in the custody or control of such party and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under Section 3234 of Title 12 of the Oklahoma Statutes.

E. The provisions of the Common Sense Consumption Act shall apply to all covered claims pending on November 1, 2009, and all claims filed thereafter, regardless of when the claim arose.

SECTION 47. AMENDATORY 76 O.S. 2001, Section 50.2, is amended to read as follows:

Section 50.2 As used in the Oklahoma Livestock Activities Liability Limitation Act:

1. “Engages in a livestock activity” includes training, racing, showing, riding, or assisting in medical treatment of, or driving livestock, or engaging in any agritourism activity involving livestock or on a location where livestock are displayed or raised, and any person assisting a participant, livestock activity sponsor or livestock professional. The term “engages in a livestock activity” does not include being a spectator at a livestock activity, except in cases where the spectator places himself or herself in immediate proximity to livestock activity;

2. “Agritourism activity” includes, but is not limited to, any activity carried out on a farm or ranch that allows members of the general public, for recreational, entertainment, or educational purposes, to view or enjoy rural activities, including farming, ranching, historic, cultural, harvest-your-own activities, or natural activities and attractions. An activity is an agritourism activity whether or not the participant pays to participate in the activity;

3. “Livestock” means any cattle, bison, hog, sheep, goat, equine livestock, including but not limited to animals of the families bovidae, cervidae and antilocapridae or birds of the ratite group;

~~3.~~ 4. “Livestock activity” includes but is not limited to:

a. livestock shows, fairs, livestock sales, competitions, performances, or parades that involve any or all breeds of livestock and any of the livestock disciplines, including, but not limited to, rodeos, auctions, driving, pulling, judging, cutting and showing,

b. livestock training or teaching activities or both such training and teaching activities,

c. boarding or pasturing livestock,

d. inspecting or evaluating livestock belonging to another, whether or not the owner has received some monetary consideration or other thing of value for the use of the livestock or is permitting a prospective purchaser of the livestock to inspect or evaluate the livestock,

e. drives, rides, trips, hunts or other livestock activities of any type however informal or impromptu that are sponsored by a livestock activity sponsor, ~~and~~

f. placing or replacing horseshoes on an equine, or otherwise preparing livestock for show, and

g. agritourism activities involving the viewing of, handling of, riding of, showing of, or other interactive activities with livestock;

~~4.~~ 5. "Livestock activity sponsor" means an individual, group, club, partnership or corporation, whether or not the sponsor is operating for profit or nonprofit, which sponsors, organizes, or provides the facilities for, a livestock activity, including but not limited to: livestock clubs, 4-H clubs, FFA chapters, school and college-sponsored classes, programs and activities, therapeutic riding programs, and operators, instructors, and promoters of livestock facilities, including, but not limited to, barns, stables, clubhouses, ponyride strings, fairs and arenas at which the activity is held;

~~5.~~ 6. "Livestock professional" means a person engaged for compensation in:

a. instructing a participant or renting to a participant livestock for the purpose of engaging in livestock activity, or

b. renting equipment or tack to a participant;

~~6.~~ 7. "Inherent risks of livestock activities" means those dangers or conditions which are an integral part of livestock activities, including but not limited to:

a. the propensity of livestock to behave in ways that may result in injury to persons on or around them,

b. the unpredictability of livestock's reaction to such things as sounds, sudden movement and unfamiliar objects, persons or other animals,

c. certain hazards such as surface and subsurface conditions unknown to the livestock activity sponsor,

d. collisions with other livestock or objects, and

e. the potential of tack to become dislodged or move in ways that may result in injury to persons on or around livestock activities; and

~~7.~~ 8. "Participant" means any person, whether amateur or professional, who engages in a livestock activity, whether or not a fee is paid to participate in the livestock activity.

SECTION 48. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 51 of Title 76, unless there is created a duplication in numbering, reads as follows:

The Legislature finds that the unlawful use of firearms, rather than their lawful manufacture, distribution, or sale, is the proximate cause of any injury arising from their unlawful use.

SECTION 49. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 52 of Title 76, unless there is created a duplication in numbering, reads as follows:

No firearm manufacturer, distributor, or seller who lawfully manufactures, distributes, or sells a firearm is liable to any person or entity, or to the estate, successors, or survivors of either, for any injury suffered, including wrongful death and property damage, because of use of such firearm by another.

SECTION 50. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 53 of Title 76, unless there is created a duplication in numbering, reads as follows:

No association of persons who hold licenses under Section 923 of Chapter 44 of Title 18, United States Code, as in effect on January 1, 1999, is liable to any person or entity, or to the estate, successors or survivors of either, for any injury suffered, including wrongful death and property damage, because of the use of a firearm sold or manufactured by any licensee who is a member of such association.

SECTION 51. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 54 of Title 76, unless there is created a duplication in numbering, reads as follows:

The provisions of Sections 49 through 51 of this act do not apply to actions for deceit, breach of contract, or expressed or implied warranties, or for injuries resulting from failure of firearms to operate in a normal or usual manner due to defects or negligence in design or manufacture. The provisions of Sections 49 through 51 of this act do not apply to actions arising from the unlawful sale or transfer of firearms, or to instances in which the

transferor knew, or should have known, that the recipient would engage in the unlawful sale or transfer of the firearm, or would use, or purposely allow the use of, the firearm in an unlawful, negligent, or improper fashion. For purposes of this section, the potential of a firearm to cause serious injury, damage, or death as a result of normal function does not constitute a defective condition of the product. A firearm may not be deemed defective on the basis of its potential to cause serious injury, damage, or death when discharged.

SECTION 52. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 57 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In a product liability action, a manufacturer or seller shall not be liable if the product is inherently unsafe and known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community.

B. The claim that a product is inherently unsafe shall be an affirmative defense and shall be pled in accordance with the requirements of the Oklahoma Pleading Code. In order for the defense to apply, all of the following shall be shown:

1. The product was a common consumer product intended for personal consumption;

2. The product’s utility outweighs the risk created by its use;

3. The risk posed by the product was one known by the ordinary consumer who consumes the product with the ordinary knowledge common to the community;

4. The product was properly prepared and reached the consumer without substantial change in its condition; and

5. Adequate warning of the risk posed by the product was given by the manufacturer or seller.

C. For purposes of this section, the term “product liability action” does not include an action based on manufacturing defect or breach of warranty.

SECTION 53. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 58 of Title 76, unless there is created a duplication in numbering, reads as follows:

When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

SECTION 54. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 60 of Title 76, unless there is created a duplication in numbering, reads as follows:

Sections 54 through 65 of this act shall be known and may be cited as the “Asbestos and Silica Claims Priorities Act”.

SECTION 55. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 61 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. FINDINGS. The Legislature finds that:

1. Asbestos is a mineral that was widely used prior to the 1980s for insulation, fire-proofing, and other purposes;

2. Millions of American workers and others were exposed to asbestos, especially during and after World War II, prior to the advent of regulation by the United States Occupational Safety and Health Administration in the early 1970s;

3. Exposure to asbestos is associated with various types of cancer, including mesothelioma, as well as nonmalignant conditions such as asbestosis and diffuse pleural thickening;

4. Diseases caused by asbestos exposure often have long latency periods;

5. While the cases currently filed in Oklahoma are manageable by the courts and the litigants, it is proper for the Legislature to

support and protect the courts of this state from the potential of massive litigation expense and the crowding of trial dockets;

6. Silica is a naturally occurring mineral and is the second most common constituent of the earth's crust. Crystalline silica in the form of quartz is present in sand, gravel, soil, and rocks;

7. Silica-related illnesses, including silicosis, can develop from the inhalation of respirable silica dust. Silicosis was widely recognized as an occupational disease many years ago;

8. Concerns about statutes of limitations may prompt unimpaired asbestos and silica claimants to bring lawsuits to protect their ability to recover for their potentially progressive occupational disease; and

9. Several states, including Texas, Georgia, Ohio, and Florida have enacted legislation setting medical criteria governing asbestos and silica cases and tolling statutes of limitations and requiring persons alleging nonmalignant disease claims to demonstrate physical impairment as a prerequisite to setting such cases for trial.

B. The purpose of this chapter is to:

1. Provide a procedural remedy allowing efficient judicial supervision and control of asbestos and silica litigation by giving priority for the purposes of trial and resolution to asbestos and silica claimants with demonstrable physical impairment caused by exposure to asbestos or silica; and

2. Preserve the legal rights of claimants who were exposed to asbestos or silica, but have no physical impairment from asbestos or silica exposure, until such time as the claimant can demonstrate physical impairment.

SECTION 56. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 62 of Title 76, unless there is created a duplication in numbering, reads as follows:

DEFINITIONS. As used in the Asbestos and Silica Claims Priorities Act:

1. "Asbestos" means all minerals defined as "asbestos" in 29 CFR 1910, as and if amended;

2. "Asbestos claim" means any claim for damages or other civil or equitable relief presented in a civil action, arising out of, based on, or related to the health effects of exposure to asbestos, including loss of consortium and any other derivative claim made by or on behalf of any exposed person or any representative, spouse, parent, child, or other relative of any exposed person;

3. "Asbestos-related injury" means personal injury or death allegedly caused, in whole or in part, by inhalation or ingestion of asbestos;

4. "Asbestosis" means bilateral interstitial fibrosis of the lungs caused by inhalation of asbestos fibers;

5. "Certified B-reader" means a person who has successfully completed the x-ray interpretation course sponsored by the National Institute for Occupational Safety and Health (NIOSH) and passed the B-reader certification examination for x-ray interpretation and whose NIOSH certification is current at the time of any readings required by this chapter;

6. "Chest x-ray" means chest films that are taken in accordance with accepted medical standards in effect at the time the x-ray was taken;

7. "Claimant" means an exposed person and any person who is seeking recovery of damages for or arising from the injury or death of an exposed person;

8. "Defendant" means a person against whom a claim arising from an asbestos-related injury or a silica-related injury is made;

9. "Exposed person" means a person who is alleged to have suffered an asbestos-related injury or a silica-related injury;

10. "FEV1" means forced expiratory volume in the first second, which is the maximal volume of air expelled in one second during performance of simple spirometric tests;

11. "FVC" means forced vital capacity, which is the maximal volume of air expired with maximum effort from a position of full inspiration;

12. "ILO system of classification" means the radiological rating system of the International Labor Office in "Guidelines for

the Use of ILO International Classification of Radiographs of Pneumoconioses", 2000 edition, as amended from time to time by the International Labor Office;

13. "Mesothelioma" means a rare form of cancer allegedly caused in some instances by exposure to asbestos in which the cancer invades cells in the membrane lining of the:

a. lungs and chest cavity (the pleural region),

b. abdominal cavity (the peritoneal region), or

c. heart (the pericardial region);

14. "Nonmalignant asbestos-related injury" means an asbestos-related injury other than mesothelioma or other asbestos-related malignancy;

15. "Physician board-certified in internal medicine" means a physician who is certified by the American Board of Internal Medicine or corresponding board for doctors of osteopathy;

16. "Physician board-certified in occupational medicine" means a physician who is certified in the subspecialty of occupational medicine by the American Board of Preventive Medicine or corresponding board for doctors of osteopathy;

17. "Physician board-certified in oncology" means a physician who is certified in the subspecialty of medical oncology by the American Board of Internal Medicine or corresponding board for doctors of osteopathy;

18. "Physician board-certified in pathology" means a physician who holds primary certification in anatomic pathology or clinical pathology from the American Board of Pathology or corresponding board for doctors of osteopathy and whose professional practice:

a. is principally in the field of pathology, and

b. involves regular evaluation of pathology materials obtained from surgical or postmortem specimens;

19. "Physician board-certified in pulmonary medicine" means a physician who is certified in the subspecialty of pulmonary medicine

by the American Board of Internal Medicine or corresponding board for doctors of osteopathy;

20. "Physician board-certified in radiology" means a physician who is certified by the American Board of Radiology or corresponding board for doctors of osteopathy;

21. "Plethysmography" means the test for determining lung volume, also known as "body plethysmography", in which the subject of the test is enclosed in a chamber that is equipped to measure pressure, flow, or volume change;

22. "Predicted lower limit of normal" for any test means the fifth percentile of healthy populations based on age, height, and gender, as referenced in the AMA Guides to the Evaluation of Permanent Impairment (5th Edition) (dated November 2000);

23. "Pulmonary function testing" means spirometry and lung volume testing performed in accordance with Section 57 of this act using equipment, methods of calibration, and techniques that materially comply with:

a. the criteria incorporated in the American Medical Association Guides to the Evaluation of Permanent Impairment and reported in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part (A), Sections 3.00(E) and (F)(2003), as amended from time to time by the American Medical Association, and

b. the interpretative standards in the Official Statement of the American Thoracic Society entitled "Lung Function Testing: Selection of Reference Values and Interpretative Strategies", as published in 144 American Review of Respiratory Disease 1202-1218 (1991), as amended from time to time by the American Thoracic Society;

24. "Radiological evidence" of asbestosis or pleural thickening means a chest x-ray evaluated by a certified B-reader, a radiologist, a physician board-certified in pulmonary medicine, occupational medicine, internal medicine, oncology, or pathology using the ILO System of classification. The chest x-ray shall be a quality 1 x-ray according to that ILO System, although if the certified B-reader, board-certified pulmonologist, or board-certified radiologist confirms that a quality 2 x-ray film is of

sufficient quality to render an accurate reading under the ILO System of classification and no quality 1 x-ray films are available, then the necessary radiologic findings may be made with the quality 2 x-ray film which is the subject of the confirmation above. Also, in a death case where no pathology is available, the necessary radiologic findings may be made with a quality 2 x-ray film if a quality 1 x-ray film is not available;

25. "Report" means a report required by Sections 58 or 59 of this act;

26. "Respirable" with respect to silica, means particles that are less than ten (10) microns in diameter;

27. "Serve" means to serve notice on a party in compliance with the Oklahoma Rules of Civil Procedure;

28. "Silica" means a naturally occurring, respirable form of crystalline silicon dioxide, including quartz, cristobalite, and tridymite;

29. "Silica claim" means any claim for damages or other civil or equitable relief presented in a civil action, arising out of, based on, or related to the health effects of exposure to silica, including loss of consortium and any other derivative claim made by or on behalf of any exposed person or any representative, spouse, parent, child, or other relative of any exposed person;

30. "Silica-related injury" means personal injury or death allegedly caused, in whole or in part, by inhalation of silica; and

31. "Silicosis" means fibrosis of the lungs caused by inhalation of silica, including:

a. acute silicosis, which may occur after exposure to very high levels of silica within a period of months to five (5) years after the initial exposure,

b. accelerated silicosis, and

c. chronic silicosis.

SECTION 57. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 63 of Title 76, unless there is created a duplication in numbering, reads as follows:

Pulmonary function testing required by this section must be interpreted by a physician who is:

1. Licensed in this state or another state of the United States; and

2. Board-certified in pulmonary medicine, occupational medicine, internal medicine, oncology, or pathology at the time of issuing the relevant medical report.

SECTION 58. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 64 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. No person shall have an asbestos claim placed on any active trial roster in this state, or brought to trial in this state, or conduct discovery in an asbestos claim in this state, in the absence of a prima facie showing of asbestos-related malignancy or impairment as shown by service on each defendant of the information listed in either paragraph 1 or 2 of this subsection:

1. A report by a physician who is board-certified in pulmonary medicine, occupational medicine, internal medicine, oncology, or pathology at the time of issuing the relevant medical report concluding:

a. the exposed person has been diagnosed with mesothelioma or other asbestos-related malignancy,

b. to a reasonable degree of medical certainty, exposure to asbestos was a proximate cause of the diagnosed mesothelioma or other asbestos-related malignancy, accompanied by a conclusion that the exposed person’s medical findings were not more probably the result of other causes revealed by the exposed person’s employment and medical history. A conclusion that the exposed person’s physical impairment or impairments are "consistent with" or "compatible with" mesothelioma or other asbestos-related malignancy does not meet the requirements of this section, and

c. for malignant asbestos-related conditions other than mesothelioma, that the exposed person has an underlying nonmalignant asbestos-related condition and

that at least fifteen (15) years have elapsed between the date of first exposure to asbestos and the date of diagnosis of the malignancy; or

2. A report by a physician who is board-certified in pulmonary medicine, internal medicine, occupational medicine, or pathology that:

a. the exposed person has been diagnosed with a nonmalignant asbestos-related condition, and

b. confirms that a physician actually treating or who treated the exposed person, or who has or who had a doctor-patient relationship with the exposed person or a medical professional employed by and under the direct supervision and control of such physician:

(1) performed a physical examination of the exposed person, or if the exposed person is deceased, reviewed available records relating to the exposed person’s medical condition,

(2) took an occupational and exposure history from the exposed person or from a person knowledgeable about the alleged exposure or exposures that form the basis of the action, and

(3) took a medical and smoking history that includes a review of the exposed person’s significant past and present medical problems relevant to the exposed person’s impairment or disease,

c. sets out sufficient details of the exposed person’s occupational, exposure, medical, and smoking history to form the basis for a medical diagnosis of an asbestos-related condition and confirms that at least fifteen (15) years have elapsed between the exposed person’s first exposure to asbestos and the date of diagnosis,

d. confirms that the exposed person has a pathological diagnosis of asbestosis graded 1(B) or higher under the criteria published in "Asbestos-Associated Diseases", 106 Archives of Pathology and Laboratory

Medicine 11, Appendix 3 (October 8, 1982), as amended from time to time, or

e. confirms that the exposed person's chest x-ray shows bilateral small irregular opacities (s, t, or u) with a profusion grading of 2/2 or higher on the ILO system of classification, or

f. confirms that the exposed person has radiological evidence of asbestosis and/or pleural thickening showing:

(1) bilateral small irregular opacities (s, t, or u) with a profusion grading of 1/1 or higher, or

(2) bilateral diffuse pleural thickening graded extent b2 or higher, including blunting of the costophrenic angle, and

g. (1) confirms that in cases described in subparagraph d or f of this paragraph, the exposed person has or had physical impairment rated at least Class 2 pursuant to the AMA Guides to the Evaluation of Permanent Impairment (5th Edition) (dated November 2000) demonstrating:

(a) forced vital capacity below the lower limit of normal and FEV1/FVC ratio (using actual values) at or above the lower limit of normal, or

(b) total lung capacity, by plethysmography or timed gas dilution, below the lower limit of normal, or

(c) if the claimant's medical condition or process prevents the pulmonary function test from being performed or makes the results of such test an unreliable indicator of physical impairment, a board-certified physician in pulmonary medicine, occupational medicine, internal medicine, oncology, or pathology, independent from the physician providing the report required herein, must provide a report which states

to a reasonable degree of medical certainty that the claimant has a nonmalignant asbestos-related condition causing physical impairment equivalent to subdivision (a) or (b) of this division and states the reasons why the pulmonary function test would be an unreliable indicator of physical impairment.

(2) Alternatively and not to be used in conjunction with subdivision (c) of division (1) of this subparagraph, if an exposed person's medical conditions or processes prevent a physician from being able to diagnose or evaluate that exposed person sufficiently to make a determination as to whether that exposed person meets the requirements of subparagraph f of this paragraph, the claimant may serve on each defendant a report by a physician who is board-certified in pulmonary medicine, occupational medicine, internal medicine, oncology, or pathology at the time the report was made that:

(a) verifies that the physician has or had a doctor-patient relationship with the exposed person, and

(b) verifies that the exposed person has asbestos-related pulmonary impairment as demonstrated by pulmonary function testing showing:

(i) forced vital capacity below the lower limit of normal and total lung capacity, by plethysmography, below the lower limit of normal, or

(ii) forced vital capacity below the lower limit of normal and FEV1/FVC ratio (using actual values) at or above the lower limit of normal, and

(c) verifies that the exposed person has a chest x-ray and computed tomography scan or high-resolution computed tomography scan read by the physician or a physician who is board-

certified in pulmonary medicine, occupational medicine, internal medicine, oncology, pathology, or radiology showing either bilateral pleural disease or bilateral parenchymal disease diagnosed and reported as being a consequence of asbestos exposure,

h. confirms that the physician has concluded that the exposed person’s medical findings and impairment were not more probably the result of causes other than asbestos exposure as revealed by the exposed person’s occupational, exposure, medical, and smoking history, and

i. is accompanied by the relevant radiologist’s reports, pulmonary function tests, including printouts of all data, flow volume loops, and other information to the extent such has been performed demonstrating compliance with the equipment, quality, interpretation, and reporting standards set out in the Asbestos and Silica Claims Priorities Act, lung volume tests, diagnostic imaging of the chest, pathology reports, or other testing reviewed by the physician in reaching the physician’s conclusions. Upon request, the relevant computed tomography scans and/or chest x-rays will be made available for review.

B. The detailed occupational and exposure history required herein must describe:

1. The exposed person’s principal employments where it was likely there was exposure to airborne contaminants (including asbestos, silica, and other disease-causing dusts, mists, fumes, and airborne contaminants) that can cause pulmonary injury; and

2. Identification of the general nature, duration, and frequency of the exposed person’s exposure to airborne contaminants, including asbestos and other dusts that can cause pulmonary injury.

C. All evidence and reports used in presenting the prima facie showing required in this section, including pulmonary function testing and diffusing studies, if any:

1. Must comply with the technical recommendations for examinations, testing procedures, quality assurance, quality controls, and equipment in the AMA's Guidelines to the Evaluation of Permanent Impairment and the most current version of the Official Statements of the American Thoracic Society regarding lung function testing. Testing performed in a hospital or other medical facility that is fully licensed and accredited by all appropriate regulatory bodies in the state in which the facility is located is presumed to meet the requirements of this act. This presumption may be rebutted by evidence demonstrating that the accreditation or licensing of the hospital or other medical facility has lapsed, or providing specific facts demonstrating that the technical recommendations for examinations, testing procedures, quality assurance, quality control, and equipment have not been followed;

2. Must not be obtained through testing or examinations that violate any applicable law, regulation, licensing requirement, or medical code of practice;

3. Must not be obtained under the condition that the exposed person retains legal services in exchange for the examination, testing, or screening;

4. Shall not result in any presumption at trial that the exposed person is impaired by an asbestos or silica-related condition; and

5. Shall not be conclusive as to the liability of any defendant.

D. The conclusion that a prima facie showing has been made is not admissible at trial.

SECTION 59. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 65 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. No person shall have a silica claim placed on any active trial roster in this state, or brought to trial in this state, or conduct discovery in a silica claim in this state, in the absence of a prima facie showing of impairment as shown by service on each defendant of a report by a physician who is board-certified in pulmonary medicine, internal medicine, oncology, pathology, or occupational medicine at the time of issuing the relevant medical report.

B. In a case alleging silicosis, the medical report must be issued by a physician who is board-certified in pulmonary medicine, internal medicine, occupational medicine, or pathology that:

1. The exposed person has been diagnosed with a silica-related condition; and

2. Confirms that a physician actually treating or who treated the exposed person, or who has or who had a doctor-patient relationship with the exposed person or a medical professional employed by and under the direct supervision and control of such physician:

a. performed a physical examination of the exposed person, or if the exposed person is deceased, reviewed available records relating to the exposed person's medical condition,

b. took a detailed occupational and exposure history from the exposed person or, if the exposed person is deceased, from a person knowledgeable about the alleged exposure or exposures that form the basis of the action, and

c. took a detailed medical and smoking history that includes a thorough review of the exposed person's significant past and present medical problems and the most probable cause of any such problem that is relevant to the exposed person's impairment or disease.

C. The medical report must set out the details of the exposed person's occupational, exposure, medical, and smoking history, and set forth that there has been a sufficient latency period for the applicable type of silicosis.

D. The medical report must confirm, on the basis of medical examination, chest x-ray and pulmonary function testing, that the exposed person has permanent respiratory impairment:

1. Rated at least Class 2 pursuant to the AMA Guides to the Evaluation of Permanent Impairment; and

2. Accompanied by:

a. a chest x-ray that is an ILO quality 1 film, except that in the case of a deceased exposed individual where no pathology is available, the film can be ILO quality 2, showing bilateral nodular opacities (p, q, or r) occurring primarily in the upper lung fields, graded 1/1 or higher under the ILO system of classification, or

b. a chest x-ray that is an ILO quality 1 film, except that in the case of a deceased exposed individual where no pathology is available, the film can be ILO quality 2, showing large opacities (A, B, or C) in addition to the small opacities referred to in the preceding section, or

c. a chest x-ray that is an ILO quality 1 film showing acute silicosis as described in Occupational Lung Diseases, Third Edition, as amended from time to time, or

d. pathological demonstration of classic silicotic nodules exceeding one (1) centimeter in diameter as published in 112 Archive of Pathology and Laboratory Medicine 7 (July 1988), as amended from time to time, or

e. pathological demonstration of acute silicosis.

E. For all other silica-related claims, other than silicosis, the medical report must:

1. Be issued by a physician who is board-certified in pulmonary medicine, internal medicine, occupational medicine, or pathology that:

a. the exposed person has been diagnosed with a silica-related condition, and

b. confirms that a physician actually treating or who treated the exposed person, or who has or who had a doctor-patient relationship with the exposed person or a medical professional employed by and under the direct supervision and control of such physician:

(1) stating a diagnosis of silica-related lung cancer based on a sufficient latency period which is not less than fifteen (15) years and a statement that to a reasonable degree of medical certainty exposure to silica was a proximate cause of the exposed person’s physical impairment, accompanied by a conclusion that the exposed person’s silica-related lung cancer was not more probably the result of causes other than exposure to silica revealed by the exposed person’s occupational, exposure, medical, and smoking history, or

(2) stating a diagnosis of silicosis complicated by documented tuberculosis, or

(3) stating a diagnosis of any other silica-related disease, accompanied by a diagnosis of silicosis as defined herein, based on a sufficient latency period and a statement that to a reasonable degree of medical certainty exposure to silica was a proximate cause of the exposed person’s physical impairment, accompanied by a conclusion that the exposed person’s silica-related disease was not more probably the result of causes other than exposure to silica revealed by the exposed person’s occupational, exposure, medical, and smoking history; and

2. Be accompanied by:

a. a chest x-ray that is an ILO quality 1 film, except that in the case of a deceased exposed individual where no pathology is available, the film can be ILO quality 2, showing bilateral nodular opacities (p, q, or r) occurring primarily in the upper lung fields, graded 1/1 or higher under the ILO system of classification,

b. chest x-ray that is an ILO quality 1 film, except that in the case of a deceased exposed individual where no pathology is available, the film can be ILO quality 2, showing large opacities (A, B, or C) in addition to the small opacities referred to in subparagraph a of this paragraph,

c. chest x-ray that is an ILO quality 1 film showing acute silicosis as described in Occupational Lung Diseases, Third Edition, as amended from time to time,

d. pathological demonstration of classic silicotic nodules exceeding one (1) centimeter in diameter as published in 112 Archive of Pathology and Laboratory Medicine 7 (July 1988), as amended from time to time, or

e. pathological demonstration of acute silicosis.

F. All evidence and reports used in presenting the prima facie showing required in this section, including pulmonary function testing and diffusing studies, if any:

1. Must comply with the technical recommendations for examinations, testing procedures, quality assurance, quality controls, and equipment in the AMA’s Guidelines to the Evaluation of Permanent Impairment and the most current version of the Official Statements of the American Thoracic Society regarding lung function testing, including general considerations for lung function testing, standardization of spirometry, standardization of the measurement of lung volumes, standardization of the single breath determination of carbon monoxide uptake in the lung, and interpretive strategies of lung testing in effect at the time of the performance of any examination or test on the exposed person required by this act. Testing performed in a hospital or other medical facility that is fully licensed and accredited by all appropriate regulatory bodies in the state in which the facility is located, is presumed to meet the requirements of this subsection. This presumption may be rebutted by evidence demonstrating that the accreditation or licensing of the hospital or other medical facility has lapsed, or providing specific facts demonstrating that the technical recommendations for examinations, testing procedures, quality assurance, quality control, and equipment have not been followed;

2. Must not be obtained through testing or examinations that violate any applicable law, regulation, licensing requirement, or medical code of practice;

3. Must not be obtained under the condition that the exposed person retains legal services in exchange for the examination, test, or screening;

4. Shall not result in any presumption at trial that the exposed person is impaired by an asbestos- or silica-related condition; and

5. Shall not be conclusive as to the liability of any defendant.

G. The conclusion that a prima facie showing has been made is not admissible at trial.

SECTION 60. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 66 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In order to have an asbestos or silica claim placed on any active trial docket in this state, or brought to trial in this state, or conduct discovery in an asbestos or silica claim in this state, an individual must provide prima facie evidence of impairment by serving on each defendant who answers or otherwise appears, a report prescribed by this act.

B. In an action pending on the effective date of this act, the case shall not be allowed to be called for or proceed to trial until ninety (90) days after a report has been served on each defendant.

C. This act shall not be interpreted to create, alter, or eliminate a legal cause of action for any asbestos- and/or silica-related claimant who has been diagnosed with any asbestos- and/or silica-related disease. The act sets the procedure by which the courts in this state shall manage trial settings for all asbestos- and/or silica-related claims.

SECTION 61. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 67 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. In any action covered by the provisions of this act, a claimant shall file together with the complaint or other initial pleading a written report and supporting test results constituting the prima facie showing required pursuant to this act. In an action where the claimant either fails to provide such prima facie evidence or provides inadequate prima facie evidence, the defendant may, without waiving any defenses otherwise available to him, file within the time allotted for his Answer, a Notice of Appearance rather than an Answer to the Complaint. The claimant shall, within ninety (90)

days of receipt of such Answer or Notice of Appearance, provide such prima facie evidence as is called for by the provisions of this act. The defendant in any case shall then be afforded a reasonable opportunity to challenge the adequacy of the proffered prima facie evidence of asbestos-related or silica-related impairment as referenced in this section and subsection A of Section 60 of this act. Upon a finding of failure to make the required prima facie showing, the claimant's action shall not be placed on any trial docket nor be the subject of any discovery other than discovery on the issue of prima facie evidence of impairment. Upon the finding of the required prima facie showing, no defendant shall be allowed to challenge such prima facie showing absent a showing of misrepresentation, fraud, and/or good cause.

B. In any action covered by the provisions of this act in which the exposed person has received a diagnosis of mesothelioma which meets the requirements of paragraph 1 of subsection A of Section 58 of this act, the claimant may petition the court requesting that a trial date be set on an expedited basis. The court may, in its discretion, provide for an expedited trial setting, if the claimant demonstrates good cause for such an expedited trial setting and the defendant(s) is/are not prejudiced by such an expedited trial setting. In no event shall a trial date be set less than one hundred twenty (120) days from the date of an order granting such a motion and in no event shall a case be called for trial unless six (6) months have passed between the date of the initial filing of the case and the date of trial.

SECTION 62. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 68 of Title 76, unless there is created a duplication in numbering, reads as follows:

Nothing in this act is intended to, and nothing in this act shall be interpreted to:

1. Affect the rights of any party in bankruptcy proceedings; or

2. Affect the ability of any person who is able to make a showing that the person satisfies the claim criteria for compensable claims or demands under a trust established under a plan of reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Chapter 11, to make a claim or demand against that trust.

SECTION 63. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 69 of Title 76, unless there is created a duplication in numbering, reads as follows:

An entity that offers a health benefit plan or an annuity or life insurance policy or contract, issued for delivery, or renewed on or after the effective date of this act, may not use the fact that a person has met the procedural requirements of this act to reject, deny, limit, cancel, refuse to renew, increase the premiums for, or otherwise adversely affect the person’s eligibility for or coverage under the policy or contract.

SECTION 64. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 70 of Title 76, unless there is created a duplication in numbering, reads as follows:

A. Notwithstanding any other provision of law, with respect to any asbestos or silica claim not barred as of the effective date of this act, the limitations period shall not begin to run until the exposed person or claimant discovers, or through the exercise of reasonable diligence should have discovered, that the exposed person or claimant is physically impaired as set forth in this chapter by an asbestos- or silica-related condition.

B. An asbestos or silica claim arising out of a nonmalignant condition shall be a distinct cause of action from an asbestos or silica claim relating to the same exposed person arising out of asbestos- or silica-related cancer, and resolution of an asbestos or silica claim arising out of a nonmalignant condition shall not affect the ability of the same exposed person to bring a separate asbestos or silica claim arising out of an asbestos- or silica-related cancer, that otherwise meets all the requirements of Sections 58 or 59 of this act.

SECTION 65. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 71 of Title 76, unless there is created a duplication in numbering, reads as follows:

EFFECTIVE DATE. The Asbestos and Silica Claims Priorities Act shall apply to all asbestos or silica claims filed on or after November 1, 2009. The Asbestos and Silica Claims Priorities Act shall also apply to any pending asbestos or silica claims in which trial has not commenced by November 1, 2009, except that any provisions of these sections which would be unconstitutional if applied retroactively shall be applied prospectively.

SECTION 66. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 72 of Title 76, unless there is created a duplication in numbering, reads as follows:

SHORT TITLE. Sections 66 through 73 of this act shall be known and may be cited as the "Innocent Successor Asbestos-Related Liability Fairness Act".

SECTION 67. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 73 of Title 76, unless there is created a duplication in numbering, reads as follows:

DEFINITIONS. As used in the Innocent Successor Asbestos-Related Liability Fairness Act:

1. "Asbestos claim" means any claim, wherever or whenever made, for damages, losses, indemnification, contribution, or other relief arising out of, based on, or in any way related to asbestos, including:

a. the health effects of exposure to asbestos, including any claim for:

(1) personal injury or death,

(2) mental or emotional injury,

(3) risk of disease or other injury, or

(4) the costs of medical monitoring or surveillance,

b. any claim made by or on behalf of any person exposed to asbestos, or a representative, spouse, parent, child, or other relative of the person, and

c. any claim for damage or loss caused by the installation, presence, or removal of asbestos;

2. "Corporation" means a corporation for profit, including a domestic corporation organized under the laws of this state, or a foreign corporation organized under laws other than the laws of this state;

3. "Innocent successor" means a corporation that assumes or incurs or has assumed or incurred successor asbestos-related liabilities that is a successor and became a successor before January 1, 1972, or is any of that successor corporation's successors, and that after a merger or consolidation did not continue in the business of mining asbestos, in the business of selling or distributing asbestos fibers, or in the business of manufacturing, distributing, removing, or installing asbestos-containing products that were the same or substantially the same as those products previously manufactured, distributed, removed, or installed by the transferor;

4. "Successor asbestos-related liabilities" means any liabilities, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due, which are related to asbestos claims and were assumed or incurred by a corporation as a result of or in connection with a merger or consolidation, or the plan of merger or consolidation related to the merger or consolidation with or into another corporation, or that are related in any way to asbestos claims based on the exercise of control or the ownership of stock of the corporation before the merger or consolidation. The term includes liabilities that, after the time of the merger or consolidation for which the fair market value of total gross assets is determined pursuant to Section 70 of this act, were or are paid or otherwise discharged, or committed to be paid or otherwise discharged, by or on behalf of the corporation, or by a successor of the corporation, or by or on behalf of a transferor, in connection with settlements, judgments, or other discharges in this state or another jurisdiction; and

5. "Transferor" means a corporation from which successor asbestos-related liabilities are or were assumed or incurred.

SECTION 68. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 74 of Title 76 unless there is created a duplication in numbering, reads as follows:

APPLICABILITY. A. The limitations in Section 69 of this act shall apply to any innocent successor corporation.

B. The limitations in Section 69 of this act shall not apply to:

1. Workers' compensation benefits paid by or on behalf of an employer to an employee under this state's Workers' Compensation Act or a comparable workers' compensation law of another jurisdiction;

2. Any claim against a corporation that does not constitute a successor asbestos-related liability; or

3. Any obligations under the National Labor Relations Act, 29 U.S.C., Section 151 et seq., as amended, or under any collective bargaining agreement.

SECTION 69. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 75 of Title 76, unless there is created a duplication in numbering, reads as follows:

LIMITATIONS ON SUCCESSOR ASBESTOS-RELATED LIABILITIES. A. Except as further limited in subsection B of this section, the cumulative successor asbestos-related liabilities of an innocent successor corporation are limited to the fair market value of the total gross assets of the transferor determined as of the time of the merger or consolidation. The innocent successor corporation does not have any responsibility for successor asbestos-related liabilities in excess of this limitation.

B. If the transferor had assumed or incurred successor asbestos-related liabilities in connection with a prior merger or consolidation with a prior transferor, then the fair market value of the total assets of the prior transferor, determined as of the time of such earlier merger or consolidation, shall be substituted for the limitation set forth in subsection A of this section for purposes of determining the limitation of liability of an innocent successor corporation.

SECTION 70. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 76 of Title 76, unless there is created a duplication in numbering, reads as follows:

ESTABLISHING FAIR MARKET VALUE OF TOTAL GROSS ASSETS. A. An innocent successor corporation may establish the fair market value of total gross assets for the purpose of the limitations under Section 69 of this act through any method reasonable under the circumstances, including:

1. By reference to the going concern value of the assets or to the purchase price attributable to or paid for the assets in an arm’s-length transaction; or

2. In the absence of other readily available information from which fair market value can be determined, by reference to the value of the assets recorded on a balance sheet.

B. Total gross assets include intangible assets.

C. To the extent total gross assets include any liability insurance issued to the transferor whose assets are being valued for the purposes of this section, the applicability, terms, conditions, and limits of such insurance shall not be affected by this act, nor shall the Innocent Successor Asbestos-Related Liability Fairness Act otherwise affect the rights and obligations of a transferor, successor, or insurer under any insurance contract and/or any related agreements, including, without limitation, rights and obligations under preenactment settlements between a transferor or successor and its insurers resolving liability insurance coverage, and the rights of an insurer to seek payment for applicable deductibles, retrospective premiums or self-insured retentions or to seek contribution from a successor for uninsured or self-insured periods or periods where insurance is uncollectible or otherwise unavailable. Without limiting the foregoing, to the extent total gross assets include any such liability insurance, a settlement of a dispute concerning any such liability insurance coverage entered into by a transferor or successor with the insurers of the transferor before the effective date of the Innocent Successor Asbestos-Related Liability Fairness Act shall be determinative of the total coverage of such liability insurance to be included in the calculation of the transferor’s total gross assets.

SECTION 71. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 77 of Title 76, unless there is created a duplication in numbering, reads as follows:

ADJUSTMENT. A. Except as provided in subsections B, C and D of this section, the fair market value of total gross assets at the time of a merger or consolidation increases annually at a rate equal to the sum of:

1. The prime rate as listed in the first edition of “The Wall Street Journal” published for each calendar year since the merger or consolidation, unless the prime rate is not published in that

edition of "The Wall Street Journal", in which case any reasonable determination of the prime rate on the first day of the year may be used; and

2. One percent (1%).

B. The rate provided for in subsection A of this section shall not be compounded.

C. The adjustment of fair market value of total gross assets continues as provided under subsection A of this section until the date the adjusted value is first exceeded by the cumulative amounts of successor asbestos-related liabilities paid or committed to be paid by or on behalf of the innocent successor corporation or a predecessor, or by or on behalf of a transferor, after the time of the merger or consolidation for which the fair market value of total gross assets is determined.

D. No adjustment of the fair market value of total gross assets shall be applied to any liability insurance that may be included in the definition of total gross assets by subsection C of Section 70 of this act.

SECTION 72. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 78 of Title 76, unless there is created a duplication in numbering, reads as follows:

SCOPE OF ACT. The courts of this state shall construe the provisions of the Innocent Successor Asbestos-Related Liability Fairness Act liberally with regard to innocent successors. Nothing in this act shall be construed to limit the liability of the transferor, except to the extent the transferor is or becomes a successor.

SECTION 73. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 79 of Title 76, unless there is created a duplication in numbering, reads as follows:

EFFECTIVE DATE. The Innocent Successor Asbestos-Related Liability Fairness Act shall apply to all asbestos claims filed against an innocent successor on or after the effective date of the Innocent Successor Asbestos-Related Liability Fairness Act. The Innocent Successor Asbestos-Related Liability Fairness Act shall also apply to any pending asbestos claims against an innocent successor in which trial has not commenced as of the effective date

of the Innocent Successor Asbestos-Related Liability Fairness Act, except that any provisions of these sections which would be unconstitutional if applied retroactively shall be applied prospectively.

SECTION 74. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-101.7 of Title 70, unless there is created a duplication in numbering, reads as follows:

An attorney, representative, or other designee of the school district who has represented or represents a school district or the administration of a school district at a hearing held for the purpose of affording due process rights and requirements for an administrator as provided for in Section 6-101.13 of Title 70 of the Oklahoma Statutes, a teacher as provided for in Section 6-101.26 of Title 70 of the Oklahoma Statutes, or a support employee as provided for in Section 6-101.46 of Title 70 of the Oklahoma Statutes or who has been involved or participated in any prehearing actions of the school district with respect to a recommendation for the termination of employment or nonreemployment of an administrator, teacher, or support employee shall not:

1. Conduct or preside as the hearing officer or judge at a due process hearing or hearings; and

2. Attend, advise at, or in any way influence an executive session of the school district board of education that is held in conjunction with a due process hearing or hearings if the attorney, representative, or other designee of the school district conducted or presided over the due process hearing or hearings as the hearing officer or judge.

SECTION 75. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-140 of Title 70, unless there is created a duplication in numbering, reads as follows:

Sections 75 through 83 of this act shall be known and may be cited as the “School Protection Act”.

SECTION 76. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-141 of Title 70, unless there is created a duplication in numbering, reads as follows:

The purpose of the School Protection Act is to provide teachers, principals, and other school professionals the tools they need to

undertake reasonable actions to maintain order, discipline, and an appropriate educational environment.

SECTION 77. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-142 of Title 70, unless there is created a duplication in numbering, reads as follows:

As used in the School Protection Act:

1. "Education employee" means any individual who is an employee of a school; and

2. "School" means a public school district, governmental entity that employs teachers as defined in Section 1-116 of Title 70 of the Oklahoma Statutes, or private kindergarten, elementary, or secondary school.

SECTION 78. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-143 of Title 70, unless there is created a duplication in numbering, reads as follows:

A. Except as otherwise provided in this section, any person eighteen (18) years of age or older who acts with specific intent in making a false accusation of criminal activity against an education employee to law enforcement authorities or school district officials, or both, shall be guilty of a misdemeanor and, upon conviction, punished by a fine of not more than Two Thousand Dollars ($2,000.00).

B. Except as otherwise provided in this section, any student between seven (7) years of age and seventeen (17) years of age who acts with specific intent in making a false accusation of criminal activity against an education employee to law enforcement authorities or school district officials, or both, shall, upon conviction, at the discretion of the court, be subject to any of the following:

1. Community service of a type and for a period of time to be determined by the court; or

2. Any other sanction as the court in its discretion may deem appropriate.

C. The provisions of this section shall not apply to statements regarding individuals elected or appointed to an educational entity.

D. This section is in addition to and does not limit the civil or criminal liability of a person who makes false statements alleging criminal activity by another.

SECTION 79. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-144 of Title 70, unless there is created a duplication in numbering, reads as follows:

A. In any civil action or proceeding against a school or an education employee, the court may award costs and reasonable attorney fees to the prevailing party. In any civil action or proceeding by or between any education employee and a school or other education employee, the provisions of this section shall not apply.

B. Expert witness fees may be included as part of the costs awarded under this section.

SECTION 80. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-145 of Title 70, unless there is created a duplication in numbering, reads as follows:

Unless otherwise provided by law, the existence of any policy of insurance indemnifying a school or an education employee against liability for damages is not a waiver of any defense otherwise available to the educational entity or its employees in the defense of the claim.

SECTION 81. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-146 of Title 70, unless there is created a duplication in numbering, reads as follows:

No student enrolled in a school shall assault, attempt to cause physical bodily injury, or act in a manner that could reasonably cause bodily injury to an education employee or a person who is volunteering for the school. Any student in grades six through twelve who violates the provisions of this section shall be subject to out-of-school suspension as provided for in Section 24-101.3 of Title 70 of the Oklahoma Statutes. This section shall be in addition to and does not limit the criminal liability of a person who causes or commits an assault, battery, or assault and battery upon a school employee as provided for in Section 650.7 of Title 21 of the Oklahoma Statutes.

SECTION 82. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-147 of Title 70, unless there is created a duplication in numbering, reads as follows:

An education employee who is injured as a result of an assault or battery upon the person of the employee while the employee is in the performance of any duties as an education employee shall be entitled to a leave of absence from employment with the school without a loss of leave benefits.

SECTION 83. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6-148 of Title 70, unless there is created a duplication in numbering, reads as follows:

The School Protection Act shall be in addition to and shall not limit or amend The Governmental Tort Claims Act or any other applicable law.

SECTION 84. AMENDATORY 70 O.S. 2001, Section 24-101.3, as last amended by Section 2, Chapter 210, O.S.L. 2006 (70 O.S. Supp. 2008, Section 24-101.3), is amended to read as follows:

Section 24-101.3 A. Any student who is guilty of an act described in paragraph 1 of subsection C of this section may be suspended out-of-school in accordance with the provisions of this section. Each school district board of education shall adopt a policy with procedures which provides for out-of-school suspension of students. The policy shall address the term of the out-of-school suspension, provide an appeals process as described in subsection B of this section, and provide that before a student is suspended out-of-school, the school or district administration shall consider and apply, if appropriate, alternative in-school placement options that are not to be considered suspension, such as placement in an alternative school setting, reassignment to another classroom, or in-school detention. The policy shall address education for students subject to the provisions of subsection D of this section and whether participation in extracurricular activities shall be permitted.

B. 1. Students suspended out-of-school for ten (10) or fewer days shall have the right to appeal the decision of the administration as provided in the policy required in subsection A of this section. The policy shall specify whether appeals for short-term suspensions as provided in this subsection shall be to a local committee composed of district administrators or teachers or both,

or to the district board of education. Upon full investigation of the matter, the committee or board shall determine the guilt or innocence of the student and the reasonableness of the term of the out-of-school suspension. If the policy requires appeals for short-term suspensions to a committee, the policy adopted by the board may, but is not required to, provide for appeal of the committee's decision to the board.

2. Students suspended out-of-school for more than ten (10) days and students suspended pursuant to the provisions of paragraph 2 of subsection C of this section may request a review of the suspension with the administration of the district. If the administration does not withdraw the suspension, the student shall have the right to appeal the decision of the administration to the district board of education. Except as otherwise provided for in paragraph 2 of subsection C of this section, no out-of-school suspension shall extend beyond the current semester and the succeeding semester. Upon full investigation of the matter, the board shall determine the guilt or innocence of the student and the reasonableness of the term of the out-of-school suspension. A board of education may conduct the hearing and render the final decision or may appoint a hearing officer to conduct the hearing and render the final decision. The decision of the district board of education or the hearing officer, if applicable, shall be final.

C. 1. Students who are guilty of any of the following acts may be suspended out-of-school by the administration of the school or district:

a. violation of a school regulation,

b. immorality,

c. adjudication as a delinquent for an offense that is not a violent offense. For the purposes of this section, "violent offense" shall include those offenses listed as the exceptions to the term "nonviolent offense" as specified in Section 571 of Title 57 of the Oklahoma Statutes. "Violent offense" shall include the offense of assault with a dangerous weapon but shall not include the offense of assault,

d. possession of an intoxicating beverage, low-point beer, as defined by Section 163.2 of Title 37 of the Oklahoma Statutes, or missing or stolen property if

the property is reasonably suspected to have been taken from a student, a school employee, or the school during school activities, and

e. possession of a dangerous weapon or a controlled dangerous substance, as defined in the Uniform Controlled Dangerous Substances Act. Possession of a firearm shall result in out-of-school suspension as provided in paragraph 2 of this subsection.

2. Any student found in possession of a firearm while on any public school property or while in any school bus or other vehicle used by a public school for transportation of students or teachers shall be suspended out-of-school for a period of not less than one (1) year, to be determined by the district board of education pursuant to the provisions of this section. The term of the suspension may be modified by the district superintendent on a case-by-case basis. For purposes of this paragraph the term "firearm" shall mean and include all weapons as defined by 18 U.S.C., Section 921.

3. Any student in grades six through twelve found to have assaulted, attempted to cause physical bodily injury, or acted in a manner that could reasonably cause bodily injury to a school employee or a person volunteering for a school as prohibited pursuant to Section 81 of this act shall be suspended for the remainder of the current semester and the next consecutive semester, to be determined by the board of education pursuant to the provisions of this section. The term of the suspension may be modified by the district superintendent on a case-by-case basis.

D. At its discretion a school district may provide an education plan for students suspended out-of-school for five (5) or fewer days pursuant to the provisions of this subsection. The following provisions shall apply to students who are suspended out-of-school for more than five (5) days and who are guilty of acts listed in subparagraphs a, b, c and d of paragraph 1 of subsection C of this section. Upon the out-of-school suspension, the parent or guardian of a student suspended out-of-school pursuant to the provisions of this subsection shall be responsible for the provision of a supervised, structured environment in which the parent or guardian shall place the student and bear responsibility for monitoring the student's educational progress until the student is readmitted into school. The school administration shall provide the student with an education plan designed for the eventual reintegration of the

student into school which provides only for the core units in which the student is enrolled. A copy of the education plan shall also be provided to the student's parent or guardian. For the purposes of this section, the core units shall consist of the minimum English, mathematics, science, social studies and art units required by the State Board of Education for grade completion in grades kindergarten through eight and for high school graduation in grades nine through twelve. The plan shall set out the procedure for education and shall address academic credit for work satisfactorily completed.

E. A student who has been suspended out-of-school from a public or private school in the State of Oklahoma or another state for a violent act or an act showing deliberate or reckless disregard for the health or safety of faculty or other students shall not be entitled to enroll in a public school of this state, and no public school shall be required to enroll the student, until the terms of the suspension have been met or the time of suspension has expired.

F. No public school of this state shall be required to provide education services in the regular school setting to any student who has been adjudicated as a delinquent for an offense defined in Section 571 of Title 57 of the Oklahoma Statutes as an exception to a nonviolent offense or convicted as an adult of an offense defined in Section 571 of Title 57 of the Oklahoma Statutes as an exception to a nonviolent offense ~~or~~, who has been removed from a public or private school in the State of Oklahoma or another state by administrative or judicial process for a violent act or an act showing deliberate or reckless disregard for the health or safety of faculty or other students, or who has been suspended as provided for in paragraph 3 of subsection C of this section until the school in which the student is subsequently enrolled determines that the student no longer poses a threat to self, other students or school district faculty or employees. Until the school in which such student subsequently enrolls or re-enrolls determines that the student no longer poses a threat to self, other students or school district faculty or employees, the school may provide education services through an alternative school setting, home-based instruction, or other appropriate setting. If the school provides education services to such student at a district school facility, the school shall notify any student or school district faculty or employee victims of such student, when known, and shall ensure that the student will not be allowed in the general vicinity of or contact with a victim of the student, provided such victim notifies the school of the victim’s desire to refrain from contact with the offending student.

G. Students suspended out-of-school who are on an individualized education plan pursuant to the Individuals with Disabilities Education Act, P.L. No. 101-476, or who are subject to the provisions of subsection F of this section and who are on an individualized education plan shall be provided the education and related services in accordance with the student's individualized education plan.

H. A student who has been suspended for a violent offense which is directed towards a classroom teacher shall not be allowed to return to that teacher's classroom without the approval of that teacher.

I. No school board, administrator or teacher may be held civilly liable for any action taken in good faith which is authorized by this section.

SECTION 85. AMENDATORY 51 O.S. 2001, Section 155, as last amended by Section 1, Chapter 381, O.S.L. 2004 (51 O.S. Supp. 2008, Section 155), is amended to read as follows:

Section 155. The state or a political subdivision shall not be liable if a loss or claim results from:

1. Legislative functions;

2. Judicial, quasi-judicial, or prosecutorial functions, other than claims for wrongful criminal felony conviction resulting in imprisonment provided for in Section 154 of this title;

3. Execution or enforcement of the lawful orders of any court;

4. Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;

5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees;

6. Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection;

7. Any claim based on the theory of attractive nuisance;

8. Snow or ice conditions or temporary or natural conditions on any public way or other public place due to weather conditions, unless the condition is affirmatively caused by the negligent act of the state or a political subdivision;

9. Entry upon any property where that entry is expressly or implied authorized by law;

10. Natural conditions of property of the state or political subdivision;

11. Assessment or collection of taxes or special assessments, license or registration fees, or other fees or charges imposed by law;

12. Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority;

13. Inspection powers or functions, including failure to make an inspection, review or approval, or making an inadequate or negligent inspection, review or approval of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety, or fails to conform to a recognized standard;

14. Any loss to any person covered by any workers' compensation act or any employer's liability act;

15. Absence, condition, location or malfunction of any traffic or road sign, signal or warning device unless the absence, condition, location or malfunction is not corrected by the state or political subdivision responsible within a reasonable time after actual or constructive notice or the removal or destruction of such signs, signals or warning devices by third parties, action of weather elements or as a result of traffic collision except on failure of the state or political subdivision to correct the same within a reasonable time after actual or constructive notice. Nothing herein shall give rise to liability arising from the failure of the state or any political subdivision to initially place any of the above signs, signals or warning devices. The signs, signals and

warning devices referred to herein are those used in connection with hazards normally connected with the use of roadways or public ways and do not apply to the duty to warn of special defects such as excavations or roadway obstructions;

16. Any claim which is limited or barred by any other law;

17. Misrepresentation, if unintentional;

18. An act or omission of an independent contractor or consultant or his or her employees, agents, subcontractors or suppliers or of a person other than an employee of the state or political subdivision at the time the act or omission occurred;

19. Theft by a third person of money in the custody of an employee unless the loss was sustained because of the negligence or wrongful act or omission of the employee;

20. Participation in or practice for any interscholastic or other athletic contest sponsored or conducted by or on the property of the state or a political subdivision;

21. Participation in any activity approved by a local board of education and held within a building or on the grounds of the school district served by that local board of education before or after normal school hours or on weekends;

22. Any court-ordered or Department of Corrections approved work release program; provided, however, this provision shall not apply to claims from individuals not in the custody of the Department of Corrections based on accidents involving motor vehicles owned or operated by the Department of Corrections;

23. The activities of the National Guard, the militia or other military organization administered by the Military Department of the state when on duty pursuant to the lawful orders of competent authority:

a. in an effort to quell a riot,

b. in response to a natural disaster or military attack, or

c. if participating in a military mentor program ordered by the court;

24. Provision, equipping, operation or maintenance of any prison, jail or correctional facility, or injuries resulting from the parole or escape of a prisoner or injuries by a prisoner to any other prisoner; provided, however, this provision shall not apply to claims from individuals not in the custody of the Department of Corrections based on accidents involving motor vehicles owned or operated by the Department of Corrections;

25. Provision, equipping, operation or maintenance of any juvenile detention facility, or injuries resulting from the escape of a juvenile detainee, or injuries by a juvenile detainee to any other juvenile detainee;

26. Any claim or action based on the theory of manufacturer's products liability or breach of warranty, either expressed or implied;

27. Any claim or action based on the theory of indemnification or subrogation;

28. Any claim based upon an act or omission of an employee in the placement of children;

29. Acts or omissions done in conformance with then current recognized standards;

30. Maintenance of the state highway system or any portion thereof unless the claimant presents evidence which establishes either that the state failed to warn of the unsafe condition or that the loss would not have occurred but for a negligent affirmative act of the state;

31. Any confirmation of the existence or nonexistence of any effective financing statement on file in the office of the Secretary of State made in good faith by an employee of the office of the Secretary of State as required by the provisions of Section 1-9-320.6 of Title 12A of the Oklahoma Statutes;

32. Any court-ordered community sentence; ~~or~~

33. Remedial action and any subsequent related maintenance of property pursuant to and in compliance with an authorized environmental remediation program, order, or requirement of a federal or state environmental agency;

34. The use of necessary and reasonable force by a school district employee to control and discipline a student during the time the student is in attendance or in transit to and from the school, or any other function authorized by the school district; or

35. Actions taken in good faith by a school district employee for the out-of-school suspension of a student pursuant to applicable Oklahoma Statutes.

SECTION 86. REPEALER Section 1, Chapter 368, O.S.L. 2004 (5 O.S. Supp. 2008, Section 7.1), is hereby repealed.

SECTION 87. REPEALER Sections 5 and 7, Chapter 390, O.S.L. 2003 (63 O.S. Supp. 2008, Sections 1-1708.1E and 1-1708.1G), are hereby repealed.

SECTION 88. REPEALER Section 19, Chapter 473, O.S.L. 2003 (63 O.S. Supp. 2008, Section 6602), is hereby repealed.

SECTION 89. The provisions of this act are severable and if any part or provision shall be held void the decision of the court so holding shall not affect or impair any of the remaining parts or provisions of this act.

SECTION 90. This act shall become effective November 1, 2009.

Passed the House of Representatives the 14th day of May, 2009.

______________________________
Presiding Officer of the House of Representatives

Passed the Senate the 14th day of May, 2009.

______________________________
Presiding Officer of the Senate